IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re Terrorist Attacks on September 11, 2001* ) ) ) ) ) | | 03-MDL-1570<br>ECF Case |

*Relates To:*

| | |
|---|---|
| Kathleen Ashton, et al.<br>   v.<br><u>Al Qaeda Islamic Army, et al.</u>  ) ) ) | 02-CV-6977 (RCC) |
| Ernesto Barrera, et al.,<br>   v.<br><u>Al Qaeda Islamic Army, et al.</u>  ) ) ) | 03-CV-7036 (RCC) |
| Thomas E. Burnett, Sr., et al.<br>   v.<br><u>Al Baraka Investment & Development Corp., et al.</u>  ) ) ) | 03-CV-5738 (RCC) |
| Gladys H. Salvo, et al.<br>   v.<br><u>Al Qaeda Islamic Army, et al.</u>  ) ) ) | 03-CV-5071 (RCC) |
| Walter Tremsky, et al.<br>   v.<br><u>Osama bin Laden, et al.</u>  ) ) ) | 02-CV-7300 (RCC) |

**<u>NOTICE OF HIS ROYAL HIGHNESS PRINCE SULTAN BIN ABDULAZIZ AL-
SAUD'S MOTION TO DISMISS CERTAIN CONSOLIDATED COMPLAINTS</u>**

1

PLEASE TAKE NOTICE that upon the attached Declaration of William H. Jeffress, Jr., (the "Jeffress Declaration") with exhibits, the memorandum of law dated March 19, 2004, and all pleadings and proceedings had herein, Defendant Prince Sultan bin Abdulaziz Al-Saud ("Prince Sultan"), by his attorneys Baker Botts LLP, will move before the Honorable Judge Richard C. Casey of the above-entitled Court at the United States Courthouse, 500 Pearl Street, New York, New York, at a date and time to be determined by the Court, for an order dismissing, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), the complaints in Ashton, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 02-6977 (S.D.N.Y.); Barrera, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-7036 (S.D.N.Y.); Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 03-5738 (S.D.N.Y.); Salvo, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-5071 (S.D.N.Y.); and Tremsky, et al. v. Osama bin Laden, et al., C.A. No. 02-7300 (S.D.N.Y.).

Dated: Washington, D.C.
March 19, 2004

                                                     S/
William H. Jeffress, Jr. (D.C. Bar No. 041152)
Christopher R. Cooper (D.C. Bar No. 453387)
Jamie S. Kilberg (D.C. Bar No. 480207)
Sara E. Kropf (D.C. Bar No. 481501)

BAKER BOTTS, LLP
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
Phone:  (202) 639-7700
Fax:     (202) 639-7890

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re Terrorist Attacks on September 11, 2001** ) ) ) ) ) | | **03-MDL-1570**<br>**ECF Case** |

*Relates To:*

| | |
|---|---|
| Kathleen Ashton, et al.<br>v.<br><u>Al Qaeda Islamic Army, et al.</u> | 02-CV-6977 (RCC) |
| Ernesto Barrera, et al.,<br>v.<br><u>Al Qaeda Islamic Army, et al.</u> | 03-CV-7036 (RCC) |
| Thomas E. Burnett, Sr., et al.<br>v.<br><u>Al Baraka Investment & Development Corp., et al.</u> | 03-CV-5738 (RCC) |
| Gladys H. Salvo, et al.<br>v.<br><u>Al Qaeda Islamic Army, et al.</u> | 03-CV-5071 (RCC) |
| Walter Tremsky, et al.<br>v.<br><u>Osama bin Laden, et al.</u> | 02-CV-7300 (RCC) |

**<u>DECLARATION OF WILLIAM H. JEFFRESS, JR.</u>**

1

William H. Jeffress, Jr., declares as follows:

1. I am a partner of the law firm of Baker Botts, LLP, which represents defendant Prince Sultan bin Abdulaziz Al-Saud in this action. I have been admitted to the Bar of this Court *pro hac vice*. I am fully familiar with the facts set forth herein.

