IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** ) ) ) ) ) | **03-MDL-1570**<br>**ECF Case** |

*Relates to:*

| | |
|---|---|
| Kathleen Ashton, et al.<br>v.<br>Al Qaeda Islamic Army, et al. ) ) ) | 02-CV-6977 (RCC) |
| Ernesto Barrera, et al.,<br>v.<br>Al Qaeda Islamic Army, et al. ) ) ) | 03-CV-7036 (RCC) |
| Thomas E. Burnett, Sr., et al.<br>v.<br>Al Baraka Investment & Development Corp., et al. ) ) ) | 03-CV-5738 (RCC) |
| Gladys H. Salvo, et al.<br>v.<br>Al Qaeda Islamic Army, et al. ) ) ) | 03-CV-5071 (RCC) |
| Walter Tremsky, et al.<br>v.<br>Osama bin Laden, et al. ) ) ) | 02-CV-7300 (RCC) |

## MEMORANDUM IN SUPPORT OF HIS ROYAL HIGHNESS PRINCE SULTAN BIN ABDULAZIZ AL-SAUD'S MOTION TO DISMISS CERTAIN CONSOLIDATED COMPLAINTS

**TABLE OF CONTENTS**

Table of Authorities ......................................................................................................... iii

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND .....................................................................................................3

      A.    Prince Sultan ...............................................................................................3

      B.    Prior Proceedings in Burnett ......................................................................4

            1.    The Third Amended Complaint ......................................................4

            2.    Prince Sultan's Motion to Dismiss .................................................5

            3.    The Plaintiffs' Opposition and Related Pleadings ........................6

            4.    Judge Robertson's Ruling ...............................................................6

      C.    The Consolidated Cases ..............................................................................8

III.  ARGUMENT .........................................................................................................10

      A.    Prince Sultan's Dismissal in Burnett Deserves Substantial Deference ..............10

      B.    The Complaints in the Consolidated Cases Must Be Dismissed As
            Against Prince Sultan................................................................................13

            1.    Standard of Review.......................................................................13

            2.    This Court Lacks Subject-Matter Jurisdiction Because Prince
                  Sultan is Absolutely Immune From Suit Under the FSIA. ........14

                  a.    The FSIA Applies to the Official Acts of Prince Sultan..............14

                  b.    The Commercial-Activity Exception Does Not Apply
                        Because Government Grants to Charities Are Not
                        Commercial Activity......................................................15

                  c.    The Non-Commercial Tort Exception Does Not Apply
                        Because the Plaintiffs Have Failed to Adequately Allege
                        Causation, Prince Sultan Acted Within His Official
                        Discretion, and Plaintiffs Cannot Claim Prince Sultan

Provided Material Support to Terrorists Under This
Exception. ......................................................................................16

3.      This Court Has No Personal Jurisdiction Over Prince Sultan. ..................21

IV.    CONCLUSION...................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) ...............................14

Burger King v. Rudzewicz, 471 U.S. 462 (1985)..................................................................8, 23, 24

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86 (D.D.C. 2003)..................................8

Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003).......................... *passim*

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)...............................................10

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509 (10th Cir. 1991)........................10

Crane Co. v. American Std., Inc., 603 F.2d 244 (2d Cir. 1979) .....................................................10

Degulis v. LXR Biotech., Inc., 928 F. Supp. 1301 (S.D.N.Y. 1996).............................................10

Fickling v. Commonwealth of Australia, 775 F. Supp. 66 (E.D.N.Y. 1991) .................................14

Filetech S.A. v. France Telecom S.A., 157 F.3d 922 (2d Cir. 1998).............................................13

In re Air Crash at Belle Harbor, New York, Nos. 1448 (RWS), 02-Civ.-8411(RWS),
     2003 WL 124677 (S.D.N.Y. Jan. 15, 2003)..............................................................................10

In re Baan Co. Securities Lit., 245 F. Supp. 2d 117 (D.D.C. 2003) ..............................................22

In re Jackson Nat'l Life Ins. Co. Premium Litigation, 209 F.R.D. 134 (W.D. Mich. 2002).........11

In re Korean Air Lines Disaster, 814 F. Supp. 599 (S.D.N.Y. 1993) ............................................11

Kline v. Kaneko, 685 F. Supp. 386 (S.D.N.Y. 1988) ...............................................................16, 20

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163
     (1993) .........................................................................................................................................13

Letelier v. Republic of Chile, 488 F. Supp. 665 (D.D.C. 1980) ....................................................19

Letelier v. Republic of Chile, 748 F.2d 790 (2d Cir. 1984)...........................................................16

Libutti v. United States, 178 F.3d 114 (2d Cir. 1999) ...................................................................23

Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989)...............................................................19

Metropolitan Life Inc. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) .......................22

Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002)................20, 21

Princz v. Fed. Republic of Germany, 26 F.3d 1166 (D.C. Cir. 1994) ...........................................20

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992)......................................................15

Robinson v. Government of Malaysia, 269 F.3d 133 (2d Cir. 2001) ..........................13, 14, 17, 18

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) .........................................................................16, 20

Scott v. Sonnet, Sale & Keuhne, P.A., 989 F. Supp. 542 (S.D.N.Y. 1998)..................................24

Securities & Exch. Comm'n v. Alexander, 160 F. Supp. 2d 642 (S.D.N.Y. 2001).......................25

Shapiro v. Republic of Bolivia, 930 F.2d 1013 (2d Cir. 1991)......................................................24

Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992) ................................20

Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239 (2d Cir. 1996)......................20

Tel Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984)..............................................20

Time, Inc. v. Simpson, No. 02 Civ. 4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec.
22, 2003)...........................................................................................................................................23

United States v. Gaubert, 499 U.S. 315 (1991) .............................................................................20

Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.
1992)..................................................................................................................................................11

Virtual Countries, Inc. v. Republic of S. Africa, 300 F.3d 230 (2d Cir. 2002) .......................13, 17

## DOCKETED CASES

Ashton, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 02-6977 (S.D.N.Y.)...............................1

Barrera, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-7036 (S.D.N.Y.) .............................1

Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 02-1616 (D.D.C.) .............1

Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 03-5738
(S.D.N.Y.) ........................................................................................................................................1

Federal Insurance, et al. v. Al Qaida, et al., C.A. No. 03-6978 (S.D.N.Y.).....................................1

<u>Havlish, et al. v. Sheikh Usama Bin-Laden, et al.</u>, C.A. No. 03-CV-9848 (S.D.N.Y.) ...................9

<u>Salvo, et al. v.Al Qaeda Islamic Army, et al.</u>, C.A. No. 03-5071 (S.D.N.Y.) .................................1

<u>Tremsky, et al. v. Osama bin Laden, et al.</u>, C.A. No. 02-7300 (S.D.N.Y.) .....................................1

