**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC) ECF Case |

*This document relates to:*

  *Estate of John P. O'Neill, et al.  v. Al Baraka Inv. & Dev. Corp., et al.*, 04-CV-1923 (RCC)

## O'NEILL PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO AL HARAMIN ISLAMIC FOUNDATION, INC.'s MOTION TO DISMISS  PERTAINING TO CERTAIN RICO ISSUES ONLY

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, P.C.**

111 Broadway, 13th Floor
New York, NY 10006
212.242.2232

*Attorneys for the Plaintiffs*

On the Memorandum:

Jerry S. Goldman, Esquire (JG 8445)
Gina M. MacNeill, Esquire (GM 0581)
Frederick J. Salek, Esquire (FJS 8565)

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………….i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTORY  STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ..................................................................................................................... 8

I.    GOVERNING STANDARD OF LAW AS TO PLEADINGS:  THE
ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE SUFFICIENT UNDER THE
NOTICE PLEADING REQUIREMENTS OF THE FEDERAL RULES, AND, IN
THE ALTERNATIVE, PLAINTIFFS SHOULD BE PERMITTED TO AMEND
THEIR COMPLAINT. ................................................................................................. 8

    A.The   Legal   Standards   of   Motions   for   Failure   to   State   a   Claim.
...............................................................................**Error! Bookmark not defined.**

II.    THE O'NEILL PLAINTIFFS HAVE STANDING TO MAINTAIN THEIR
RICO CLAIMS NOTWITHSTANDING THE FACT THAT ONE ASPECT OF
THEIR CLAIM RELATES TO THE MURDER OF INNOCENT VICTIMS BY THE
DEFENDANTS. ........................................................................................................... 9

    A.The Estate and Heirs of Murder Victims Have Standing to Pursue RICO
Claims. .................................................................................................................... 9

    B.The Complaint Further Alleges Direct Damages to the Property of the
Plaintiffs.................................................................................................................. 12

III.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR RICO CLAIMS.......... 14

CONCLUSION.................................................................................................................. 18

APPENDIX OF APPLICABLE RULES......................................................................... 19

CERTIFICATE OF SERVICE ....................................................................................... 200

i

# TABLE OF AUTHORITIES

## Cases

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 2000 U.S. Dist. LEXIS  16399
(SDNY 2000) ................................................................................................ 17

Berg v. First Interstate Ins. Co., 915 F.2d 460 (9th Cir. 1990) ..................................... 9, 10

Davidson v. Jones, 112 A.D. 254, 98 N.Y.S. 265 (1st Dept. 1906) .................................... 1

Drake v. B.F. Goodrich Co., 82 F.2d 638 (6th Cir. 1986) .................................................. 9

Fleishhauer v. Feltner, 879 F.2d 1290 (6th Cir. 1989) ...................................................... 9

Genty v. Resolution Trust Corp., 937 F.2d 899(3d Cir. 1991) ........................................... 9

Grogan v. Platt, 835 F.2d 844, 847 (11th Cir. 1988), cert. denied, 488 U.S. 981 (1988)  10

Laborers Local 17 Health and Benefit Fund v. Philip Morris, 191 F.3d 299 (2nd Cir.
1999) .............................................................................................................. 11

Napoli v. United States, 45 F. 2d 680 (2nd Cir.) ............................................................ 17

National Association for Women, Inc. v. Scheidler, 510 U.S. 249 (1994)......................... 9

Rasul v. Bush, 124 S. Ct. 2686, 2004 U.S. LEXIS 4760 .................................................. 5

Reves v. Ernst & Young, 507 U.S. 170 (1993)................................................................. 17

Rockland-Rockport Lime Co. v. LearyRockland-Rockport Lime Co. v. Leary, 203 N.Y.
469 (1911) ........................................................................................................ 1

Rylewicz v. Beaton Servs. Ltd., 888 F.2d 1175 (7th Cir. 1989)........................................ 9

Salinas v. United States, 522 U.S. 52 (1997)................................................................... 15

Sedima v. Imrex Co., 473 U.S. 479 (1985)................................................................... 9, 20

Shaw, Executor of the Estate  of Leslie Shaw v. Rolex Watch USA, Inc., 776 F. Supp.
128 (S.D. N.Y. 1991) ....................................................................................... 13

The National Asbestos Workers Medical Fund, et al v. Philip Morris, Inc., et al, 74
F.Supp.2d 221 (E.D.N.Y. 1999) ............................................................... passim

United States v. Ciancaglini, 858 F.2d 923 (3d Cir. 1988)............................................... 16

United States v. Russotti, 717 F. 2d 27 (2nd Cir. 1983) .................................................... 16

Von Bulow v. Von Bulow, 634 F. Supp. 1284 (S.D.N.Y. 1986) ...................................... 13

**Statutes**

18 U.S.C. Section 1631 ............................................................................................... 11

18 U.S.C. Section 1962 ........................................................................................... passim

18 U.S.C.S. Section 1964(c) ................................................................................... passim

**Other Authorities**

Section 904(a) of the Organized Crime Control Act of 1970, P.L. 91-452, Title IX, Sec.
    904, 84 Stat. 947, 1970 U.S. Code Cong. & Admin. News, 1104 ................................ 15

