**United States District Court**
**Southern District of New York**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (RCC)**<br>**ECF Case** |

This document relates to:

> *Kathleen Ashton v. Al Qaeda Islamic Army*, 02-CV-6977 (RCC)
> *Ernesto Barrera v. Al Qaeda Islamic Army*, 03-CV-7036 (RCC)
> *Thomas E. Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-5738 (RCC)
> *Thomas E. Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849 (RCC)
> *Continental Cas. Co. v. Al Qaeda*, 04-CV-5970 (RCC)
> *Euro Brokers, Inc. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279 (RCC)
> *Federal Ins. v. Al Qaida*, 03-CV-6978 (RCC)
> *New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105 (RCC)
> *Gladys H. Salvo v. Al Qaeda Islamic Army*, 03-CV-5071 (RCC)
> *Walter Tremsky v. Osama bin Laden*, 02-CV-7300 (RCC)
> *World Trade Ctr. Props., L.L.C. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280 (RCC)

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF
## ABDULLAH AL RAJHI

**FISH & RICHARDSON P.C.**

Thomas M. Melsheimer (TM-4466)
(Admitted *pro hac vice*)
John M. Helms (JH-7931)
(Admitted *pro hac vice*)
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Telecopy)

**COUNSEL FOR DEFENDANT**

I.    **Plaintiffs' Consolidated Response Fails to Allege Facts that State a Claim Against or Establish Jurisdiction Over Abdullah Al Rajhi.**

Before filing a federal court pleading accusing someone of intentionally supporting the murder of thousands of innocent Americans on September 11, 2001, one might assume that a party would be especially careful to base their allegations on facts rather than conclusory boilerplate and empty hyperbole.  One might also assume that anyone making these kinds of accusations ought to be able to identify with specificity what an accused person allegedly *did* to provide knowing support to al Qaeda.  One might also assume that anyone making these kinds of accusations could keep the defendants, and the allegations they make against those defendants, straight.  But in this case, these assumptions would be mistaken.  Instead, Plaintiffs have attempted to twist the federal pleading rules into a means of obfuscation and subterfuge and to turn Rule 11 into a game of chicken.

Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Abdullah Al Rajhi (the "Consolidated Response" or "Consol. Resp.") not only fails to overcome the legal insufficiency of their allegations, but also repeatedly misstates or contradicts the contents of Plaintiffs' own pleadings.  For example, several of the specific allegations that Plaintiffs cite as supporting their claims against Abdullah Al Rajhi actually refer to a different defendant, Sulaiman Al Rajhi.  Other allegations cited by Plaintiffs as referring specifically to Abdullah Al Rajhi actually refer to the "Al Rajhi family" (which includes two former defendants whom Plaintiffs voluntarily dismissed) without identifying any particular individual, or refer collectively and in conclusory fashion to all of the hundreds of defendants in this case.  The few specific allegations made against Abdullah Al Rajhi were discussed in the opening motion, and Plaintiffs have failed to respond to those arguments.  Because the Plaintiffs do not and cannot meet the established pleading standards that this Court has required to state a claim, they cannot

sully Abdullah Al Rajhi with this action any longer.   The Court should dismiss Plaintiffs'

purported claims against Abdullah Al Rajhi with prejudice.

**II.**     **Plaintiffs' Consolidated Response Fails to State a Claim Against Abdullah Al Rajhi Under Rule 12(b)(6).**

      **A.**     **The Consolidated Response Misconstrues and Misstates the Allegations Made Against Abdullah Al Rajhi in the Pleadings.**

      The Consolidated Response offers several new arguments against Abdullah Al Rajhi that

are not supported by, and in fact misstate, the allegations in the pleadings.   Not only do these

new arguments contradict Plaintiffs' pleadings, they also conflict directly with arguments that

Plaintiffs have raised in opposition to other motions to dismiss.   In short, Plaintiffs appear either

not to know or not to care what they have actually alleged or against whom they have actually

made allegations in this lawsuit.

