# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001    )    No. 03 MDL 1570 (RCC)
)    ECF Case
_____)

This document relates to:

> ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 02-CV-6977;
>
> BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;
>
> CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-CV-05970;
>
> EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07279;
>
> FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978;
>
> NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105; and
>
> WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

# MEMORANDUM OF LAW IN SUPPORT OF
# DR. ABDULLAH BIN ABDUL MOHSEN AL-TURKI'S
# CONSOLIDATED MOTION TO DISMISS

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Abdul Mohsen Al-Turki

DATED:  September 6, 2005

# TABLE OF CONTENTS

I.    Introduction ............................................................................... 1

II.   Factual Background ...................................................................... 2

III.  This Court Lacks Subject Matter Jurisdiction Because Dr. Al-Turki Is Immune
      from Suit under the Foreign Sovereign Immunities Act ............................................ 6

      A.    The Standard of Review .................................................................. 6

      B.    Dr. Al-Turki Is Immune from Suit Under the FSIA to the Extent That the
            Allegations Against Him Concern Matters Within His Capacity As an
            Official of the Saudi Government .................................................. 7

      C.    None of the FSIA Exceptions Applies to Dr. Al-Turki .................................. 8

            1.    The Commercial Activities Exception Is Not Applicable .................. 8

            2.    The Non-Commercial Tort Exception Is Also Inapplicable .............. 9

            3.    The State-Sponsored Terrorism Except Is Also Inapplicable ............. 10

IV.   This Court Lacks Personal Jurisdiction over Dr. Al-Turki, Pursuant to Rule
      4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute ................................ 11

      A.    The New York Long-Arm Statute Is Not Satisfied .......................................... 11

      B.    Personal Jurisdiction under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied ......... 12

VI.   This Court must Dismiss Plaintiffs' Complaints Against Dr. Al-Turki, Pursuant
      to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim .................................... 14

      A.    Plaintiffs Fail to Plead Sufficient Facts Showing That Dr. Al-Turki's Acts
            Proximately Caused Plaintiffs' Injuries .......................................................... 15

      B.    Plaintiffs' Claims Against Dr. Al-Turki Under the Torture Victim
            Protection Act, the Anti-Terrorism Act, and Plaintiffs' Common Law
            Claims, Must be Dismissed as a Matter of Law ............................................. 17

      C.    The Burnett Plaintiffs Lack Standing to Maintain Their RICO Claims
            Because Their Injuries are Personal Injuries, Not Injuries to Business or
            Property ....................................................................................................... 19

i

D.    Plaintiffs' Allegations are Insufficient to Establish a Cause of Action Against Dr. Al-Turki for Plaintiffs' RICO Claims ......................................... 21

E.    Plaintiffs' Allegations are Insufficient to Make out Negligence Claims Against Dr. Al-Turki Because He Owed No Duty of Care to Plaintiffs ........ 22

F.    Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No Independent Cause of Action Exists .............................................................. 23

G.    Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No Independent Cause of Action Exists .............................................................. 23

VI.    This Court Must Dismiss Plaintiffs' Complaints Against Dr. Al-Turki, Pursuant to Rule 12(b)(5), Fed. R. Civ. P., for Improper Service of Process ........................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
    572 F. Supp. 550 (S.D.N.Y. 1983) ..................................................................... 23

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
    No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............ 16

Argentine Republic v. Ameranda Hess Shipping Corp.,
    488 U.S. 428 (1989) .......................................................................................... 6

Arndt v. UBS AG,
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) .............................................................. 17

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970) ............................................................................. 12

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ............................................................................. 11

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) .......................................................................... 18

Burnett v. Al Baraka Invest. & Devel. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ................................................................ *passim*

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................................. 23

Conley v. Gibson,
    355 U.S. 41 (1957) ........................................................................................... 14

Diaz v. Gates,
    No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*) ................ 20

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ................................................................................. 14

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ............................................................................... 15

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ................................................................. 23

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ............................................................................. 12

Howell v. New York Post Co.,
    81 N.Y.2d 115, N.E.2d 702 (1993) ..................................................... 19

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ................................................................ 13

In re: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................... passim

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................. 12

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) ..................................................... 20

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) ....................................................... 23

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ................................................................ 22

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ................................................................ 20

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001) ................................................... 7

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) .................................................... 16

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) ................................................... 23

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ................................................................ 22

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ................................................. 11

iv

Morrissey v. Curran,
    482 F. Supp. 31 (S.D.N.Y. 1979) ....................................................................... 24-25

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991) ............................................................................... 25

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ................................................................................. 21

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) .......................................................................................... 22

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) .................................................................... 19

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ..................................................................... 19

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................................... 16

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992) ............................................................................................ 9

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001) .......................................................................... *passim*

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) .......................................................................... 13

Seramur v. Saudi Arabian Airlines,
    934 F. Supp. 48 (E.D.N.Y. 1996) ....................................................................... 24

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) ................................................................... 23

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................................... 18

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ..................................................................... 19

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ....... 13

v

United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,
    994 F.2d 105 (2d Cir. 1993) ................................................................ 19

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) ........................................................... 19

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002) ........................................................... 7, 9

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) .................................................. 20

