**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                          )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001      )        No. 03 MDL 1570 (RCC)
                                                          )        ECF Case
_____)

This document relates to:

BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;

EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07279;

FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978;

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105; and

WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.


**MEMORANDUM OF LAW IN SUPPORT OF
SHEIKH SAFER AL-HAWALI'S
AND
SHEIKH SALMAN AL-OADAH'S
CONSOLIDATED MOTION TO DISMISS**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Safer Al-Hawali and
 Salman Al-Oadah

DATED:  September 6, 2005

# TABLE OF CONTENTS

I.     Introduction ................................................................................................ 1

II.    Factual Background ..................................................................................... 1

    A.     Sheikh Safer Al-Hawali .................................................................. 1

    B.     Sheikh Salman Al-Oadah ................................................................ 2

    C.     Plaintiffs' Allegations About Sheikhs Al-Hawali and Al-Oadah .................. 3

III.   Plaintiffs' Allegations about Sheikhs Al-Hawali and Al-Oadah Fail to Form Any
      Basis for Personal Jurisdiction or to Allow Plaintiffs to State a Claim .................... 5

IV.    This Court Lacks Personal Jurisdiction over Sheikhs Al-Hawali and Al-Oadah
      Pursuant to Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute ... 8

    A.     Rule 4(k), Fed. R. Civ. P., Does Not Provide any Basis for Exercising
        Personal Jurisdiction Over Sheikhs Al-Hawali and Al-Oadah ...................... 8

    B.     The New York Long-Arm Statute Does Not Provide any Basis for
        Exercising Personal Jurisdiction Over Sheikhs Al-Hawali and Al-Oadah .... 10

V.     This Court must Dismiss Plaintiffs' Complaints Against Sheikhs Al-Hawali and
      Al-Oadah, Pursuant to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim .... 11

    A.     Plaintiffs Fail to Plead Sufficient Facts Showing That Sheikhs Al-Hawali's
        and Al-Oadah's Acts Proximately Caused Plaintiffs' Injuries ...................... 12

    B.     Plaintiffs' Claims Against Sheikhs Al-Hawali and Al-Oadah Under the
        Torture Victim Protection Act, the Anti-Terrorism Act, the Alien Tort
        Claims Act, and Plaintiffs' Common Law Claims, Must be Dismissed
        as a Matter of Law ........................................................................ 14

    C.     The *Burnett* Plaintiffs Lack Standing to Maintain Their RICO Claims
        Because Their Injuries are Personal Injuries, Not Injuries to Business or
        Property ........................................................................................ 17

    D.     Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
        Against Sheikhs Al-Hawali and Al-Oadah for Plaintiffs' RICO Claims ...... 18

i

E.      Plaintiffs' Allegations are Insufficient to Make out Negligence Claims Against Sheikhs Al-Hawali and Al-Oadah Because They Owed No Duty of Care to Plaintiffs ..........................................................................................20

F.      Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No Independent Cause of Action Exists ........................................................ 21

G.      Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No Independent Cause of Action Exists ............................................................. 22

VI.   Plaintiffs' Service of Process on Sheikhs Al-Hawali and Al-Oadah Is Insufficient and Should Be Quashed Pursuant to Rule 12(b)(5), Fed. R. Civ. P. ......................... 21

CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
  572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................  21

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
  No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............  13

Arndt v. UBS AG,
  342 F. Supp. 2d 132 (E.D.N.Y. 2004) ...................................................  14

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
  171 F.3d 779 (2d Cir. 1999) ...........................................................  8

Bigio v. Coca-Cola Co.,
  239 F.3d 440 (2d Cir. 2001) ..........................................................  16

Boim v. Quranic Literacy Inst.,
  291 F.3d 1000 (7th Cir. 2002) .......................................................  15

Brandenburg v. Ohio,
  395 U.S. 444 (1969) (per curiam) ...................................................  6

Burnett v. Al Baraka Invest. & Devel. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003) ............................................... *passim*

Chrysler Capital Corp. v. Century Power Corp.,
  778 F. Supp. 1260 (S.D.N.Y. 1991) .................................................  21

Conley v. Gibson,
  355 U.S. 41 (1957) .....................................................................  11

De Jesus v. Sears, Roebuck & Co.,
  87 F.3d 65 (2d Cir. 1996) ..............................................................  11

Denny v. Barber,
  73 F.R.D. 6 (S.D.N.Y. 1977) .........................................................  12

Diaz v. Gates,
  No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*).................  18

Federation of Turkish-Amer. Societies v. ABC,
    620 F. Supp. 56 (S.D.N.Y. 1985) ...................................................................... 6-7

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ................................................................................. 13

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ............................................................................... 21

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ............................................................................................ 9

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993) ............................................................ 16

Humanitarian Law Project v. Reno,
    205 F.3d 1130 (9th Cir. 2000) ............................................................................ 7

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ............................................................................... 9

In re: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................... *passim*

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) .................................................................... 18

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) ...................................................................... 21

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ............................................................................... 20

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ............................................................................... 18

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) ................................................................... 14

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) ................................................................. 21

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ............................................................................... 20

Melzer v. Bd. of Educ. of the City Sch. Dist. of N.Y.,
    336 F.3d 185 (2d Cir. 2003), cert. denied, 540 U.S. 1183 (2004) ..................... 6

