# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC) |
| | ECF Case |

This document relates to:

*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-5738
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978
*Continental Casualty Co. et al, v. Al Qaeda, et al.*, No. 04-CV-5970
*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280
*Walter Tremsky, et al. v. Osama Bin Laden, et al.*, No. 02-CV-7300

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT DR. ABDULLAH BIN SALEH AL-OBAID

September 20, 2005

## <u>TABLE OF CONTENTS</u>

**Page**

I.   FACTUAL BACKGROUND ........................................................................ 1

II.   APPLICABLE LAW ............................................................................. 5

   A.  The Burden Of Proof In A Jurisdictional Challenge
       Is On The Party Claiming Immunity ............................................... 5
   B.  Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's
       *Prima Facie* Showing Of Personal Jurisdiction May Be
       Established Solely By Legally Sufficient Allegations of Jurisdiction .......... 6
   C.  A Motion To Dismiss Under Rule 12(b)(6) Merely Tests
       The Legal Feasibility Of The Complaint ......................................... 7

III.   ARGUMENT .................................................................................. 7

   A.  The Plaintiffs' Claims Against Dr. Al-Obaid
       Fall Squarely Within the  Tortious Act Exception ............................... 7
   B.  Plaintiffs' Allegations Of Knowledge And Intent Are
       Sufficient To Sustain  Causation Under The FSIA ............................... 9
   C.  The Commercial Activity Exception Confers
       Jurisdiction Over Dr. Al-Obaid .................................................. 14
   D.  Dr. Al-Obaid Is Subject To The Personal Jurisdiction Of This Court ........... 14

       1.  The FSIA Provides A Statutory Basis For Personal Jurisdiction ............ 14
       2.  Personal Jurisdiction Exists Under New York's Long-Arm Statute .......... 15
       3.  The Exercise Of Jurisdiction Comports With Due Process .................. 16

           a)  The Defendant Directed His Conduct At The United States ............ 16
           b)  The Defendant Has Extensive Contacts With The United States ........ 17

   E.  The Defendant's Motion To Dismiss For Failure
       To State A Claim Should Be Denied .............................................. 18

       1.  The Complaints Adequately Allege Claims Under The
           ATA And Common Law Theories ............................................ 19
       2.  Plaintiffs' Assault, Battery, And Intentional
           Infliction Of Emotional Distress Claims Are Not
           Barred By The Statute Of Limitations .................................... 20
       3.  Plaintiffs' Civil RICO Claims Are Cognizable ............................ 20
       4.  Plaintiffs' Negligence And Negligent Infliction Of
           Emotional Distress Claims Are Viable Against This Defendant ............. 21
       5.  Plaintiffs' Conspiracy And Punitive Damages
           Claims Should Not Be Dismissed .......................................... 22

     F.  Plaintiffs Have Properly Served Dr. Al-Obaid ............................................................. 22

**IV.**    **CONCLUSION** ......................................................................................................... 23

## TABLE OF AUTHORITIES

**Page**

### CASES

Ball v. Metallurgie Hoboken Overpelt, S.A.,
    902 F.2d 194 (2d Cir.), cert. denied, 498 U.S. 854 (1990) ..............................................6, 7

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) ................................................................................8, 13

Bryks v. Canadian Broadcasting Corp.,
    906 F. Supp. 204 (S.D. N.Y. 1995)......................................................................17

Burger King v. Rudzewicz,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)....................................16

Burnett v. Al Baraka Invest. & Dev. Corp.,
    274 F. Supp. 2d 86, 105 (D.D.C. 2003) .............................................................9

Calder v. Jones,
    465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984)....................................16

Cargill Int. S.A. v. M/T Pavel DyBenko,
    991 F.2d 1012 (2d Cir. 1993)...............................................................................5

Chuidian v. Philippine National Bank,
    912 F.2d 1095 (9th Cir. 1990) .............................................................................17

Conley v. Gibson,
    355 U.S. 41 (1957)...........................................................................................7, 9

Daliberti v. Iraq,
    97 F. Supp. 2d 38 (D. D.C. 2000) ......................................................................16

Davis v. Barrett Day Securities, Inc.,
    1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995)................................................17

DiStefano v. Carozzi North America, Inc.,
    286 F.3d 81 (2d Cir. 2001).................................................................................7

Filus v. Lot Polish Airlines,
    907 F.2d 1328 (2d Cir. 1990)..............................................................................6

First American Corp. v. Sheikh Zayed bin Sultan Al-Nayhan,
    948 F. Supp. 1107 (D.D.C. 1996) .....................................................................17

First City, Texas-Houston, N.A. v. Rafidian Bank,
    150 F.3d 172 (2d Cir. 1998) ........................................................................6

Flatow v. Islamic Republic of Iran,
    999 F. Supp. 1 (D.D.C. 1998) ..................................................................21

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980) ......................................................................7

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ........................................................ 8, 12-13

Leatherman v. Tarrant County,
    507 U.S. 163 (1993) ................................................................................10

Linde, et al v. Arab Bank, PLC,
    2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005).................. 11-12

In re Magnetic Audiotape Antitrust Litigation,
    334 F.3d 204 (2d Cir. 2003) .................................................................7, 17

Mwani v. Bin Laden,
    417 F.3d 1 (D.C. Cir. 2005) .....................................................................16

Pelman v. McDonald's,
    396 F.3d 508 (2nd Cir. 2005) .........................................................10, 13, 18

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002) ..........................................................7, 10, 12

Pugh v. Socialist People's Libyan Arab Jamahiriya,
    290 F. Supp. 2d 54 (D. D.C. 2003) ..........................................................16

Rein v. Socialist People's Libyan Arab Jamahiriya,
    995 F. Supp. 325 (E.D. N.Y. 1998) ..........................................................16

Reiss v. Societe Centrale DuGroupe Des Assurances Nationales,
    235 F.3d 738 (2d Cir. 2000) ......................................................................6

Robinson v. Malaysia,
    269 F.3d 133 (2d Cir. 2001) ...............................................................5, 8, 12

Saudi Arabia v. Nelson,
    507 U.S. 349, 123 L. Ed. 2d 47 (1993) ...............................................5, 6, 12

<u>Swierkiewicz v. Sorema</u>,
    534 U.S. 506 (2002)...................................................................................5, 9, 10

<u>In re Terrorist Attacks on September 11, 2001</u>,
    349 F. Supp. 2d 765 (S.D. N.Y. 2005)......................................8-9, 14-15, 17, 19

