# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC) |
|---|---|
| | ECF Case |

This document relates to:

*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-5738
*Kathleen Ashton, et al v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Continental Casualty Co. et al, v. Al Qaeda, et al.*, No. 04-CV-5970
*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280
*Walter Tremsky, et al. v. Osama Bin Laden, et al.*, No. 02-CV-7300

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT DR. ABDULLAH NASEEF

September 20, 2005

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ vii

II.  FACTUAL BACKGROUND ............................................................................... 1

III. APPLICABLE LAW ............................................................................................ 5

      A.   Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations Of Jurisdiction ...................... 5

      B.   A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal Feasibility Of The Complaint ...................................................................... 6

IV.  ARGUMENT ....................................................................................................... 10

      A.   This Court Has Personal Jurisdiction Over Naseef ............................................ 10

            1.   Personal Jurisdiction Exists Under New York's Long-Arm Statute ........ 10

            2.   The Exercise Of Jurisdiction Comports With Due Process ..................... 11

            3.   The Defendant Directed His Conduct at the United States...................... 12

      B.   Plaintiffs Have Sufficiently Pled The Causal Connection Between Naseef And The September 11 Terrorist Attacks. ........................................... 12

      C.   Naseef Is Not Entitled To Dismissal Of Plaintiffs' Tort Claims ......................... 14

            1.   Plaintiffs Sufficiently Plead Their Claims Under The ATA.................... 14

            2.   Plaintiffs' Claims Under the Alien Tort Claims Act Should Not Be Dismissed .................................................................................. 15

            3.   Plaintiffs Sufficiently Plead Their Common Law Claims ....................... 15

            4.   Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, And Battery Claims Are Not Barred By The Statute Of Limitations ....... 16

            5.   Plaintiffs' Claims For Punitive Damages And Conspiracy Should Not Be Dismissed ..................................................................... 17

      D.   Plaintiffs Properly State RICO Claims Against Naseef...................................... 17

      E.   Plaintiffs Have Properly Served Naseef ............................................................. 21

V.   CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

Page

Abdullahi v. Pfizer, Inc.,
No. 01CIV8118, 2002 WL. 31082956 (S.D.N.Y. Sept. 17, 2002) .................................... 15

Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters,
459 U.S. 519 (1983) .......................................................................................................... 20

Baisch  v. Gallina, 346 F.3d at 376 .............................................................................................. 19

Ball v. Metallurgie Hoboken Overpelt, S.A.,
902 F.2d 194 (2d Cir.), cert. denied, 498 U.S. 854 (1990) ................................................. 6

Bigio v. Coca-Cola Co.,
239 F.3d 440 (2d Cir. 2001) .............................................................................................. 15

Boim v. Quranic Literacy Institute,
291 F.3d 1000 (7th Cir. 2002) ................................................................................. 1, 13, 14

Burger King v. Rudzewicz,
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) .................................................. 11

Calder v. Jones,
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984) .................................................. 11

Chance v. Armstrong,
143 F.3d 698 (2d Cir. 1998), *aff'd on appeal after remand* ................................................ 7

Commercial Cleaning Services, LLC v. Colins Service Systems, Inc.,
231 F.3d 374 (2d Cir. 2001) ........................................................................................ 17, 18

Conley v. Gibson,
355 U.S. 41 (1957) .............................................................................................................. 6

Daliberti v. Iraq,
97 F. Supp. 2d 38 (D. D.C. 2000) ...................................................................................... 11

Davis v. Barrett Day Securities, Inc.,
1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995) .............................................................. 12

De Falco v. Bernas,
244 F.3d 286 (2d Cir. 2001) .............................................................................................. 19

DiStefano v. Carozzi North America, Inc.,
    286 F.3d 81 (2d Cir. 2001).............................................................................6

Doe v. Islamic Salvation Front,
    257 F. Supp. 2d 115 (D.D.C.2003) ..............................................................15

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D. N.Y. 2003)..........................................................19

First Capital Asset Management v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004), citing Baisch v. Gallina, 346 F.3d 366 (2d Cir.
    2003) ............................................................................................................19

Flatow v. Islamic Republic of Iran,
    999 F. Supp. 1 (D.D.C. 1998) .......................................................................17

Friedman v. Hartmann,
    1994 WL. 376058 (S.D. N.Y. July 15, 1994) ................................................19

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980)............................................................................6

Holmes v. Security Investor Prot. Corp.,
    503 U.S. 258 (1992).......................................................................................20

In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,
    2004 U.S. Dist. LEXIS 3892 (S.D. N.Y. Mar. 12, 2004) ..............................16

Johnson v. Nyack Hospital,
    86 F.3d 8 (2d  Cir. 1996)...............................................................................16

Jones v. R.R. Donnelly & Sons Co.,
    541 U.S. 369 (2004).......................................................................................16

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1996)............................................................................15

Leatherman v. Tarrant County,
    507 U.S. 163 (1993)........................................................................................7

Lerner v. Fleet Bank, N.A.,
    318 F.3d 113 (2d Cir. 2003)..........................................................................20

Linde, et al. v. Arab Bank, PLC,
    2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005)..................9, 10

In re: Magnetic Audiotape Antitrust Litigation,
    334 F.3d 204 (2d Cir. 2003).......................................................................6, 12

Morin v. Trupin,
    832 F. Supp. 93 (S.D.N.Y. 1993) ......................................................................19

Mwani v. Bin Laden,
    417 F.3d 1 (D.C. Cir. 2005) ...............................................................................11

National Asbestos Workers Medical Fund v. Philip Morris, Inc.,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999) ................................................................20

Pelman v. McDonald's Corp.,
    396 F.3d 508 (2d Cir. 2005).............................................................................8, 9

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002).........................................................................6, 7, 8

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
    244 F. Supp. 2d 289 (S.D.N.Y.2003)...............................................................15

