**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | No. 03 MDL 1570 (RCC) ECF Case |

This document relates to:
    BURNETT*, et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP.*, et al.*, Case No. 03-CV-5738;
    EURO BROKERS, INC.*, et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP.*, et al.*, Case No. 04-CV-07279; and
    WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP.*, et al.*, Case No. 04-CV-07280.

**REPLY BRIEF IN SUPPORT OF
HAMAD AL-HUSAINI'S
CONSOLIDATED MOTION TO DISMISS**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Hamad Al-Husaini

DATED:  September 26, 2005

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................... 1

II.  This Court Does Not Have Personal Jurisdiction over Mr. Al-Husaini ....................... 2

    A.   The New York Long-Arm Statute Does Not Provide Personal Jurisdiction ... 3

    B.   Rule 4(k), Fed. R. Civ. P., Does Not Provide Personal Jurisdiction ............... 3

III. This Court must Dismiss Plaintiffs' Claims Against Mr. Al-Husaini, Pursuant to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim ....................................... 5

    A.   Plaintiffs' Burden Under Rule 12(b)(6), Fed. R. Civ. P. ................................ 5

    B.   Plaintiffs Have Failed to State Their Individual Claims ................................ 7

IV.  This Court Must Dismiss Plaintiffs' Claims Against Mr. Al-Husaini, Pursuant to Rule 12(b)(5), Fed. R. Civ. P., for Improper Service of Process ............................... 10

CONCLUSION ........................................................................................................... 10

## I.   INTRODUCTION.

This Court dismissed Sheikh Hamad Al-Husaini from the first *Burnett* action (originally filed in the District of Columbia), for lack of personal jurisdiction. <u>In re</u>: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005). Mr. Al-Husaini then filed a motion to dismiss the remaining lawsuits in which he is named as a defendant: *Burnett II* (originally filed in this Court), *Euro Brokers*, and *WTC Properties* – each complaint filed by the same set of law firms. In response, plaintiffs' Opposition ignores this Court's prior ruling as to its lack of personal jurisdiction over Mr. Al-Husaini, and devotes numerous pages to discussing the "Golden Chain" document. <u>See</u> Pls. Opp. (Al-Husaini), at 1-7 (Docket No. 1253).

This Court must not condone plaintiffs' attempts to re-argue the discredited "Golden Chain," which has been rejected by this Court, and by the U.S. District Court for the Northern District of Illinois, which rejected the admissibility of the government's proffer of the "Golden Chain."[1] <u>See</u> Terrorist Attacks I, 349 F. Supp. 2d at 817-18; <u>In re</u>: Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *17 n.10 (S.D.N.Y. Sept. 21, 2005); <u>United States v. Arnaout</u>, No. 02 CR 892, 2003 WL 255226, at *1-*2 (N.D. Ill. Feb. 4, 2003).

The Second Circuit stated, in affirming the dismissal of a complaint filed by a plaintiff who ignored the district court's adverse rulings against that plaintiff's prior complaints, that:

> At no point, however do his [plaintiff's] conclusory allegations address the substance of the District Court's Memorandum of Decision and Order that dismissed plaintiff's actions.

<u>Iwachiw v. N.Y. State Dep't of Motor Vehicles</u>, 396 F.3d 525, 528 (2d Cir. 2005) (<u>per</u> <u>curiam</u>). Here, even after plaintiffs' first complaint was dismissed by this Court for lack of personal

---

[1] Plaintiffs cited this proffer, <u>see</u> Pls. Opp. at 2, but again fail to inform this Court that the proffer was rejected by the court in which it was originally filed.

jurisdiction, plaintiffs' counsel ignored that ruling in their opposition to Mr. Al-Husaini's motion to dismiss the remaining complaints that they filed.

