## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)
ECF Case

This document relates to:

*Ashton v. Al Qaeda Islamic Army*, Case No. 02-CV-6977
*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970
*EuroBrokers Inv. V. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, (04-CV-7280)

---

**MEMORANDUM OF LAW OF AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC. AND YORK FOUNDATION IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY ......................................................................................................3

    I.     THE COURT'S JANUARY 18, 2005 DECISION ..................................................3

    II.    THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER....................4

ARGUMENT..............................................................................................................................7

    I.     PLAINTIFFS' "AMENDED" PLEADINGS DO NOT COMPLY WITH THE
         COURT'S CASE MANAGEMENT ORDER ........................................................7

    II.    PLAINTIFFS' COMPLAINTS AGAINST THE MOVING DEFENDANTS
         SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM....................10

         A.     THE ALLEGATIONS AGAINST EACH MOVING DEFENDANT......10

         B.     THESE ALLEGATIONS FAIL TO STATE A CLAIM AGAINST ANY
               OF THE MOVING DEFENDANTS IN ANY OF THE ACTIONS.........18

    III.   THE COURT SHOULD CONVERT ITS SEPTEMBER 21, 2005 DISMISSALS
         OF THE MOVING DEFENDANTS WITHOUT PREJUDICE TO DISMISSALS
         WITH PREJUDICE............................................................................................18

CONCLUSION ........................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992) ........................................................ 9

*Gordon v. Green*, 602 F.2d 743 (5th Cir. 1979) .............................................................. 8

*In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673
    (S.D.N.Y. Sept. 21, 2005) ........................................................................................ passim

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765
    (S.D.N.Y. 2005) ........................................................................................................ passim

*Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437 (8th Cir. 1983) ........................ 8

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) ............................... 8

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994) ........... 8

## OTHER

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) ...................................... 9

African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation (the "Moving Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion to Dismiss all of the claims asserted against them in *Ashton, Burnett, N.Y. Marine, Euro Brokers, Continental* and *World Trade Center*[1] pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2]

## PRELIMINARY STATEMENT

The Moving Defendants are eleven U.S. companies. Seven are "not for profit" entities[3] devoted to education, research and humanitarian work that are organized as 501(c)(3) tax exempt organizations, and are therefore subject to the IRS' strict reporting and disclosure requirements.[4] The four other entities[5] are for profit management services companies, investment services companies and investment entities. The Moving Defendants should be dismissed from this action because they have never supported Al Qaida or assisted or funded terrorism of any kind, and Plaintiffs have failed to allege that they have done so.

---

[1] On October 18, 2005, the Moving Defendants and Ahmed Totonji and Mohammed Jaghlit moved to dismiss the claims in the *Federal Insurance Action*. For the Court's convenience, attached hereto as Exhibit A, is a chart showing the status of all of the Moving Defendants in *Ashton, Burnett, Federal Insurance, New York Marine, Euro Brokers, Continental* and *World Trade Center*.

[2] In *Ashton*, the Moving Defendants are moving to dismiss the claims in the Sixth Amended Consolidated Master Complaint; in *Burnett* the Third Amended Complaint; in *New York Marine* the Second Amended Complaint; in *Euro Brokers* the Complaint; in *Continental* the Second Amended Complaint; and in *World Trade Center* the Complaint. As discussed *infra.* at 7, Plaintiffs object to all but the *Ashton* complaint for violating the Court's Case Management Order 2.

[3] The not-for-profit Moving Defendants are African Muslim Agency, Heritage Education Trust, International Institute of Islamic Thought, Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group and York Foundation.

[4] All 501(c) organizations are required to disclose their annual information returns and their application for recognition of tax exemption. 26 U.S.C. § 6104.

[5] The for profit Moving Defendants are Grove Corporate Inc., Mar-Jac Investments, Inc., Mena Corporation and Reston Investments, Inc.

Plaintiffs' sole basis for claiming liability against the Moving Defendants is their alleged involvement in the so-called "SAAR Network." But, on January 18, 2005, the Court, in considering the *Federal Insurance* plaintiffs allegations as to the existence of a so-called "SAAR Network," found that they had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. September 21, 2005) ("*In re Terrorist Attacks I*").

