UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re:  TERRORIST ATTACKS OF<br>SEPTEMBER 11, 2001 | )<br>) 03 MDL 1570 (RCC)<br>) ECF CASE<br>)<br>) 04 CV 1076<br>) 04 CV 1923<br>) |

*This document also relates to:*

    *Estate of O'Neill, et al. v. The Republic of Iraq, et al.,* Case No. 04 CV 1076 (RCC) (S.D.N.Y.)
    *Estate of O'Neill, et al, v. Al Baraka, et al.,* Case No. 04 CV 1923 (RCC) (S.D.N.Y.)

**REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS FILED BY DEFENDANTS MARTIN WACHTER,
ERWIN WACHTER, SERCOR TREUHAND ANSTALT, AND ASAT TRUST REG.**

Defendants Martin Wachter, Erwin Wachter, Sercor Treuhand Anstalt, and Asat Trust Reg. ("the Wachter defendants"), appearing specially for purposes of this motion, have moved the court to dismiss the claims against them pursuant to Fed. R. Civ. Proc 12(b)(5) for insufficiency of service of process and Fed. R. Civ. Proc. 12(b)(2) for lack of personal jurisdiction. They respectfully reply to the plaintiffs' opposition to their motion to dismiss as follows:

I. <u>The attempted service of process by registered mail was not permitted under the law of Liechtenstein, and therefore, it did not comport with Fed. R. Civ. Proc. 4(f).</u>

The declaration of Guntram Wolf makes it clear that *ex officio* service is required under the rules of the courts of Liechtenstein. The plaintiffs have not provided the court with any legal

authority from Liechtenstein to the contrary, so as in *Jung et al. v. Neschis,* 2003 WL 1807202 (S.D.N.Y.), this action should be dismissed.[1]

In further reply to the opposition filed by the plaintiffs, the Wachter defendants submit the attached declaration of Dr. Friedrich Wohlmacher, whose expert opinion on the law of Liechtenstein echoes that of Mr. Wolf. Dr. Wohlmacher outlines the civil and criminal consequences for those who attempt service in violation of the rules, and the fact that the rules include such sanctions clearly demonstrates that improper service is "prohibited" in Liechtenstein. Based upon the legal authority provided by Mr. Wolf and now Dr. Wohlmacher, it is clear that the method of service attempted by the plaintiffs contravened the law of Liechtenstien, and therefore was insufficient under Rule 4(f)(2)(c)(ii).

Plaintiffs engage in a lengthy linguistic exercise to support their argument that service by registered mail is appropriate under Fed. R. Civ. Proc. 4 (f)(2)(C)(ii). They suggest that the Wolf declaration that such service is not permitted under the law of Liechtenstein is insufficient to establish that it is "prohibited." The rules of Liechtenstein, just like the Federal Rules under which we operate, specify what <u>is</u> to be done, and they do not itemize the myriad possibilities of what would <u>not</u> comport with their requirements. The rules require that the parties "must" avail themselves of *ex officio* service; to the extent they provide that a particular procedure is <u>mandatory</u>, any other procedure would be improper, even in the absence of an express prohibition in the rules. *See e.g. Barbieri v. RAJ Acquisition Corp.,* 199 F. 3d 616, 619 (2nd Cir. 1999) (the term "shall" is mandatory and leaves no room for discretion by the trial court).

---

[1] The Wachter defendants note that the same issues of the law of Liectenstein have been raised by defendants Schreiber & Zindel Treuhand Anstalt, Frank O. Zindel, Engelbert Schreiber, Sr. and Engelbert Schreiber, Jr., and the Wachter defendants respectfully adopt and join the arguments advanced in the Schreiber and Zindel memoranda and request that the motions be grouped together for consideration.

The holding in *Resource Ventures, Inc., v. Resources Mgmt. Int'l, Inc.,* 42 F. Supp. 2d 423 (D. Del. 1999) does not support the plaintiffs' position. While that court noted that subsection 4(f)(2)(C)(ii) can be interpreted to permit service of process by alternative forms that are not specifically prescribed by the laws of a foreign county, the decision to approve service by registered mail in that case was based upon the opinion of an Indonesian attorney who noted that the bailiff in Indonesia has the discretion to rely upon registered mail himself. *Id.* at 430.  In Liechtenstein, the parties do not have such latitude.

