**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
_____x

*In re Terrorist Attacks on September 11, 2001*          **03 MDL 1570**

_____x

This filing applies to:

> *Ashton, et al. v. Al Qaeda Islamic Army, et al., Case No. 02-CV-6977*
> *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment and Development*
> *    Corporation, et al., Case No.  04-CV-01923 (RCC)*
> *Thomas E. Burnett, Sr., in his own right as the Father of Thomas E. Burnett, Jr.,*
> *    et al., v. Al Baraka Investment and Development Corporation, et al. Case*
> *    No. 03-CV-5738*

MEMORANDUM OF LAW IN SUPPORT OF THE WORLD ASSEMBLY OF
MUSLIM YOUTH AND THE WORLD ASSEMBLY OF MUSLIM YOUTH
INTERNATIONAL IN SUPPORT OF THEIR MOTION TO DISMISS AGAINST ALL
PERSONAL INJURY PLAINTIFFS FOR FAILURE TO STATE A CLAIM AND
AGAINST BURNETT PLAINTIFFS FOR IMPROPER SERVICE AGAISNT

Omar T. Mohammedi (OTM 7234)
Law Firm of Omar T. Mohammedi, LLC
200 Madison Avenue, Suite 1901
New York, NY 10016
(212) 725-3846

*Attorneys for defendants*
*WORLD ASSEMBLY OF MUSLIM YOUTH*

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………….... 1

PRELIMINARY STATEMENT…………………….…………………………1

SUMMARY OF FACTS ……………………………………………….....2

LEGAL ARGUMENT ……………………………………………………... 3

I.    PLAINTIFFS VIOLATED THE CASE MANAGEMENT ORDER
      AND APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE
      THEREFORE THIS COURT SHOULD DISREGARD THEIR
      SEPTEMBER 30, 2005 FILINGS ………………………..................... 3

II.   THIS COURT MUST DISMISS THE COMPLAINT IN ITS
      ENTIRETY BECAUSE IT FAILS TO STATE A CLAIM
      AGAINST CAIR FOR WHICH RELIEF CAN BE GRANTED……… 4

      a.  Plaintiffs' allegations fall well short of the standard to
          overcome a motion to dismiss based on Fed. R. Civ. P. 12(b)6 …… 4

      b.  Plaintiffs' allegations that WAMY acted in concert with a 9/11
          conspiracy cannot stand as Plaintiffs' fail to plead proximate
          cause and mental state. ……………………………………………… 4

          1. Plaintiffs lack proximate cause ……...…………………….......... 5

          2. Plaintiffs fail to allege the proper mental state ………………...7

          3. Conclusory statements concealed as factual allegations will
             not survive a motion to dismiss …………………………………8

      c.  Plaintiffs' allegations are barred by the First Amendment…………9

          1. WAMY is protected because they exercised their Freedom of
             Speech………………………………………………………………9

          2. WAMY cannot be held liable because their right to freely
             associate is protected……………………………………………..10

      d.  Plaintiffs allegations are immaterial to the 9/11 attacks ………….. 11

**III.   PLAINTIFFS FAIL TO PROPERLY ALLEGE A CAUSE OF ACTION AGAINST WAMY** …………………………….. ………… 12

    **a.   Plaintiffs fail to properly state a claim under the Anti-Terrorism and Effective Death Penalty Act (the "ATA")**................. 12

    **b.   Plaintiffs fail to properly state a claim under the Torture Victim Protection Act ("TVPA")**………………………..................................... 12

    **c.   Plaintiffs have not properly stated a claim under a theory of Intentional Infliction of Emotional Distress.** ..................................... 13

    **d.   Plaintiffs have not stated a claim for Assault and Battery** ................13

    **e.   Plaintiffs have not properly stated a claim under the Alien Tort Claims Act** …………………………….......................................... 14

    **f.   Plaintiffs have not properly stated a claim under a theory of Property Damage** ……………………………………………….. 14

    **g.   Plaintiffs have not properly stated a claim under a theory of Wrongful Death and Survival** ………………………………………15

    **h.   Plaintiffs have not stated a claim for Negligence including Negligence Infliction of Emotional Distress**.............................16

    **i.   Plaintiffs' action under Conspiracy and Aiding and Abetting cannot stand**………………………………………………... 17

    **j.   Plaintiffs' independent cause of action for Punitive Damages cannot stand**………………………………………………………17

**IV.   PLAINTIFFS HAVE FAILED TO STATE A "RICO" CLAIMS AGAINST WAMY** …….......................................................................17

    **a.   Personal Injury Plaintiffs lack standing to bring RICO claims** …... 18

    **b.   Plaintiffs fail to state a claim under RICO 18 U.S.C. § 1962(a)** …... 18

    **c.   Plaintiffs have failed to state a claim under RICO 18 U.S.C. §§ 1962 (b), (c) and (d)** …………………..……………………………19

**V.    BURNETT PLAINTIFFS FAILED TO PROPERLY SERVE
        WAMY INTERNATIONAL AND NEVER SERVED WAMY IN
        SAUDI ARABIA AND THE TIME OF ACCOMPLISH SERVICE
        HAS LONG EXPIRED** …………………………………………….. 21

   **a.   Plaintiffs have not even attempted to serve WAMY SA, and plaintiffs'
          attempted service on WAMY USA is rife with defects** ………..…..  21

   **b.   Plaintiffs served process upon the wrong person** ………………….. 22

   **c.   Inconsistencies cast doubt over the validity of the attempted
          Service**……………………………………………………………… 23

   **d.   The Affidavit of Service should not be counted as proof of service
          of Plaintiffs Third Amended Complaint** ….…………………………23

   **e.   Defense counsel, to no avail, attempted to reach out to Burnett
          Plaintiffs on numerous occasions to resolve issues of service of
          process** ………………………………………………………………... 24

   **f.   Plaintiffs should not be allowed to benefit from their wrongdoing** ..24

**VI.   CONCLUSION** …………………………………………………... 25

## TABLE OF AUTHORITIES

AIG Manage Market Neutral Fund v. Askin Capital Management, L.P.
 197 F.R.D. 104 (S.D.N.Y. 2000) …………………………………………24

Am. Arbitration Ass'n, Inc., v. DeFonseca
 1996 WL 363128 (S.D.N.Y. June 28, 1996) ………….………………... 20

Arndt v. UBS AG
 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ……………………………………. 12

Attuahene v. City of Hartford
 10 Fed. Appx. 33 (2nd Cir. 2001) ……………………………………..4

Bao Ge v. Li Peng
 201 F. Supp. 2d 14, 20 (D.D.C. 2000),
 aff'd 35 Fed. Appx. 1 (D.C. Cir. 2002) …………………………………… 14

Bicher v. Eli Lilly & Co.
 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982) ………………5

Bodner v. Banque Paribus,
 114 F. Supp. 2d 117 (E.D.N.Y. 2000) …………………………………….. 5

Boim v. Quranic Literacy Institute
 291 F.3d 1000 (7th Cir. 2002) …………………………………………... 7

Brandenburg v. Ohio
 395 U.S. 444 (1969) ……………………………………………………..9

Browning v. Clinton
 292 F.3d 235 (D.C. Cir. 2002) …………………………………………..6, 8

Burnett v. Al Baraka Inv. & Dev. Corp.
 274 F. Supp. 2d 86 (D.D.C. 2003) …………………………………….....*passim*

Decker v. Massey-Ferguson, Ltd.
 681 F.2d 111 (2d Cir. 1982) …………………………………………… 8

De Jesus v. Sears, Roebuck & Co.
 87 F.3d 65 (2nd Cir. 1996) …………………………………………….8

Dineen v. Stramka
 228 F. Supp. 2d 447 (S.D.N.Y. 2002) …………………………………….. 15-16

Dubai Islamic Bank v. Citibank, N.A.
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ……………………………………….. 20

Dwares v. City of New York
    985 F.2d 94 (2nd Cir. 1993) ……………………………………………….. 6

FRA S.P.A. v. Surg-O-Flex of Amer., Inc.
    415 F. Supp. 421 (S.D.N.Y. 1976) ………………………………………... 4

