IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | CASE NO. 03 MDL 1570<br>ECF CASE |

This filing applies to:

*The Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04 CV 1076 (RCC)

---

# DEFENDANT DR. TAHA JABIR AL-ALWANI'S
# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
DLA PIPER RUDNICK GRAY CARY US LLP
1200 Nineteenth Street
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Dr. Taha Jabir Al-Alwani*

Dr. Taha Jabir Al-Alwani, by and through undersigned counsel, hereby submits this Memorandum of Law in Opposition to Plaintiffs' Cross-Motion: 1) for leave to file a RICO Statement or for reconsideration of the Court's August 23, 2005 Order denying Plaintiffs' permission to file a RICO Statement, 2) to strike Dr. Al-Alwani's motion to dismiss, and 3) to amend Plaintiffs' First Consolidated Complaint (the "Complaint" or "FCC").[1]

## PRELIMINARY STATEMENT

Plaintiffs' cross-motion is a smoke screen they hope will obscure the fact that they have not stated, and cannot state, a claim against Dr. Al-Alwani.

Plaintiffs again ask the Court to permit them to file an admittedly out of time RICO Statement despite the Court's August 23, 2005 Order denying them the exact same relief. Plaintiffs have offered no reason whatsoever for the Court to reconsider its earlier decision. Even if the Court did permit Plaintiffs to file its RICO Statement at this late date, it would be futile because the allegations in the RICO Statement fail to state a claim against Dr. Al-Alwani.

Plaintiffs also ask the Court to strike Dr. Al-Alwani's Motion to Dismiss because it was purportedly filed out of time. But this argument is nothing more than a desperate bad faith effort to avoid dismissal. Plaintiffs originally agreed to Dr. Al-Alwani's request for a short extension of time in which to respond, but later opportunistically reneged hoping they could use Dr. Al-Alwani's "default" as leverage to coerce him into permitting them to file the out of time RICO Statement described above. After Plaintiffs amended their Complaint, not only did they again refuse to grant Dr. Al-Alwani an extension of time to respond, they refused even to discuss the issue in violation of paragraph 25 of the CMO-2 which, because it requires the parties to submit

---

[1] This Memorandum of Law is solely in opposition to Plaintiffs' cross-motion. Dr. Al-Alwani is concurrently filing a separate reply memorandum of law in further support of his motion to dismiss.

an agreed upon briefing schedule prior to filing motions to dismiss, implicitly requires the parties to confer.

While Dr. Al-Alwani could have contacted the Court for a third time in this action, as Plaintiffs now suggest he ought to have done, he instead heeded the Court's admonition not to disturb the Court with "routine scheduling matters." Given Plaintiffs' refusal to adhere to the CMO-2 and their studied gamesmanship, and in light of Plaintiffs' conduct which has prompted Dr. Al-Alwani to seek Rule 11 sanctions against Plaintiff,[2] Dr. Al-Alwani should not be penalized for following the Court's advice under the circumstances, and filing his motion "late."

Plaintiffs also request permission to amend their Complaint once again. But Plaintiffs have had numerous opportunities to amend the Complaint, and they have provided the Court with no reason to believe that if given yet another opportunity they will be able to state a claim against Dr. Al-Alwani. Plaintiffs' request to amend the Complaint should be denied as futile.

## ARGUMENT

I. **PLAINTIFFS' RICO STATEMENT WAS FILED IN VIOLATION OF THE COURT'S CMO-2 AND PLAINTIFFS SHOULD NOT NOW BE GRANTED LEAVE TO FILE IT**

On August 26, 2005, Plaintiffs filed a document they styled as a "More Definite Statement Pursuant to the Fed. R. Civ. Pro. Rule 12(e), Judge Casey's CMO-2, Paragraph 13, and/or RICO Statement Applicable to Taha Al Alwani a/k/a Dr. Taha Jabir Al'Alwani."[3] As explained in Dr. Al-Alwani's motion to dismiss, this "More Definite Statement and/or RICO

---

[2] Dr. Al-Alwani served a Rule 11 motion for sanctions on Plaintiffs on November 11, 2005. If Plaintiffs continue to refuse to withdraw their Complaints and More Definite Statements, Dr. Al-Alwani will file the motion with the Court in accordance with Rule 11 on December 2, 2005.

