## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (RCC) ECF Case |

This document relates to:

*Ashton v. Al Qaeda Islamic Army*, 02-CV-6977
*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

---

## MEMORANDUM OF LAW OF JAMAL BARZINJI IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Jamal Barzinji*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY ............................................................................................ 3

    I.      THE COURT'S JANUARY 18, 2005 DECISION ................................................ 3

    II.     THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER ...................... 4

ARGUMENT ................................................................................................................... 6

    I.      PLAINTIFFS' "AMENDED" PLEADINGS DO NOT COMPLY
          WITH THE COURT'S CASE MANAGEMENT ORDER ................................... 6

    II.     PLAINTIFFS' "AMENDED" PLEADINGS SHOULD BE
          DISMISSED FOR FAILURE TO STATE CLAIMS ............................................. 9

          A.     The Allegations In The "Amended" Pleadings Against Dr.
                  Barzinji ....................................................................................................... 9

          B.     Plaintiffs' Allegations Fail To State  Claims Against Dr.
                  Barzinji ..................................................................................................... 11

                1.     Allegations Concerning Dr. Barzinji's Alleged
                         Involvement  With the "SAAR Network" Fail to
                         State a Claim Against Him ............................................. 11

                2.     Plaintiffs' Other Allegations Also Fail to  State a
                         Claim Against Dr. Barzinji ............................................ 15

CONCLUSION ............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page**

Other Authorities

*Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000 (7th Cir. 2002) ............................................................. 18

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ..................................... 15

*Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992) ................................................. 8, 12

*Gordon v. Green*, 602 F.2d 743 (5th Cir. 1979) ......................................................... 8

*Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251 (S.D.N.Y. 1976) ...................................................................... 18

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) .......................................................................................................... passim

*In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005) ................................................................................................................ 2

*Jackson v. BellSouth Telecomms.*, 372 F.2d 1250 (4th Cir. 2004) .............................. 15

*Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437 (8th Cir. 1983) ......................... 8

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) .............................. 8

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994) .............. 7

Regulations

18 U.S.C. § 2339A ................................................................................................. 17

18 U.S.C. 1956(a)(2)(A) ......................................................................................... 14

Jamal Barzinji, by and through his undersigned counsel, hereby submits this

Memorandum of Law in Support of his Motion to Dismiss all of the claims asserted against him

in *Ashton, Burnett, New York Marine,* and *Continental* pursuant to Rule 12(b)(6) for failure to

state a claim upon which relief can be granted.[1]

## PRELIMINARY STATEMENT

Dr. Barzinji is a U.S. citizen and scholar who is a moderate and progressive voice in

American Islam and who denounces and teaches against all forms of terrorism.  Plaintiffs' claims

against Dr. Barzinji should be dismissed because he has never supported Al Qaeda or assisted or

funded terrorism of any kind, and none of the Plaintiffs have alleged that he has done so.

Plaintiffs' primary basis for asserting liability against Dr. Barzinji is his alleged

involvement in the so-called "SAAR Network."[2]  On January 18, 2005, the Court, in considering

the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network,"

found that they had "provided scant basis for linking these entities under the SAAR Network

title."  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005)

("*In re Terrorist Attacks I*").

Nevertheless, in its September 21, 2005 Opinion and Order, the Court found that the

*Federal Insurance* Plaintiffs' allegations against Dr. Barzinji concerning his alleged involvement

with the so-called "SAAR Network" provided him with "sufficient notice of the claims against

him regarding his alleged provision of material support in the form of financial transactions to al

Qaeda."  *In re Terrorist Attacks II*, at 572.  In so doing, the Court distinguished Dr. Barzinji from

---

[1] In *Ashton,* Dr. Barzinji is moving to dismiss the Sixth Consolidated Master Complaint, in *Burnett,* the Third
Amended Complaint; in *New York Marine* the Second Amended Complaint; in *Continental* the Second Amended
Complaint; and in *World Trade Center* the Complaint.  As discussed *infra.* at 6, Dr. Barzinji objects to all of the
complaints, other than in *Ashton,* for violating the Court's Case Management Order 2.

five other so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Taha
Al-Alwani, Iqbal Unus and Yaqub Mirza, who had similar claims against them dismissed
because "the complaint does not adequately provide these Defendants with notice as to how they
provided material support to al Qaeda terrorists." *In re Terrorist Attacks on September 11, 2001*,
at 572.[3]

Dr. Barzinji respectfully suggests that the Court was mistaken when it treated him
differently from the other "SAAR Network Executives." Indeed, the *Federal Insurance*
Plaintiffs' allegations concerning Dr. Barzinji's alleged involvement in the so-called "SAAR
Network" are no more specific than the vague and conclusory allegations asserted against the
dismissed "SAAR Network Executives" that the Court found did not state a claim.

