UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  **03 MDL 1570 (RCC)**

In re TERRORIST ATTACKS on          |
SEPTEMBER 11, 2001                  |
                                    |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al. (03 CV 6978)*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al. (02 CV 6977)*

*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al. (04 CV 7065)*

*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et. al. (04 CV 5970)*

*New York Marine & General Ins. Co. v. Al Qaida, et al. (04 CV 6105)*

*Estate of John P. O'Neill, Sr., et al.  v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 1923)*

**MEMORANDUM OF DEFENDANT AL SHAMAL ISLAMIC BANK IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED, LACK OF PERSONAL JURISDICTION AND LACK OF SUBJECT MATTER JURISDICTION**

Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant*
*Al Shamal Islamic Bank*

## **TABLE OF CONTENTS**

I.     **INTRODUCTION** ............................................................................. 1

II.    **THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST** ...................... 3

**AL SHAMAL ISLAMIC BANK** ......................................................................... 3

  A.  Standard of Review ............................................................................ 3

  B.  Allegations in These Complaints ...................................................... 4

     1.  General and Conclusory Allegations ........................................ 4

     2.  Provision of Ordinary Banking Services ................................. 5

     3.  Alleged Investment by Osama bin Laden ................................. 7

     4.  Investments by Others ........................................................... 10

     5.  Actions by Employees ........................................................... 10

  C.  Additional Allegations/RICO Statements ....................................... 11

  D.  Specific Arguments ......................................................................... 13

     1.  Causation (Addressed as to all claims) ................................. 13

     2.  Concerted Action - Conspiracy & Aiding and Abetting (Addressed as to all claims) ............................................................................................... 14

     3.  ATCA ................................................................................... 15

     4.  RICO ..................................................................................... 15

     5.  TVPA ................................................................................... 16

     6.  Negligence ............................................................................ 17

III.    **THIS COURT LACKS PERSONAL JURISDICITON** ................................ 17

**OVER AL SHAMAL** ......................................................................................... 17

  A.  Standard of Review .......................................................................... 17

  B.  Al Shamal Lacks Minimum Contacts with the United States ............ 18

IV.    **THIS COURT LACKS SUBJECT MATTER JURISDICITON** .................. 20

**OVER THE CLAIMS AGAINST AL SHAMAL** .......................................... 20

V.    **CONCLUSION** .............................................................................. 21

## TABLE OF AUTHORITIES

Federal Cases

*Am. Arbitration Ass'n, Inc. v. DeFonseca*, 1996 U.S. Dist. LEXIS 9160, at *20 (S.D.N.Y. June 28, 1996)…………………………………………………………………16

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130 (2d Cir. 1997)…………2, 8

*Arndt v. UBS AG*, 342 F. Supp. 2d 132 (E.D.N.Y. 2004)………………………………..16

*Bichler v. Eli Lilly & Co.*, 436 N.E.2d 182 (N.Y. 1982)………………………………...14

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)……………………………………. 4

*Burnett v. Al Baraka*, 274 F. Supp. 2d 86 (D.D.C. 2003)………………..................passim

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp 1260 (S.D.N.Y. 1991)…19

*DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)………………………..4

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003)…………..15

*First Nat'l City Bank v. Banco Para El Comercio Exterior*, 462 U.S. 611 (1983)……....8

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)……………..14

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)…………………………………….......4

*In re: Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003)…………………............17

*In re: Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001)…........4

*In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)....................................................................................................................passim

*In re: Terrorist Attacks on September 11, 2001*, 2005 U.S. Dist. LEXIS 20841 (S.D.N.Y. Sept. 21, 2005…………………………………………………………passim

*Intermor v. Walt Disney Co.*, 250 F. Supp. 2d 116 (E.D.N.Y. 2003)……………………20

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)……………………………………….3

*ITEL Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 1988 U.S. Dist. LEXIS 7051, at *12 (S.D.N.Y. July 13, 1988, *aff'd in part*, *vacated in part*, 909 F.2d 698 (2d Cir. 1990)……………………………………………………………………… 8

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Services, Inc.*, 306 F. Supp. 2d 482 (S.D.N.Y. 2004)…………………………………………..........2, 8, 9, 10

*Kadic v Karadzic*, 70 F.3d 232 (2d Cir. 1995)…………………………………............15

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)…………………………………20

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)…………………………4

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)……………………...18

*Papasan v. Allain*, 478 U.S. 265 (1986)………………………………………………….4

*Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521 (D.C. Cir. 2001)......17

*Semiconductor Materials v. Citibank Int'l PLC*, 969 F. Supp. 243 (S.D.N.Y. 1997).…....19

*Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409 (1986)…………………………4

*Tasso v. Platinum Guil Int'l*, 1997 WL 16066, at *6 (S.D.N.Y. Jan. 16, 1997)…………11

