UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|                                                    |                                                                                    |
|----------------------------------------------------|------------------------------------------------------------------------------------|
| In re TERRORIST ATTACKS on SEPTEMBER 11, 2001      | 03 MDL 1570 (RCC)                                                                  |

This document relates to:

*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al. (04 CV 7065)*

*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, e. al. (04 CV 5970)*

*Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7279)*

*New York Marine & General Ins. Co. v. Al Qaida, et al. (04 CV 6105)*

*Estate of John P. O'Neill, Sr. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 1923)*

*World Trade Center Prop., L.L.C., et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7280)*

**REPLY MEMORANDUM OF DEFENDANTS
SALEH A. KAMEL, AL BARAKA INVESMENT & DEVELOPMENT CORP.
AND DALLAH AL BARAKA LLC IN SUPPORT OF THEIR MOTION TO
DISMISS PURSUANT TO RULES 12(b)(1) and 12(b)(6)**

Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendants Saleh Abdullah Kamel, Al Baraka Investment & Development Corp., and Dallah al Baraka*

**TABLE OF CONTENTS**

**I. Introduction** ............................................................................................................. 1

**II. Failure to State a Claim** ................................................................................................ 2

   A.  Plaintiffs' Reliance on Legally Conclusory Allegations............................................ 2

   B.  Plaintiffs' Allegations of Ordinary Banking Services................................................ 3

   C.  Plaintiffs' Reliance on *Linde v. Arab Bank* is Unjustified. ....................................... 6

   D.  Plaintiffs Fail to Differentiate the Present Cases From *Ashton* and *Burnett*............. 6

   E.  Corporate Law Prohibits the Imputation of Allegations ............................................7

   F.  Allegations Wholly Unrelated to the Claim for Relief............................................... 9

**III. Lack of Subject Matter Jurisdiction**....................................................................... 11

**IV. Conclusion** .............................................................................................................. 12

# TABLE OF AUTHORITIES

Cases

*Am. Feed & Livestock Co., Inc. v. Kalfco, Inc.*, 540 N.Y.S.2d 354, 355 (N.Y. App. Div. 1989) .................................................................................................................... 6, 8

*Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983) ................................................................................................................. 2

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003)………..5

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996). ..................................... 2

*Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993) .......................................... 3

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1994) ........................................................................................ 2

*Galeri Gmurzynka v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003)(same), *aff'd* 355 F.2d 206 (2d Cir. 2004) ................................................................................................. 3

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995) .............................. 3

*In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 836 (S.D.N.Y. 2005) ................................................................................................................... passim

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) ................................................................................ 8

*Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) ............................................... 6

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ..................................................................... 2

*Thrift Drugs, Inc. v. Universal Prescription Adm'rs*, 131 F. 3d 95, 97 (2d Cir. 1997) ...... 8

Comes now Defendants Saleh Abdullah Kamel ("Kamel"), al Baraka Investment and Development Corporation ("ABID") and Dallah al Baraka LLC ("Dallah") (collectively referred to as "the al Baraka Defendants") and hereby submit and file their Reply Memorandum in further support of their Motion to Dismiss:

## I.     Introduction

The Plaintiffs' Memorandum in Opposition to the Motion to Dismiss ("Plaintiffs' Opposition") (a) fails to controvert the well-founded grounds for dismissal presented in the Motion to Dismiss and its accompanying Memorandum of the al Baraka Defendants; (b) further demonstrates Plaintiffs' abject reliance on legally conclusive allegations; (c) only serves to highlight the fundamental problem that they have, i.e., the dearth of factual allegations related to the underlying claims in all Complaints addressed herein;  and (d) most importantly, fails to differentiate the allegations in the cases *sub judice*  from those in *Ashton* and *Burnett*, which have already been dismissed "in their entirety" by this Court as to Kamel and ABID.  *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 836 (S.D.N.Y. 2005) (hereinafter "*Terrorist Attacks I"*). Plaintiffs also did not present any new arguments as to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and that remains as a separate and independent ground for dismissal.  *See* Pls.' Opp'n at 16.

