**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
______________________________________________x

*In re Terrorist Attacks on September 11, 2001* ***03 MDL 1570 (RCC)***
______________________________________________x

This filing applies to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al., Case No. 02-CV-6977*

*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment and Development Corporation, et al., Case No. 04-CV-01923 (RCC)*

*Thomas E. Burnett, Sr., in his own right as the Father of Thomas E. Burnett, Jr., et al., v. Al Baraka Investment and Development Corporation, et al. Case No. 03-CV-5738*

REPLY MEMORANDUM OF LAW IN SUPPORT OF THE WORLD ASSEMBLY OF MUSLIM YOUTH AND THE WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL'S MOTION TO DISMISS AGAINST ALL PERSONAL INJURY PLAINTIFFS FOR FAILURE TO STATE A CLAIM AND AGAINST BURNETT PLAINTIFFS FOR IMPROPER SERVICE

Omar T. Mohammedi (OTM 7234)
Law Firm of Omar T. Mohammedi, LLC
200 Madison Avenue, Suite 1901
New York, NY 10016
(212) 725-3846

*Attorneys for defendants*
*WORLD ASSEMBLY OF MUSLIM YOUTH SAUDI ARABIA*
*WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL*

## INTRODUCTION

Plaintiffs allege that just about every Islamic charity has contributed to September 11, 2001 terror attacks ("the 9/11 attacks"); the World Assembly of Muslim Youth ("WAMY") is one of those charities wrongfully swept up in Plaintiffs' broad litigation. Through Plaintiffs' "pleadings" and opposition brief ("Pl. Opp. Br."), they have tried, but failed, to allege that WAMY knowingly committed a criminal act, let alone one linked to al Qaeda or the 9/11 attacks.

Through Plaintiffs' "pleadings" and opposition brief ("Pl. Opp. Br."), they have tried, but failed, to allege that WAMY knowingly committed a wrongful act, criminal or otherwise, let alone one linked to al Qaeda or the 9/11 attacks.[1] First, Plaintiffs' Opp. Br. simply restates their familiar and ineffective conclusions while failing to include any relevant factual allegation in support thereof. Plaintiffs' causes of action under the common law and RICO still fail to state claims upon which relief can be granted. Finally, Plaintiffs have shown this Court no cause to have its defective service on WAMY excused.

## LEGAL ARGUMENT

### I. Plaintiffs' procedural defects are willful violations of Federal and Court Rules.

This Court should note that the overwhelming majority of allegations listed throughout Pl. Opp. Br. are taken directly from the O'Neill More Definite Statement ("MDS").[2] Neither Ashton nor Burnett Plaintiffs ever incorporated these MDS allegations into their "pleadings," nor were these allegations contained anywhere in their "pleadings." Hoping to avoid the inevitable

---

[1] Defendants are not addressing every allegation against them, but only a representative sample. Defendants' Brief in Support of Motion to Dismiss ("Def. Br.") addresses all other allegations leveled by Plaintiffs against them.

[2] Moreover, and pursuant to § 2.C of the Individual Rules, Plaintiffs subvert this Court's 25-page limit on all memoranda of law. They attempt to list their "facts" in Appendix I, and then attach the same to the back of Pl. Opp. Br. Accordingly, Appendix I "should be stricken from Pl. Opp. Br. Maxwell v. City of New York, 272 F. Supp. 2d 285, 307 (S.D.N.Y. 2003).

consequences of their pleading failures, Ashton and Burnett have used contrived allegations to mischaracterize their Complaints.

Furthermore, O'Neill Plaintiffs' MDS is itself invalid. As has been stated in numerous other briefs, this Court's Case Management Orders do not sanction O'Neill Plaintiffs' attempted incorporation by reference of their MDS, nor does it sanction Burnett Plaintiffs' so-called "Notice of Consolidated Pleadings." See Pl. Opp. Br. at 12 n. 5. Plaintiffs' claims to the contrary are in bad faith. See Def. Br. at 3-4. Burnett Plaintiffs failed to even include WAMY in their "Notice of Consolidated Pleadings."

In addition, by entering into a briefing schedule, Defendants did not contest O'Neill Plaintiffs' right to file a RICO Stmt. as to time of filing. Defendants, however, are perplexed with Plaintiffs' disingenuous argument that Defendants agreed with Plaintiffs to pass off their RICO Stmt. as part of their Pleadings. See Pl. Opp. Br. at 12. Moreover, by not filing a RICO Stmt., Burnett Plaintiffs have contravened Rule 7 of this Court's Individual Rules.

