# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, No. 02-CV-6977
*Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al*, No. 03-CV-9849
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, No 04-CV-7065
*Continental Casualty Co. et al, v. Al Qaida, et al.*, No. 04-CV-5970
*Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, No. 04-CV-7279
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* No. 04-CV-1923
*Federal Insurance Co., et al. v. Al Qaida, et al.,* No. 03-CV-6978
*Kathleen Ashton, et al v. Al Qaida Islamic Army, et al.*, No. 02-CV-6977
*New York Marine & General Insurance Co. v. Al Qaida, et al*., No. 04-CV-6105
*World Trade Center Properties, L.L.C., et al. v. Al Baraka Investment and Development Corp., et al.*, No. 04-CV-7280

This document also relates to and supplements the response to the motions to dismiss filed in:
*Estate of O'Neill, et al. v. The Republic of Iraq, et al.,* No. 04-CV-1076
*Estate of O'Neill, et al, v. Al Baraka, et al.,* No. 04-CV-1923

# PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS FILED BY ASAT TRUST

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**.................................................................................................1

I.    **FACTUAL BACKGROUND** ............................................................. 2

II.   **ASAT TRUST HAS BEEN PROPERLY SERVED** ......................................... 5

   A.   Service Comported With The Publication Order.................................................. 5

   B.   Service Comported With Due Process.................................................................. 7

   C.   Service Comported With The Law of Liechtenstein ............................................ 9

   D.   In The Alternative, This Court Must Hold A Hearing And Allow Discovery ................. 13

III.   **PLAINTIFFS HAVE PROPERLY ESTABLISHED JURISDICTION**.................... 15

   A.   Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations Of Jurisdiction ................................................................ 15

   B.   The Exercise of Personal Jurisdiction Comports With Due Process. .............................. 16

   C.   Additionally, Jurisdiction Is Proper Under Conspiracy Theory ........................................ 18

   D.   At A Minimum, Jurisdictional Discovery Is Warranted ................................................... 20

IV.   **CONCLUSION** ......................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

**Page**

A.I. Trade Finance, Inc. v. Petra Bank,
  989 F.2d 76 (2d Cir. 1993)................................................................................16

Allstate Life Insurance Co. v. Linter Group Ltd.,
  782 F. Supp. 215 (S.D.N.Y. 1992) ...................................................................19

American Land Co.  v. Zeiss,
  219 U.S. 47 (1911).......................................................................................... 8-9

Andre Emmerich Gallery v. Segre,
  1997 WL. 672009 (S.D.N.Y. Oct. 29, 1997) ...................................................19

Armstrong v. Sears,
  33 F.3d 182 (2d Cir. 1994).................................................................................7

Asahi Metal Industry Co., Ltd. v. Superior Court of California,
  480 U.S. 102 (1987)..........................................................................................16

Ball v. Metallurgie Hoboken Overpelt, S.A.,
  902 F.2d 194 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990)............................15

Blinn v. Nelson,
  222 U.S. 1 (1911)................................................................................................9

Blue Ocean Lines v. Universal Process Equipment, Inc.,
  1993 U.S. Dist. LEXIS 14090 (S.D.N.Y. 1993)................................................14

Boim v. Quranic Lit. Institute,
  291 F.3d 1000 (7th Cir. 2002) ............................................................................1

Burger King v. Rudzewicz,
  471  U.S. 462 (1985)..................................................................................... 16-17

Callahan v. Consolidated Edison Co. of New York, Inc.,
  2001 U.S. LEXIS 12692 (S.D.N.Y. August 9, 2001).........................................7

Chrysler Capital Corp. v. Century Power Corp.,
  778 F. Supp. 1260 (S.D.N.Y. 1991)..................................................................19

Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,
  61 F.R.D. 653 (D.P.R. 1974) ...........................................................................14

Denochick v. Rapistan Demag,
    2001 U.S. Dist. Lexis 11624 (E.D. Pa. 2001) ....................................................................14

DiStefano v. Carozzi North America, Inc.,
    286 F.3d 81 (2d Cir. 2001)................................................................................................16

Dixon v. Mack,
    507 F. Supp. 345 (S.D.N.Y. 1980) ...................................................................................19

Ehrenfeld v. Mahfouz,
    2005 U.S. Dist. Lexis 4741 (S.D.N.Y. 2005)...............................................................9, 11

Flatow v. Islamic Republic of Iran,
    999 F. Supp. 1 (D.D.C. 1998) ..........................................................................................17

Gallery Recording Studios, Inc. v. Discrete Technology Ltd.,
    1997 U.S. Dist. Lexis 17517 (S.D.N.Y. 1997)..................................................................14

Goodrich v. Ferris,
    214 U.S. 71 (1909)..............................................................................................................8

Grannis v. Ordean,
    234 U.S. 385 (1914)............................................................................................................8

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)..........................................................................................................16

Investment Properties International, Ltd. v. 10S, Ltd.,
    459 F.2d 705 (2d Cir. 1972).............................................................................................20

Jazini v. Nissan Motor Co.,
    148 F.3d 181 (2d Cir. 1998).............................................................................................16

Jung v. Neschis,
    2003 U.S. Dist. Lexis 5569 (S.D.N.Y. 2003)...................................................................12

Kamen v. America Telegraph & Telephone Co.,
    791 F.2d 1006 (2d Cir. 1986)...........................................................................................20

Kensington International, Limited. v. Societe Nationale Des Petroles Du Congo,
    2005 U.S. Dist. Lexis 41352 (S.D.N.Y. March 31, 2006) ..................................................6

Landau v. New Horizon Partners, Inc.,
    2003 U.S. Dist. Lexis 15999 (S.D.N.Y. Sept. 8, 2003)......................................................6

In re Magnetic Audiotape Antitrust Litigation,
    334 F.3d 204 (2d Cir. 2003)..................................................................................15