2. This Declaration is submitted in support of Prince Sultan's Motion To Dismiss Certain Consolidated Complaints in <u>Ashton, et al. v. Al Qaeda Islamic Army, et al.</u>, C.A. No. 02-6977 (S.D.N.Y.); <u>Barrera, et al. v. Al Qaeda Islamic Army, et al.</u>, C.A. No. 03-7036 (S.D.N.Y.); <u>Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al.</u>, C.A. No. 03-5738 (S.D.N.Y.) [<u>Burnett (N.Y.)</u>]; <u>Salvo, et al. v.Al Qaeda Islamic Army, et al.</u>, C.A. No. 03-5071 (S.D.N.Y.); and <u>Tremsky, et al. v. Osama bin Laden, et al.</u>, C.A. No. 02-7300 (S.D.N.Y.). Specifically, Prince Sultan contends that this Court lacks subject-matter jurisdiction over the various plaintiffs' claims against him under the Foreign Sovereign Immunities Act and Federal Rule of Civil Procedure 12(b)(1), and there are no allegations of facts which could support this Court's exercise of personal jurisdiction over Prince Sultan under Federal Rule of Civil Procedure 12(b)(2). Prince Sultan also contends that, in considering his motion to dismiss, this Court should give substantial deference to Judge James Robertson's decision dismissing one of the consolidated complaints, <u>Burnett v. Al Baraka Investment & Development Corp.</u>, 02-CV-1616 (D.D.C.) [<u>Burnett</u>], as against Prince Sultan, not only for reasons of efficiency, fairness, and uniformity, but also because Judge Robertson's ruling is fundamentally correct.

**<u>Prince Sultan</u>**

3. The information in this portion of the Declaration is derived largely from the Declaration of Abdulaziz H. Al Fahad, attached as Exhibit 1 to Prince Sultan's Motion to

2

Dismiss in Burnett (Burnett Dkt.# 110), and the Declaration of Nizar bin Obaid Madani, attached hereto as Exhibit A.

4.      Prince Sultan is the third-ranking government official in the Kingdom of Saudi Arabia. He is one of the sons of the late King Abdulaziz Al-Saud, who founded the present Kingdom. The late King Faisal bin Abdulaziz Al-Saud named Prince Sultan as Minister of Defense and Aviation and Inspector General of the armed forces in 1962. In 1982, Prince Sultan was named by the current ruler of the Kingdom, Prince Sultan's brother, King Fahd bin Abdulaziz Al-Saud, as Second Deputy President of the Council of Ministers, the governing body of Saudi Arabia. King Fahd is President of the Council of Ministers. His Royal Highness Crown Prince Abdullah bin Abdulaziz Al-Saud is First Deputy President of the Council of Ministers.

5.      Prince Sultan is also the Chairman of the Supreme Council of Islamic Affairs, an arm of the government of Saudi Arabia which carries out part of the foreign policy of the Kingdom as determined by the Council of Ministers. The Supreme Council was established by King Fahd in 1995, and has the responsibility for Saudi Arabia's Islamic policy abroad. The Supreme Council makes discretionary recommendations which are submitted to King Fahd and, if approved, become acts or policies of the government. Recommendations may include financial support by the government of particular Islamic organizations, but the Supreme Council does not have the function of policing the activities of such organizations abroad, nor as a practical matter could it do so. Nor does the Supreme Council initiate or itself make charitable donations. Indeed, the Supreme Council has no separate budget, except to support its staff.

6.      Prince Sultan is also the head of the Special Committee of the Council of Ministers. The Special Committee was originally established in 1962, during the civil war in

neighboring Yemen, to serve as a foreign policy advisory resource to the King. Today, the Special Committee continues as an organ of the Council of Ministers. The Council of Ministers establishes the budget of the Special Committee, which is funded entirely from government funds. As Second Deputy President of the Council of Ministers, Prince Sultan exercises discretionary powers over disbursements by the Special Committee, which have included grants to Islamic charitable organizations. These grants are directed by Prince Sultan in furtherance of the national policy of Saudi Arabia as determined by the Council of Ministers.