<u>York, et al. v. Al Qaeda Islamic Army, et al.</u>, C.A. No. 03-5493 (S.D.N.Y.) .................................1

**STATUTES**

Fed. R. Civ. P. 12(h) ...........................................................................................................2

Fed. R. Civ. P. 12(b) ................................................................................................6, 13, 21

28 U.S.C. § 1603 ...............................................................................................................14

28 U.S.C. § 1604 ...............................................................................................................14

28 U.S.C. § 1605.......................................................................................................... *passim*

**MISCELLANEOUS**

H.R. Rep. No. 94-1487, at 16, <u>reprinted in</u> 1976 U.S.C.C.A.N. at 6615........................................16

## I.     INTRODUCTION[1]

Prince Sultan bin Abdulaziz Al-Saud ("Prince Sultan") – Saudi Arabia's Minister of

Defense and Aviation and third-ranking government official – is named a defendant in seven of

the lawsuits that comprise this consolidated proceeding.[2]  In each of those actions, Prince Sultan

is accused of aiding and abetting the September 11, 2001 terrorist attacks by donating money to

well-established Islamic charities, in Saudi Arabia, with the knowledge that the charities were

funding terrorist activity by Osama bin Laden's Al Qaeda terrorist network.  This allegation is

false and irresponsible.  As the May and November 2003 terrorist bombings in Saudi Arabia

painfully proved, bin Laden is a sworn and determined enemy of the Saudi government, which in

1994 revoked his Saudi citizenship and froze his assets.  It would be irrational for Prince Sultan

or any other Saudi government official to knowingly bankroll bin Laden's terrorist acts, and he

has not done so.

The Court cannot decide the merits of the allegations at this time, but Prince Sultan is

entitled, on grounds of immunity and lack of personal jurisdiction, to an Order dismissing the

complaints in the six consolidated cases addressed by this motion: Ashton, Barrera, Burnett

---

[1] The facts in the foregoing Introduction and Background sections are contained in the attached Declaration of William H. Jeffress, Jr. (the "Jeffress Declaration"), and the exhibits thereto.

[2] Ashton, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 02-6977 (S.D.N.Y.); Barrera, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-7036 (S.D.N.Y.); Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 02-1616 (D.D.C.) [Burnett]; Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 03-5738 (S.D.N.Y.) [Burnett (N.Y.)]; Salvo, et al. v.Al Qaeda Islamic Army, et al., C.A. No. 03-5071 (S.D.N.Y.); Tremsky, et al. v. Osama bin Laden, et al., C.A. No. 02-7300 (S.D.N.Y.); and Federal Insurance, et al. v. Al Qaida, et al., C.A. No. 03-6978 (S.D.N.Y.).  Prince Sultan was also named as a defendant in  York, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-5493 (S.D.N.Y.).  Recently, however, the York plaintiffs have voluntarily dismissed their complaint because it is duplicative of Ashton.  The Federal Insurance plaintiffs filed an amended complaint on March 10, 2004.  The Court has previously endorsed Prince Sultan's and the plaintiffs' stipulation that Prince Sultan respond to the amended complaint within 60 days of service or as otherwise ordered by the Court.

(N.Y.), Salvo, and Tremsky, (the "Consolidated Cases"). Prior to its transfer and consolidation by the Judicial Panel on Multidistrict Litigation ("JPML"), the U.S. District Court for the District of Columbia (the "D.C. Court") dismissed Prince Sultan from Burnett, the most advanced of the consolidated cases. Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003) (Robertson, J.). Specifically, Judge Robertson held that to the extent the charitable contributions attributed to Prince Sultan were in fact Saudi government grants authorized by him in his official capacity, the Foreign Sovereign Immunities Act ("FSIA") provides him absolute immunity from suit. And if – as the plaintiffs contended – the alleged contributions were personal in nature, Judge Robertson held that the courts of the United States lack personal jurisdiction over Prince Sultan. While not binding on this Court in the Consolidated Cases, these rulings, which came after months of extensive briefing, are law of the case in Burnett, and should be afforded substantial deference. More important, Second Circuit law commands the same result reached by Judge Robertson in all of the Consolidated Cases.

Should the Court decline to extend the Burnett rulings to the remaining cases, it would have to consider two additional grounds that were asserted by Prince Sultan in Burnett but not decided by the D.C. Court: *First*, the allegations presented against him in the Consolidated Cases are nonjusticiable under the political-question, act-of-state, and international comity doctrines. *Second*, the complaints fail to state a claim upon which relief can be granted because nowhere do they allege facts that, if true, would support a reasonable inference that Prince Sultan proximately caused the September 11th attacks.[3]

---

[3] In the interests of efficiency, Prince Sultan reserves the justiciability and failure-to-state-a-claim arguments until the Court resolves the threshold questions of foreign sovereign immunity and personal jurisdiction, as previously ruled upon by the D.C. Court. See Fed. R. Civ. P. 12(h)(2), (h)(3).

## II.    BACKGROUND

### A.    Prince Sultan[4]

Prince Sultan is Saudi Arabia's Minister of Defense and Aviation and Inspector General

of its Armed Forces, positions he has held since 1962.  In 1982, he was named Second Deputy

President of Saudi Arabia's Council of Ministers, making him the third-highest ranking official

of the Saudi government, after King Fahd and the Crown Prince.  Prince Sultan is a central figure

in the formulation of Saudi Arabia's foreign policy, including its policy toward the United States

and its participation in the war against Al Qaeda and international terrorism.

Prince Sultan also holds two other government positions that are relevant to these

lawsuits.  First, he is Chairman of the Supreme Council of Islamic Affairs ("Supreme Council"),

a council of senior government officials established in 1995 by King Fahd to carry out the

foreign policy of the Kingdom as it relates to international Islamic affairs.  The Supreme Council

makes recommendations to Saudi Arabia's central governing body, the Council of Ministers, on

requests for assistance received from Islamic organizations based outside of Saudi Arabia.  The

Supreme Council does not supervise or police the activities of recipient organizations, nor does it

initiate or itself make charitable donations.

Second, Prince Sultan heads the Special Committee of the Council of Ministers ("Special

Committee"), a government body originally established in 1962 during the civil war in

neighboring Yemen to advise the King on foreign policy.  Today, the Special Committee

functions as an organ of the government attached to the Office of the Second Deputy President of

the Council of Ministers, Prince Sultan.  The Council of Ministers establishes the budget of the

---

[4] An expanded discussion of Prince Sultan's background and responsibilities in the Saudi
government appears on pages 3-5 of Prince Sultan's Motion to Dismiss in Burnett (Burnett Dkt.#

Special Committee, which is made up entirely of government funds.  Prince Sultan exercises

discretionary control over disbursements by the Special Committee, which have included grants

to Islamic charitable organizations in furtherance of the national and foreign policy of Saudi

Arabia as determined by the Council of Ministers.