**Rules**

Federal Rules of Civil Procedure Rule 8     …………………………………..passim

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................... passim

Federal Rules of Civil Procedure Rule 15 ...................................................................... 18

E.P.T.L. Section 1-2.13 ................................................................................................... 1

E.P.T.L. Section 1-2.7 .................................................................................................... 1

S.P.C.A.. Section 103(2),(34) ........................................................................................ 1

## INTRODUCTORY STATEMENT

This Memorandum of Law is submitted on behalf of plaintiffs, THE ESTATE OF JOHN P. O'NEILL, SR., *et al.,* ("O'Neill Plaintiffs")[1] in partial response to the Motion to Dismiss the Consolidated Personal Injury Complaints submitted by defendant AL HARAMAIN ISLAMIC FOUNDATION, INC. ("Al Haramain" or "AHIF").

In its Memorandum of Law, the Defendant challenged the legal sufficiency of a number of aspects of the various complaints filed by the Personal Injury Plaintiffs,[2] and asserted that this Court lacks personal jurisdiction of the Defendant. As set forth in footnote one in the Personal Injury Plaintiffs Consolidated Memorandum of Law (the "Consolidated Memorandum"), in the interest of judicial economy and efficiency, the Personal Injury Plaintiffs have elected to file a consolidated response to most of the issues raised by the Defendant in its motion. The O'Neill Plaintiffs adopt and join in

---

[1] The named Plaintiffs consist of the Estate of the Decedent, together with certain named heirs at law, and a proposed class consisting of others similarly situated. Second Amended Complaint (hereinafter cited as "SAC ¶ ____") 16, 18, 19, 20, 21.   Class certification has not yet been sought.

The decedent, John P. O'Neill, Sr., was murdered on September 11, 2001 as a result of the activities committed by the Defendants named herein, as well as the other companion O'Neill cases of *Estate of John P. O'Neill, et al. v. Republic of Iraq, et al.,* case no. 04-CV-1076 (RCC) and *Estate of John P. O'Neill, et al. v. Kingdom of Saudi Arabia, et. al.,* case no. 04-CV-1922, as alleged in the Complaint and the companion RICO Statement(s).

The Estate is standing in the stead of the decedent in accordance with the laws of the State of New York, based upon an appointment by the Surrogate's Court. SAC Para. 17.   See, generally, EPTL §§ 1-2.13, 1-2.7; S.C.P.A. 103 (2), (34); <u>Rockland-Rockport Lime Co. v. Leary</u><u>Rockland-Rockport Lime Co. v. Leary</u>, 203 N.Y. 469 (1911); <u>Davidson v. Jones</u>, 112 A.D. 254, 98 N.Y.S. 265 (1st Dept. 1906); In addition to the named Plaintiffs, the SAC describes a proposed class in ¶¶ 14, 15 and 127.

[2] The Personal Injury Plaintiffs consist of plaintiffs in *Ashton v. Al Qaeda Islamic Army*, 02-CV-6977 (RCC); *Burnett v. Al Baraka Investment and Development Corp.*, 03-CV-5738 (RCC); *Estate of O'Neill v. Al Baraka Investment and Development Corp.*, 04-CV-1923 (RCC); *Salvo v. Al Qaeda Islamic Army*, 03-CV-5071 (RCC); and *Tremsky v. Osama Bin Laden*, 02 CV-7300 (RCC).

each and every factual assertion and point of law as set forth in the Consolidated Memorandum.

The O'Neill Plaintiffs, unlike the other Personal Injury Plaintiffs, have included a Civil RICO cause of action, under 18 U.S.C. Section 1964(c),  SAC Paragraphs 176-180 (Count 10), supplemented by the O'Neill Plaintiffs' RICO Statement Applicable to Al-Haramain Islamic Foundation, Inc. dated December 16, 2004[3] (hereinafter cited as "RICO Statement para.___").  Defendant challenged this cause of action in points VI and VII of their Memorandum of Law, and the O'Neill Plaintiffs respond to that challenge herein.

The O'Neill Plaintiffs respectfully suggest that they have the requisite standing to bring a RICO claim, and further submit that such claims were adequately pled, as set forth in the Second Amended Complaint and as supplemented by the RICO Statement. To the extent this Honorable Court disagrees as to the latter, the O'Neill Plaintiffs requests leave to amend.

### Factual Background

The O'Neill Plaintiffs, and the other Personal Injury Plaintiffs, filed suit against Al Haramain which consists of a number of inter-related organizations, all of which are part of a singular group, Al Haramain Islamic Foundation (collectively "Al Haramain").[4]

---

[3] The O'Neill Plaintiffs' RICO Statement, filed December 16, 2004, is deemed an amendment to the Plaintiffs' Complaint by incorporation by reference. Case Management Order #2, ¶ 14.