      For example, Plaintiffs assert in the Consolidated Response that Abdullah Al Rajhi is

"identified on the Golden Chain."   CONSOL. RESP. at 17.   But, in fact, the pleading they cite

alleges that the "Golden Chain" document refers to *Sulaiman* Al Rajhi, not Abdullah.   *See*, *e.g.*,

*Euro Brokers* ¶ 93.   Exhibiting further confusion, Plaintiffs' response to the motion which seeks

dismissal of Saleh Al Rajhi (Abdullah's aged and mentally infirm uncle) contends that the

"Golden Chain" document refers to *Saleh*, not to Abdullah or to Sulaiman.   *See* PLAINTIFFS'

CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF SALEH AL

RAJHI ["SALEH RESP."] at 17.   Furthermore, recent supplemental briefing filed by other Plaintiffs

contends that the "Al Rajhi" to which the "Golden Chain" refers is the Al Rajhi Bank,[1] an entity

with respect to which this Court has already found that Plaintiffs failed to state a claim.   *See In*

*re: Terrorist Attacks on September 11th, 2001* [hereinafter, "*In re Sept. 11th*"], 349 F. Supp. 2d

---

[1] Plaintiffs' Supplemental Memorandum in Opposition to Motions to Dismiss of Wa'El Hamza Jelaidan, Khalid Bin Mahfouz and Yousef Jamee (Docket No.977), Exhibit E at 24 ("Source noted that the name AL-RAJHI listed next to number 7 on this document is the name of a bank in which Al Qaeda had funds on deposit").

765, 833 (S.D.N.Y. 2005).  Plaintiffs' abject confusion about the alleged meaning of the "Golden Chain" document lends further support to the Court's prior observation that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters."  *Id.* at 817.

Additionally, the Consolidated Response also contends that Abdullah Al Rajhi "established . . . the SAAR Network,"[2] "named [it] after himself," and "used his authority as the head of the al Rajhi Bank and as a Director of IIRO and MWL to facilitate the sponsorship of al Qaeda through those entities."  *See* Consol. Resp. at 17, 19.  Plaintiffs' failure to recognize that "SAAR" would not be an acronym for "Abdullah Sulaiman Al Rajhi" epitomizes the failure of these arguments in the Consolidated Response.  As with the "Golden Chain," Plaintiffs also make identical statements in response to the motion to dismiss Saleh Al Rajhi, but Plaintiffs' pleadings do not, in fact, direct these allegations against either **Saleh** or **Abdullah**.  *See*, *e.g.*, *Burnett* ¶ 261; *Fed. Ins.* ¶¶ 213, 281.  Furthermore, these statements are inconsistent with Plaintiffs' various allegations that identify Yaqub Mirza as the "financial mastermind of the SAAR Network," *see*, *e.g.*, *Burnett* ¶ 253, that fail to identify Abdullah Al Rajhi as one of the individuals who "operated the SAAR Foundation," *see*, *e.g.*, *WTCP* ¶ 215; *Burnett*, Pls.' Resp. to Al Rajhi Bank's Rule 12(e) Request to Pls. (Aug. 27, 2003) ¶ 80, and that assert that the "SAAR Foundation was . . . formed in the 1970s by a group of Muslim scholars and scientists from the Middle East and Asia," *see*, *e.g.*, *Burnett* ¶ 261.  Again, it appears that Plaintiffs either do not know or do not care what they have actually alleged against Abdullah Al Rajhi in this action.  Because Plaintiffs' arguments are internally inconsistent and contradict allegations in

---

[2] The "SAAR Network" is a term coined by Plaintiffs to describe a vague group of allegedly related entities and this Court has recognized that the "SAAR Network" is a concept constructed by Plaintiffs.  *See In re Sept. 11th*, 359 F. Supp. 2d at 823 (noting "scant" basis to link the alleged entities under the "SAAR Network" title).

their pleadings, the Court can and should disregard these statements in ruling on the Motion to Dismiss.