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................. 14, 18

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq. ............................ *passim*

      28 U.S.C. § 1330(a) ........................................................... 6

      28 U.S.C. § 1603(b) ........................................................... 7

      28 U.S.C. § 1605(a)(2) ........................................................ 8-9

      28 U.S.C. § 1605(a)(5) ....................................................... 8-10

      28 U.S.C. § 1605(a)(7)(A) ................................................. 8, 10-11

      28 U.S.C. § 1608 ........................................................... 24

      28 U.S.C. § 1608(b) ...................................................... 24-25

      28 U.S.C. § 1608(b)(5) ...................................................... 25

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 19-22

      18 U.S.C. § 1962(a) ...................................................... 21-22

      18 U.S.C. § 1962(c) ...................................................... 21-22

      18 U.S.C. § 1962(d) ...................................................... 21-22

18 U.S.C. § 1964(c) ........................................................................... 20

Torture Victim Protection Act, 28 U.S.C. § 1350 note ................................... 14, 17

Federal Rules of Civil Procedure:

Rule 4(j)(1) ........................................................................... 24

Rule 4(k)(1)(D) ..................................................................... 11-12

Rule 12(b) .............................................................................. 1

Rule 12(b)(1) .......................................................................... 1

Rule 12(b)(2) ....................................................................... 1, 11

Rule 12(b)(5) .................................................................... 1, 24-25

Rule 12(b)(6) .................................................................. 1, 14-15

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ................................................ 17

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) ......................................... 11-12

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) .............................. 18

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ................................................ 18


**Other Materials:**

The 9/11 Commission Report (2004) ...................................................... 4

4B Wright & Miller, Federal Practice and Procedure: Civil 3d, § 1111 (2002) ............. 24

## I.    **INTRODUCTION.**

Dr. Abdullah Bin Abdul Mohsen Al-Turki, a member of two of the highest-ranking governmental bodies in the Kingdom of Saudi Arabia, and a former member of several other high-ranking governmental bodies, was named as a defendant in nine of the lawsuits in this proceeding, evidently on no basis other than that he is a Muslim who has held important governmental positions relating to Islamic affairs.

Dr. Al-Turki respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, (3) failure to state a claim, and (4) improper service of process.  Dr. Al-Turki's motion to dismiss the first *Burnett* complaint ("*Burnett I*") is fully briefed.  He was named as defendant in eight other lawsuits – the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Ashton*, *Continental Casualty*, *Euro Brokers*, *Federal Insurance*, *New York Marine*, *Salvo* and *World Trade Center Properties*, with the *Salvo* complaint subsequently being dismissed and consolidated with *Burnett*.[1]

As set forth below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Dr. Al-Turki's high-level governmental positions entitle him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this court's jurisdiction over him.  This Court must also find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Dr. Al-Turki, a foreign individual whose minimal contacts with the United States were either in his official capacity, or are unrelated to plaintiffs' allegations.  This Court should find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state any claims against him.  Finally, this Court should find,

---

[1] This Court endorsed a briefing schedule for Dr. Al-Turki in the *Ashton* case, which allowed him forty-five days from the date when his pending motion to dismiss in *Burnett I* was decided.  See Stipulation (Dec. 15, 2004) (Docket No. 576).  Although that event has not occurred, Dr. Al-Turki is now moving to dismiss the *Ashton* case.

pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Dr. Al-Turki, by

publication, are not only ineffective but also improper under the FSIA.

## II.      FACTUAL BACKGROUND.

Dr. Al-Turki is a distinguished Islamic legal scholar whose contributions have been

recognized by the Kingdom of Saudi Arabia through royal appointments to a number of

important governmental posts.  He is a citizen of Saudi Arabia, who has resided there for his

entire life.  See Declaration of Abdullah Bin Abdul Mohsen Al-Turki, at ¶ 3 ("Decl.") (attached

and incorporated hereto as Exhibit 1, Attachments A and B).[2]  Dr. Al-Turki earned degrees in

Islamic law, and served as Rector of a Saudi university from 1975 to 1993.  Id. at ¶¶ 4-5.

In 1992, King Fahd appointed Dr. Al-Turki to be a member of the Council of Ulema

(Senior Council of Scholars).  Id. at ¶ 6.  The Council of Ulema provides recommendations and

guidelines on issues relating to Islamic law to the King and his deputies for their consideration in

exercising all aspects of their governmental authority.  Id.  Dr. Al-Turki remains a member of the

Council of Ulema.  Id.  To remain current with Islamic issues, he attends and participates in

Islamic conferences and meets with Islamic groups, which makes him a visible presence for the

Kingdom.  Id.  Since Islam is the official religion of Saudi Arabia, and the judicial system is

based on Islamic law, the Council of Ulema is a core governmental function.  Id.

In 1993, King Fahd appointed Dr. Al-Turki as Minister of Islamic Affairs, which made

him responsible for all governmental matters relating to Islamic issues in Saudi Arabia.  Id. at ¶

7.  In that position, he was one of eight members of the Supreme Council for Islamic Affairs,

---

[2] Dr. Al-Turki cannot read, write or speak English.  Thus, his original Declaration is in Arabic, and is
Attachment A to the Declaration of Bassim Alim (who authenticated the translation), which is Exhibit 1 to this
Motion.  A translation of the Al-Turki Declaration into English is Attachment B to the Alim Declaration.