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) .................................................................. 8

Morrissey v. Curran,
    482 F. Supp. 31 (S.D.N.Y. 1979) ...................................................................... 23

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,
    526 U.S. 344 (1999) ........................................................................................... 22

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991) .............................................................................. 23

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ................................................................................ 19

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ......................................................................................... 20

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ...................................................................17

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ...................................................................17

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) .............................................................................. 14

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ........................................................................... 9

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) .................................................................. 21

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................................... 15

Szabo Food Serv., Inc. v. Canteen Corp.,
    823 F.2d 1073 (7th Cir. 1987) ........................................................................... 11

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) .................................................................... 17

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) .......... 9

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) ............................................................................. 17

Virginia v. Black,
    538 U.S. 343 (2003) ............................................................................................. 6

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) .................................................................. 18

**Statutes and Rules:**

Alien Tort Claims Act, 28 U.S.C. § 1350 ................................................................ 15-16

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ........................................................ 15

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 17-20

    18 U.S.C. § 1962(a) .......................................................................... 18-20

    18 U.S.C. § 1962(c) .......................................................................... 18-20

    18 U.S.C. § 1962(d) .......................................................................... 18-20

    18 U.S.C. § 1964(c) .......................................................................... 17

Torture Victim Protection Act, 28 U.S.C. § 1350 note .................................... 14

Federal Rules of Civil Procedure:

    Rule 4(k)(1)(D) ............................................................................... 8-10

    Rule 12(b) ...................................................................................... 1

    Rule 12(b)(2) ................................................................................ 1, 8

    Rule 12(b)(5) ................................................................................ 1, 22-23

    Rule 12(b)(6) ................................................................................ 1, 11-12

Department of Treasury, Office of Foreign Assets Control

    31 C.F.R. § 595.206 ............................................................... 7

    31 C.F.R. §§ 594.305-594.306 ............................................... 7

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ...................................... 15

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) ............................ 10-11

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............. 15

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ...................................... 15

## I.   INTRODUCTION.

Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah, both Saudi citizens, were named as defendants in six of the complaints before this Court, but with minimal allegations specifically pled against them in all but one of the complaints.

Sheikhs Al-Hawali's and Al-Oadah's motions to dismiss the first *Burnett* complaint ("*Burnett I*") are fully briefed.  They are defendants in five other cases – the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Euro Brokers, Federal Insurance*, *New York Marine,* and *WTC Properties*.

Sheikhs Al-Hawali and Al-Oadah respectfully move, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) improper service of process.  As set forth below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over these defendants, non-residents who lack any contacts with this forum.  This Court must further find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against these defendants, because plaintiffs have failed to plead sufficient facts showing that their acts proximately caused their injuries.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempts to serve these defendants were insufficient.

## II.   FACTUAL BACKGROUND.

Plaintiffs have pled very few facts that specifically relate to their claims against Sheikhs Al-Hawali and Al-Oadah.  These allegations about these two defendants fail to support plaintiffs' claims or to allow this Court to exercise personal jurisdiction.

### A.   Sheikh Safer Al-Hawali.

Sheikh Al-Hawali is a retired professor of Theology, and former Dean at the Umm al-

Qura University in Saudi Arabia.  <u>See</u> Declaration of Sheikh Safer Al-Hawali , at ¶ 3-4.

("Decl.") (attached and incorporated hereto as Exhibit 1, Attachments A and B).[1]  He has been a

citizen of the Kingdom of Saudi Arabia and has lived in that country all of his life.  <u>Id.</u> at ¶ 3.  He

does not subscribe to or read the *International Herald Tribune* or the *Al Quds al Arabi*, the latter

of which is banned in Saudi Arabia.  <u>Id.</u> at ¶ 7.  Since he cannot read or write English, he is not

able to read the *International Herald Tribune,* or any other English-language newspaper, if he

were somehow to come in contact with the publication.  <u>Id.</u> at ¶ 10.

Sheikh Al-Hawali owns no real property, conducts no business, and has no bank accounts

or investments in the United States.  <u>Id.</u> at ¶ 6.  Over the course of his lifetime, he has visited the

United States only once, as a tourist in 1989.  <u>Id.</u> at ¶ 5.

## B.      Sheikh Salman Al-Oadah.

Sheikh Al-Oadah is a citizen of the Kingdom of Saudi Arabia and has lived there all his

life.  <u>See</u> Declaration of Sheikh Salman Al-Oadah, at ¶ 3 ("Decl.") (attached and incorporated

hereto as Exhibit 2, Attachments A and B).[2]  Sheikh Al-Oadah is a prominent Islamic scholar

and holds a Master's Degree from Al Imam University in Qassim, Saudi Arabia and a Doctorate

from the Al Genan University in Lebanon.  <u>Id.</u> at ¶ 4.

Sheikh Al-Oadah's academic career has been based solely in the Middle East.  He does

not engage in academic activities in the United States, or, attend or participate in academic

---

[1] Sheikh Al-Hawali cannot read, write or speak English.  Thus, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim, who authenticated the translation, which is Exhibit 1 to this Motion.  A translation of the Al-Hawali Declaration into English is Attachment B to the Alim Declaration.