<u>Warren v. District of Columbia</u>,
    353 F.3d 36 (D.C. Cir. 2004) ..........................................................10-11, 12

<u>Wynder v. McMahon</u>,
    360 F.3d 73 (2d Cir. 2004)..............................................................................7

## RULES AND STATUTES

28 U.S.C. § 1330(b) ...........................................................................................14

28 U.S.C. § 1605(a)(5)..........................................................................................8

28 U.S.C. 1605(a)(7)...........................................................................................14

Fed. R. Civ. P. 8 ...........................................................................................5, 9-10

Fed.  R. Civ. P. 9(b) .........................................................................................9-10

Fed.  R. Civ. P. 12(b)(6).......................................................................................7

## MISCELLANEOUS

G.A. Res. 51-210, U.N. GAOR, 51st Sess. (1996)..............................................20

G.A. Res. 54-109, U.N. GAOR, 54th Sess. (1999) ..........................................21

## I.      FACTUAL BACKGROUND

Plaintiffs in the above referenced actions ("Plaintiffs") have named Dr. Abdullah Bin Saleh Al-Obaid ("Dr. Al-Obaid") as a defendant, based on his longstanding sponsorship and support of al Qaida's global jihad.[1]

Dr. Al-Obaid is the President of the U.S. branch of the Muslim World League ("MWL"). S*ee* Burnett 3AC ¶ 251, WTC Properties Complaint ¶ 425.  He also served as President of two Virginia corporations, Sana-Bell, Inc. and Sanabel Al Kheer, Inc.  *See* Burnett  3AC ¶¶ 268, 275; WTC Properties ¶ 401.  Both entities are part of the "SAAR network" (a group of charities so named because of funding provided by Sulaiman Abdul Aziz al Rajhi, *see* Burnett  3AC ¶ 261) and both are alleged to have engaged in fund-raising and money-laundering for al Qaeda and bin Ladin.  *See* Burnett 3AC ¶¶ 262-266; *see also* Affirmation of Andrea Bierstein submitted in opposition to the motion to dismiss filed by Abdullah Bin Abdul Mohsen Al-Turki ("Bierstein Al-Turki Aff."), Ex. 3.  At the same time, he is also employed as the Deputy General Manager of Al Watania Poultry, a substantial Saudi company owned by the al Rajhi family, from 1994 to the present.  WTC Properties Complaint ¶ 215, 426; Continental Casualty Complaint ¶ 552.

In addition to his positions in the business world, Al-Obaid has held high leadership roles in numerous charities that operated as conduits for al Qaeda financing, including the Muslim World League ("MWL"), Rabita Trust ("Rabita"), International Islamic Relief Organization ("IIRO"), Sanabell, Inc., and Sanabel al-Khair.  Dr. Al-Obaid was Secretary-General of MWL and now heads MWL's U.S. branch.  He was vice-chairman of the Board of Trustees of Rabita and president of Sanabell, Inc. and Sanabel al-Khair.  Federal Insurance Complaint ¶ 213; Burnett 3AC ¶¶ 251-52, 273, 275; WTC Properties ¶¶ 448-450; Euro Brokers Complaint ¶ 53;

---

[1] Dr. Al-Obaid is a defendant in all of these cases.  The allegations against him are set forth in the most recent Complaints in each case.  For purposes of this Opposition, Plaintiffs adopt the allegations from one another's pleadings, and request leave to amend their Complaints to include any omitted allegation the Court deems material in deciding this Motion.

Continental Casualty ¶¶ 458, 552; Cantor Fitzgerald ¶ 67.  Each of these organizations has ties

and has provided assistance to al Qaeda.  Although one might (conceivably) be associated with

one such charity-front without taking an active role in diverting funds to al Qaeda, Dr. Al-

Obaid's positions with at least five such organizations cannot be a coincidence.  The only

plausible inference is that Dr. Al-Obaid himself was instrumental in funneling funds from the

various organizations with which he was affiliated to Osama bin Laden and al Qaeda to support

their *jihad* against the United States.

The MWL is among the world's largest Islamic charitable organizations, with offices in

more than thirty countries.  The MWL serves as an umbrella organization for a number of other

Islamic charities, commonly referred to as bodies or members of the League, including the

International Islamic Relief Organization, the World Assembly of Muslim Youth, al Haramain &

al Aqsa Mosque Foundation, Benevolence International Foundation, and the Rabita Trust.  The

MWL has long operated as a fully integrated component of al Qaida's financial and logistical

infrastructure, and provided material support and resources to al Qaida and affiliated foreign

terrorist organizations.  As described in testimony before the House Committee on Financial

Services Subcommittee on Oversight and Investigations in March 2003, "As part of [its] mission

over the past two decades, MWL has. . . secretly provided critical financial and organizational

assistance to Islamic militants loyal to Al-Qaeda and Usama Bin Laden."  *See* Matthew Epstein

with Evan F. Kohlmann, "Arabian Gulf Financial Sponsorship of Al-Qaida via U.S.-Based

Banks, Corporations and Charities," March 11, 2003, at 2, annexed as Exhibit 3 to the Andrea

Bierstein Al-Turki Affirmation and submitted in support of the *Burnett* Plaintiffs' Memorandum

of Law in Opposition to Motions to Dismiss of Defendant Abdullah Bin Abdul Mohsen Al-Turki

(June 30, 2004) ("*Burnett* Plaintiffs' Opposition").  According to Epstein and Kohlmann, MWL

is one of "three organizations [that] served a critical role in the Arab-Afghan terrorist

infrastructure by laundering money originating from bank accounts belonging to Bin Laden and his sympathetic patrons in the Arabian Gulf, providing employment and travel documents to Al-Qaeda personnel worldwide, and helping "to move funds to areas where Al-Qaeda was carrying out operations."  *Id.* at 1.  Further details of MWL's role in financing bin Laden are al Qaeda are provided in the Epstein and Kohlmann report.

Rabita, which is an arm of MWL, is in reality an Al Qaeda front.  Burnett 3AC ¶¶ 268, 270; WTC Properties ¶¶ 448-49.  Its Secretary General, Wael Julaidan, is known to be an al Qaeda member and has repeatedly aided and abetted terrorists.  Burnett 3AC at ¶ 236, 270.  The U.S. Treasury Department has described Julaidan as "the head of various non-governmental organizations providing financial and logistical support to the al-Qa'ida network."  Burnett 3AC at ¶ 236.  In October, 2001, Rabita was designated by President Bush as a "Specially Designated Global Terrorist Entity" ("SDGTE") and its assets were frozen by the Treasury Department. Burnett 3AC at ¶ 274.