Pugh v. Socialist People's Libyan Arab Jamahiriya,
    290 F. Supp. 2d 54 (D. D.C. 2003) ...................................................................11

Rachman Bag Co. v. Liberty Mutual Insurance Co.,
    46 F.3d 230 (2d Cir. 1995)..................................................................................1

Rasul v. Bush,
    124 S. Ct. 2686 (2004) ......................................................................................19

Rein v. Socialist People's Libyan Arab Jamahiriya,
    995 F. Supp. 325 (E.D. N.Y. 1998) ..................................................................11

Sosa v. Alvarez-Machain,
    124 S. Ct. 2739 (2004) ......................................................................................15

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2000), appeal dismissed............................................7

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002).........................................................................................7, 9

In re Terrorist Attacks on September 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005).......................................10, 12, 13, 14, 15

United States v. Allen,
    155 F.3d 35 (2d Cir. 1998).........................................................................................19

United States v. Coonan,
    938 F.2d 1553 (2d Cir. 1991).....................................................................................18

United States v. Turkette,
    452 U.S. 576 (1981)....................................................................................................18

United States v. Yunis,
    924 F.2d 1086 (D.C. Cir. 1991) .................................................................................15

Von Bulow v. Von Bulow,
    634 F. Supp. 1284 (S.D. N.Y. 1986)....................................................................20, 21

Wagh v. Metris Direct, Inc.,
    348 F.3d 1102 (9th Cir. 2003) ....................................................................................17

Whyte v. Contemporary Guidance Servs.,
    03 CV 5544  2004 U.S. Dist. LEXIS 12447 (S.D. N.Y. July 2, 2004)..............................1

Woodford v. Community Action Agency,
    239 F.3d 517 (2d Cir. 2001)..........................................................................................6

Wynder v. McMahon,
    360 F.3d 73 (2d Cir. 2004)........................................................................................6, 7

Yeadon v. New York Transit Authority,
    719 F. Supp. 204 (S.D. N.Y. 1989).............................................................................16

**STATUTES**

18 U.S.C. §§ 1962(a) .......................................................................................................18

18 U.S.C. § 2333..............................................................................................................14

137 Cong. Rec. 54511 04 (April 16, 1991) .....................................................................16

Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA") .....................................................15

Fed. R. Civ. P. 4(k)(1)......................................................................................................10

Fed. R. Civ. P. 8(a)(2)........................................................................................................7

Fed. R. Civ. P. 9(b) .......................................................................................................7

Fed. R. Civ. P. 12(b)(6)...............................................................................................6

Fed. R. Civ. P. 15(a) ...................................................................................................1

N.Y. C.P.L.R. § 302(a)(2)..........................................................................................10

**OTHER**

Restatement (Second) of Torts §§ 876, 877...............................................................13

**INTRODUCTION**

Plaintiffs allege that Dr. Abdullah Omar Naseef  ("Nassef") knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 Attack was a natural, intended and foreseeable result.  When these factual assertions are taken as true, as they must be here, the Plaintiffs' allegations state valid claims against Naseef under the Anti-Terrorism Act (the "ATA"), the Alien Tort Claims Act (the "ATCA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and several state common law tort theories.  Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated such unlawful activities through financial or other means.  *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002).

Accordingly, Naseef's motion to dismiss must be denied in its entirety.  In the event, however, that this Court finds the Plaintiffs' Complaints lacking in detail, leave to amend should be granted.  *See* Fed. R. Civ. P. 15(a); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995); *Whyte v. Contemporary Guidance Servs.*, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. N.Y. July 2, 2004).

**I.     FACTUAL BACKGROUND**

Plaintiffs allege that Abdullah Omar Naseef ("Naseef") met and agreed with Osama Bin Laden to use the Muslim World League to launch al Qaeda terror attacks, as evidenced by a "Memo on IIRO/MWL letterhead detailing a meeting between Abu Abdullah (Osama bin Laden), Dr. Abdullah Naseef . . . in which it is stated that 'the attacks will be launched from them (these offices). . . .'  The memo also states that: 'You must pursue finding an umbrella which you can stay under . . . and I prefer the name of the League . . . Muslim World League . . . because Dr. Naseef is one of the brothers.'"  *WTC Properties* Complaint ¶ 386.

In furtherance of that conspiracy, Plaintiffs allege that as Secretary-General of the Muslim World League ("MWL") Naseef founded in 1988 and chaired through 2002 the MWL subsidiary Rabita Trust, a Specially Designated Global Terrorist Entity.  *Ashton* 5AC  ¶¶ 527, 528; *Burnett* 3AC ¶ 274; *Continental Casualty* 1AC ¶ 552; *WTC Properties* Complaint ¶ 450. Plaintiffs allege that "[o]n October 12, 2001, President George W. Bush's Executive Order designated Defendant Rabita Trust as a Specially Designated Global Terrorist Entity and the Treasury Department froze its assets.  Its chairman is Defendant Abdullah Omar Naseef who founded the Defendant Rabita Trust in July 1988 and is currently its chairman."  *Ashton* 5AC  ¶ 527; *Burnett* 3AC ¶ 274; *Continental Casualty* 1AC ¶ 551; *WTC Properties* Complaint ¶ 449.

Plaintiffs further allege that with Naseef as both Secretary-General of the MWL and Chairman of Rabita Trust, *Ashton* 5AC  ¶¶ 527, 528; *Burnett* 3AC ¶¶ 274, 275;  *Continental Casualty* 1AC ¶ 552; *WTC Properties* Complaint ¶ 450,  "Rabita Trust received the majority of its funding from the MWL [Muslim World League] and the Saudis, and [has] been involved with terrorism."  *Ashton* 5AC  ¶ 521; *Burnett* 3AC ¶ 268; *WTC Properties* Complaint ¶ 428.