The only other factual allegation that plaintiffs raise in their Opposition arises from a newspaper article which plaintiffs claim reported that one of Mr. Al-Husaini's "family companies is a principal supporter of al-Waqf al-Islami, a Dutch entity that has played a major role in the recruitment of terrorists." See Pls. Opp., at 2-3. Plaintiffs already made this argument to this Court in response to Mr. Al-Husaini's first motion to dismiss, and this Court gave it no further credence. See Terrorist Attacks I, 349 F. Supp. 2d at 818; see also Al-Husaini Reply Br., at 6-7 (Docket No. 331) (July 23, 2004) (explaining that the article does not say what plaintiffs claim it says about Mr. Al-Husaini).

## II. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. AL-HUSAINI.

This Court correctly ruled that it lacked personal jurisdiction over Mr. Al-Husaini, a Saudi citizen who has no contacts with this country, on the grounds that the "Golden Chain" document did not provide any basis for the exercise of personal jurisdiction over Mr. Al-Husaini, or Mohammad Aljomaih, another individual whom plaintiffs alleged was listed on the "Golden Chain." See Terrorist Attacks I, 349 F. Supp. 2d at 816-19. Plaintiffs offer no new argument in response, other than an attempt to re-argue the "Golden Chain," without addressing this Court's prior decision extensively addressing this issue. Moreover, plaintiffs voluntarily dismissed Mr. Aljomaih subsequent to this Court's decision, see Docket Nos. 820, 825, 885, and 886, yet do not explain why they did not similarly dismiss Mr. Al-Husaini.

Plaintiffs also argue that they "need only present allegations that connect the defendant with the applicable forum, here, the United States." See Pls. Opp. at 9. However, plaintiffs have

2

not satisfied their own test, since the only allegations they present about Mr. Al-Husaini – the "Golden Chain" and a newspaper article about a Dutch entity that does not say what plaintiffs claim – fail to "connect" Mr. Al-Husaini with this forum.

### A. The New York Long-Arm Statute Does Not Provide Personal Jurisdiction.

Plaintiffs' conclusory allegations that Mr. Al-Husaini somehow supported al Qaeda fail to satisfy the pleading requirements for a conspiracy theory of personal jurisdiction under the New York long-arm statute. This Court held that in order to exercise such jurisdiction, "plaintiffs must make a *prima facie* showing of conspiracy and allege facts warranting an inference that the defendant was a member of the conspiracy." Terrorist Attacks II, 2005 WL 2296673, at *12; Terrorist Attacks I, 349 F. Supp. 2d at 805 (same). Here, however, there are no specific facts pled about Mr. Al-Husaini to support any inference that he was a member of the Al Qaeda conspiracy, merely conclusory allegations that are unsupported by any inferences that can be drawn from the "Golden Chain." Even if this Court were to give credence to the "Golden Chain," it must still find that the exercise of personal jurisdiction over Mr. Al-Husaini under the New York long-arm statute would not "comport with due process requirements," since he does not have the requisite "minimum contacts," let alone *any* contacts with this forum. Terrorist Attacks II, 2005 WL 2296673, at *13; accord Terrorist Attacks I, 349 F. Supp. 2d at 810-11.

### B. Rule 4(k), Fed. R. Civ. P., Does Not Provide Personal Jurisdiction.

Rule 4(k), Fed. R. Civ. P., similarly does not provide a basis for this Court's exercise of personal jurisdiction over Mr. Al-Husaini. Rule 4(k)(1) is inapplicable, since Mr. Al-Husaini was not served in this country. Terrorist Attacks I, 349 F. Supp. 2d at 806-07. Rule 4(k)(2) is also inapplicable, given the plaintiffs' theory that Mr. Al-Husaini "purposefully directed his

conduct at the United States." See Pls. Opp. at 15. However, the purposefully directed theory requires a higher showing than plaintiffs have satisfied:

> This Court has held that to succeed on this theory, "Plaintiffs must make a *prima facie* showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries." The Court does not require direct participation in the attacks themselves, but at least participation in al Qaeda's terrorist agenda.