The Court took that analysis one step further in its recent September 21, 2005 Opinion and Order, and dismissed eight of the Moving Defendants, African Muslim Agency, Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint did not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673 at *25, 30 (S.D.N.Y. September 21, 2005) (*"In re Terrorist Attacks II"*). The Court dismissed the *Ashton* complaint[6] against IIIT, even though it contained the additional allegation that IIIT financed two charities, because the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.* at 25.[7]

These rulings compel the dismissals of all of the remaining claims against all of the Moving Defendants in this MDL. Eight of the Moving Defendants already have received at least one Court ordered dismissal. The other three Moving Defendants all have been dismissed

---

[6] In June 2004, the *Ashton* Plaintiffs voluntarily dismissed African Muslim Agency, Heritage Education Trust, Mena Corporation, Reston Investments, York Foundation, Sterling Charitable Gift Fund and Sterling Management Group.
[7] The Court also dismissed claims against alleged "SAAR Network" Defendants Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani, Iqbal Unus in *Federal Insurance* and Mar-Jac Poultry in *Ashton*, *Burnett* and *Federal Insurance*.

voluntarily by the *Ashton* plaintiffs, an acknowledgement by those plaintiffs that they cannot state a claims against those entities.  (*See* Ex. A.)  None of the complaints in any of these actions contain a single additional factual allegation against any Moving Defendant that was not already considered -- and rejected -- by the Court in granting the dismissals in *Ashton*, *Burnett* and *Federal Insurance* on September 21, 2005.[8]

Simply put, Plaintiffs have not and cannot assert that the Moving Defendants have ever knowingly or intentionally supported Al Qaida or any form of terrorism.  Because Plaintiffs have failed to come forward with even a single factual allegation connecting the Moving Defendants with terrorism financing or the events of September 11, 2001, the complaints all fail to state a claim against the Moving Defendants and must be dismissed.

## PROCEDURAL HISTORY

### I.    THE COURT'S JANUARY 18, 2005 DECISION

On January 18, 2005, the Court ruled on the motions to dismiss made by numerous defendants, including motions filed by the Moving Defendants to dismiss the *Federal Insurance* complaint for lack of personal jurisdiction and pursuant to Rule 12(b)(6).  The Court considered all of the *Federal Insurance* complaint's allegations concerning the existence of a so-called "SAAR Network" -- allegations identical to those asserted in these actions -- and concluded that Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title."  *In re Terrorist Attacks I*, at 823.

But, the Court found that its "analysis of the [Moving Defendant's] arguments in favor of 12(b)(6) dismissal depend on a predicate finding of which entities are subject to this Court's

---

[8] Moreover, since Plaintiffs have had an opportunity to replead, but have failed to add any new allegations, the Moving Defendants are also seeking to have the "without prejudice" dismissals granted to them by the September 21, 2005 Opinion converted to dismissals with prejudice.

personal jurisdiction and which entities--and under what circumstances--transferred money to terror fronts." *Id.* Accordingly, the Court denied the Moving Defendants' Rule 12(b)(6) motion to dismiss without prejudice, but noted that it could be "renewed upon completion of personal jurisdiction discovery."[9] *Id.* The Court also dismissed Plaintiffs' claims for Civil RICO, the Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and negligence. *Id.* at 837-38.

## II.   THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER

On September 21, 2005, the Court issued another Opinion and Order.  This time the Court dismissed eight of the Moving Defendants, African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action, and dismissed IIIT from *Ashton.  In re Terrorist Attacks II,* at *30.  The Court also dismissed five of the so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani and Iqbal Unus, and one of the "SAAR Network Entities" Mar-Jac Poultry, from *Ashton, Burnett* and *Federal Insurance.* *Id.*[10]

As an initial matter, the Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the Defendants moving for dismissal under Rule 12(b)(6).  *Id.* at *21.   The Court also dismissed all of the *Federal Insurance* Plaintiffs' claims for assault and battery and intentional infliction of emotional distress.  *Id.*  The Court noted that

---

[9] The Court permitted jurisdictional discovery because it found that some of the Moving Defendants "may be subject to personal jurisdiction in light of Plaintiffs' allegation that they purposefully directing [sic] its activities at the United States by transferring money to designated terrorists Youssef Nada and Ahmed Idris Nasreddin, particularly if they intended the money to support terrorism." *Id.* On May 11, 2005, the Moving Defendants voluntarily agreed to subject themselves to the jurisdiction of the Court in *Federal Insurance,* obviating the need for any jurisdictional discovery.