Plaintiffs suggest that if service was insufficient, they should have yet another opportunity to complete it properly. They do not allege that they are in the process of seeking letters rogatory or that any effort to comply with the rules has been impeded or delayed: it simply has never been done. Given the court's prior determination that the 120 day extension requested on February 4, 2005 would be in fact the last, *see* Dkt. 671, plaintiffs have not provided the court with good cause for such an extension.[2]

---

[2] Plaintiffs cite *Echevarria v. Dep't. of Correctional Services,* 48 F. Supp. 2d 388, 392 (S.D.N.Y. 1999) for the factors the court should consider in determining whether good cause for an extension exists: 1) whether delay resulted from inadvertence or a reasonable effort to effect service was made; 2) prejudice to the defendant; and 3) whether plaintiff has moved for an extension of time to effect service.  Here, almost a year after the initial filing of the claims against the Wachters in December 2004, 8 ½ months after the court granted its "final" extension for service, and 5 months after other defendants from Liechtenstein first moved to dismiss on the same grounds, plaintiffs have not yet initiated the appropriate international procedures to serve a resident of Liechtenstein., and they have offered no reason for their failure to do so. *See Travers Tool Co., Inc. v. Southern Overseas Express Line, Inc.,* Case No. 98-8464, 2000 WL 194781 at *1 (S.D. N.Y. Feb. 17, 2000). (while flexible due diligence standard, and not 120 day limit, applied in case involving foreign defendants, court refused to grant extension when plaintiffs failed to spell out efforts made to serve in the past year). The court in *Echevarria* dismissed the action even though it involved a *pro se* plaintiff; here, plaintiffs have had the benefit of sophisticated counsel. Furthermore, given the large number of remaining defendants in the action, the dismissal will not unduly prejudice the plaintiffs.

II.  The complaint does not allege facts supporting personal jurisdiction over these defendants.

In support of their claim that this court has personal jurisdiction over the Wachter defendants, plaintiffs assert generally that "defendants knowingly facilitated financial transactions on behalf of Osama Bin Laden and others in order to further al Quaida's terrorist activities." Plaintiffs' Opposition to Wachter Defendants' Motion to Dismiss ("Opp.") at 17. The Wachter defendants appreciate that for purposes of this motion, the court must accept the plaintiffs' allegations on their face, but they wish to emphasize that it is their position, to be litigated in the future if necessary, that these claims lack any foundation in fact. The complaint speaks in generalities, and it does not allege any specific facts that would show that the Wachter defendants entered into a corrupt agreement with the terrorists whose actions lie at the heart of the complaint, or that they directed any activity towards the jurisdiction. While the Wachter defendants do not wish to minimize the horrors of the attack on New York City or the losses suffered by the plaintiffs, they submit that the mere repetition of the talismanic phrases "September 11," "Al Quaeda," and "conspiracy" are insufficient to confer personal jurisdiction in this case.

This court has already outlined the legal analysis to be applied in resolving the jurisdictional issues posed by these cases. The plaintiffs bear the burden of establishing a prima facie showing that jurisdiction exists, and while the court will read the complaint in the light most favorable to the plaintiffs, "[i]t will not … accept legally conclusory assertions or draw "argumentative inferences." *In re Terrorist Attacks on September 11, 2001, 349* F. Supp.2d 765, 804 (S.D.N.Y. 2005).

4

Plaintiffs assert that jurisdiction is proper under the New York long arm statute because they have alleged a conspiracy, and they emphasize that they must only allege specific facts "warranting the inference" that the defendants were members of a conspiracy and that the co-conspirators committed a tort in New York. Opp. at 21 (citing *In re Terrorist Attacks,* 349 F. Supp. 2d at 805). But this court and others have made it clear that "the bland assertion of conspiracy is insufficient to establish jurisdiction for purposes of section 302 (a)(2)." *Id.* at 805 (citations omitted).

> To warrant the inference that a defendant was a member of the conspiracy, plaintiffs must show that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the out-of-state defendant."