Girden v. Sandals Int'l
    262 F.3d 195 (2nd Cir 2001) …………………………………………….. 13

Gordon v. Hunt
    116 F.R.D. 313 (S.D.N.Y. 1987) …………………………………………..24

Grove Press, Inc. v. Angleton
    649 F.2d 121 (2nd Cir. 1981) …………………………………………….17

Healy v. James
    408 U.S. 169 (1972) ……………………………………………………..10

Hecht v. Commerce Clearing House
    897 F.2d 21 (2nd Cir. 1990) ……………………………………………...20

Hishon v. King & Spalding
    467 U.S. 69 (1984) ………………………………………………………8

Howell v. New York Post Co.
    81 N.Y.2d 115, 612 N.E.2d 699 (1993) ……………………………………13

In re Livent, Inc. Noteholders Securities Litigation
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ……………………………………. 8

In re Terrorist Attacks on September 11, 2001
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ………………………………….. passim

In re Terrorist Attacks on September 11, 2001 II
    2005 WL 2296673 (S.D.N.Y. September 21, 2005) ………………………passim

Jackson v. BellSouth Telecomms.
    372 F.2d 1250 (4th Cir. 2004) …………………………………………... 2

Katzman v. Victoria's Secret
    167 F.R.D. 649 (S.D.N.Y. 1996) ………………………………………….. 18

Kowal v. MCI Communication Corp.
   16 F.3d 1271 (D.C. Cir. 1994) …………………………………………..8

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.
   191 F.3d 229 (2nd Cir. 1999) …………………………………………18

McCarthy v. Olin Corp.
   119 F.3d 148 (2nd Cir 1997) …………………………………………..16

McKibben v. Credit Lyonnais
   1999 U.S. Dist. LEXIS 12310, 1999 WL 604883 (S.D.N.Y. 1999) ……….24

Meroni v. Holy Spirit Ass'n for the Unification of World Christianity
   506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dept. 1986) ……………….............. 15

Miele v. United States
   800 F.2d 50 (2nd Cir. 1986) ………………………………………….. 14

MTV Networks v. Curry
   867 F. Supp. 202 (S.D.N.Y. 1994) …………………………………….... 4

NAACP v. Claiborne Hardware Co.
   458 U.S. 866 (1982) …………………………………………………..10-11

National Union Fire Ins. Co. v. Sun
   1994 U.S. Dist. LEXIS 11934, 1994 WL 463009 (S.D.N.Y. 1994) ……….24

People v. Summers
   407 N.Y.S.2d 53, 64 A.D.2d 658 (App. Div. 1978) …………………….. 14

Papasan v. Allain
   478 U.S. 265 (1986) ……………………………………………………. 6

Pittman v. Grayson
   149 F.3d 111 (2nd Cir. 1998) …………………………………………5

Redtail Leasing, Inc. v. Bellezza
   1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ………………………………20

Reves v. Ernst & Young
   507 U.S. 170 (1993) …………………………………………………..20

Schmidt v. Fleet Bank
   16 F. Supp. 2d 340 (S.D.N.Y. 1998) …………………………………… 19, 21

Sepenuk v. Marshall
   2000 WL 1808977 (S.D.N.Y. Dec. 8, 2000) ……………………………… 17

Small v. Lorillard Tobacco Co.
    94 N.Y. 43, 720 N.E.2d 892 (1999) …………………………………………..17

Smith v. County of Erie
    743 N.Y.S.2d 649 (App. Div. 2002) …………………………………………17

Smith v. Islamic Emirate of Afghanistan
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ……………………………………….. 7

Spadafore v. Gardner
    330 F.3d 849 (6th Cir. 2003) ………………………………………………… 6

United States v. Ruiz
    115 F.3d 1492 (1st Cir. 1997) ……………………………………………….. 15

U.S. Fire Ins. Co. v. United Limousine Serv., Inc.
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) ……………………………………….. 19

von Bulow v. von Bulow
    634 F. Supp. 1284 (S.D.N.Y. 1986) …………………………………………. 18

**Statutes and Rules:**

Alien Tort Claims Act ……………………………………………………….. 14

Anti Terrorism & Effective Death Penalty Act (ATA) ……………………… 5, 7, 12

     18 U.S.C. § 2333(a) ………………………………………………….. 5, 12

     18 U.S.C. § 2339A(b) …………………………………………………... 5

C.P.L.R. § 311(a)(1) (2004) …………………………………………… 23

Fed. R. Civ. P. 4(e)(1) ………………………………………………… 21

Fed. R. Civ. P. 4(h) ……………………………………………………... 21-22

Fed. R. Civ. P. 4(m) …………………………………………………… 25

Fed. R. Civ. P. 12(b)(5) ………………………………………………… 1, 25

Fed. R. Civ. P. 12(b)(6) ………………………………………………… *passim*

Fed. R. Civ. P. 12(e) …………………………………………………… *passim*

First Amendment of U.S. Constitution …………………………………….9-11

N.Y.C.P.L.R. § 215 (3) (McKinney 2002) ………………………………….... 13

N.Y.E.P.T.L.   § 5-4.1(1) (McKinney 1999 & Supp. 2005) ……………………… 15

     § 11-3.3 (McKinney 2001) …………………………………………... 15

Racketeer Influenced and Corrupt Organization (RICO) …………………………*passim*

     18 U.S.C. § 1962(a) …………………………………………………..*passim*

     18 U.S.C. § 1962(c) …………………………………………………..*passim*

     18 U.S.C. § 1962(d) …………………………………………………..*passim*

Torture Victim Protection Act (TVPA) …………………………………… 12-13

Va. Code Ann. § 8.01-299 (2004) …………………………………………….22

## INTRODUCTION

Defendants' World Assembly of Muslim Youth, in Riyadh, Saudi Arabia ("WAMY SA"), and the World Assembly of Muslim Youth International ("WAMY USA") were named as defendants in the above referenced actions.[1] Through the undersigned counsel, WAMY SA and WAMY USA appear for the limited purpose of arguing this motion to dismiss plaintiffs' actions for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) against all captioned Personal Injury Plaintiffs, as well as for improper service of process and/or no service against <u>Burnett</u> Plaintiffs pursuant to Fed. R. Civ. P. 12(b)(5). For all reasons stated herein, the motion is meritorious and should be granted in all respects.

## PRELIMINARY STATEMENT

<u>Ashton</u>, <u>Burnett</u>, and <u>O'Neill</u> Plaintiffs (hereinafter consolidated as "Personal Injury Plaintiffs") each bring actions for personal injury and accuse defendants of helping to sponsor the heinous atrocities of September 11th. This memorandum will be addressing allegations contained in 1) <u>Ashton</u> Plaintiffs' Sixth Amended Consolidated Master Complaint (hereinafter "<u>Ashton</u> Compl."), 2) <u>O'Neill</u> Plaintiffs' newly filed First Consolidated Complaint (hereinafter "<u>O'Neill</u> Compl."), and 3) <u>Burnett</u> Plaintiffs' Amended Complaint (hereinafter "<u>Burnett</u> Compl.").

The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage. <u>Burnett v. Al Baraka Inv. & Dev. Corp.</u>, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003). Because "it is difficult to imagine uglier or more serious charges" than those asserted in these cases, "fairness requires extra-careful scrutiny of plaintiffs'

---

[1] The <u>Burnett</u> Compl. and the <u>O'Neill</u> Compl. list both WAMY and WAMY USA in their captions list both WAMY and WAMY USA in their captions (i.e. listing WAMY USA as an "aka" of WAMY). The <u>Ashton</u> Compl. lists only WAMY as a defendant. For purposes of this memorandum, we will be responding to plaintiffs' allegations as if alleged against both WAMY and WAMY USA, even though plaintiffs fail to make that distinction. For the sake of brevity any reference to "WAMY" made herein by Defense Counsel is a reference to both WAMY as well as to WAMY USA.

allegations as to any particular defendant, to ensure that…no inferences are accepted that are unsupported by the facts….” <u>Burnett</u>, 274 F. Supp. 2d at 86.