[3] Plaintiffs filed the exact same document twice. *See* MDL docket entries 1157 and 1158. Even though they are the same document, Plaintiffs apparently are now contending that docket entry 1157 is a RICO Statement and that docket entry 1158 is a More Definite Statement. (Plaintiffs' Opp., at 15, 16.)

2

Statement" was in both form and substance a RICO Statement filed in violation of the Court's August 23, 2005 Order which denied the O'Neill Plaintiffs' counsel's application to amend paragraph 13 of the Court's Case Management Order # 2, to permit the late filing of RICO Statements. (Memorandum of Law in Support of Defendant Dr. Taha Jabir Al-Alwani's Motion to Dismiss ("Dr. Al-Alwani's MTD"), at 3-4.)

Plaintiffs admit that this More Definite Statement and/or RICO Statement "may not have been timely." (O'Neill Plaintiffs' Memorandum of Law in Opposition To Taha Al-Alwani's Motion to Dismiss and in Support of Plaintiffs' Cross-Motion ("Plaintiffs' Opp.") at 17.) They nevertheless request that the Court reconsider its August 23, 2005 Order and amend the CMO-2 to permit them to file the out-of-time RICO Statement. As Plaintiffs are aware, however, this issue is already before the Court in the context of the Proposed CMO-4 submitted to the Court by the Plaintiffs' and Defendants' Committees on October 21, 2005.

Dr. Al-Alwani reiterates the Defendants' Committees' position in the proposed CMO-4 that the Court should not reconsider its August 23, 2005 ruling, which was made "after full letter briefing," because:

> plaintiffs have offered no new reason for the Court to revisit that ruling. Defendants' position is that for plaintiffs in cases other than *Federal Insurance*, the Court's standing rules governing the filing of RICO statements apply, except where the parties have otherwise stipulated. Under the Court's Standing Order, the Plaintiffs have twenty days from the date this Court first assumes jurisdiction over the respective cases to file their RICO Statements against each defendant. No Plaintiff is thereby prejudiced by the filing of their case initially in another Court, and its transfer to this Court by the MDL Panel. Furthermore, Plaintiffs cannot be heard to argue that the Standing Order is burdensome, because they should know the bases of their RICO claims when those serious allegations are brought.

(Proposed CMO-4, at ¶ 4.)

3

In addition, the CMO-2 was issued on June 15, 2004. Plaintiffs admit that this case was transferred to this Court in March 2004. (Plaintiffs' Opp., at 18.) Therefore, Plaintiffs had a full and fair opportunity to participate in the drafting of the CMO-2. If they intended to pursue RICO claims against any Defendant, they could and should have requested at that time that paragraph 14 of the CMO-2 apply to them as well as the *Federal Insurance* Plaintiffs.

Nor should the Court grant Plaintiffs leave to file the RICO Statement pursuant to Rule 6(b) because this is just another attempt to make an end run around the Court's August 23, 2005 Order. Moreover, any such amendment would be futile as the allegations contained in the RICO Statement fail to state a claim against Dr. Al-Alwani. (Dr. Al-Alwani MTD, at 10-12; Dr. Al-Alwani's Reply Memorandum of Law in Further Support of Defendant Dr. Taha Jabir Al-Alwani's Motion to Dismiss, at 7-9.)[4]

## II. THE COURT SHOULD NOT STRIKE DR. AL-ALWANI'S MOTION TO DISMISS

Plaintiffs argue that Dr. Al-Alwani's motion to dismiss should be stricken as untimely because he was served with the Second Amended Complaint ("SAC") on July 29, 2005 and did not move to dismiss until 98 days later on November 4, 2005. (Plaintiffs' Opp., at 2, 21.) Plaintiffs are wrong.

On October 25, 2004, Dr. Al-Alwani's counsel denied Plaintiffs' request to agree to accept service of the First Amended Complaint on behalf of Dr. Al-Alwani, and advised Plaintiffs that "the Taha Al-Alwani you seek to serve in your case against Iraq is not our client, but rather an Iraqi living in Iraq and associated with Iraqi governmental affairs, quite possibly the

---

[4] Curiously, in the alternative Plaintiffs request permission to withdraw their RICO Statement. (Plaintiffs' Opp., at 18.) However, Plaintiffs already have withdrawn that RICO Statement. (Barentzen Decl., Ex. N.)