To the extent that the *Federal Insurance* Plaintiffs' allegation that Dr. Barzinji "is a
business associate of the designated terrorist Yousef Nada," was a primary the reason the Court
did not dismiss all of the claims against Dr. Barzinji, it is now clear that this allegation is false
and may have misled the Court into believing that Dr. Barzinji works with Nada presently,
knowing him to be a designated terrorist.

Following the Court's September 21, 2005 Opinion, each of the Plaintiffs amended their
Complaints to include an allegation concerning Dr. Barzinji's alleged business relationship with
Nada. Unlike the *Federal Insurance* Plaintiffs, the *Ashton* Plaintiffs made clear that Dr.
Barzinji's alleged business relationship with Nada ended when Dr. Barzinji came to the United

---

[2] The Court has used the phrase "SAAR Network Defendants" solely for convenience, and not because Plaintiffs
have alleged the existence of such a network. *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 at
n. 15 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").
[3] The Court also dismissed the so-called "SAAR Network Entities" African Muslim Agency, Grove Corporate,
Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston
Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint did
not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." The Court also
dismissed IIIT from *Ashton*, and Mar-Jac Poultry from *Ashton*, *Burnett* and *Federal Insurance*. *Id.* at 570-71.

States in the early 1980's. (*Ashton*, ¶ ¶ 254, 387.) Three other Plaintiffs also alleged that Dr.

Barzinji "worked" for Nada -- past tense -- although they did not disclose when. (*Burnett*, ¶ 265,

*Continental*, ¶ 471, *World Trade Center*, ¶ 439.) The allegation that Dr. Barzinji had an alleged

business relationship with Nada 25 years ago does not state a claim against Dr. Barzinji because

(1) Nada was not designated as a sponsor of terrorism until *November 2001*, and (2) Al Qaeda

did not even exist when Barzinji was alleged to have worked for Nada. Had the *Federal*

*Insurance* Plaintiffs alleged, as the Plaintiffs here have, that Dr. Barzinji "was" a business

associate of Nada's rather than misleading the Court into believing that Dr. Barzinji "is" an

associate of a designated terrorist, it is likely the Court would have dismissed their claims against

Dr. Barzinji in that case.

   Plaintiffs have never asserted that Dr. Barzinji knowingly or intentionally supported Al

Qaeda or any form of terrorism, or that he did anything to fund or otherwise cause the events of

September 11th. Because Plaintiffs have failed to come forward with even a single factual

allegation connecting Dr. Barzinji with terrorism financing or the events of September 11, 2001,

the complaints fail to state claims.

## PROCEDURAL HISTORY

### I.    THE COURT'S JANUARY 18, 2005 DECISION

   On January 18, 2005, the Court ruled on motions to dismiss made by numerous

defendants, including the motions filed by some of the so-called "SAAR Network Defendants"

to dismiss the *Federal Insurance* complaint for lack of personal jurisdiction and pursuant to Rule

12(b)(6). The Court considered all of the *Federal Insurance* complaint's allegations concerning

the existence of a so-called "SAAR Network" -- allegations identical to those asserted in these

actions -- and concluded that Plaintiffs had "provided scant basis for linking these entities under

the SAAR Network title." *In re Terrorist Attacks I*, at 823.

But the Court found that its "analysis of the [Defendant's] arguments in favor of 12(b)(6)

dismissal depend[ed] on a predicate finding of which entities are subject to this Court's personal

jurisdiction and which entities--and under what circumstances--transferred money to terror

fronts." *Id.* at 837. Accordingly, the Court denied the Defendants' Rule 12(b)(6) motion to

dismiss without prejudice but noted that it could be "renewed upon completion of personal

jurisdiction discovery." *Id.* The Court also dismissed Plaintiffs' claims for Civil RICO, the

Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and

negligence. *Id.* at 837-38.