*Timberlane Lumber Co. v. Bank of America*, 749 F.2d 1378 (9th. Cir. 1984), *cert. denied*, 472 U.S. 1032 (1985)………………………………………………………………………20

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.C. 2002)…………………3, 20

*United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116 (D.D.C. 2000)………………..18

*Volkswagenwerk Aktisngesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984)...................................................................................................................................19

Federal Statutes

28 U.S.C. § 1350 (2000)…………………………………………………………………… 15

28 U.S.C. § 1962 (2000)…………………………………………………………………...15, 16

28 U.S.C. § 1964 (2000)…………………………………………………………………… 15

State Cases

*DiPonzio v. Riordan*, 679 N.E.2d 616 (N.Y. 1997)………………………….........3, 20

Federal Rules

Fed. R. Civ. P. 12(b)(6)………………………………………………………………... 1

Other Sources

Associated Press Archive, http://archive.ap.org.................................................................12

Office of Foreign Asset Control, *Specially Designated Nationals and Blocked Persons* (January 4, 2006), http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf........8

Press Release, United States Dep't of the Treas., Test. of Juan Carlos Zarate, Assistant Sec'y Terrorist Fin. & Fin. Crimes U.S. Dep't of the Treas. before the House Fin. Servs. Subcomms. on Domestic & Int'l Monetary Policy, Trade & Tech. & Oversight & Investigations (September 30, 2004), *available at* http://www.treas.gov/press/releases/js1971.htm.............................................................8

State Cases

Federal Statutes

Federal Rules

Other Sources

# I.     __INTRODUCTION__

May it please the Court, Defendant Al Shamal Islamic Bank ("Al Shamal") hereby files this memorandum in support of its motion to dismiss the six Multidistrict Litigation complaints cited in the caption: *Federal Insurance Co., et al. v. Al Qaida, et al. (03 CV 6978)("Federal"); Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al. (02 CV 6977)("Ashton"); Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al. (04 CV 7065)("Cantor"); Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et. al. (04 CV 5970)("Continental"); New York Marine & General Ins. Co. v. Al Qaida, et al. (04 CV 6105)("NYMAGIC");* and *Estate of John P. O'Neill, Sr., et al.  v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 1923)("O'Neill") (*referred to together as "complaints").  Al Shamal requests dismissal on three bases: (1) failure to state a claim under Fed. R. Civ. P. 12(b)(6); (2) lack of personal jurisdiction under Fed. R. Civ. R. 12 (b)(2) ; and (3) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

The Plaintiffs herein rely heavily on general and conclusory allegations that Al Shamal supported international terrorism.  As this Court is well aware, these conclusory allegations alone cannot survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005) ("*Terrorist Attacks I"*).  Plaintiffs' reliance on these conclusory allegations is even more troubling because due to "the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant."  *Id.* at 831 (quoting *Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 103-104 (D.D.C. 2003) ("*Burnett I*")).

Apart from these general and conclusory allegations, Plaintiffs have made only a few specific factual allegations about Al Shamal, all of which are insufficient to maintain the present actions.  One example thereof is that Al Shamal provided ordinary banking services to Al Qaida members or "charity fronts" in the early 1990's in Khartoum, Sudan.  But this Court has held that the provision of ordinary banking services does not provide a basis for liability.  *Id.* at 833 (citing *Burnett I,* 274 F. Supp. 2d at 109).

Another allegation is that Osama bin Laden invested $50 million in the bank at the time of its founding.  Though this allegation is preposterous and wholly false, even when treated as true it must be dismissed.  As argued more fully *infra,* for a company to be held liable for the acts of an investor, there must be a "reverse piercing" of the corporate veil.  *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997).  But Plaintiffs have not made the necessary arguments to accomplish this reverse piercing.  *See id.  See also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Services, Inc.,*306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).  For this same reason, Al Shamal cannot be held liable for the actions of other alleged investors.  Plaintiffs have also not alleged the necessary elements to hold Al Shamal responsible for the supposed actions of any employees.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 836.  Additionally, all of the allegations pertaining to investments made in the bank took place before the 1996 bin Laden fatwa, which this Court has held gave the general public knowledge of bin Laden's evil intent towards the United States.  *See In re: Terrorist Attacks of September 11, 2001,* 2005 U.S. Dist. LEXIS 20841, at *65 (S.D.N.Y. Sept. 21, 2005) ("*Terrorist Attacks II*").  Absent factual allegations of specific knowledge of bin Laden's

intent a defendant cannot be liable in these suits for actions which took place prior to the 1996 fatwa. *Id.*

Defendant also hereby requests dismissal for lack of personal jurisdiction. As evidenced by the attached affidavit, Al Shamal has never conducted business of any sort in the United States. *See* Affidavit of Mr. Mohamed Bushra Khalaf Alla ("Alla Aff."). Because Al Shamal has never availed itself of the jurisdiction of the United States in any way, the minimum contacts necessary to sustain this action are lacking and Al Shamal must be dismissed. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Defendant also hereby request dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) based on the time frame involved, i.e. alleged investments and banking activities in the 1980's and early 1990's. Courts deciding similar issues to those presented herein have previously recognized that the absence of causation may be both a jurisdictional issue and a liability issue. *See Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.C. 2002). Because of an obvious lack of connection between the Plaintiffs' injuries and the alleged conduct of Al Shamal, this Court can decline to exercise jurisdiction over such claims. *See DiPonzio v. Riordan*, 679 N.E.2d 616, 619 (N.Y. 1997).