1

## II.      Failure to State a Claim

### A.  Plaintiffs' Reliance on Legally Conclusory Allegations

Though Plaintiffs claim the contrary, a review of their Opposition reveals that they continue to rely on legally conclusory allegations, such as "Defendants knowingly and intentionally aided and abetted, conspired with, and long provided material support and resources to al Qaeda." Pls.' Opp'n at 9. As this Court is well aware, it need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983)). Thus, this Court should reject all of Plaintiffs' conclusive allegations of involvement in a conspiracy or support for Al Qaida. The al Baraka Defendants must be dismissed from the present suits because these legally conclusive allegations, including allegations of knowledge and intent, are insufficient to sustain the lawsuits against them. *See Terrorist Attacks I*, 359 F. Supp. 2d at 832, 836.

In their Opposition, Plaintiffs have attempted to cast this Courts' previous rulings as imposing a "heightened pleading standard." *See* Pls.' Opp'n at 15. But it is a well founded issue of law that a "complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal pleading standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996) (cited in *Terrorist Attacks I,* 359 F. Supp. 2d at 833). S*ee also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2nd Cir. 1995)(conclusory allegations of the legal status of defendant's acts need not be accepted as true for the purpose of ruling on a motion to dismiss); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994),

*cert. denied,* 513 U.S. 1079 (1994)("[T]he well pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not."); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993)(conspiracy claims should contain more than conclusory, vague or general allegations, and should provide some details of time and place and the alleged effect of the conspiracy); *Galeri Gmurzynka v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003), *aff'd* 355 F.2d 206 (2d Cir. 2004).  The legally conclusive allegations, and mish-mash of factual allegations unrelated to their injuries, presented by Plaintiffs simply do not amount to the "short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2) and must accordingly be dismissed as to the al Baraka Defendants.

B.  Plaintiffs Allegations of Ordinary Banking Services

This Court has previously held that a bank cannot be held liable for the provision of ordinary banking services.  349 F. Supp. 2d at 832.  Effectively acknowledging this, Plaintiffs claimed in their opposition that they have alleged "far more than 'ordinary banking services.'" Pls.' Opp'n at 1.  But an analysis of the claims in the complaints reveals this to be untrue.

Despite have six complaints, associated RICO Statements and More Definite Statements to "cherry-pick" from, Plaintiffs do not point to any allegation of anything more that ordinary banking services in their Opposition.  Plaintiffs allege that "ABIDC *knowingly* maintain accounts for many of the charity defendants." Pls.' Opp'n at 5 (emphasis in original).  The account numbers for these charities was advertised, so that

3

donors could deposit funds meant for the charity.[1]  *Id.* at 6.  In doing this "ABIDC *provided* a mechanism for al Qaeda's supporters to deposit funds directly in those accounts." *Id*. (emphasis in original).  A subsidiary of ABID, the Al Baraka Bank Finance House is Turkey, is also alleged to be one of many banks involved in a money transfer.  *Id.*

This Court has previously decided that there is no liability for a bank "for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service."  *Terror Attacks I,* 349 F. Supp. 2d at 832 (quoting *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003). Though Plaintiffs claim many times to have alleged more than this, reviewing the allegations they chose to present in the opposition, picked from thousands of pages of allegations, they are simply: the maintenance of accounts, accepting deposits into accounts, and being one of numerous banks which participated in a ordinary monetary transfer.  *See* Pls.' Opp'n at 4-9.  These services are the exact same ones that this Court has previously held qualify as "routine banking services."  *See Terror Attacks I,* 349 F. Supp. 2d at 832.  Additionally, these are the exact same allegations which appeared in *Burnett* and *Ashton*, which this Court has previously held do not subject Kamel and ABID to liability.  *Id.* at 836.

Plaintiffs also allege that ABID and Kamel maintain correspondent and other financial relationships with Al Shamal Islamic Bank. Pls.' Opp'n at 8.  This is impossible since, as referenced in oral argument, Kamel and ABID are not banks, but merely

---

[1] Plaintiffs in their opposition distort their original allegation to make it appear as if ABID undertook the advertisement.  Reviewing the actual allegations cited, however, it becomes clear that the International Islamic Relief Organization (IIRO) is alleged to have advertised its account numbers at an ABID subsidiary in IIRO's own official magazine.