Thus, this Court should strike all of the addendums, attachments and exhibits filed after September 30, 2006. See Arnold v. Krause, Inc., 2004 WL 3574033, *8 (W.DN.Y. July 23, 2004). For detailed arguments, see Def. Br. at 3-4.

## II. **Plaintiffs still confuse the applicable standard under Fed. R. Civ. P. 12(b)(6).**

Plaintiffs not only misconstrued the pleading requirements, but also ignored this Court's previous opinions. This Court has directly addressed most of the decisive issues and arguments raised in Pl. Opp. Br. Plaintiffs, however, fail to cite this Court's standard. See Pl. Opp. Br. at 10-11. To "revisit the same legal issues . . . and general propositions over and over. . . again [does not help] the Court in trying to get all these things decided as quickly as possible." See Hearing Before Judge Richard C. Casey (Sept. 27, 2005) at 9, lines 6-9.

Instead, Plaintiffs base their entire lawsuit on the illogical and disconcerting assumption that merely inserting buzz words such as "knowingly" and "material support" into their pleadings will compel this Court to deny WAMY's Motion to Dismiss. See Pl. Opp. Br. at 14-16. WAMY's motion to dismiss applies the standard adopted by this Court. Plaintiffs must plead that Defendants 1) knew of al Qaeda's illegal activities, 2) desired to help those activities succeed, and 3) engaged in some act of helping the illegal activities. See In re Terrorist Attacks on September 11, 2001, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005) ("Terrorist Attacks II").

Plaintiffs' reliance on Twombly v. Bell Atlantic Corporation, 425 F.3d 99 (2d Cir. 2005), is misplaced. The Twombly court, in agreement with this Court, requires a "sufficient supporting factual predicate on which that allegation is based." Id. at 114. Plaintiffs have not alleged such a factual predicate to support their irrelevant and conclusory allegations.

III. **Plaintiffs still fail to state a claim**.

***a. Plaintiffs have disregarded the standard for pleading "fair notice."***

What Defendants and this Court are asking of Plaintiffs is not that they "prove their case at the pleading stage," see Pl. Opp. Br. at 10, but simply that Plaintiffs give Defendants "fair notice of . . . the grounds upon which [Plaintiffs' claims] rest[]."In re Terrorist Attacks on September 11, 2001, ("Terrorist Attacks"), 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005). A successful pleading includes "legal and factual justification for th[e] claims [advanced]." In re Auction Houses, 2004 WL 2624896, *5 (S.D.N.Y. 2004) (emphasis added).

Plaintiffs have managed to compile only pages of irrelevant allegations. Pl. Opp. Br. at 4-7 cites media articles from around the world. Such articles, however, are completely disconnected from al Qaeda and the 9/11 attacks. Plaintiffs cannot go beyond these unverifiable newspaper articles to at least allege facts connecting WAMY to any criminal activity let alone

9/11. See, e.g., Def. Br. at 8-9 (refuting Plaintiffs' hollow allegations). Nor can Plaintiffs allege that WAMY was ever charged or indicted with any wrongdoing.

For Instance, Plaintiffs quote a 2000 article from the Russian newspaper ITAR-TASS, which never names WAMY and only vaguely states that "aid to Chechens. . . is delivered from the organization of humanitarian assistance." Pl. Opp. Br. at 4-5.[3] Plaintiffs even go so far as to cite articles without even identifying or quoting from those articles. Id. at 5-7. In addition, Plaintiffs' citations of publications also fail to allege a relationship between WAMY and al Qaeda. See id. at 5 (alleging a 1995 relationship between Khattab and bin Laden but failing to properly link Khattab or bin Laden to WAMY). Thereafter, Plaintiffs inexplicably conclude that news reports and articles are enough to give WAMY fair notice of alleged wrongdoing. See, e.g., Pl. Opp. Br. at 9.

***b. Plaintiffs still have failed to plead a conspiracy claim against WAMY.***

To properly state a claim for conspiracy liability under the Anti Terrorism Act ("ATA"), Plaintiffs are obliged to make "factual assertions," Terrorist Attacks, 349 F. Supp. at 833 (emphasis added), that if true support the inference that WAMY knowingly and materially supported al Qaeda. Terrorist Attacks II, 392 F. Supp. 2d at 564. Plaintiffs have failed to offer a single fact to satisfy this Court's requirement that WAMY had knowledge and desire to aid al Qaeda, let alone some 'detail of time and place and the alleged effect of the conspiracy,'" a higher standard established by Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). A Complaint "'unsupported by factual assertions fails even on the liberal standard.'" Terrorist Attacks, 349 F. Supp. at 833.

i. Allegations of international conflicts fail to state a claim.