Marine Midland Bank, N.A. v. Miller,
    664 F.2d 899 (2d Cir. 1981)..................................................................................20

Milliken v. Meyer,
    311 U.S. 457 (1940)................................................................................................8

Mullane v. Central Hanover Trustee Co.,
    339 U.S. 306 (1950)............................................................................................ 7-9

O'Brien v. R.J. O'Brien Associates,
    998 F.2d 1394 (7th Cir. 1993) ...............................................................................7

PDK Laboratoriess, Inc. v. Friedlander,
    103 F.3d 1105 (2d Cir. 1997)...............................................................................16

Palestine Information Office v. Shultz,
    853 F.2d 932 (D.C. Cir. 1988)..............................................................................17

Priest v. Board of Trustees of Town of Las Vegas,
    232 U.S. 604 (1914)................................................................................................8

Purnell v. Dieso,
    1995 U.S. Dist. LEXIS 4883 (S.D.N.Y. 1995)....................................................14

Rates Technology Inc. v. UTT Corp.,
    1995 U.S. Dist. LEXIS 2348 (S.D.N.Y. 1995)....................................................14

Rio Properties v. Rio International Interlink,
    284 F.3d 1007 (9th Cir. 2002) .........................................................................9, 11

Roller v. Holly,
    176 U.S. 398 (1900)................................................................................................8

Roquist v. New York University Medical Center,
    1998 U.S. Dist. LEXIS 15808 (S.D.N.Y. 1998).............................................. 13-14

S.E.C. v. Tome,
    833 F.2d 1086 (2d Cir.1987)........................................................................7, 8, 11

Sassower v. City of White Plains,
    1993 U.S. Dist. LEXIS 13475 (S.D.N.Y. September 24, 1993)...........................7

<u>Simon v. Philip Morris, Inc.</u>,
 86 F. Supp. 2d 95 (E.D.N.Y. 2000) ...................................................................19

<u>In re Ski Train Fire in Kapun, Aus.</u>,
 2003 U.S. Dist. Lᴇxɪs 11961 (S.D.N.Y. 2003)...............................................11

<u>In re Terrorist Attacks on September 11, 2001</u>,
 349 F. Supp. 2d at 804 ...................................................................16, 17, 19, 20

<u>World-Wide Volkswagen Corp. v. Woodson</u>,
 444 U.S. 286 (1980)...........................................................................................16

## STATUTES

Fed. R. Civ. P. 4(f) ...............................................................................................6, 9, 10, 12

Fed. R. Civ. P. 4(h) ...............................................................................................10

Fed. R. Civ. P. 12(b) .............................................................................................13

Fed. R. Civ. P. 12(d) ............................................................................................. 13-14

Fed. R. Civ. P. 26 ..................................................................................................14

NY CPLR 302(a)(2)...............................................................................................19

## MISCELLANEOUS

Batliner and Gasser, <u>Litigation and Arbitration in Liechtenstein</u> .................................12

Moore's Federal Practice (3d Ed.) ....................................................................7, 14, 20

"The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts." *Boim v. Quranic Lit. Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002) (by imposing "liability at any point along the causal chain of terrorism, it would interrupt, or at least imperil, the flow of money" for attacks on America) (citing S. Rep. 102-342 at 22).

Asat Trust Registered ("Asat Trust") played a knowing, intentional and material role in providing al Qaida with the financial and corporate services it needed to help grow in its early years, creating global network of financial, religious, business and charitable institutions to finance the Muslim Brotherhood and subsequently other extremist Islamic organizations, including Osama bin Laden and al Qaida, moving and laundering funds through a vast network of companies it managed and controlled, for terrorist activities. The complex web of companies established by and maintained through Asat Trust helped provide Osama bin Laden with the funding, banking services and financial infrastructure that he used to establish al Qaida training camps, train terrorists, and carry out terrorist attacks against the United States.

The evidence is overwhelming that Asat Trust was a willing, complicit actor in bin Laden's grand plot to attack the United States on September 1l, 2001.  Indeed, Asat Trust and its principals took active and deliberate steps to become a fully integrated component of al Qaida's financial and logistical infrastructure by *knowingly* establishing and assisting a penumbra of organizations involved in al Qaida's plot and by becoming *substantially involved* in banks and other organizations actively supporting al Qaida, fully aware that the material support it provided to Osama bin Laden was assisting him and al

Qaida in their goal to attack America.  For this reason, Asat Trust was rightfully

designated as a Specially Designated Global Terrorist (SDGT) on November 7, 2001.

Asat Trust has filed a motion to dismiss on purely procedural grounds.[1]  It cavils

that service was improper– even though it received fair notice of the claims against it in a

timely manner – because Plaintiffs allegedly failed to comply with the preferred means

under the law of the principality of Liechtenstein, ignoring the fact that service by

publication was expressly authorized by this Court against this defendant.  Following

that, Asat Trust carps about being haled into the jurisdiction of the United States, raising

tired objections which this Court has already considered and rejected.  Asat Trust's

motion must be denied in its entirety.

I.      **FACTUAL BACKGROUND**

Because Asat Trust's motion to dismiss relies solely on procedural grounds, we

will not relate here the entire substantive history of its extensive ties to al Qaida.  Such

background can be found in the *Federal* Amended RICO Statement for Asat Trust, filed

March 22, 2006 and docketed no. 1736.[2]

---

[1]      In footnote two of its motion, Asat Trust "reserves its rights to seek dismissal of the complaints for failure to state a claim."  To be sure, Defendants reserve the right to object to and move to strike any other such motions filed by Asat Trust; and believe the court should deny any request by Asat Trust to file another motion as a waste of judicial resources.  Numerous other Defendants have been able to comfortably fit objections both to service and to the pleadings themselves within the same document under this court's page limits, and Asat Trust should not be afforded special rights.