**The Consolidated Complaints**

7. Prince Sultan is named as a defendant in at least six of the lawsuits consolidated in this multi-district litigation proceeding, including Ashton, Barrera, Burnett, Burnett (N.Y.), Salvo, and Tremsky. None of the complaints in any of these cases, other than Burnett, have been served on Prince Sultan. Prince Sultan is also named in a seventh lawsuit consolidated on March 1, 2004, Federal Insurance, et al. v. Al Qaida, et al., C.A. No. 03-6978 (S.D.N.Y.). The plaintiffs in that case, however, only recently amended their complaint to include any specific allegations against Prince Sultan, and this Court has previously endorsed the parties' joint agreement that a response to the amended complaint would not be due until 60 days after service of the amended complaint, or as otherwise ordered by the Court. Prince Sultan is not, therefore, moving to dismiss the Federal Insurance complaint at this time.

8. All of the complaints that are the subject of Prince Sultan's current motion allege that Prince Sultan aided and abetted the September 11, 2001 terrorist attacks on the United States by donating money to well-established international Islamic charities, in Saudi Arabia, with the knowledge that the charities were funding terrorist activities by Osama bin Laden's Al Qaeda network. This "knowledge" allegedly came from Prince Sultan's role as head of the Supreme

4

Council, an entity which, as described above, does not itself make charitable contributions or police the activities of charities. In fact, however, as the recent May and November 2003 terrorist bombings in Saudi Arabia painfully proved, bin Laden is a sworn enemy of the Saudi government, which in 1994 revoked his Saudi citizenship and froze his assets.

9. A chart comparing the factual allegations of the complaints in <u>Ashton</u>, <u>Barrera</u>, <u>Burnett</u>, <u>Burnett (N.Y.)</u>, <u>Salvo</u>, and <u>Tremsky</u>, is attached hereto as Exhibit B. That chart clearly shows the substantial overlap in factual allegations between all the complaints, which are near facsimiles of each other.

10. Similarly, a chart comparing the legal claims of all six complaints is attached hereto as Exhibit C. That chart, also, demonstrates the substantial similarity and, indeed, near uniformity, of the several complaints.

**The *Burnett* Litigation**

11. Prince Sultan voluntarily appeared in <u>Burnett</u>, the most advanced of the several cases against him, and filed a motion to dismiss in the U.S. District Court for the District of Columbia before Judge James Robertson on April 8, 2003.

12. The Motion raised four principal grounds for dismissal of the Complaint:

    a.. *First,* to the extent they were made at all, the charitable donations attributed to Prince Sultan in the <u>Burnett</u> complaint were grants of the Saudi government, duly authorized by Prince Sultan in his official capacity and paid with government funds. As such, the FSIA provides Prince Sultan absolute immunity from suit based on these official acts, and no exception to the FSIA applies to defeat immunity on the claims presented in the <u>Burnett</u> complaint.

5

b. *Second*, the central issue posed by the claims against Prince Sultan – the role of the high officials of a friendly foreign government in financing terrorism against the United States – presents a classic "political question" the adjudication of which would impermissibly infringe upon the President's constitutional prerogative to conduct foreign relations and undermine important U.S. policy interests abroad.

c. *Third*, the plaintiffs did not met their burden of establishing a prima facie case for the exercise of personal jurisdiction over Prince Sultan because they failed to allege any facts to suggest that Prince Sultan had "minimum contacts" with either the District of Columbia or the United States as a whole.

d. *Finally*, the plaintiffs' alleged theory of causation is too attenuated to support a finding that Prince Sultan's actions proximately caused the September 11 attacks, under either the federal statutory or state common law claims set forth in the <u>Burnett</u> complaint.

13. The <u>Burnett</u> plaintiffs responded to Prince Sultan's Motion to Dismiss with a motion for leave to take jurisdictional discovery by way of depositions of the persons who submitted declarations in support of the Motion. After two rounds of briefing and oral argument, Judge Robertson denied the plaintiffs' discovery request. Meanwhile, the plaintiffs filed a 75-page memorandum in opposition to the Motion to Dismiss, and Prince Sultan responded with a 37-page reply brief. Oral argument on the motion was heard on October 17, 2003, and was followed by additional briefing and the presentation of supplemental authority on questions raised by the court during argument.