### B.    **Prior Proceedings in *Burnett***

### 1.    The Third Amended Complaint

The Burnett plaintiffs filed their Third Amended Complaint ("Complaint") on November

22, 2002.  The allegations against Prince Sultan appear at paragraphs 351 through 363 of the

Complaint.  Putting aside gratuitous references to statements and positions attributed to Prince

Sultan that amount to nothing more than criticisms of Saudi government policy, the Complaint

offers two factual allegations to support the legal claims asserted against Prince Sultan.  The first

spans paragraphs 358 and 359:

> [A]s Chairman of the Supreme Council Prince Sultan could not
> have overlooked the role played by the Saudi charitable entities
> identified herein in financing the al Qaeda.    Despite that
> responsibility and knowledge, Prince Sultan personally funded
> several Islamic charities over the years that sponsor, aid, abet, or
> materially support Osama Bin Laden and al Qaeda: the
> International Islamic Relief Organization (and its financial fund
> Sanabel el-Khair), al-Haramain, Muslim World League, and the
> World Assembly of Muslim Youth.

The second allegation is found at paragraph 363:

> At best, Prince Sultan was grossly negligent in the oversight and
> administration of charitable funds, knowing they would be used to
> sponsor international terrorism, but turning a blind eye.  At worst,
> Prince Sultan directly aided and abetted and materially sponsored
> al Qaeda.

---

110), as well as on the Saudi Embassy's web site, at www.saudiembassy.net/Country/
Government/SultanBio.asp.

Accordingly, the gravamen of the allegation against Prince Sultan in <u>Burnett</u> is that he "personally funded" four charitable organizations that, by virtue of his official position as Chairman of the Supreme Council, he knew or should have known provided financial support to Al Qaeda and, in turn, that those charities did in fact fund Al Qaeda. The Complaint does not allege that Prince Sultan, or even the charities, knew about, participated in, desired to bring about, or even reasonably foresaw the September 11 attacks themselves.

      2.      <u>Prince Sultan's Motion to Dismiss</u>

Prince Sultan voluntarily appeared in <u>Burnett</u> and on April 8, 2003, filed a 68-page Motion to Dismiss. <u>See</u> <u>Burnett</u> Dkt.# 110 (Prince Sultan's Motion to Dismiss). The Motion raised four principal grounds for dismissal of the Complaint:

*First*, to the extent they were made at all, the charitable grants attributed to Prince Sultan in the Complaint were grants of the Saudi government, duly authorized by Prince Sultan in his official capacity and paid with government funds.[5] As such, the FSIA provides Prince Sultan absolute immunity from suit based on these official acts, and no exception to the FSIA applies to defeat immunity on the claims presented in the Complaint.

*Second*, the central issue posed by the claims against Prince Sultan – the role of the high officials of a friendly foreign government in financing terrorism against the United States – presents a classic "political question" the adjudication of which would impermissibly infringe

---

[5] Exhibits to the motion in <u>Burnett</u> included translated copies of the transmittal letters and checks reflecting governmental nature and funding of the grants at issue. They also included declarations from representatives of the four charities in question stating that they had conducted a search of the charities' financial records and were aware of no personal donations by Prince Sultan apart from the official grants indicated by the above-referenced business records. In fact, no grants whatsoever were received from Prince Sultan by at least two of the charities at issue, the Muslim World League and al-Haramain. <u>See</u> <u>Burnett</u> Dkt.# 110, Exs. 2-5. Although Judge Robertson did not take these submissions into account in granting Prince Sultan's motion to dismiss, we nevertheless incorporate them here by reference.

upon the President's constitutional prerogative to conduct foreign relations and undermine important U.S. policy interests abroad.

*Third*, the plaintiffs did not met their burden of establishing a prima facie case for the exercise of personal jurisdiction over Prince Sultan because they failed to allege any facts to establish that he had "minimum contacts" with either the District of Columbia or the United States as a whole.

*Finally*, the plaintiffs failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because, among other reasons, their alleged theory of causation is too attenuated to support a finding that Prince Sultan's actions proximately caused the September 11 attacks.

### 3.  The Plaintiffs' Opposition and Related Pleadings

The Burnett plaintiffs responded to Prince Sultan's Motion to Dismiss with a motion for leave to take jurisdictional discovery by way of depositions of the persons who submitted declarations in support of the Motion.  After two rounds of briefing and oral argument, Judge Robertson denied the plaintiffs' discovery request.  See Memorandum Order of July 7, 2003 (Burnett Dkt.# 195).  Meanwhile, the plaintiffs filed a 75-page memorandum in opposition to the Motion to Dismiss, and Prince Sultan responded with a 37-page reply brief.  Judge Robertson heard oral argument on the motion on October 17, 2003, followed by additional briefing and the presentation of supplemental authority on questions raised by the Court during argument.

### 4.  Judge Robertson's Ruling

Judge Robertson granted Prince Sultan's Motion to Dismiss (as well as that of Saudi Arabia's former Chief of General Intelligence, Prince Turki Al-Faisal) on November 14, 2003. Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003).  In his ruling, Judge Robertson found no need to resolve whether Prince Sultan's alleged contributions were personal

or official in nature. <u>Burnett</u>, 292 F. Supp. 2d at 16. To the extent they were official, he held

that Prince Sultan was entitled to immunity under the FSIA. <u>Id.</u> at 16-21. Judge Robertson

"readily disposed of" the plaintiffs' reliance on the FSIA's commercial-activity exception –

which abrogates immunity in suits based on "commercial activity" of the foreign state in, or

having a direct effect in, the United States – finding that "[t]he act of contributing to a

foundation" lies outside the statute's definition of commercial activity. <u>Id.</u> at 17-18; 28 U.S.C. §

1605(a)(3).

Judge Robertson then moved to the other exception to FSIA immunity alleged by the

plaintiffs: the non-commercial tort exception, which lifts sovereign immunity in suits based on

non-discretionary official conduct causing death or personal injury in the United States. 28

U.S.C. §1605(a)(5). Judge Robertson held that the alleged causal connection between Prince

Sultan and the September 11 attacks was far too remote to satisfy the exception's requirement

that the plaintiffs' injuries be *caused by* the tortious act of the foreign state. Noting that the

exception is to be narrowly construed in light of the limited purpose for which it was enacted – to

remove immunity in suits resulting from automobile accidents caused by foreign diplomats

stationed in the United States – Judge Robertson concluded that to apply the exception here

"would stretch the causation requirement . . . not only to the 'farthest reaches of the common

law,' but perhaps beyond, to terra incognita." <u>Burnett</u>, 292 F. Supp. 2d at 20.