[4] See, SAC ¶ 24, which reads, in pertinent part "…Al-Haramain Islamic Foundation, Inc. a/k/a Al-Haramain Islamic Foundation a/k/a Islamic Al-Haramain (including Al Haramain Foundation of Saudi Arabia as well as any and all subsidiary, affiliate, related, and/or branch offices thereof, including, without limitations, all of the following, each of whom is identified as a defendant herein:  Al Haramain Islamic Foundation (Saudi Arabia) AND …."  See Also SAC ¶¶ 110, 112; RICO Statement ¶ 2.  Plaintiffs' position is that it is a single organization with various branches.

Defendant Al Haramain, among many others, "conspired with Osama bin Laden, al Qaida, Iraq, and the Taliban to raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al Qaida in order to support and finance their terrorist activities" including but not limited to, the September 11th attacks.  SAC ¶ 25.   A number of the charities named in the complaint (including Al Haramain) were alleged to "operate legitimately but also maintain a secret dual role as al Qaeda front organizations" and thereby actively support its terrorist activities and goals.  SAC ¶ 25.   It was alleged that the Defendant was "a charity front for al Qaeda and Osama bin Laden and provides direct material support to al Qaeda."  SAC ¶ 111.  By way of example, Defendant Al Haramain maintained bank accounts with Al Rajhi Bank, one of the alleged co-conspirators; it served on a committee with other Saudi banks and charities to support the "heroes of the Al Quds uprising " (Intifada); that it conducted joint fund raising operations with other co-conspirator charities such as WAMY or IIRO.  SAC ¶¶ 39, 67, 111.[5]  Certain Al Haramain branches have been designed by the United States Government, as terrorist entities and have had their assets frozen because they are clearly linked to terrorist financing.  RICO Statement, Exhibit A. These branches are controlled, including their funding, management, and direction, by Al Haramain.  SAC ¶ 113.

Al Haramain, as part of its modus operandi, uses its humanitarian mission to disguise the financing of terrorist operations.  SAC ¶ 116.  Al Haramain has participated in a conspiracy to support terrorism and to obfuscate the roles of the various participants

---

Alternatively, we are pleading that it is separate organizations, run as a common organization and entity.

[5] The complaint further details allegations as to IIRO (International Islamic Relief Organization, see generally SAC ¶¶. 89-95, plus IIRO RICO Statement) and WAMY (World Association of Muslim Youth, see, generally, SAC ¶¶ 123-5, plus WAMY RICO Statement).

and conspirators in the terrorist enterprise with knowledge that their support would be used to commit attacks against the United States, and which, in fact, culminated in the heinous attacks of September 11, 2001, causing the deaths of the plaintiffs and the destruction of their property.  SAC ¶¶ 157, 176; RICO Statement ¶ 5b. AHIF actions, as described in the O'Neill pleadings, were part of a conspiracy to commit murder and arson.  RICO ¶ 5b.  AHIF agreed to form and associate itself with the Enterprise[6] and agreed to commit more than two predicate acts, *i.e.,* multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. RICO ¶ 5b.

The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed and organization called "The Foundation" or "al Qaida."  Al Qaida was intended to serve as a foundation upon which to build a global Islamic army.  In February, 1998, a declaration was issued, following the holding of a terrorist summit, announcing the formation of the International Islamic Front for the Jihad Against Jews and Crusaders, the precursor of which was the Muslim Brotherhood and the Islamic Jihad.  The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein.  Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi-American regimes that are not true to Islam; and (iii) punishing Israel,

---

[6] The Enterprise is defined alternatively in the RICO statement.  <u>See</u> RICO Statement ¶ 6g.

and the United States for its perceived support of Israel.  The Enterprise does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success.  AHIF fits neatly into this framework by raising funds for and providing funding to an otherwise providing material support for the members of the Enterprise who engaged in the Attack.  RICO Statement ¶ 6b.

The Plaintiffs further alleged that AHIF is associated with the Enterprise; that AHIF is a member of the Enterprise, and is separate and distinct from the Enterprise; and that, AHIF intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack. RICO Statement ¶¶ 7d, 7e, 7f.[7]

The misconduct of the Defendant was specifically described, by the O'Neill Plaintiffs, in accordance with notice pleading purposes, at this early stage of the litigation, as follows:

> AHIF and the AHIF Entities are private charitable organizations that are supposed to provide a variety of humanitarian services to Muslims worldwide.  It has a vast network of offices and representatives spanning fifty nations.  AHIF and the AHIF Entities are a charity front for al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad

---

[7] In support of its jurisdictional basis, the O'Neill Plaintiffs alleged that The RICO statement described, for example, the relationship between the Enterprise and the racketeering activities conducted by AHIF, and its impact on US commerce, which directly impacts on jurisdiction and the RICO 'nexus' requirement, by declaring that they rely heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce.  The O'Neill Plaintiffs further pled that the "… enterprise and the racketeering activities conducted, engaged in, and/or transacted business within and in the United States and elsewhere, and utilized, possessed, used, transferred, owned, leased, operated, and/or controlled assets in the United States and elsewhere, and that the activities and actions of the Enterprise affect interstate commerce as demonstrated by the Attack itself, which caused damage to the United States economy and property and businesses situate therein.  See Rasul v. Bush, 124 S.Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, *8 (stating that the Attack "severely damaged the United States economy")." RICO Statement ¶ 10.