>    **B.    Plaintiffs' Pleadings Fail to Allege that Abdullah Al Rajhi Knowingly Supported Terrorism.**
>
>    >    **1.    Plaintiffs Do Not Link Abdullah Al Rajhi's Alleged Affiliation with Charities and Businesses to Plaintiffs' Alleged Injuries at the Hands of Al Qaeda.**

Even if the Court looks past the obvious errors in the Consolidated Response, Plaintiffs' purported claims still fail.  The Consolidated Response summarizes Plaintiffs' argument against Abdullah Al Rajhi, thus:  "The Plaintiffs in the Complaints have alleged that Abdullah Al Rajhi provided monetary and other support to the SAAR network, and that the SAAR network knowingly supported the terrorist activities of al Qaeda."  CONSOL. RESP. at 5.  This tautological conclusion, however, says nothing about Abdullah Al Rajhi's particular individual knowledge about alleged wrongful conduct by the "SAAR Network."

In ruling on earlier motions to dismiss, the Court has emphasized that Plaintiffs must plead specific facts that a defendant "[knew] the wrongful nature of the primary actor's conduct" in order to create liability under claims of conspiracy and aiding and abetting.  *See*, *e.g.*, *In re Sept. 11th*, 349 F. Supp. 2d at 826.  This Court has focused on the alleged knowledge of the individual who is accused of associating himself with charities or businesses which are, in turn, alleged to have materially supported, aided or abetted al Qaeda.  *E.g.*, *id.* at 800-801 (addressing allegations that Princes Sultan and Turki provided money to charities which then provided money to al Qaeda).  Where (as here) there is no allegation to support an inference that the accused individual knew that a seemingly legitimate organization (or someone within an organization) was materially assisting al Qaeda, then the Court has dismissed the purported claims against the accused.  *See*, *e.g.*, *id.* (finding that Plaintiffs failed to state a claim against the

Princes).  Even the Seventh Circuit in *Boim*, on whose opinion the Plaintiffs heavily rely, recognized that simply funding an organization does not give rise to liability, unless the donor knew that the organization was engaged in illegal activities and intended to facilitate that wrongdoing.  *See Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011, 1023 (7th Cir. 2002).

That lynchpin—an allegation that Abdullah Al Rajhi knew that the "SAAR Network" was up to no good and desired to help its crimes succeed—is simply missing from this case.  As with those defendants dismissed by this Court, Plaintiffs are attempting to predicate liability on Abdullah Al Rajhi's alleged (1) donations to charity, (2) founding of an organization, or (3) service as an officer or director without anything other than conclusory allegations to suggest that he knew of any wrongdoing.  And as with these dismissed defendants, such allegations fail to state a claim against Abdullah Al Rajhi.  *Cf. In re Sept. 11th*, 349 F. Supp. 2d at 813-814 (dismissing Princes Sultan and Turki who allegedly made charitable donations); *id.* at 821-22 (dismissing Tariq and Bakr Binladen who allegedly served as executives); *id.* at 835-36 (dismissing Saleh Kamel who allegedly founded a company).

> **2.  Plaintiffs' Generalized Allegations Against "All Defendants" or "the Al Rajhi Family" Do Not State Individual Claims Against Abdullah Al Rajhi.**

In ruling on earlier motions to dismiss, the Court found that generalized allegations made against "all Defendants" did not state claims against any particular defendant.  *See In re Sept. 11th*, 349 F. Supp. 2d at 805.  Similarly, the Court refused to lend credence to undifferentiated allegations made against unspecified members of a family or other group.  *Id.* at 812.  Despite these rulings, the Consolidated Response asks the Court to maintain the purported claims against Abdullah Al Rajhi based on Plaintiffs' allegations against "all Defendants" and their undifferentiated allegations against the "Al Rajhi family."  *See, e.g.*, CONSOL. RESP. at 5. Plaintiffs, however, offer no factual or legal reason that the Court should reverse its earlier

rulings.  Because these vague and conclusory allegations say nothing about what Abdullah Al Rajhi purportedly did, said, knew or intended, they fail to state a claim against him.  *See*, *e.g.*, *In re Sept. 11th*, 349 F. Supp. 2d at 805 ("Plaintiffs claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11.  Without supporting factual allegations, such a statement is insufficient to establish an agency relationship.") (internal citations omitted).