2

which has responsibility for Saudi Arabia's foreign policy relating to Islamic issues.  He was also the Chair of the Supreme Call Council, which has responsibility for Saudi Arabia's domestic Islamic policy.  Id. at ¶ 8.[3]  In 1995, King Fahd appointed Dr. Al-Turki to the Saudi Council of Ministers, the highest decision-making body in the Saudi government.  Id. at ¶ 9.  Dr. Al-Turki served as Minister of Islamic Affairs and as a member of the Saudi Council through late 1999.  Id. at ¶¶ 7, 9.  At the end of 1999, he was appointed Advisor to the Royal Court, id. at ¶ 10, and the Secretary-General of the Muslim World League, an Islamic charity.  Id.

Dr. Al-Turki made several visits to the United States from 1979 to 2002, all in his official governmental capacities, or as an officer of a Muslim charity.  Id. at ¶ 11.  Dr. Al-Turki does not own any real property, or have any bank accounts or investments in the United States, or conduct personal business with businesses in the United States.  Id. at ¶ 12.

Dr. Al-Turki has condemned terrorism, including the attacks of September 11, 2001, and has never knowingly supported any person or organization that he knew to participate in terrorist activities.  Id. at ¶ 14.  Indeed, on the second anniversary of the attacks, Dr. Al-Turki published two statements, translated into English, which expressly condemned these attacks as being contrary to Islamic law and teachings.  Id. at ¶ 14 & Ex. 1-2.

Plaintiffs' statements regarding Dr. Al-Turki are, in part, accurate facts describing his governmental positions, and subsequently unsupported inferences, which appear to be based on

---

[3] Prince Sultan is the Chairman of the Supreme Council for Islamic Affairs.  As set forth in greater detail in Prince Sultan's Motion to Dismiss filed in *Burnett*, which Dr. Al-Turki incorporates by reference, the Supreme Council is an arm of the Saudi government, and makes discretionary recommendations to the King that, if approved, become acts or policies of the Saudi government.  See Declaration of Abdulaziz H. Al Fahad, at ¶¶ 7-11 (Apr. 6, 2003) (attached and incorporated herein as Exhibit 2).  The Supreme Council has five enumerated functions, which include "(1) planning and oversight of Saudi Islamic activities abroad ...; (2) care for Muslim minorities and attention to their conditions; (3) introduction of Islam; (4) promoting of contacts between the Kingdom and Muslims abroad; [and] (5) promoting the spreading of Islamic culture and the Arabic language abroad."  Id. at ¶ 9.

statements made by a businessman, Muhammed Zouaydi, whom Spanish authorities have
charged with supporting Al Qaeda. The *Ashton, Burnett, Continental Casualty*, and *WTC
Properties* complaints contain almost identical allegations with respect to Dr. Al-Turki.

Among these allegations are that Dr. Al-Turki and Mr. Zouaydi were business partners,
and that Dr. Al-Turki made investments in Mr. Zouaydi's projects. See *Ashton* Compl., ¶¶ 244-
246, 248-249; *Burnett* Compl., ¶¶ 384, 386, 388-90, 536-37, and 539-41; *Continental Casualty*
Compl., ¶¶ 286-288, 290-291; *WTC Properties* Compl., ¶¶ 719-722, 724-727, 867-872. These
allegations are false. While Mr. Zouaydi repeatedly attempted to solicit Dr. Al-Turki by
deluging him with draft contracts, proposals, and even a copy of a check to be held as a
guaranty, Dr. Al-Turki never invested money with, donated to, or otherwise conducted business
with, Mr. Zouaydi or his Spanish businesses. See Decl. (Ex. 1), at ¶ 16.

More importantly, the 9/11 Commission, in its final report, concluded that Mr. Zouaydi
did not support the September 11 attacks:

> Notwithstanding persistent press reports to the contrary, there is no convincing
> evidence that the Spanish al Qaeda cell, led by Imad Barkat Yarkas and al Qaeda
> European financier Mohammed Galeb Kalaje Zouaydi, provided any funding to
> support the 9/11 attacks or the Hamburg participants. Zouaydi may have
> provided funds to Hamburg associate Mamoun Darkazanli — see, e.g., FBI
> letterhead memorandum, Yarkas and Spanish Cell investigation, Jan. 8, 2003 —
> but **there is no evidence that Zouaydi provided money to the plot participants
> or that any of his funds were used to support the plot**.

See The 9/11 Commission Report, at 499 n.132 (2004) (emphasis added).

Plaintiffs' remaining allegations against Dr. Al-Turki are inferences based on no facts at
all. Plaintiffs allege that Dr. Al-Turki organized a conference in January 2002, four months *after*
the terrorist attacks that form the basis of their claims, at which terrorism was allegedly
endorsed. See *Burnett* Compl. at ¶ 385; *WTC Properties* Compl. at ¶ 721. In fact, this

4

conference was part of the Council of Islamic Jurisprudence, an independent council of scholars, and Dr. Al-Turki's attendance was in his official capacity as a member of the Council of Ulema. See Decl. (Ex. 1), at ¶ 17.  Moreover, Dr. Al-Turki did not participate in all of the discussions, and did not agree with everything that was said at the conference, including the statement found to be offensive by plaintiffs.  Id.