[2] Sheikh Al-Oadah cannot read, write or speak English.  Therefore, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim, who authenticated the translation, which is Exhibit 2 to this Motion.  A translation of the Al-Oadah Declaration into English is Attachment B to the Alim Declaration.

2

conferences in the United States, except on one occasion.  He conducts no business in the United States.  <u>Id.</u> at ¶ 6.  Further, he owns no real property, and has no bank accounts or investments in the United States.  <u>Id.</u>  Sheikh Al-Oadah has only visited the United States twice – once as a tourist, and once after being invited by the Arab Youth League of Denver, Colorado, to speak at a public conference regarding the duty of Islamic scholars.  <u>Id.</u> at ¶ 5.  At no time during these two brief visits did Sheikh Al-Oadah advocate terrorism or solicit funds.  <u>Id.</u>

Sheikh Al-Oadah has never supported any person or organization that he has known to participate in terrorist activities, including the tragic attacks of September 11, 2001.  <u>Id.</u> at ¶ 8.  In fact, Sheikh Al-Oadah has repeatedly spoken out against terrorist activities, and has publicly condemned the September 11 attacks, stating in an article that the attacks were in clear violation of Islamic law.  <u>Id.</u> at ¶ 8, Ex. 1.  Sheikh Al-Oadah also published another article denouncing terrorist activities, and urging his readers to ensure that they do not justify the use of violence.  <u>Id.</u> at ¶ 9, Ex. 2.  In that article, Sheikh Al-Oadah emphasizes that the preservation of human life is a central tenet in Islamic law, and again states that terrorist attacks "are expressly and categorically forbidden in Islam."  <u>Id.</u>

Sheikh Al-Oadah does not subscribe to or read the *International Herald Tribune* or the *Al Quds al Arabi*.  <u>Id.</u> at ¶ 7.

### C.   <u>Plaintiffs' Allegations About Sheikhs Al-Hawali and Al-Oadah.</u>

The *Euro Brokers* plaintiffs listed Sheikhs Al-Hawali and Al-Oadah solely in the caption, and made no attempt to plead any allegations about him in the text of this complaint, other than generic allegations that hundreds of defendants acted in concert.  The *Burnett* plaintiffs similarly listed Sheikh Al-Oadah solely in the caption.

3

The *Burnett* and *WTC Properties* plaintiffs made the unsupported statement in that Sheikh Al-Hawali and several other individuals were "co-conspirators, aiders and abettors, agents of MIRA [Mercy International Relief Agency] and material sponsors of international terrorism."  See *Burnett* Compl. at ¶ 623; *WTC Properties* Compl. at ¶ 1073; see also id. at ¶ 614.  In fact, Sheikh Al-Hawali never had any responsibility for that entity's operations or activities, and has no connection to this entity today.  See Al-Hawali Decl. (Ex. 1) at ¶ 9. Indeed, he has never supported any person or entity that he has known to participate in terrorist activities, and believes that there is no justification for the loss of innocent life, including the tragic attacks of September 11, 2001.  Id. at ¶ 8.

The *Federal Insurance* and *NY Marine* plaintiffs listed Sheikhs Al-Hawali and Al-Oadah as two of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," but without setting forth any further facts in support of that generic allegation.  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

The *WTC Properties* plaintiffs also allege that "Mounir Motassadeq, convicted in Germany as an accessory to over 3,000 counts of murder for his involvement in the September 11, 2001 attacks, had the numbers of both Salman al-Awda and Safar al-Hawali in his phonebook, indicating that Motassadeq was in contact with them in the time leading up to the September 11, 2001 attacks."  See *WTC Properties* Compl., at ¶ 615.  As a threshold matter, Mr. Motassadeq was not convicted of murder, but only of belonging to a terrorist organization. Judge Schudt was quoted (in translation) as saying that:  "The clear picture shows the defendant as a member of a terrorist organization, but not as an accessory to murder."  See C. Whitlock,

"Friend of 9/11 Hijackers Convicted in Germany," *Washington Post*, Aug. 20, 2005, at A-12 (attached hereto as Exhibit 3). The court found Motassadeq not guilty of the "3,000 counts of accessory to murder in the attack, ruling that he did not play a direct role in the plot." Id. Further, the fact that someone has someone else's phone number in a phone book is not competent evidence of contacts between the two.

The remaining allegations that the *WTC Properties* plaintiffs attempt to plead against Sheikhs Al-Hawali and Al-Oadah were evidently taken from the detention hearing and prosecution of Sami Al-Hussayen, a graduate student at the University of Idaho. See *WTC Properties* Compl., at ¶¶ 515, 524-527, 529-530, 593-594, 598, 609-612, 616-618, 958, 970-975, 977-978, 982, 991, 998, 1010. As set forth in the next section, these allegations are also insufficient to state a claim or to allow the exercise of personal jurisdiction.

### III. PLAINTIFFS' ALLEGATIONS ABOUT SHEIKHS AL-HAWALI AND AL-OADAH FAIL TO FORM ANY BASIS FOR PERSONAL JURISDICTION OR TO ALLOW PLAINTIFFS TO STATE A CLAIM.