Sanabell, Inc. and Sanabel al-Khair, both part of the "SAAR network" (a group of charities so named because of funding provided by Sulaiman Abdul Aziz al-Rajhi, see Burnett 3AC ¶ 261), played a substantial role in raising funds for MWL and for the International Islamic Relief Organization ("IIRO"), and then diverting those funds to terrorist causes.  See WTC Properties ¶ 385; Bierstein Al-Turki Aff., Exhibit 3 at 7-15.  In July 1998, Dr. Al-Obaid wrote to MWL secretary and treasurer Yaqub Mirza and noted that part of the proceeds from Sanabell's investments were used to establish Sana-Bell, Inc. in the United States.  WTC Properties ¶ 402.

On the Muslim World League's websites, a list of international branches of the Muslim World League include the same New York and Virginia addresses given for the IIRO, on whose executive committee al-Obaid simultaneously served.  WTC Properties ¶ 411-13, 417.  IIRO was associated with other alleged terrorist-financing charities. On October 26, 1996, senior

representatives of Benevolence International Foundation, Global Relief Foundation, Holy Land Foundation, International Relief Association, Islamic African Relief Agency, Mercy International – USA, and IIRO met to study the idea of establishing a council for American Muslim Charities. The first four of these charities are on the U.S. Government's SDGT list and have had their assets frozen. WTC Properties ¶ 415.

Dr. Al-Obaid cannot credibly contend that he was unaware that the charities he supported and directed were pervasively involved in the sponsorship of Islamic extremists, including al Qaida.  In this regard, it is important to note that the involvement of the Saudi charities was well documented during the years that Dr. Al-Obaid exercised authority over those organizations. Indeed, MWL and its constituent charities, including IIRO, WAMY and al Haramain, were repeatedly implicated in terrorist and extremist activities between 1990 and September 11, 2001. Given his supervisory authority over those charities, Dr. Al-Obaid most certainly knew of these reports.  In fact, in a 1997 interview published in the MWL's own newspaper, Dr. Al-Obaid himself acknowledged that charges of terrorism sponsorship had been leveled against the Saudi charities, including the MWL, and that those charges were accurate.  "Answering a question on the reports regarding the League's funds being funneled to extremist groups, Dr. al Obeid said, 'this is a closed chapter…It has already been proven that there were people who exploited this situation and misused some funds."  See Exhibit 4 to the June 1, 2005 Affirmation of Sean Carter Transmitting Supplemental Evidence in Opposition to all Motions to Dismiss Under the FSIA. Moreover, as a government official with direct responsibility for the operations of the charities, it is reasonable to assume that Saudi government officials would have conveyed to Dr. Al-Obaid the multiple warnings they received regarding the criminal conduct of the Saudi charities.[2]

---

[2] The Saudi government received such warnings from the United States, France, Russia, Pakistan, Egypt, India, the United Nations and other sources, as detailed in Exhibit A to the Federal Plaintiffs' RICO Statement Applicable to World Assembly of Muslim Youth, incorporated herein by reference.  On this point, Plaintiffs respectfully refer the Court to the documents submitted as Exhibits to the June 1, 2005 Affirmation of Sean P. Carter Transmitting

Nonetheless, Dr. Al-Obaid continued to use his authority to generously fund and support those organizations.  In doing so, Dr. Al-Obaid knowingly provided material support and resources to al Qaida.

## II.    APPLICABLE LAW

### A.    The Burden Of Proof In A Jurisdictional Challenge Is On The Party Claiming Immunity

Consistent with Fed. R. Civ. P. 8, a plaintiff in an FSIA case need only provide the defendant with a "short and plain statement of the claims showing that the plaintiff is entitled to relief" sufficient to "give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002).  In responding to the Complaint, a defendant seeking FSIA immunity must present a *prima facie* case that it is a foreign sovereign, entitled to the protections of the FSIA.  Cargill Int. S.A. v. M/T Pavel DyBenko, 991 F.2d 1012, 1016 (2d Cir. 1993).  In the event that the defendant makes such a showing, the burden of production shifts to the plaintiff to come forward with allegations *or* evidence which, if proven, would bring the plaintiff's claims within one of the exceptions to immunity set forth in the FSIA.  Robinson v. Malaysia, 269 F.3d 133, 141-43 (2d Cir. 2001).

In deciding a motion to dismiss based on the FSIA prior to discovery, the court must accept as true the factual allegations and any evidence proffered by the plaintiff in support of jurisdiction.  Saudi Arabia v. Nelson, 507 U.S. 349, 351, 123 L.Ed.2d 47 (1993) ("Because this case comes to us on a motion to dismiss the complaint, we assume we have truthful factual allegations before us, though many of those allegations are subject to dispute.") (internal citations omitted).  To the extent the defendant challenges the accuracy of those factual allegations, and the court determines that the resolution of any fact in dispute is necessary to

---

Supplemental Evidence in Opposition to All Motions to Dismiss Under the Foreign Sovereign Immunities Act, which are hereby adopted as part of this Opposition and incorporated herein by reference.

determine the availability of jurisdiction under the FSIA, the plaintiff must be afforded an

opportunity to complete discovery relative to that disputed factual contention.  First City, Texas-

Houston, N.A. v. Rafidian Bank, 150 F.3d 172, 177 (2d Cir. 1998); Filus v. Lot Polish Airlines,

907 F.2d 1328, 1332 (2d Cir. 1990).  Upon completion of discovery, the Court should normally

"afford the parties the opportunity to present evidentiary material at a hearing on the question of

FSIA jurisdiction."[3]  Reiss v. Societe Centrale DuGroupe Des Assurances Nationales, 235 F.3d

738, 748 (2d Cir. 2000).  The district court should not, under any circumstances, seek to resolve

disputed issues of fact based on an evaluation of the perceived strength or credibility of the

allegations or evidence offered by the parties in support of their respective positions prior to

discovery.  Nelson, 507 U.S. at 351.

**B.      Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations of Jurisdiction**

     In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing
> motion may defeat the motion by pleading in good faith, [citation
> omitted] legally sufficient allegations of jurisdiction.  At that
> preliminary stage, the plaintiff's *prima facie* showing may be
> established solely by allegations.  After discovery, the plaintiff's
> *prima facie* showing, necessary to defeat a jurisdiction testing
> motion, must include an averment of facts that, if credited by the
> trier, would suffice to establish jurisdiction over the defendant.
> [citations omitted].  At that point, the *prima facie* showing must be
> factually supported.