Plaintiffs further allege that Chairman Naseef's Rabita Trust was an al Qaeda front with al Qaeda's notorious founder and logistics officer Wa'el Hamza Julaidan installed as Rabita Trust's "Director General" of operations:  "Rabita Trust is an al Qaeda front, and the head of Rabita Trust is a known al Qaeda member.  A Treasury Department press release issued when Rabita Trust's assets were frozen indicated that:  'Rabita Trust is headed by Wa'el Hamza Julaidan, one of the founders of al-Qaida with bin Laden.  He is the logistics chief of bin Laden's organization and fought on bin Laden's side in Afghanistan.'"  *Ashton* 5AC  ¶ 523; *Burnett* 3AC ¶ 270; *Continental Casualty* 1AC ¶ 547; *Euro Brokers* Complaint ¶ 58; *WTC Properties Complaint* ¶ 444.  In addition to being the hand-picked director of Chairman Naseef's Rabita Trust, Julaidan was charged with "head[ing] the MWL in Peshawar, Pakistan [and] operat[ing]

MWL offices that served . . . al Qaeda to attack and train holy warriors from around the world." *Ashton* 5AC ¶ 304; *Burnett* 3AC ¶ 236; *Continental Casualty* 1AC ¶ 443; *WTC Properties* Complaint ¶ 429.  One of those "holy warriors" was "Wadih el Hage, convicted for his role in the 1998 United States Embassy bombings in Africa, [who] stated at his trial that he worked at the MWL in Peshawar, Pakistan in the late 1980s.  It was while working at the MWL that el Hage met Abdullah Azzam, the mentor of Osama bin Laden, and a co-founder of al Qaeda." *Ashton* 5AC  ¶ 305; *Burnett* 3AC ¶ 256; *Continental Casualty* 1AC ¶ 462; *WTC Properties* Complaint ¶ 430.

Plaintiffs further allege that Chairman Naseef's "Rabita Trust and MWL office in Peshawar, Pakistan ha[ve] repeatedly aided and abetted terrorists" with Julaidan acting as Director General of operations.  *Ashton* 5AC  ¶ 304, 312, *Burnett* 3AC ¶ 236; *WTC Properties* Complaint ¶ 373.  And when the U.S. Treasury Department designated Julaidan as a terrorist, the Treasury Department referred to Chairman Naseef's Rabita Trust and MWL Peshawar as "non-governmental organizations providing financial and logistical support to the al-Qai'da network." *Ashton* 5AC  ¶ 312; *Burnett* 3AC ¶ 236; *WTC Properties* Complaint ¶ 373.

Plaintiffs further allege that several operatives of Secretary-General Naseef's "Muslim World League ('MWL'), IIRO's parent organization, have explicitly worked with al Qaeda. Osama Bin Laden's associates . . . propagated MWL offices around the world."  *Ashton* 5AC  ¶ 312; *Burnett* 3AC ¶ 236; *WTC Properties* Complaint ¶ 373.  For instance, plaintiffs allege that "Mohammed Jamal Khalifa, Osama Bin Laden's brother-in-law, opened a MWL office in Pakistan for the use of the founders of al Qaeda. . . .  [H]e succeeded in getting the approval of [Secretary-General Naseef's] Muslim World League to open an office for the League in Peshawar as an *umbrella* under which the brothers could work and move in Pakistan freely." *Ashton* 5AC  ¶ 303; *Burnett* 3AC ¶ 254; *Continental Casualty* 1AC ¶ 460; *WTC Properties*

Complaint ¶ 428.  Which was in furtherance of the alleged conspiracy described above between Osama bin Laden and Secretary-General Naseef to "pursue finding an *umbrella* which [al Qaeda] can stay under . . . [the] Muslim World League. . . .  [T]he attacks will be launched from them (these offices). . . ."  *WTC Properties* Complaint ¶ 386.

      The fact that the memorandum memorializing the conspiracy between Naseef and Osama bin Laden to use Muslim World League and its subsidiaries to launch terror attacks against America was written on "**IIRO/MWL** letterhead" is not surprising, *WTC Complaint* ¶ 386, as plaintiffs further allege that Secretary-General Naseef's "MWL uses the IIRO as an operational arm [for] funding, recruiting and aiding and abetting al Qaeda members around the globe.  IIRO was involved with the plot to assassinate former President William Jefferson Clinton and Pope John Paul II, the plot to blow up twelve American airplanes simultaneously, and the 1998 Embassy bombings in East Africa [and] to destroy United States Consulates in India in 1999."  *Ashton* 5AC  ¶¶ 298, 310, 318; *Burnett* 3AC ¶¶ 234, 242;  *Continental Casualty* 1AC ¶¶ 441, 448; *Euro Brokers* Complaint ¶ 44; *WTC Properties* Complaint ¶¶ 371, 379.  Indeed, plaintiffs allege that IIRO is a "sibling organization" of Rabita Trust because these al Qaeda fronts "are both subsidiaries of [Secretary-General Naseef's] MWL."  *Ashton Complaint* ¶ 525; *Burnett* 3AC ¶ 235; *WTC Properties* Complaint ¶ 447.