Terrorist Attacks II, 2005 WL 2296673, at *13 (quoting Terrorist Attacks I, 349 F. Supp. 2d at 809). Thus, "a defendant's actions must be personal or direct so that the defendant has fair warning that his activities could subject him to personal jurisdiction in the United States." Id. at *13 n.5. Plaintiffs merely allege that Mr. Al-Husaini "for a period of many years, directly channeled financial and logistical support to al Qaida." See Pls. Opp. at 15. This conclusory allegation is not even supported by plaintiffs' own brief, which alleges nothing other than the "Golden Chain" and support for a Dutch entity that funded elementary schools – neither of which provides a basis for alleging that Mr. Al-Husaini knowingly supported terrorism, or that he did so over "many years." Moreover, as this Court held in dismissing Prince Naif, whom plaintiffs similarly alleged made "contributions to several Saudi-based charities," the act of "donating money to established humanitarian organizations that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States." Terrorist Attacks II, 2005 WL 2296673, at *14 (citing Terrorist Attacks I, 349 F. Supp. 2d at 809). Here, the Al-Waqf Al-Islami foundation has not been designated as a terrorist entity by the U.S. Government.[2] Even if this Court gave

---

[2] This Court can take judicial notice of the fact that the U.S. government has never designated the Al-Waqf Al-Islaami as a terrorist organization, which contradicts plaintiffs' arguments regarding its alleged terrorist activities. See Department of the Treasury, Office of Foreign Assets Control, "Specially Designated Nationals and Blocked Persons" (Sept. 19, 2005), <http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf>.

4

any credence to plaintiffs' claims about donations allegedly made by Mr. Al-Husaini's company to that entity, it must still find that those allegations provide no basis for the exercise of personal jurisdiction over him under Rule 4(k), Fed. R. Civ. P., as there is no indication that Mr. Al-Husaini made donations to this foundation with the knowledge that his money would be diverted to Al Qaeda.

### III. THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST MR. AL-HUSAINI, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Plaintiffs' allegations about Mr. Al-Husaini – which arise entirely from the discredited "Golden Chain" document, and from a newspaper article about a Dutch entity that funded elementary schools – fail to establish any tort cause of action against him because plaintiffs failed to plead any facts showing that his acts proximately caused their injuries.

#### A. Plaintiffs' Burden Under Rule 12(b)(6), Fed. R. Civ. P.

As a threshold matter, plaintiffs misstate their burdens under Rules 8 and 12(b)(6), Fed. R. Civ. P., by impermissibly conflating the two standards. Plaintiffs then improperly rely on cases in which there was a direct, pre-existing relationship between the parties to support their argument that they have stated a claim as to Mr. Al-Husaini.

The Second Circuit recently recognized the important distinction between plaintiffs' burden under Rule 8, which asks whether the plaintiffs' complaint has put the defendant on notice of the claims against him, and their burden under Rule 12(b)(6) to state a claim upon which relief can be granted as to that defendant:

> For one thing, there is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted. . . . the complaint accuses *all* of the defendants of having violated *all* of the listed constitutional and statutory provisions. As a

5

>   result, a series of 12(b)(6) motions to dismiss would lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against *him.*

Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004).  Thus, even if this Court were to find that plaintiffs' complaints satisfied Rule 8, that would not preclude this Court from finding that these complaints failed to satisfy plaintiffs' burden under Rule 12(b)(6) as to Mr. Al-Husaini.

Plaintiffs' argument that a lenient pleading standard should be applied is based on a series of cases in which there was a direct relationship between the parties, see Pls. Opp. at 10-12 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (employment relationship); Pelman v. McDonald's Corp., 396 F.3d 508, 509-10 (2d Cir. 2005) (business-customer relationship); Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002) (per curiam) (custodial relationship between prisoner and warden), which is not the case here.  Thus, those plaintiffs did not have to plead further facts showing proximate causation, which may be inferred from the existence of the relationship between the parties.