[10] The Court noted that it was using the phrase "SAAR Network Defendants" solely for convenience, at not because Plaintiffs had alleged the existence of such a network. *Id.* at n. 15.

it would review each complaint individually to determine if it states a claim for relief under the Antiterrorism Act ("ATA") and RICO.   The Court noted that if "Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal* Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have stated claims for intentional infliction of emotional distress.  Plaintiffs who are aliens will have also stated a claim for relief under the [Alien Tort Claims Act]." *Id.*

The Court analyzed the allegations against the "SAAR Network Defendants," noting that Plaintiffs' claims against the "SAAR Network Entities" in both the *Ashton* and *Burnett* actions "rely primarily on their allegations against the 'SAAR Foundation and network.'" *Id.* at *24. Plaintiffs alleged that the "SAAR Network" was formed "by a group of Muslim scholars and scientists" and that its "largest donor is the al Rajhi family of Saudi Arabia." *Id.* Plaintiffs alleged that "over one hundred 'affiliated organizations' are registered or are doing business at one of the SAAR Foundation's addresses in Herndon, Virginia, but many 'do not maintain a physical presence at that address, or elsewhere.'" *Id.* The complaints further alleged that many of the "SAAR Network" organizations' offices in Herndon were raided in March 2002 as part of Operation Greenquest to investigate "potential money laundering and tax evasion activities and their ties to terrorist groups such as ... al Qaeda as well as individual terrorists ... (including Osama bin Laden." [11] *Id.* These general and conclusory allegations are identical to the allegations that the Moving Defendants face in all of the MDL complaints.

---

[11] Plaintiffs seek to infer liability against the Moving Defendants from the existence of this highly publicized mass raid.  That raid, however, occurred over three and a half years ago and during that time the government has not handed down one indictment, made one arrest, designated any Moving Defendant as a sponsor of terrorism or frozen or seized a single account or asset.  To the contrary, the government has returned to the Moving Defendants all of the hundreds of boxes of documents and dozens of computers it confiscated during the raid.  The only reasonable inferences that can be drawn from the government's investigation and raid is that it has failed to yield even a single iota of evidence showing that any of the Moving Defendants are part of a "SAAR Network" or have anything to do with funding or supporting terrorism.

The Court dismissed the claims against the "SAAR Network" Defendants because these allegations were only a "legal conclusion that the SAAR Network entities conspired with the SAAR Network" and Plaintiffs failed to provide Defendants with "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *Id.* at \*25. The *Ashton* complaint against IIIT was dismissed by the Court because, although it contained the additional allegation that IIIT financed two charities, the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.*

The Court also dismissed the claims against Mar-Jac Poultry in *Ashton*, *Burnett* and *Federal Insurance*. The Court reviewed the allegations the *Federal Insurance* Plaintiffs made against Mar-Jac not only in the Complaint, but also the allegations in the RICO Statement applicable to SAAR Network Entities that Mar-Jac Poultry donated money to African Muslim Agency, which the Plaintiffs claim was later "laundered," and second, that it donated money to unnamed SAAR Network Entities, which was later forwarded to al Qaeda. *Id.* at \*25. The Court nevertheless dismissed the RICO claim against Mar-Jac Poultry because Plaintiffs did not allege that Mar-Jac had any role in directing an enterprise. *Id.* The Court dismissed the remainder of the complaint because it did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

The Court also dismissed the *Federal Insurance* action against the alleged "SAAR Network Executives" Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, and Iqbal Unus because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these

6

Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II* at *27.[12]

## ARGUMENT

## I. PLAINTIFFS' "AMENDED" PLEADINGS DO NOT COMPLY WITH THE COURT'S CASE MANAGEMENT ORDER[13]

On -- or in the case of *Continental*, after -- September 30, 2005, each of the Plaintiffs filed an "amended" or "consolidated" pleading, purportedly in compliance with paragraph 13 of the Court's Case Management Order #2 (the "CMO-2"). That provision states in pertinent part:

> Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously-filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint. On [September 30,][14] 2005, the plaintiffs shall file an amended complaint that includes all amendments made prior to that date, whether made pursuant to Rule 12(e) or otherwise.

Each of the Plaintiffs' "amended" or "consolidated" pleadings fails to comply with the CMO-2. For example, the *Burnett, Euro Brokers* and *World Trade Center* Plaintiffs all filed what they styled as a *"Notice Of Consolidation Of Pleadings."* These Notices list approximately 50 documents each. These exhibits total hundreds of pages, and include not only Plaintiffs' complaints, but also RICO Statements and More Definite Statements directed at various parties. Plaintiffs claim that each document on this list comprises their "consolidated complaints." The

---

[12] The Court did find that Plaintiffs' allegations that Jamal Barzinji provided Mr. Barzinji with "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda." *In re Terrorist Attacks II* at *27.