Id. at 805 (quoting *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp 1260, 1268-69). The complaint does not begin to satisfy these elements. Furthermore, it does not allege specific facts that would support the essential feature of any conspiracy: the corrupt agreement. *Id.* at 805.

Plaintiffs also seek to support their claim of jurisdiction by reliance on Fed. R. Civ. Proc. 4(k)(1)(D) and the claims brought under the ATA, a statute that provides for nationwide service of process. However, merely bringing claims under such a statute does not free the plaintiffs from the strictures of the minimum contacts test and a traditional due process analysis. *Id.* at 806. Plaintiffs must establish that the defendants had sufficient minimum contacts with the United States as a whole to warrant the exercise of jurisdiction over them, *id.*, but the complaint fails to allege any purposeful activities directed by these defendants towards the United States. Suggestions that their professional activities somehow benefited the terrorists is not enough; to

rely on the purposeful activities theory, "plaintiffs must allege some personal or direct involvement by the defendants in the conduct giving rise to their claims." *Id.* at 809.

The complaint is devoid of specific facts to support either the elements of conspiracy or the direct and personal participation needed for jurisdiction under the ATA. Plaintiffs have attached an Appendix to their opposition which purports to summarize the allegations against the Wachter defendants that are contained in the Iraq and Al Baraka complaints as well as a Supplementary RICO Statement. While the Wachter defendants reserve the right to argue that the RICO statement cannot be relied upon in opposition to a motion to dismiss for lack of jurisdiction, even the Appendix considered as a whole does not cure the pleading deficiencies here. [3]

Paragraphs 1 – 24, 29, 30, 33, 37 – 43, 46 – 48, 56, 69, and 71 – 75, or 44 out of 75 paragraphs in the Appendix, do not refer to the Wachter defendants specifically at all.[4]

Paragraphs 25 – 28, 31, 32, 35, 45, 49 – 55, 58, 60 – 63, and 68 simply assert generally that some or all of the Wachter defendants conspired with terrorists, aided and abetted terrorists,

---

[3] Plaintiffs cite cases in which the courts considered RICO statements in connection with motions to dismiss, App. at 27, n. 23, but in each of those cases, the court was ruling upon a motion to dismiss for failure to state a claim under RICO statute, not a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. Proc. 12(b)(2). *See McLaughlin v. Anderson,* 962 F.2d 187 (2nd. Cir. 1992); *Moses v. Martin,* 360 F. Supp. 2d 533 (S.D.N.Y. 2004); *Dempsey v. Sunders,* 132 F. Supp. 2d 222 (S.D.N.Y. 2001) (motion for judgment on the pleadings considered as if motion to dismiss); *A.Terzi Prods. V. Theatrical Protective Union, Local No. One,* 2 F. Supp.2d 485 (S.D.N.Y. 1998); *Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network,* No. CIV. A.99-4653, 2001 WL 41143 (E.D. Pa. Jan. 18 2001); *Allen v.New World Coffee, Inc.,* 2002 WL 432685 (S.D.N.Y. March 19, 2002); and *Mega Tech Int'l Corp. v. Al-Saghyir Establishment,* 1999 WL 269896 (S.D.N.Y. May 3, 1999) (12(b)(2) motion filed as well, but jurisdictional ruling based on presence of corporate officers in New York; RICO statement considered in connection with 12(b)(6) motion, and plaintiffs granted leave to amend).

[4] Paragraphs 60 and 61 do not refer to the Wachter defendants but only to "the Funds," defined earlier to include funds flowing from many charities and financial institutions, including the Wachter defendants.

6

laundered their money, or participated in a RICO enterprise, and they state that the terrorists used funds that came from the Wachter defendants, among others, to accomplish evil goals. The language in each paragraph is merely argumentative and conclusory[5]; there is no factual support offered for the sweeping allegations that they "conspired" or that they "participated" in the affairs of the alleged Enterprise. There is not one fact alleged that would support the conclusory allegation that they "knew" a deadly act was planned. Nowhere does the complaint allege that the terrorist activities eventually directed towards the United States were "for the benefit of," "at the direction or under the control of," or "at the request of or on the behalf of" the Wachter defendants, so the conspiracy theory for jurisdiction is unsupported. *See In re Terrorist Attacks,* 349 F. Supp. 2d at 805.