“Extra-careful scrutiny” of the plaintiffs' complaint reveals that the allegations against WAMY lack substance, and are based on speculation, inference and innuendo. <u>Id</u>. The above-captioned complaints should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state claims upon which relief can be granted. <u>See</u> <u>In re In re Terrorist Attacks on September 11, 2001</u>, 2005 WL 2296673, at *18 (S.D.N.Y. 2005) (hereinafter “<u>Terrorist Attacks II</u>”) (citing <u>Jackson v. BellSouth Telecomms.</u>, 372 F.2d 1250, 1270-71 (4th Cir. 2004) (while pleading a <u>prima facie</u> case was not necessary to survive a motion to dismiss, a pleading that contains “only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based” does not have even a remote chance of survival).

## SUMMARY OF FACTS

WAMY SA is the largest Muslim youth organization in the world. WAMY SA's purpose is to strive for world peace and the betterment of mankind through education. It has dedicated its efforts and resources towards guaranteeing human rights of all people while working against violence. WAMY SA engages in youth education and activities, humanitarian efforts and relief missions. In 2002 WAMY SA sponsored 24,603 orphans in more than 22 countries. In that same year WAMY SA built 44 schools and dug 921 wells to alleviate shortage of water in rural countries. WAMY SA's other humanitarian work includes sponsoring programs to rehabilitate prisoners and assist them in joining schools and universities with distant learning programs.

WAMY USA was established as a Virginia corporation in 1992. It is a wholly-owned organization incorporated to fulfill the common humanitarian goals it shares with WAMY SA. In the aftermath of 9/11, WAMY SA and WAMY USA engaged other religious communities in interfaith activities by sponsoring open houses in Mosques, Churches and Synagogues.

**LEGAL ARGUMENT**

**I. PLAINTIFFS VIOLATED THE CASE MANAGEMENT ORDER AND APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE, THEREFORE THIS COURT SHOULD DISREGARD THEIR SEPTEMBER 30, 2005 FILINGS.**

<u>Burnett</u> Plaintiffs filed what they called a Notice of Consolidated Pleadings that lists approximately fifty documents that they would like incorporated into their complaints. Among these documents are RICO Statements as well as other plaintiffs' Complaints.

<u>O'Neill</u> Plaintiffs filed 12(e) More Definite Statements directed at various parties. They attempt to incorporate the allegations contained in the 12(e) Statement by reference into their Complaint. Most of these statements were nothing more than a performed cut-and-paste job from their previous RICO Statement filings.

Except for <u>Ashton</u> Plaintiffs, each of the plaintiffs' amended or consolidated pleadings not only fails to comply with Case Management Order 2 ("CMO 2"), which clearly contemplates the filing of a single complaint in each case, but also Fed R. Civ. P. 8, 10.[2] The attachments, exhibits and documents purported to be incorporated by reference violate Fed. R. Civ. P. 10, which requires plaintiffs to list their allegations in sequentially numbered paragraphs. In addition these filings violate Fed. R. Civ. P. 8, which calls for a "short and plain" statement. <u>See, e.g.</u>, <u>Vicom, Inc. v. Harbridge Merchant Services, Inc.</u>, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A complaint that is a prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.), <u>Michaelis v. Nebraska Sate Bar. Assoc.</u>, 717

---

[2] Case Management Order No. 2 ¶ 13 requires the filing of an amended complaint containing all amendments. Had it been acceptable to the Court for plaintiffs to merely let their amended allegations stand in their 12(e) Statements, (<u>i.e.</u> without the filing of an amended complaint), the Court could have simply left off the last sentence in ¶ 13 and allowed plaintiffs to amend their complaints via more definite statements. The Court however chose not to do so. The last sentence in ¶ 13 ensures that in each action, all allegations may conveniently be found consolidated in one place. Plaintiffs' actions have frustrated this purpose. While Case Management Order ¶ 13 allows the plaintiffs to amend their complaints via 12(e) Statements, it also requires that plaintiffs, by July 31, 2005 [later amended to September 30, 2005], file amended complaints that integrate all of their amendments. In addition, plaintiffs' action violates Case Management Order ¶ 14 which specifically gives <u>Federal Insurance</u> Plaintiffs, but no others, the right of using RICO Statement allegations as amendments to their complaint. Plaintiffs' proposed amendments should therefore be disregarded.

F.2d 437, 439 (8th Cir. 1981) (dismissing the complaint for the same reasons). For the foregoing reason this Court should strike Burnett Plaintiffs' Notices of Consolidation as well as O'Neill Plaintiffs' 12(e) Statements.[3]

## II. THIS COURT MUST DISMISS THE COMPLAINT IN ITS ENTIRETY BECAUSE IT FAILS TO STATE A CLAIM AGAINST WAMY FOR WHICH RELIEF CAN BE GRANTED.

### a. Plaintiffs' allegations fall well short of the standard to overcome a motion to dismiss based on Fed. R. Civ. P. 12(b)6.

Plaintiffs have merely alleged in a conclusory manner that all defendants including WAMY provided support to al Qaeda, which led to the 9/11 attacks.[4] The Court should dismiss the complaints against WAMY because generalized blanket allegations against numerous defendants are legally insufficient to state a claim against a particular defendant. See Attuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (In "lumping all Defendants together in each claim and providing no factual basis to distinguish their conduct, plaintiffs' complaint failed to satisfy [the Federal Rules]'s minimum standard"). For the court to rule otherwise, it would be contravening a most basic principle of fairness.

> [F]airness requires extra-careful scrutiny of plaintiff[s'] allegations as to any particular defendant, to ensure that he or it does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [complaint].

Burnett, 274 F. Supp. 2d at 104.

---

[3] Since Fed. R. Civ. P. 12(e) filings are designed to correct "only unintelligibility in a pleading," and WAMY has raised no issue of unintelligibility, the Court should disregard O'Neill Plaintiffs' filings. FRA S.P.A. v. Surg-O-Flex of Amer., Inc., 415 F. Supp. 421, 427 (S.D.N.Y. 1976); See also MTV Networks v. Curry, 867 F. Supp. 202, 207-08 (S.D.N.Y. 1994) ("Motions for more definite statements are generally disfavored").

[4] See, e.g., Ashton Compl. at ¶ 478, Burnett Compl. at ¶ 651, O'Neill Compl. at ¶ 178.

**b. Plaintiffs' allegations that WAMY acted in concert with a 9/11 conspiracy cannot stand as plaintiffs fail to plead proximate cause and mental state.**

Plaintiffs' strategy is to rely on theories of concerted action liability (i.e. conspiracy and aiding and abetting) in order to find a causal link between WAMY and the 9/11 attacks. Under New York law, and as stated by this Court, concerted action liability is based on the principle that "all those who, in pursuance of a common plan or design to commit a tortuous act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer…are equally liable with him." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005) (citing Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998) quoting Bichler v. Eli Lilly & Co., 55 N.Y.2d 571, 580, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982)).

Plaintiffs allege not a single concrete fact or circumstance demonstrating that WAMY knowingly participated in any activity to support the 9/11 terrorist attacks. In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 826 (Judge Casey opining that plaintiffs have to allege that Defendants "[1] knowingly and intentionally [2] provid[ed] material support to al Qaeda). Plaintiffs' reliance on theories of concerted action liability to find a causal link between WAMY and 9/11 must therefore fail. See Bodner v. Banque Paribus, 114 F. Supp. 2d 117, 125 (E.D.N.Y. 2000) (noting the Second Circuit's dismissal of complaints which "plead conspiracy in vague and conclusory terms and which do not allege specific instances of misconduct in furtherance of the conspiracy").

*1.   Plaintiffs lack proximate cause.*

The Anti-Terrorism Act (the "ATA") provides a "civil remedy for '[a]ny national of the United States injured in his or her person, property or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs.'" Terrorist Attacks II, 2005 WL 2296673, at *19 (citing 18. U.S.C. § 2333(a)). Plaintiffs fail to factually allege any element of the ATA's "material support" of terrorism section. Id. (citing 18 U.S.C. § 2339A(b)).

Plaintiffs can muster no sufficiently factual allegations to support an inference that WAMY provided any "financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal explosives, personnel, transportation, [or] other physical assets, to any known 9/11 terrorist in furtherance of the 9/11 attacks." Id. Nor apparently can plaintiffs muster any sufficiently factual allegations to support the inference that WAMY conspired to do so.