4

Mayor of Fallujah." (Declaration of Steven K. Barentzen, dated December 1, 2005, at ¶ 2) (the "Barentzen Decl.") [5]

On July 29, 2005, Plaintiffs served the SAC, which contained the same allegations as the First Amended Complaint, on Dr. Al-Alwani. On August 10, 2005, Dr. Al-Alwani's counsel timely contacted Plaintiffs and requested, pursuant to paragraph 25 of the CMO-2, that the parties agree to a briefing schedule they could submit to the Court with respect the motion to dismiss that Dr. Al-Alwani intended to file on the ground that Plaintiffs had served the SAC on the wrong person. (*Id.*, at ¶ 4). Plaintiffs agreed that Dr. Al-Alwani could have as much time as he needed to prepare his motion. (*Id.*) Plaintiffs apparently contend they withdrew their agreement when Dr. Al-Alwani later refused to agree to a provision in the briefing schedule that would permit Plaintiffs to file a RICO Statement in violation of the CMO-2. Plaintiffs instead demanded that Dr. Al-Alwani "contact the Court." (*Id.*, at ¶¶ 5-8.)

Dr. Al-Alwani did so, and on August 23, 2005, the Court denied Plaintiffs' request to amend the CMO-2 to permit the filing of a RICO Statement. (*Id.*, at ¶¶ 9-10.) After their application was denied, Plaintiffs for the first time alleged that Dr. Al-Alwani was in "default," but expressed a willingness to disregard that so-called "default" if Dr. Al-Alwani would agree to let them file an out of time RICO Statement. (*Id.*, ¶ 12.) It is clear that Plaintiffs sought to use this threatened "default" to coerce Dr. Al-Alwani into permitting them to file the same RICO Statement the Court had just found they could not file. (*Id.*, at ¶ 13.) [6]

---

[5] The Barentzen Decl. provides a detailed account of the parties' dealings on this issue. For the Court's convenience Dr. Al-Alwani is providing a summary of those dealings herein.

[6] Further evidence that Plaintiffs used the threat of holding Dr. Al-Alwani in default as a ploy to get their RICO Statement filed is the fact that they have agreed to withdraw their motion to strike in the event that the Court permits them to file a RICO Statement. (Plaintiffs' Opp., at n. 7.)

Dr. Al-Alwani made repeated efforts to resolve this issue consensually, but ultimately was forced to go to the Court a second time when Plaintiffs stubbornly held to their position that Dr. Al-Alwani was in default and refused to discuss, much less enter into, a briefing schedule for Dr. Al-Alwani's motion to dismiss. (*Id.*, at ¶¶ 13-16.) Plaintiffs' failure even to discuss a briefing schedule was a clear violation of paragraph 25 of the CMO-2 which requires to parties to submit to the Court an agreed upon briefing schedule prior to the filing of any motions to dismiss.

On August 26, 2005, the same day that Plaintiffs' obstinance forced Dr. Al-Alwani to take the issue to the Court a second time, Plaintiffs filed the document they styled as a "More Definite Statement and/or RICO Statement" anyway *in violation of the CMO-2*. (*Id.*, at ¶ 17.) On September 2, 2005, Dr. Alwani's counsel wrote to Plaintiffs' counsel pursuant to Rule 11 to provide them notice that both the SAC and the "More Definite Statement and/or RICO Statement" violated Rule 11, and to request that Plaintiffs voluntarily withdraw the SAC and "More Definite Statement and/or RICO Statement." (*Id.*, at ¶ 18.)

On September 30, 2005, Plaintiffs refused to withdraw their pleadings and purported to amend the SAC by filing the FCC and another More Definite Statement attached as an Exhibit. (*Id.*, at ¶¶ 20, 21.) Pursuant to Rule 15, Dr. Al-Alwani had 10 days to respond to this "amended" pleading.