## II.   THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER

On September 21, 2005, the Court issued another Opinion and Order relevant to these

proceedings. This time the Court dismissed the *Federal Insurance* claims against five so-called

"SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-

Alwani, Iqbal Unus and Yaqub Mirza. The Court also dismissed the claims against eight so-

called "SAAR Network Entities," African Muslim Agency, Grove Corporate, Heritage

Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York

Foundation in the *Burnett* action, and dismissed the claims against IIIT from *Ashton* as well. *In

re Terrorist Attacks II*, at 576.[4] The Court, however, only dismissed the "RICO, TVPA,

intentional tort, and negligence claims," against Dr. Barzinji, and did not dismiss the

Antiterrorism Act ("ATA") claim against him. *Id.*

---

[4] The Court dismissed the claims against another purported "SAAR Network Entity" Mar-Jac Poultry, from *Ashton*, *Burnett* and *Federal Insurance*. *Id.* After reviewing the allegations against Mar-Jac, including those allegations in the *Federal Insurance* RICO Statement applicable to SAAR Network Entities that alleged Mar-Jac Poultry donated money to African Muslim Agency which the Plaintiffs claim was later "laundered," and that it donated money to unnamed SAAR Network Entities that was later forwarded to al Qaeda, the Court dismissed the RICO claim against Mar-Jac Poultry because Plaintiffs did not allege that Mar-Jac had any role in directing an enterprise. *Id.* at 571. The Court dismissed the remainder of the claims because the complaints did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

As an initial matter, the Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the Defendants moving for dismissal under Rule 12(b)(6).  *Id.* at 566.  The Court also dismissed all of the *Federal Insurance* Plaintiffs' claims for assault and battery and intentional infliction of emotional distress.  *Id.*  The Court noted that it would review each complaint individually to determine whether each stated a claim for relief under the ATA and RICO.   The Court noted that if "Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal* Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have stated claims for intentional infliction of emotional distress.  Plaintiffs who are aliens will have also stated a claim for relief under the [Alien Tort Claims Act]." *Id.*

The Court noted that Plaintiffs' claims against the "SAAR Network Defendants" in both the *Ashton* and *Burnett* actions "rely primarily on their allegations against the 'SAAR Foundation and network.'" *Id.* at 569.  Plaintiffs alleged that the "SAAR Network" was formed "by a group of Muslim scholars and scientists" and that its "largest donor is the al Rajhi family of Saudi Arabia." *Id.*  The complaints further alleged that many of the "SAAR Network" organizations' offices in Herndon were raided in March 2002 as part of Operation Greenquest to investigate "potential money laundering and tax evasion activities and their ties to terrorist groups such as ... al Qaeda as well as individual terrorists ... (including) Osama bin Laden." *Id.*

Based upon these vague and general allegations, the Court dismissed the *Federal Insurance* Plaintiffs' claims against Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, Iqbal Unus and Yaqub Mirza, because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide

these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II,* at 572.

The Court found, however, that Plaintiffs' allegations that "Jamal Barzinji controlled several bank accounts," "allegedly transmitted money internationally for terrorist purposes" and "made these transfers to support al Qaeda," provided Dr. Barzinji with "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda." *Id.*[5]

## ARGUMENT

### I.   PLAINTIFFS' "AMENDED" PLEADINGS DO NOT COMPLY WITH THE COURT'S CASE MANAGEMENT ORDER

Following the Court's September 21, 2005 Opinion, on -- or in the case of the *Continental* Plaintiffs, a week after -- September 30, 2005, each of the Plaintiffs filed an "amended" or "consolidated" pleading, purportedly in compliance with paragraph 13 of the Court's Case Management Order #2 (the "CMO-2"). That provision of the CMO-2 states in pertinent part that:

> Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously-filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint. On [September 30,][6] 2005, the plaintiffs shall file an amended complaint that includes all amendments made prior to that date, whether made pursuant to Rule 12(e) or otherwise.

---

[5] The Court also dismissed the *Burnett* Plaintiffs' claims against the "SAAR Network Entities" because these allegations were only a "legal conclusion that the SAAR Network entities conspired with the SAAR Network" and Plaintiffs failed to provide Defendants with "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *Id.* at 570. The *Ashton* complaint against IIIT was dismissed by the Court because, although it contained the additional allegation that IIIT financed two charities, the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.* at 571.

[6] The Case Management Order originally provided for amended complaints to be filed by July 31, 2005. That date was extended until September 30, 2005 by Order of the Court dated July 27, 2005.

Each of the Plaintiffs' "amended" or "consolidated" pleadings -- other than *Ashton* -- fails to comply with the CMO-2.  For example, the *Burnett* and *World Trade Center* Plaintiffs filed what they styled as a "Notice Of Consolidation Of Pleadings."  This Notice lists approximately 50 documents that total hundreds of pages, and include not only Plaintiffs' complaints, but also dozens of "More Definite Statements" directed at various defendants.  Plaintiffs claim that each document listed on this "Notice" comprises their "consolidated complaints."