## II.       THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST AL SHAMAL ISLAMIC BANK

### A.  Standard of Review

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v.*

*King & Spalding,* 467 U.S. 69, 73 (1984).  In reviewing such a motion, the Court must construe the complaint in the light most favorable to plaintiff and must accept as true all allegations and all reasonable factual inferences drawn from the well-pleaded factual allegations.  *Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409, 411 (1986).

"However, the Court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint," *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  A court must reject legally conclusory allegations, treating only specific factual allegations as true.  *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

B.  Allegations in These Complaints

1.  General and Conclusory Allegations

All of the complaints contain conclusory allegations that Al Shamal supported international terrorism.  *Federal* ¶¶ 66, 332; *Ashton* ¶¶ 464, 478; *Cantor* ¶¶ 92, 127,165; *Continental* ¶¶602-04, 609-12, 615-16; *NYMAGIC* ¶¶ 43, 303, 311, 312; *O'Neill* ¶ 22; *Cantor* ¶¶ 127, 135.  It is well established that these general and conclusory allegations are an insufficient basis of liability as "[a] complaint which consist of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)." *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

Such conclusive allegations are always insufficient, as a matter of law, to maintain a lawsuit, even if they contain all the requisite elements of a cause of action.  *Id.* at 832-33. For example, in examining the claims made against Al Rajhi Bank in *Ashton* and *Burnett*, this Court noted that the plaintiffs "do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant Charities… were supporting terrorism."  *Id.* at 833.  This was the case even though the complaint contained allegations that "Al Rajhi knew or should have known its depositors.. were material supporters of terrorism."  *Id.* at 831.  Therefore, these conclusory allegations must also be dismissed as to Al Shamal.

2.  Provision of Ordinary Banking Services

The complaints all contain allegations that Al Shamal provided ordinary banking services to Al Qaida and/or charities which are alleged to have supported Al Qaida. *Federal* ¶¶325-30; *Ashton* ¶¶ 44-48, 58, 65; *Continental* ¶¶ 51, 57, 58, 63, 64, 87; *NYMAGIC* ¶¶ 304-10; *O'Neill* ¶ 47; *Cantor* ¶ 129.  Specifically, it is alleged that Al Shamal maintained bank accounts for Osama bin Laden and his business operations in Sudan in the early 1990's.  Al Shamal is also alleged to have maintained bank accounts for charities accused of being "Al Qaida fronts," and to have been one of a number of banks which participated in a monetary transfer made on behalf of Al Qaida.

All Courts examining the issue have rejected the proposition that a bank can be held responsible for the way in which its alleged customers use their money.  *Burnett I*, 274 F. Supp. 2d at 109; *Terrorist Attacks I,* 349 F. Supp. 2d at 832. Examining this potential liability, this Court concluded that there is no support "for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of

deposits, withdrawals, check clearing services, or any other routine banking service."
349 F. Supp. 2d at 832 (quoting *Burnett I*, 274 F. Supp. 2d at 109).  Though the act of
"funneling," or transferring money to a terrorist, is "unlawful and actionable," there is no
basis for the liability of the bank which unwittingly served as a "funnel."  *Burnett I,* 274
F. Supp. 2d at 109.

In deciding the motion to dismiss of Al Rajhi Banking & Investment Corporation
("Al Rajhi"), Judge Robertson dismissed all claims related to the provision of banking
services, keeping Al Rajhi in the suit only because of allegations that it misused its own
zakat fund, hence "funneling" money to terrorists rather than being a simple "funnel."  *Id.*
After receiving the *Burnett* Plaintiffs' response to their motion for a more definite
statement, Al Rajhi filed for dismissal before this Court.  *Terrorist Attacks I,* 349 F. Supp.
2d at 832.  Upholding Judge Robertson's earlier ruling, and rejecting the Plaintiff's
expansive rational re: a "know your customer rule," this Court dismissed the complaint
against Al Rajhi "in its entirety."  *Id.* at 833.  As Plaintiffs herein are alleging the same
basis for liability, all claims against Al Shamal must also be dismissed.