4

investors in numerous banks.  Additionally, Plaintiffs allege similar relationships between Al Shamal Islamic Bank and three U.S.-based banks, including Citibank. *Continental RICO Statement applicable to Al Shamal Islamic Bank* at 7.  This further lends credence to Defense Counsel's oral argument that leaving the al Baraka Defendants in these lawsuits will result in potential liability for investors in the banking and financial services markets at large; i.e., if Plaintiffs state a claim against Kamel or ABID, and made the same allegations as to Citibank, Plaintiffs have also stated a claim against Citibank and its thousands of investors.

Plaintiffs also include allegations about Bank Al-Taqwa, in which Kamel and "Al Baraka Bank" supposedly invested.  Pls.' Opp'n at 8.  As explained *infra*, Plaintiffs have not alleged conduct sufficient to pierce the corporate veil and impute allegations made as to other entities to the al Baraka Defendants.  For this reason, this Court should disregard the allegations as to the "Al Baraka Bank," which Defendants assumes refers to a subsidiary of ABID or Dallah.

Similarly, Plaintiffs have not made the allegations necessary to "pierce the veil" of Bank Al-Taqwa and hold the al Baraka Defendants responsible for their supposed investment.  Plaintiffs' argument is further undermined by their allegation that Youssef Nada, not Kamel or any of the al Baraka Defendants, manages Bank Al-Taqwa's portfolios.  Pls.' Opp'n at 9.  It is clear that Plaintiffs are only attempting to hold Kamel responsible only for his alleged investment and alleged position on the board of directors.  But as this Court is aware, a Defendant cannot be held liable simply for his alleged status as an investor or director in corporation.  *See Am. Feed & Livestock Co., Inc. v. Kalfco,*

5

*Inc.*, 540 N.Y.S.2d 354, 355 (N.Y. App. Div. 1989); *see also Terror Attacks I,* 349 F. Supp. 2d at 821.

      C. Plaintiffs' Reliance on *Linde v. Arab Bank* is Unjustified.

      Throughout their Memorandum in Opposition, Plaintiffs rely heavily on a recent decision in *Linde v. Arab Bank,* 384 F. Supp. 2d 571 (E.D.N.Y. 2005). But Plaintiffs' reliance on that case is unjustified, as the allegations against the al Baraka Defendants are materially different from those against the Arab Bank. In *Linde,* the Arab Bank is accused of being the exclusive administrator of a death and dismemberment plan, which the *Linde* Plaintiffs' claim is run to benefit Palestinian terrorist organizations HAMAS and Palestinian Islamic Jihad (hereinafter "PIJ"). *Id.* at 577. Arab Bank is also alleged to have maintained an account which belonged to the designated terrorist group HAMAS. *Id.* at 576. As explained *supra*, the complaints in the present cases are entirely lacking in similar allegations. This Court should reject Plaintiffs' attempts to overturn its previous well-reasoned decisions and apply the holding of a court in a different District which concerned materially different facts.

      D. Plaintiffs Fail to Differentiate the Present Cases From *Ashton* and *Burnett*

      As this Court is well aware, it previously rejected the claims against Kamel and ABID "in their entirety" in the associated MDL cases *Ashton* and *Burnett. Terror Attacks I,* 349 F. Supp. 2d at 836. Though Defendants referred to this numerous times in

6

their Memorandum in Support of their Motion to Dismiss, Plaintiffs did not even attempt to differentiate the present cases from *Ashton* and *Burnett* in their Opposition.

Instead, Plaintiffs have attempted to re-litigate issues which this Court has already decided. As an example, Plaintiffs spent four pages of their Opposition repeating arguments related to the "Golden Chain." Pls.' Opp'n at 9-13. Plaintiffs also again submitted arguments relating to the employment of Omar al Bayoumi by a subsidiary of ABID, Dallah Avco Trans-Arabic Co. Ltd.[2] Pls.' Opp'n at 7. This Court previously rejected these exact same arguments when addressing the *Ashton* and *Burnett* allegations against Kamel and ABID. 349 F. Supp. 2d at 818, 836. As such, Defendants will not readdress these issues, but rely upon and incorporate their previous filings, and this Court's previous rulings, addressing claims as to al Bayoumi, the "Golden Chain," and other issues previously litigated.