[3] Plaintiffs' cite a 1992 NEW YORK TIMES article contains the same defects in vagueness . See Pl. Opp. Br. at 4.

Pl. Opp. Br. attempts to pin liability on WAMY by tying it to certain international conflicts. Plaintiff still fail to show that WAMY committed or conspired to commit any wrongful act let alone 9/11. Id. at 5-9. Plaintiffs themselves recognize that WAMY "organize[d] relief operations. . . and provide[d] free medical care. . . ." Id. at 4. Plaintiffs however cannot allege how WAMY's humanitarian efforts in these devastated areas somehow resulted in 9/11 attacks. Instead, their allegations trivialize the efforts of those who struggled against genocide of Muslims in Bosnia and Kosovo, or those who provided relief to the victims of wars in Chechnya and Kashmir.

Plaintiffs' oversimplified attempts to paint any and all conflicts concerning Muslims as an "al Qaeda conflict" are completely irrelevant to the issues before this Court. At best all that Plaintiffs can muster is that al Qaeda may have been present in the same regions of conflict where humanitarian organizations such as WAMY, Red Crescent or even the Red Cross, provided humanitarian relief. Such statements do not support their conclusory allegations that WAMY has links to al Qaeda or 9/11.[4]

ii. Alleged statements and acts by foreign governments and officials still fail to state a claim.

Plaintiffs claim that "[s]tatements by government officials . . . reveal WAMY's extensive role in supporting al Qaida activities. . . ." Pl. Opp. Br. at 6-7. Aside from the fact that Plaintiffs never state what kind of "support" WAMY allegedly provided, or how the aforementioned allegations constitute material support of al Qaeda, Plaintiffs fail to identify or quote a single foreign government official in support of their claims. In addition, Plaintiffs' allegations are all

[4] These allegations are mere samples of the type of ineffective allegations contained all throughout Plaintiffs' "pleadings." See Def. Br. at pp. 5-9; see also MDS, attached to Pl. Opp. Br. as Exh. 1, ¶¶ 37, 39-41, 43-44, 49, 50-55, 61, 64-76, and 78-85.

undercut by the fact that none of the aforementioned countries have charged or indicted WAMY with any criminal or civil wrongdoings, let alone 9/11, nor have they expelled WAMY.

Plaintiffs themselves recognize that WAMY affiliates maintain operations all over the world, even under "increased scrutiny." Pl. Opp. Br. at 8. WAMY affiliates still have offices in Australia, Pakistan, Khasmir, Bosnia as well as a representative in the Philippines. Moreover WAMY still maintains friendly relationships with governmental and as well as nongovernmental agencies in these countries.

iii. The claims against WAMY U.S.A. are frivolous and without merit.

Plaintiffs assert that Federal authorities "raided WAMY U.S.[A.'s] offices in 2002." Pl. Opp. Br. at p. 8. Plaintiffs however mischaracterize that raid. It was not part of a SAAR Network investigation.[5] In addition, Plaintiffs omit the fact that the Department of Justice returned all of the confiscated materials and found no wrongdoing by WAMY U.S.A. WAMY U.S.A. is still doing business under the Virginia Corporations law.

In addition, Plaintiffs baldly allege that WAMY was "involved in [SAAR] terrorist activities," In typical fashion, however they allege no facts as to the nature of the alleged involvement. Pl. Opp. Br. at 8. As this Court has already held, such allegations do not provide adequate notice.[6] See Terrorist Attacks II, 392 F. Supp. 2d 539, 571-72 (S.D.N.Y. 2005).

Plaintiffs attempt to confuse this Court by citing Department of Treasury ("DOT") official Stuart Levey as having "expressed particular concern" about WAMY's financial activities. See Pl. Opp. Br. at 9. This Court should take judicial notice that not only was the

[5] In fact, the application for the search warrant which Plaintiffs have previously submitted to this Court does not list WAMY U.S.A. as a place to be searched. See (Proposed Searches Involving 555 Grove Street, Herndon Virginia and related locations, E.D. Va. (March 2002), unsealed October 17, 2003); Attached as exhibit 10 to In re Terrorist Attacks on September 11, 2001, Declaration of Justin B. Kaplan in support of Plaintiffs' consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Sulaiman al Rajhi, June 28, 1005) (MDL Docket # 1031).