[2]      *See also* O'Neill MDS, Docket Nos. 1359 and 1364; *See also* O'Neill MDS attached as Exhibits to the First Consolidated Complaints (FCC), No. 1568 (Exhibit F, incorporated per para. 220(f)) and No. 1570 (Exhibit E, incorporated per para. 127(e)). See also the Appendix I, *Summary of O'Neill Pleadings' References to the Conspiracy and the Wachter Defendants For Purposes of Jurisdiction* attached to the O'Neill Plaintiffs' response to the defendant's original motion to dismiss.

By way of background, however, Asat Trust is based in the principality of Liechtenstein, where it has provided critical financial, logistical and technical support to al Qaida in relation to that terrorist organization's global jihad.  Through its connections to companies including Al-Taqwa (Arabic for "fear of God") – a cluster of financial entities spanning the globe from the Bahamas to Italy and controlled by members of the Muslim Brotherhood – Asat Trust has played a key role in financing the al Qaida enterprise.  For that reason, on November 7, 2001, Asat Trust was designated as a Specially Designated Global Terrorist ("SDGT") by the United States Department of the Treasury.

Asat Trust, a dormant Liechtenstein-based fiduciary umbrella, was taken over by Yousef Nada in 1970.  Nada opened numerous entities under Asat's direction and control to further the objectives of the Muslim Brotherhood.  Ahmed Idris Nasreddin, a wealthy Ethiopian banker, went on to join Nada by financing numerous entities under Asat Trust's direction and control.  Nada employed a cadre of accountants and lawyers including Liechtenstein residents, Erwin and Martin Wachter (who had controlled Asat Trust prior to Nada), Engelbert Schreiber Sr. and Englebert Schreiber Jr., to create and operate sophisticated funding mechanisms.

Over the years Asat Trust added dozens of companies, foundations, Islamic religious groups and financial institutions with offices located around the world.[3]  Asat

---

[3] Entities operating with or under the umbrella of Asat Trust include Akida Bank Private Ltd. a/k/a Akida , International Limited a/k/a Iksir International Bank Imited, Akida Commodity Limited, Akida Investment Company Limited, Akita Management and Trust a/k/a Akida Islamic Bankers' Trustee and Management, Al Taqwa Trade Property and Company Limited a/k/a Al Taqwa Trade Property and Company Establishment a/k/a Himmat Establishment, Al Taqwa Zaka Establishment, Asat Trust Registered, Ba Taqwa for Commerce and Real Estate Limited a/k/a Ba Taqwa for Commerce and Real Estate Establishment a/k/a Ben M. Nada Establishment a/k/a Yousef M. Nada Establishment, Bank Al Taqwa Limited a/k/a Al Taqwa Bank, Cemsteel Impex Establishment, Gulf Center S.R.L., Iksir Limited Holding, MIGA – Malaysian Swiss, Gulf and African

Trust became a global network of financial, religious, business and charitable institutions for the Muslim Brotherhood, and its structure also financed other extremist Islamic organizations, including Osama bin Laden and al Qaida, moving and laundering funds for Islamic terrorist activities.

Asat Trust is controlled by Youssef M. Nada, a co-defendant here and himself designated as a SDGT on November 7, 2001 along with Asat Trust itself and other entities. It is headed and directed by Martin Wachter and Erwin Wachter, also codefendants here.  Additionally, available information reveals a pattern of activity over a period of many years of the Wachters working at the same address registered to Asat Trust.

Al Taqwa's executives include Nada, Nasreddin, Ali Ghaleb Himmat, and Albert Friedrich Armand Huber. The two principals of Al Taqwa, Nada and Himmat, are members of the Egyptian Muslim Brotherhood who acquired Italian nationality and live in a small Italian enclave close to the Swiss town of Lugano. Nada, Himmat and Huber were added to the SDGT list on November 7, 2001; Nasreddin on April 19, 2002.

---

Chamber a/k/a Camera di Commercio, Industria e Turismo Per Gli Stati Arabi del Golfo e la Svizzera, Nada International Anstalt a/k/a Nada Group International Anstalt, Nada Management Organization S.A. a/k/a Al Taqwa Management Organization, Nasco Business Residence Center SAS di Nasreddin Ahmed Idris EC, Nasco Nasreddin Holding S.A., Nascoservice S.R.L., Nascotex S.A. a/k/a Industrie Generale de Filature et Tissage a/k/a Industrie Generale de Textile, Nasreddin Charitable Foundation, Nasreddin Company Nasco SAS di Ahmed Idris Nasreddin EC Nasreddin Foundation a/k/a Nasreddin Stiftung, Nasreddin Group International Holding Limited, Nasreddin International Group, Limited Holding a/k/a Middle Easte and Turkey Investment Holding Limited, Raw Mat Service and Management S.A., Yousef M. Nada Establishment a/k/a Yousef M. Nada Anstalt, and Yousef M. Nada & Co. Gesellschaft MBH.

II.    **ASAT TRUST HAS BEEN PROPERLY SERVED**

Asat Trust first presses that it could not have been served lawfully via publication, either by terms of this Court's publication order, under the tenets of due process or under the laws of Liechtenstein.  These arguments miss the mark.  The terms of the Publication Order expressly allowed for service by publication against this very defendant, rendering service proper under this Court's decree.  Due process has certainly been afforded this defendant under long-established American constitutional law.  Finally, not only does Asat Trust's one-sided recitation of Liechtenstein law inaccurately state the proper civil procedure in the principality as well as in the United States, but also its assertions cannot be accepted uncritically by this Court without first providing plaintiffs with an evidentiary hearing and discovery to test Asat Trust's contentions.