14.     Judge Robertson granted Prince Sultan's Motion to Dismiss (as well as that of Saudi Arabia's former Chief of General Intelligence, Prince Turki Al-Faisal) on November 14, 2003. In its ruling, the court declined to resolve whether Prince Sultan's alleged contributions were personal or official in nature. To the extent they were official, it held that Prince Sultan was entitled to immunity under the FSIA. The court also found that in neither the Burnett complaint nor their opposition papers did the plaintiffs present meaningful evidence to suggest that Prince Sultan had any traditionally recognized minimum contacts with the United States, or that he "purposefully directed" his allegedly tortious conduct at residents of the United States. Therefore, to the extent Prince Sultan's alleged contributions were personal in nature, the court lacked personal jurisdiction over Prince Sultan. Finally, the court reserved judgment on the other grounds raised in Prince Sultan's motion to dismiss.

**JPML Consoldiation**

15.     Prior to the entry of final judgment on the D.C. Court's order granting Prince Sultan's motion to dismiss, the Judicial Panel on Multi-district Litigation transferred Burnett to this Court on December 9, 2003. The JPML also transferred Ashton, Salvo, and Tremsky to this Court on December 9, 2003. By way of its March 3, 2004 Case Management Order No. 1, this Court consolidated Barrera and Burnett (N.Y.) into the consolidated multi-district litigation action.

16. Judge Robertson's ruling dismissing the Burnett action was correct and his reasoning, as well as Second Circuit law, requires the dismissal, as to Prince Sultan, of the complaints in Ashton, Barrera, Burnett (N.Y.), Salvo, and Tremsky. By this motion, Prince Sultan moves for that relief.

17. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Washington, D.C.
       March 19, 2004

_____
William H. Jeffress, Jr.

# Exhibit A




UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            x
In re Terrorist Attacks on September 11, 2001    x    03 MDL 1570 (RCC)
                                                            x
                                                            x
------------------------------------------------------------x

## DECLARATION OF NIZAR BIN OBAID MADANI

In the Name of God, the Merciful, the Compassionate, I, Nizar Bin Obaid Madani, state the following:

1. I am Assistant Minister of Foreign Affairs within the Ministry of Foreign Affairs of the Kingdom of Saudi Arabia. In that capacity, I have responsibility for the Ministry's oversight of the Kingdom's relationship with the United States, including U.S.-Saudi Government cooperative efforts. I am competent to make this declaration, which I understand will be submitted in support of the Motion to Dismiss these consolidated cases being filed on behalf of Prince Sultan bin Abdulaziz Al-Saud ("Prince Sultan").

2. Prince Sultan is the Minister of Defense and Aviation and Inspector General of the Kingdom of Saudi Arabia and the Second Deputy President of Saudi Arabia's central governing body, the Council of Ministers.

3. I understand that, in their pleadings, certain Plaintiffs purport to evaluate and to characterize the level of interest that the Saudi Government has concerning the fact that Prince Sultan, and other instrumentalities of the Saudi Government, have been sued in these lawsuits. The

1

purpose of my declaration is to explain that it is a matter of grave concern to the Saudi Government that these lawsuits have been brought against its officials and instrumentalities.

4. The Saudi Government is committed to cooperation with the United States in the common fight to win the war on terrorism. Lawsuits in United States courts (a branch of the United States Government) against Prince Sultan and other Saudi Government officials and instrumentalities, which are based upon allegations that these officials or instrumentalities knowingly funded, or otherwise supported, the perpetration of the September 11, 2001 terrorist attacks, are not only false, but counterproductive, and make government-to-government cooperation more difficult. This concern is deeply felt in all circles of the Saudi Government, and applies regardless of whether those instrumentalities are individuals serving as officials of the Government, or are Government entities.

5. Al Qaeda and Osama bin Laden are enemies in common of both the United States and of the Kingdom. In 1994, the Kingdom stripped Osama bin Laden of his citizenship and froze his assets. The May and November 2003 bombings in Riyadh confirm that al Qaeda and Osama bin Laden continue to seek the overthrow of the Saudi Government and to end the Kingdom's long-standing friendship with the United States. This common threat emphasizes the need for our two governments to coordinate our efforts in intelligence and law enforcement in order to wipe out terrorism.