Judge Robertson also found, as an independent and alternative ground for rejecting

application of the non-commercial tort exception, that Prince Sultan's alleged conduct was

"squarely covered" by the "discretionary-function" proviso to the exception. <u>Id.</u> In so doing, he

rejected the plaintiffs' contention that otherwise discretionary official conduct should not, as a

matter of public policy, be protected by the discretionary-function proviso if the conduct was allegedly undertaken to support terrorism or for some other illegal purpose. Id. at 21.

To the extent Prince Sultan's alleged actions were personal in nature, Judge Robertson held that the courts of the United States have no personal jurisdiction over Prince Sultan. In neither the Complaint nor their opposition papers did the plaintiffs point to any facts to suggest that Prince Sultan had the required minimum contacts with the United States. (Judge Robertson called their efforts to establish minimum contacts "desultory."[6] Id.) Relying instead on the U.S. Supreme Court's holding in Burger King v. Rudzewicz, 471 U.S. 462 (1985), the plaintiffs contended that Prince Sultan brought himself within the jurisdiction of the Court by "purposefully direct[ing]" his allegedly tortious conduct at residents of the United States. Judge Robertson rejected this argument, holding that "[t]he [Complaint] stops well short of alleging that Prince Sultan's actions were "expressly aimed" or "purposefully directed" at the United States[.]" Burnett, 292 F. Supp. 2d at 23.

Finally, Judge Robertson reserved judgment on the other grounds raised in Prince Sultan's motion to dismiss. Id.[7]

## C.   The Consolidated Cases

There are eight cases consolidated before this court. Prince Sultan is named as a defendant in Burnett and six other cases. This motion addresses five of those six cases.[8] Apart

---

[6] The plaintiffs' efforts to establish minimum contacts were actually less than "desultory." In his opinion, Judge Robertson appears erroneously to have attributed to Prince Sultan certain speaking engagements and college attendance in the United States by Prince Turki. Burnett, 292 F. Supp. 2d at 22. The record before Judge Robertson reflected no allegations of such activities on the part of Prince Sultan.

[7] Prior to his ruling on Prince Sultan's Motion to Dismiss, Judge Robertson had already dismissed the plaintiffs' RICO and negligence claims. See Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 100-102, 108 (D.D.C. 2003).

from Burnett, Prince Sultan has not been properly served in any of the Consolidated Cases. Nevertheless, Prince Sultan intends to, and hereby does, voluntarily appear in Ashton, Barrera, Burnett (N.Y.), Salvo, and Tremsky.[9]

The complaints in the Consolidated Cases make no factual allegations against Prince Sultan not previously alleged by the Burnett plaintiffs. To the contrary, aside from Burnett (N.Y.), which is a verbatim copy of Burnett, each of those complaints makes *fewer* allegations against Prince Sultan than did the plaintiffs in Burnett. A chart cross-referencing the overlapping allegations in each of the Consolidated Cases, as compared to Burnett, is attached to the Affidavit of William H. Jeffress, Jr., as Exhibit B. As that chart makes clear, the Consolidated Cases are essentially copycat complaints of Burnett, with minor variations, none of which add any substantive factual allegations against Prince Sultan.

The legal claims in the Consolidated Cases are also substantially similar to the 15 counts alleged by the Burnett plaintiffs. A chart cross-referencing the various legal claims is attached to the Jeffress Affidavit as Exhibit C. As that chart makes clear, the only claims added by any of the other Consolidated Cases are an assault and battery allegation in Ashton, Barrera, and Salvo; a nuisance allegation in Tremsky; and a property damage allegation in Ashton and Barrera. None allege different grounds in favor of this Court's subject-matter jurisdiction over the plaintiffs' claims or personal jurisdiction over Prince Sultan.

---

[8] The eight cases consolidated in this MDL, to date, include Burnett, the "Consolidated Cases" addressed by this motion (Ashton, Barrera, Burnett (N.Y.), Salvo, and Tremsky), Federal Insurance, and one case where Prince Sultan is not named as a defendant – Havlish, et al. v. Sheikh Usama Bin-Laden, et al., C.A. No. 03-9848 (S.D.N.Y.). See also supra n.2.

[9] By voluntarily appearing, Prince Sultan nevertheless expressly reserves his right to contest jurisdiction.

III.   **ARGUMENT**

A.   **Prince Sultan's Dismissal in <u>Burnett</u> Deserves Substantial Deference.**

As detailed above, Prince Sultan was dismissed from the <u>Burnett</u> action approximately three weeks prior to the issuance of the JPML's transfer and consolidation order. The grounds for the dismissal – sovereign immunity and lack of personal jurisdiction – if adopted by this Court, would require dismissal of the virtually identical claims in the Consolidated Cases. This rather unique procedural posture presents the Court with the immediate question of what weight to afford Judge Robertson's order of dismissal in <u>Burnett</u>. The following legal and prudential considerations bear on that inquiry.

As a starting point, Judge Robertson's rulings in <u>Burnett</u> remain "law of the case" in that action. The law-of-the-case doctrine prevents relitigation of issues in a single case once they have been decided. <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 815-16 (1988). It "promotes the finality and efficiency of the judicial process," <u>id.</u> at 816, saves litigants and the courts from duplication of efforts, and furthers the goal of consistency in judicial decisions. <u>Crane Co. v. American Std., Inc.</u>, 603 F.2d 244, 248 (2d Cir. 1979) (quoting <u>Zdanok v. Glidden Co.</u>, 327 F.2d 944, 953 (2d Cir. 1964)).

The law-of-the-case doctrine requires an "extremely deferential" standard of review. <u>In re Air Crash at Belle Harbor, New York</u>, Nos. 1448 (RWS), 02-Civ.-8411(RWS), 2003 WL 124677, at *2 (S.D.N.Y. Jan. 15, 2003). Although the Court has the *power* to modify an interlocutory order of an MDL transferor court, <u>see Degulis v. LXR Biotech., Inc.</u>, 928 F. Supp. 1301, 1309 (S.D.N.Y. 1996), courts should be "loathe" to revisit a previously decided issue, "except for rare circumstances." <u>In re Air Crash at Belle Harbor, N.Y.</u>, 2003 WL 124677, at *2. <u>See also Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1516 (10th Cir. 1991)

("[T]raditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court."); see also In re Korean Air Lines Disaster, 814 F. Supp. 599, 601 (S.D.N.Y. 1993) (holding that, under law of the case, motion for reconsideration of decision after MDL transfer "would have to prove especially meritorious to justify a departure from the prior ruling"); In re Jackson Nat'l Life Ins. Co. Premium Litigation, 209 F.R.D. 134, 138 (W.D. Mich. 2002) (holding that law of the case is "particularly applicable in multidistrict litigation where the claims of numerous diverse parties might otherwise result in continuous relitigation of the same issues"). As the Second Circuit explained forty years ago, "'where litigants have once battled for the court's decision, they should neither be required, nor without good reasons permitted, to battle for it again.'" Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting Zdanok, 327 F.2d at 953).