Against Jews and Crusaders, and Osama bin Laden and provides direct material support to al Qaida. AHIF and the AHIF Entities use their humanitarian mission to disguise its financing of terrorist operations.

AHIF and the AHIF Entities have long provided financial services and other forms of material support to terrorist organizations, including al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders. Indeed, AHIF and the AHIF Entities have long acted as a fully integrated component of Al Qaida's world wide logistical and financial support infrastructure, and provided material support and resources to al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and other affiliated foreign terrorist organizations.

AHIF and the AHIF Entities have offices all over the world from which it coordinates its support for the Enterprise, Radical Muslim terrorism, and/or the al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and an interlocking management by which it effectuates that support. For example, Aqeel Adbulaziz Al-Aqil, a Saudi, is Secretary General of the Saudi AHIF located in Riyadh and president of the Oregon AHIF. Mansour Al-Kadi, a Saudi, is deputy director of the Oregon AHIF.

AHIF and the AHIF Entities have advertised their connection to al Qaida. AHIF's website used to have a direct link to the al Qaida site about the Chechnyian operations (qoqaz.com). The website is part of the al Qaida propaganda organization, Azzam Publications group of websites, including qoqaz.com, qoqaz.net, and azzam.com (among others).

Numerous branches of AHIF, including Afganistan, Albania, Bangladesh, Bosnia, Ethiopia, Herzegovina, Indonesia, Kenya, the Netherlands, Tanzania and Pakistan, have been designated as sponsors and supporters of al Qaida and affiliated Foreign Terrorist Organizations ("FTOs"). The United States government has designated two al-Haramain branches, in Bosnia and Somalia, as terrorist entities and has frozen the assets of both because they are clearly linked to terrorist financing. Both branches are controlled, including their funding, management, and direction, by the central Al-Haramain headquarters in Riyadh, Saudi Arabia. Additionally, AHIF was banned from Kenya after the 1998 U.S. Embassy bombings.

When viewed as single entity, AHIF is on of the principle Islamic organizations providing support for the al Qaida network, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and promoting militant Islamic doctrine worldwide.   Under the leadership of Aqeel Abdulaziz Al-Aqil, the founder and long-time leader of AHIF field offices and AHIF representatives operating throughout Africa, Asia, Europe and North America provided financial and material support to the al Qaida network.

Also under Aqeel Abdulaziz Al Aqil's leadership, AHIF and the AHIF Entities implemented their tasks through their offices and representatives, which span more than fifty countries around the world.   AHIF maintained nine general committees and several other "active Committees" that included the "Continuous Charity Committee, African Committee, Asian Committee, Da'wah and Sponsorship Committee, Masjid Committee, Seasonal Projects Committee, Doctor's Committee, European Committee, Internet and the American Committee, the Domestic Committee, Zakaat Committee and the Worldwide Revenue Promotion Committee."

In the Southeast Asia, AHIF served as primary source of al Qaida funding.

In Africa, AHIF was heavily involved in plotting terrorist attacks against Americans, including but not limited to the suicide bomber attacks against the U.S. Embassies in the Nairobi and Dar es Salaam in which 224 people were killed.

AHIF's Pakistan office provided funding and logistical support for the acquisition and delivery of Zenit missiles, Sting anti-aircraft missiles, and hand-held anti-tank weapons to al Qaida and al Qaida affiliated militants.

In Europe, AHIF sponsored al Qaida activity through the al Nur Mosque which served as a meeting place, recruitment center and base of operations for al Qaida within Germany.  At the direction of the Kingdom of Saudi Arabia, AHIF contributed in excess of $1 million to the Mosque, funding the purchase of the land for the Mosque as well as its construction.

AHIF also sponsored al Qaida operations in Chechnya and Kosovo through it participation in the Saudi Joint Relief Committee (the "SJRC").  The SJRC offices in Pristine, Kosovo served as a cover for al Qaida operatives.  Furthermore, between 1998 and 2000, the Kingdom of Saudi Arabia, through the SJRC, diverted more than

$74 million to al Qaida members and loyalists affiliated with the SJRC bureaus.

In the United States, AHIF's Ashland, Oregon office committed violations of the Internal Revenue Code, Money Laundering Control Act and Bank Secrecy Act which funneled money to al Qaida.