### C.    As Discussed in the Motion to Dismiss, Several of Plaintiffs' Purported Claims Fail as a Matter of Law.

#### 1.    Plaintiffs Concede Numerous Arguments by Failing to Address Them in the Consolidated Response.

Even if Plaintiffs' claims could survive on the alleged facts, many of the alleged counts would still fail as a matter of law.  For example, Plaintiffs have failed to respond to the arguments regarding the Torture Victim Protection Act raised in the Motion to Dismiss, essentially conceding the fact that they cannot hold Abdullah Al Rajhi liable under that statute. Plaintiffs have also failed to contest Defendant's assertion that anyone who has made a claim to the September 11 Victim's Compensation Fund may not bring a claim for any intentional tort in this action.  Finally, Plaintiffs have failed to respond to Defendant's arguments regarding dismissal of purported punitive damages claims under 28 U.S.C. § 1606.  Thus, for the reasons stated in the Motion to Dismiss, the Court should dismiss these purported claims to which Plaintiffs have failed to respond.

#### 2.    RICO Claims Fail Because Plaintiffs Fail to Allege Necessary Facts.

Although the Consolidated Response contends that Plaintiffs have adequately alleged that Abdullah Al Rajhi participated in, managed and derived income from the alleged RICO enterprise, the pleadings they cite do not, as discussed above, actually or adequately refer to Abdullah Al Rajhi.  Because Plaintiffs fail to allege facts showing that Abdullah Al Rajhi even

supported al Qaeda, much less that he operated or managed the enterprise, the pleadings fail to clear even the "relatively low hurdle" required to sustain a section 1962(c) claim at this stage of the proceedings.  Likewise, Plaintiffs fail to state a claim under section 1962(d) because they fail to identify any factual allegation to support a finding of a conscious agreement by Abdullah Al Rajhi to further the alleged RICO conspiracy.  *See In re Sept. 11th*, 349 F. Supp. 2d at 827. Similarly, Plaintiffs fail to cite any allegation in any pleading to support their arguments regarding the section 1962(a) claims.  Again it appears that Plaintiffs have formulated arguments without knowing (or caring) what they have actually alleged because none of Plaintiffs' actual pleadings contain factual allegations which suggest that Abdullah Al Rajhi, himself, derived any income through any racketeering activity or that Abdullah Al Rajhi, himself, invested any ill-gotten gains in an enterprise affecting interstate or foreign commerce.  Accordingly, the Court must dismiss Plaintiffs' purported RICO claims against Abdullah Al Rajhi.

> **3.     Negligence and Negligence *Per Se* Fail Because Plaintiffs Fail to Allege a Breach of Any Cognizable Duty.**

Although the Consolidated Response attempts to show that Plaintiffs have adequately pled their claims of negligence and negligence *per se*, Plaintiffs have still failed to allege any duty that would support a claim of negligence against Abdullah Al Rajhi, and their negligence *per se* argument fails as a matter of New York law.  In arguing that they have adequately alleged a duty to support a negligence claim, Plaintiffs cite to a number of international conventions and argue that Abdullah Al Rajhi has violated a duty that arises from these international laws. CONSOL. RESP. at 11-12, 14.  These conventions, however, condemn airplane hijacking and purposeful support and financing of terrorism, all of which involve knowing and intentional conduct.  None of these conventions prohibits, or even addresses, the kind of negligent support

of terrorism that Plaintiffs have alleged here.  Accordingly, these conventions do not provide the basis for a negligence claim.