Plaintiffs correctly state that Dr. Al-Turki served in the same "cabinet" with Prince Turki (then the Chief of Intelligence), who allegedly shared information with Dr. Al-Turki, but plaintiffs then describe various "goals" and "interpretations" which they ascribe to Al Qaeda. See Burnett Compl. at ¶ 391; WTC Properties Compl. at ¶ 727.  Although Prince Turki and Dr. Al-Turki served in the Saudi government, along with other ministers, Dr. Al-Turki's service is unconnected with any of Al Qaeda's so-called "goals" and "interpretations."  He had no knowledge of any of Al Qaeda's terrorist activities, and he did not knowingly support any of Al Qaeda's terrorist activities.  See Decl. (Ex. 1), at ¶ 18.

Plaintiffs allege that Dr. Al-Turki "settled [sic] in 1995 a Joint Committee for Islamic Action and Studies" in Russia, and that this committee held a seminar in 2002, the year following the attacks that form the basis for plaintiffs' claims.  See Ashton Compl. at ¶ 518; Burnett Compl. at ¶ 426; Continental Casualty Compl. at ¶ 323; WTC Properties Compl. at ¶ 762.  Dr. Al-Turki denies any knowledge of this Joint Committee, its activities, or any seminar in 2002.  See Decl. (Ex. 1), at ¶ 19.  Moreover, there is no way that a conference in 2002 could be found to have caused the September 11, 2001 attacks.

The Euro Brokers plaintiffs listed Dr. Al-Turki solely in the caption, and made no attempt to plead any allegations about him in the text of this complaint, other than generic

allegations that hundreds of defendants acted in concert.  In *Federal Insurance* and *NY Marine*, plaintiffs pled no specific allegations against him, and merely listed him as one of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons."  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

### III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DR. AL-TURKI IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

Since 1992, Dr. Al-Turki has held important positions within the Saudi government.  The complaints have expressly recognized his governmental status.  See *Ashton* Compl. at ¶¶ 244; *Burnett* Compl. at ¶ 383; *Continental Casualty* Compl. at ¶ 286; *WTC Properties* Compl. at ¶ 719.  Because the plaintiffs have named him as a defendant based on actions he took as a government official, this Court lacks subject matter jurisdiction over him under the Foreign Sovereign Immunities Act ("FSIA").

#### A.     The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a).  The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court. Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).  A foreign state, and its instrumentalities, "are presumed immune from United States courts' jurisdiction," and the determination of subject matter jurisdiction must be made "at the threshold of every action."  *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005).  This court

recognized that immunity under the FSIA is available to individual defendants, "to the extent their alleged actions were performed in their official capacities." Id. at 788.

When addressing motions to dismiss based on sovereign immunity, the court must give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001). When a defendant establishes a *prima facie* case that it is a sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted, under one of the FSIA exceptions. Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). If the court finds that a defendant has engaged in the alleged actions as a part of his official government duties, and the exceptions to FSIA are inapplicable, the court must dismiss the claims against that defendant. Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).

**B.    Dr. Al-Turki Is Immune from Suit Under the FSIA to the Extent that the Allegations Against Him Concern Matters Within His Capacity As An Official of the Saudi Government**.

Through his affidavit, Dr. Al-Turki has clearly established that he is a "sovereign." He has held positions of authority within the Saudi Government since 1992. See Al-Turki Decl. (Ex. 1), at ¶¶ 5-7. Indeed, the plaintiffs themselves identify him as an "advisor to King Fahd." Therefore, he was an "instrumentality" of the Saudi government for purposes of all acts he undertook in his official capacity during that period of time. See 28 U.S.C. § 1603(b).

The *Euro Brokers, Federal Insurance,* and *NY Marine* plaintiffs pled no specific allegations against him. As he was a governmental official during the entire period in question, plaintiffs seem to be claiming that whatever wrongful actions he took were as a government

official, thereby entitling him to immunity under the FSIA.  <u>Robinson</u>, 269 F.3d at 140-41.

The *Ashton*, *Burnett, Continental Casualty*, and *WTC Properties* complaints set forth various allegations, mostly relating to Mr. Zouaydi.  However, plaintiffs do not plead any facts showing that Dr. Al-Turki knew that Mr. Zouaydi had any links to terrorism.  Moreover, the 9/11 Commission's Report, *supra*, concluded that Mr. Zouaydi did not fund the September 11 attacks.

Plaintiffs' remaining allegations about the January 2002 conference are irrelevant, as that conference occurred months after the attacks.  To the extent that Dr. Al-Turki attended the conference, he did so in his official capacity as a member of the Council of Ulema, in order to maintain a presence for the Kingdom of Saudi Arabia in Islamic issues.  <u>See</u> Al-Turki Decl. (Ex. 1), at ¶¶ 6, 17.  Therefore, he is immune from suit.