Plaintiffs' allegations about Sheikhs Al-Hawali and Al-Oadah fail to provide any basis for this Court to exercise personal jurisdiction over them, let alone for plaintiffs to state claims against them. As a threshold matter, these two defendants are not mentioned anywhere in the official report of the 9/11 Commission, available online at http://www.9-11commission.gov/.

Only the *WTC Properties* plaintiffs made any attempt to plead any allegations that were specific to Sheikhs Al-Hawali and Al-Oadah. As set forth below, these somewhat disjointed allegations, scattered across the complaint, arise almost entirely from these defendants' public advocacy, which is constitutionally protected speech. More importantly, their statements, as alleged by plaintiffs, are never alleged to have incited anyone to engage in terrorism, as is

required to impose liability on them.  See Brandenburg v. Ohio, 395 U.S. 444, 448-49 (1969)

(per curiam); see also Virginia v. Black, 538 U.S. 343, 349 (2003) (citing Brandenburg).

Although plaintiffs claim that Sheikhs Al-Hawali and Al-Oadah "served as mentors" to Osama

bin Laden or were "a key inspiration," see WTC Properties Compl. at ¶¶ 492, 610, they fail to

plead any facts showing that either individual knew of bin Laden's acts, let alone that either

knowingly supported him, or incited him to engage in terrorist activities.  Further, plaintiffs'

allegations that bin Laden called for the two sheikhs to be released from prison in the early

1990's, id. at ¶¶ 611-612, does not prove any causal relationship with plaintiffs' injuries, since

the two sheikhs were imprisoned for several years for their criticism of the Saudi government.  In

fact, bin Laden's statement creates no causal connection between the sheikhs' speech and bin

Laden's conduct, since the Saudi government's actions against Sheikhs Al-Hawali and Al-Oadah

were not based on any alleged terrorist activities on their part.  Moreover, their criticisms of

American foreign policy in the Middle East makes them no different than millions of Americans

who engage in constitutionally protected speech.

Any other advocacy in which Sheikhs Al-Hawali and Al-Oadah engaged, which has

nothing to do with imminent incitement of other persons to the terrorist attacks of September 11,

does not justify the exercise of personal jurisdiction, let alone serve as a basis to impose liability

on him.  Melzer v. Bd. of Educ. of the City Sch. Dist. of N.Y., 336 F.3d 185, 198 (2d Cir. 2003)

("Melzer himself could not be punished absent clear proof – also not present here – that he knew

of such illegal aims and specifically intended to accomplish them"), cert. denied, 540 U.S. 1183

(2004); Federation of Turkish-Amer. Societies v. ABC, 620 F. Supp. 56, 58 (S.D.N.Y. 1985)

(dismissing complaint on First Amendment grounds since defendant did not engage in

"immediate incitements to violence").  Nor does it constitute material support, as a matter of law.

Humanitarian Law Project v. Reno, 205 F.3d 1130, 1137 (9th Cir. 2000) ("Someone who

advocates the cause of the PKK could be seen as supplying them with personnel . . . . But

advocacy is pure speech protected by the First Amendment.").[3]  Plaintiffs have offered no

evidence that anyone involved with the September 11 attacks was incited to those attacks by

anything said or done by Sheikhs Al-Hawali and Al-Oadah.  The absence of any nexus between

Sheikhs Al-Hawali and Al-Oadah, and the September 11 attacks, forecloses plaintiffs' personal

jurisdiction argument.

The *WTC Properties* plaintiffs' remaining allegations, which arise from the detention

hearing and prosecution of Sami Al Hussayen, are similarly defective.  The evidence that was

proffered at the detention hearing does not support plaintiffs' allegations against Sheikhs

Al-Hawali and Al-Oadah, because the U.S. District Court held that detention of Mr.

Al-Hussayen, pursuant to 18 U.S.C. § 3142, was not supported by the government's evidence.

See United States v. Sami Al-Hussayen, Cr. No. 03-048, Order (D. Idaho Mar. 12, 2003)

(attached hereto as Exhibit 4).  At the trial of Sami Al-Hussayen on terrorism charges, the jury

was expressly instructed that material support did not include providing "religious materials,"

which includes Sheikhs Al-Hawali's and Al-Oadah's advocacy, and that the right to associate

with a group was not illegal absent specific intent to further the illegal aims of that group.  See

United States v. Sami Al-Hussayen, Jury Instructions, Nos. 32, 35-36, 48 (June 1, 2004)

(excerpts attached hereto as Exhibit 5).  Based on these instructions, a jury acquitted Mr. Al-

_____

[3] Indeed, the U.S. government allows for the distribution of "information and informational materials" which are defined as "publications, films, posters . . . and informational articles" by designated terrorist entities, thereby recognizing the right to engage in advocacy.  See 31 C.F.R. §§ 595.206, 594.305-594.306.

Hussayen of all material support charges under 18 U.S.C. §§ 2339A, 2339B.  See United States

v. Sami Al-Hussayen, Verdict (June 10, 2004); Order of Dismissal (July 2, 2004) (attached

hereto as Exhibits 6-7).  This verdict clearly demonstrates that any testimony in that trial about

Sheikhs Al-Hawali's and Al-Oadah's advocacy failed to prove anything about Mr. Al-

Hussayen's alleged terrorist activities.  As a result, it must also fail to prove that Sheikhs

Al-Hawali's and Al-Oadah's advocacy incited any terrorist activity or otherwise caused

imminent harm.