Ball v. Metallurgie Hoboken Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S.

854 (1990).   Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2), a

plaintiff need only present allegations that connect the defendant with the applicable forum, here,

---

[3] Consistent with these authorities, Plaintiffs request the opportunity to conduct discovery as to any disputed fact the Court deems material to the FSIA jurisdictional analysis, and to present evidence at a hearing on the question of FSIA jurisdiction.

the United States.  In deciding such a motion, the plaintiff's jurisdictional averments must be taken as true.  Id.;  In re  Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003).  Moreover, the court must construe the pleadings in a light most favorable to plaintiff, resolving all doubts in his favor.  DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir. 2001).

### C.    A Motion To Dismiss Under Rule 12(b)(6) Merely Tests The Legal Feasibility Of The Complaint

A motion to dismiss under Rule 12(b)(6) must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002) (per curiam).  The court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether Plaintiffs ultimately could prevail, the court must accept as true the allegations of the pleadings and draw all reasonable inferences in Plaintiffs' favor.  Wynder, 360 F.3d at 78; Phelps, 308 F.3d at 184.

## III.    ARGUMENT

### A.    The Plaintiffs' Claims Against Dr. Al-Obaid Fall Squarely Within the Tortious Act Exception

For purposes of the sovereign immunity analysis, Plaintiffs concede that Dr. Al-Obaid is a government official and/or instrumentality of the Kingdom within the meaning of the FSIA. However, because Plaintiffs' claims fall within the FSIA's tortious act exception, the limited protections of the FSIA do not serve to immunize this defendant from the subject matter jurisdiction of this Court.  The tortious act exception confers jurisdiction over a foreign sovereign in any case:

> in which money damages are sought against a foreign state for
> personal injury or death, or damage to or loss of property,
> occurring in the United States and caused by the tortious act or
> omission of that foreign state or any official or employee of that
> foreign state  acting within the scope of his office or
> employment…

28 U.S.C. § 1605(a)(5).

As this Court has recognized already, the test used to determine whether a defendant's conduct falls within the tortious act exception of the FSIA in the 2nd Circuit is "whether the defendant's alleged acts were tortious under the laws of New York, and if so, whether the defendant's acts were discretionary." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 794 (S.D. N.Y. 2005). Further, New York law has long recognized tort claims based in conspiracy and aiding and abetting theories. Id. at 797.[4] Thus, where a plaintiff's complaint adequately alleges that a defendant aided and abetted or conspired in a tort which causes injury in New York, and the underlying misconduct does not involve the exercise of a valid discretionary governmental function,[5] the court possesses subject matter jurisdiction over the claim under the tortious act exception to the FSIA. Robinson, 269 F.3d at 142.

The Complaints seek to impose liability on Dr. Al-Obaid for personal injuries, wrongful deaths and property damage resulting from the September 11th Attack, based on his knowing participation in al Qaida's conspiracy to attack America, and material aiding and abetting of bin Laden's terror network. The Complaints further allege that the September 11th Attack was a direct, intended and foreseeable product of the conspiracy in which the defendant knowingly

---

[4] In so holding, the Court implicitly found that victims of terrorist acts may sustain tort claims against foreign sovereigns who sponsored the responsible terrorist organization, directly or indirectly, pursuant to the standards announced in Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983)  or Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1023 (7th Cir. 2002) ("Boim II"). See In re Terrorist Attacks, 349 F. Supp. 2d at 800.

[5] This defendant does not argue that his sponsorship of al Qaida involved the exercise of a discretionary governmental function, so the analysis of jurisdiction under the tortious act exception merely requires the Court to determine whether plaintiffs have alleged that the defendant committed a tort under the liberal pleading requirements of Rule 8(a)(2).

participated.  Thus, Plaintiffs' claims fall squarely within the tortious act exception under the standards enunciated above.

**B.**     **Plaintiffs' Allegations Of Knowledge And Intent Are Sufficient To Sustain Causation Under The FSIA**

In an effort to avoid application of the tortious act exception, Dr. Al-Obaid argues only that Plaintiffs fail to adequately allege causation under the FSIA.  In making this argument, this defendant does not dispute this Court's earlier holdings that jurisdictional causation under the FSIA is satisfied by pleading "proximate causation,"  In re Terrorist Attacks, 349 F. Supp. 2d at 797 n. 26 (S.D. N.Y. 2005), and that "[a]ny terrorist attack, including the September 11 attacks, might have been the natural and probable consequence of knowingly and intentionally providing financial support to al Qaeda…"  Id. at 797 (quoting Burnett v. Al Baraka Invest. & Dev. Corp., 274 F. Supp. 2d 86, 105 (D.D.C. 2003) ("Burnett I")).  Rather, the defendant's causation argument is predicated entirely on his contention that Plaintiffs are required to, but do not, allege "facts showing that the Dr. Al-Obaid … knowingly supported terrorists."  Motion to Dismiss at pp. 10.

As will be demonstrated below, the defendant's causation argument is predicated entirely on a fundamentally flawed principle – the belief that Plaintiffs' claims are subject to a heightened pleading standard under which Plaintiffs are required to present detailed factual allegations regarding a defendant's state of mind.

The Federal Rules of Civil Procedure establish an extremely permissive "notice pleading" standard.  Fed. R. Civ. P. 8(a); Swierkiewicz, 534 U.S. at 512-13.  Under Rule 8(a)(2), a complaint only need include "a short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. at 512 (quoting Conley, 355 U.S. at 47).  In the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed.

9

R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69(1993).  In keeping with this concept, Rule 9 expressly provides that "malice, intent, knowledge and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

In its decisions in the post Swierkewicz era, the Second Circuit has consistently and uniformly applied these clear standards and held that a plaintiff is not required to plead particularized facts regarding a defendant's state of mind.  For example, in Phelps, the Second Circuit reversed a district court ruling which had dismissed a complaint for failure to plead specific facts in support of allegations of the defendant's knowledge, holding instead that such a heightened pleading standard was "unwarranted" under Fed. R. Civ. P. 8(a).  Phelps, 308 F.3d at 186.  "A plaintiff's allegation of knowledge is itself a particularized factual allegation, which he will have the opportunity to demonstrate at the appropriate time 'in the usual ways'."  Id. at 187 n. 6 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)).  As the Phelps court further instructed: "However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference," holding that the weight of the evidence should instead be assessed at the time of summary judgment proceedings.  Phelps, at 186-87; see also Pelman v. McDonald's, 396 F.3d 508 (2nd Cir. 2005) (rejecting district court's efforts to impose heightened pleading standard for causation element of plaintiff's claim).