      Plaintiffs further allege that Naseef provided material support to al Qaeda through his activities with the SAAR Network.  *Ashton* 5AC ¶¶ 526, 528; *Burnett* 3AC ¶¶ 273, 275; *Continental Casualty* 1AC ¶¶ 550, 552; *WTC Properties* Complaint ¶¶ 448, 450.  Plaintiffs allege that one way Naseef "attempted to spread MWL offices around the world" was by installing a Muslim World League office at the SAAR Network's headquarters in Virginia.  *Ashton* 5AC ¶ 528; *Burnett* 3AC ¶ 275; Continental Casualty 1AC ¶ 552; *WTC Properties* Complaint ¶ 450.  Plaintiffs further allege that "two of the SAAR network business [in Virginia]

were raided, the MWL and Sanabel al-Kheer," *Ashton* 5AC ¶ 528; *Burnett* 3AC ¶ 275;

*Continental Casualty* 1AC ¶ 552; *WTC Properties* Complaint ¶ 450, in March 2002 "as sources

of terrorist financing" by a joint terrorism task-force created by U.S. Treasury Department after

the September 11 attacks.  *Ashton* 5AC ¶ 335; *Burnett* 3AC ¶ 263; *Continental Casualty* 1AC ¶

469; *WTC Properties* Complaint ¶ 437.  Plaintiffs allege that "[a]ccording to the search warrants

issued at nearly twenty locations, the SAAR network was raided for 'potential money laundering

and tax evasion activities and their ties to terrorist grounds such as . . . al Qaeda as well as

individual terrorists . . . (including) Osama Bin Laden.'"  *Ashton Complaint* ¶ 335; *Burnett* 3AC

¶ 263; *Continental Casualty* 1AC ¶ 469; *WTC Properties* Complaint ¶ 437.

     In light of the above allegations, plaintiffs further allege that Naseef's "provision of

material support and assistance to Bin Laden and al Qaeda" enabled the al Qaeda terror network

to "carr[y] out terrorist attacks on the United States, including the September 11, 2001 terrorist

attacks that resulted in the death of plaintiffs' decedents."  *Ashton* 5AC ¶ 610; *accord*, *Burnett*

3AC Introduction; *WTC* Introduction; *Euro Brokers* ¶5; *Cantor Fitzgerald* RICO Statement ¶¶ 6-

8; *Cantor Fitzgerald* 1AC ¶¶ 33-42; *O'Neill* 2AC ¶¶ 22-24, 156-163; *O'Neill* Amended RICO

Statement Question 2 Exhibit A.

## II.    APPLICABLE LAW

###      A.    Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations Of Jurisdiction

     In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation.

>          Prior to discovery, a plaintiff challenged by a jurisdiction testing
>          motion may defeat the motion by pleading in good faith, [citation
>          omitted] legally sufficient allegations of jurisdiction.  At that
>          preliminary stage, the plaintiff's *prima facie* showing may be
>          established solely by allegations.  After discovery, the plaintiff's
>          *prima facie* showing, necessary to defeat a jurisdiction testing

> motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. [citations omitted].  At that point, the *prima facie* showing must be factually supported.

*Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990).   Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2), a plaintiff need only present allegations that connect the defendant with the applicable forum, here, the United States.  In deciding such a motion, the plaintiff's jurisdictional averments must be taken as true.  *Id.*;  *In re: Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).  Moreover, the court must construe the pleadings in a light most favorable to plaintiff, resolving all doubts in his favor.  *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001).

**B.       A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal Feasibility Of The Complaint**

Naseef moves to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (per curiam).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaints and RICO Statements and draw all reasonable inferences in Plaintiffs' favor.  *Wynder*, 360 F.3d at 78; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage.  Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided."  *Woodford v. Community Action Agency*, 239 F.3d 517,

526 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive.  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint only need include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests."  *Id.* at 512 (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), appeal dismissed after remand, 2001 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69(1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  308 F.3d at 182.  Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering.  *Id.*  The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*,

deliberate indifference.  The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge.  *Id*. at 184.  The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference."  *Id*. at 186-87.  The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187 (quoting *Conley*, 355 U.S. at 45-46).

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations.  *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id*. at 185 (citations omitted).

In *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied.  In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries."  *Id*. at 511.  The Second Circuit rejected this approach.  It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited

pleading requirements of Rule 8(a)." *Id*. at 512.  Quoting the unanimous Supreme Court ruling

in *Swierkiewiez*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery
> rules and summary judgment motions to define disputed facts and issues and to
> dispose of unmeritorious claims. The provisions for discovery are so flexible and
> the provisions for pretrial procedure and summary judgment so effective, that
> attempted surprise in federal practice is aborted very easily, synthetic issues
> detected, and the gravamen of the dispute brought frankly into the open for the
> inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

More recently, in *Linde, et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D.

N.Y. September 2, 2005), the United States District Court for the Eastern District of New York

rejected the defendant's invitation to impose a heightened pleading requirement in a case

presenting claims nearly identical to those at issue here.  In *Linde*, the plaintiffs brought claims

against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and

Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist

organizations.  *Id.* at *11-23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act

(ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged

knowledge and intent."  *Id.* at *42.  The Court rejected this argument, reasoning that Arab Bank

was attempting to impose a heightened pleading standard not warranted by the Rules of Civil

Procedure:

> To the extent the defendant is arguing that plaintiffs have not
> alleged sufficient facts to establish an evidentiary basis for their
> allegations of knowledge and intent, defendant simply
> misapprehends the pleading standard.  It is not entitled to dismissal
> based on the argument that plaintiff's must plead more than the
> requisite knowledge and intent, either as to their substantive claims
> or their claims of aiding and abetting a conspiracy.

*Id.*  The *Linde* court likewise rejected the defendant's contention that plaintiffs were

required to allege that senior officials of the bank were aware of the misconduct underlying

plaintiffs' claims.  "Once again, defendant attempts to impose a standard of pleading beyond that required by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof."  *Id.* at *50.

Nowhere does Naseef claim not to have fair notice of the allegations being lodged against him.  Naseef clearly knows what has been alleged, and has even attempted to suggest factual evidence at this early stage rebutting Plaintiffs' claims.  Because the complaints provide fair notice, these are properly matters to be resolved after discovery is complete, and this is no grounds for dismissal here.

IV.   **ARGUMENT**

   A.   **This Court Has Personal Jurisdiction Over Naseef**

Naseef contests this Court's authority to exercise personal jurisdiction over him, arguing that the personal jurisdiction requirements of New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002), and the requirements under Fed. R. Civ. P. 4(k)(1)(D), are not satisfied.