Plaintiffs' reliance on the decision in Linde, see Pls. Opp. at 12-13, is also misplaced as the three complaints in that litigation expressly pled specific factual allegations about a program allegedly administered by the defendant that directly provided payments to the families of Palestinian suicide bombers who had injured plaintiffs.  Linde v. Arab Bank, Plc, No. 04 CV 2799 (NG)(VVP), 2005 WL 2108690, at *9-*10 (E.D.N.Y. Sept. 2, 2005).  Moreover, Judge Gershon expressly distinguished this Court's January 2005 decision, stating that the consolidated MDL complaints before this Court "contained only a few paragraphs of allegations against the defendant banks." Id. at *12 (citing Terrorist Attacks I).  Here, the complaints have no allegations about Mr. Al-Husaini, other than conclusory allegations about all defendants.

6

This Court must find, as it previously held in granting the motions to dismiss of other defendants, that conclusory allegations are insufficient to state a claim as to Mr. Al-Husaini. See Terrorist Attacks II, 2005 WL 2296673, at *25; Terrorist Attacks I, 349 F. Supp. 2d at 833; see also PSINet Liquidating LLC v. Bear Stearns & Co., 357 F.3d 263, 265 (2d Cir. 2004) (per curiam) (upholding dismissal based on "plaintiff's conclusory allegations"); Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) ("However, we give no credence to plaintiff's conclusory allegations."); Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

### B.  Plaintiffs Have Failed to State Their Individual Claims.

This Court must find, even if it were to consider plaintiffs' conclusory allegations as to Mr. Al-Husaini, that plaintiffs still have failed to state their individual claims as to him.

As a threshold matter, plaintiffs have conceded that they cannot state any claim against Mr. Al-Husaini under the Torture Victims Protection Act. See Pls. Opp. at 17 n.6.

Plaintiffs' arguments on their tort claims are based on their assertion that plaintiffs "have alleged that Husaini knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaida." Id. at 17. In fact, plaintiffs have alleged no such thing as to Mr. Al-Husaini, other than the "Golden Chain" document. Plaintiffs have not satisfied the pleading requirement under the Anti-Terrorism Act, that plaintiffs must "plead that Defendants knew of al Qaeda's illegal activities, 'that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.'" Terrorist Attacks II, 2005 WL 2296673, at *19 (quoting Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1023-24 (7th Cir. 2002)).

7

Plaintiffs offer no response to Mr. Al-Husaini's argument that their negligence claims should be dismissed because he owed no duty to plaintiffs, other than to state that plaintiffs "disagree" with this Court's ruling, "and refer this Court to the prior briefing on this issue." See Pls. Opp. at 17 n.6. Subsequently, in response to plaintiffs' briefing as to 24 other defendants, this Court reaffirmed its holding that the absence of any duty owed by those defendants precluded the plaintiffs' negligence claims. Terrorist Attacks II, 2005 WL 2296673, at *20 (dismissing negligence claims by *Ashton, Burnett*, and *Federal Insurance* plaintiffs).

Plaintiffs' argument as to the statute of limitations for the *Burnett II* plaintiffs' intentional infliction of emotional distress claim is meritless for three reasons. First, plaintiffs fail to explain why other plaintiffs were able to timely file their complaints, but they were not. Second, plaintiffs' reliance on the Jones v. R.R. Donnelly & Sons, 124 S. Ct. 1836 (2004), decision is entirely inapposite, because Jones involved a Section 1981 discrimination claim, and the question was whether the federal or state catch-all statute of limitations should apply to this federal statutory claim, not what statute of limitations applied to common-law claims. Third, the statute of limitations for the New York survival cause of action has no bearing on plaintiffs' intentional infliction of emotional distress claim. This Court reiterated that the statute of limitations barred plaintiffs' untimely intentional infliction of emotional distress claims as to twelve other defendants. Terrorist Attacks II, 2005 WL 2296673, at *20.

Plaintiffs concede that "Defendants correctly argue that no independent causes of action exist under New York law for conspiracy or punitive damages." See Pls. Opp. at 19. Yet, plaintiffs argue, without any support, that these non-existent claims should not be dismissed. This Court should not condone plaintiffs' attempt to plead non-existent claims.