[13] This argument applies to all of the actions other than *Ashton*. The *Ashton* Plaintiffs' Sixth Amended Complaint complies with the Court CMO-2, and provides an example of what the other Plaintiffs ought to have done to comply with the CMO-2.

[14] The Case Management Order originally provided for amended complaints to be filed by July 31, 2005. That dated was extended until September 30, 2005 by Order of the Court dated July 27, 2005.

*New York Marine* Plaintiffs, on the other hand, simply attached numerous RICO Statements[15] --
some from other cases such as *Federal Insurance* -- to their complaint, and purported to
incorporate the allegations in those RICO Statements into the complaint by reference.  The
*Continental* plaintiffs took another route.  Not only was the *Continental* complaint filed on
October 6, 2005, a week late, it is an obvious, and poorly done, "cut and paste" job.  It contains a
250-page "addendum" which is single spaced, contains predominantly unnumbered paragraphs
(although some are numbered) and duplicative allegations and is in a variety of fonts and
formats.

Each of these "amended" and "consolidated" complaints violates not only the CMO-2
that clearly contemplated the filing of a single complaint in each case, but also Fed. R. Civ. P. 10
which requires complaints to have their allegations in sequentially numbered paragraphs.
Moreover, the attachments, exhibits and documents incorporated by reference to each of these
"amended" or "consolidated" pleadings violates Rule 8's requirement of a "short and plain"
statement, and imposes a burden on both the defendants and the Court to determine exactly what
is being alleged against whom that the CMO-2 was specifically designed to prevent.  *See*, *e.g.*,
*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A
complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive
pleading and makes it difficult for the trial court to conduct orderly litigation."); *Michaelis v.
Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir. 1983) (dismissing complaint because
"the style and prolixity of these pleadings would have made an orderly trial impossible."); 
*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 675 (9th Cir. 1981) ("The appellees herein

---

[15] The Moving Defendants note that many of the RICO Statements attached to Plaintiffs' complaints in these actions were filed late.  *See* CMO-2, ¶ 14.  However, because none of the RICO Statements made applicable to any
(footnote continued on next page)

have had to spend a large amount of time and money defending against Cissna's poorly drafted proceedings . . . The right of these defendants to be free from this costly and harassing litigation . . . must be considered."); *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) ("the law does not require, nor does justice demand, that a judge must grope through (thousands of) pages of irrational, prolix and redundant pleadings.") (citation and quotation omitted).

Therefore, as a sanction for failing to comply with the CMO-2, the Moving Defendants request that the Court strike all of the addendums, attachments and exhibits to any of these pleadings, and any document that is incorporated into the complaint by reference, and only consider those allegations that are contained in the actual complaint filed by Plaintiffs in determining the motions to dismiss.[16]  Alternatively, the Court should consider dismissal of the actions for failure to comply with the CMO-2.  *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (district courts have "inherent power to control their dockets and, in the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal of a case") (citations and quotation omitted); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 (2004) (courts should consider "dismissal with prejudice where the plaintiff has been given the opportunity to file an amended complaint and persists in filing a lengthy and confusing document.")

---

of the Moving Defendants contains a single substantive allegation against any of the Moving Defendants, they will not object to their late filing at this time.

[16] As described below, even if the Court were to consider the attached RICO Statements and various other documents attached to Plaintiffs' "amended" or "consolidated" complaints, it should still dismiss the Moving Defendants.

## II.    PLAINTIFFS' COMPLAINTS AGAINST THE MOVING DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.    THE ALLEGATIONS AGAINST EACH MOVING DEFENDANT

#### 1.    AFRICAN MUSLIM AGENCY

African Muslim Agency has been voluntarily dismissed from *Ashton*, and dismissed by the Court from *Burnett*. It is moving to dismiss the claims asserted against it in *New York Marine* and *Continental.*

In the *New York Marine* Complaint, African Muslim Agency is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and be an organization "operating within the SAAR Network" (¶ 203). African Muslim Agency is also alleged to be part of a "SAFA Group." (RICO Statement Applicable to African Muslim Agency, ¶5(b).)

In the *Continental* Complaint, African Muslim Agency is only listed in the caption. In the "addendum" to the complaint, it is also alleged to be a member of the "SAAR Network" (pp. 177, 223, 270, 379 and 400), and to be "under investigation for financing Al Qaeda" (p. 341).

#### 2.    GROVE CORPORATION

Grove Corporation has been dismissed by the Court from *Burnett*. It is moving to dismiss *Ashton, N.Y. Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *Ashton* Complaint, Grove Corporation is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR network." (¶ 269.)

In the *New York Marine* Complaint, Grove Corporation is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and alleged to be an organization "operating within the SAAR Network" (¶ 203).

In the *Euro Brokers* Complaint, Grove Corporation is only listed in the caption.  It is also alleged to be a member of the "Safa Group."  (RICO Statement, docket number 698, at Ex. A.)

In the *Continental* Complaint, Grove Corporation is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network."  (¶ 473.)  In the "addendum" to the Complaint, Grove Corporation is also alleged to be a member of the "SAAR Network."  (pp. 177, 223, 270, 379 and 400.)

In the *World Trade Center* Complaint, Grove Corporation is alleged to be one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network." (¶ 441.)  It is also alleged to be a member of the "Safa Group."  (RICO Statement, docket number 701, at Exhibit A.)

### 3.    HERITAGE EDUCATION TRUST

Heritage Education Trust has been dismissed voluntarily from *Ashton*, and dismissed by the Court from *Burnett.*  It is moving to dismiss *N.Y. Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *New York Marine* Complaint, Heritage Education Trust is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and be an organization "operating within the SAAR Network" (¶ 203).

In the *Euro Brokers* Complaint, Heritage Education Trust is only mentioned in the caption.  It is also alleged to have been involved in "SAAR Network" transactions that "bear all

the hallmarks of money laundering" and to be part of the "Safa Group." (RICO Statement, docket number 698, at ¶5(f) and Ex. A.)[17]

In the *Continental* Complaint, Heritage Education Trust is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.) In the "addendum" to the Complaint, Grove Corporation is also alleged to be a member of the "SAAR Network." (pp. 177, 223, 270, 378, 380 and 400.)

In the *World Trade Center* Complaint, Heritage Education Trust is alleged to be one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network." (¶ 441.) It is also alleged to have been involved in "SAAR Network" transactions that "bear all the hallmarks of money laundering" and to be part of the "Safa Group." (RICO Statement, docket number 701, at ¶5(f) and Ex. A.)[18]

### 4.    INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT

International Institute of Islamic Thought ("IIIT") has been dismissed by the Court in *Ashton* and *Burnett*. It is moving to dismiss *New York Marine* and *Continental*.

In the *New York Marine* Complaint, IIIT is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and to be an organization "operating within the

---

[17] The allegations in Paragraph 5(f) of the *Euro Brokers* RICO Statement, docket number 698, are virtually identical to those in the RICO Statement the *Federal Insurance* Plaintiffs filed against Mar-Jac Poultry. In its September 21, 2005 Opinion, the Court considered these allegations and found that they failed to state a claim against Mar-Jac Poultry. *In re Terrorist Attacks II* at *25. The Court held that the "RICO Claim against Mar-Jac Poultry is dismissed because it is not alleged that Mar-Jac had any role in directing an enterprise," and that the ATA claim was dismissed because the "*Federal* complaint does not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

[18] The allegations in Paragraph 5(f) of the *World Trade Center* RICO Statement, docket number 701, are virtually identical to those in both the RICO Statement the *Federal Insurance* Plaintiffs filed against Mar-Jac Poultry, and the *Euro Brokers* RICO Statement mentioned in note 17 *supra*.

SAAR Network" (¶¶ 203, 454.)  It is also alleged to have "lent material support to the Al Qaida

Enterprise." (RICO Statement, ¶ 5(b).)

In the *Continental* Complaint, IIIT is alleged to be a "[c]o-conspirator[], material

sponsor[], and/or aider[] and abettor[] of the SAAR network" (¶473), and to have "financed . . .

two Florida charitable organizations accused of being cells for Islamic Jihad in Florida" (¶

377.)[19]  In the addendum to the Complaint, IIIT is also alleged to be a member of the "SAAR

Network," (pp. 177, 223, 270, 378, 380, 400 and 412), and to be "under investigation for

financing Al Qaeda" (p. 341).

### 5.      MAR-JAC INVESTMENTS

Mar-Jac Investments has been dismissed from *Burnett*.  It is moving to dismiss *New York*

*Marine* and *Continental*.

In the *New York Marine* Complaint, Mar-Jac is alleged to "have aided and abetted,

conspired with, and provided material support and resources to, defendant al Qaida and/or

affiliated FTOs, associations, organizations or persons" (¶ 45), and be an organization "operating

within the SAAR Network" (¶ 203.)  Mar-Jac is also alleged to be a "donor to defendant SAAR

Foundation." (RICO Statement, ¶ 5(b).)

In the *Continental* Complaint, Mar-Jac is alleged to be a "material sponsor[] of

international terrorism" (¶ 360), and a "[c]o-conspirator[], material sponsor[], and/or aider[] and

abettor[] of the SAAR network" (¶ 473.)  In the "addendum" to the Complaint, Mar-Jac is also

alleged to be a member of the "SAAR Network."  (pp. 177, 223, 270, 379 and 399.)

---

[19] This allegation is identical to the allegation to Court found failed to state a claim against IIIT in *Ashton* because
plaintiffs did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether
and how these cells participated in or contributed to al Qaeda's agenda of terror." *In re Terrorist Attacks II*, at *25.

### 6.   MENA CORPORATION

Mena Corporation has been voluntarily dismissed from *Ashton*.  It is moving to dismiss *Burnett*, *New York Marine* and *Continental*.

In the *Burnett* Complaint, Mena is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network."  (¶ 267.)

In the *New York Marine* Complaint, Mena is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and be an organization "operating within the SAAR Network" (¶ 203).  It is also alleged to be a "donor to defendant SAAR Foundation."  (RICO Statement, ¶ 5(b).)

In the *Continental* Complaint, Mena is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network."  (¶ 473.)  In the "addendum" to the Complaint, it is also alleged to be a member of the "SAAR Network."  (pp. 177, 224, 270, 399 and 400.)

### 7.   RESTON INVESTMENTS

Reston Investments has been voluntarily dismissed from *Ashton*, and dismissed by the Court in *Burnett*.  It is moving to dismiss *New York Marine* and *Continental*.

In the *New York Marine* Complaint, Reston is alleged  "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and be an organization "operating within the SAAR Network" (¶ 203.)  It is also alleged to be a "donor to defendant SAAR Foundation." (RICO Statement, ¶5(b).)

14

In the *Continental* Complaint, Mena is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.)  In the "addendum" to the Complaint, it is also alleged to be a  member of the "SAAR Network" (pp. 177, 224, 270, 379, 399 and 400), and to be "under investigation for financing Al Qaeda" (¶ 341.)

### 8.    SAFA TRUST

Safa Trust has been dismissed from *Burnett*.  It is moving to dismiss *Ashton*[20], *New York Marine* and *Continental*.

In the *Ashton* Complaint, Safa Trust is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR network." (¶ 269.)

In the *New York Marine* Complaint, Safe Trust is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and alleged to be in the "SAAR Network" (¶¶ 202, 454 and 456.)  It is also alleged to have "lent material support to the Al Qaida Enterprise." (RICO Statement, ¶ 5(b).)

In the *Continental* Complaint, Safa Trust is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.)   In the "addendum" to the Complaint, it is also alleged to be a member of the "SAAR Network" (pp. 177, 224, 270, 378, 379. 380, 399 and 400), and to be "under investigation for financing Al Qaeda" (p. 341).

---

[20] Because Safa Trust was served with the Third Amended Complaint in *Ashton* by certified mail, service was not effective.  Safa Trust, however, is voluntarily appearing in *Ashton* to obtain a final dismissal from all of the MDL actions since it is clear that the complaint does not state a claim against it.  Safa Trust reserves it right to argue insufficiency of service of process in opposition to any efforts by Plaintiffs to hold Safa Trust in default.

### 9.   STERLING CHARITABLE GIFT FUND

Sterling Charitable Gift Fund has been voluntarily dismissed from *Ashton*.  It is moving to dismiss *Burnett*, *N.Y. Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *Burnett* Complaint, Sterling Charitable Gift Fund is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network."  (¶ 267.)

In the *New York Marine* Complaint, Sterling Charitable Gift Fund is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and to be an organization "operating within the SAAR Network" (¶ 203).  It is also alleged to have "lent material support to Al Qaida."  (RICO Statement, ¶ 5(b).)

In the *Euro Brokers* Complaint, Sterling Charitable Gift Fund is only mentioned in the caption.  It is alleged to be a member of the "Safa Group."  (RICO Statement, docket number 698, Ex. A.)

In the *Continental* Complaint, Sterling Charitable Gift Fund is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network."  (¶ 473.)  In the "addendum" to the Complaint, it is also alleged to be a member of the "SAAR Network."  (pp. 177, 224, 270, 378, 380, 399 and 400.)

In the *World Trade Center* Complaint, Sterling Charitable Gift Fund is alleged to be one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network."  (¶ 441.)  It is also alleged to be a member of the "Safa Group."  (RICO Statement, docket number 701, Exhibit A.)

### 10.   STERLING MANAGEMENT GROUP

Sterling Management Group has been voluntarily dismissed from *Ashton*.  It is moving to dismiss *Burnett*, *N.Y. Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *Burnett* Complaint, Sterling Management Group is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network." (¶ 267.)

In the *New York Marine* Complaint, Sterling Management Group is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and to be an organization "operating within the SAAR Network" (¶ 203).

In the *Euro Brokers* Complaint, Sterling Management Group is only listed in the complaint. It is also alleged to be a member of the "Safa Group." (RICO Statement, docket number 698, Ex. A.)

In the *Continental* Complaint, Sterling Management Group is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.) In the "addendum" to the Complaint, it is also alleged to be a member of the "SAAR Network." (pp. 177, 224, 270, 378, 380, 399 and 400.)

In the *World Trade Center* Complaint, Sterling Management Group is alleged to be one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network." (¶ 441.) It is also alleged to be a member of the "Safa Group." (RICO Statement, docket number 701, Ex. A.)

## 11.    YORK FOUNDATION

York Foundation has been voluntarily dismissed in *Ashton* and dismissed by the Court in *Burnett*. It is moving to dismiss *New York Marine* and *Continental*.

In the *New York Marine* Complaint, York Foundation is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons" (¶ 45), and be an organization "operating within the SAAR Network" (¶ 203).

17

In the *Continental* Complaint, York Foundation is alleged to be a "[c]o-conspirator[],

material sponsor[], and/or aider[] and abettor[] of the SAAR network."  (¶ 473.)   In the

"addendum" to the Complaint, it is also alleged to be a member of the "SAAR Network."  (pp.

177, 224, 271, 378, 379, 399 and 400.)

### B.    THESE ALLEGATIONS FAIL TO STATE A CLAIM AGAINST ANY OF THE MOVING DEFENDANTS IN ANY OF THE ACTIONS

These allegations detailed above are identical to -- or in many instances weaker than --

the factual allegations that the Court has already considered in issuing its September 21, 2005

Opinion and Order and found fail to state a claim against the Moving Defendants.  Therefore, all

of the claims against the Moving Defendants should be dismissed in all of the actions because

Plaintiffs only have offered "legal conclusion that [the Moving Defendants] conspired with the

SAAR Network" and Plaintiffs failed to provide the Moving Defendants with "notice of the

factual grounds on which Plaintiffs' claims of conspiracy are based."  *In re Terrorist Attacks II* at

*25.

### III.    THE COURT SHOULD CONVERT ITS SEPTEMBER 21, 2005 DISMISSALS OF THE MOVING DEFENDANTS WITHOUT PREJUDICE TO DISMISSALS WITH PREJUDICE

On September 21, 2005, the Court dismissed the *Burnett* plaintiffs' claims against

African Muslim Agency, Grove Corporation, Heritage Education Trust, International Institute of

International Thought, Mar-Jac Investments, Reston Investments, Safa Trust and York

Foundation without prejudice.  Since that Opinion and Order, the *Burnett* plaintiffs have had the

opportunity to amend their complaint with full knowledge of exactly what they would need to

plead a claim against the Moving Defendants and withstand a motion to dismiss.  Rather than

amend the complaint, the *Burnett* plaintiffs instead chose to file the above-described "Notice of

Consolidation of Pleadings" on September 30, 2005.  There are no new allegations in the

complaint itself against any of the Moving Defendants.  Moreover, even if the Court were to consider any of the documents referenced in the "Notice of Consolidation of Pleadings" – and for the reasons discussed above the Court should not – none of the More Definite Statements referenced in the "Notice" are addressed to any of the Moving Defendants.  Because the Plaintiffs' time to amend their complaint has now passed, and because the Plaintiffs have failed to make any new allegations against the Moving Defendants not already considered by the Court in its September 21, 2005 Opinion and Order, those dismissals should now be made with prejudice.

The Court also dismissed IIIT from *Ashton* without prejudice.  The *Ashton* plaintiffs properly amended their complaint on September 30, 2005.  However, their Sixth Amended Consolidated Master Complaint contains no additional allegations against IIIT.  Indeed, the Sixth Amended Complaint only mentions IIIT once, in paragraph 269.  Again, this Sixth Amended Complaint was filed by plaintiffs after the September 21, 2005 Opinion with full knowledge of exactly what they would need to plead against IIIT to withstand a motion to dismiss.  Since plaintiffs have alleged no additional facts against IIIT, and their time to re-plead has now run, the Court should dismiss IIIT from *Ashton* with prejudice.

## CONCLUSION

For all the foregoing reasons, the Moving Defendants respectfully request that the Court grant their Motion and dismiss all of the claims asserted against them in *Ashton, Burnett, N.Y. Marine, Euro Brokers, Continental* and *World Trade Center* with prejudice.

Respectfully submitted,


Dated:   October 21, 2005             By: /s/ Nancy Luque _____
                                          Nancy Luque (NL-1012)
                                          Jay Hanson (admitted *pro hac vice*)
                                          Steven K. Barentzen (SB-8777)
                                          DLA PIPER RUDNICK GRAY CARY US LLP
                                          1200 Nineteenth Street
                                          Washington, DC  20036-2247
                                          Tel: 202-861-3900
                                          Fax: 202-223-2085

                                          *Attorneys for African Muslim Agency, Grove*
                                          *Corporate, Inc., Heritage Education Trust,*
                                          *International Institute of Islamic Thought, Mar-*
                                          *Jac Investments, Inc., Mena Corporation, Reston*
                                          *Investments, Inc., Safa Trust, Sterling Charitable*
                                          *Gift Fund, Sterling Management Group, Inc., and*
                                          *York Foundation*

# EXHIBIT A

| | ASHTON | BURNETT | FEDERAL | NY MARINE | EURO BROKERS | CONTINENTAL | WTC |
|---|---|---|---|---|---|---|---|
| African Muslim Agency | **Voluntarily Dismissed 6/04.** | **Dismissed 9/21/05.** | MTD pending.[1] | Moving Defendant. | | Moving Defendant. | |
| Grove Corp. | Moving Defendant. | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| Heritage Education Trust | **Voluntarily Dismissed 6/04.** | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| IIIT | **Dismissed 9/21/05.** | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | | Moving Defendant. | |
| Mar-Jac Investments | | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | | Moving Defendant. | |
| Mena Corp. | **Voluntarily Dismissed 6/04.** | Moving Defendant. | MTD pending. | Moving Defendant. | | Moving Defendant. | |
| Reston Investments | **Voluntarily Dismissed 6/04.** | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | | Moving Defendant. | |
| Safa Trust | Moving Defendant. | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | | Moving Defendant. | |
| Sterling Charitable Gift Fund | **Voluntarily Dismissed 6/04.** | Moving Defendant. | MTD pending. | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| Sterling Management Group | **Voluntarily Dismissed 6/04.** | Moving Defendant. | MTD pending. | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| York Foundation | **Voluntarily Dismissed 6/04.** | **Dismissed 9/21/05.** | MTD pending. | Moving Defendant. | | Moving Defendant. | |
| Mar-Jac Poultry[2] | **Dismissed 9/21/05.** | **Dismissed 9/21/05.** | **Dismissed 9/21/05.** | MTD pending. | | **Dismissed pursuant to stipulation.[3]** | |

Key:

Blank boxes indicate that entity is not a party to that action.

Bolded entries signify either a voluntary or Court ordered dismissal.

"Moving Defendant" signifies that entity is a Moving Defendant in this motion to dismiss.

[1] On January 18, 2005, the Court denied the motions to dismiss the *Federal Insurance* action without prejudice.  New motions to dismiss ("MTD") were filed by all of the Moving Defendants in the *Federal Insurance* action on October 18, 2005.
[2] Mar-Jac Poultry is represented by separate counsel.  However, they are included in this status chart because they have been classified by both Plaintiffs and the Court as "SAAR Network" Defendants.
[3] It is our understanding that counsel for Mar-Jac Poultry and counsel for the *Continental* Plaintiffs have stipulated that the Court's September 21, 2005 as to Mar-Jac Poultry will apply in the *Continental* action.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2005, I caused an electronic copy of the foregoing Memorandum of Law in Support of Motion To Dismiss Of African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation Pursuant To Rule 12(B)(6) For Failure To State a Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)