Paragraph 57 alleges only that the terrorists relied upon a global network of individuals and financial institutions, including the Wachter defendants, to secure material support. Paragraph 59 offers some historical background, and alleges that after al Quaida established itself in Afganistan, it "relied on well-placed financial facilitators" including the Wachter defendants, "who laundered funds from Islamic so-called charities…" The complaint does not set forth any facts that would tie the Wachters to any "so-called charities" or support the conclusion that money laundering took place, so even this lengthy discussion does not cure the jurisdictional problem.

---

[5] For example: "Upon information and belief, Defendants Martin Wachter and Erwin Wachter engaged in money laundering on behalf of Al Taqwa and Al Quaeda." App. Par. 35; or "The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving Defendants Martin Wachter, Erwin Wachter, Asat Trust Reg., Sercor Truehand Anstalt, and others, who have conspired for many years to attack the United States and murder United States' citizens. Defendants supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks…" App. Par. 45.

In paragraphs 64 – 67, the plaintiffs cite only their RICO statements in dealing with the Wachter defendants individually. Paragraph 64 alleges that Erwin Wachter, and 65 alleges that Martin Wachter, "has long known that accounts, under his control, which were maintained, and assisted, were being used to solicit and transfer funds to terrorist organizations…" The Wachters deny this allegation vehemently, but even if the court accepts it for purposes of this motion, this sentence alone cannot provide the foundation for imposing upon the Wachters the enormous burden of defending a lawsuit abroad. First of all, plaintiffs do not even cite the complaint for the assertions in paragraphs 64 an 65. Second, these paragraphs do not support the conclusory allegation of knowledge with any facts that would show knowledge. Third, the paragraphs do no include any facts that would support the existence of the agreement necessary for a conspiracy, much less any indication that the terrorists' actions in New York were for the benefit of, or at the behest of, the Wachters.  Finally, the paragraphs do not allege purposeful activity directed by the Wachters towards the United States.

With respect to defendant Asat Trust, plaintiffs indicate that its assets have been frozen by the Office of Foreign Asset Control, but they do not state on what grounds or what the operative standard would be for such a step. While they mention a connection with Al Taqwa, they fail to articulate any activity directed by the trust towards the United States

Under these circumstances, plaintiffs cannot support the exercise of New York long arm jurisdiction with a conspiracy analysis, and they cannot provide the personal involvement needed before the ATA can be the basis for jurisdiction either. Moreover, they cannot meet the requirements of due process because they have not alleged the necessary minimum contacts with the forum. *See In Re Terrorist Attacks,* at 810.

"In every case, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the form State, thus invoking the benefits and protections of its laws." *Id.* at 810(quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 474 (1985)). Plaintiffs' 75 paragraph Appendix does not once indicate that any of the Wachter defendants purposefully directed any activity towards the United States. Since "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," *id.,* at 811 (citations omitted), this court should refuse to extend its reach across international boundaries to force the defendants to respond to highly inflammatory and conclusory allegations on such a flimsy showing.

WHEREFORE, Defendants Martin Wachter, Erwin Wachter, Sercor Treuhand Anstalt, and Asat Trust Reg. respectfully submit that their motion to dismiss should be granted.

RESPECTFULLY SUBMITTED,


s/ David Gourevitch
David U. Gourevitch (SDNY #DG8795)
LAW OFFICE OF DAVID GOUREVITCH, P.C.
Tower 56, Second Floor
126 East 56th Street
New York, NY  10022
Tel:	(212) 355-1300
Fax:	(212) 355-1531
Email: david@gourevitchlaw.com

Barry Coburn
E-mail: bcoburn@troutcacheris.com
Amy Berman Jackson
E-mail: ajackson@troutcacheris.com
TROUT CACHERIS PLLC
1350 Connecticut Avenue N.W.
Suite 300
Washington, D.C. 20035
Tel: (202) 464–3000
Fax: (202) 464–3319


ATTORNEYS FOR MARTIN WACHTER,
ERWIN WACHTER, SERCOR TREUHAND
ANSTALT and ASAT TRUST REG.