Without factual allegations it is impossible to infer the manner by which WAMY supposedly caused plaintiffs' injuries. Conspiracy claims must be specifically pleaded, "vague and conclusory allegations unsupported by material facts will not be sufficient to state" a claim against WAMY. See Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003). A plaintiff "should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy'" Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993 (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8-109 to 8-110 (2d ed. 1992).

Without sufficient factual allegations describing wrongful conduct, WAMY has been put on no notice of the claims against it.[5] Terrorist Attacks II, 2005 WL 2296673, at *18; Browning, 292 F.3d at 242 ("The Court need not accept inferences drawn by [the] plaintiff if such inferences are unsupported by the facts set out in the complaint"); see also, Papasan v. Allain, 478 U.S. 265, 286 (1998).

Plaintiffs' complaints against WAMY allege status rather than any specific conduct and should therefore be disregarded. It is impossible for WAMY to defend itself against those statements which allege no wrongful act taken by WAMY in furtherance of the 9/11 attacks. Without factually alleging that defendants "'engaged in some act of helping the illegal activities,'"

---

[5] See, e.g., Ashton Compl. at ¶¶ 203, 211 (alleging merely the Prince Sultan and Salman donated to WAMY), Burnett Compl. at ¶¶ 362, 231 (alleging that WAMY was suspected, yet never charged, by the FBI in 1996), and O'Neill Compl. at ¶ 111 (attaching substantial weight to such extraneous allegations as WAMY's status as a Muslim charity).

plaintiffs simply cannot maintain their claim. See Terrorist Attacks II, 2005 WL 2296673, at *20 (citing Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1023-24 (7th Cir. 2002)). Since plaintiffs have failed to give WAMY sufficient notice of the claims against them, their actions cannot be allowed to stand.

### 2. *Plaintiffs fail to allege the proper mental state.*

Aside from proximate cause, to be liable under either conspiracy or aiding and abetting, the defendant must have "know[n] the wrongful nature of the primary actor's conduct." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 826 (citing Burnett, 274 F. Supp. 2d. at 123). Otherwise the standard would be one of strict liability, a policy generally disfavored by this Court. See Terrorist Attacks II, 2005 WL 2296673, at *19 (adopting the Seventh Circuit's requirement that plaintiffs plead knowledge on the part of defendants); see also Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1012 (7th Cir. 2002) ("To hold the defendants liable for donating money without knowledge of the donee's intended criminal use of the funds would impose strict liability. Nothing in the language of the statute or its structure or history supports that formulation"), see also Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n. 12 (S.D.N.Y. 2003) (along with proximate cause plaintiff "must show knowledge of and an intent to further the criminal acts) (emphasis added).

Assuming, arguendo, that plaintiffs sufficiently allege that WAMY took part in conduct that facilitated the 9/11 attacks, plaintiffs have nevertheless utterly failed to allege facts demonstrating how WAMY could have possibly known that it was contributing to the 9/11 attacks. In the context of the ATA, federal courts have recognized that making donations to an alleged terrorist group, without "knowledge of and intent to further the payee's violent criminal acts," could not sustain a tort claim. Boim, 291 F.3d at 1012. Plaintiffs' conspiracy theory cannot stand without allegations that WAMY acted with knowledge that it was furthering the 9/11 attacks. In re Terrorist Attacks on

September 11, 2001, 349 F. Supp. 2d at 833 (Judge Casey holding that plaintiffs must put forth factual allegations showing that defendants "had to know" that they were contributing to terrorism) (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)).

### 3. Conclusory statements concealed as factual allegations will not survive this motion to dismiss.

Under Fed. R. Civ. P. 12 (b)(6), a court may dismiss a complaint if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). This Court does not need to accept allegations where the facts are not well pleaded; defendants are entitled to fair and adequate notice of the claims against them. See Terrorist Attacks II, 2005 WL 2296673, at *18. Moreover this Court "need not accept inferences drawn by [the] plaintiff if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

> Rule 12(b)(6) motion practice does not demand that every allegation in the complaint must be deemed true, but only factual assertions. This test would exclude pleadings expressing legal conclusions, speculation and unsubstantiated allegations 'so broad and conclusory as to be meaningless.'

In re Livent, Inc. Noteholders Securities Litigation, 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001) (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120 (2d Cir. 1982)) (emphasis added).

The Personal Injury complaints against WAMY have failed to satisfy these threshold requirements; they have not pled sufficient facts showing that WAMY knowingly undertook actions that proximately caused plaintiffs' injuries. Plaintiffs have, however, crafted a number of futile theories in their attempts to impose liability on WAMY. They have endeavored 1) to tie WAMY to other individuals[6] and entities[7], 2) to use alleged WAMY publications as evidence of ties to the 9/11

---

[6] See Ashton Compl. at ¶ ¶ 203, 264 (concluding but failing to allege facts showing how these alleged relationships constitute knowledge and facilitation of the 9/11 attacks by WAMY), at ¶ 163 (concluding but failing to factually

8

attacks[8], 3) to allege that WAMY's mere status as an Islamic organization is enough to create suspicion[9], 4) to put blame on WAMY via its various charitable activities[10], and 5) use other bald conclusory allegations to pin fault on WAMY.[11] All of these attempts must fail because from none of these allegations can one reasonably infer that WAMY in any way proximately caused plaintiffs' injuries.

### c. **Plaintiffs' allegations are barred by the First Amendment.**

#### *1. WAMY is protected because they exercised their Freedom of Speech.*

Many of the activities alleged against WAMY, when taken as true, constitute "speech or conduct ordinarily entitled to protection under the First [] Amendment []." NAACP v. Claiborne Hardware Co., 458 U.S. 866, 907 (1982); see also Brandenburg v. Ohio, 395 U.S. 444, 457 (1969)

---

allege 1) the nature of these alleged connections, or 2) that WAMY contributed to the SJRC with knowledge that it was furthering the 9/11 attacks and plaintiffs' injuries), Burnett Compl. at ¶¶ 231, 232 (concluding but failing to allege facts that WAMY distributed any terrorist manuals or that WAMY did so with knowledge that it was facilitating the 9/11 attacks or that the manuals in any way caused the 9/11 attacks, O'Neill Compl. at ¶ 50.

[7] See Ashton Compl. at ¶¶ 264, 269, 363, ¶ 382 (concluding but failing to factually allege 1) any connections between WAMY and these entities, 2) the nature of WAMY's connection to these entities, or 3) that WAMY contributed to these entities with knowledge that it was furthering the 9/11 attacks and plaintiffs' injuries). Plaintiffs further fail to put forth sufficient facts to show that these entities played any role in the 9/11 attacks). See Burnett Compl. at ¶ 229, O'Neill Compl. at ¶ 124.

[8] See Ashton Compl. at ¶ 300 (concluding but failing to allege factually that the biography proximately caused plaintiffs' injuries or even that WAMY contributed to this biography with knowledge that it was furthering the 9/11 attacks), at ¶ 301, Burnett Compl. at ¶ 233 (concluding but failing to allege that this encyclopedia in some way contributed to plaintiffs' injuries or that WAMY published it with knowledge that it was facilitating the 9/11 attacks).

[9] See Ashton Compl. at ¶ ¶198, 200, 233, Burnett Compl. at 362 (concluding but failing to provide any factual allegations to support the inference that WAMY knowingly facilitated the 9/11 attacks), O'Neill Compl. at ¶ 24 (concluding but failing to allege any facts to demonstrate any such actions, or that WAMY does so knowingly).

[10] See Ashton Compl. at ¶ 301 (concluding but failing to allege any connection at all, knowing or otherwise, between the 9/11 attacks and WAMY), Burnett Compl. at ¶ 231 (attempting but failing to tie WAMY to the 9/11 attacks by alleging that a "terrorist manual" was found in a WAMY envelope. WAMY publishes thousands of envelopes every year and cannot be held liable for the various ways that random people might put these envelopes to use), O'Neill Compl. at ¶ 67 (concluding but failing to allege any factual connection between plaintiffs' injuries and WAMY's status as a charitable organization or its status as a receiver of donations), O'Neill Compl. at ¶ 50.

[11] See Ashton Compl. at ¶ 203 (stating but failing to allege facts that, if true, constitute knowing contribution to the 9/11 attacks), at ¶ 301 (concluding but failing to 1) offer name or identification for this alleged employee, and 2) allege that the WAMY employee's actions proximately caused plaintiffs' injuries.

9

(protecting speech that does not create a "clear and present danger"). The First Amendment acts as a bar because there are no allegations to suggest that WAMY's alleged speech incited, or for that matter was likely to incite, the 9/11 attackers.

Even assuming, arguendo, that WAMY advocated hate through its alleged publications, plaintiffs never allege that WAMY advocated any violent act to occur imminently in the days leading up to the 9/11 attacks, nor that the attackers were acting pursuant to any alleged incitement or "imminent lawless action."[12] NAACP, 458 U.S. at 907. And even assuming, arguendo, that WAMY published hate literature against "Jews, Christians, and civilians in Israel," or literature glorifying "jihad,"[13] plaintiffs never allege that this supposed hate literature led to any imminent danger for the victims of the 9/11 attacks. Plaintiffs do not allege that the 9/11 attackers were acting pursuant to any alleged WAMY speech. Therefore WAMY's alleged speech falls within First Amendment protections.

Even assuming the 9/11 attackers acted directly based on some speech advocated by WAMY, which is certainly not the case, such advocacy would be protected because plaintiffs do not allege that WAMY advocated the 9/11 attacks to occur imminently in the days leading up to September 11, 2001.[14] See NAACP, 458 U.S. 927-29. Plaintiffs' allegations must therefore be dismissed.

### 2. *WAMY cannot be held liable because their right to freely associate is protected.*

The Supreme Court has long held that imposing guilt by association violates the First Amendment. See, e.g., Claiborne Hardware, 458 U.S. at 919-20; Healy v. James, 408 U.S. 169, 186 (1972) (disapproving of the denial of rights and privileges solely because of association with an unpopular organization). If WAMY were held liable for its alleged connections to individuals and

---

[12] See, e.g., Ashton Compl. at 300, O'Neill Compl. at ¶ 124, Burnett Compl. at ¶ 229. See also Burnett Compl. at ¶ 231.

[13] See, e.g., Ashton Compl. at ¶ 300, Burnett Compl. at ¶ 233, O'Neill Compl. at 125.

[14] See, e.g., Ashton Compl. at ¶ 301, Burnett Compl. at ¶ 233, O'Neill Compl. at ¶ 125, Ashton Compl. at ¶ 300, Burnett Compl. at ¶ 229, and O'Neill Compl. at ¶ 124.

entities without sufficient factual allegations of wrongdoing, WAMY's First Amendment right to

associate would be infringed upon.[15] Even assuming, <u>arguendo</u>, that plaintiffs' allegations of

association against WAMY are true, plaintiffs have no factual basis to allege that these associations

somehow caused the 9/11 attacks, nor do plaintiffs allege that WAMY undertook these associations

with knowledge that they were aiding the 9/11 attacks. <u>See</u> <u>Terrorist Attacks II</u>, 2005 WL 2296673,

at * 19 (requiring plaintiffs to plead that defendants knew of al Qaeda's illegal activities and that they

desired to have those activities succeed). Accordingly, the Court should dismiss these allegations.

### d. <u>Plaintiffs' allegations are immaterial to the 9/11 attacks.</u>

Plaintiffs have attempted to distract this Court's attention from the material issues at hand by

leveling allegations that have no bearing at all on the 9/11 attacks or on the plaintiffs' injuries.

Plaintiffs make allegations that, 1) even if taken to be true, would be nonetheless immaterial to the

plaintiffs' injuries,[16] and 2) are plain factual misrepresentations.[17] In light of the plaintiffs' factual

inaccuracies, the Court should disregard these misrepresentations.[18]

---

15 <u>See</u>, <u>e.g.</u>, <u>Ashton</u> Compl. at ¶ 384, <u>Burnett</u> Compl. at ¶ 156, <u>O'Neill</u> Compl. at ¶ 111 (A joint fundraising event in an of itself imposes no liability for the 9/11 attacks), <u>Ashton</u> Compl. at ¶ ¶ 203, 264 (alleging but failing to show facts to show how an event that occurred 33-years ago can constitute knowing facilitation of the 9/11 attacks by WAMY).

[16] <u>See</u> <u>Ashton</u> Compl. at ¶ 203. <u>See also</u> <u>Ashton</u> Compl. at ¶ 300, 301, and <u>Burnett</u> Compl. at ¶ 231, 232, ¶ 362 (even if true, it is irrelevant because plaintiffs have failed to allege that any investigation has turned up any evidence of any wrongdoing on the part of WAMY. WAMY has never been charged with <u>any</u> wrongful conduct).

[17] <u>See</u> <u>Ashton</u> Compl. at ¶ 300, <u>Burnett</u> Compl. at ¶ 229, 230 and <u>O'Neill</u> Compl. at ¶ 50, 124 (all three of which allege ties to Dr. Adel Batterjee). Dr. Batterjee never held any official or executive position with WAMY. <u>See</u> Declaration of Adel Batterjee (hereinafter "Batterjee Decl."), attached hereto as Exh. A, at ¶ 9. <u>See also</u> Declaration of Saleh Al-Wohaibi (hereinafter "Al-Wohaibi Decl."), attached hereto as Exh. B, at ¶ 14 and ¶ 15.

Benevolence International Foundation (hereinafter "BIF") and Benevolence Foundation (hereinafter "BF") are completely separate organizations. <u>See</u> Batterjee Decl., Exh. A, at ¶ 9, Al-Wohaibi Decl., Exh. B, at ¶ 10. WAMY worked on various projects with BF. BF was a Saudi Organization that undertook humanitarian causes within the Kingdom. BF has never been designated as a SDGT. <u>See</u> Al-Wohaibi Decl., Exh. B, at ¶ 9. WAMY has no connection, past or present, with BIF. <u>See</u> Al-Wohaibi Decl., Exh. B, at ¶ 8, and ¶ 9. WAMY's sporadic sponsorship of BF ended in 1993. <u>Id.</u> at ¶ 11. BF ceased to exist in 1996. <u>Id.</u> at ¶ 12. In a letter to Batterjee WAMY notified him of the confusion between his BIF and BF due to the similarity in logo. <u>See</u> WAMY's February 26, 1993 letter to Adel Batterjee, attached hereto as Exh. C.

[18] Jim Kreindler, attorney for <u>Ashton</u> Plaintiffs' alleges that OFAC has designated WAMY as a terrorist entity. <u>See</u> June 14, 2005 Transcript of Oral Arguments, at p. 113. WAMY is not, nor has WAMY ever been, designated a

## III.  PLAINTIFFS FAIL TO PROPERLY ALLEGE A CAUSE OF ACTION AGAINST WAMY

Other than injury, plaintiffs have failed to plead the necessary elements of their causes of action. For the reasons explained below, each of plaintiffs' causes of action are worthy of dismissal for failure to properly state a claim.

### a.  Plaintiffs fail to properly state a claim under the ATA. [19]

To adequately plead the provision of material support of terrorism under the ATA, according to this Court a plaintiff would have to allege that a defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities. See Terrorist Attacks II, 2005 WL 2296673, at *20 (citing 18. U.S.C. § 2333(a)), In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 828. As discussed in at length in Part I.b, supra, Plaintiffs' complaint alleges no knowledge on the part of WAMY, nor any factual allegations to support the conclusion that WAMY engaged in some act of helping the 9/11 attacks to occur.

### b.  Plaintiffs fail to properly state a claim under Torture Victim Protection Act. [20]

A cause of action under the TVPA is established when an "'individual who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to torture or extrajudicial killing.'" See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 828 (quoting Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004) ("UBS AG is not an individual, but a corporation, and as such cannot be sued under the TVPA")). Plaintiffs' claims under the TVPA should be dismissed because 1) plaintiffs have not alleged that WAMY was acting under

---

terrorist entity by OFAC or any other governmental office. In addition, WAMY is not a parent organization of International Islamic Relief Organization ("IIRO") as was also misstated by plaintiffs' counsel. See Al-Wohaibi Decl., Exh. B, at ¶ 21.

[19] Ashton, Burnett and O'Neill Plaintiffs all assert claims under the ATA.

[20] Ashton, Burnett and O'Neill Plaintiffs all assert claims under the TVPA.

the color of law of any nation, and 2) WAMY is not "an individual" and therefore may not be sued under the TVPA. Id. See also Terrorist Attacks II, 2005 WL 2296673, at * 20.

### c. Plaintiffs have not properly stated a claim under a theory of Intentional Infliction of Emotional Distress.[21]

The statue of limitations to file an intentional infliction of emotional distress claim is one year. In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 829, N.Y.C.P.L.R. § 215(3) (McKinney 2002). O'Neill Plaintiffs' intentional infliction of emotional distress claim should be dismissed because plaintiffs' complaint was filed on March 10, 2004, more than one year after the September 11, 2001 attacks. See Terrorist Attacks II, 2005 WL 2296673, at *20.

Intent is required for all intentional torts, which includes intentional infliction of emotional distress. See Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"). As stated in Part I.b supra, plaintiffs allege an insufficient causal connection between WAMY and the 9/11 attacks. In addition plaintiffs have not pled any facts, let alone sufficient facts, to support any mental state, let alone that WAMY acted intentionally to cause plaintiffs' injuries. This Court should therefore dismiss the plaintiffs' common law intentional infliction of emotional distress.

### d. Plaintiffs have not stated a claim for Assault and Battery.[22]

"Under New York law, 'an assault is an intentional placing of another person in fear of imminent harmful or offensive contact. A battery is an intentional wrongful physical contact with another person without consent....'" Girden v. Sandals Int.l, 262 F.3d 195, 204 (2nd Cir. 2001)

---

[21] Burnett and O'Neill Plaintiffs both assert claims under a theory of Intentional Infliction of Emotional Distress.

[22] Ashton Plaintiffs are the only ones of the above-captioned plaintiffs to assert claims under a theory of Assault and Battery.

13

(internal citation omitted). The gravamen of an action for assault and battery under New York law is the intent to make contact. See Miele v. United States, 800 F.2d 50, 53 (2d Cir. 1986).

This Court should dismiss the plaintiffs' common law assault and battery tort claims because plaintiffs have not pled any facts, let alone sufficient facts, to support an allegation that WAMY took any intentional act to cause contact that would bring about plaintiffs' injuries. Nor have plaintiffs been able to proximately connect any conduct by WAMY to the 9/11 attacks. All plaintiffs have done is state legal conclusions in an attempt to pass them off as factual allegations. See argument contained in Part I.a-c, supra, and cases cited therein.

### e.  Plaintiffs have not properly stated a claim under the Alien Tort Claims Act. [23]

Plaintiffs' claims under the Alien Tort Claims Act should be dismissed because liability can only be imposed if (i) the defendant is a state actor or acting under color of state law, or (ii) the defendant engaged in "extreme forms of egregious misconduct." Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 20 (D.D.C. 2000), aff'd 35 Fed. Appx. 1 (D.C. Cir. 2002) (per curiam). Plaintiffs have not properly alleged WAMY to be an actor on behalf of the state of Saudi Arabia. Even assuming arguendo that plaintiffs had pled state actor status, nowhere do they allege that WAMY acted under state law or that WAMY engaged in the requisite "extreme forms of egregious misconduct." Id.

### f.  Plaintiffs have not properly stated a claim under a theory of Property Damage. [24]

Property damage requires a showing of tortious intent, as well as a showing of proximate cause. People v. Summer, 407 N.Y.S.2d 53, 54, 64 A.D.2d 658 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).

---

[23] Burnett and O'Neill Plaintiffs both assert claims under the Alien Tort Claims Act.

[24] Ashton Plaintiffs are the only ones of the above captioned plaintiffs to assert claims under a theory of Property Damages. Only two of the Ashton Plaintiffs have standing to bring a property destruction claim, Mayore Estates LLC and 80 Lafayette Associates, LLC.

As explained above, plaintiffs fail to properly allege any mental state against WAMY. Plaintiffs have alleged no intentional conduct by WAMY to enter and/or wrongfully use plaintiffs' property. Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claim, since plaintiffs have not pled facts sufficient to show that WAMY associated with or participated in the conspiracy resulting in the property damage, let alone that the property damage was a foreseeable act furthered by participation in this alleged conspiracy. Cf. Terrorist Attacks II, 2005 U.S. Dist. LEXIS 20841, at *63 (plaintiffs must sufficiently plead that WAMY acted in concert with the 9/11 highjackers), see also United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997). Therefore this Court should dismiss plaintiffs' property damage claim.

### g. **Plaintiffs have not properly stated a claim under a theory of Wrongful Death and Survival.** [25]

As discussed in Part I.b., supra, Plaintiffs have pled no facts to support an allegation that WAMY "caused the decedent's death," or that it committed a tort against the decedent prior to death. See Meroni v. Holy Spirit Ass'n for the Unification of World Christianity, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dept. 1986) (both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent). In addition, plaintiffs do not sufficiently allege that "[WAMY] supported, aided and abetted or conspired with the 9/11 terrorists," which gave rise to wrongful death and survival claim. In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 829 (citing N.Y.E.P.T.L. § 5-4.1(1)(McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim). Moreover plaintiffs failed to allege a sufficient causal or proximate nexus between any action by [WAMY] and [plaintiffs' deaths]." Plaintiffs' common law tort claims for wrongful death and survival must be dismissed. Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002).

---

[25] Ashton, Burnett and O'Neill Plaintiffs all assert claims of Wrongful Death and Survival.

**h.  Plaintiffs have not stated a claim for Negligence including Negligent Infliction of Emotional Distress.** [26]

To establish a claim for negligence under New York Law, "'a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate cause of that breach." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 830.

Plaintiffs' allegations are insufficient to make out negligence a claim because WAMY owed no duty of care to the plaintiffs. Plaintiffs do not allege or identify a duty owed to plaintiffs by WAMY. See Terrorist Attacks II, 2005 WL 2296673, at *20 (dismissing plaintiffs' negligence claims against defendants because plaintiffs neither allege nor identify a duty of care) (citing In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 831); see also Burnett, 274 F. Supp. 2d at 108.

Plaintiffs make no sufficient allegation that WAMY owed to plaintiffs any duty of care. The closest that plaintiffs come is in O'Neill Compl. at ¶ 169 and Burnett Compl. at ¶ 666, where they allege in general terms that all defendants owed a duty to all plaintiffs. However there is no such thing as a general duty to control the conduct of third persons to prevent them from causing injury to others. McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997). In addition, plaintiffs' allegations fall short of alleging that WAMY proximately caused the 9/11 attacks. See Part I.b, supra, and cases cited therein. Without sufficient factual allegations pertaining to proximate cause and/or duty, no negligence claim including negligent infliction of emotional distress, may stand. Therefore this Court should dismiss all negligence claims against WAMY.

---

[26] Burnett and O'Neill Plaintiffs both assert claims under a theory of negligence including negligent infliction of emotional distress.

### i.   Plaintiffs' action under Conspiracy and Aiding and Abetting cannot stand.[27]

No independent cause of action exists under New York law for Conspiracy.  Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort").  As the Second Circuit has previously stated, "[i]t is textbook law that New York does not recognize an independent tort of conspiracy damages may not be awarded on the conspiracy count itself."  Sepenuk v. Marshall, No. 98-CV-1569-RBC, 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citations omitted).  See also Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 720 N.E.2d 892, 898 (N.Y. 1999) (finding that no independent cause of action exists for aiding and abetting).  Therefore this Court should follow the well-settled law and dismiss the plaintiffs' independent claims for conspiracy and for aiding and abetting.

### j.   Plaintiffs' independent cause of action for Punitive Damages cannot stand.[28]

Plaintiffs' punitive damages counts should be dismissed because no independent cause of action exists under New York law for this claim.  Punitive damages are merely a form of relief, not an independent cause of action.  Smith v. County of Erie, 743 N.Y.S.2d 649, 651, 295 A.D.2d 1010, 1011 (App. Div. 2002).

## IV. PLAINTIFFS HAVE FAILED TO STATE A RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ("RICO") CLAIM AGAINST WAMY[29]

### a.   Personal Injury Plaintiffs lack standing to bring RICO claims.

---

[27] Burnett and O'Neill Plaintiffs both assert claims under theories of conspiracy and aiding and abetting as separate causes of action.

[28] Ashton, Burnett and O'Neill Plaintiffs all assert claims under a theory of punitive damages as an independent cause of action.

[29] Ashton Plaintiffs are the only ones of the Personal Injury Plaintiffs that have not asserted any RICO claims. In their complaint, Burnett Plaintiffs bring a cause of action under Civil RICO, pursuant to 18 U.S.C. § 1962 (a), (c), and (d). See Burnett Compl. at ¶¶ 689-714. Plaintiffs however have filed no RICO Statement against WAMY. Rule 7 of Judge Casey's Individual Rules mandates that a RICO Statement "must be file[d] and serve[d] upon the opposing party … in [a specified] form." Consequently Burnett Plaintiffs' RICO claims against WAMY should be dismissed.

Plaintiffs bring their RICO claims solely under a theory of personal injury. It is clear that Personal Injury Plaintiffs cannot recover under RICO because they cannot allege injury to "business or property." Laborers  Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999), see also von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986).

A "[c]ivil RICO is an unusually potent weapon…[and] 'courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (quoting Katzman v. Victoria's Secret, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)). Therefore, and as a matter of law, plaintiffs' RICO claims should be "flushed out" and dismissed. Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for lack of standing).[30]

### b.  Plaintiffs have failed to state a claim under RICO 18 U.S.C. § 1962(a).

Plaintiffs have brought a RICO action pursuant to § 1962(a).[31]  This Court has already ruled that without critical elements plaintiffs have failed to state a claim under 1962(a). In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (citing 18 U.S.C. § 1962 (a)).[32]

Plaintiffs are required to allege racketeering income as opposed to mere fundraising. In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (requiring racketeering income as opposed to regular fund raising).

Plaintiffs fail to sufficiently allege anywhere in their complaint or RICO Statement that 1) WAMY used or invested any racketeering income in order to acquire, establish or operate any

---

[30] It should be noted that this Court has thus far dismissed all RICO allegations against all defendants.

[31] See O'Neill Compl. at ¶ ¶176-180.

[32] Under § 1962(a) it is unlawful "to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise, which is engaged in, or the activities of which affect, interstate or foreign commerce."

interest in <u>any</u> enterprise,[33] 2) the manner in which the racketeering income was allegedly invested, and[34] 3) any proximate connection between the injury and the alleged investment.[35]

Assuming <u>arguendo</u> that plaintiffs had pled a RICO enterprise, plaintiffs must nonetheless plead facts, rather than mere conclusions, to show that each defendant knowingly agreed to participate in the alleged conspiracy. <u>Schmidt v. Fleet Bank</u>, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998). Plaintiffs RICO Statement is devoid of any facts to show that WAMY knew that it agreed to participate in an alleged conspiracy to benefit the enterprise, or that the actions of the alleged conspiracy were the proximate cause of the 9/11 attacks. <u>See</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827. For the foregoing reasons, without these basic pleading requirements, plaintiff's civil RICO claims should be dismissed.

### c. **Plaintiffs failed to state a claim under RICO 18 U.S.C. §§ 1962 (b), (c) and (d).**

This Court stated very succinctly the four elements under §§ 1962 (c) to be established as to each individual defendant: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" <u>Id.</u> (citing <u>U.S. Fire Ins. Co. v. United Limousine Serv., Inc.</u>, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004). Paragraph (d) states that it "shall be unlawful for any person to conspire to violate any provision of § 1962(a)-(c)." <u>See</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827 (citing 18 U.S.C. § 1962(d)).

---

[33] <u>See</u> <u>O"Neill</u> RICO Stmt. §§ 6.b, 6.d, and 6.e respectively. Plaintiffs at one point even allege that WAMY "is separate and distinct from" the enterprise. <u>See</u> <u>O'Neill</u> RICO Stmt. § 6.e. What plaintiffs never allege is that WAMY acquired or established or operated an interest in the enterprise.

[34] <u>See</u> <u>O'Neill</u> RICO Stmt. at § 14. Plaintiffs further allege, without basis and with no factual support, that "[WAMY] also relied heavily on certain imams … willing to divert the *Zakat* [funds]"(emphasis in original). <u>Id.</u>

[35] <u>See</u> <u>O'Neill</u> RICO St. § 5.b (merely concluding that WAMY had knowledge of the enterprise in which it was participating), § 5.g (merely concluding that WAMY knowingly and intentionally provided financial services to terrorist organizations including al Qaida), § 14 (merely concluding that WAMY knowingly donated funds to the enterprise, knowingly agreed to the objective of the overall conspiracy, and knowingly agreed to aid and abet the illegal activities of the enterprise.).

19

Plaintiffs have brought a RICO action pursuant to § 1962 (b), (c), and (d).[36] Plaintiffs do not allege "anything approaching active 'management or operation.'" See Terrorist Attacks II, 2005 WL 2296673, at * 20. They merely stated in conclusory manner that defendants may have assisted al Qaeda.[37]

Assuming that plaintiffs have pleaded an enterprise, "under Reves v. Ernst & Young, 507 U.S. 170, 179, (1993), they do not allege that WAMY had 'some part in directing' the 'operation or management' of the enterprise itself to be liable." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (citing Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 158, 164 (S.D.N.Y. 2003)); see also 2005 WL 2296673, at *20 (citing Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997). "A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." Redtail Leasing, Inc., 1997 WL 603496 at *5.

In addition, plaintiffs have not alleged that 1) WAMY was a central figure in the underlying scheme for conspiracy liability under § 1962(d), nor have they alleged 2) "'some factual basis for a finding of a conscious agreement among the defendants.'" See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (citing Am. Arbitration Ass'n, Inc., v. DeFonseca, No. 93 Civ. 2424(CSH,) 1996 WL 363128, at *7 (S.D.N.Y. June 28, 1996) quoting Hecht v. Commerce Clearing House, 897 F.2d 21, 26 n. 4 (2d Cir. 1990)) (emphasis added). Plaintiffs still allege no facts sufficient to show that the alleged conspiracy was the proximate cause of the 9/11 attacks.[38]

Plaintiffs fail to allege, under paragraph (b), that WAMY used "racketeering activity" to maintain an interest in any enterprise. Their Complaint and RICO Statement contains nothing more

---

[36] See O'Neill RICO Stmt. at ¶ 1.

[37] See O'Neill RICO Stmt. at § 5.b.

[38] See, e.g., O'Neill RICO Stmt. § 15.

20

than the "[b]are and conclusory allegations [that] are insufficient to withstand a motion to dismiss."[39]

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998). Moreover, at times plaintiffs'

allegations are wholly immaterial to the 9/11 attacks.[40] For the foregoing reasons, all RICO

Statements filed against WAMY should be dismissed.

## V. BURNETT PLAINTIFFS FAILED TO PROPERLY SERVE WAMY USA AND NEVER SERVED WAMY SA AND THE TIME TO ACCOMPLISH SERVICE HAS LONG EXPIRED.

### a. Plaintiffs have not even attempted to serve WAMY SA, and plaintiffs' attempted service on WAMY USA is rife with defects.

The applicable rules governing service of process on a corporation are simple, strait-forward

and familiar. Accordingly Fed. R. Civ. P. 4(h) provides:

> Unless otherwise provided by federal law, service upon a domestic or foreign corporation . . . from which a waiver of service has not been obtained and filed, shall be effected:

> (1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant . . .

Under Fed. R. Civ. P. 4(e)(1):

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in any judicial district of the United States:

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State. . .

Hence, proper commencement of the present lawsuit against WAMY SA and WAMY USA

requires compliance either with Fed. R. Civ. P. (4)(h)(1) or the applicable provisions of either New

---

[39] See, e.g., O'Neill RICO Stmt. § 5.b (failing to allege any facts to support these allegations). See also RICO Stmt. § 6.f (concluding without stating any factual support for these allegations), RICO Stmt. §§ 7-8 (concluding without alleging any facts to show that actual racketeering activity actually took place, or that the alleged racketeered funds actually went to support the 9/11 attacks).

[40] These allegations, if taken as true, have no bearing whatsoever to the 9/11 attacks. See RICO Stmt., Exh. A Question # 2.

York or Virginia law.  As set forth, and notwithstanding several options on how to accomplish this most basic requirement of procedural fairness, plaintiffs have utterly failed to provide WAMY USA with proper notice of their lawsuit. In addition, plaintiffs have never even attempted to serve WAMY SA. The fact that this failure persists almost three years after the commencement of their suit is egregious, especially when 1) there has been no attempt to evade service by WAMY, and 2) after WAMY has voluntarily reached out to plaintiffs to resolve this issue.[41]

### b. **Plaintiffs served process upon the wrong person.**

It is clear from the face of the purported affidavit of service, dated December 23, 2002, that plaintiffs have failed to meet the requirement of Fed. R. Civ. P. 4 for serving WAMY USA. The Proof of Service indicates that a Caroline Sodder was served with a Summons & Amended Complaint.[42]  It refers to Ms. Sodder as a "[p]erson in Charge Authorized to Accept Service."[43]

Ms. Sodder, however, has absolutely no connection whatsoever with WAMY USA.  She is neither an officer, nor director, nor a registered agent of WAMY USA. Moreover, Ms. Sodder has never even been employed by WAMY USA. In fact she has never been an agent in any capacity whatsoever of the WAMY corporation.

Thus, Ms. Sodder is not:

an officer, a managing or general agent, or . . . any other agent authorized by appointment or by law to receive service of process. . . .

FRCP R. 4(h)(1).  Nor is she an "officer, director, or registered agent of [the] corporation." Va. Code Ann. §8.01-299(1) (2004). Similarly, she is not "an officer, director, managing or general agent, or cashier, or assistant cashier or . . . other agent authorized by the appointment or by law to receive

---

[41] See Letters dated April 8, 2004, June 29, 2004, both attached hereto as Exh. D; see also declaration of Maher Hanania (hereinafter "Hanania Decl."), attached hereto as Exh. E, at ¶¶ 5-9.

[42] See purported affidavit of service, Exh. F.

[43] Id.

service." CPLR §311(a)(1) (2004). Consequently, Ms. Sodder's lack of any affiliation whatsoever with WAMY renders plaintiffs' attempted service defective.

### c. Inconsistencies cast doubt over the validity of the attempted service.

The proof of services is additionally inaccurate. It states that on December 23, 2002, the same date process was supposedly personally served in Alexandria, Virginia, a second copy was mailed from Los Angeles, California by the same individual who claims to have personally served process.[44] Not surprisingly, WAMY never received any summons and complaint by mail, or otherwise.[45] In addition, while the applicable rule clearly calls for an affidavit to be filed, the document filed by plaintiffs lacks a seal and signature of a notary public.

Moreover, the purported affidavit of service that was filed by Burnett Plaintiffs, docket no. 274 of the D.C. case, had attached with it an incomplete affidavit of service for Anwar Hajjaj. Dr. Hajjaj at the time was President of Taibah International, an organization with no ties to WAMY.  The Affidavit of Service makes it clear that Dr. Hajjaj was being served in his capacity as an executive of Taibah, not in his current capacity as an employee of WAMY USA.

### d. The Affidavit of Service should not be counted as proof of service of Plaintiffs' Third Amended Complaint.

On August 1, 2003 plaintiffs filed their Complaint in the Southern District of New York but failed to serve WAMY SA and WAMY USA.[46] In addition plaintiffs filed no proof of service.

---

[44] Proof of service was made instead pursuant to California law, a jurisdiction with no connection whatsoever to either the party purportedly served or the lawsuit. See purported affidavit of service, attached hereto as Exh. F (addressed to Hajjaj as President of Taibah).

[45] See Hannania Decl., Exh. E, at ¶ 9. See also purported affidavit of service, Exh. F.

[46] Plaintiffs' First Amended Complaint in the Southern District of New York was filed on September 3, 2003.

### e. **Defense counsel, to no avail, attempted to reach out to Burnett Plaintiffs on numerous occasions to resolve issues of service of process.**

Almost three years have passed since plaintiffs filed their Third Amended Complaint. To date, WAMY USA still has not been properly served and WAMY SA has not been served at all. In good faith defense counsel offered ample opportunity to plaintiffs to serve WAMY USA and WAMY SA. Plaintiffs however were non-responsive.

### f. **Plaintiffs should not be allowed to benefit from their wrongdoing.**

The standard for a proper dismissal for failure to timely effectuate service has been well settled in the Second Circuit.[47] The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." AIG Managed Market Neutral Fund v. Askin Capital Management, L.P., 197 F.R.D.104, 108 (S.D.N.Y. 2000). Plaintiffs offered no good cause as to why defendants were not properly served, nor did plaintiffs request an extension of time. It was actually Defense Counsel who offered the plaintiffs extra time to properly effectuate service. Plaintiffs not only failed to timely and properly serve, but they went so far as to ignore Defense Counsel's repeated communications to bring the matter to their attention.[48] McKibben v. Credit Lyonnais, 1999 U.S. Dist. LEXIS 12310, *11, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999)

---

[47] Improper service can only be excused where there is good cause. National Union Fire Ins. Co. v. Sun, 1994 U.S. Dist. LEXIS 11934, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994). In determining whether the plaintiff has demonstrated good cause, courts will weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay. Id. Further, the court will consider whether the plaintiff was conscientious about complying with the Rules, including, but not limited to, whether plaintiff moved under FRCP 6(b) for an extension of time in which to serve defendant. See Gordon v. Hunt, 116 F.R.D. 313, 319 (S.D.N.Y. 1987).

[48] On or about April of 2003, Plaintiffs' Counsel was made aware of this ongoing deficiency by outgoing counsel. See Hannania Decl., Exh. E, at ¶ 6. In April of 2004, Defense Counsel drafted a letter to Plaintiffs' Counsel alerting them to the ongoing problem, and permitting them an additional thirty (30) days to remedy the situation. See letter dated April 8, 2005, attached hereto as Exh. D. On June 29, 2004, Defense Counsel again sent plaintiffs letters asking that WAMY and WAMY USA be served. See June 29, 2004 letter, attached as Exh. D. Plaintiffs chose to ignore all of Defense Counsel's communications. On July 22, 2004, Defense Counsel met with Ms. Bierstein, counsel for Burnett Plaintiffs, and requested that Plaintiffs' Counsel either serve or dismiss WAMY. It was not until Defense Counsel began negotiating a briefing schedule with other Plaintiffs' Counsel in November of 2004 that Ms. Bierstein finally contacted us on this issue. See November 29, 2004 and December 1, 2005 letters, both attached as Exh. G.

("It is trial counsel's responsibility to monitor the activity of the process server and to take reasonable steps to assure that a defendant is timely served.") (citations omitted). Accordingly, and as a result of their inaction and lack of diligence, plaintiffs should be made to reap what they have sewn and have their action against WAMY SA and WAMY USA dismissed. The only remedy for failure to effect proper service of process on WAMY USA, and/or no service with respect to WAMY SA, is dismissing the complaint under Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 4(m).

## VI. CONCLUSION

Plaintiffs' allegations, when placed in the best possible light, amount to nothing more than vague, conclusory, and therefore legally insufficient statements. For the reasons set forth herein, WAMY respectfully requests that the Court grant its Motion to Dismiss the plaintiffs' complaints under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and under Fed. R. Civ. P. 12(b)(5) against Burnett Plaintiffs for defective and/or no service.

Respectfully Submitted,

_____S.S._____

Omar T. Mohammedi (OTM 7234)
The Law Firm of Omar T. Mohammedi, LLC
200 Madison Avenue, Suite 1901
New York, New York 10016
T:       (212) 725-3846
F:       (212) 725-9160

Dated: November 1, 2005

25