Upon receiving the FCC, and "amended" pleadings in seven other actions in this MDL, Dr. Al-Alwani's counsel again contacted Plaintiffs' counsel and sought a reasonable briefing schedule for his anticipated motion to dismiss. (*Id.*, at ¶ 22.) In light of the numerous "amended" pleadings, Dr. Al-Alwani's counsel sought to coordinate the briefing of motions to dismiss in all of these actions in an orderly, efficient and cost effective manner. Plaintiffs,

however, again violated paragraph 25 of the CMO-2 and refused to even discuss, much less enter into, an agreed upon briefing schedule for Dr. Al-Alwani's intended motion to dismiss. (*Id.*, at ¶ 23.)[7]

Shortly after his counsel prepared and filed numerous motions to dismiss in other actions in this MDL, Dr. Al-Alwani promptly moved to dismiss in this action on November 4, 2005, merely 17 days -- not the 98 days that Plaintiffs claim -- after the time he would have been required to respond to the FCC pursuant to Rule 15. (Barentzen Decl., at ¶¶ 25-28.)

Dr. Al-Alwani's technical default does not warrant striking his motion to dismiss. First, the alleged "default" was created when Plaintiffs' reneged on their agreement to provide Dr. Al-Alwani with a reasonable extension of time to respond to the SAC accompanied by their unwillingness, in violation of the CMO-2, to discuss a schedule for Dr. Al-Alwani's motion to dismiss the "amended" FCC. Had Plaintiffs simply agreed to a brief extension of time, rather than attempting to coerce an agreement from Dr. Al-Alwani on the RICO Statement issue, this would not have been an issue.

Plaintiffs' argument that Dr. Al-Alwani has been in "default" for 98 days also ignores the practical realities of what has transpired between the parties. Because Dr. Al-Alwani is not the Al-Alwani named in the SAC, and has repeatedly advised Plaintiffs of that fact, he believed that he could persuade Plaintiffs to voluntarily dismiss the claims against him, as the *Burnett* plaintiffs did in January 2005, without the expense involved in motions practice. Indeed, it was not until August 26, 2005 -- when Dr. Al-Alwani would already have been in default under

---

[7] Dr. Al-Alwani's counsel also attempted to negotiate briefing schedules for anticipated motions dismiss for their other clients with the other Plaintiffs that amended their complaint on or around September 30, 20005, including *Ashton, Burnett, Federal Insurance, New York Marine, Continental, Euro Brokers* and *World Trade Center*. (*Id.*, at ¶ 25.) All of the Plaintiffs, other than *Ashton*, refused to even discuss, much less agree to, a briefing schedule for these motions. (*Id.*, at ¶ 24.)

Plaintiffs' calculation -- that Plaintiffs asserted any substantive allegations against him when it filed the "More Definite Statements and/or RICO Statements." At that point, however, it was clear that the Al-Alwani named in the SAC and the Al-Alwani discussed in the "More Definite Statements and/or RICO Statements" were entirely different people, and that Plaintiffs were attempting to "cure" the SAC's procedural defects through the RICO Statement mechanism. Again, Dr. Al-Alwani attempted to persuade Plaintiffs to withdraw the claims against him by serving their Rule 11 letter on September 2, 2005. But Plaintiffs did not respond to that letter for a month, until the September 30, 2005, the same day they filed the FCC.

For all practical purposes, Dr. Al-Alwani could not have brought a motion to dismiss until after the FCC was filed. Dr. Al-Alwani has watched Plaintiffs needlessly protract this litigation by constantly shifting its allegations to attempt to correct a flawed pleading instead of withdrawing it. Indeed, this cross-motion itself is further evidence of Plaintiffs' vexious behavior. It would be unjust to permit Plaintiffs to benefit from their sanctionable conduct, especially considering they have not been prejudiced by Dr. Al-Alwani's "default."

Plaintiffs suggest that Dr. Al-Alwani ought to have applied to the Court for an extension of time bring his motion to dismiss the FCC. (Plaintiffs' Opp., at 22.) However, having already twice been forced by Plaintiffs' recalcitrance to go to the Court with respect the briefing schedule he sough to dismiss the SAC, Dr. Al-Alwani instead heeded the Court's advice from the September 27, 2005 status conference that the parties should not needlessly bother the Court with "routine scheduling matters." (Barentzen Decl., at ¶ 19.) Dr. Al-Alwani should not be penalized for following the Court's instructions and Plaintiffs' motion to strike should be denied.

8

### III. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO AMEND THE COMPLAINT AGAIN

Plaintiffs also request that pursuant to Rule 15 the Court grant them leave to amend the Complaint. First, Plaintiffs seek to amend the Complaint as set forth on Exhibit A to the Notice of Cross-Motion. These proposed amendments are technical in nature and seek to add "ands" and "ors" to paragraph 36 of the Complaint in an apparent attempt to conform the allegations to Dr. Al-Alwani's Declaration. Second, Plaintiffs seek to permit them to cure the Complaint's pleading deficiencies in the likely event the Court grants Dr. Al-Alwani's motion to dismiss. Plaintiffs do not provide the Court with any proposed amendments with respect to this portion of their request.

The Rule 15 provides that "leave shall be freely given when justice so requires." The decision whether to grant a plaintiffs' motion to file an amended complaint remains within the court's discretion, and leave to amend should be denied only where there is "undue delay, bad faith, dilatory motives or undue prejudice to the opposing party," or where such amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (upholding district court's denial of leave to amend, where amendment was unlikely to be productive); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (denial of leave to amend upheld on finding of undue delay and futility); *John Hancock Mut. Life Ins., Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (holding that the district court did not abuse its discretion in denying motion for leave to amend, where the district court found undue delay and where the plaintiff's claim appeared to be futile); *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (affirming district court's denial of leave to amend where the additional information offered would not cure the deficiencies noted by the court).

9

The amendments proposed on Exhibit A to the cross-motion, if anything, *withdraw* allegations against Dr Al-Alwani. The only apparent purpose of these amendments is to "correct" the demonstrably false allegations in the Complaint that Dr. Al-Alwani is a citizen of Iraq, employee of Iraq or that he is liable in this case for "acting in the course and scope of [his] employment" for Iraq, in hopes of avoiding Rule 11 sanctions. If these amendments were approved, it is not clear what, if anything, Plaintiffs allege Dr. Al-Alwani did. The proposed amendments would be futile and Plaintiffs' request should be denied. *See e.g. Chimarv v. TD Waterhouse Investor Services, Inc.*, 233 F. Supp 2d 615, 617 (S.D.N.Y. 2002) ("when there is no merit in proposed amendments, leave to amend should be denied."); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be denied for Plaintiffs' "repeated failure to cure deficiencies by amendments previously allowed" or for "futility of amendment"); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 274 (S.D.N.Y. 1996) (denying leave to amend where new claims are futile).

Plaintiffs do not propose the amendments that will cure their complaints' pleading deficiencies in the likely event that the Court dismisses the claims pursuant to Rule 12(b)(6). This alone is ground for denying Plaintiffs leave to amend. *See e.g. Johnson v. Monsanto Chemical Co.*, 129 F. Supp. 2d 189, 197 (N.D.N.Y. 2001) ("Because Plaintiffs have not attached a proposed amended complaint to their motion . . . the Court is not in a position to determine whether Plaintiffs' proposed amendment would be futile.")

Moreover, Plaintiffs have provided no reason to believe that if given another opportunity they can cure the Complaint's pleading deficiencies and state a claim against Dr. Al-Alwani. Plaintiffs have had numerous opportunities to amend their pleadings and already have filed a Complaint, Amended Complaint, Second Amended Complaint, First Consolidated Complaint

along with a "More Definite Statement and/or RICO Statement" and a "More Definite Statement." The last of Plaintiffs' amendments was made on September 30, 2005, *after* the Court had already dismissed the claims against Dr. Al-Alwani in the *Federal Insurance* action. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 570-72 (S.D.N.Y. 2005).

Therefore, Plaintiffs' request to amend the Complaint yet again should be denied as futile.

## CONCLUSION

For all the foregoing reasons, Dr. Taha Al-Alwani respectfully requests that the Court grant his Motion to Dismiss the First Consolidated Complaint with prejudice.

Respectfully submitted,

Dated:   December 1, 2005                By:  /s/ Nancy Luque
                                              Nancy Luque (NL-1012)
                                              Jay Hanson (admitted *pro hac vice*)
                                              Steven K. Barentzen (SB-8777)
                                              DLA PIPER RUDNICK GRAY CARY US LLP
                                              1200 Nineteenth Street
                                              Washington, DC  20036-2247
                                              Tel: 202-861-3900
                                              Fax: 202-223-2085

                                              *Attorneys for Dr. Taha Jabir Al-Alwani*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2005, I caused an electronic copy of the foregoing Memorandum of Law in Further Support of Motion to Dismiss to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/ Steven K. Barentzen
Steven K. Barentzen (SB-8777)