The *New York Marine* Plaintiffs, on the other hand, simply attached numerous RICO Statements -- some from other cases such as *Federal Insurance* -- to their complaint, and purported to incorporate the allegations in those RICO Statements into the complaint by reference.

The *Continental* plaintiffs took another route.  Not only was the *Continental* complaint filed on October 6, 2005, a week late, it is an obvious, and poorly done, "cut and paste" job.  It contains a 250-page "addendum" which is single spaced, contains predominantly unnumbered paragraphs (although some are numbered) and duplicative allegations and is in a variety of fonts and formats.

Each of these "amended" and "consolidated" complaints violates not only the CMO-2 that clearly contemplates the filing of a single complaint in each case, but also Fed. R. Civ. P. 10 which requires complaints to list their allegations in sequentially numbered paragraphs.  Moreover, the attachments, exhibits and documents incorporated by reference to each of these "amended" or "consolidated" pleadings violates Rule 8's requirement of a "short and plain" statement, and imposes a burden on both the defendants and the Court to determine exactly what is being alleged against whom that the CMO-2 was specifically designed to prevent.  *See, e.g.*,

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation."); *Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir. 1983) (dismissing complaint because "the style and prolixity of these pleadings would have made an orderly trial impossible."); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 675 (9th Cir. 1981) ("The appellees herein have had to spend a large amount of time and money defending against Cissna's poorly drafted proceedings . . . The right of these defendants to be free from this costly and harassing litigation . . . must be considered."); *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) ("the law does not require, nor does justice demand, that a judge must grope through (thousands of) pages of irrational, prolix and redundant pleadings.") (citation and quotation omitted).

Therefore, the Court should strike all of the addendum, attachments and exhibits to any of these pleadings, and any document that is incorporated into any pleading by reference, and only should consider those allegations that are contained in the actual complaints filed by Plaintiffs. Alternatively, the Court should consider dismissal of the actions for failure to comply with the CMO-2. *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (district courts have "inherent power to control their dockets and, in the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal of a case") (citations and quotation omitted); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 (2004) (courts should consider "dismissal with prejudice where the plaintiff has been given the opportunity to file an amended complaint and persists in filing a lengthy and confusing document.")

II.    **PLAINTIFFS' "AMENDED" PLEADINGS SHOULD BE
        DISMISSED FOR FAILURE TO STATE CLAIMS**

Even if the Court were to consider all of the allegations asserted against Dr. Barzinji by

each of the Plaintiffs, the claims against him should still be dismissed because Plaintiffs'

allegations fail to state claims.

A.    **The Allegations In The "Amended"
        Pleadings Against Dr. Barzinji**

The *Ashton* Plaintiffs allege that: 1) in the early 1980s, Jamal Barzinji started up the

SAAR Foundation as well as other entities, and that over the ensuing two decades, he along with

others established over 100 entities including non-profits, charities, and businesses (*Ashton*, at ¶

251); 2) Dr. Barzinji has signatory rights over at least 18 SAAR Network bank accounts (*Id.*, at ¶

257); 3) Jamal Barzinji is a co-conspirator, material sponsor, and/or aider and abettor of the

SAAR network (*Id.*, at ¶ 269); 4) Dr. Barzinji worked for Yousef Nada *prior* to founding the

SAAR Foundation (*Id.*, at ¶¶ 254, 387); 5) in 1988 Jamal Barzinji recommended two SAAR

Network officers to Yousef Nada as prospective officers of Bank Al Taqwa (*Id.*, at ¶ 255); 6) in

2000, Jamal Barzinji, as President of alleged SAAR Network entity Mena Estates arranged for a

$500,000 loan to Yousef Nada, which occurred and in February 2001 (*Id.*, at ¶ 256); and 7)

Ahmed Idriss Nasreddin, a "Specially Designated Global Terrorist," is personally acquainted and

maintained a relationship with Jamal Barzinji (*Id.*, at ¶ 258).

The *Burnett* Plaintiffs allege that Dr. Barzinji worked for Youssef M. Nada, the head of

Bank al-Taqwa who had his assets frozen (*Burnett*, at ¶ 265), and that Dr. Barzinji is a co-

conspirator, material sponsor, and/or aider and abettor of the SAAR Network (*Id.*, at ¶ 267).

The *New York Marine* Plaintiffs' allegations against Dr. Barzinji are identical to those

made by the *Federal Insurance* Plaintiffs, namely that Dr. Barzinji: 1) aided and abetted,

conspired with, and provided material support and resources to, defendant al Qaida and/or

affiliated FTOs, associations, organizations or persons (*New York Marine*, at ¶ 454); 2) is a Saudi national who has long provided material support and resources to al Qaeda, served as a board member of the International Institute of Islamic Thought and WAMY, was an officer of Safa Trust, Mar-Jac Poultry, Inc. and SAAR Foundation, held authority over eighteen (18) bank accounts for Safa entities, and is a business associate of Yousef Nada and a trustee and officer of the Imana Mutual Funds Trust, and board member of the American Muslim Council.  According to federal authorities, Barzinji "committed and conspired to: transit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosive, fire, kidnapping or extortion…; provide material support or resources to foreign terrorist organizations…; and provide material support or conceal or disguise the source of ownership of material support intended for use in preparation for or in carrying out a terrorist act"; and 3) through his various for-profit enterprises and involvement with charities and individuals operating within al Qaeda's infrastructure, Barzinji has long provided material support and resources to al Qaeda (*Id.*, at ¶¶ 454, 455).

The *Continental* Plaintiffs allege that: 1) Dr. Barzinji is an officer of WAMY's  Herndon, Virginia office and that the U.S. Government has frozen the assets of WAMY and Dr. Barzinji because of their role in funneling money to Al Qaeda (*Continental*, at ¶ 376)[7]; 2) Dr. Barzinji is a co-conspirator, material sponsor, and/or aider and abettor of the SAAR network (*Id.*, at ¶ 473); 3) Dr. Barzinji is a prominent leader within the SAAR network and an officer of Mar-Jac Poultry, Inc., Mar-Jac Farms, Safa Trust, and Reston Investments Inc. (*Id.*, Addendum at 342); 4) Dr. Barzinji held authority over eighteen bank accounts for SAAR Network entities and that Dr.

---

[7] The *Continental* Plaintiffs' allegation that WAMY's and Dr. Barzinji's assets have been frozen is wrong and the Court should take judicial notice of this fact.  *See* 70 Fed. Reg. 38,256 (July 1, 2005) or
(footnote continued on next page)

10

Barzinji has made substantial contributions to many of the so-called charities operating within al Qaeda's infrastructure, with full knowledge that these funds would be used to support al Qaeda's operations and terrorist attacks (*Id.*, at 400); 5) Dr. Barzinji worked for Youssef M. Nada, the head of Bank al-Taqwa (*Continental*, at ¶ 471); and 6) as early as 1978, Dr. Barzinji served as an officer of SDGT Nada International Anstalt, one of SDGT Youssef Nada's organizations based in Riyadh, Saudi Arabia (*Id.*, Addendum at 342).

The *World Trade Center* Plaintiffs allege: 1) Dr. Barzinji was Chairman of the SAAR Foundation (*World Trade Center*, ¶ 215); 2) Dr. Barzinji worked for Youssef M. Nada, the head of Bank al-Taqwa who had his assets frozen (¶ 439); and 3) Dr. Barzinji was a co-conspirator, material sponsor, aider, abettor, and participant in the illicit scheme and enterprise of the SAAR Network (¶ 441).[8]

## B.      Plaintiffs' Allegations Fail To State Claims Against Dr. Barzinji

### 1.      Allegations Concerning Dr. Barzinji's Alleged Involvement With the "SAAR Network" Fail to State a Claim Against Him

The bulk of the allegations against Dr. Barzinji concern his purported role in the ill-defined "SAAR Network." (*Ashton*, at ¶¶ 251, 257, 269; *Burnett*, at ¶ 267; *New York Marine*, ¶ 454-55; *Continental*, at ¶¶ 376, 473 and Addendum at 342, 400; *World Trade Center*, ¶¶ 215, 441.) These allegations are similar to, and in the case of *New York Marine* identical to, those already considered by the Court in denying Dr. Barzinji's request to dismiss the *Federal*

---

http://www.ustreas.gov.press/archive.html for the compete list of individuals and entities that have had their assets frozen. Neither WAMY nor Dr. Barzinji is on the list.

[8] The *World Trade Center* Plaintiffs have named Dr. Barzinji as a Defendant but have not served him with a summons or copy of the Complaint. Dr. Barzinji is voluntarily appearing in this action and will not contest service. Dr. Barzinji does, however, reserve all rights to object to service to the extent necessary to oppose any attempts to hold him in default.

*Insurance* Plaintiffs' terrorism claim against him. Dr. Barzinji respectfully suggests, however, that these allegations do not state a claim against him because they are no more specific than the *Federal Insurance* Plaintiffs' vague allegations against the other so-called "SAAR Network Executives" that the Court properly found do not "adequately provide [them] with notice as to how [they] provided material support to al Qaeda terrorists." *Id.*

There were only four allegations made by the *Federal Insurance* Plaintiffs against Dr. Barzinji's that are different from those asserted against the dismissed "SAAR Network Executives." Three of those allegations concerned his alleged role in the so-called "SAAR Network." These allegations are: 1) that Dr. Barzinji controlled several bank accounts, 2) he allegedly transmitted money internationally for terrorist purposes, and 3) he allegedly made those transfers to support Al Qaeda. *Id.* Dr. Barzinji respectfully submits that these allegations do not state a claim against him.

The allegation that Dr. Barzinji had "authority over eighteen (18) bank accounts for Safa entities" is not sufficient to state a claim against him. (***Federal Insurance***,[9] at ¶ 481.) For this allegation to state a claim against Dr. Barzinji, Plaintiffs would have to allege that at least one of the entities over which he has signing authority has transferred funds to Al Qaeda, or some terrorist organization or front responsible for the September 11th attacks, and that Dr. Barzinji knowingly and intentionally participated in that transfer. Merely having signatory authority is not enough. *In re Terrorist Attacks II*, 392 F. Supp. 2d at 564 ("The Court adopts the Seventh Circuit's requirement that Plaintiffs pled that Defendants knew of al Qaeda's illegal activities,

---

[9] Citations are to the *Federal Insurance* Plaintiffs' First Amended Complaint With Incorporated More Definite Statements, Rico Statements And Rule 15(D) Supplemental Pleadings, Filed In Accordance With Paragraph 13 Of Case Management Order Number 2, dated September 30, 2005.

'that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.")

Nor have Plaintiffs alleged that any of the "SAAR Network Entities" over which Dr. Barzinji has signatory authority transferred funds to a terrorist front.  To the contrary, the Court has already dismissed the claims against each of the "SAAR Network Entities" that have moved to dismiss the claims against it, African Muslim Agency Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Mar-Jac Poultry, Reston Investments, Safa Trust and York Foundation, because there was allegation that any of them transferred any funds to any known terrorist organizations.  *Id*. at 570-71.

The allegation that Dr. Barzinji "transmitted money internationally for terrorist purposes" also fails to state a claim.  (***Federal Insurance***, ¶ 481.)  This allegation is based loosely upon the Affidavit of Special Agent David Kane that was used by the government to obtain the search warrants to raid the homes and offices of Dr. Barzinji and the other "SAAR Networks Executives" in March 2002.  The *Federal Insurance* Plaintiffs have selectively quoted from this Affidavit to make it appear that Dr. Barzinji has been found by the government to be guilty of sponsoring terrorism.  But, what the affidavit actually says is that there was "probable cause," in 2002, to believe that evidence of violations of 18 U.S.C. 1956(a)(2)(A) and (h) would be found at Dr. Barzinji's home.  Since early 2002, there has been no "finding" by the magistrate, government, or anyone, that Dr. Barzinji has transmitted money internationally for terrorist purposes.

In fact, the raid on Dr. Barzinji's and others' homes and offices that resulted from the Kane Affidavit occurred over three and a half years ago.  During that time the government has not indicted, arrested, designated as a sponsor of terrorism, or frozen or seized a single account

or asset of Dr. Barzinji -- or anyone else for that matter.  To the contrary, the government has returned the hundreds of boxes of documents and dozens of computers it confiscated during the raid, including all of those located at Dr. Barzinji's home.  The only reasonable inference that can be drawn from the government's investigation and raid is that it has failed to yield even a single iota of evidence showing that Dr. Barzinji had anything to do with funding or supporting terrorism.

Nor is there any statement in the Kane affidavit – or anywhere for that matter – alleging that Dr. Barzinji supported either the September 11th attacks or al Qaeda.  At best, the Kane Affidavit alleges that there was "probable cause" to believe that evidence would be located at these homes and offices that would prove the individuals involved had supported the *Palestinian Islamic Jihad* or *Hamas*.  These two designated terrorist organizations, however, had nothing to do with the September 11th attacks and are not associated with Al Qaeda.  Plaintiffs have not alleged otherwise.  Therefore, the allegations do not support a claim.  *In re Terrorist Attacks I*, at 833 ("Plaintiffs have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11.").

Moreover, Plaintiffs have nowhere alleged Dr. Barzinji *knew* that that the recipient of any the alleged transfers was a terrorist organization associated with Al Qaeda.  *See In re Terrorist Attacks II*, at 571 (dismissing *Ashton* Plaintiffs' claims against IIIT because the complaint did not allege that IIIT *knew* that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror.")

Therefore, contrary to the misimpression that the *Federal Insurance* Plaintiffs have created, the Kane Affidavit provides no support whatsoever for  Plaintiffs' allegation that "Barzinji has long provided material support and resources to al Qaida." (***Federal Insurance***, at

14

¶¶ 481-82.) To the contrary, there is no support anywhere for Plaintiffs' allegation that Dr. Barzinji supported Al Qaeda. This allegation is nothing more that the type of vague and conclusory allegation that fails to state a claim as a matter of law. *See In re Terrorist Attacks I*, at 833 (*quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)); *In re Terrorist Attacks II*, *18 (*quoting Jackson v. BellSouth Telecomms.*, 372 F.2d 1250, 1270-71 (4th Cir. 2004) (pleading that "contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based" cannot withstand motion to dismiss)).

Because Plaintiffs' allegations against Dr. Barzinji concerning his purported role in the so-called "SAAR Network" are similar to, or in some instances weaker than, those in *Federal Insurance*, those allegations do not state a claim against Dr. Barzinji either.

### 2. Plaintiffs' Other Allegations Also Fail to State a Claim Against Dr. Barzinji

Plaintiffs now allege that Dr. Barzinji worked for Yousef Nada *prior* to founding the SAAR Foundation. (*Ashton*, ¶¶ 254, 387; *Burnett*, ¶ 265; *New York Marine*, ¶ 454; *Continental*, ¶ 471; *World Trade Center*, ¶ 439.) Presumably because this is one of the allegations asserted by the *Federal Insurance* Plaintiffs that distinguishes Dr. Barzinji from the other "SAAR Network Executives," and appears to be the allegation that prompted the Court to deny Dr. Barzinji's motion to dismiss, the other Plaintiffs have attempted to add these claims. *In re Terrorist Attacks II*, at 571.

This allegation, as clarified by the *Ashton* Plaintiffs, however, also fails to state a claim against Dr. Barzinji. The *Federal Insurance* Plaintiffs' allegation was drafted in such a way as to lead the Court to believe that Dr. Barzinji currently has a business relationship with Nada.

15

(*Federal Insurance*, ¶ 481.)  But as alleged by the *Ashton* Plaintiffs, any alleged business relationship between Dr. Barzinji and Nada ended when Dr. Barzinji came to the U.S. nearly 25 years ago.  (*Ashton*, ¶¶ 254, 387.)  The allegation fails to state a claim because Plaintiffs have not alleged that, *at that time*, 1) Nada, or his organization, were engaged in terrorist activities; 2) that Dr. Barzinji *knew* that Nada, or his organization, were engaged in terrorist activities -- indeed Nada was not designated as a financier of terrorism until after the September 11, 2001 attacks; and 3) that Dr. Barzinji transferred funds to Nada or knowingly or intentionally engaged in any other act to support Nada, or his organization's activities.

The Court has held that a defendant may be responsible for the September 11 attacks *only if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda. See Terrorist Attacks I*, at 826 (emphasis added). Indeed, if Dr. Barzinji was an officer in one of Yousef Nada's organizations in the 1970's, he could not "knowingly and intentionally" provide material support to an organization -- Al Qaeda -- that was not even formed until the 1980's.

Plaintiffs also allege that in 1988, Dr. Barzinji "recommended two SAAR Network officers to Yousef Nada as prospective officers of Bank Al Taqwa." (*Ashton*, at ¶ 255.)  This allegation also does not come close to supporting a claim.  Again, Plaintiffs have failed to allege that, *at that time*, 1) Nada, or his organization, were engaged in terrorist activities; or 2) that Barzinji *knew* that Nada, or his organization, were engaged in terrorist activities.  Moreover, the "recommendation" of any employee is not the type of knowing material support of terrorism that is necessary to support a claim under the ATA.  *See* 18 U.S.C. § 2339A (defining "material support" of terrorism to include "property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications

16

equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself) and transportation").

Plaintiffs also allege that Ahmed Idriss Nasreddin is personally acquainted with and maintained a relationship with Dr. Barzinji. (*Ashton*, at ¶ 258; *Continental* Addendum at ¶ 342.) But this bare allegation of a vague "acquaintance" or "relationship," even if true, is insufficient to state a claim or to provide Dr. Barzinji with notice of the claim against him. Again, Plaintiffs have failed to allege, as they must to survive a motion to dismiss, that Dr. Barzinji knew of al Qaeda's illegal activities, "desired to help those activities succeed, and . . . engaged in some act of helping the illegal activities." *In re Terrorist Attacks II*, at 564 (*citing Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1023-24 (7th Cir. 2002)). Plaintiffs have not alleged knowledge by Dr. Barzinji of Nasreddin's illegal activities or any action taken in support of those illegal terrorist activities.

Plaintiffs also allege that in February 2001, Mena Estates, a SAAR Network entity loaned $500,000 to Yousef Nada, that was "arranged" by Dr. Barzinji as the President of Mena Estates. (*Ashton*, ¶ 256.) But again, this allegations fails to state a claim. First, Mena Estates, the entity that allegedly transferred funds to Nada is not even a defendant in this, or any other action in this MDL. Moreover, Plaintiffs have not alleged that 1) at the time of this loan Nada, or his organization, were engaged in terrorist activities; or 2) that Dr. Barzinji *knew* that Nada, or his organization, were engaged in terrorist activities. Indeed, Nada was not designated as a sponsor of terrorism by the U.S. government until November 2001. Plaintiffs simply have alleged that Dr. Barzinji "arranged" for the loan, whatever that means, and that he was President of Mena Estates at the time. Plaintiffs do not allege that Dr. Mirza knew of Nada's illegal activities, "desired to help those activities succeed, and . . . engaged in some act of helping the illegal

17

activities." *In re Terrorist Attacks II* at \*19 (*citing Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1023-24 (7th Cir. 2002)); *Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal actions of others in the corporation merely by virtue of his position or office.  He may become liable if he knowingly participates in such actions.")

Plaintiffs also allege that Dr. Barzinji was a director of the World Assembly of Muslim Youth ("WAMY"), and an officer of WAMY's Virginia office. (***New York Marine***, ¶ 454, ***Continental***, ¶ 376.)  However, Plaintiffs fail to allege that Dr. Barzinji did anything to support Al Qeada or the September 11th attacks for WAMY.  In fact, Plaintiffs do not even allege that WAMY's Virginia office did anything to support terrorism or the September 11th attacks, other than to generally and vaguely allege that it is part of the so-called "SAAR Network."  To state a claim against Dr. Barzinji as an officer or director of WAMY, Plaintiffs must allege that Dr. Barzinji knowingly and intentionally participated in some action on behalf of that entity for which it could be held liable for the September 11th attacks.  Dr. Barzinji is not alleged to have done anything for WAMY, rather his alleged liability is based solely on his status as an officer or director of the U.S. office of an entity that allegedly finances Al Qaeda.  That is insufficient to state a claim. *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal actions of others in the corporation merely by virtue of his position or office.  He may become liable if he knowingly participates in such actions."); *see also In re Terrorist Attacks II*, at 567-68 (sustaining *Federal Insurance* complaint against Abdulrahman Alamoudi because those plaintiffs alleged that he "funneled money to al Qaeda through the charities with which he was

involved," and dismissing claims of other plaintiffs who only asserted he was associated with certain entities).

## CONCLUSION

For all the foregoing reasons, Dr. Barzinji respectfully requests that the Court grant his Motion and dismiss all of the claims asserted against him in *Ashton, Burnett, New York Marine, Continental* and *World Trade Center* with prejudice.

Respectfully submitted,


Dated:   December 7, 2005          By: /s/ Nancy Luque _____
                                     Nancy Luque (NL-1012)
                                     Jay Hanson (admitted *pro hac vice*)
                                     Steven K. Barentzen (SB-8777)
                                     DLA PIPER RUDNICK GRAY CARY US LLP
                                     1200 Nineteenth Street
                                     Washington, DC  20036-2247
                                     Tel: 202-861-3900
                                     Fax: 202-223-2085

                                     *Attorneys for Jamal Barzinji*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2005, I caused an electronic copy of the foregoing Memorandum Of Law Of Jamal Barzinji In Support Of Motion To Dismiss Pursuant To Rule 12(B)(6) For Failure To State A Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)