Though the complaints all fail to mention the date that these accounts were allegedly
opened, the RICO Statements which were filed set the dates at 1992 and 1993.  *O'Neill*
RICO Statement Applicable to Al Shamal Islamic Bank ("*O'Neill* RICO Statement") at
17; *Federal Insurance* RICO Statement Applicable to Al Shamal Islamic Bank ("*Federal*
RICO Statement") at 10.  This is far before the 1996 bin Laden fatwa, which this court
has held signals knowledge sufficient for a defendant to reasonably foresee the 9/11
attacks.  *Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841, at \*65.  Absent factual
allegations of knowledge prior to the 1996 fatwa, a Defendant cannot be held liable for

the attacks of 9/11.  *Id.*  Therefore, even if this Court decides to overturn its previous well-reasoned ruling and hold Al Shamal bank responsible for what its account holders allegedly did with their money, the claims against Al Shamal must still be dismissed because Al Shamal would not have had knowledge as to its' alleged customers intent.

### 3.   Alleged Investment by Osama bin Laden

All of the complaints allege that Osama bin Laden invested U.S. $50 Million in Al Shamal and/or is a shareholder.  *Federal* ¶¶ 321-23; *Ashton* ¶¶ 38-39; *Continental* ¶¶ 49, 51, 382; *NYMAGIC* ¶¶ 292, 300-02; *O'Neill* ¶ 46; *Cantor* ¶ 128.  Though the Court is bound to treat these allegations as true, they are patently false.  Defendant's counsel, per oral argument before this Court, has obtained shareholder records that demonstrate that neither Osama bin Laden, or any Al Qaida front, was ever an investor in Al Shamal. Defendants' counsel has repeatedly offered to share this information with Plaintiffs' counsel, but has always been rebuffed.

Defendants' counsel, however,  has been successful in sharing this information with the Library of Congress, which has assured them it will exclude information from the incorrect 1996 State Department fact sheet from its future publications.  A review of Congressional Research Service publications which have been made public shows that this claim has not been repeated since the 2002 publication cited in the complaints, despite their having been literally dozens of CRS reports on the subject of international terrorism.  Additionally, Al Shamal has never been designated by OFAC or any other US government body or been indicted for any criminal offense.  *See* Office of Foreign Assets

Control, *Specially Designated Nationals and Blocked Persons* (January 4, 2006), http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf.[1]

Though these claims are false, even when treated as true they do not result in any liability for Al Shamal. What plaintiffs are effectively trying to do is hold a company responsible for the actions of an investor, a situation known as "reverse" veil piercing. *Am. Fuel Corp.,* 122 F.3d at 134. For this to be accomplished, however, New York Law[2] requires allegations identical to those needed for an ordinary veil piercing. *JSC Foreign,* 306 F. Supp. 2d at 485. Under New York Law, to hold a corporate entity responsible for the actions of an investor it is necessary to allege that: "(1) the owner exercised complete domination over the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in injury." *Id.*

Plaintiffs have not pleaded any of these elements. For instance, they have not alleged that Osama bin Laden controlled Al Shamal. Further supporting the notion that Osama bin Laden never controlled Al Shamal, Plaintiffs have alleged investments in Al Shamal by numerous other entities, including: Saleh Abdullah Kamel, Omar Abdullah Kamel, al Baraka Investment and Development, Faisal Islamic Bank, the Sudanese Government, Al

---

[1] Were the allegation of bin Laden's investment of $50 Million in Al Shamal true, the Office of Foreign Asset Control would likely be especially motivated to designate Al Shamal and seek to seize its funds since bin Laden's alleged investment would amount to a quarter of the $200 Million the Treasury Department has seized from all terrorist sources since September 11, 2001. *See* Press Release, United States Dep't of the Treas. , Test. of Juan Carlos Zarate, Assistant Sec'y Terrorist Fin. & Fin. Crimes U.S. Dep't of the Treas. before the House Fin. Servs. Subcomms. on Domestic & Int'l Monetary Policy, Trade & Tech. & Oversight & Investigations (September 30, 2004), *available at* http://www.treas.gov/press/releases/js1971.htm.

[2] It is correct to apply New York Law when examining veil piercing, regardless of where the entity is incorporated, because it involves issues of rights between the company and the creditor/tortfeasor and hence the "internal affairs rule" is inapplicable. *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 1988 U.S. Dist. LEXIS 7051, at *12 (S.D.N.Y. July 13, 1988) (citing *First Nat'l City Bank v. Banco Para el Comercio Exterior,* 462 U.S. 611, 621 (1983)), *aff'd in part, vacated in part,* 909 F.2d 698 (2d Cir. 1990).

Shamal for Investment and Development, Tadamon Islamic Bank, Dar al Mall Al Islami, and others. *Federal* ¶¶ 321-22; *Ashton* ¶¶ 40-2, 49, 205, 436, 448, 456; *Continental* ¶¶ 51,53-5, 65, 71, 85, 249, 268, 269, 379, 477, 485; *NYMAGIC* ¶¶ 283, 292, 301, 317, 322, 327, 439, 465; *O'Neill* ¶ 36, 45, 48, 53; *Cantor* ¶¶ 122-23, 125-26, 130, 132-34.

Even assuming *arguendo* that Plaintiffs had specifically alleged that Osama bin Laden controlled Al Shamal, they have not alleged the factual bases necessary to support this legal conclusion. *See Terrorist Attacks I,* 349 F. Supp. 2d at 833. Nor have they pointed to any fraud on the part of Al Shamal, such that justice would require "reverse piercing," let alone a fraud which actually resulted in the Plaintiffs' injuries. Thus the allegation that Osama bin Laden invested in Al Shamal Bank is legally insufficient, as the complaints lack the necessary allegations to "reverse pierce." *See JSC Foreign,* 306 F. Supp. 2d at 485.

While the allegation that Osama bin Laden owned stock in Al Shamal Bank, assuming *arguendo*, may be sufficient to attach those alleged shares based on a judgment against him, it is clear that allegation does not result in the liability of Al Shamal Bank for an attack in which it did not participate in any way. Additionally, the incorrect State Department Fact Sheet about the alleged investment was issued in 1996. The alleged investment, therefore, must have taken place before bin Laden issued his fatwa calling for attacks on the U.S., cutting off liability for Al Shamal since it would not have had knowledge of bin Laden's evil intent towards the U.S. *See Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841, at *65.

4.   Investments by Others

As noted above, Plaintiffs have also alleged investments in Al Shamal by numerous

other individuals and companies.  *Federal* ¶¶ 321-22; *Ashton* ¶¶ 40-2, 49, 205, 436, 448,

456; *Continental* ¶¶ 51,53-5, 65, 71, 85, 249, 268, 269, 379, 477, 485; *NYMAGIC* ¶¶ 283,

292, 301, 317, 322, 327, 439, 465; *O'Neill* ¶ 36, 45, 48, 53; *Cantor* ¶¶ 122-23, 125-26,

130, 132-34.

As demonstrated above, absent allegations of involvement going far past that of the

typical investor (allegations which are absent in all of the suits), companies are simply

not liable for the actions of investors.  *JSC Foreign,* 306 F.Supp.2d at 485.  Since these

allegations are lacking in all complaints *sub judice*, Plaintiffs have failed to state a claim

as to Al Shamal.  These alleged investments also took place before the 1996 bin Laden

fatwa, which this Court has held gave the general public knowledge of bin Laden's evil

intent towards the United States.  *See Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841,

*65 (S.D.N.Y. 2005).  Because factual allegations of specific knowledge of bin Laden's

intent are lacking, Al Shamal cannot be liable for the alleged investments.  *See Id.*

5.   Actions by Employees

Plaintiffs have alleged actions by an employee of Al Shamal, Former Chairman Adel

Batterjee.  *Federal* ¶331; *Ashton* ¶43, 296; *Continental* ¶¶ 51, 55-6, 269, 381-82;

*NYMAGIC* ¶¶310, 463; *O'Neill* ¶¶ 49-50; *Cantor* ¶ 131.  Batterjee is alleged to have

supported Al Qaeda through his activities with the Benevolence International Foundation

(BIF), the World Association of Muslim Youth, and the al-Bir Organization.  Batterjee

and BIF, unlike Al Shamal, have been designated by OFAC as supporters of terrorism.

But "an employee's actions cannot be a basis for employer liability unless the employee

was acting in furtherance of the employer's business.  *Terrorist Attacks I,* 349 F. Supp.

2d at 836 (citing *Tasso v. Platinum Guil Int'l,* 1997 WL 16066, at *6 (S.D.N.Y. Jan. 16,

1997)).  Since all complaints are wholly lacking in allegations that Batterjee's alleged

support of Al Qaeda was in furtherance of Al Shamal's business, the provision of

banking services in Khartoum, Sudan, the alleged employment of Baterjee cannot serve

to maintain Al Shamal's presence in the suits examined herein.


### C.   Additional Allegations/RICO Statements


The Plaintiffs in only two of the cases currently before this Court, *O'Neill* and

*Federal*, have timely filed RICO Statements.  The *Continental* Plaintiffs filed a RICO

Statement in the 03-1570 Docket on December 19, 2005, three days after the date plainly

specified in the Stipulation approved by this Court.  The *Continental* plaintiffs have never

filed the RICO Statement in the case-specific docket, 04-5970.  The Plaintiffs in *Cantor*

attempted to file a More Definite Statement as to Al Shamal.  That filing, however, was

deficient and not in accordance with Court rules.  Notice of Filing Error, No. 04-7065,

Docket Doc. No. 195 (Sept. 29, 2005).  Plaintiffs have been notified twice of this

deficiency, but have not moved to correct it.  *Id.*; Note to Re-file, No. 04-7065 (Oct. 7,

2005).  For this reason, the Court should not consider any allegations which appear in the

*Continental* RICO Statement or the *Cantor* More Definite Statement.  However, even if

the Court does decide to consider these deficient filings, they contain no additional allegations of material value and the claims against Al Shamal must still be dismissed.

The allegations which appear in Exhibit A of both RICO Statements are identical, save for an introductory paragraph in the *O'Neill* filing.  *Compare O'Neill* RICO Statement, *with Federal* RICO Statement.  The RICO Statements are also inclusive of the materially similar More Definite Statement which the *Cantor* Plaintiffs attempted to file and the *Continental* RICO Statement.  The allegations in the RICO Statements are almost entirely repetitive of the allegations in the complaints and/or allegations about alleged investors and employees.  The allegations involving supposed investors and employees have been addressed *supra,* and do not require any additional comment.

Addressing the few new but immaterial allegations, both RICO Statements claim that a "spokesman and shareholder for Al Shamal Islamic Bank issued a statement in 1998 promoting jihad as envisioned by the DMI Trust, urging 'all those who are able to carry a gun to join the [military training] camps… Jihad has now become an obligation that comes before any other duty.'"  *O'Neill* RICO Statement at 13; *Federal* RICO Statement at 7.  The RICO Statements cite an AP News story which was allegedly published twice in 1998.  *Id.*  A search of the AP Archive, however, revealed no stories in 1998 which mentioned Al Shamal or DMI Trust.  *See* http://archive.ap.org.  More importantly, no stories in the AP Archive contain the quoted language.  *See id.*

Even ignoring these discrepancies, this sensational and baseless allegation cannot serve to maintain Al Shamal's presence in the suits.  Plaintiffs have not alleged that the "spokesman" of Al Shamal Bank was acting in furtherance of his supposed employer, a necessity for the liability of Al Shamal.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 836.

Nor have plaintiffs connected the "[military training] camps"[3] of Sudan in 1998 to the attacks of September 11, 2001 in any way.

The RICO Statements also contain an allegation that Al Shamal donated to the Sudanese Government's "Islamic Shariah Support Fund" ("ISSF") in 1991.  *O'Neill* RICO Statement at 18; *Federal* RICO Statement at 11.  Plaintiffs have failed, however, to tie the ISSF to Al Qaeda let alone to the 9/11 tragedy.  Even if this Court holds that Plaintiffs have adequately pleaded a connection between the ISSF and the attacks of 9/11, which they clearly have not, liability would still be barred because of the lack of knowledge of bin Laden's intent to attack the U.S. prior to 1996.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 836.

D.  Specific Arguments

1.  Causation (Addressed as to all claims)

As this Court knows, proximate cause is an essential element of any claim made herein.  In order to meet their burden, Plaintiffs must present sufficient allegations that Defendant's conduct, operating as a retail bank in Khartoum, Sudan, was the cause-in fact of their injuries.  *Terrorist Attack I,* 349 F. Supp. 2d at 797 n.26.  Plaintiffs must show that Defendant's actions were a substantial cause of their injuries and that the

---

[3] The brackets surrounding the words "military training" ordinarily indicate a paraphrasing or insertion and it is unclear if this was done by the AP (who Plaintiffs claim originally published the statement even though it does not appear anywhere in the AP Archive) or Plaintiffs' Counsel.  This is just one of many easily apparent problems with this allegation in particular, and generally with allegations throughout the Plaintiffs' filings.

injuries were reasonably foreseeable to Al Shamal. *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769 (2d Cir. 1994).

Plaintiffs have failed to make allegations sufficient to meet this burden as to Al Shamal. *See Supra* pp. 4-12. Plaintiffs have not alleged actions on the part of the Al Shamal which actually led to the horrible attacks of September 11, 2001. Nor have they alleged sufficient facts to demonstrate that Al Shamal should have been able to foresee the 9/11 attacks from investments and banking activities in the 1980's and early 1990's.

Instead, Plaintiffs have strung together a list of conclusory legal allegations, absent necessary facts, and factual allegations wholly unrelated to the subject of the present suits. Because the Plaintiffs have not met their burden of alleging speculative facts that Al Shamal's conduct was the proximate cause of their injuries, all the claims herein must be dismissed.

2.  <u>Concerted Action - Conspiracy & Aiding and Abetting (Addressed as to all claims)</u>

"Concerted action liability under New York law is based on the principle that all those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to a wrongdoer… are equally liable with him." *Terrorist Attacks I,* 349 F. Supp. 2d at 826 (quoting *Bichler v. Eli Lilly & Co.,* 436 N.E.2d 182, 185 (N.Y. 1982)). Therefore, to be liable under theories of concerted action, the Defendants must be aware of the wrongful acts by the primary actor and must actively try to further them. *Id.* at 826.

An examination of the allegations made herein against Al Shamal reveals the lack of any allegations of knowledge. When allegations of knowledge do appear, these are

contained in conclusory statements without the factual basis needed to support Plaintiffs'

contentions.  These legally conclusory statements are insufficient to hold Al Shamal

liable herein.  Plaintiffs have also failed to allege any actions on the part of Al Shamal

which actively furthered Al Qaida or its evil objectives.  Because both elements are

lacking, Al Shamal cannot be held liable under theories of concerted action and all claims

against the bank must be dismissed.

   3.   ATCA

   The ATCA allows for an action in federal court by an alien who sues for a tort

committed in violation of international law.  28 U.S.C. § 1350 (2000).  *See also Kadic v*

*Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995).  These claims against Al Shamal must fail

because none of the Plaintiffs have been identified as aliens.  Even if Plaintiffs are

identified as aliens, the claims must be dismissed for lack of causation, actual and

proximate.

   4.   RICO

   Plaintiffs have initiated a civil RICO action under 28 U.S.C. § 1964 against Al

Shamal for violations of 28 U.S.C. § 1962 (c) and/or (d).  Under § 1962(c) "an alleged

RICO defendant must have had 'some part in directing' the 'operation or management' of

the enterprise itself to be liable." *Dubai Islamic Bank v. Citibank, N.A.,* 256 F. Supp. 2d

158, 164 (S.D.N.Y. 2003).  As demonstrated above, Plaintiffs have failed to state even a

claim that Al Shamal aided or abetted Al Qaida's criminal enterprises or the 9/11 tragedy

in particular, let alone managed or directed the enterprise and attack.

"The Second Circuit has held in the context of a motion to dismiss that to state a claim under *[§ ] 1962(d)*, the 'complaint must allege some factual basis for a finding of a conscious agreement among the defendants.'" *Am. Arbitration Ass'n, Inc. v. DeFonseca*, 1996 U.S. Dist. LEXIS 9160, at *20 (S.D.N.Y. June 28, 1996).  But as argued above, Plaintiffs have not pleaded knowledge of or participation in Al Qaida's conspiracy to inflict the 9/11 attack on our country.  Those conclusory allegations of knowledge and activities in support of the alleged conspiracy are legally insufficient as they fail to provide any factual basis for their legal conclusions.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 833.  This Court has previously examined plaintiffs' civil RICO claims against similarly situated defendants and dismissed them.  *Id.* at 828.  Because Plaintiffs' allegations have not changed materially, this Court must also dismiss the RICO claims against Al Shamal. Additionally, the Plaintiffs in *Cantor, Ashton,* and *NYMAGIC* all failed to even file the required RICO statements as to Defendant Al Shamal.  The *Continental* RICO Statement was improperly filed and should be rejected.  Personal injury Plaintiffs' (herein *O'Neill* and *Ashton*) RICO claims must also be dismissed because they have not, and cannot, allege the necessary damages to "business property." *Burnett I,* 274 F. Supp. 2d at 102.

5.  TVPA

"The TVPA establishes a cause of action in federal court against an individual who, under apparent authority, or color of law, of any foreign nation subject an individual to torture or extrajudicial killing." *Terrorist Attacks I,* 349 F. Supp. 2d at 828 (quoting *Arndt v. UBS AG,* 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).  This Court has previously

rejected Plaintiffs' TVPA claims against non-governmental entities because they were not alleged to have operated "under the color of law." *Terrorist Attacks I,* 349 F. Supp. 2d at 828. Similar allegations are lacking in all of the suits *sub judice,* and all remaining TVPA claims must also be rejected.

### 6. Negligence

As this Court knows, a duty owed by the Defendant to the Plaintiff is a necessary element of a claim for negligence. This Court has previously examined the complaints in the MDL cases and has recognized that they all fail to include this necessary element. *Id.* at 831. Because Plaintiffs herein have failed to identify the duty owed to them by Al Shamal, all negligence claims must be dismissed.

## III.   THIS COURT LACKS PERSONAL JURISDICITON OVER AL SHAMAL

### A. Standard of Review

Pursuant to Rule 12(b)(2), the plaintiff bears the burden of making out a *prima facie* case to establish personal jurisdiction over the defendant. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In order to survive a motion to dismiss pursuant to Rule 12(b)(2), plaintiffs must provide facts sufficient to establish minimum contacts between the defendants and the forum. *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum; mere

allegations of a conspiracy will not suffice." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).  *See also Terrorist Attacks I,* 349 F. Supp. 2d at 805.

### B.   Al Shamal Lacks Minimum Contacts with the United States

This Court must dismiss Plaintiffs' lawsuits against Al Shamal because Plaintiffs have failed to plead a sufficient nexus between Al Shamal and the United States. Plaintiffs could not plead sufficient contacts because, as evidenced by the attached affidavit, Al Shamal current has no, and never has had any, contacts with the United States.  *See* Alla Aff. ¶¶5-14.[4]

Al Shamal is a bank operating in Khartoum, Sudan.  It is a small bank, with no branches or other offices outside of Sudan.  Al Shamal has never incorporated, or been otherwise organized, within the U.S.  *Id.* at ¶ 5.  It has never had any offices of agents within the United States.  *Id.* at ¶ 8.  Al Shamal has also never solicited or accepted business within the United States.  *Id.* at ¶ 6.

Because there are no contacts to allege, Plaintiffs instead rely on legally conclusory allegations of conspiracy.  But these are allegations are not sufficient to survive the present motion.  *See Philip Morris Inc.*, 116 F. Supp. 2d at 121.  *See also Terrorist Attacks I,* 349 F. Supp. 2d at 805. In order to establish personal jurisdiction over a

---

[4] The affidavit as filed contains two minor typographical errors.  ¶ 5 should read: Al Shamal is not, and has never been, domiciled, organized or incorporated in *any* form in the United States (instead of "*my* form").  ¶ 6 should read: Al Shamal is not, and has never been, licensed or registered to do *business* in the United States (instead of "do *bushes*").  Counsel for Defendant has confirmed these errors and is awaiting delivery of a corrected affidavit.  Defense counsel will maintain both copies of the affidavit and will file the updated one if so requested.

defendant based on the acts of a co-conspirator, "Plaintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in" the forum. *Terrorist Attacks I,* 349 F. Supp. 2d at 805 (citing *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991)). As demonstrated *supra*, Plaintiffs have not met any of these requirements as to Al Shamal. *Supra* pp. 14-15. The actions of alleged co-conspirators then cannot be attributed to Al Shamal for purposes of determining whether this Court has personal jurisdiction over the defendant.

Beyond these legally conclusive statements, Plaintiffs allege only a correspondent banking relationship between Al Shamal and three US registered banks. But "Courts have repeatedly found that a correspondent bank relationship between a foreign bank and a New York financial institution does not provide sufficient grounds to exercise personal jurisdiction over a foreign bank." *Semiconductor Materials v. Citibank Int'l PLC,* 969 F. Supp. 243, 244 (S.D.N.Y. 1997) (cited in *Terror Attacks I,* 349 F. Supp. 2d at 819). This Court itself has recognized that a correspondent relationship with a U.S. based bank, absent additional allegations that are lacking as to Al Shamal, does not satisfy due process requirements and require dismissal. *Terror Attacks I,* 349 F. Supp. 2d at 820.

Plaintiffs also allege actions within the United States by investors in Al Shamal. It is well settled issue of law that the connections of one corporate entity cannot serve as minimum contacts for a related corporate entity. *Volkswagenwerk Aktisngesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir. 1984). In fact, "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned

subsidiary." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). *See also Intermor v. Walt Disney Co.*, 250 F. Supp. 2d 116, 120 (E.D.N.Y. 2003). Since the contacts of a parent corporation cannot be attributed to a wholly owned subsidiary, the alleged contacts of a few minority shareholders of Al Shamal cannot serve to grant this Court personal jurisdiction over Al Shamal.

## IV.     THIS COURT LACKS SUBJECT MATTER JURISDICITON OVER THE CLAIMS AGAINST AL SHAMAL

Al Shamal additionally moves to dismiss the complaints for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Courts deciding similar issues to those presented in the cases at hand have previously recognized that the absence of causation may be both a jurisdictional issue and a liability issue. *See Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.C. 2002). Plaintiffs' allegations revolve around the provision by Al Shamal of ordinary banking services and investments in Al Shamal in the 1980's and early 1990's. Even if the Court makes a giant leap of logic that there is some consequential relationship between this "conduct" and the occurrence of September 11th, it is the kind of "indirect consequence...at most, a remote possibility at the time the conduct occurred and thus was not a foreseeable consequence." *DiPonzio*, 679 N.E.2d at 620. *See also Timberlane Lumber Co. v. Bank of America*, 749 F.2d 1378, 1385 (9th. Cir. 1984), *cert. denied*, 472 U.S. 1032 (1985) (investment decision to foreclose on assets in Honduras, which later has effect on plaintiff in the United States does not meet foreseeability requirement for subject matter jurisdiction). Because of a fundamental lack

of connection between the Plaintiffs' injuries and the alleged conduct of Al Shamal, this Court can decline to exercise jurisdiction over such claims.

## V.   <u>CONCLUSION</u>

For good cause shown in this memorandum, the Court should grant the motion to dismiss based on failure to state a claim for which relief can be granted, lack of personal jurisdiction and/or for lack of subject matter jurisdiction and dismiss all present actions against Al Shamal.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Al Shamal*
*Islamic Bank*

Dated : January 17, 2006

21