E.  Corporate Law Prohibits the Imputation of Allegations

Throughout the Complaints, RICO Statements, and other filings, Plaintiffs have attempted to hold the al Barak Defendants liable for the acts of others. They claim the allegations made against subsidiaries, shareholders, employees, officers or directors of the al Baraka Defendants state a claim against the al Baraka Defendants. They also attempt to impute allegations made against one al Baraka Defendant against the other al Baraka Defendants.

---

[2] This Court should note that in their Opposition the Plaintiffs altered their allegation that the FBI is currently investigation Omare al Bayoumi. Instead they rely on the belief of a former Senator, attempting to incorporate allegations outside of any previous pleading. Of course even if this Court accepts Plaintiffs' allegation in this aspect, they still have not stated a claim as to any of the al Baraka Defendants.

7

But one of the most basic elements of corporate law is that each business entity is treated as a separate "legal person," distinct from their investors, officers, directors, and related organizations. In order to hold a shareholder responsible for the actions of a corporate entity, i.e. pierce the corporate veil, a plaintiff must plead that the shareholder exercised complete domination over the corporate entity and that such domination was used to commit a fraud which resulted in the Plaintiffs' injuries. *See Thrift Drugs, Inc. v. Universal Prescription Adm'rs*, 131 F. 3d 95, 97 (2d Cir. 1997). In order to hold a corporation liable for the acts of a shareholder a plaintiff must "reverse pierce" the corporate veil by pleading the same elements. *JSC Foreign Economic Association Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). Nor can Plaintiffs rely on allegations that Defendants merely held positions as officers or directors in a corporation against which a claim has been stated. *See Am. Feed & Livestock*, 540 N.Y.S.2d at 355. Allegations against supposed employees are also insufficient to state a claim. *Terror Attacks I,* 349 F. Supp. 2d at 836.

Plaintiffs have not pleaded any of these elements, nor disputed this fact in their opposition. Instead they claim that the al Baraka Defendants should be liable because they are "knowing and intentional" shareholders. *See* Pls.' Opp'n at 2-3. Plaintiffs do not offer any law to support this claim, nor could they because it clearly is in opposition to black letter law. Because Plaintiffs have not pled the necessary elements to pierce or "reverse pierce" the corporate veil, to hold the al Baraka Defendants responsible for the acts of alleged employees, or status as a director or officer, this Court must reject all of Plaintiffs' attempts to impute allegations onto the al Baraka Defendants.

8

      F.      Allegations Wholly Unrelated to the Claim for Relief

Plaintiffs have attempted to obscure from this Court the legally conclusive nature of their allegations by pleading facts wholly unrelated to their claim for relief. These unrelated allegations in the Complaints are too numerous to be addressed wholly herein. Instead, Defendants address only a few which appear in the Plaintiffs' Opposition.

Plaintiffs make numerous allegations relating to the conduct of the al Baraka Defendants in Sudan. These include, that in 1991 Kamel participated in a foreign investment conference hosted by the Sudanese Government. Pls.' Opp'n at 5. Plaintiffs do not connect, nor could they connect, participation in a foreign investment conference to the attacks of 9/11 ten years later. Plaintiffs also allege that the Al Baraka Defendants were engaged in the construction of airports and roads, in an unnamed location, at the same time that bin Laden was building roads and airports in Sudan. *Id.* Of course, allegedly being involved in a similar line of business as bin Laden does not state a claim against the al Baraka Defendants. Defendants Kamel and ABID are additionally alleged to have had joint "symbiotic businesses" (without specifying any of these businesses or how they were "symbiotic") with bin Laden and the Sudanese Government. *Id.* This Court should reject this allegation as legally conclusory and recognize the lack of casual connection between the allegation and the Plaintiffs' injuries. Plaintiffs also allege that Defendant Kamel was required by Sudanese law to contribute to the government's zakat fund, which was somehow (Plaintiffs do not specify) "diverted" to bin Laden. *Id.* at 5. Plaintiffs do not allege that Defendant Kamel or any of the al Baraka Defendants were involved in the diversion in any way, or provide a basis for knowledge such that the al

9

Baraka Defendants could be held liable for making mandatory contributions to the Sudanese Government's *zakat* fund.

Plaintiffs also claim that Defendant Kamel said in 1993 that operating Islamic Banks was a form of jihad. *Id.* As Plaintiffs well know, the word jihad in Arabic has multiple meanings. The Merriam-Webster Dictionary recognizes these multiple meanings, defining jihad as: "(1) a holy war waged on behalf of Islam as a religious duty; *also* **:** a personal struggle in devotion to Islam especially involving spiritual discipline; (2) a crusade for a principle or belief." Available at: http://www.webster.com/dictionary/jihad. Defendant Kamel has spent his life building businesses which give Muslims the option of *shari'ah* complaint financing, investing, and banking. Based on the context o the statement, it is clear that Kamel simply meant he believes this is a personal and religious mission. Moreover, even if Plaintiffs stated that Defendant Kamel was supporting a "holy war," which he clearly was not, this Court has previously rejected Plaintiffs attempts to enlarge the al Qaida conspiracy to misguided individuals who have views similar to al Qaida but do not materially support or actively participate in the conspiracy. *See Terror Attacks I,* 349 F. Supp. 2d at 833 (holding that Plaintiffs had not pleaded a connection between HAMAS and the al Qaida conspiracy to attack the U.S. and that allegations of support of HAMAS do not state a claim in the present actions).

Plaintiffs claim that Defendant Kamel is currently under investigation by the United States government for supporting terrorist groups. Pls.' Opp'n at 6. In fact, since the attacks on the World Trade Center and Pentagon, Defendant Kamel has been working closely with the U.S. and Saudi government to fight terrorism and terrorist financing. He has met with high-level officials at the Departments of Justice and Treasury and pledged

his support and assistance. Even if the allegations of investigation were true, information to which neither Defendants or Plaintiffs truly have access, it of course does not state a claim against Defendant Kamel or the other al Baraka Defendants.

Defendants do not claim that these are the only allegations which Plaintiffs have made. Instead they were chosen because they are illustrative of Plaintiffs' failure to connect the alleged actions of the al Baraka Defendants to the attacks of 9/11 and because they are allegations which the Plaintiffs relied upon in their opposition. The lack of causal connection between the alleged actions of the al Baraka Defendants and the Plaintiffs' injuries applies generally to all allegations made by the Plaintiffs. This Court must reject all of them, and dismiss the claims against the al Baraka Defendants.

### III.    Lack of Subject Matter Jurisdiction

In their Opposition, Plaintiffs submitted no new arguments challenging the al Baraka Defendants' claim that this Court lacks the Subject Matter Jurisdiction necessary to hear this claim. Instead Plaintiffs chose only to incorporate the arguments the *Federal* Plaintiffs made in their Opposition.[3] Pls.' Opp'n at 16. Defendants maintain that the lack of Subject Matter Jurisdiction is a separate basis for dismissal, which this Court has not previously ruled upon.

---

[3] Though Plaintiffs chose to incorporate a previous filing, throughout their opposition they attacked the al Baraka Defendants for incorporating previous filings. Defendants simply believed that incorporating these filings would relieve this Court of the burden of issues which have already been extensively briefed, argued orally, and/or decided by this Court. Plaintiffs clearly do not share this sentiment, as demonstrated by their desire to relitigate the "Golden Chain" and the employment of Omar al Bayoumi.

11

**IV.     Conclusion**

As demonstrate herein in its Reply Memorandum and in the al Baraka Defendants' previous filings, the Complaints all fail to state a claim for which relief can be granted as to the al Baraka Defendants. This Court additionally lacks Subject Matter Jurisdiction over the claims against the al Baraka Defendants. The Complaints should therefore be dismissed with prejudice.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendants Saleh Abdullah Kamel, Al Baraka Investment and Develop Co., and Dallah al Baraka LLC*

Dated : January 23, 2006