[6] This Court has already recognized, the SAAR Foundation (the basis of the so-called "Network") allegedly was "formed in the 1970s," Terrorist Attacks II, 392 F. Supp. at 569, more than a decade before al Qaeda was allegedly created. Thus, the "SAAR Network" could not possibly have been created to fund al Qaeda.

subject matter of his testimony not related to the 9/11 attacks, but ironically the DOT, under which Mr. Levey himself works, has not designated WAMY as a SDGT.[7] In addition, as recently as February 26, 2006, WAMY was invited to, and attended, a seminar in Doha, Qatar on fighting against terrorism; the DOT and the FBI also attended. Afterwards they met with WAMY seeking to build a coalition against terrorism.

Plaintiffs are also desperate to tie WAMY to Adel Batterjee and Benevolence International Foundation ("BIF") because of their respective SDGT statuses. Pl. Opp. Br. however ignores the arguments, exhibits and affidavits put forth in Def. Br. at 11 n. 17.

***c. Plaintiffs still make conclusory statements that fail to state a claim.***

Throughout their Opposition, Plaintiffs also bring allegations that 1) fail to even identify WAMY in any way, or 2) are so generic that WAMY's name can be substituted with any other name in the world and the allegation would not lose its meaning.[8] See, e.g., Pl. Opp. Br., at 2, 3, and 14. Examples can also be found all throughout their pleadings. See, e.g., Def. Br. at 7-9.

Plaintiffs for instance assert: "[a]bsent the material support and resources provided by the co-defendants . . . al Qaida would not have possessed the [resources to carry out] the September 11th attack," Pl. Opp. Br. at 14-15. This allegation, and others like it, are conclusory precisely because they fail to clarify what knowing act WAMY undertook with desire to aid al Qaeda and facilitate 9/11. See, e.g., Pl. Opp. Br. at 2. Plaintiffs merely conclude that WAMY, pouched with other Defendants, took such acts. See id. at 9. Without a minimal amount of specification, it is impossible for WAMY to defend itself. See Terrorist Attacks II, 392 F. Supp. 2d at 570.

---

[7] On p. 113 of the June 14, 2005 Oral Arguments, Plaintiffs' attorney made two misrepresentations: 1) that WAMY was an SDGT, and 2) that WAMY is the parent organization of the International Islamic Relief Organization ("IIRO"). First WAMY has never been designated as an SDGT. See http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf. Second, WAMY has no connection at all to IIRO. See Declaraion of Saleh Al-Wohaibi, attached to Def. Br. as Exh. C.

[8] See Pl. Opp. Br., Appendix I, ¶¶ 1-35, 38, 42, 48-50, 60, 63, 76-77, 88-107.

Plaintiffs' allegations of mental state are also conclusory. While Plaintiffs may use buzz words like "knowingly" and "intentionally" to describe WAMY's mental state, they are far from alleging facts to support the inference that WAMY "had to know" it was contributing to al Qaeda terrorism or that it was WAMY's desire to do so. Terrorist Attacks, 349 F. Supp. 2d at 833. See also Terrorist Attacks II, 392 F. Supp. 2d at 571 (dismissing Ashton Compl. because it lacked allegations of "knowledge and intent to further payee's violent criminal acts").

***d. Plaintiffs' allegations are still barred by the First Amend. and must be dismissed.***

Defendants respectfully refer this Court to Defendants' Reply to Property Damage Plaintiffs' Opp. Br. at 8-10.

**IV. Plaintiffs still have not properly alleged the elements of their individual causes of action.**[9]

***a. Plaintiffs still do not state a claim under the Alien Tort Claims Act ("ATCA").***

As held by this Court, the ATCA may provide a basis for recovery for those Plaintiffs who are 1) aliens, and 2) on the condition that Plaintiffs can properly state under the ATA. See Terrorist Attacks II, 392 F. Supp. 2d at 566. See arguments contained in Def. Br. at 14.

**b.** ***Plaintiffs still have not stated a claim under conspiracy, aiding and abetting, and/or punitive damages.***

No independent causes of action exist under New York law for such claims. See Def. Br. at 17. This is a point that even Plaintiffs concede. See Pl. Opp. Br. at 19.

**c.** ***Plaintiffs still have not stated a claim under their common law theories of liability.***

Plaintiffs incorrectly quote this Court's January 18, 2005 Opinion. This Court found that all of the Complaints before it failed to properly allege a "duty owed by the Defendants." Id. at 831. See also Def. Br. at 16.

[9] Personal Injury Plaintiffs have elected to not pursue their claims under the Torture Victims Protection act.

Plaintiffs' suggestion that the statute of limitations period may be governed by federal law is unpersuasive. See Pl. Opp. Br. at 18. "When Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim." Corcoran v. N.Y. Power Auth., 202 F. 3d 530, 542 (2d Cir. 1999).

In addition, Plaintiffs are not entitled to a toll of the statute of limitations under the theory of wrongful concealment because they have not "plead[] with particularity, 1) the wrongful concealment by the defendant of its actions, 2) the failure by plaintiff to discover the operative facts underlying the action within the limitations period, and 3) the plaintiffs' due diligence to discover the facts." Smith v. Keane, 1998 WL 146225, *4-5 (S.D.N.Y. Mar. 25, 1998).

## V. Plaintiffs' RICO claims are still without merit.

Plaintiffs do not allege that O'Neill had business or property that was affected by the 9/11 attacks. The economic injuries alleged are all derivative of Plaintiffs' personal injury claim and thus not recoverable. See Pl. Opp. Br. at 20. In addition, as detailed in Def. Br. at 18-21, Plaintiffs still fail to allege facts to support the inference that WAMY conducted an interest in al Qaeda through a pattern of racketeering activity, as required under § 1962. See Terrorist Attacks, 349 F. Supp. 2d at 827. See also Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004).

## VI. Burnett Pl. did not serve WAMY S.A. and their service on WAMY U.S.A. is still improper.

The Fed. R. Civ. P. are in place to ensure that due process is afforded to all parties and should not be abrogated as Plaintiffs desire. Their egregious delinquencies of service on WAMY U.S.A. constitute more than mere "technical flaws." Pl. Opp. Br. at 23.

Plaintiffs argue that for purposes of service WAMY S.A. and WAMY U.S.A. are "one and the same." Pl. Opp. Br. at 21 n. 12. Plaintiffs' arguments however are undercut by the fact

that Burnett Plaintiffs never properly served WAMY U.S.A, and never attempted to serve WAMY S.A. See Def. Br. at 21-25; see also Notices of Service by Publication, attached as Exhs. A, B (WAMY S.A. not listed).

Plaintiffs use catch phrases such as "a bit of a dance" and "form over substance" because they can show no good cause for failing to properly serve. Pl. Opp. Br. at 21. It is Plaintiffs who "bear[] the burden of proving that [they] had good cause in not timely serving the defendant." AIG Managed Market Neutral Fund v. Askin Capital Management, L.P., 197 F.R.D.104, 108 (S.D.N.Y. 2000). Good cause will not be shown if the delay was caused by attorney inadvertence, neglect or mistake. Myers v. Secretary of the Dep't of Treasury, 173 F.R.D. 44, 47 (E.D.N.Y. 1997). Plaintiffs did not only neglect this important procedural issue, but they intentionally failed to correct the defective service despite Defendants' repeated requests. See Def. Br. at 21-25.

Plaintiffs disingenuously state that WAMY went to "lengths . . . to ignore and evade service." Pl. Opp. Br. at 21. However, the only lengths to which WAMY went were to make itself available for service. Burnett Plaintiffs ignored WAMY's efforts and extensions and requests to serve. See Def. Br. at 21-25.

Moreover, Plaintiffs claim Ms. Sodder to be someone "generally authorized to accept service of legal documents." Pl. Opp. Br. at 23. Plaintiffs, however, do not meet their burden of alleging that Ms. Sodder was qualified to accept service. Ms. Sodder even stated explicitly to the process server that she was not authorized to accept service. See Aff. of Robert Reynolds, attached as Exh. B to Pl. Opp. Br. Ms. Sodder has never even been employed by WAMY U.S.A. and Plaintiffs have put forth no allegation demonstrating otherwise. See Def. Br. at 22.

**CONCLUSION**

Because Plaintiffs have had an opportunity to amend their Complaints with the benefit of this Court's two opinions but failed to assert a claim against WAMY, this Court should not only dismiss Plaintiffs' claims, but should dismiss Plaintiffs' claims with prejudice and not allow them leave to amend.

Dated: March 14, 2006

Respectfully Submitted,

_______S.S.________________________

Omar T. Mohammedi (OTM 7234)
The Law Firm of Omar T. Mohammedi LLC
200 Madison Avenue, Suite 1901
New York, New York 10016
T: (212) 725-3846
F: (212) 202-7621

**CERTIFICATE OF SERVICE**

I, ALLY HACK, Esq. do hereby certify that I served the within Reply Memorandum of Law in Support of the World Assembly of Muslim Youth in Saudi Arabia's and the World Assembly of Muslim Youth International's Motion to Dismiss against all Personal Injury Plaintiffs on this date, on all parties in the case via filing with the Court's Electronic Case Filing (ECF) system.

Dated: March 15, 2006

ALLY HACK, ESQ.