A.    <u>Service Comported With The Publication Order</u>

Asat Trust argues that the Publication Order in this case did not authorize service via publication against it.  It is mistaken.  The full text of the September 15, 2004 Order reads as follows:

> THIS MATTER having come before the Court on Joint Motion of Plaintiffs Federal Insurance, Ashton and Burnett for an Order authorizing Plaintiffs to effectuate service of process by publication on defendants specified in Attachment A for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means or was attempted and rejected or otherwise not responded to at an address that was discovered, and the Court having determined that good cause exists for the relief sought;
>
> IT IS hereby ORDERED that Joint Plaintiffs' Motion for Leave to Serve Specified Defendants by Publication Pursuant to Fed. R. Civ. Pro. 4(f)(3) is GRANTED, to commence or after September 13, 2004 and the publication will be once per week for four consecutive weeks in the International Herald Tribune, USA Today and at least one Arabic language newspaper circulated widely in the Middle

East, as well as posting the complaint on the web site www.sept11terrorlitigation.com.[4]

Immediately, it is obvious that this Order is incapable of being read in the manner which Asat Trust asserts.  It cannot have been the case that plaintiffs were required to demonstrate even after the Order that Asat Trust was incapable of being served via other means because this Court allowed service via publication to proceed *immediately* after the issuance of the Order.  The Order did not contemplate the idea of a further "waiting period" during which Plaintiffs could test whether service by other means was still feasible; indeed, this Order was only granted after Plaintiffs had attempted and failed to serve each listed defendant by other means – <u>including Asat Trust</u>.  Moreover, as detailed later in this brief, the Federal Rules did not even require Plaintiffs to follow any hierarchy of "preferred service" before seeking judicial relief.

However, contrary to Asat Trust's representation, many Plaintiffs attempted service by mail upon it at Altenbach 8 Vaduz 9490 Liechtenstein during the summer of 2004, as noted in Plaintiffs' letter to the Court dated September 10, 2004 which prompted the Court's Publication Order.  *See* Exhibit D.  In each case, however, the packages were returned unopened.  As such, the subsequent service via publication was clearly contemplated and authorized by the Court's Order of September 15, 2004.[5]

---

[4]        *See* Exhibit A

        The September 15 Order was initially applicable to the <u>Ashton</u>, <u>Burnett</u> and <u>Federal</u> plaintiffs.  By letter orders dated September 30 and October 7, 2004, this Court extended the publication order to all plaintiffs.  See Exhibits B & C, attached, docket entries 468 and 488.

[5]        The O'Neill Plaintiffs have also served the Defendant pursuant to Fed. R. Civ. P. 4(f)(2)(c)(ii).  In their separate motion to dismiss in those cases, Defendant has attacked this mode of service as well. As indicated in the separately filed Motion to Strike, Docket Nos. 1714 & 1715, the O'Neill Plaintiffs have urged this Court to consider the instant challenge to service by publication to be precluded as it was not specifically raised by the Defendant in its first Motion to Dismiss based upon a purported insufficiency of service.

B.    <u>Service Comported With Due Process</u>

Asat Trust next argues that service via publication in the *International Herald Tribune* and *USA Today* did not comply with due process.  However, the very cases it cites compels the contrary conclusion, that this Court's Order and the publication which followed, having given Asat Trust actual notice of the suit, were wholly within the requirements of due process.

The Second Circuit stated the following in *S.E.C. v. Tome,* 833 F.2d 1086, 1089 (2d Cir. 1987), a case which authorized service by publication against a foreign defendant:

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

Justice Robert Jackson has further stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314 (1950).  The question before this Court therefore is whether publication in the *International Herald Tribune* and *USA*

---

*Kensington International, Limited. v. Societe Nationale Des Petroles Du Congo*, 2005 U.S. Dist. LEXIS 41352 (S.D.N.Y. March 31, 2006) (that a claim of improper service of process must be made in the first instance or it is waived) ; *Landau v. New Horizon Partners, Inc.*, 2003 U.S. Dist. LEXIS 15999, at *32 (S.D.N.Y. Sept. 8, 2003) (same); *Sassower v. City of White Plains*, 1993 U.S. Dist. LEXIS 13475 (S.D.N.Y. Sept. 24, 1993) (the defendant must point out the manner in which it is alleged that the utilized service of process rules were not satisfied);  *Callahan v. Consol. Edison Co. of New York, Inc.*, 2001 U.S. LEXIS 12692 (S.D.N.Y. Aug. 9, 2001) (same); 2-12 *Moore's Federal Practice* § 1233, citing *O'Brien v. R.J. O'Brien Assocs.*, 998 F. 2d 1394, 1400 (7th Cir. 1993); see, *Armstrong v. Sears*, 33 F. 3d 182, 188 (2d Cir. 1994) (asserting an insufficiency of service of process for only one defendant waives the objection for other defendants under Fed. R. Civ. P. 12(g) 12(h)(1)).

*Today* newspapers was "reasonably calculated" to notify Asat Trust of the suit against

them so as to satisfy due process.  Defendants' appearance in this case sufficiently

demonstrates that service by publication was adequate and thus consistent with due

process requirements.

The Second Circuit stated in *Tome*:  "The 'reasonably calculated' analysis need

not be relied on exclusively in this case because we are not dealing with the question of

the adequacy of constructive notice."  *Tome,* 833 F.2d at 1089.  In this instance, at

minimum, there is constructive notice because Asat Trust have appeared to defend this

action.  As the United States Supreme Court stated in *Grannis v. Ordean,* 234 U.S. 385,

394 (1914), "the fundamental requisite of due process of law is the opportunity to be

heard."  The record in this matter establishes that service by publication was adequate,

that Defendants received notice of the suit, understood that they should hire counsel, and

understood their rights because they instructed said counsel to file a motion to dismiss.

This manifests the adequacy of the notice by publication.  Justice Jackson succinctly

summed up this matter when he wrote:

> An elementary and fundamental requirement of due process
> in any proceeding which is to be accorded finality is notice
> reasonably calculated, under all the circumstances, to
> apprise interested parties of the pendency of the action and
> afford them an opportunity to present their objections.
> *Milliken v. Meyer*, 311 U.S. 457 (1940); *Grannis v.
> Ordean*, 234 U.S. 385 (1914); *Priest v. Board of Trustees
> of Town of Las Vegas*, 232 U.S. 604 (1914); *Roller v.
> Holly*, 176 U.S. 398 (1900). The notice must be of such
> nature as reasonable to convey the required information,
> *Grannis v. Ordean*, supra, and it must afford a reasonable
> time for those interested to make their appearance, *Roller v.
> Holly*, supra, and c.f. *Goodrich v. Ferris*, 214 U.S. 71
> (1909). But if with due regard for the practicalities and
> peculiarities of the case these conditions are reasonably
> met, the constitutional requirements are satisfied.  'The

> criterion is not the possibility of conceivable injury but the
> just and reasonable character of the requirements, having
> reference to the subject with which the statute deals.'
> *American Land Co. v. Zeiss*, 219 U.S. 47, 67 (1911); and
> see *Blinn v. Nelson*, 222 U.S. 1, 7 (1911).

*Mullane,* 399 U.S. at 314-15.

By its September 15, 2004 Order, this Court agreed that publication in the

*International Herald Tribune* and other periodicals was appropriate.[6]   Notice by

publication is designed to impart information about a lawsuit, and it did so in this case.

Without question, the notice in this case accomplished the goal of informing Asat Trust

of the instant action and of the claims being lodged against it, thus satisfying any due

process concern.

C.    Service Comported With The Law of Liechtenstein

Finally, Asat Trust attempt to contest service by asserting that Plaintiffs' service

upon it is not valid because Liechtenstein law "prohibits service of process in foreign

actions by any means without the mutual legal assistance of the Liechtenstein courts,"

relying upon the Declarations of Guntram Wolf and Friedrich Wohlmacher.  These self-

serving assertions from hired "experts" attempt to blur the distinction between that which

is *prescribed* under Liechtenstein law and that which is *prohibited*.  Moreover, they are

wholly inapplicable to this case – having been drafted for a dispute regarding service by

---

[6]    And, to be sure, there is no requirement under the Federal Rules that service under
alternative means were unsuccessful prior to seeking relief under Fed. R. Civ. P. 4(f)(3).
Each of the three prongs of Fed. R. Civ. P. 4(f) is equally valid.  *See Rio Props. v. Rio
Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("no support" in the structure, text, or
Advisory Committee notes that Rule 4(f) contemplates a "hierarchy of preferred methods
of service of process".)

*See, similarly, Ehrenfeld v. Mahfouz*, 2005 U.S. Dist. LEXIS 4741, *4 (S.D.N.Y.
2005): "Service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary
relief.' It is merely one means among several which enables service of process on an
international defendant."

the Clerk via registered mail pursuant to Fed. R. Civ. P. 4(f)(2)(c)(ii), Asat Trust's

counsel shamelessly seeks to recycle these declarations raising the wholly separate issue

of service by publication as authorized by court order.  Given this court's order, Fed. R.

Civ. P. 4(f)(3) unquestionably authorizes such service regardless of principality law, as

confirmed by unbiased treatises on Liechtenstein law.

Asat Trust's argument rests upon the notion that service of process in

Liechtenstein can only be validly effectuated via letters rogatory.  However, service

pursuant to the Federal Rules upon a foreign corporation does not rest upon such rigid

agreement with (dubious) foreign protocol.  Fed. R. Civ. P. 4(h)(2) states that service

upon a foreign corporation outside the United States may be accomplished "in <u>any</u>

<u>manner</u> prescribed for individuals by [Fed. R. Civ. P. 4(f)] except personal delivery as

provided in [Fed. R. Civ. P. 4(f)(C)(i)]."  (emphasis added)  In turn, Fed. R. Civ. P. 4(f)

allows for service in a variety of fashions.  Because there is no international agreement

binding the United States to Liechtenstein in this realm, subsections (2)-(3) apply,

allowing for service in a manner via two methods relevant to this dispute:

- unless <u>prohibited</u> by that country's law, delivery sent by the Clerk via mail which requires a receipt (Rule 4(f)(2)(C)(ii)); or
- by other means not prohibited by international agreement as may be directed by the court.  (Rule 4(f)(3))

Certain Plaintiffs attempted the first method while others employed standard mail;

when it failed, Plaintiffs requested permission from this Court to attempt service via

publication and received it, as directed by this court in its Publication Order and barred

by no international agreement.  Indeed, Asat Trust cites no international agreement at all

in its brief.

It is for this simple reason that Asat Trust's hired expert declarations– <u>which were not even prepared in support of this motion</u> – are wholly inapplicable.[7]  These declarations, and the cases cited in support thereof, do not at all address the legality of service by publication when explicitly authorized by a United States court.

Indeed, as the *Rio Properties* case begrudgingly cited by Asat Trust acknowledges, "The only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002).   Indeed, such service is equally acceptable to other means, as a court in this district agrees:  "Service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant."  *Ehrenfeld v. Mahfouz*, 2005 U.S. Dist. LEXIS 4741, *4 (S.D.N.Y. 2005).

As such, numerous creative means of service have met with Court approval under Rule 4(f)(3), including, specifically, service by publication in the *International Herald Tribune* for European defendants who could not be served after good-faith efforts at direct service via registered mail.  *SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987).  Similarly, even the *In re Ski Train Fire* case upon which Asat Trust relies involves a denial of a motion to dismiss on service grounds because defendants therein "have not alleged that service was not effectuated [or] that they lacked actual notice," and that "plaintiffs should not be penalized for complying with this Court's order [allowing for alternative service]."  *In re Ski Train Fire in Kapun, Aus.*, 2003 U.S. Dist. LEXIS 11961,

---

[7]     The Asat Trust declarations were filed as to the <u>O'Neill</u> plaintiffs on behalf of other Liechtenstein-based individual defendants, in a case in which service was properly accomplished under Fed. R. Civ. P. 4(f)(2)(C)(ii) by registered mail sent by the Clerk of the District Court.

*11-12 (S.D.N.Y. 2003).  And nowhere does Asat Trust allege a lack of notice as to this litigation or any prejudice suffered.

Even if Liechtenstein law somehow did apply, it simply does not require what Asat Trust's declarants suggest.  Dr. Wolf specifically refers to and incorporates a purported the English translation of Sections 27 to 29 of the Liechtenstein Code of Jurisdiction in his declaration.  These sections of the Liechtenstein Code do not state that international service is *required* to be completed in any one particular manner.  Rather, they provide a manner in which the Liechtenstein Courts *may* provide legal assistance to foreign courts.  Nowhere in the *Jurisdiktionsnorm* does it state that a foreign court is *required* to seek the assistance of the Liechtenstein courts.  Nor does it state that service expressly authorized by a Court in the United States via publication pursuant to Fed. R. Civ. P. 4(f)(3), following a defendant's apparent refusal to accept service at its known address, violates Liechtenstein law or is in any way prohibited.

The primary case cited in support of the Defendants' position, *Jung v. Neschis*, 2003 U.S. Dist. LEXIS 5569 (S.D.N.Y. 2003), misses the mark.  It concerns service under Fed. R. Civ. P. 4(f)(2)(C)(ii), which, again, is not the issue presented in this dispute and which Plaintiffs urge was incorrectly decided in any event.

Finally, the lone English-language treatise on Liechtenstein procedure located by Plaintiffs affirms that just as in the United States, actual notice of the Complaint trumps any procedural shortfall in service.  As Dr. Dr. Herbert Batliner[8] and Dr. Johannes Gasser explain in Litigation and Arbitration in Liechtenstein,  "Default of service is cured if the party to be served actually receives the court documents early enough to preserve all

---

[8]     Former President of High Court of Administration (1965-1970) and Constitutional Court of Liechtenstein (1975-1980).

rights."  Batliner and Gasser, <u>Litigation and Arbitration in Liechtenstein</u> 27 (Stempfli

Publishers Ltd., Berne 2004).

Asat Trust received actual notice of the proceedings and filed its motion to

dismiss,[9] and Plaintiffs have acted in good faith in compliance with an order of this

Court.  The motion to dismiss based on allegedly improper service should be denied.

> D.     <u>In The Alternative, This Court Must Hold A Hearing And Allow
> Discovery</u>

Should this Court even seriously consider Asat Trust's claims of invalid service,

Defendants request a preliminary hearing in order to resolve the contested issues of fact

pursuant to Rule 12(d).  Asat Trust has raised numerous factual and legal issues in its

motion to dismiss and accompanying affidavits, and they cannot merit a favorable ruling

until these issues have been adjudicated.  Furthermore, in order to properly prepare for

such a hearing, Plaintiffs further request that discovery be allowed, including requiring

depositions from Asat Trust's purported "experts" on Liechtenstein law, so that we may

properly prepare to present our case.

Fed. R. Civ. P. 12(d) states that the defenses specified under Fed. R. Civ. P. 12(b),

including insufficiency of service of process, "shall be heard and determined before trial

on application of any party, unless the court orders that the hearing and determination

thereof be deferred until trial."  As such, numerous opinions in this District have

supported requiring a preliminary hearing pursuant to Rule 12(d) in order to resolve

issues of fact as to the sufficiency of service

---

[9]     We are not confronted with a 'default' situation, where the defendant has sought
to vacate a judgment some time after service, claiming that he was not aware of the
proceeding.  To the contrary, Defendants promptly obtained American counsel,
negotiated a briefing schedule, and otherwise fully have participated in this judicial
proceeding.  Counsel for Asat Trust has involved in the <u>O'Neill</u> litigation since March 14,
2005.

In *Roquist v. New York Univ. Medical Center*, 1998 U.S. Dist. Lᴇxɪs 15808 (S.D.N.Y. 1998), for example, Defendants had moved to dismiss the claims against them pursuant to Rule 12(b)(5) and 12(b)(6).  Plaintiff argued in response that the defendants were personally served and submitted affidavits of service from the process server in support, while Defendants submitted affidavits denying that they were personally served. *Id.* at *44.  Given the factual dispute, the court referred the motion to dismiss for insufficient service of process to the magistrate judge for an evidentiary hearing on whether service of process was proper.  *Id.*  See, similarly, *Rates Technology Inc. v. UTT Corp.,* 1995 U.S. Dist. Lᴇxɪs 2348, *2 (S.D.N.Y. 1995) (when "issues of fact as to the sufficiency of service exist, the Court may convene a preliminary hearing" to resolve the contested issues of fact pursuant to Rule 12(d)); *Blue Ocean Lines v. Universal Process Equipment, Inc.*, 1993 U.S. Dist. Lᴇxɪs 14090 (S.D.N.Y. 1993) (need for hearing to resolve dueling affidavits).  *See also Purnell v. Dieso*, 1995 U.S. Dist. Lᴇxɪs 4883 (S.D.N.Y. 1995); *Gallery Recording Studios, Inc. v. Discrete Technology Ltd.*, 1997 U.S. Dist. Lᴇxɪs 17517 (S.D.N.Y. 1997).

If this court determines that an evidentiary hearing is needed, it should employ its discretion to permit discovery on the factual issues pursuant to Rule 26.  As Moore's Federal Practice reasons:

> If the court holds an evidentiary hearing to decide whether it should grant a motion to dismiss for lack of personal jurisdiction, insufficiency of process, or insufficiency of service, it has discretion to allow discovery on the factual issues pertinent to the motion.  It should do so.

Moore's Federal Practice, § 26.41[11][b] (3d. ed. 2003).  Courts have concurred that such discovery would aid in the Court's fact-gathering and truth-ascertaining process.   See *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni*, 61 F.R.D. 653, 656 (D.P.R.

1974); *Denochick v. Rapistan Demag*, 2001 U.S. Dist. LEXIS 11624 (E.D. Pa. 2001).

Before uncritically accepting Asat Trust's declarations as to Liechtenstein law (which

were not even drafted for the purposes of this motion), this Court must at a minimum

allow Plaintiffs to depose and cross-examine these declarants.

III.   **PLAINTIFFS HAVE PROPERLY ESTABLISHED JURISDICTION**

        Asat Trust argues that plaintiffs lack jurisdiction over it.  This argument lacks

merit.  For purposely directing its conduct towards the United States and participating in

a conspiracy directed against it, as recognized by its designation under Executive Order

13224, Asat Trust is properly before this Court.

        A.      Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima
                Facie* Showing Of Personal Jurisdiction May Be Established Solely
                <u>By Legally Sufficient Allegations Of Jurisdiction</u>

        In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation:

>               Prior to discovery, a plaintiff challenged by a jurisdiction
>       testing motion may defeat the motion by pleading in good
>       faith, [citation omitted] legally sufficient allegations of
>       jurisdiction.  At that preliminary stage, the plaintiff's *prima
>       facie* showing may be established solely by allegations.
>       After discovery, the plaintiff's *prima facie* showing,
>       necessary to defeat a jurisdiction testing motion, must
>       include an averment of facts that, if credited by the trier,
>       would suffice to establish jurisdiction over the defendant.
>       [citations omitted].  At that point, the *prima facie* showing
>       must be factually supported.

        *Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert.*

*denied*, 498 U.S. 854 (1990).   In order to defeat such a motion, a plaintiff need only

present allegations that connect the defendant with the applicable forum – here, the

United States.  In deciding such a motion, the plaintiff's jurisdictional averments must be

taken as true.  *Id*.;  *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d

-15-

Cir. 2003).  Moreover, the court must construe the pleadings in a light most favorable to

plaintiff, resolving all doubts in his favor.  *DiStefano v. Carozzi North America, Inc.*, 286

F.3d 81 (2d Cir. 2001).  As this Court has held:

> Because these motions are brought before discovery and
> decided without an evidentiary hearing, Plaintiffs need only
> make a prima facie showing that personal jurisdiction
> exists. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108
> (2d Cir. 1997); *A.I. Trade Finance, Inc. v. Petra Bank*, 989
> F.2d 76, 79 (2d Cir. 1993). Plaintiffs may rely entirely on
> factual allegations, *Jazini v. Nissan Motor Co*., 148 F.3d
> 181, 184 (2d Cir. 1998), and they will prevail even if
> Defendants make contrary arguments, *A.I Trade*, 989 F.2d
> at 79. In resolving the motions, the Court will read the
> complaints and affidavits in a light most favorable to
> Plaintiffs. *PDK Labs*, 103 F.3d at 1108.

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d. at 804.

**B.**    <u>The Exercise of Personal Jurisdiction Comports With Due Process.</u>

Asat Trust is subject to personal jurisdiction here because, in providing support to

Osama bin Laden and al Qaida, which had long publicly announced its intentions to

attack the United States, it purposefully directed its conduct here. *In re Terrorist Attacks*

*on September 11, 2001,* 349 F. Supp. 2d at 810. Each case should be evaluated in light of

its own unique facts and circumstances, in order to ensure that the exercise of jurisdiction

complies with "fair play and substantial justice." *International Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945). The issue is whether the defendant should "reasonably

anticipate being haled into court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980); *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S.

102 (1987).

The Supreme Court has further stated that reasonableness "considerations

sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of

minimum contacts than would otherwise be required." *Burger King v. Rudzewicz*, 471

U.S. 462, 487 (1985); *see Palestine Info. Office v. Shultz*, 853 F.2d 932, 942 (D.C. Cir.

1988); *see also Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 22 (D.D.C. 1998)

(policy behind statute giving terrorism victims remedy "could significantly lower the

threshold of constitutional requirements"). The reasonableness of subjecting defendants

to jurisdiction in the U.S. must be assessed in light of the horrific manner in which U.S.

residents were attacked for no reason other than that they were in the United States. The

policies of "fair play" and "substantial justice" cannot be applied without recognizing the

deliberate attacks on the U.S. that gave rise to Plaintiffs' claims.  Case law makes clear

that where terrorists target Americans, they should reasonably foresee being haled into

court in the United States, such that due process is not violated by the exercise of

jurisdiction. *In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d. at 807-12.

The record before this Court demonstrates that bin Laden and al Qaida had

publicly and repeatedly announced their intention to attack the United States from the

early 1990s on, and that during the time Asat Trust provided significant financial support

to Osama bin Laden and his growing al Qaida enterprise.  Because of bin Laden's public

urging of violence against American interests as early as 1992, Asat Trust knew that its

support would further acts of international terrorism directed at the United States. In this

context, Asat Trust's amounts to purposeful direction at the United States sufficient to

satisfy the "minimum contacts" test. No more is required to satisfy the "minimum

contacts" test and subject Asat Trust to jurisdiction in the United States.

Indeed, it is worth noting again in this context that Asat Trust was designated as a

Specially Designated Global Terrorist on November 7, 2001, because of its threat to the

security of the United States.  The Office of Foreign Assets Control of the United States

Treasury froze its assets.   Swiss and Italian police raided the homes and offices of top officials the same day, including those of Erwin Wachter, the head of Asat Trust.  At the time of its designation, President George Bush explained the danger of the Al Taqwa network which Asat Trust controlled: "Al Taqwa is an association of offshore banks and financial management firms that have helped Al Qaeda shift money around the world.  Al Taqwa raises funds for Al Qaeda."

Treasury Secretary Paul O'Neill added in his statement announcing the designations:

> Al Taqwa and al-Barakaat are financiers of terror. The President's September 23 Order [Executive Order 13224] made plain that those who underwrite violence bear equal culpability to those who perpetrate it. Feigned indifference, willful blindness, and the appearance of normalcy and status in the world of business or commerce will no longer provide cover or safe harbor – here or abroad.
>
> The al Taqwa group has long acted as financial advisers to al Qaeda, with offices in  Switzerland, Liechtenstein, Italy and the Caribbean.
>
> (Statement by Treasury Secretary Paul O'Neill, November 7, 2001.)

This Court owes deference to the United States Government's determination under Executive Order 13224 that Asat Trust was part of a network of terrorist supporters constituting a "continuing and immediate threat of further attacks on United States nationals or the United States [and] constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," by purposefully directing its activities towards the United States.  Jurisdiction is proper under a purposeful direction theory.

C.      Additionally, Jurisdiction Is Proper Under Conspiracy Theory

-18-

Alternatively, Asat Trust is subject to jurisdiction here because, as alleged in the complaints, More Definite Statements and RICO Statements, it conspired with al Qaida to attack the United States. Courts within this circuit have recognized that they may assert jurisdiction over a defendant based on the activities of co-conspirators in the forum, including those of the September 11 hijackers. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805 (acts committed in New York by co-conspirators subject out of state defendant to jurisdiction under CPLR 302(a)(2)); *Allstate Life Ins. Co. v. Linter Group Ltd.,* 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (noting that "[m]any courts in this Circuit have asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory" and asserting personal jurisdiction over absent defendants pursuant to a conspiracy theory by imputing forum acts of coconspirators done in furtherance of conspiracy); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266-70 (S.D.N.Y. 1991) (asserting personal jurisdiction over non-resident defendant via conspiracy theory). The actions of the co-conspirators within the forum serve to establish minimum contacts sufficient to satisfy Due Process over the non-resident defendant. *Dixon v. Mack*, 507 F. Supp. 345, 352 (S.D.N.Y. 1980) ("The act of the conspiracy in allegedly abducting plaintiff in New York, which is one of the acts, of course complained of in the suit, supplies the necessary minimum contacts."); *Andre Emmerich Gallery v. Segre,* 1997 WL 672009 (S.D.N.Y. Oct. 29, 1997) (imputation of forum activities of co-conspirator to nonresident defendant establishes sufficient minimum contacts.

The *prima facie* showing of conspiracy requires allegations of the primary tort (in this case, the attacks of September 11) and four additional elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the defendant's intentional participation in the furtherance of a plan; and (4) resulting

damage or injury. *See Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000); *see also Chrysler Capital,* 778 F. Supp. at 1267. This Court has further held that: "[t]o warrant the inference that a defendant was a member of the conspiracy," Plaintiffs must show that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the out-of-state defendant." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805 (citations omitted).  Plaintiffs have met this burden.[10]

### D.    At A Minimum, Jurisdictional Discovery Is Warranted

If the Court has any doubt about its jurisdiction, it should exercise its broad discretion to order jurisdictional discovery. *See, e.g., Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981) (district court may permit jurisdictional discovery to help resolve Rule 12(b)(2) motion); Moore's Federal Practice § 12.31 [7] (3d ed. 2003). This Court has done so with regards to other defendants, and at a minimum should do so here, especially since pertinent jurisdictional facts lie within the control and knowledge of the defendant contesting jurisdiction.[11] *See Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1010-11 (2d Cir. 1986); *Investment Properties Intl., Ltd. v. 10S, Ltd.,* 459 F.2d 705, 707-08 (2d Cir. 1972).

---

[10]    Alternatively, Asat Trust is subject to jurisdiction on account of its involvement with money laundering through Al Taqwa.  This topic has been briefed extensively; *see*, *e.g.*, Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Dubai Islamic Bank at 8-10.

[11]    See Appendix I of O'Neill Memorandum of Law, Docket No. 1235, indexing many of the allegations in the pleadings describing the role of the Defendant in the conspiracy.

IV.     **CONCLUSION**

Because service was valid and jurisdiction is proper, Asat Trust's motion to

dismiss must be denied.


Respectfully submitted,

COZEN O'CONNOR

Dated: April 21, 2006                  BY: _____/s/_____

Stephen A. Cozen, Esquire
Elliott R. Feldman, Esquire
Sean P. Carter, Esquire
Adam C. Bonin, Esquire
1900 Market Street
Philadelphia, PA 19103
Tele: (215) 665-2000
Fax: (215) 665-2013
Attorneys for *Federal Insurance* Plaintiffs

Jerry S. Goldman
LAW OFFICES OF JERRY S. GOLDMAN
AND ASSOCIATES, P.C.
111 Broadway, 13th Floor
New York, New York 10006
Tel.: (212) 385-1005
Fax: (212) 346-4665
Attorney for *O'Neill* Plaintiffs

Kenneth L. Adams
Richard W. Fields
Christopher Leonardo
Stacey A. Saiontz
Andrew N. Bourne
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
1177 Avenue of the Americas
New York, N.Y. 10036-2714
Telephone: (212) 835-1400
Facsimile: (212) 997-9880
Attorneys for *Cantor Fitzgerald* Plaintiffs

James P. Kreindler, Esq.
Justin T. Green, Esq.
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, New York 10017-5590
Phone (212) 687-8181
Attorneys for *Ashton* Plaintiffs

Robert M. Kaplan
FERBER, CHAN, ESSNER & COLLER,
LLP
530 Fifth Avenue, 23rd Floor
New York, New York 10036-5101
(212) 944-2200
Attorneys For *Continental* Plaintiffs

David H. Fromm, Esq. (DH-9334)
Frank J. Rubino, Jr., Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, New York 10017
(212) 983-8500
Attorneys for Plaintiff *New York Marine &
General Insurance Company*

Ronald L. Motley, Esq. (RM-2730)
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone: (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN &
SHERIDAN, LLP
415 Madison Avenue
New York, NY 100 17-11 1 1
Telephone: (212) 401-7600
Attorneys for *EuroBrokers* and *WTC
Properties* Plaintiffs