6. The United States has not designated Saudi Arabia (or any of its agencies or instrumentalities) as sponsors of the September 11 attacks or any other terrorist act. The Executive

 

Branch of the United States Government has stated both publicly and repeatedly that it considers Saudi Arabia to be an ally in the global war against terrorism, and has praised the Kingdom's efforts in the war on terror. As a recent example, the United States Government and the Saudi Government established a joint task force to combat terrorism financing. The agreement to form this joint task force was reached through diplomatic channels that continue to work well between the United States and Saudi Arabia. Through such channels, the breadth and speed of U.S.-Saudi cooperation against the criminals who perpetrated the September 11 attacks and their support network has expanded. The Saudi Government has pledged to the United States Government that it will continue to actively and aggressively work with the United States Government on all fronts to destroy the forces of terror.

      7.      The Saudi Government believes that the continuation of these lawsuits, seeking over one trillion dollars in damages from Saudi Government instrumentalities, sends a confusing and mixed message about the relationship between the Governments of Saudi Arabia and the United States, especially when compared to the history of the United States-Saudi cooperation in the common fight against terrorism. Saudi Arabia is committed to this fight but finds that lawsuits such as these, which are based upon false allegations against Saudi Government officials and entities, are a continuing disruption of the government-to-government cooperative work necessary to accomplish the shared objectives of our countries. The Plaintiffs' allegations fundamentally attack—and ask a branch of the U.S. Government (the courts) to examine and adjudicate—the legitimacy and sufficiency of Saudi Government oversight and regulation of charitable, religious and financial

3



 

institutions that are alleged to have funded terrorist organizations. It is a matter of grave concern to the Saudi Government that the Plaintiffs are asking the U.S. courts to pass judgment on Saudi Government actions and policies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on \_\_1/1/ 1425 hs\_\_, corresponding to February 21, 2004 in Riyadh, Kingdom of Saudi Arabia.

_____
NIZAR BIN OBAID MADANI

4

# Exhibit B

# Summary of Allegations in Consolidated Complaints Against Prince Sultan

References in chart are to paragraph numbers in complaint

| Allegation | Burnett | Ashton | Barrera | Burnett (N.Y.) | Salvo | Tremsky |
|---|---|---|---|---|---|---|
| Bin Laden met with Prince Sultan after Iraq invaded Kuwait in 1990 to offer engineering equipment and suggest recruiting Saudi militants. | 340 | 253 | 255 | 340 | 245 | 180 |
| Prince Sultan is the Second Deputy Prime Minister, Minister of Defense and Aviation, Inspector General, and the Chairman of Supreme Council for Islamic Affairs. | 352 | 265 | 267 | 352 | 257 | 189 |
| Since the Gulf War, Prince Sultan has taken radical stands against western countries and publicly supported and funded several charities sponsoring bin Laden and al Qaeda, including the International Islamic Relief Organization (IIRO), the Muslim World League (MWL), the World Assembly of Muslim Youth (WAMY), and al-Haramain | 353 | 266 | 268 | 353 | 258 | 190 |
| Prince Sultan has been involved in the sponsorship of international terrorism through the IIRO and other Saudi-funded charities. | 354 | 267 | 269 | 354 | 259 | -- |
| The IIRO is direct arm of royal family and sponsors terrorism. The Secretary General of the IIRO thanked Prince Sultan on December 22, 2000 for his support. | 354 | 267 | 269 | 354 | 259 | 181 |
| Prince Sultan expressed hope that Arab nationals who fought alongside the Taliban and al Qaeda will be allowed to return home. | 356 | 273 | 275 | 356 | 265 | 192 |
| The Kingdom set up the Supreme Council of Islamic Affairs to control charitable giving. | 357 | 266 | 268 | 357 | 258 | 193 |

1

| Allegation | Burnett | Ashton | Barrera | Burnett (N.Y.) | Salvo | Tremsky |
|---|---|---|---|---|---|---|
| Prince Sultan could not have ignored the ultimate destinations of charitable funding and could not have overlooked role of Saudi charities in sponsoring and funding al Qaeda. | 358 | - | - | 358 | - | 194 |
| Prince Sultan personally funded charities that sponsor, aid, abet, or materially support bin Laden and al Qaeda: IIRO, al-Haramain, MWL, and WAMY. | 359 | 269 | 271 | 359 | 261 | 195 |
| Prince Sultan's donations since 1994 amount to at least $6 million. | 359 | 269 | 271 | 359 | 261 | 195 |
| In 1994, Prince Sultan gave $266,652 to the IIRO; since 1994, he has donated $2,399,868. These donations evidence material sponsorship and aiding and abetting terrorists. He maintains close relationships with the IIRO and should have known assets were being diverted to al Qaeda. | 360 | 270 | 272 | 360 | 262 | 196 |
| Prince Sultan donated $533,304 during a television fundraiser for the MWL. | 361 | 271 | 273 | 361 | 263 | 197 |
| Prince Sultan is a regular donator to WAMY which has been identified as a "suspected terrorist organization" by the FBI since 1996. | 362 | 272 | 274 | 362 | 264 | 198 |
| Prince Sultan was grossly negligent in oversight and administration of charitable funds; he knew they would be used to sponsor international terrorism, but turned a blind eye. | 363 | - | - | 363 | - | - |

***NOTE***: This chart is based on the following versions of the complaints: Burnett ("Third Amended Complaint," filed Nov. 22, 2002); Ashton ("Third Amended Master Consolidated Complaint," filed Sept. 5, 2003); Barrera ("Complaint," filed Sept. 5, 2003); Burnett (N.Y.) ("Amended Complaint," filed Sept. 5, 2003); Salvo ("Consolidated First Amended Master Complaint," filed Sept. 4, 2003); and Tremsky ("Amended Complaint," filed Aug. 22, 2003). On March 10, 2004, the plaintiffs in Ashton filed a "Fourth Amended Consolidated Master Complaint." The actual amendment, however, consisted only of an amended caption; all substantive allegations related to the Ashton plaintiffs' claims are contained only in the Third Amended Consolidated Master Complaint.

2

# Exhibit C

# Summary of Counts in Consolidated Complaints Against Prince Sultan

References in chart are to count numbers in complaint

| COUNT | Burnett | Ashton | Barrera | Burnett (N.Y.) | Salvo | Tremsky |
|---|---|---|---|---|---|---|
| Torture Victim Protection Act | 2 | 5 | 5 | 2 | 5 | 2 |
| Anti-Terrorism Act | 3 | 4 | 4 | 3 | 4 | 9 |
| Alien Tort Claims Act | 4 | (5) | (5) | 4 | (5) | 3 |
| Wrongful Death | 5 | 1 | 1 | 5 | 1 | - |
| Negligence | 6 | - | - | 6 | - | 4 |
| Survival | 7 | 2 | 2 | 7 | 2 | 5 |
| Negligent/Intentional Infliction of Emotional Distress | 8 | - | - | 8 | - | 6 |
| Conspiracy | 9 | - | - | 9 | - | 7 |
| Aiding & Abetting | 10 | - | - | 10 | - | 8 |
| RICO (1962(a)) | 11 | - | - | 11 | - | 10 |
| RICO (1962(c)) | 12 | - | - | 12 | - | 11 |
| RICO (1962(d)) | 13 | - | - | 13 | - | 12 |
| Punitive Damages | 14 | 7 | 7 | 14 | 7 | 13 |
| Assault & Battery | - | 3 | 3 | - | 3 | - |
| Nuisance | - | - | - | - | - | 15 |
| Property Damage | - | 8 | 8 | - | - | - |

***NOTE***: This chart is based on the following versions of the complaints: Burnett ("Third Amended Complaint," filed Nov. 22, 2002); Ashton ("Third Amended Master Consolidated Complaint," filed Sept. 5, 2003); Barrera ("Complaint," filed Sept. 10, 2003); Burnett (N.Y.) ("Amended Complaint," filed Sept. 5, 2003); Salvo ("Consolidated First Amended Master Complaint," filed Sept. 4, 2003); and Tremsky ("Amended Complaint," filed Aug. 22, 2003). On March 10, 2004, the plaintiffs in Ashton filed a "Fourth Amended Consolidated Master Complaint." The actual amendment, however, consisted only of an amended caption; all substantive allegations related to the Ashton plaintiffs' claims are contained only in the Third Amended Consolidated Master Complaint. Also, all the complaints assert other counts that do not name Prince Sultan as a defendant. See Ashton, Count 6; Barrera, Count 6; Burnett Counts 1, 15; Burnett (N.Y.) Counts 1, 15; Salvo, Count 6; Tremsky, Counts 1, 14.