Although the Consolidated Cases present virtually identical claims and factual allegations with respect to Prince Sultan, we recognize that they are separate actions. Judge Robertson's rulings in Burnett therefore do not, strictly speaking, have law-of-the-case status in any of the other cases. Nevertheless, the values of efficiency, fairness, and uniformity that are meant to be served by both the law-of-the-case doctrine and MDL consolidation counsel substantial deference to Judge Robertson's rulings in deciding the present motion. A number of prudential factors lead to that conclusion.

*First*, Prince Sultan's Motion to Dismiss in Burnett was fully and effectively litigated. Briefing on the motion exceeded 200 pages, not including exhibits, and the D.C. Court heard oral argument on both the merits of the motion and the plaintiffs' request for jurisdictional discovery. The Motley Rice firm and its consortium of affiliated lawyers ably represented the plaintiffs' interests, as evidenced not only by their voluminous filings but also by the substantial resources

that they have devoted to the investigation and litigation of the case. See Mar. 5, 2004 Status

Report (filed by the Motley, Rice law firm in Burnett), at 15, 19.

*Second*, adopting Judge Robertson's dismissal of Prince Sultan would result in a

uniformity of rulings among the consolidated cases. Because Prince Sultan was dismissed from

Burnett prior to the active litigation of the other cases, the application of Judge Robertson's

rulings to the remaining cases would be fully consistent with what little law has been developed

in them. It should also be said that the lagging pace of the other cases is a development entirely

of the non-Burnett plaintiffs' own making.[10] Having apparently made the strategic decision to

allow Burnett to proceed ahead of their own cases, the remaining plaintiffs should not be heard

to object to the Burnett outcome.

*Third*, there have been no changes in the facts or the law that would warrant disturbing

Judge Robertson's conclusions. None of the plaintiffs have come forward with new allegations

against Prince Sultan. The Third Amended Complaint remains operative in Burnett, and the

active complaints in the other cases are, for all intents and purposes, mirror images of that in

Burnett. Nor have there been any changes in controlling law or rulings by this Court or the

Second Circuit since the transfer and consolidation that conflict with, or call into question, Judge

Robertson's rulings as to Prince Sultan.

*Fourth*, adopting Judge Robertson's rulings would promote judicial efficiency by

eliminating the need for this Court to consider grounds for dismissal raised by Prince Sultan in

---

[10] The original complaint in Burnett was filed on August 15, 2002. Ashton was filed soon
thereafter on September 4, 2002, and Tremsky was filed on September 11, 2002. After Judge
Robertson denied the first of the motions to dismiss in March 2003, and held extensive oral
argument on four other motions to dismiss in June 2003 in Burnett, the remainder of the cases
were filed: Salvo was filed on July 8, 2003; Burnett (N.Y.) was filed August 1, 2003; and
Barrera was filed September 10, 2003. Sitting on the sidelines while Prince Sultan's motion to

Burnett but not decided by Judge Robertson, i.e., non-justiciability and failure to state claims upon which relief can be granted.

      *Finally* and most importantly, Judge Robertson's rulings are legally correct under both D.C. Circuit and Second Circuit law, as we now show.

**B.     The Complaints in the Consolidated Cases Must Be Dismissed As Against Prince Sultan.**

     **1.     Standard of Review.**

     In considering a typical motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). When addressing arguments raising the FSIA as a basis for dismissal, however, the Court must "look beyond the pleadings to factual submissions, including affidavits, submitted to the court in order to resolve a factual dispute as to whether" an exception to the FSIA applies. Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Where a defendant presents a "prima facie case that it is a sovereign," the plaintiff "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of S. Africa, 300 F.3d 230, 241 (2d Cir. 2002). Thus, when a FSIA claim us raised, the plaintiff bears a much higher burden at the dismissal stage that it does on an ordinary motion under Federal Rules of Civil Procedure 12(b)(1).

---

dismiss was being litigated in the D.C. Court, service of process was not, and even to this date still has not been, effected on Prince Sultan in any of those cases besides Burnett.

## 2.    This Court Lacks Subject-Matter Jurisdiction Because Prince Sultan is Absolutely Immune From Suit Under the FSIA.

The FSIA is the sole method by which the plaintiffs can assert subject-matter jurisdiction over foreign sovereigns in federal court. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989). Immunity is a threshold question that the Court must resolve first. Robinson, 269 F.3d at 139 (citing Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983)). Under the FSIA, "foreign states" and their "instrumentalities" are absolutely immune from suit unless one of several narrowly-drawn exceptions applies. 28 U.S.C. §§ 1603, 1604; Robinson, 269 F.3d at 138.

### a.    The FSIA Applies to the Official Acts of Prince Sultan.

As Saudi Arabia's Minister of Defense and Aviation, Inspector General of its Armed Forces, Second Deputy President of Saudi Arabia's Council of Ministers, Chairman of the Supreme Council, and head of the Special Committee, there can be no doubt that, to the extent the complaints allege that Prince Sultan acted in his official capacity, he is an instrumentality of the Kingdom of Saudi Arabia. See 28 U.S.C. § 1603(a); see also Fickling v. Commonwealth of Australia, 775 F. Supp. 66, 68 (E.D.N.Y. 1991) (government official deemed an instrumentality of foreign state). Therefore, this Court lacks subject-matter jurisdiction unless one of the exceptions to sovereign immunity in the FSIA applies. Argentine Republic, 488 U.S. at 434-35.

Because Prince Sultan has made a prima facie showing that he is entitled to immunity, the burden shifts to the plaintiffs to "come forward with some facts which would allow this Court to find that an exception to the [FSIA] applies." Fickling, 775 F. Supp. at 69. The only exceptions plaintiffs have advanced are the commercial-activity exception in 28 U.S.C. § 1605(a)(2), and the non-commercial tort exception in 28 U.S.C. § 1605(a)(5).

### b.    The Commercial-Activity Exception Does Not Apply Because Government Grants to Charities Are Not Commercial Activity.

The "commercial-activity" exception to sovereign immunity does not apply to these allegations.  This exception provides that a foreign sovereign is not immune in any case:

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

The Supreme Court has stated that only "when a foreign government acts, not as a regulator of the market, but in the manner of a private player within it, [are the foreign sovereign's] actions . . . 'commercial' within the meaning of the FSIA." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (holding that Argentina's issuance of bonds was commercial activity).  The relevant inquiry is "whether the particular actions that the foreign state performs ... are the type of actions by which a private party engages in 'trade . . . or commerce.'" Weltover, 504 U.S. at 614.

The acts of the foreign sovereign at issue here – authorizations of government-funded grants to charitable organizations operating abroad in support of Saudi Arabia's national interests – are not the type of activity that can be undertaken by a private party.  As Judge Robertson noted, the legislative history of the FSIA clearly shows that this is precisely the kind of activity Congress *did not* intend to be defined as "commercial activity": "[A] foreign state's mere participation in a foreign assistance program administered by the Agency for International Development (AID) is an activity whose essential nature is public or governmental, and it would

not itself constitute a commercial activity." H.R. Rep. No. 94-1487, at 16, reprinted in 1976

U.S.C.C.A.N. at 6615; see Burnett, 292 F. Supp. 2d at 18.

Re-characterizing Prince Sultan's activity as "financ[ing]" terrorist organizations – as the

Burnett plaintiffs attempted to do – does not convert it into "commercial activity." See Burnett,

292 F. Supp. 2d at 17. Under Supreme Court and Second Circuit precedent, these activities are

criminal and cannot be "commercial" in nature. Saudi Arabia v. Nelson, 507 U.S. 349, 361

(1993) (alleged detention and torture cannot be commercial activity of foreign state); Letelier v.

Republic of Chile, 748 F.2d 790, 797 (2d Cir. 1984) (criminal activity cannot be "commercial

activity"); Kline v. Kaneko, 685 F. Supp. 386, 391 (S.D.N.Y. 1988) ("Kidnapping cannot be

considered a commercial activity, because a private person cannot lawfully engage in that

activity.").

      **c.**      **The Non-Commercial Tort Exception Does Not Apply Because the Plaintiffs Have Failed to Adequately Allege Causation, Prince Sultan Acted Within His Official Discretion, and Plaintiffs Cannot Claim Prince Sultan Provided Material Support to Terrorists Under This Exception.**

The "non-commercial tort" exception to sovereign immunity also does not apply here.[11]

This exception provides that a foreign sovereign is not immune in any case:

> in which money damages are sought against a foreign state for
> personal injury or death, or damage to or loss of property,
> occurring in the United States and caused by the tortious act or
> omission of that foreign sate or of any official or employee of that
> foreign state while acting within the scope of his office or
> employment . . . .

---

[11] In concluding in Burnett that the non-commercial tort exception did not apply, Judge Robertson nevertheless rejected Prince Sultan's argument that the exception did not apply because the "entire tort" (including the acts of Prince Sultan which undeniably occurred in Saudi Arabia) must have occurred in the United States. Burnett, 292 F. Supp. 2d at 19 n.4. Prince Sultan does not address this ruling in the present motion, but hereby preserves his right to challenge it on appeal.

28 U.S.C. § 1605(a)(5). Congress also provided, however, that the non-commercial tort exception *does not apply* "to any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused . . . ." Id. § 1605(a)(5)(A). Nor does the exception encompass claims for injuries resulting from providing material support to terrorists, which Congress explicitly assigned to a different exception not applicable here. Id. § 1605(a)(7); Burnett, 292 F. Supp. 2d at 20 n.5.

*First*, the causation requirement of § 1605(a)(5) is not satisfied. As previously mentioned, the plaintiffs bear the burden of going forward with some evidence showing that an exception to immunity applies. Virtual Countries, Inc. v. Republic of S. Africa, 300 F.3d 230, 241 (2d Cir. 2002). In this instance, the plaintiffs must present evidence that Prince Sultan's acts *caused* the plaintiffs' injuries. So while the FSIA may not alter the substantive showing of causation ultimately required under the plaintiffs' substantive claims, Robinson, 269 F.3d at 143, it *does* require, in essence, a heightened pleading standard with respect to the factual predicates underlying the plaintiffs' substantive tort claims.[12]

The plaintiffs have offered only the following attenuated causation chain: "Prince Sultan, acting in [his] official capacit[y], funded or provided material resources to those who funded or provided material resources to the terrorists who perpetrated the September 11th attacks." Burnett, 292 F. Supp. 2d at 19. Such a vague allegation of causation, offered without supporting

---

[12] Judge Robertson's decision in Burnett recognizes this heightened evidentiary standard. While declining to decide whether the plaintiffs' attenuated allegations of causation would survive a motion to dismiss on non-FSIA grounds, Burnett, 292 F. Supp. 2d at 19, Judge Robertson recognized that Congress sets the subject-matter jurisdictional limits of the lower federal courts, and, under the FSIA, Congress has concluded that foreign sovereigns ought to be generally immune from suit. Id. To effectuate this broad, congressionally mandated immunity, the courts have required plaintiffs to come forward with some evidence and offer more than mere assertions, lacking any factual predicates, to survive a motion to dismiss on FSIA grounds. See

proof, is simply insufficient to withstand the higher pleading requirement in an FSIA case. See
Robinson, 269 F.3d at 143 (holding that "the district court may well have [to take] an excursion
into the same legal territory that it would visit in the course of deciding the case on the merits)."
In Robinson, the issue was whether the alleged conduct was even tortious. In affirming the
district court's dismissal, the Court in Robinson was concerned that,

> To sustain jurisdiction on generic allegations of [negligence]
> absent an assertion or evidence of a factual predicate for such
> jurisdiction, would invite plaintiffs to circumvent the jurisdictional
> hurdle of the FSIA by inserting vague and conclusory allegations
> of tortious conduct in their complaints – and then to rely on the
> federal courts to conclude that some conceivable non-discretionary
> tortious act falls within the purview of these generic allegations
> under the applicable substantive law. This is at odds with the goal
> of the FSIA to enable a foreign government to obtain an early
> dismissal when the substance of the claim does not support
> jurisdiction.

Robinson, 269 F.3d at 146.

Here, too, all the plaintiffs have alleged are "vague and conclusory allegations" of a
causation chain so attenuated that it "stretch[es] the causation requirement of the noncommercial
tort exception . . . to terra incognita," Burnett, 292 F. Supp. 2d at 20, in the hopes that this Court
will conclude that such "generic allegations" could theoretically support *some* finding of
causation. That is simply an insufficient showing of causation in a motion to dismiss under the
FSIA, where the Court must look past the allegations and the plaintiff must provide some factual
predicate to support its vague and attenuated causation chain.

*Second*, even if the plaintiffs have sufficiently alleged causation, the non-commercial tort
exception does not apply because Prince Sultan was exercising a discretionary power, "clearly ...
'grounded in social, economic, and political policy,'" in "making recommendations to the

---

Robinson, 269 F.3d at 146. The plaintiffs' allegations of causation must meet this same exacting
standard.

Council of Ministers about requests for assistance from Islamic organizations outside Saudi Arabia or, as head of the Special Committee, deciding what disbursements should be made to Islamic charitable organizations." Burnett, 292 F. Supp. 2d at 20-21 (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 814 (1984)).

The plaintiffs in Burnett relied on Letelier v. Republic of Chile, 488 F. Supp. 665, 673 (D.D.C. 1980), and Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989), for the proposition that official action which supports terrorist attacks should not be considered discretionary as a matter of public policy. Judge Robertson rejected that argument. Burnett, 292 F. Supp. 2d at 21 (distinguishing Letelier and Liu because both cases involved government officials directly ordering or aiding the murder of individuals in United States).[13]

There is no support in the Second Circuit for plaintiffs' reliance on Letelier or Liu. The discretionary-function exclusion bars "*any claim*" otherwise covered by the non-commercial tort exception that is based on the performance of a "discretionary function." It does not limit itself to claims premised on negligence or other non-intentional acts. Nor does it exclude claims based on particular categories of alleged official conduct, no matter how heinous. The broad sweep of the discretionary-function exclusion is appropriate because the FSIA "was not intended as human rights legislation. Thus, no matter how allegedly egregious a foreign state's conduct, suits that [do] not fit into one of the [FSIA's] discrete and limited exceptions invariably [are] rejected."

---

[13] In Letelier, the conduct determined to fall outside the discretionary-conduct exception was the confessed involvement of a Chilean intelligence officer in the ordering of and aiding in the actual murder. Letelier, 488 F. Supp. at 665. Similarly, in Liu, the Chinese official was tried and convicted in China for ordering the murder at issue. Liu, 892 F.2d at 1423. The conduct of the foreign sovereign here – namely, Prince Sultan authorizing government grants to Islamic charities – does not remotely approach the conduct found outside the discretionary-function exclusion in Letelier and Liu.

Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87-88 (D.C. Cir. 2002)

(internal citation omitted).[14]

Moreover, even if Prince Sultan authorized the grants in question with the intent to fund

terrorism (which he did not), Prince Sultan's subjective intent, be it malicious or benign, is

irrelevant to the Court's analysis. As the Supreme Court has made clear, "[t]he focus of the

inquiry is not on the agent's subjective intent in exercising the discretion conferred . . ., but on

the nature of the actions taken and on whether they are susceptible to policy analysis." United

States v. Gaubert, 499 U.S. 315, 325 (1991). Here, the nature of Prince Sultan's actions was

nothing more than exercising his legal authority to determine, in his discretion, the amounts and

recipients of grants by the Special Committee.

Thus, there is no basis on which to conclude Prince Sultan was not exercising a

discretionary function in authorizing charitable grants on behalf of Saudi Arabia. The non-

commercial tort exception, therefore, does not apply.

*Finally*, all the plaintiffs have alleged here is that Prince Sultan provided material

resources and support to terrorists. Such claims are not actionable under 28 U.S.C. § 1605(a)(5),

---

[14] Examples of allegedly egregious government conduct found not to have given rise to
jurisdiction under the FSIA include Saudi Arabia's alleged detention and torture of an American
citizen, Saudi Arabia v. Nelson, 507 U.S. 349 (1993), Libya's bombing of Pan Am flight 103,
Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239 (2d Cir. 1996) (decided prior
to the passage of 28 U.S.C. § 1605(a)(7)), the abduction, kidnapping, and forced removal of an
American citizen from Mexico, Kline v. Kaneko, 685 F. Supp. 386, 391-92 (S.D.N.Y. 1988),
Libya's attack on a civilian bus in Israel, Tel Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C.
Cir. 1984) (Edwards, J., concurring) (decided prior to the passage of 28 U.S.C. § 1605(a)(7)),
Germany's imposition of slave labor in Nazi concentration camps, Princz v. Fed. Republic of
Germany, 26 F.3d 1166 (D.C. Cir. 1994), and Argentina's torture of political opponents.
Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992). If true, these alleged
acts certainly would constitute unconscionable violations of international law. But they were not
deemed to be a basis for abrogating sovereign immunity because they fell outside of FSIA's
"limited and discrete" exceptions. The same must be true of Prince Sultan's alleged conduct in
this case.

but rather under § 1605(a)(7), the so-called state-sponsored-terrorism exception to FSIA immunity. Plaintiffs know full well, however, that they cannot claim that the state-sponsored-terrorism exception confers subject-matter jurisdiction on this Court as to their claims against Prince Sultan because Saudi Arabia has not been designated as a state sponsor of terrorism by the U.S. Department of State. 28 U.S.C. § 1605(a)(7)(A); Burnett, 292 F. Supp. 2d at 16 n.3. Plaintiffs cannot be allowed to avoid the explicit limitation placed by Congress on suits against instrumentalities of foreign states for providing material support and resources to terrorists, by purporting to rely upon the non-commercial tort exception. To do so would eviscerate the very purpose of § 1605(a)(7), which was to provide a vehicle for actions against those who materially support and provide resources to terrorists who are designated state-sponsors of terrorism, while maintaining foreign sovereign immunity for similar claims against those *not* so designated. See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 88 (D.C. Cir. 2002) (holding that original FSIA did not encompass claims of state-sponsored terrorism because it was considered an "immunized form[] of state activity"); see alo Burnett, 292 F. Supp. 2d at 20 n.5.

Because none of the exceptions to immunity apply, this Court has no subject-matter jurisdiction over Prince Sultan, and the Consolidated Complaints should be dismissed as to him under Federal Rule of Civil Procedure 12(b)(1).

### 3.    This Court Has No Personal Jurisdiction Over Prince Sultan.

If, as the Burnett plaintiffs argued to Judge Robertson, there is a genuine factual dispute as to whether Prince Sultan contributed money to the charities in his *personal* capacity, so as to remove FSIA immunity, the complaints in the Consolidated Cases must nevertheless be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The burden is on the plaintiffs to establish that this Court has personal jurisdiction over Prince Sultan,

and the plaintiffs must present "legally sufficient allegations of jurisdiction." Metropolitan Life

Inc. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Prince Sultan has no

traditionally recognized minimum contacts with the United States, and plaintiffs' allegations fall

far short of alleging that Prince Sultan's alleged actions were "expressly aimed" or "purposefully

directed" at the United States.[15]

None of the complaints in the Consolidated Cases allege that Prince Sultan had the

requisite minimum contacts with the United States. The entirety of the allegations in all six

complaints regarding Prince Sultan's contact with the United States is that he is the (ex-officio)

Chairman of the Board of Saudi Arabian Airlines, "which does business in the United States and

internationally." Burnett, ¶340; Ashton, ¶253; Barrera, ¶255; Burnett (N.Y.), ¶340; Salvo, ¶245;

Tremsky, ¶180.[16] Such an allegation is clearly insufficient to establish that Prince Sultan has had

minimum contacts with the United States. See, e.g., In re Baan Co. Securities Lit., 245 F. Supp.

2d 117, 130 (D.D.C. 2003) (no personal jurisdiction over "control person," such as director, of

foreign corporation having United States office because corporation not alter ego of control

person).

---

[15] Prince Sultan also argued in Burnett that the plaintiffs had not adequately alleged personal jurisdiction by conspiracy. Judge Robertson did not address that argument, though it is equally applicable now. For a fuller description of that argument, see See Defendant His Royal Highness Prince Sultan bin Abdulaziz Al-Saud's Motion to Dismiss, at 41-43 (Burnett Dkt.# 110), which we hereby incorporate and reassert as an additional basis for dismissal.

[16] Additionally, all the complaints allege that certain unnamed members of the Saudi Royal Family own substantial assets in the United States and do substantial business in the United States. Burnett, ¶431; Ashton, ¶296; Barrera, ¶298; Burnett (N.Y.), ¶431; Salvo, ¶326; Tremsky, ¶187. Such allegations are clearly insufficient to support an allegation of personal jurisdiction over Prince Sultan. There are estimated to be several thousand members of the Saudi "Royal Family," whose contacts with the United States undoubtedly range from extensive to nonexistent. That fact is irrelevant to assessing whether this Court has personal jurisdiction over Prince Sultan.

Nor have the plaintiffs offered any allegations to support a contention that Prince Sultan purposefully directed any actions at the United States. Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . ."); see also Libutti v. United States, 178 F.3d 114, 123 (2d Cir. 1999) (purposefully directing conduct at forum state required). As an initial matter, the plaintiffs have failed to allege that Prince Sultan had any personal involvement in the September 11th attacks, or any prior knowledge of them. See Time, Inc. v. Simpson, No. 02 Civ. 4917 (MBM), 2003 WL 23018890, at *5, (S.D.N.Y. Dec. 22, 2003) (conclusory allegations cannot suffice to show personal jurisdiction based on defendants' personal involvement in conduct giving rise to plaintiff's injuries).

At best, then, the plaintiffs' allegations state a theory that Prince Sultan made charitable contributions to organizations he either knew or should have known were providing funds to a network of terrorists who had, through Osama bin Laden, publicly called for violence toward Americans. As Judge Robertson found, however, foreseeability of harm in the United States does not satisfy the "purposefully directed" test. Both this Court and the U.S. Supreme Court have explicitly rejected the plaintiffs' foreseeability argument as a substitute for rigorous minimum contacts analysis:

> Although it has been argued that foreseeability of causing injury in another [forum] should be sufficient to establish such [minimum] contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction.

Burger King, 471 U.S. at 474 (internal citation omitted);[17] Scott v. Sonnet, Sale & Keuhne, P.A.,
989 F. Supp. 542, 544 (S.D.N.Y. 1998). Accordingly, the Burger King Court found that the
defendant (a Burger King franchisee in Michigan) had minimum contacts with the forum state
(Florida) not because it was foreseeable to him that his actions could result in injury to Florida
residents, but because he engaged in specific actions that created a "substantial connection" with
the forum, Burger King, 471 U.S. at 475-76,  including negotiating a franchise agreement with
Burger King's Miami headquarters calling for "a 20-year relationship that envisioned continuing
and wide-reaching contacts with Burger King in Florida," agreeing to a contractual provision that
all disputes would be governed by Florida law, "carr[ying] on a continuous course of direct
communications by mail and by telephone [with Burger King's Miami headquarters]," failing to
make contractually-required payments in Miami, and using and maintaining Burger King's
proprietary information. Id. at 479-81. None of the complaints here point to any such quantum
of contacts.

Furthermore, Burger King also held that the "purposefully directed" standard "ensures
that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or
'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person.'" Id. at

---

[17] The Burger King holding that forseeability cannot suffice to establish personal jurisdiction
where traditional minimum contacts are absent further underscores why the non-commercial tort
exception to FSIA immunity cannot apply. Congress made clear that the burden for establishing
subject-matter jurisdiction under the FSIA is *higher* than the burden for establishing personal
jurisdiction. Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1020 (2d Cir. 1991). Thus, if the
Court were to find that the plaintiffs' paltry allegations of causation – which, like their
allegations of personal jurisdiction, amount to nothing more than a foreseeability argument
without any factual predicate to support them – satisfy the non-commercial tort exception, the
Court would necessarily be finding that the plaintiffs have cleared a higher hurdle of subject-
matter jurisdiction based on allegations that cannot even clear the *lower* hurdle of personal
jurisdiction under Burger King. Such a result would violate the Due Process Clause and conflict
with the purposes of the FSIA: to enable a foreign government to obtain an early dismissal when
the substance of the claim does not support jurisdiction.

475 (quoting <u>Helicopteros Nacionales de Colombia, SA v. Hall</u>, 466 U.S. 408, 417 (1984));

<u>accord</u> <u>Securities & Exch. Comm'n v. Alexander</u>, 160 F. Supp. 2d 642, 656 (S.D.N.Y. 2001)

(finding that foreseeability can be *relevant* in conducting the personal-jurisdiction analysis, but

holding that plaintiff must still show that the defendant purposefully availed himself of the

privilege of conducting activities within the forum state, a requirement that "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts") (quoting <u>Burger King</u>, 471 U.S. at 474, 475).  The foreseeability theory

espoused in all the complaints here simply ignores the "unilateral activity" of the actual

September 11th terrorists.  Personal jurisdiction cannot be exercised over Prince Sultan on the

basis of their actions.

## IV.   CONCLUSION

Judge Robertson's prior rulings in <u>Burnett</u> settled the extensively litigated question of the

Court's subject-matter and personal jurisdiction over Prince Sultan.  Second Circuit precedent

commands the same results in the Consolidated Cases.  There is no good reason why the prior

rulings should be disturbed in <u>Burnett</u> or that a different result should be adopted in the

Consolidated Cases.  Accordingly, the Court should dismiss the claims against Prince Sultan in

<u>Ashton</u>, <u>Barrera</u>, <u>Burnett (N.Y.)</u>, <u>Salvo</u>, and <u>Tremsky</u>.  A draft conforming order has been

transmitted via e-mail to the Clerk of the Court, pursuant to the Court's Guidelines for Electronic

Case Filing.


Dated: March 19, 2004                    Respectfully submitted,


                                         ___S/_____

                                         William H. Jeffress, Jr. (admitted *pro hac vice*)
                                         D.C. Bar No. 041152

Christopher R. Cooper (admitted *pro hac vice*)
D.C. Bar No. 453387

Jamie S. Kilberg (admitted *pro hac vice*)
D.C. Bar No. 480207

Sara E. Kropf (admitted *pro hac vice*)
D.C. Bar No. 481501

BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
Phone:      (202) 639-7700
Fax:        (202) 639-7890