AHIF and the AHIF Entities thereby have, for a period of many years, provided critical financial and logistical support to al Qaida to support that terrorist organization's global jihad.  The September 11th Attack was a direct, intended and foreseeable product of AHIF's and the AHIF Entities' participation in al Qaida's jihadist campaign. RICO Statement, EXHIBIT A, QUESTION 2. [8]

## ARGUMENT

I.  **GOVERNING STANDARD OF LAW AS TO PLEADINGS:  THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT ARE SUFFICIENT UNDER THE NOTICE PLEADING REQUIREMENTS OF THE FEDERAL RULES, AND, IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE PERMITTED TO AMEND THEIR COMPLAINT.**

In the interest of judicial efficiency, the O'Neill Plaintiffs adopt and incorporate Part I, Applicable Legal Standards, of the Consolidated Memorandum as their statement of legal standards applicable to the sufficiency of Plaintiffs' Complaint under Rule 8 and in opposition to the Defendant's Motion under Rule 12(b)(6).[9]

---

[8] The O'Neill Plaintiffs' RICO Statement also alleges, the connection between Al Haramain funds and Al Qaida, by way of example:  The O'Neill Plaintiffs' RICO Statement alleges that, "[a]fter being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including the Al Haramain, which laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors, in part via certain imams at mosques who were willing to divert the *zakat*, the mandatory charitable contributions required of all Muslims", that the funds thus raised were the used to support the terrorist training camps and the recruitment and training of terrorists around the world, including the 19 who executed the September 11 attack, and that the September 11 Attack would not have been possible without the support of Al Qaida fronts like Al Haramain.  O'Neill Plaintiffs' RICO Statement, ¶ 14.

[9] The applicable rules and statutes are reproduced in the Appendix.

## II. THE O'NEILL PLAINTIFFS HAVE STANDING TO MAINTAIN THEIR RICO CLAIMS NOTWITHSTANDING THE FACT THAT ONE ASPECT OF THEIR CLAIM RELATES TO THE MURDER OF INNOCENT VICTIMS BY THE DEFENDANTS.

*(Addressing Point VI of Defendant's Memorandum of Law)*

The Racketeer Influenced and Corrupt Organizations Act ("RICO") prohibits certain unlawful racketeering activities.  18 U.S.C.S. § 1962.  Civil actions against those involved in racketeering activities are permitted under 18 U.S.C.S. Section 1964(c).  These civil actions may be brought by "[a]ny person injured in his business or property by reason of a violation of section 1962."

The Defendant contends that the Plaintiffs failed to alleged a cognizable injury to "business or property" and, as such, lack the requisite standing to pursue such a RICO claim.  citing <u>National Association for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 255 (1994).  Plaintiffs, however, respectfully submit, that they have properly pled such a recoverable injury.

### A. The Estate and Heirs of Murder Victims Have Standing to Pursue RICO Claims.

Plaintiffs recognize that those Courts of Appeals which have directly addressed this issue, which does not include the Second Circuit, have frequently found that plaintiffs in typical personal injury cases may lack requisite standing based upon a purported lack of injury to business or property.  <u>Rylewicz v. Beaton Servs. Ltd.</u>, 888 F.2d 1175 (7th Cir. 1989); <u>Berg v. First Interstate Ins. Co.</u>, 915 F.2d 460 (9th Cir. 1990); <u>Fleishhauer v. Feltner</u>, 879 F.2d 1290 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990); <u>Drake v. B.F. Goodrich Co.</u>, 82 F.2d 638 (6th Cir. 1986); <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 918-19 (3d Cir. 1991); c.f., <u>Sedima v. Imrex Co.</u>, 473 U.S. 479, 521

(1985) (dissent *in dicta*).  Many circuits have ruled that incidental economic damages, in such personal injury cases, such as the loss of earnings, are not compensable under RICO.  Grogan v. Platt, 835 F.2d 844, 847 (11th Cir. 1988), *cert. denied*, 488 U.S. 981 (1988); Berg, 915 F.2d at 464.

Judge Weinstein, however, found that "[t]he recovery of pecuniary losses associated with physical injuries directly caused by racketeering conduct is consistent with the language of the RICO statute" and should be compensable.  The National Asbestos Workers Medical Fund, et al. v. Philip Morris, Inc., et al., 74 F.Supp.2d 221, 229 (E.D.N.Y. 1999).  Relying upon the broad statutory purposes of the statute, the Court specifically held that a restrictive interpretation of the statute, barring standing, in such cases, "would undermine the policies of RICO."  Id. at 230.  See Also, Section 904(a) of the Organized Crime Control Act of 1970, P.L. 91-452, Title IX, Sec. 904, 84 Stat. 947, 1970 U.S. Code Cong. & Admin. News, 1104 ("The provisions of this title shall be liberally construed to effectuate its remedial purpose").  Judge Weinstein rejected the analysis utilized by several other courts that the similar "business and property" language, from the Clayton Act, as interpreted in various antitrust context, should be utilized in determining RICO standing, highlighting that there are sharp differences between the two statutes (the Clayton Act and RICO) and "their aims which can sometimes render such comparisons inappropriate."  National Asbestos, 74 F.Supp.2d at 229.  The opinion further emphasized that Congress made the intentional decision to reject the notion that RICO should be a subsection and an amendment to the Clayton Act, and instead determined that it did not want RICO limited by the existing antitrust laws jurisprudence.  Rather, standing under RICO should be far broader.  Id. at 230.

Furthermore, Judge Weinstein reasoned that the statute's legislative history and purpose in the deterrence of the use of physical violence by racketeers demonstrates Congress' intention to remedy the damages caused by racketeering, including damages caused by a pattern of violence and physical injury.  Id.  As support, this opinion cited RICO's definition of "racketeering activity" which includes "'any act or threat' involving murder, kidnapping, robbery, and extortion, which is chargeable under State law and punishable by imprisonment for more than one year.  Id., citing 18 U.S.C. § 1631.  Moreover, RICO's definition of predicate racketeering acts includes violations of federal laws which were designed to control damages as to the person, e.g., murder, such as in the case at bar.

We suggest that this Court follow Judge Weinstein's analysis to distinguish Laborers Local 17 Heath and Benefit Fund v. Philip Morris, a case which was so heavily relied upon by the Defendants.  191 F.3d 229 (2nd Cir. 1999).  Judge Weinstein found the language in Laborers Local 17, which is cited by the Defendant, to be mere dictum.  National Asbestos, 74 F.Supp.2d at 237.  Certainly, in the case at bar, the question of 'directness' or proximate cause can not fairly be raised as a question- the Plaintiffs' deaths were unequivocally caused by the murderous actions taken by this criminal conspiracy.

We suggest that this Court follow Judge Weinstein's analysis and find that there is appropriate standing in the case at bar to pursue the RICO claims.

Admittedly, the Plaintiffs' decedents suffered personal injury; in fact they were brutally slaughtered by the defendants' actions.    If accepted, Defendant's argument would mean that a successful murder renders irrelevant that economic harm flowing from

such action.  We suggest that such interpretation could not reasonably be the intention of the statute, which, after all, includes *murder* among its predicate acts.  *A fortiori,* on these facts, actions by the heirs and personal representatives must be allowed to order to give effect to the purposes of the Act.

### B.  <u>The Complaint Further Alleges Direct Damages to the Property of the Plaintiffs</u>.

In any event, on the particular facts of this case, the "business or property" requirement is clearly met:  the target, after all, was the World Trade Center and other governmental buildings, along with their occupants and possessions and contents. Nothing could be more obvious than the purpose of this Attack was designed to inflict the maximum damage on United States business and property.

Indeed, the O'Neill Plaintiffs have pled that this invidious conspiracy specifically intended to cause damage to business and property and that they, in fact, suffered damage to their business and property, as a result. SAC ¶¶ 178 - 179.

Paragraph 4 of the RICO Statement states, in pertinent part:

> The manner in which the victims were injured consists of death, suffering caused by death, and all economic damages resulting from such deaths, as described herein, including without limitation paragraph 17 hereof.

Paragraph 15 of the RICO statement reads as follows:

> The injuries to business or property suffered by the O'Neill Plaintiff's resulting from the September 11th attack include economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of personal property, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of

other economic contributions to the Plaintiffs'/Decedents' household.[10]

Paragraph 17 of the RICO statement, elaborates upon this even further, in pleading that:

> [e]ach defendant is jointly and severally liable for all damages sustained by each plaintiff, as set forth in Exhibit "B", for the loss of life, and the economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of personal property, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' household.  The damages for the plaintiffs' collectively are to be determined at trial, and are in excess of $10,000,000,000.00 prior to trebling, punitive damages, interest, legal fees, and the costs of this suit.

These damages, to business and property, consisted of some which were a direct consequence to the Plaintiffs' deaths; while others not directly connected with their deaths, including the loss of personal property,[11] funeral and burial expenses, as well as the past and future wage losses and profits, loss of business opportunities, loss of support, etc. [12]  The fact that it was connected to a murder, can not be logically argued, to serve as a bar to the remedial purposes of the RICO legislation.

---

[10] The loss of life and the damages to business and property related thereto that resulted from the actions of the defendants, are a direct causal relationship to the violation of the RICO statute, and are not a derivative claim of damage to a third party.  RICO Statement ¶ 16.

[11] Such property could include clothing; jewelry, personal papers, property and effects on the person and/or contained within the destroyed offices; contents of and the luggage of the passengers aboard the flights.   These obviously, would be subject to discovery.

[12] The Defendant's attempt to circumvent this pleading by its allegation that the plaintiffs "are all relatives of the decedents thus, are in some way irrelevant.  To the extent that this argument has any merit, it ignores the fact that one of our categories of plaintiffs consists of the representatives of the estate(s) who, under applicable state law, stand in the place and stead of the decedent, and are pursuing the instant action seeking compensation for just direct claims. C.f., Shaw, Executor of the Estate  of Leslie Shaw v. Rolex Watch USA, Inc., 776 F. Supp. 128, 129 (S.D.N.Y. 1991); Von Bulow v. Von Bulow, 634 F. Supp. 1284 (S.D.N.Y. 1986) (RICO standing for claim pursued by committee for incapacitated person).

Accordingly, the Plaintiffs respectfully suggest that they have standing to pursue these claims.

.

### III.   PLAINTIFFS HAVE ADEQUATELY PLED THEIR RICO CLAIMS.

*(Addressing Point VII of Defendant's Memorandum of Law)*

The Defendant further contends that the O'Neill plaintiffs failed to adequately plead its RICO claims.[13]   As set forth above, the Second Amended Complaint, as a whole,[14] taken in conjunction with the extensive RICO Statement filed, the Plaintiffs respectfully submit, more than adequately meet the liberalized pleading standards required under Rule 8.[15]

---

[13] The  Second Amended Complaint, as did its predecessors (both docketed prior to the instant RICO Statement), referring next to the count, 1962(a), when it should have specified 1964(c) does, in fact, contain a typographical error as to the jurisdictional basis for the cause of action. Only 1964(c) confers the jurisdictional basis for a private plaintiff to pursue a RICO claim (entitled "Civil Remedies"), while 1962 (a-d) sets forth the four types of prohibited activities for both criminal prosecutions and civil actions.

The individual RICO rules of the Hon. Richard C. Casey, item 1, requires a specification as to which provision of Section 1962 the defendant is alleged to have violated.  In their response, the O'Neill plaintiffs unequivocally alleged "18 U.S.C. Sections 1962(b), 1962(c) and/or (d), as its general basis for RICO.   See also response to Item 11 in the RICO Statement, "[n]ot applicable," as to the application of 18 U.S.C. Section 1962(a).

The O'Neill plaintiffs do not assert a violation of Section 1962(a) as a basis of liability, as to any of the defendants in this case.

As to this particular defendant, the O'Neill plaintiffs are not pursuing a theory based upon 1962(b), based upon the evidence presently available, as clearly indicated in the response contained within their RICO Statement to Item 12 "Not applicable to this defendant."

There is no requirement, in either the Judge's Individual Rules or in the Case Management Order that a plaintiff is obligated to re-file a new RICO statement whenever the complaint is amended.

[14] See, SAC ¶ 176, which incorporates all of the other allegations contained within the complaint into the RICO count.

[15] The Defendant highlights, at footnote 15 of their Memorandum, that the Plaintiffs' various RICO Statements filed in conjunction with this litigation have many identical paragraphs.  This is not a coincidence; in fact, had there not been similarities, the Plaintiffs would have a difficult time pleading or proving its basic theories of the case – namely a common conspiracy, common enterprises and patterns of racketeering activity. Plaintiffs' basic theory, at the time of pleading is,

The RICO cause of action (Count 10), as to this Defendant, alleges prohibited activities in violation of 18 U.S.C. Section 1962(c), which makes it unlawful to conduct, operate or participate in an enterprise's affairs via a pattern of racketeering activity; and, of 18 U.S.C. Section 1962(d), which prohibits a conspiracy to violate the RICO statute.[16] Sedima, 473 U.S. at 479 (18 U.S.C. Section 1962 (c)); Salinas v. United States, 522 U.S. 52 (1997) (18 U.S.C. Section 1962 (d)).[17]

---

in fact, that all of those defendants are alleged to have participated in the same conspiracy as the defendant herein; all are accused of participating in the same Enterprise; all are claimed to be have caused the same injuries and the like.  There are, of course, separate and distinct detailed allegations as to the specific unconscionable conduct perpetrated by the particular defendants or groups of defendants.  Compare, e.g., Exhibit 'A,' RICO Statement, Question #2, Misconduct, in each of the RICO Statements, describing the abhorrent activities alleged to have been taken by each defendant group in violation of law.  As to the instant defendant, such recitation comprised almost 25% of the total pages of the substantive aspects of the RICO Statement (i.e., excluding the names of the decedents who lost their lives and property as a result of the defendant's actions or the service lists).

[16] To the extent that this Court deems it more appropriate to alternative plead these separate RICO claims as separate counts, leave to amend is specifically sought.

[17] The conspiracy was described in Paragraph 14 of the RICO Statement, for purposes of pleading, as follows:

> The history of the conspiracy behind Radical Muslim Terrorism, or the al Qaida, or the International Islamic Front for the Jihad Against Jews and Crusaders could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered.  After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including AHIF and the AHIF Entities, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors.  They also relied heavily on certain imams at mosques who were willing to divert the *zakat*, the mandatory charitable contributions required of all Muslims.  Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders also collected money from employees of corrupted charities.

> The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training.  The curriculum in the camps placed with great emphasis on ideological and religious indoctrination.  All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The O'Neill complaint alleges, as to this Defendant, two (2) separate, but linked patterns of racketeering activity, done in conjunction, with, at this time, three alternatively pled definitions of the Enterprise.[18]  See United States v. Russotti, 717 F. 2d 27, 33 (2nd Cir. 1983) (separate patterns of racketeering activity - 5 part test); United States v. Ciancaglini, 858 F.2d 923, 927-9 (3d Cir. 1988) (totality of circumstances approach).  As set forth, in detail in the RICO Statement, one pattern, primarily through mail fraud, wire fraud, financial institution fraud, money laundering, and other criminal activities, was a conspiracy to raise the sums of money in order to fund the activities complained of herein and otherwise provide logistical and other support, by al Qaida, Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against

---

> The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan.  From the ranks of these recruits the nineteen perpetrators of the Attack were selected.  None of this would have been possible without the funds supplied by participants and conspirators like AHIF and the AHIF Entities.  Indeed, the Enterprise would not have been successful without enthusiastic participation of all of the conspirators, including AHIF and the AHIF Entities.  In order to identify nineteen individuals willing, able and competent to carry out the Attack, Radical Muslim Terrorism, or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by AHIF and the AHIF Entities.  AHIF and the AHIF Entities, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly.  AHIF and the AHIF Entities also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.   RICO Statement ¶14.

The conspiracy was formed to, and in fact did, enable Al Haramain and Al Haramain United States "to surreptitiously provide funds to terrorist organizations, including al Qaida …" RICO Statement ¶ 5g.

---

[18] See RICO Statement ¶ 6(a) for a detailed description of each alleged alternative Enterprise.  To the extent that this Court deems it more appropriate to alternative plead these alternative descriptions of the Enterprise as separate counts, leave to amend is specifically sought.

Jews and Crusaders, which conspiracy culminated in the attacks.  Certain individuals and entities were defrauded into contributing money for purposes which they believed to be legitimate.  The second pattern related to the acts of violence and terrorism, itself.  See, e.g., RICO Statement ¶¶ 5(a), 5(b), 5(f), 5(g), 6(b), 6(f), 8, 9, 13, 14, and Exhibit 2.  Thus the requirement of a pattern of racketeering activity was more than adequately pled, for notice pleading purposes, as was the Enterprise(s).

The Defendant further attacks the complaint, asserting that there was an obligation to show that *each* individual defendant engaged in an enterprise or conspired with others to do so, and that a plaintiff must allege that the defendant must engage in 'active management or operation.'   Under the Supreme Court's guidance in Reves v. Ernst & Young, 507 U.S. 170, 182-184 (1993), plaintiffs do not have to prove such a role, let alone plead same  For 1962(c) pleading purposes, all that is required is some level of participation in the operation of the Enterprise itself.   See Napoli v. United States, 45 F. 2d 680 (2nd Cir.), cert. denied, 514 U.S. 1134 (1995) (for 18 USC § 1964(d) causes of action there is no requirement of participating in the operation or management of the Enterprise); See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 2000 U.S. Dist. LEXIS  16399, *11 (S.D.N.Y. 2000).   Moreover, the Complaint, and the RICO Statement, taken as a whole, more than adequately contains the requisite allegations, for both 1962(c) and 1962(d) pleading requirements, under Rule 8.  The O'Neill Plaintiffs' pleadings do not, as the Defendant characterizes them, 'allege little more than that AHIF may have assisted al Qaeda;' rather, as set forth herein, they plead meaningful participation.[19]

---

[19] As to Section 1964(c) pleading requirements, the O'Neill Plaintiffs believe that their pleadings more than adequately meet the requirements.  The factual allegations demonstrate that AHIF

Therefore, the O'Neill Plaintiffs respectfully submit that for pleading purposes, the Second Amended Complaint, together with the RICO Statement, taken in their entirety, adequately plead a cause of action under the statute.

## CONCLUSION

For the reasons set forth herein and as addressed at argument, which is requested by the Plaintiffs, the Second Amended Complaint's RICO count should not be dismissed.

Alternatively, plaintiff should be granted leave to file an amended complaint as permitted by Federal Rule of Civil Procedure Rule 15.

Dated:  April 8, 2005

LAW OFFICES OF JERRY S. GOLDMAN
& ASSOCIATES, P.C.


By: _____
          JERRY S. GOLDMAN, ESQ.
          (JG8445)

          *Attorneys for the plaintiffs,*
          *Estate of John P. O'Neill, et al.,*
          111 Broadway, 13th Floor
          New York, N.Y. 10006
          212.242.2232

On the Memorandum:

Jerry S. Goldman, Esq. (JG 8445)
Frederick J. Salek, Esq. (FS8565)
Gina M. MacNeill, Esq. (GM0581)

---

conducted or participated, directly or indirectly, in the conduct of the Enterprises' affairs and participated in the operation or management of the operation of the Enterprise itself.  See, e.g., Exhibit A of the RICO.  To the extent that this Court believes that such allegations are still insufficient, under notice pleading requirements, the O'Neill Plaintiffs request leave to amend the RICO statement to add the following language to ¶ 14 and to Exhibit A (Supplementing Paragraph 2):

> AHIF and the AHIF Entities conducted or participated, directly or indirectly, in the conduct the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself.

# APPENDIX   OF APPLICABLE RULES

F.R.C.P. 12 reads in pertinent part:

(b) HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 8. General Rules of Pleading.

(a)-- CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

(e)-- PLEADING TO BE CONCISE AND DIRECT; CONSISTENCY.

(1)-- Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2)-- A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

(f)-- CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice.

19

## CERTIFICATE OF SERVICE

I, GINA M. MCNEILL, ESQUIRE, do hereby certify that I served the within Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motion to Dismiss Relating to the RICO issues, on this date, on all of the parties in the case via filing with the Court's electronic case filing (ECF) system

Dated:  April 8, 2005

_____
GINA M. MACNEILL, ESQUIRE

X:\Clients\ONeill v. Saudi arabia\Motions to Dismiss\Response.Al Haramain.final.doc