Plaintiffs' next argument, that alleged violations of the ATA and the ATCA give rise to claims for negligence *per se*, also fails.  New York law limits the application of negligence *per se* to violations of statutes that give rise to a very specific duty—such as the duty to yield the right of way to a vehicle approaching from the opposite direction when making a left turn.  *See*, *e.g.*, *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 351-52 (App. 1st Dept. 2004).  The doctrine of negligence *per se* does not apply to "broadly written" statutes that "set[] forth a general, abstract standard" of conduct.  *Id.*  Neither the ATA—which generally prohibits the knowing support of terrorists—nor the ATCA—which is a jurisdictional statute—creates the kind of "specific duty" that could give rise to a claim of negligence *per se* under New York law.[3]  Accordingly, the Court should dismiss both Plaintiffs' common law negligence and negligence *per se* claims.

### 4. Intentional Torts Are Barred by the Statute of Limitations.

Contrary to Plaintiffs' assertions, Plaintiffs' assault, battery, and intentional infliction of emotional distress state tort claims that were not brought within the one-year statute of limitations are time-barred.  *See In re Sept. 11th*, 349 F. Supp. 2d at 829.  Plaintiffs can point to no authority that New York law allows an equitable tolling defense to tort claims such as assault and battery.  Moreover, even if this Court were to consider Plaintiffs' tolling argument, Plaintiffs have failed to carry their burden to toll limitations because they have failed to "plead[] with particularity, (1) the wrongful concealment by the defendant of its actions; (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and

---

[3] Moreover, at least one New York court has questioned whether an alleged violation of a federal statute would provide the basis for a negligence *per se* claim under New York law.  "Neither party cites, and the court's own research has not located, any New York case in which violation of a federal statute was held to establish negligence *per se*.  A question, which the parties have not addressed, exists as to whether a statute whose violation constitutes negligence *per se*, and which alters the New York state common law, can be enacted by a legislative body other than the New York State legislature.").  *See Lugo v. St. Nicholas Assocs.*, 772 N.Y.S.2d 449, 455 n.4 (Sup. Ct. 2003).

(3) the plaintiffs' due diligence to discover the facts." *Smith v. Keane*, 1998 WL 146225, \*4-5 (S.D.N.Y. Mar. 25, 1998) (rejecting equitable tolling argument for section 1983 assault claim); *see also Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). Plaintiffs' conclusory allegation that Abdullah Al Rajhi was involved in a conspiracy is irrelevant to the issue of their diligence (or lack thereof) in investigating their purported claims. Further undercutting Plaintiffs' argument is the fact that at least two sets of plaintiffs—*Burnett* and *Tremsky*—were able to bring suit against Abdullah Al Rajhi within the one-year statute of limitations despite the other Plaintiffs' alleged difficulty in discovering their purported claims. Finally, Plaintiffs provide yet another example of the fact that they either do not know or do not care what they have alleged or against whom they have alleged it when they argue in closing that "the clandestine nature of the conspiracy *in which FIBS participated*" requires tolling. CONSOL. RESP. at 23 (emphasis added). Although it should be self-evident at this point, Abdullah Al Rajhi, not FIBS, is the defendant at issue here. For all of these reasons, there is no basis for avoiding the application of the limitations period to these claims, and the Court should dismiss them.

### III. Plaintiffs' Consolidated Response Fails to Identify a Sufficient Basis for the Exercise of Personal Jurisdiction Over Abdullah Al Rajhi.

Plaintiffs have failed to meet their burden to establish a *prima facie* case supporting the exercise of personal jurisdiction over Abdullah Al Rajhi by this Court. As discussed above, Plaintiffs have failed to make allegations sufficient to hold Abdullah Al Rajhi liable under any concerted action or conspiracy theory. Accordingly, Plaintiffs' conclusory and generalized allegations are insufficient to sustain a claim for relief against Abdullah Al Rajhi and do not provide a basis for the exercise of direct personal jurisdiction over him. *See*, *e.g.*, *In re Sept. 11th*, 349 F. Supp. 2d at 812-13 (granting Prince Sultan's motion to dismiss for lack of personal jurisdiction). Similarly, Plaintiffs' assertions that Abdullah Al Rajhi has "business interests" in

the United States or that he "conducts business" through various entities allegedly conducting business in the U.S., *see* CONSOL. RESP. at 18-19, fail to provide a sufficient basis for the exercise of general jurisdiction.  These vague and conclusory allegations fail to suggest (much less show) the precise nature and scope of any alleged contacts with the forum.[4]  Regardless, this Court has already ruled that the mere affiliation with an entity having contact with the U.S. is insufficient to support a finding of personal jurisdiction.  *See In re Sept. 11th*, 349 F. Supp. 2d at 820-21.  Moreover, Plaintiffs' suggestions that Abdullah Al Rajhi donated to the "SAAR Network" and that he named the Saar Foundation after himself mischaracterize Plaintiffs' pleadings, as discussed above.  Accordingly, Plaintiffs have failed to establish a *prima facie* basis for the exercise of either specific or general personal jurisdiction over Abdullah Al Rajhi, and the Court should grant his Motion to Dismiss.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Abdullah Al Rajhi respectfully requests that the Court grant his Motion to Dismiss for failure to state a claim and for lack of personal jurisdiction.

---

[4] Although Plaintiffs have filed a Declaration and exhibits in support of their statement that Abdullah Al Rajhi has "business interests" in the United States, *see* CONSOL. RESP. at 19, Plaintiffs fail to make any argument based upon these documents or point to any specific evidence in these voluminous records that purportedly supports their claims.  Even if the Court chose to scour the entirety of these records itself, none would provide the basis for exercising personal jurisdiction over Abdullah Al Rajhi.  The documents purporting to relate to Aradi, Inc., for example, do not show that Abdullah Al Rajhi performed any acts in the United States, and the mere fact that he may have been an officer or director of a Delaware corporation does not subject him to general jurisdiction in that state. *See Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 505 (D. Del. 2003).  Similarly, the unsigned, proposed, redacted affidavit of David Kane refers to Abdullah Al Rajhi only as being affiliated with Aradi.  If anything, the Kane affidavit shows that Abdullah Al Rajhi had no contact with the "SAAR Network" or any related entity, and specifically excludes Abdullah Al Rajhi from the list of individuals suspected to be involved with terrorism.  *See* Kaplan Decl., Ex. 6, at 45, ¶ 3.  The Harvard forum documents (which are inadmissible hearsay) suggest only a single random contact with the state of Massachusetts, not the kind of continuous and systematic contact needed for personal jurisdiction.  The remaining exhibits relate only to Abdullah Al Rajhi's role with the Al Rajhi Bank, but none provides any evidence of contacts with the United States.  Moreover, allegations that the Bank itself had contact with the United States do not support the exercise of personal jurisdiction over Abdullah Al Rajhi.  *In re Sept. 11th*, 349 F. Supp. 2d at 820-21.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  July 14, 2005                    By: /s/ Thomas M. Melsheimer_____
                                         Thomas M. Melsheimer (TM-4466)
                                         (Admitted *pro hac vice*)
                                         John M. Helms (JH-7931)
                                         (Admitted *pro hac vice*)
                                         1717 Main Street, Suite 5000
                                         Dallas, TX  75201
                                         (214) 747-5070 (Telephone)
                                         (214) 747-2091 (Telecopy)

                                         **COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to this Court's Case Management Order No. 2, on July 14, 2005, I caused a true and correct copy of the foregoing to be served on all counsel electronically by the Court's Electronic Case Filing (ECF) system.

Dated: July 14, 2005                          /s/ Thomas M. Melsheimer
                                              Thomas M. Melsheimer (TM-4466)
                                              (Admitted *pro hac vice*)

90132367.2.doc