### C.      None of the FSIA Exceptions Applies to Dr. Al-Turki.

To the extent that plaintiffs complain of actions that Dr. Al-Turki took in his official capacity, plaintiffs must come forward with evidence to show that immunity should not be granted, under one of FSIA's three exceptions.  Plaintiffs cite 28 U.S.C. § 1605(a)(2) (the "commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort" exception), and 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception).  Under this Court's January 18, 2005 decision, none of these exceptions applies to Dr. Al-Turki.

### 1.      The Commercial Activity Exception Is Not Applicable.

The commercial activities exception to FSIA does not apply, since the only allegations that arguably involve a "commercial activity" concern the transactions he is alleged to have had with Mr. Zouaydi.  However, as Dr. Al-Turki has described in his affidavit, he never engaged in any business transactions with Mr. Zouaydi; rather, Mr. Zouaydi simply solicited Dr. Al-Turki to

8

enter into transactions which Dr. Al-Turki refused to do.  See Al-Turki Decl. (Ex. 1), at ¶ 16.

Thus, plaintiffs have not pled any facts showing that Dr. Al-Turki engaged in any commercial

activity.  At best, they have pled unsupported inferences.

Even if this Court were to find that Dr. Al-Turki were involved in a commercial activity,

plaintiffs have not pled that such activity "cause[d] a direct effect in the United States," as

Section 1605(a)(2) requires.  Critically, "'an effect is direct if it follows as an <u>immediate</u>

consequence of the defendant's activity.'"  <u>Virtual Countries v. Republic of South Africa</u>, 300

F.3d 230, 236 (2d Cir. 2002) (quoting <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607,

618 (1992) (emphasis in original)).  Even if this Court were to accept plaintiffs' allegations

regarding Dr. Al-Turki, despite the 9/11 Commission's contrary findings, those allegations still

fail to show any direct effect in the United States that is the immediate consequence of his acts.

The commercial activities exception to FSIA is, therefore, clearly inapplicable.

**2.       The Non-Commercial Tort Exception Is Also Inapplicable.**

The second exception to FSIA immunity is for matters "in which money damages are

sought against a foreign state for personal injury or death, or damage to or loss of property,

occurring in the United States and caused by the tortious act or omission of that foreign state or

of any official or employee of that foreign state while acting within the scope of his office or

employment."  28 U.S.C. § 1605(a)(5).  Plaintiffs "must come forward with evidence

demonstrating that the [defendant's] tortious acts or omissions caused Plaintiffs' injuries."  <u>*In re*</u>

<u>Sept. 11</u>, 349 F. Supp. 2d at 797.  In order to satisfy this standard, the plaintiffs must show

proximate causation.  This Court previously held, in granting the motions to dismiss for lack of

subject matter jurisdiction of Prince Sultan and Prince Turki, that:

> [Plaintiffs] have not, however, pleaded facts to support an inference that the Princes were sufficiently close to the terrorists' illegal activities to satisfy *Halberstam* or New York law.  Similarly, Plaintiffs have not pleaded facts to suggest the Princes knew they were making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists to satisfy *Boim* or New York law. . . . there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for such an entity.  There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer.  Here, there are no such factual bases presented, there are only conclusions.

Id. at 800-01.  Similarly, the Second Circuit held that it is improper to use generic allegations to invoke the tort exception to FSIA.  Robinson, 269 F.3d at 146 (improper to allow "plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints").

This Court must find that this exception does not apply here, since the plaintiffs have failed to allege facts showing that Dr. Al-Turki committed tortious acts, or knowingly supported terrorists.  The only allegations pled are vague allegations about a business relationship between Dr. Al-Turki and Mr. Zouaydi, which plaintiffs claim resulted in Mr. Zouaydi's transfer of funds to finance the 9/11 attacks.  However, there are no allegations that Dr. Al-Turki knowingly took these actions in providing funds to Mr. Zouaydi (which he has sworn he did not) in order to fund terrorism, much less the 9/11 attacks.

The tort exception to the FSIA is inapplicable.

**3.      The State-Sponsored Terrorism Exception Is Also Inapplicable.**

Finally, to the extent that the plaintiffs intend to claim that Dr. Al-Turki provided material support to terrorists who caused their injuries, the state-sponsored tort exception is inapplicable.  Congress explicitly assigned material support claims to another exception, 28

U.S.C. § 1605(a)(7)(A).  As this Court has already determined, that "material support" exception does not apply, because Saudi Arabia has not been designated as a state sponsor of terrorism, a prerequisite for the application of this exception.  *In re* Sept. 11, 349 F. Supp. 2d at 794.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER DR. AL-TURKI, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.

This Court must dismiss plaintiffs' complaints against Dr. Al-Turki, pursuant to Rule 12(b)(2), Fed. R. Civ. P., and the New York long-arm statute, for lack of personal jurisdiction. Plaintiffs have the burden to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support that finding.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction.  *In re* Sept. 11, 349 F. Supp. 2d at 804; Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).  If plaintiffs allege that Dr. Al-Turki took acts in his personal capacity, this Court's clearly articulated analysis of personal jurisdiction demonstrates that plaintiffs' conclusory allegations fail to meet the standard for the exercise of personal jurisdiction.

### A.   The New York Long-Arm Statute Is Not Satisfied.

First, the personal jurisdiction requirements of the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002), are not satisfied.  As this Court held, merely alleging that "all defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11," is insufficient to establish personal jurisdiction through the New York long-arm statute on a conspiracy theory.  *In re* Sept. 11, 349 F. Supp. 2d at 805.  Here, plaintiffs' complaints fail to "allege any specific facts" that would allow the reasonable inference that Dr.

11

Al-Turki "directed, controlled, or requested al Qaeda to undertake its terrorist activities." Id. at

806.  Nor do plaintiffs make "any specific allegations of [his] knowledge of or consent to those

activities." Id.  Indeed, plaintiffs state only conclusions that somehow Dr. Al-Turki acted in

concert with several hundred other defendants, or that he had business transactions with Mr.

Zouaydi.  Plaintiffs allege no facts from which this Court can infer Dr. Al-Turki had any control

or knowledge of al Qaeda and its activities.

### B.        Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied.

Second, the exercise of personal jurisdiction over Dr. Al-Turki, pursuant to Rule 4(k),

under either a "general jurisdiction" or a "specific jurisdiction" theory, would not satisfy the

requirements of due process, which requires some level of minimum contacts with this forum.  In

re Sept. 11, 349 F. Supp. 2d at 810-11.  For this Court to exercise "general" personal jurisdiction

over a non-resident defendant, the defendant's contacts with the forum must be "continuous and

systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Dr. Al-Turki's limited contacts with the United States, only three visits over a 23-year period,

see Al-Turki Decl. (Ex. 1), at ¶ 11, are "not sufficiently 'systematic and continuous' to maintain

general jurisdiction" over him.  In re Sept. 11, 349 F. Supp. 2d at 816 (dismissing Prince

Mohamed based on his limited contacts with the United States).  The Second Circuit has also

held that even several visits a year to the United States are insufficient to assert personal

jurisdiction over a non-resident defendant.  See Aquascutum of London, Inc. v. S.S. American

Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum

"every few months"); see also Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,

160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits

per year, are an insufficient basis for jurisdiction"). Plaintiffs do not allege any visits by Dr.

Al-Turki to the United States, and even the three visits that he took, all in his official capacity,

are well below the level deemed insufficient for the exercise of general jurisdiction.

Similarly, for this Court to exercise personal jurisdiction over Dr. Al-Turki under a

"specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that

he was a "primary participant in intentional wrongdoing." <u>In re</u> Magnetic Audiotape Antitrust

Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).

If the defendant was not personally involved with the alleged torts that caused the plaintiffs'

injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be

supported. See <u>In re</u> Sept. 11, 349 F. Supp. 2d at 809 (quoting <u>In re</u> Magnetic Audiotape); Time,

Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22,

2003). Here, plaintiffs have failed to plead any facts to support an allegation that Dr. Al-Turki

was personally involved, or a primary participant, in the September 11 attacks, so this Court

cannot exercise personal jurisdiction over him under a "specific jurisdiction" theory.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed

to "make a *prima facie* showing of each Defendant's personal or direct participation in the

conduct giving rise to Plaintiffs' injuries." <u>In re</u> Sept. 11, 349 F. Supp. 2d  at 809.  Instead,

plaintiffs merely made "conclusory allegations" that Dr. Al-Turki "aided and abetted terrorists,"

but without pleading any facts to support an allegation that he "purposefully directed his

activities at this forum" by engaging in transactions "that he knew at the time supported

international terrorism."  Id. at 813 (dismissing Prince Sultan for lack of personal jurisdiction,

because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan

13

purposefully directed his activities at this forum").

Therefore, this Court must find, as for Prince Sultan and Prince Turki, that plaintiffs' allegations are insufficient to support the exercise of personal jurisdiction over Dr. Al-Turki.

**V.    THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. AL-TURKI, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.**

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs have not pled factual allegations against Dr. Al-Turki, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Second Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)."  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).  Here, of course, there is little more than "conclusory allegations" pled against Dr. Al-Turki.

Plaintiffs brought the following claims against Dr. Al-Turki, which are legally defective: (1) a tort claim under the Anti-Terrorism Act (*Ashton, Burnett II, Federal Insurance, NY Marine,* and *WTC Properties*); (2) a claim under the Torture Victim Protection Act (*Ashton, Burnett II,* and *Federal Insurance*); (3) a claim under the Alien Tort Claims Act (*Burnett II*); and (4) Civil RICO claims (*Burnett II, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).

Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival (*Ashton, Burnett II* and *Federal Insurance*); (2) conspiracy, and aiding and abetting (*Burnett II,*

*Federal Insurance, NY Marine,* and *WTC Properties*); (3) assault and battery (*Ashton* and

*Federal Insurance*); and (4) property destruction and damage (*Ashton, Euro Brokers, Federal*

*Insurance, NY Marine,* and *WTC Properties*).  The *Burnett II* and *Federal Insurance* plaintiffs

brought negligence claims and negligent and intentional infliction of emotional distress claims.

All plaintiffs brought separate claims for punitive damages.

> **A.    PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT
> DR. AL-TURKI'S ACTS PROXIMATELY CAUSED PLAINTIFFS'
> INJURIES.**

This Court must find that all plaintiffs have failed to satisfy the threshold requirement for

their tort claims since they have not pled sufficient facts showing that Dr. Al-Turki's acts

proximately caused their injuries.  Plaintiffs alleged, in a conclusory manner, that he, like all

defendants, provided support to al Qaeda, which led to the September 11 attacks.  As there are

440 defendants in *Ashton*, 361 named defendants in *Burnett II* and 5,000 "John Doe" defendants,

431 defendants in *Continental Casualty*, 201 defendants in *Euro Brokers*, 581 defendants in

*Federal Insurance*, 561 defendants in *NY Marine*, and 201 defendants in *WTC Properties*, there

is no way for Dr. Al-Turki to know what plaintiffs allege is his wrongful conduct.

Under clear Second Circuit precedent, proximate causation means that only those

defendants whose acts "were a substantial factor in the sequence of responsible causation, and

whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held

liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d

Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*,

aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re*

Sept. 11, 349 F. Supp. 2d at 826.  In order to impose tort liability on Dr. Al-Turki through a

concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").  Plaintiffs have not alleged anywhere in their various complaints that Dr. Al-Turki knew that other defendants were acting in a wrongful manner, or that he acted "in pursuance of a common plan or design to commit a tortious act."  The allegations in the remaining complaints, primarily relating to Mr. Zouaydi, are insufficient to plead plaintiffs' tort claims, as set forth, *supra*.

The *Euro Brokers, Federal Insurance,* and *NY Marine* plaintiffs' listing of Dr. Al-Turki in the captions, without pleading any facts, is insufficient to meet the standards set forth by the Second Circuit in Pittman, and this Court's prior ruling.  Hence, the absence of specific allegations regarding Dr. Al-Turki requires this Court to find that plaintiffs cannot use concerted liability theories as a basis for their tort claims against him.  Nor can plaintiffs simply "lump" Dr. Al-Turki with hundreds of other defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

This Court should dismiss plaintiffs' tort claims against Dr. Al-Turki because plaintiffs

have failed to stated a cause of action that his acts directly and intentionally injured plaintiffs, thereby precluding them from recovering under any direct tort theory, i.e., the Torture Victim Protection Act; the Anti-Terrorism Act; the Alien Tort Claims Act; the New York wrongful death and survival statutes; and common-law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.   PLAINTIFFS' CLAIMS AGAINST DR. AL-TURKI UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Morever, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)     This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Ashton* Count 5, *Burnett* Count 1, and *Federal Insurance* Count 6), because plaintiffs did not plead any facts to support an allegation that Dr. Al-Turki "subject[ed] an individual to torture or extrajudicial killing," as required to impose liability.  In re Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 132, 141 (E.D.N.Y. 2004)).

(2)     This Court must dismiss the plaintiffs' intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); In re Sept. 11, 349 F. Supp. 2d at 829 (dismissing these claims).  The *Burnett II* (New York) complaint was filed on August 1, 2003, and the *Federal Insurance* complaint was filed on September 10, 2003, both more than one year after September 11, 2001.  Since several complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

17

(3)      This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Ashton* Count 4; *Burnett* Count 3; *Federal Insurance* Count 10; *NY Marine* Count 5; *WTC Properties* Count 1), because plaintiffs failed to plead any facts to support an inference that Dr. Al-Turki engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that he provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that he contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts"). Plaintiffs' minimal allegations fail to satisfy any of these alternative pleading requirements.

(4)      This Court must dismiss the plaintiffs' wrongful death and survival claims (*Ashton* Counts 1-2; *Burnett* Counts 5 and 7; *Federal Insurance* Counts 2-3), because plaintiffs have not pled any facts to support an allegation that Dr. Al-Turki "caused the decedent's death," or that he committed a tort against the decedent.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that Dr. Al-Turki "supported, aided and abetted, or conspired with the September 11 terrorists."  *In re* Sept. 11, 349 F. Supp. 2d at 829.

(5)      This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), assault and battery claims (*Ashton* Count 3 and *Federal Insurance* Count 4), and property destruction tort claims

18

(*Ashton* Count 8; *Euro Brokers* Counts 1-2, 6, 8; *Federal Insurance* Count 1; *NY Marine* Count 1; *WTC Properties* Counts 5-6, 9), because plaintiffs have not pled any facts to support an allegation that Dr. Al-Turki's acts caused plaintiffs' injuries, as required for these torts.  United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993) (defining assault and battery as intentional torts); Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claims, since plaintiffs have not pled facts sufficient to show that Dr. Al-Turki associated himself with, and participated in, the conspiracy resulting in the damage, let alone that the property damage was a foreseeable act done in furtherance of any of his unstated actions in pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).[4] Plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

### C.   THE *BURNETT* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.

This Court must dismiss the RICO claims brought by the *Burnett* personal injury

---

[4] Dr. Al-Turki has not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damage claims arising from arson and criminal mischief resulting in damage to property.

plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The
*Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* plaintiffs decide to pursue their RICO claims against Dr. Al-Turki, this
Court must find that as personal injury plaintiffs, they lack standing to bring RICO claims, which
are limited by statute to "[a]ny person injured in his business or property."  18 U.S.C. § 1964(c).
Under clear Second Circuit precedent, personal injury plaintiffs cannot seek recovery under the
RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229,
241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or property'"); see also
Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for lack of standing);
Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995); von Bulow v. von
Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not
actionable under RICO.").

The Ninth Circuit's recent decision in Diaz, referenced by the *O'Neill* plaintiffs in their
supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in
Diaz, the plaintiff specifically "alleged both the property interest and the financial loss" arising
from his injury, not mere personal injury.  Diaz v. Gates, No. 02-56818, 2005 WL 1949879, at
*3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly
addressed the concerns raised by the dissent that RICO liability would somehow extend to
personal injuries, on the grounds that "our approach does not create RICO liability for every loss
of wages resulting from personal injury."  Id.  Thus, even under Diaz – which is not binding on
this Court – the personal injury plaintiffs still lack RICO standing.

**D.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST DR. AL-TURKI FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO claims, it must still find that the plaintiffs who seek to bring RICO claims against Dr. Al-Turki have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants. *In re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that Dr. Al-Turki had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Dr. Al-Turki since the plaintiffs have done nothing to show that each individual defendant conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes."  Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d)

claim).  Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim.  Id. at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Dr. Al-Turki under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from his investment of the enterprise's income; that he engaged in an enterprise, or conspired with others to do so; or that he actively managed and operated the alleged enterprise, or was a central figure in the alleged scheme.

### E.  PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST DR. AL-TURKI BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett, Federal Insurance,* and *NY Marine* plaintiffs' negligence and negligent infliction of emotional distress claims against Dr. Al-Turki because he owed no duty of care to plaintiffs.  As this Court has recognized in dismissing the negligence claims by the moving defendants, it is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim.  *In re* Sept. 11, 349 F. Supp. 2d at 830-31 (citing King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 342 (1928)); accord Burnett, 274 F. Supp. 2d at 108-09 (same).

Here, plaintiffs have alleged only conclusory allegations that "all defendants were under a general duty," *Burnett* Compl. ¶ 666, or that defendants "breached duties of care owed to" plaintiffs and the employees of plaintiffs' insureds.  See *Federal Insurance* Compl. ¶ 642; *NY Marine* Compl., at ¶ 79.  However, Dr. Al-Turki had no general duty to "control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).

**F.     PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' punitive damages counts, brought against Dr. Al-Turki by all plaintiffs, because no independent cause of action exists under New York law for this claim.  Punitive damages are merely a form of relief, not an independent tort cause of action. See Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v. UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

**G.     PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett* Count 9, *Federal Insurance* Count 7, *NY Marine* Count 4, and *WTC Properties* Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Furthermore, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

23

**VI.    THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. AL-TURKI, PURSUANT TO RULE 12(b)(5), FED. R. CIV. P., FOR IMPROPER SERVICE OF PROCESS.**

This Court must find that plaintiffs' attempts to serve Dr. Al-Turki by publication in several newspapers is improper as a matter of law.[5]  It is settled law that sovereign defendants can only be served pursuant to the specific service of process provision of FSIA, 28 U.S.C. § 1608, which trumps the general service provisions of Rule 4, Fed. R. Civ. P.  Indeed, Rule 4(j)(1), Fed. R. Civ. P., expressly provides that:  "Service upon a foreign state or a political subdivision, agency, or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608."  The courts have held that Section 1608 is the exclusive means for effecting service of process on such defendants.  See Seramur v. Saudi Arabian Airlines, 934 F. Supp. 48, 51 (E.D.N.Y. 1996) ("Section 1608(b) provides the exclusive means by which service of process may be effected upon Respondent."); see also 4B Wright & Miller, Federal Practice and Procedure: Civil 3d, § 1111, at 123 (2002) (same).  Section 1608(b), which applies to instrumentalities of foreign states, including individuals, sets forth, in precise detail, three alternative methods for service of process, yet plaintiffs have not complied with any of these three methods.

This Court should also reject plaintiffs' argument that because Dr. Al-Turki has retained counsel and filed a motion to dismiss, he has actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and that they were named as defendants, such knowledge is not a substitute for service on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be granted, and the rule would be a nullity.

---

[5] Dr. Al-Turki is not raising this argument with respect to the *Ashton* plaintiffs, with whom he entered into a briefing stipulation.

24

Morrissey v. Curran, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), aff'd in relevant part, 650 F.2d 1267 (2d Cir. 1981).  Further, the Second Circuit has held that "actual notice" is no substitute for proper service.  See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper as it did not satisfy the specific requirements of Section 1608(b) of FSIA.  Nor can service by publication in newspapers that are either banned in Saudi Arabia, or have an exceedingly limited circulation, be considered sufficient to effect service of process on Dr. Al-Turki.

## CONCLUSION

For the foregoing reasons, defendant Dr. Abdullah Bin Abdul Mohsen Al-Turki respectfully requests that this Court grant his Motion to Dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,


/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Abdul Mohsen Al-Turki

Dated:  September 6, 2005

25

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2005, I caused the foregoing to be served

electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant

to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat

_____

Alan R. Kabat