> **IV.  THIS COURT LACKS PERSONAL JURISDICTION OVER SHEIKHS AL-HAWALI AND AL-OADAH, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.**

This Court must dismiss plaintiffs' complaints against Sheikhs Al-Hawali and Al-Oadah,

pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  The burden is on

plaintiffs to establish that personal jurisdiction exists over each defendant by making a *prima*

*facie* showing of facts sufficient to support a finding of personal jurisdiction.  Bank Brussels

Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Plaintiffs'

conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction.

*In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005); Mende v.

Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

> **A.  Rule 4(k), Fed. R. Civ. P., Does Not Provide any Basis for Exercising Personal Jurisdiction Over Sheikhs Al-Hawali and Al-Oadah.**

Under Rule 4(k)(1)(D), there are two possible approaches for exercising personal

jurisdiction over a non-resident defendant – a "general jurisdiction" theory or a "specific

jurisdiction" theory.  As a threshold matter, there is no basis for exercising jurisdiction over

Sheikhs Al-Hawali and Al-Oadah under a "general jurisdiction" theory.  Plaintiffs have alleged

no contacts with this country by either defendant, and they have only been here once and twice, respectively.  Thus, there are no "continuous and systematic" contacts to support the exercise of general jurisdiction over Sheikhs Al-Hawali and Al-Oadah.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Nor is there any basis for exercising jurisdiction over these two defendants under a "specific jurisdiction" theory.  For this Court to exercise personal jurisdiction over Sheikhs Al-Hawali and Al-Oadah under a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that they were a "primary participant in intentional wrongdoing." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If a defendant were not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise were not a "primary participant," then personal jurisdiction cannot be supported.  See In re Sept. 11, 349 F. Supp. 2d at 809 (quoting In re Magnetic Audiotape); Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).  Here, plaintiffs have failed to plead any facts to support an allegation that Sheikhs Al-Hawali and Al-Oadah were personally involved, or a primary participant, in the September 11 attacks, so this Court cannot exercise personal jurisdiction over them under a "specific jurisdiction" theory.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed to "make a *prima facie* showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries."  In re Sept. 11, 349 F. Supp. 2d  at 809.  Instead, plaintiffs merely made "conclusory allegations" that Sheikhs Al-Hawali and Al-Oadah "aided and abetted terrorists," but without pleading any facts to support an allegation that he

"purposefully directed his activities at this forum" by engaging in transactions "that he knew at the time supported international terrorism." Id. at 813 (dismissing Prince Sultan for lack of personal jurisdiction, because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan purposefully directed his activities at this forum"). Plaintiffs have not pled any other facts relating to Sheikhs Al-Hawali and Al-Oadah that would allow the exercise of personal jurisdiction over them under Rule 4(k), Fed. R. Civ. P.

Therefore, this Court must find, as it did in dismissing several other defendants who had few if any contacts with this country, that plaintiffs' allegations are insufficient to support this Court's exercise of personal jurisdiction over Sheikhs Al-Hawali and Al-Oadah.

**B.      The New York Long-Arm Statute Does Not Provide any Basis for Exercising Personal Jurisdiction Over Sheikhs Al-Hawali and Al-Oadah.**

The New York long-arm statute, N.Y. C.P.L.R. § 302(a) (McKinney 2001), does not allow the exercise of personal jurisdiction over Sheikhs Al-Hawali and Al-Oadah. As this Court held, merely alleging that "all defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11," is insufficient to establish personal jurisdiction through the New York long-arm statute on a conspiracy theory. In re Sept. 11, 349 F. Supp. 2d at 805. Here, plaintiffs' complaints fail to "allege any specific facts" that would allow the reasonable inference that Sheikhs Al-Hawali and Al-Oadah "directed, controlled, or requested al Qaeda to undertake its terrorist activities." Id. at 806. Nor do plaintiffs make "any specific allegations of [his] knowledge of or consent to those activities." Id. Plaintiffs allege no facts from which this Court can infer Sheikhs Al-Hawali and Al-Oadah had any control or knowledge of al Qaeda and its activities. Plaintiffs' allegations relate almost entirely to their public advocacy, but without pleading any facts that would show that either defendant incited others to

10

engage in illegal conduct.

This Court must find that there is no other basis that would allow the exercise of personal jurisdiction over Sheikhs Al-Hawali and Al-Oadah, under either the catch-all provision of Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York long-arm statute.  Nor would the exercise of personal jurisdiction over Sheikhs Al-Hawali and Al-Oadah satisfy the requirements of due process, which require some level of minimum contacts with this forum.  _In re_ Sept. 11, 349 F. Supp. 2d at 810-11.  This Court need go no further, and should dismiss the plaintiffs' complaints against Sheikhs Al-Hawali and Al-Oadah for lack of personal jurisdiction.

### V.    THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST SHEIKHS AL-HAWALI AND AL-OADAH, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to find that it could exercise personal jurisdiction over Sheikhs Al-Hawali and Al-Oadah, it must still find that plaintiffs have not pled factual allegations against them, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Second Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)."  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).  Here, there is little more than "conclusory allegations" pled against Sheikhs Al-Hawali and Al-Oadah, besides allegations that were held factually insufficient to support the detention or conviction of Sami Al-Hussayen.

11

This Court should not countenance any attempt by plaintiffs to argue that they should be entitled to discovery to obtain facts to plead their claims.  As Judge Easterbrook concluded, "It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case." Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987) (affirming imposition of Rule 11 sanctions on plaintiffs' counsel for bringing frivolous claims); accord Denny v. Barber, 73 F.R.D. 6, 10 (S.D.N.Y. 1977) ("Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery.").

The plaintiffs brought the following claims against these two defendants:  (1) a tort claim under the Anti-Terrorism Act (*Burnett, Federal Insurance, NY Marine,* and *WTC Properties*); (2) a claim under the Torture Victim Protection Act (*Burnett,* and *Federal Insurance*); (3) a claim under the Alien Tort Claims Act (*Burnett*); and (4) Civil RICO claims (*Burnett, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).

Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival (*Burnett* and *Federal Insurance*); (2) conspiracy, and aiding and abetting (*Burnett, Federal Insurance, NY Marine,* and *WTC Properties*); (3) assault and battery (*Federal Insurance*); and (4) property destruction and damage (*Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).  The *Burnett, Federal Insurance,* and *NY Marine* plaintiffs brought negligence claims, and negligent and intentional infliction of emotional distress claims.  All plaintiffs also brought separate claims for punitive damages.

### A.   PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT SHEIKHS AL-HAWALI'S AND AL-OADAH'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that the plaintiffs have failed to satisfy the threshold requirement for

their intentional tort claims since they have not pled sufficient facts showing that Sheikhs

Al-Hawali's and Al-Oadah's acts proximately caused plaintiffs' injuries.  Plaintiffs have alleged

in a conclusory manner that all defendants provided support to al Qaeda, which led to the

September 11 attacks.  There are 361 named defendants in *Burnett II* (with 5,000 "John Doe"

defendants), 201 defendants in *Euro Brokers*, 581 defendants in *Federal Insurance*, 561

defendants in *NY Marine*, and 201 defendants in *WTC Properties*.  There is no way for Sheikhs

Al-Hawali and Al-Oadah to know what plaintiffs are alleging is their wrongful conduct.

Plaintiffs cannot simply "lump" Sheikhs Al-Hawali and Al-Oadah with hundreds of other

defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian

Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9

(S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim

without providing any factual allegations to distinguish their conduct, and accordingly dismissal

of the complaint in its entirety is warranted.").

Under clear Second Circuit precedent, proximate causation means that only those

defendants whose acts "were a substantial factor in the sequence of responsible causation, and

whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held

liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d

Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*,

aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re*

Sept. 11, 349 F. Supp. 2d at 826.  Hence, in order to impose tort liability on Sheikhs Al-Hawali

and Al-Oadah through a concerted liability theory, plaintiffs must show that they "must know

the wrongful nature of the primary actor's conduct" and that they acted "in pursuance of a

common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").

This Court should dismiss the plaintiffs' tort counts against Sheikhs Al-Hawali and Al-Oadah, because plaintiffs have failed to state a cause of action that these two defendants' acts directly and intentionally injured plaintiffs, thereby precluding them from recovering under any direct tort theory, i.e., the Alien Tort Claim Act; the Torture Victim Protection Act; the Anti-Terrorism Act; the New York wrongful death and survival statutes; and common law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.    PLAINTIFFS' CLAIMS AGAINST SHEIKHS AL-HAWALI AND AL-OADAH UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, THE ALIEN TORT CLAIMS ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)    This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Burnett* Count 2 and *Federal Insurance* Count 6), because Sheikhs Al-Hawali and Al-Oadah, private individuals, could not have acted under color of law as required to impose liability.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

(2)    This Court must dismiss the plaintiffs' intentional infliction of emotional distress

14

claims (*Burnett II* Count 8 and *Federal Insurance* Count 5), and assault and battery claim

(*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these

suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); <u>*In re*</u> <u>Sept. 11</u>, 349 F. Supp. 2d at

829.  These complaints were filed on August 1, 2003 and September 10, 2003, respectively,

more than one year after September 11, 2001.  Since several other complaints in this litigation

were filed within the one-year period, including the first *Burnett* complaint, the only reason these

complaints were not timely filed is plaintiffs' counsels' inaction, not any alleged lack of

knowledge of the underlying facts.

(3)     This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act,

18 U.S.C. § 2331, <u>et</u> <u>seq.</u> (*Burnett* Count 3; *Federal Insurance* Count 10; *NY Marine* Count 5;

*WTC Properties* Count 1), because plaintiffs have failed to plead any facts to support an

inference that Sheikhs Al-Hawali and Al-Oadah engaged in any act of international terrorism

proscribed by 18 U.S.C. § 2331(1); or that they provided any donations, training, or personnel to

any terrorist group which caused plaintiffs' injuries; or that they contributed to any terrorist

group whose recipients were known to them and which caused plaintiffs' injuries, as required to

impose liability under the ATA.  <u>Smith v. Islamic Emirate of Afghanistan</u>, 262 F. Supp. 2d 217,

227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the

criminal acts and proximate cause"); <u>see also</u> <u>Boim v. Quranic Literacy Inst.</u>, 291 F.3d 1000,

1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent

criminal acts").

(4)     This Court must dismiss the plaintiffs' tort claims under the Alien Tort Claims

Act, 28 U.S.C. § 1350 (*Burnett* Count 4 and *Tremsky* Count 3), because liability can only be

imposed if (1) the defendant is a state actor or acting under color of state law, or (2) the defendant engaged in "certain forms of conduct" such as "hijacking of aircraft" or "certain acts of terrorism."  Bigio v. Coca-Cola Co., 239 F.3d 440, 447-48 (2d Cir. 2001).  Sheikhs Al-Hawali and Al-Oadah are not state actors, and plaintiffs have not pled that they were acting under color of state law.  Nor have plaintiffs pled that these two defendants engaged in, or knowingly supported, the requisite misconduct, i.e., hijacking or terrorism.

(5)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Burnett* Counts 5 and 7; *Federal Insurance* Counts 2 and 3), because plaintiffs have not pled any facts to support an allegation that Sheikhs Al-Hawali and Al-Oadah "caused the decedent's death," or that they committed a tort against the decedent prior to death. N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that these two defendants "supported, aided and abetted, or conspired with the September 11 terrorists."  In re Sept. 11, 349 F. Supp. 2d at 829.

(6)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and property destruction tort claims (*Euro Brokers* Counts 1-2, 6-8; *Federal Insurance* Count 1; *NY Marine* Count 1; *WTC Properties* Count 5-6, 9), because plaintiffs have not pled any facts to support an allegation that Sheikhs Al-Hawali's and Al-Oadah's acts caused plaintiffs' injuries, as required for these torts.  Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct

16

and injury"); <u>People v. Keech</u>, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); <u>People v. Summer</u>, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[4]

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claims, since plaintiffs have not pled facts sufficient to show that these two defendants associated himself with, and participated in, the conspiracy resulting in the property damage, let alone that the property damage was a foreseeable act done in furtherance of any of their unstated actions in pursuit of some vague conspiracy.  <u>United States v. Ruiz</u>, 115 F.3d 1492, 1499 (1st Cir. 1997).  Plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  <u>Talmor v. Talmor</u>, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

### C.   THE *BURNETT* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.

This Court must dismiss the RICO claims brought by the *Burnett* personal injury plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The *Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* plaintiffs instead decide to pursue their RICO claims against Sheikhs Al-Hawali and Al-Oadah, this Court must find that as personal injury plaintiffs, they lack standing to bring RICO claims, which are limited by statute to "[a]ny person injured in his business or property."  18 U.S.C. § 1964(c).  Under clear Second Circuit precedent, personal

_____

[4] Defendants have not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

injury plaintiffs cannot seek recovery under the RICO statute.  Laborers Local 17 Health &
Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires
an injury to 'business or property'"); see also Burnett v. Al Baraka Invest. & Devel. Corp., 274
F. Supp. 2d 86, 101-02 (D.D.C. 2003) (dismissing plaintiffs' RICO claims for lack of standing);
Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995) (holding that "personal
representatives of the decedents are not entitled to sue under § 1964(c)"); von Bulow v. von
Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not
actionable under RICO.").

   The Ninth Circuit's recent decision in Diaz, referenced by the O'Neill plaintiffs in their
supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in
Diaz, the plaintiff specifically "alleged both the property interest and the financial loss" arising
from his injury, not mere personal injury.  Diaz v. Gates, No. 02-56818, 2005 WL 1949879, at
*3 (9th Cir. Aug. 16, 2005) (en banc).  Indeed, the Ninth Circuit's majority opinion expressly
addressed the concerns raised by the dissent that RICO liability would somehow extend to
personal injuries, on the grounds that "our approach does not create RICO liability for every loss
of wages resulting from personal injury."  Id.  Thus, even under Diaz – which is not binding on
this Court – the personal injury plaintiffs still lack RICO standing.

   **D.**   **PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A
         CAUSE OF ACTION AGAINST SHEIKHS AL-HAWALI AND
         AL-OADAH FOR PLAINTIFFS' RICO CLAIMS.**

   Even if this Court were to consider the allegations set forth to state plaintiffs' RICO
claims, it must still find that the plaintiffs who seek to bring RICO claims against Sheikhs
Al-Hawali and Al-Oadah have failed to state a RICO claim under Section 1962(a), (c), or (d).

As a threshold issue, plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, they cannot maintain their RICO claims against these two defendants.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that Sheikhs Al-Hawali and Al-Oadah had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court previously held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Sheikhs Al-Hawali and Al-Oadah since the plaintiffs have done nothing to show that each individual defendant conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes."  Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim).  Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim.  Id. at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Sheikhs Al-Hawali

19

and Al-Oadah under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from their investment of the enterprise's income; that they engaged in an enterprise, or conspired with others to do so; or that they actively managed and operated the alleged enterprise, or were a central figure in the alleged scheme.

### E. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST SHEIKHS AL-HAWALI AND AL-OADAH BECAUSE THEY OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett*, *Federal Insurance,* and *NY Marine* plaintiffs' negligence and negligent infliction of emotional distress claims against Sheikhs Al-Hawali and Al-Oadah, because they owed no duty of care to plaintiffs.  It is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim.  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 342 (1928); *In re* Sept. 11, 349 F. Supp. 2d at 830.  The plaintiffs have alleged nothing more than conclusory allegations that "all Defendants were under a general duty," see *Burnett* Compl. ¶ 666, or that defendants "breached duties of care owed to plaintiffs and the employees of plaintiffs' insureds."  *Federal Insurance* Compl. ¶ 642; accord *NY Marine* Compl., ¶ 79.  However, there is no general duty to "control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).  This Court has previously dismissed the negligence claims as to other defendants, because plaintiffs' "complaints presently before the Court do not allege or identify a duty owed to Plaintiffs by moving Defendants."  *In re* Sept.11, 349 F. Supp. 2d at 831; accord Burnett, 274 F. Supp. 2d at 108-09 (same).  This Court should dismiss plaintiffs' negligence and negligent infliction of emotional distress claims against Sheikhs Al-Hawali and Al-Oadah.

**F.     PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' punitive damages counts, because no independent cause of action exists under New York law for this claim.  It is settled law that punitive damages are merely a form of relief, not an independent tort cause of action.  Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v. UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

**G.     PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett*, Count 9; *Federal Insurance*, Count 7; *NY Marine,* Count 2; *WTC Properties*, Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Here, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

21

**VI.    PLAINTIFFS' SERVICE OF PROCESS ON SHEIKHS AL-HAWALI AND
AL-OADAH IS INSUFFICIENT AND SHOULD BE QUASHED
PURSUANT TO RULE 12(b)(5), FED. R. CIV. P.**

Plaintiffs represented to this Court that Sheikhs Al-Hawali and Al-Oadah, along with a

number of other foreign defendants, could not be served by the method set forth under Rule 4,

Fed. R. Civ. P., which they argued merited service by publication in three newspapers.  There are

several flaws with plaintiffs' representations, and with allowing service of process by

publication.  As the Supreme Court recently emphasized, "service of process . . . is fundamental

to any procedural imposition on a named defendant."  Murphy Brothers, Inc. v. Michetti Pipe

Stringing, Inc., 526 U.S. 344, 350 (1999).  Hence, "in the absence of service of process (or

waiver of service by the defendant), a court ordinarily may not exercise power over a party the

complaint names as a defendant."  Id.  This is a jurisdictional requirement.  Id.

First, the newspapers selected by plaintiffs are not widely distributed, if at all, in Saudi

Arabia.  See Al-Husaini Motion to Dismiss, at 10 (Docket No. 82) (Apr. 8, 2004) (noting that the

International Herald Tribune has a circulation of only 199 in Saudi Arabia, and that Al Quds Al

Arabi is banned in that country).  Even the one Arabic language newspaper is actually published

in London, not Saudi Arabia, as confirmed by its website, www.alquds.co.uk.  Plaintiffs only

paid for announcements in the print editions, and not the online editions.  Even if Sheikhs

Al-Hawali and Al-Oadah had accessed these newspapers on the Internet, they would not have

seen the announcement if they had checked these newspapers' websites on the days the

announcement ran in the print edition.  Further, neither can read English, so the announcements

in the International Herald Tribune and USA Today would not have reached them.

Third, plaintiffs made no showing that they could not serve Sheikhs Al-Hawali and

Al-Oadah by means of a process server.  Indeed, plaintiffs' own process server, Nelson Tucker,

on his website, asserts his ability to serve defendants "Anywhere in the World," has a lengthy

section describing service in Saudi Arabia, headed "Process Service Guaranteed," and quotes a

specific rate for Saudi Arabia.  <u>See</u> Process Service Network, "International" and "Saudi Arabia"

(attached hereto as Exhibits 8-9).  Plaintiffs have offered no explanation as to why Mr. Tucker's

firm could not have served these two defendants, as he claims he can do.

Finally, this Court should reject plaintiffs' argument that because these two defendants

have retained counsel and filed a motion to dismiss, they have actual notice.  Such an argument

would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and
> that they were named as defendants, such knowledge is not a substitute for service
> on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be
> granted, and the rule would be a nullity.

<u>Morrissey v. Curran</u>, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), <u>aff'd</u> <u>in</u> <u>relevant</u> <u>part</u>, 650 F.2d 1267

(2d Cir. 1981).  The Second Circuit has held that "actual notice" is no substitute for proper

service under Rule 4, Fed. R. Civ. P.  <u>National Dev. Co. v. Triad Holding Corp.</u>, 930 F.2d 253,

256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper,

since plaintiffs' representations to this Court did not justify that means of service.

## **<u>CONCLUSION</u>**

For the foregoing reasons, defendants Sheikh Safer Al-Hawali and Sheikh Salman

Al-Oadah respectfully request that this Court grant their Motion to Dismiss for lack of personal

jurisdiction, failure to state a claim upon which relief can be granted, and improper service of

process.

Respectfully submitted,


/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
  Sheikh Safer Al-Hawali and
  Sheikh Salman Al-Oadah


Dated:  September 6, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____
Alan R. Kabat