In Warren v. District of Columbia, 353 F.3d 36 (D.C. Cir. 2004), the D.C. Circuit employed nearly identical reasoning in reversing the dismissal of a complaint in which the plaintiff had failed to plead "facts" establishing knowledge.  Applying the "short and plain

statement of the claim" standard from Rule 8(a), the Court held:  "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the District was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept conclusions of law as true, conclusions of fact are another matter."  Id. at 39 (citing 5 Wright & Miller Federal Practice & Procedure § 1218 (2d ed. 1990)).

More recently, in Linde, et al v. Arab Bank, PLC, 2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005), the United States District Court for the Eastern District of New York rejected the defendant's invitation to impose a heightened pleading requirement in a case presenting claims nearly identical to those at issue here.  In Linde, the plaintiffs brought claims against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations.  Id. at *11-23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent."  Id. at *42.  The Court rejected this argument, reasoning that Arab Bank was attempting to impose a heightened pleading standard not warranted by the Rules of Civil Procedure:

> To the extent the defendant is arguing that plaintiffs have not
> alleged sufficient facts to establish an evidentiary basis for their
> allegations of knowledge and intent, defendant simply
> misapprehends the pleading standard.  It is not entitled to dismissal
> based on the argument that plaintiff's must plead more than the
> requisite knowledge and intent, either as to their substantive claims
> or their claims of aiding and abetting a conspiracy.

Id.  The Linde court likewise rejected the defendant's contention that plaintiffs were required to allege that senior officials of the bank were aware of the misconduct underlying plaintiffs' claims.  "Once again, defendant attempts to impose a standard of pleading beyond that required

by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof."  Id. at *50.

Consistent with the Federal Rules of Civil Procedure and holdings of the Phelps, Warren and Linde courts, Plaintiffs have met their pleading burden relative to the scienter element of their conspiracy and aiding and abetting claims, and therefore adequately alleged the defendant's involvement in the tort giving rise to their injuries.  At this early stage of the litigation, Plaintiffs' consistent averments that Dr. Al-Obaid acted "knowingly" are sufficient under the Federal Rules of Civil Procedure to allow these claims to proceed.  That this defendant seeks dismissal under the FSIA does not alter this analysis.  Once again, Plaintiffs' allegations of knowledge and intent constitute "particularized factual allegations."  Phelps, 308 F.3d at 187.  Pursuant to the Supreme Court's explicit holding in Nelson, those factual allegations must be accepted as true in deciding the defendants' FSIA motion.  Nelson, 507 U.S. at 351; see also Robinson, 269 F.3d at 141-43 (holding that plaintiffs may meet burden of production in response to motion to dismiss under FSIA solely through allegations).   Thus, the sole argument this defendant raises in opposition to the tortious act exception is devoid of merit.

Even assuming Plaintiffs' claims were subject to a heightened pleading standard requiring them to present particularized descriptions of their proofs at this stage of the litigation, dismissal would be improper, as the pleadings do in fact articulate details of each element of the conspiracy and aiding and abetting claims, including the defendants' knowledge.   Under Halberstam, a plaintiff must plead the following elements to sustain a claim for civil conspiracy: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the overall scheme.  Halberstam, 705 F.2d at 477.  The Halberstam court described the elements of

12

aiding and abetting as: "(1) the party whom the defendant aids must perform a wrongful act that causes injury; (2) the defendant must be generally aware of his role as part of an overall illegal and tortious activity at the time he provides the assistance; (3) the defendant must knowingly and substantially assist in the principal violation."  Id.  Under Boim II, a defendant may be held liable where that defendant: (1) knows that a party to whom he is providing support or assistance is engaged in illegal activities; (2) desires to help those activities succeed; and (3) engages in some act of helping the illegal activities.  Boim II, 291 F.3d at 1023.[6]

The specific allegations of the Complaints, as supplemented by the additional evidence submitted in support of this Opposition, satisfy the standards of both Halberstam and Boim II, even under the erroneous pleading standard advocated by the defendant.  Among other things, the Plaintiffs allege that Dr. Al-Obaid knowingly provided financial support to al Qaida through the MWL, Rabita Trust, and the IIRO.  See Plaintiffs' allegations set forth in Factual Background supra.  Furthermore, al Qaida was a well known terrorist organization at the time Dr. Al-Obaid supported the organization, which had publicly and repeatedly targeted the United States.  In short, the pleadings allege that the defendant was directly and intimately involved in advancing the agenda of a known terrorist organization that had publicly declared its intention to conduct terrorist attacks against the United States.  These allegations clearly satisfy both Halberstam and Boim II.  Moreover, to the extent the Court finds the allegations against Dr. Al-Obaid are in any way deficient, the appropriate remedy is to require Plaintiffs to file more definite statements pursuant to Rule 12(e), and not to dismiss the action.  Pelman v. McDonald's, 396 F.3d 508, 512 n. 5 (2nd Cir. 2005).

---

[6] While Boim II involved claims under the Antiterrorism Act (ATA), it is properly read as setting forth the standards for establishing liability over sponsors of terrorism under common law concerted action theories.  Indeed, in enacting the ATA, Congress sought to extend liability over terrorist sponsors to the furthest reaches of the common law.  Boim II, 291 F.3d at 1011.

C.      **The Commercial Activity Exception Confers Jurisdiction Over Dr. Al-Obaid**

The Plaintiffs allege that certain of the support Dr. Al-Obaid provided to al Qaida constitutes money laundering, and that subject matter jurisdiction exists for claims arising from such money laundering activities under the FSIA's commercial activity exception.   As the Court has already considered and decided this issue as a matter of law, the Plaintiffs incorporate by reference the detailed discussion presented in their Opposition to the SJRC's Motion to Dismiss, in lieu of restating it herein.[7]

D.      **Dr. Al-Obaid Is Subject To The Personal Jurisdiction Of This Court** [8]

Dr. Al-Obaid contests this Court's authority to exercise personal jurisdiction over him on two grounds.  First, he argues that the requirements of New York's Long-Arm Statute are not satisfied, and that this Court consequently lacks a valid statutory basis to exercise personal jurisdiction.  Second, he asserts that the exercise of jurisdiction over him would not comport with the due process requirements of the Constitution.  Both of these arguments are meritless.

1.      <u>**The FSIA Provides A Statutory Basis For Personal Jurisdiction**</u>

Because Dr. Al-Obaid claims status as an "instrumentality" of Saudi Arabia for purposes of this action, this Court need not even consider the arguments he advances regarding the applicability of New York's Long-Arm Statute.  Under the FSIA, personal jurisdiction is satisfied so long as the court possesses subject matter jurisdiction and the defendant has been served validly.  <u>See</u>  28 U.S.C. § 1330(b).  Dr. Al-Obaid was validly served pursuant to this Court's September 15, 2004 Order as discussed herein.  The FSIA thus provides a valid statutory basis for personal jurisdiction over this defendant.[9]

---

[7] Plaintiffs do not seek to invoke the exception to immunity set forth in 28 U.S.C. 1605(a)(7) as to this defendant, and therefore do not respond to their arguments relating to that exception herein.  However, to the extent these defendant intended to argue that 1605(a)(7) is the exclusive exception available for the claims asserted in these consolidated proceedings, this Court already has held otherwise.  <u>In re Terrorist Attacks</u>, 349 F. Supp. 2d at 796.

[8] Plaintiffs incorporate by reference the arguments presented by Plaintiffs on this issue during the October 12, 2004 hearing before the Court.

[9] The defendant's failure to address jurisdiction under the FSIA, and decision to include meritless arguments regarding the New York Long-Arm Statute, is curious at best.  In this regard, it should be noted that other agencies

## 2.    Personal Jurisdiction Exists Under New York's Long-Arm Statute

In addition to being irrelevant given the personal jurisdiction provisions of the FSIA, the defendant's arguments regarding the applicability of New York's Long-Arm Statute are simply wrong.  As this Court has previously recognized, "acts committed by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)."  In Re Terrorists Attacks, 349 F. Supp. 2d at 805 (quoting, Chrysler Capitol Corporation v. Sentry Power Corp., 778 F. Supp. 1260, 1266, S.D. N.Y. 1991).

For the reasons set forth above, Plaintiffs have adequately alleged that Dr. Al-Obaid was an active and knowing participant in al Qaida's conspiracy to attack America.  Without question, those who knowingly contribute to a terrorist organization do so in order to see the organization successfully carry out terrorist attacks.  Indeed, in recognition of that fact, the United States Government has declared that those who support terrorists are as culpable as those who carry out the attacks.  Thus, the operatives who carried out the September 11th Attack necessarily were acting for the benefit of al Qaida's material sponsors and supporters, and the New York Long-Arm Statute consequently provides a statutory basis for exercising personal jurisdiction over al Qaida's co-conspirators, including Dr. Al-Obaid.[10]

## 3.    The Exercise Of Jurisdiction Comports With Due Process

The defendant's assertion that the exercise of personal jurisdiction over him would violate due process is equally unconvincing.  The Supreme Court has consistently held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit

---

of the Kingdom, including the Saudi Joint Relief Committee for Kosovo and Chechnya, have explicitly recognized that the FSIA provides the statutory framework for evaluating personal jurisdiction over foreign sovereigns.

[10] The Plaintiffs have asserted claims against this defendant under the ATA and Civil RICO, both of which include nationwide service of process provisions.  As such, the exercise of personal jurisdiction also is authorized under Fed. R. Civ. P. (4)(k)(1)(D), provided that the exercise of jurisdiction comports with due process.  For the reasons set forth in greater detail in Sections D2 and D3, the exercise of personal jurisdiction over this defendant does comport with due process.

there does not offend traditional notions of fair play and substantial justice.  Calder v. Jones, 465

U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984).  Under these standards, due process

considerations are satisfied so long as the defendant has "fair warning" that he may be haled into

court in the forum to respond for his actions.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 105

S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  In an action involving harm caused by an intentional tort,

the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would

not exist in their absence."  Calder, 465 U.S. at 788.  Consistent with this principle, the courts

have found that due process is not violated by the exercise of jurisdiction over those who

deliberately target our citizens.  Pugh v. Socialist People's Libyan Arab Jamahiriya, 290

F.Supp.2d 54 (D. D.C. 2003); Daliberti v. Iraq, 97 F. Supp. 2d 38, 54 (D. D.C. 2000); Rein v.

Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D. N.Y. 1998); Mwani v. Bin

Laden, 417 F.3d 1, 28 (D.C. Cir. 2005) (finding that al Qaida and its co-conspirators have

"engaged in unabashedly malignant actions directed at and felt in" the United States).[11]

### a)      The Defendant Directed His Conduct At The United States

In the present case, Plaintiffs have satisfied their burden to make a *prima facie* showing

of personal jurisdiction over Dr. Al-Obaid, pursuant to the applicable standards set forth above.

As described above, the defendant, for a period of many years, directly channeled financial and

logistical support to al Qaida through the MWL, Rabita Trust, and IIRO.  These facts plainly

establish that Dr. Al-Obaid has, for a period of many years, directly supported al Qaida.

In knowingly sponsoring and directly participating in al Qaida's campaign to attack

America, the defendant necessarily directed his conduct at the United States, as it has been

publicly known, since at least the mid-1990's, that al Qaida was engaged in a global campaign of

---

[11] Although the Second Circuit has held that foreign states are entitled to the protections of the due process clause,
the Supreme Court has not yet addressed the issue.  Plaintiffs recognize that this Court is bound by Second Circuit
precedent, but reserve their right to argue, on any potential appeal, that the defendant is not entitled to due process
protections in the event that they are deemed agencies and/or instrumentalities of Saudi Arabia.

terror directed against the United States.  In re Terrorists Attacks, 349 F. Supp. 2d at 813 ("This Court's record…contains many examples of Osama bin Laden's and al Qaeda's public targeting of the United States").  Thus, the exercise of jurisdiction over the defendant for claims arising from his sponsorship of al Qaida complies with due process.[12]

> **b)      The Defendant Has Extensive Contacts With The United States**

Moreover, the defendant has extensive contacts with the United States, sufficient to sustain a *prima facie* case of personal jurisdiction under general jurisdiction standards.

In arguing that he is entitled to the protections of the FSIA in this litigation, Dr. Al-Obaid is representing to this Court that he is an official of the Kingdom, and that the claims against him arise from actions undertaken by him in his official capacity.  Under such circumstances, a suit against a foreign official is viewed to be the "practical equivalent" of a suit against the sovereign itself.  Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1099-1103 (9th Cir. 1990); Bryks v. Canadian Broadcasting Corp., 906 F. Supp. 204, 210 (S.D. N.Y. 1995); First American Corp. v. Sheikh Zayed bin Sultan Al-Nayhan, 948 F. Supp. 1107, 1120 (D.D.C. 1996).  Thus, the relevant contacts for jurisdiction purposes are those of the Kingdom of Saudi Arabia as a whole, and not simply those of Dr. Al-Obaid as an individual.  As it is beyond dispute that the Kingdom maintains pervasive and ongoing contacts with the United States,[13] the exercise of jurisdiction over Dr. Al-Obaid as an official of the Kingdom comports with due process.

### E.      The Defendant's Motion To Dismiss For Failure To State A Claim Should Be Denied

Dr. Al-Obaid also moves pursuant to Rule 12(b)(6), for dismissal of Plaintiffs' individual causes of action for failure to state a claim upon which relief can be granted.  At the outset, the defendant argues that all of Plaintiffs' statutory and common law claims should be dismissed

---

[12] Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation.  In Re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208; see also Davis v. Barrett Day Securities, Inc., 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).
[13] Notably, the Kingdom has not contested personal jurisdiction in these proceedings.

because, in his view, Plaintiffs "have not pled sufficient facts showing that the Dr. Al-Obaid's acts proximately caused plaintiffs' injuries." Motion to Dismiss at p. 15. In addition to this general argument, the defendant raises individual challenges under Rule 12(b)(6) to several of the causes of action. While cast as separate theories of dismissal, most of these "particularized" 12(b)(6) arguments merely restate the defendant's general argument regarding the sufficiency of Plaintiffs' pleadings. For the reasons set forth below, none of the arguments advanced by Dr. Al-Obaid under Rule 12(b)(6) have merit.

The defendant's general challenge to causation under Rule 12(b)(6) is identical to the causation argument he advances under the FSIA, and plagued by the same fundamental misunderstanding of the applicable pleading requirements. In his motion, the defendant argues Plaintiffs have failed to adequately support their allegations of proximate causation under concerted action theories, on the ground that Plaintiffs have failed to plead sufficient facts to demonstrate that this defendant acted knowingly in supporting Al Qaeda. However, for the reasons detailed in Section III B above, Plaintiffs' express allegations that Dr. Al-Obaid acted knowingly and intentionally constitute particularized factual allegations, which must be accepted as true at this stage of the proceedings. Those factual allegations regarding the defendant's knowledge and intent are sufficient to meet Plaintiffs' burden to plead the scienter element of their concerted action theories under the liberal notice pleading requirements of the Federal Rules of Civil Procedure. Consequently, the defendant's causation argument, which rests entirely upon the theory that Plaintiffs have not adequately alleged the defendant's knowledge or intent, must be rejected.[14]

---

[14] For the reasons set forth in Section III B, Plaintiffs submit that they have adequately pled all causes of action, even under the improper pleading standard the defendants' advocate. Moreover, to the extent there exists any deficiency in Plaintiffs' pleadings, the proper course is to require Plaintiffs to file a More Definite Statement. Pelman, 396 F.3d at 512, n. 5.

### 1. The Complaints Adequately Allege Claims Under The ATA And Common Law Theories

The "separate" argument that Dr. Al-Obaid advances in favor of dismissal of Plaintiffs'

statutory claim under the ATA, and common law wrongful death, survival, intentional infliction

of emotional distress and trespass claims, are in fact mere recitations of his 12(b)(6) causation

argument.  In particular, the defendant asserts that Plaintiffs' ATA claims should be dismissed

because Plaintiffs have failed to "show knowledge of and an intent" to further al Qaida's

criminal endeavors.  Motion to Dismiss at p. 18.  Similarly, the defendant urges this Court to

dismiss Plaintiffs' common law tort claims for wrongful death and survival on the ground that

Plaintiffs' have not "pled any facts to support an allegation that Dr. Al-Obaid" knowingly

supported al Qaida.  Motion to Dismiss at p. 18.  As to Plaintiffs' intentional infliction of

emotional distress claims, the defendant asks this Court to find that Plaintiffs have failed to plead

"sufficient facts" relating to the defendant's intent.  Motion to Dismiss at p. 18-19.  The

defendant's Motion to Dismiss Plaintiffs' property damage claims is predicated on the same

theory, and the baseless contention that the conspiracy alleged in the Complaints is "vague."

Motion to Dismiss at p. 19.

This Court already has ruled that Plaintiffs state valid ATA and common law claims

against defendants in this litigation by adequately alleging that those defendants aided and

abetted, or conspired with, al Qaida.  In re Terrorist Attacks, 349 F. Supp. 2d at 829-30.  For the

reasons set forth above, Plaintiffs have met that burden with respect to Dr. Al-Obaid.

Accordingly, the defendant's motion to dismiss Plaintiffs' ATA and common law claims for

alleged pleading deficiencies should be denied.

### 2. Plaintiffs' Assault, Battery, And Intentional Infliction Of Emotional Distress Claims Are Not Barred By The Statute Of Limitations

Dr. Al-Obaid argues that the Plaintiffs' assault, battery, and intentional infliction of

emotional distress claims are barred by the statute of limitations.  Dr. Al-Obaid is incorrect.

Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Sheikh Saleh Al-Hussayen.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

### 3.     Plaintiffs' Civil RICO Claims Are Cognizable[15]

The defendant seeks to dismiss the civil RICO claims of all Plaintiffs on the grounds that "active management or operation" of the Enterprise has not been alleged, nor were the defendants alleged to be "central figures" in the al Qaida Movement.  These assertions misstate the law.[16]  Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Sheikh Saleh Al-Hussayen.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

### 4.     Plaintiffs' Negligence And Negligent Infliction Of Emotional Distress Claims Are Viable Against This Defendant

The United Nations has adopted numerous Resolutions addressing the duties and obligations of the international community with regard to the problem of terrorism financing.  In 1996, the U.N. General Assembly adopted Resolution 51-210, which expressly calls upon all states "to take steps to prevent and counter-act, through appropriate domestic measures, the financing of terrorists and terrorist organizations, *whether such financing is direct or indirect through organizations which also have or claim to have charitable, social or cultural goals*…."  G.A. Res. 51-210, U.N. GAOR, 51st Sess. (1996) (emphasis supplied).  The

---

[15] The defendant challenges the standing of the *Burnett* and *Tremsky* Plaintiffs to pursue RICO claims.  Those Plaintiffs do not intend to pursue those claims at this time, and therefore do not address the defendant's standing argument herein.

[16] As a preliminary matter, defendant argues that Plaintiffs in all cases other than *Federal* are barred from pursuing RICO claims, because they have not filed RICO Statements applicable to the defendant.  Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Adnan Basha, n. 10.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

*International Convention for the Suppression of the Financing of Terrorism,* adopted by the General Assembly as Resolution 54-109 on December 9, 1999, G.A. Res. 54-109, U.N. GAOR, 54th Sess. (1999), contains the same language.

    As an instrumentality of the Kingdom, Dr. Al-Obaid is charged with responsibility to act in accordance with the duties and obligations imposed upon states by international law, including those embodied in the Resolutions of the United Nations, of which the Kingdom is a member. The plain language of Resolutions 51-210 and 54-109 required Dr. Al-Obaid to take reasonable and appropriate measures to ensure that various Saudi charities, including the MWL, Rabita Trust, and IIRO, were not used as a vehicle for financing terrorists. Without question, the duties announced in those Resolutions were adopted to protect innocent parties, including the September 11th victims, from violence at the hand of terrorists. Thus, it is clear that this defendant owed a duty of care to Plaintiffs, giving rise to cognizable claims under negligence theories.

        **5.**      **Plaintiffs' Conspiracy And Punitive Damages Claims Should Not Be Dismissed**

    Defendant correctly argues that no independent causes of action exist under New York law for conspiracy or punitive damages. However, at this stage of these proceedings, the substantive law governing each of Plaintiffs' individual claims remains to be determined. Thus, it would be premature to dismiss those causes of action at this time. Moreover, there can be little dispute that Plaintiffs' are entitled to recover punitive damages in the event that they prevail against this defendant under the theories advanced.[17] Under these circumstances, dismissal of the conspiracy and punitive damages counts would be inappropriate.

---

[17] Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998). If the Plaintiffs prove their allegations that Dr. Al-Obaid knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, Dr. Al-Obaid's conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

**F.      Plaintiffs Have Properly Served Dr. Al-Obaid**

Dr. Al-Obaid alleges that the Plaintiffs failed to properly serve him in accordance with the Federal Rules of Civil Procedure and that the notices published in the *USA Today, International Herald Tribune, and Al-Quds Al-Arabi* were not proper as a matter of law.  Dr. Al-Obaid makes the identical arguments about service by publication made by his co-defendants Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah.  Plaintiffs have addressed each of those arguments in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendants Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah.  Rather than repeat those arguments here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.[18]

As demonstrated in Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah, service by publication on Dr. Al-Obaid was proper.[19]  By its September 15, 2004 Order, this Court agreed that publication in the *USA Today*, *International Herald Tribune*, and the *Al Quds Al Arabi* newspapers was "reasonably calculated" to notify Dr. Al-Obaid of the suit against him so as to satisfy due process.  Dr. Al-Obaid was served by publication in the *USA Today* and *Al Quds Al Arabi* newspapers on December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005.  Dr. Al-Obaid was similarly served in the *International Herald Tribune* on December 22, 2004, December 27, 2004, January 5, 2005, and January 10, 2005.  Thereafter, Dr. Al-Obaid appeared and filed this motion to dismiss.

---

[18] Plaintiffs also incorporate by reference the service argument in the *Burnett* Plaintiffs' Memorandum of Law to Motions to Dismiss of Defendant Abdullah Bin Saleh Al-Obaid (June 30, 2004), pp. 9-10.

[19] It is significant to point out that Dr. Al-Obaid was represented by counsel in the consolidated action (03 MDL 1570) at the time of the Order permitting publication and was arguably notified that the Plaintiffs intended to serve him in this manner.  The MDL docket clearly shows that Ms. Bernabei and Mr. Kabat were counsel of record for Dr. Al-Obaid as of March 11, 2004 when this Court signed their *pro hac* admissions and subsequent entry of appearance.  *See* MDL 1570 Docket entries #20 and #21.  Dr. Al-Obaid was sufficiently on notice of the Plaintiffs' claims against him at that time, and has been for the past **18** months.

In sum, Plaintiffs obtained permission from this Court to serve Dr. Al-Obaid by publication.  Dr. Al-Obaid was served in this manner and in fact received notice of the pendency of the action.  The action should not be dismissed for improper service of process.

**IV.    CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request Dr. Al-Obaid's Motion to Dismiss be denied in all respects, with prejudice.

Respectfully submitted,

| | |
|---|---|
| | COZEN O'CONNOR |
| Dated: September 20, 2005 | BY: _____<br>     Stephen A. Cozen, Esquire<br>     Elliott R. Feldman, Esquire<br>     Sean P. Carter, Esquire<br>     Adam C. Bonin, Esquire<br>     1900 Market Street<br>     Philadelphia, PA 19103<br>     Tele: (215) 665-2000<br>     Fax: (215) 665-2013<br><br>     Attorneys for *Federal Insurance* Plaintiffs |

|  | Ronald L. Motley, Esq. (RM-2730)<br>Jodi Westbrook Flowers, Esq.<br>Donald A. Migliori, Esq.<br>Michael Elsner, Esq. (ME-8337)<br>MOTLEY RICE LLC<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mount Pleasant, South Carolina 29465<br>Telephone: (843) 216-9000 |
|---|---|
|  | Paul J. Hanly, Jr., Esq. (PH-5486)<br>Jayne Conroy, Esq. (JC-8611)<br>Andrea Bierstein, Esq. (AB-4618)<br>HANLY CONROY BIERSTEIN &<br>    SHERIDAN, LLP<br>415 Madison Avenue<br>New York, NY 100 17-11 1 1<br>Telephone: (212) 401-7600<br><br>Attorneys for *Burnett*, *EuroBrokers* and *WTC Properties* Plaintiffs |
|  | Robert M. Kaplan (RK1428)<br>FERBER FROST CHAN & ESSNER, LLP<br>530 Fifth Avenue, 23rd Floor<br>New York, New York 10036-5101<br>(212) 944-2200<br><br>Attorneys for *Continental* Plaintiffs |
|  | Attorney for the O'Neill Plaintiffs<br>David H. Fromm, Esq. (DH-9334)<br>Frank J. Rubino, Jr., Esq. (FR-6202)<br>BROWN GAVALAS & FROMM LLP<br>355 Lexington Avenue<br>New York, New York 10017<br>(212) 983-8500<br><br>Attorneys for Plaintiff *New York Marine And General Insurance Company* |

PHILA1\2347025\2 117430.000