   1.   **Personal Jurisdiction Exists Under New York's Long-Arm Statute**

Naseef's arguments regarding the applicability of New York's Long-Arm Statute are simply wrong.  As this Court has previously recognized, "acts committed by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)."  In Re Terrorists Attacks, 349 F. Supp. 2d at 805 (quoting, Chrysler Capitol Corporation v. Sentry Power Corp., 778 F. Supp. 1260, 1266, S.D. N.Y. 1991).  Plaintiffs have adequately alleged that Naseef was an active and knowing participant in al Qaida's conspiracy to attack America.  Without question, those who knowingly contribute to a terrorist organization do so in order to see the organization successfully carry out terrorist attacks.  Indeed, in recognition of that fact, the United States Government has declared

that those who support terrorists are as culpable as those who carry out the attacks.  Thus, the operatives who carried out the September 11th Attack necessarily were acting for the benefit of al Qaida's material sponsors and supporters, and the New York Long-Arm Statute consequently provides a statutory basis for exercising personal jurisdiction over al Qaida's co-conspirators, including Naseef.[1]

### 2.   The Exercise Of Jurisdiction Comports With Due Process

Naseef's assertion that the exercise of personal jurisdiction over him would violate due process is equally unconvincing.  The Supreme Court has consistently held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice.  Calder v. Jones, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984).  Under these standards, due process considerations are satisfied so long as the defendant has "fair warning" that he may be haled into court in the forum to respond for his actions.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  In an action involving harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  Calder, 465 U.S. at 788.  Consistent with this principle, the courts have found that due process is not violated by the exercise of jurisdiction over those who deliberately target our citizens.  Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 54 (D. D.C. 2003); Daliberti v. Iraq, 97 F. Supp. 2d 38, 54 (D. D.C. 2000); Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D. N.Y. 1998); Mwani v. Bin

---

[1] The plaintiffs have asserted claims against these defendants under the ATA and Civil RICO, both of which include nationwide service of process provisions.  As such, the exercise of personal jurisdiction also is authorized under Fed. R. Civ. P. (4)(k)(1)(D), provided that the exercise of jurisdiction comports with due process.  For the reasons set forth in greater detail in Sections D2 and D3, the exercise of personal jurisdiction over these defendants does comport with due process.

Laden, 417 F.3d 1, 28 (D.C. Cir. 2005) (finding that al Qaida and its co-conspirators have "engaged in unabashedly malignant actions directed at and felt in" the United States).

### 3.    The Defendant Directed His Conduct at the United States

In the present case, Plaintiffs have satisfied their burden to make a *prima facie* showing of personal jurisdiction over Naseef, pursuant to the applicable standards set forth above.  As described above, the defendant, for a period of many years, directly channeled financial and logistical support to al Qaida.  In knowingly sponsoring and directly participating in al Qaida's campaign to attack America, the defendant necessarily directed his conduct at the United States, as it has been publicly known, since at least the mid-1990's, that al Qaida was engaged in a global campaign of terror directed against the United States.  In re Terrorists Attacks, 349 F. Supp. 2d at 813 ("This Court's record … contains many examples of Osama bin Laden's and al Qaeda's public targeting of the United States").  Thus, the exercise of jurisdiction over the defendant for claims arising from their sponsorship of al Qaida complies with due process.[2]

### B.    Plaintiffs Have Sufficiently Pled The Causal Connection Between Naseef And The September 11 Terrorist Attacks.

Naseef argues that Plaintiffs have not sufficiently pled a causal connection between his actions and the September 11 attacks.  This is not the case.   Naseef is alleged to have knowingly provided financial support to al Qaeda through Muslim World League, Rabita Trust, and IIRO. *See* Plaintiffs' allegations set forth in Factual Background *supra*.  Those allegations properly allege that Naseef's support and assistance were a proximate cause of the September 11 attacks. Plaintiffs allege that "The financial resources and support network of . . . Defendants – charities, banks, front organizations and financiers – are what allowed the attacks of September 11, 2001 to occur.  Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan, train and

---

[2] Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation.  *In Re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208; *see also Davis v. Barrett Day Securities, Inc.*, 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).

act on a massive scale without significant financial power, coordination and backing." *Federal*

1AC ¶ 74; *accord, Ashton* 5AC ¶ 610; *Burnett* 3AC Introduction; *WTC* Introduction; *Euro*

*Brokers* ¶5; *Cantor Fitzgerald* RICO Statement ¶¶ 6-8; *Cantor Fitzgerald* 1AC ¶¶ 33-42; *O'Neill*

2AC ¶¶ 22-24, 156-163; *O'Neill* Amended RICO Statement Question 2 Exhibit A; *see also,*

*Boim*, 291 F.3d at 1021 ("[T]here would not be a trigger to pull or a bomb to blow up without the

resources to acquire such tools of terrorism and to bankroll the persons who actually commit the

violence.").  Moreover, this Court has already held that "[i]n light of Al Qaeda's public

acknowledgments of its war against the United States, the September 11 attacks may be the

natural and probable consequence of knowingly and intentionally providing material support to

al Qaeda."  *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 826

(S.D.N.Y. 2005) ["January 18 Order"].  Finally, as this Court has previously recognized,

"Plaintiffs do not have to allege that Defendants knew specifically about the September 11

attacks or that they committed any specific act in furtherance of that attack."  *Id.* at 829.

Plaintiffs allege that Naseef knowingly provided financial support to al Qaeda through

Muslim World League, Rabita Trust, and IIRO.  *See* Plaintiffs' allegations set forth in Factual

Background *supra.*If so, then Naseef is legally responsible for the September 11 attacks.  *See*

Restatement (Second) of Torts §§ 876, 877; *see also* January 18 Order, 349 F. Supp. 2d at 826.

Plaintiffs are entitled to the opportunity to take discovery and prove their allegations and

establish that Naseef knowingly and intentionally participated in the sponsorship of al Qaida.

**C.      Naseef Is Not Entitled To Dismissal Of Plaintiffs' Tort Claims**

Plaintiffs have sufficiently alleged claims under the Anti-Terrorism Act ("ATA"), the

Alien Tort Claims Act ("ATCA"), and the common law.  These claims should not be dismissed.[3]

**1.      Plaintiffs Sufficiently Plead Their Claims Under The ATA**

Under the ATA,[4] a defendant is liable if it provided any material support to al Qaida with

knowledge of its terrorist agenda or if it aided and abetted al Qaida or Osama bin Laden in their

course of terrorist conduct.  *See Boim*, 291 F.3d at 1021 ("[I]f we failed to impose liability on

aiders and abettors who knowingly and intentionally funded acts of terrorism, we would be

thwarting Congress' clearly expressed intent to cut off the flow of money to terrorists at every

point along the causal chain of violence.") (emphasis added).[5]

Furthermore, this Court has already recognized that, under the ATA, "material support

includes money [and] financial services . . . ."  January 18 Order, 349 F. Supp. 2d at 825.  As

demonstrated above, Plaintiffs have alleged that Naseef knowingly and intentionally provided

money and financial services to Osama bin Laden and al Qaida.  Accordingly, under the

standards set forth in this Court's January 18, 2005 Order, Plaintiffs have properly pled a claim

under the ATA.

---

[3]  Plaintiffs recognize that this Court has dismissed negligence claims against certain defendants on the basis that defendants owed no duty to Plaintiffs. *See* January 18 Order, 349 F. Supp. 2d at 830-31.  Plaintiffs respectfully disagree with this ruling and refer this Court to the prior briefing on this issue. *See* Restatement (Second) of Torts § 302 (stating that as a general principle of tort law, every individual has a duty to exercise reasonable care to avoid physical harm to others' person and property).  Plaintiffs also note that they do not currently intend to pursue their claims under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, against this defendant.  Plaintiffs reserve the right to replead this claim against Naseef should additional information become available in discovery demonstrating that he acted "under actual or apparent authority or color of law, of any foreign nation" in connection with his support of al Qaeda.

[4] The Anti-Terrorism Act ("ATA") provides a civil action for "[a]ny national of the United States injured in his person, property or business by reason of an act of international terrorism[.]"  18 U.S.C. § 2333.

[5]  Reviewing the legislative history, the Seventh Circuit concluded:  "All of this history indicates an intent by Congress to allow a plaintiff to recover from anyone along the causal chain of terrorism."  291 F.3d at 1011.

### 2. Plaintiffs' Claims Under the Alien Tort Claims Act Should Not Be Dismissed

Naseef contends that the Plaintiffs' claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"), should be dismissed because he is not a state actor and did not engage in specific kinds of conduct that give rise to jurisdiction under that statute.  But the ATCA does not require that the defendant act under color of law and the specific types of conduct that Naseef recognizes as covered by the statute – aircraft hijacking and terrorism – are precisely the conduct for which Plaintiffs seek to hold him responsible.  Since Naseef concedes that aircraft hijacking and terrorism are sufficient to support jurisdiction under the ATCA, Plaintiffs' claims against him for his role in supporting these acts are sufficient and should not be dismissed.  *See Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447-48 (2d Cir. 2001); *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1996); *Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115, 120 (D.D.C.2003); *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 244 F.Supp.2d 289, 309 (S.D.N.Y.2003); *Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956, at *4 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003); *see generally United States v. Yunis*, 924 F.2d 1086, 1092 (D.C. Cir. 1991) ("Aircraft hijacking may well be one of the few crimes so clearly condemned under the law of nations that states may assert universal jurisdiction to bring offenders to justice, even when the state has no territorial connection to the hijacking and its citizens are not involved").  Consistent with these decisions, this Court has already ruled that the Plaintiffs' claims under the ATCA are viable.  January 18 Order, 349 F. Supp. 2d at 826.

### 3. Plaintiffs Sufficiently Plead Their Common Law Claims

Naseef claims that Plaintiffs' common law claims, including claims for intentional infliction of emotional distress, assault and battery, wrongful death, survival, and property destruction should be dismissed because the Plaintiffs have failed to adequately allege causation.

This is merely a repetition of Naseef's argument with respect to the ATA and causation generally and should be rejected for the reasons described above.

      **4.**      **Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, And Battery Claims Are Not Barred By The Statute Of Limitations**

Contrary to Naseef's assertion, the Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not demonstrably time-barred.  At this stage of these proceedings, the substantive law governing most of the claims remains to be determined. As such, it would be manifestly premature to dismiss Plaintiffs' assault, battery and intentional infliction of emotional distress claims, under the mere assumption that the law of New York law applies.  *See* 42 Pa.C.S. § 5524 (2005) (establishing two year limitation period for assault, battery and intentional tort claims under Pennsylvania law); *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004) (holding that federal common law claims arising under Act of Congress after 1990 are governed by a four year limitations period).[6]

Moreover, all of Plaintiffs' claims arise from Naseef's participation in the conspiracy to conduct terrorist attacks against the United States, a conspiracy designed to hide the identity of the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until Plaintiffs reasonably should have become aware of Naseef's involvement within the conspiracy, itself a question of fact to be determined through discovery.  *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 U.S. Dist. Lexis 3892 at *17-18 (S.D. N.Y. Mar. 12, 2004). Given the clandestine nature of the conspiracy in which Naseef participated, equitable principles require that the statute of limitations be tolled.  *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d

---

[6] The ATA imports "the remedies of American tort law," 137 Cong. Rec. 54511 04 (April 16, 1991), thus giving rise to federal common law assault, battery and intentional infliction of emotional distress claims thereunder.  On this point, Plaintiffs refer the Court to the discussion included in their Consolidated Opposition to the Motion to Dismiss of Perouz Sedaghaty at pp. 16-17, incorporated herein by reference.

Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[7]

### 5.   Plaintiffs' Claims For Punitive Damages And Conspiracy Should Not Be Dismissed

Defendants correctly argue that no independent causes of action exist under New York law for conspiracy or punitive damages.  However, at this stage of these proceedings, the substantive law governing each of Plaintiffs' individual claims remains to be determined.  Thus, it would be premature to dismiss those causes of action at this time.  Moreover, there can be little dispute that Plaintiffs' are entitled to recover punitive damages in the event that they prevail against these defendants under the theories advanced.[8]  Under these circumstances, dismissal of the conspiracy and punitive damages counts would be inappropriate.

### D.   Plaintiffs Properly State RICO Claims Against Naseef

Naseef also contends that none of the Plaintiffs have properly pleaded their RICO claims. Naseef is wrong.[9] [10]

---

[7]  Arguably, they are also extended by way of action of the New York Survival cause of action, which the New York legislature specifically extended from 2 years to 2.5 years for 9/11 cases.  *See* N.Y. Est. Powers & Trusts Law § 5-4.1 (2003).

[8]  Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future."  Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 32 (D.D.C. 1998).  If the Plaintiffs prove their allegations that Naseef knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, Naseef's conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

[9]  Defendant challenges the standing of the *Burnett* and *Tremsky* Plaintiffs to pursue RICO claims.  Those Plaintiffs do not intend to pursue those claims at this time, and therefore do no address the defendant's standing argument herein.

[10]  As a preliminary matter, defendant argues that Plaintiffs in all cases other than *Federal* are barred from pursuing RICO claims, because they have not filed RICO Statements applicable to the defendant.  However, the Second Circuit has explicitly held that the District Court may not dismiss the RICO claims of a plaintiff on substantive grounds, based on that plaintiff's failure to file a RICO statement which requires information beyond the pleading requirements of the Federal Rules of Civil Procedure.  *See Commercial Cleaning Services, LLC v. Colins Service Systems, Inc.*, 231 F.3d 374, 385-87 (2d Cir. 2001); *see also, Wagh v. Metris Direct, Inc.*, 348 F.3rd 1102, 1107-1109 (9th Cir. 2003).  To the extent the defendant is advocating that the Plaintiffs' RICO claims be dismissed as a sanction for failing to comply with this Court's individual practices, this argument lacks both factual and legal merit.  To begin with, this complex litigation is being managed under a comprehensive Case Management Order, dated June 15, 2004 ("CMO 2").  CMO 2 contains a specific provision governing "RICO Statements" in these proceedings, which preempts any relevant individual practice rules governing a typical case.  At the request of the defendants, the Court has held that only the *Federal* Plaintiffs are permitted to file RICO Statements pursuant to CMO2.  Thus, in refraining from filing RICO Statements applicable to these defendants, Plaintiffs simply complied with this Court's

Plaintiffs' complaints and RICO Statements assert RICO claims against Naseef pursuant to 18 U.S.C. §§ 1962(a), (c) and (d).  The enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure.  Its well documented purpose is to perpetrate acts of terrorism.  Thus, Plaintiffs have sufficiently pled that al Qaida is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

Plaintiffs further allege that Naseef engaged in conduct in furtherance of the enterprise which is actionable under § 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, Plaintiffs allege that Naseef knowingly provided financial support to al Qaeda through Muslim World League, Rabita Trust, and IIRO.  *See* Plaintiffs' allegations set forth in Factual Background *supra*.  As the Supreme Court has explicitly recognized that al Qaida's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, Plaintiffs have undeniably stated RICO claims under

---

Orders and practices, and there exists no violation to complain of.  Even assuming that this Court's individual practices regarding RICO Statements were applicable here, dismissal with prejudice may be imposed as a sanction only in cases of willfulness, bad faith, or serious fault.  *Commercial Cleaning Services*, 231 F.3d at 386.  To the extent there has been any violation of this Court's practices here, such violation is at most the result of a reasonable misinterpretation of CMO 2.  Therefore, dismissal of Plaintiffs' RICO claims would be fundamentally improper.  It should be noted that certain of the Plaintiffs could not possibly have complied with this Court's individual practice requiring that RICO Statements be filed within 20 days of the filing of the Complaint.  For example, *Estate of John P. O'Neill, Sr., et al. v. Republic of Iraq, et al.*, 03 CV 1766 (RBW) (Old case number), 04 CV 1076 (RCC) (new case number), was originally filed in the District of Columbia on  August 20, 2003 and was not assigned to the Honorable Richard Conway Casey for nearly seven (7) months.  In any event, to the extent the Court deems its individual practices applicable, Plaintiffs seek leave to file RICO Statements under Rule 6(b)(2).

Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

Plaintiffs' similarly allege sufficient involvement by Naseef in the enterprise to sustain claims under both §§ 1962(c) and (d).  Although a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise, *see Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003), such "discretionary authority" has been described by the Second Circuit as "a relatively low hurdle for plaintiffs to clear."  *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998).  Moreover, as a general rule, it may not be "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise."  *Friedman v. Hartmann*, 1994 WL 376058, *2 (S.D. N.Y. July 15, 1994).

With respect to a RICO conspiracy under § 1962(d), the requirements "are less demanding."  *Baisch*, 346 F.3d at 376.  All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor."  *Id*. at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)).  Thus, "[a]lthough parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

Here, Plaintiffs have satisfied the pleading standards applicable to their § 1962(c) and § 1962(d) claims.  Plaintiffs allege that Naseef knowingly provided financial support to al Qaeda through Muslim World League, Rabita Trust, and IIRO.  *See* Plaintiffs' allegations set forth in Factual Background *supra*.  In view of these allegations regarding Naseef's integral and pervasive sponsorship of al Qaida's operations throughout the world, Plaintiffs have adequately alleged that Naseef played a direct and active role in the management and operation of al Qaida's fundraising scheme.  Plaintiffs have, accordingly, met their pleading burden in relation to their claims under §§ 1962(c) and 1962(d), particularly given the fact that Plaintiffs have not been afforded the opportunity to take discovery.

Plaintiffs also have adequately alleged proximate cause under RICO.  This requirement is satisfied if plaintiffs allege that defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.  *Lerner v. Fleet Bank, N.A*., 318 F.3d 113, 120 (2d Cir. 2003).  Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the pleadings stage of a RICO claim is generally imprudent. *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 225 (E.D.N.Y. 1999).  This Court's decision "should be guided by a flexible, case-by-case approach."  *Id.* (citing *Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983), and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)).  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  *Id.*  Further, failure to explain the alleged injury in detail is not fatal.  *Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986). Allegations of injury, because they necessarily involve questions of fact, must be construed

liberally on a motion to dismiss under Rule 12(b)(6). *Id.* The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts." *Id.* (citations omitted).

Here, Plaintiffs allege that they were directly injured by Naseef's participation in al Qaida's campaign to attack the United States, and in particular, by his provision of "material support and resources to al Qaeda." Plaintiffs allege that Naseef knowingly provided financial support to al Qaeda through Muslim World League, Rabita Trust, and IIRO. *See* Plaintiffs' allegations set forth in Factual Background *supra*. Naseef participated extensively in al Qaida's global operations and specifically in furthering al Qaida's goal of committing acts of terrorism against the United States by providing al Qaida with the "financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack." *Federal* 1AC ¶ 74. Accordingly, Plaintiffs have sufficiently pled causation for purposes of their RICO claims.

## E.      Plaintiffs Have Properly Served Naseef

Naseef alleges that the Plaintiffs failed to properly serve him in accordance with the Federal Rules of Civil Procedure and that the notices published in the *USA Today, International Herald Tribune, and Al-Quds Al-Arabi* were not proper as a matter of law. Naseef makes the identical arguments about service by publication made by his co-defendants Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah. Plaintiffs have addressed each of those arguments in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendants Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah. Rather than repeat those arguments here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

As demonstrated in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah, service by

publication on Naseef was proper.[11]  By its September 15, 2004 Order, this Court agreed that publication in the *USA Today*, *International Herald Tribune*, and the *Al Quds Al Arabi* newspapers was "reasonably calculated" to notify Naseef of the suit against him so as to satisfy due process.  Naseef was served by publication in the *USA Today* and *Al Quds Al Arabi* newspapers on December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005.  Naseef was similarly served in the *International Herald Tribune* on December 22, 2004, December 27, 2004, January 5, 2005, and January 10, 2005.  Thereafter, Naseef appeared and filed this motion to dismiss.

In sum, Plaintiffs obtained permission from this Court to serve Naseef by publication.  Naseef was served in this manner and in fact received notice of the pendency of the action.  The action should not be dismissed for improper service of process.

## V.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Dr. Abdullah Naseef's Motion to Dismiss be denied in all respects, with prejudice.

---

[11] It is significant to point out that Naseef was represented by counsel in the consolidated action (03 MDL 1570) at the time of the Order permitting publication and was arguably notified that the Plaintiffs intended to serve him in this manner.  The MDL docket clearly shows that Ms. Bernabei and Mr. Kabat were counsel of record for Naseef_ as of March 11, 2004 when this Court signed their *pro hac* admissions and subsequent entry of appearance.  *See* MDL 1570 Docket entries #20 and #21.  Naseef was sufficiently on notice of the Plaintiffs' claims against him at that time, and has been for the past **18** months.

Respectfully submitted,

| | |
|---|---|
| | COZEN O'CONNOR |
| Dated: September 20, 2005 | BY: _____<br>    Ronald L. Motley, Esq. (RM-2730)<br>    Jodi Westbrook Flowers, Esq.<br>    Donald A. Migliori, Esq.<br>    Michael Elsner, Esq. (ME-8337)<br>    MOTLEY RICE LLC<br>    28 Bridgeside Boulevard<br>    P.O. Box 1792<br>    Mount Pleasant, South Carolina 29465<br>    Telephone: (843) 216-9000 |
| | Paul J. Hanly, Jr., Esq. (PH-5486)<br>    Jayne Conroy, Esq. (JC-8611)<br>    Andrea Bierstein, Esq. (AB-4618)<br>    HANLY CONROY BIERSTEIN &<br>        SHERIDAN, LLP<br>    415 Madison Avenue<br>    New York, NY 100 17-11 1 1<br>    Telephone: (212) 401-7600<br><br>    Attorneys for *Burnett*, *EuroBrokers* and<br>    *WTC Properties* Plaintiffs |
| | James P. Kreindler, Esq. (JK7084)<br>    Justin T. Green, Esq. (JG0318)<br>    Andrew J. Maloney III, Esq. (AM8684)<br>    Vincent Ian Parrett, Esq. (VP5092)<br>    KREINDLER & KREINDLER LLP<br>    100 Park Avenue<br>    New York, NY  10017-5590<br>    (212) 687-8181<br><br>    *Attorneys for Ashton Plaintiffs* |

| | |
|---|---|
| | Robert M. Kaplan (RK1428)<br>FERBER FROST CHAN & ESSNER, LLP<br>530 Fifth Avenue, 23rd Floor<br>New York, New York 10036-5101<br>(212) 944-2200<br><br>Attorneys for *Continental* Plaintiffs |
| | Attorney for the O'Neill Plaintiffs<br>David H. Fromm, Esq. (DH-9334)<br>Frank J. Rubino, Jr., Esq. (FR-6202)<br>BROWN GAVALAS & FROMM LLP<br>355 Lexington Avenue<br>New York, New York 10017<br>(212) 983-8500<br><br>Attorneys for Plaintiff *New York Marine And General Insurance Company* |

PHILA1\2345847\2 117430.000