The *Burnett II* plaintiffs conceded that they lack standing to bring RICO claims. Id. at 20 n.13. The *Euro Brokers* and *WTC Properties* plaintiffs failed to state a RICO claim as to Mr. Al-Husaini, because they have failed to plead any facts showing that he "participated in the operation or management of any enterprise," let alone that he "had any role in directing an enterprise." Terrorist Attacks II, 2005 WL 2296673, at *21, *22, *25, *27 (dismissing RICO claims as to four defendants). Given that plaintiffs' *only* evidence as to Mr. Al-Husaini is the discredited "Golden Chain" document, and an article about a Dutch entity that funded elementary schools, it would be futile for the plaintiffs to file a belated RICO statement, as they were required to do under this Court's "Instructions for Filing RICO Statement." Plaintiffs' belief that they do not need to comply with this Court's requirement of filing RICO Statements, in a case where they cannot even allege proper RICO claims, shows exactly why a civil RICO plaintiff needs to file such a statement – *i.e.*, to avoid defendants having to litigate obviously deficient civil RICO claims.

Plaintiffs' argument that a Section 1962(c) RICO claim has "a relatively low hurdle for plaintiffs to clear," and that pleading a Section 1962(d) RICO claim is "less demanding," see Pls. Opp. at 21, misrepresents the decisions cited by plaintiffs, as the First Capital decision affirmed the dismissal of the RICO claims, and the other decisions did not address RICO pleading standards as they were on summary judgment or a jury verdict. See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004); Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003) (summary judgment); De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001) (jury verdict); United States v. Allen, 155 F.3d 35, 42-43 (2d Cir. 1998) (summary judgment).

9

### IV. THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST MR AL-HUSAINI, PURSUANT TO RULE 12(b)(5), FED. R. CIV. P., FOR IMPROPER SERVICE OF PROCESS.

Finally, this Court must find that plaintiffs misrepresented the necessity for service by publication on Mr. Al-Husaini and other Saudi defendants by asserting that their process server, Nelson Tucker, is unable to serve defendants in Saudi Arabia. See Pls. Opp. (Al-Hawali), at 23. Plaintiffs ignored defendant's motion to dismiss, which confirms that Mr. Tucker's corporate website states that it can serve process in Saudi Arabia, and quotes a fixed price, $1,175.00, for such service. See Al-Husaini Mot. to Dismiss, at 16 & Ex. 2-3.[3] The only conclusion is that plaintiffs simply did not want to pay for service of process and therefore misrepresented to this Court the ability of their own process server to serve pleadings in Saudi Arabia.

### CONCLUSION

For the foregoing reasons, and those set forth in his Motion to Dismiss, defendant Hamad Al-Husaini respectfully requests that this Court dismiss the plaintiffs' complaints for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

---

[3] Plaintiffs' repeated assertion that one of Mr. Tucker's process servers was "murdered" while attempting to serve an unnamed party in Saudi Arabia, see Pls. Opp. (Al-Hawali), at 23, is contradicted by Mr. Tucker's statement that it was plausible that the process server took the money and disappeared. See *Charleston Post and Courier*, May 31, 2003, at A28 ("Tucker, whose company specializes in serving legal papers overseas, said one plausible scenario is that the man faked his own death. In some foreign countries, process servers are bribed by their targets and then disappear. 'We did pay him in advance, so he may have left town and put out this rumor himself. There are a lot of unknowns.'") (attached hereto as Exhibit 1). Subsequently, Mr. Tucker wrote that "Saudi Arabia . . . allow[s] service by an 'informal' method, such as by private process server." See N. Tucker, "International Service of Process," *Bar Notes, San Fernando Valley Bar Ass'n*, July 2003, at 15-16 (attached hereto as Exhibit 2).

10

        Respectfully submitted,

        /s/ Lynne Bernabei
        _____
        Lynne Bernabei, Esquire  (LB2489)
        Alan R. Kabat, Esquire  (AK7194)
        Bernabei & Katz, PLLC
        1773 T Street, N.W.
        Washington, D.C. 20009-7139
        (202) 745-1942

        Attorneys for Defendant
         Hamad Al-Husaini

Dated:  September 26, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat