**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| *IN RE* TERRORIST ATTACKS ON | ) **03 MDL 1570 (RCC)** |
| SEPTEMBER 11, 2001 | ) **ECF CASE** |
| | ) |

*This document relates to:*

> *Federal Ins. Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Estate of John P. O'Neill, Sr., on behalf of John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Al Baraka Inv. and Dev. Corp., et al.*, Case No. 04-CV-1923 (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Inv. and Dev. Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Ins. Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Ctr. Prop., LLC, et al. v. Al Baraka Inv. and Dev. Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**REPLY IN SUPPORT OF DEFENDANT YASSIN ABDULLAH KADI'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**


David F. Geneson (*Admitted pro hac vice*)
Bonnie K. Arthur (*Admitted pro hac vice*)
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C.  20006

Attorneys for Defendant
Yassin Abdullah Kadi

Dated:  May 18, 2006

## I.     PLAINTIFFS FAILED TO DEMONSTRATE THAT MR. KADI KNOWINGLY AND INTENTIONALLY PROVIDED MATERIAL SUPPORT TO AL QAEDA

Plaintiffs incorrectly presuppose that because Mr. Kadi's name is on the Office of Foreign Assets Control's ("OFAC's") Specially Designated Global Terrorist ("SDGT") list, he financially supported al Qaeda and his financial support enabled al Qaeda to plan and execute the 9/11 attacks.  It is widely known that in the weeks and months following 9/11, many individuals and companies were added to this list without any due process or prior notice.  As previously noted, Mr. Kadi was summarily added a month after 9/11.  Not even the most basic requirements associated with a good faith basis for a sustainable allegation in federal court are required before the Executive Branch can designate an individual as an SDGT.  In fact, there is no required showing before an individual is designated, even indefinitely.

Contrary to plaintiffs' allusions, Mr. Kadi's assets were frozen in other parts of the world *only in reaction to* the United Nations adding Mr. Kadi to its sanctions list under UN Resolution 1333, done specifically at the request of United States.  At that point, other countries followed suit.  To avoid the problem of the U.S. Treasury General Counsel's own public admission of the meaningless vagaries of the designation process, plaintiffs misquote Mr. Aufhauser several times in referring to his letter dated November 29, 2001.  The plaintiffs have no basis for their assertion that Mr. Aufhauser was specifically identifying Mr. Kadi as a financial supporter of al Qaeda when his name was added to OFAC's SDGT list.  Furthermore, the Swiss Deputy Attorney General, Claude Nicati, acknowledged that Mr. Aufhauser's letter has no legal or evidentiary value.[1]

---

[1] *See* Exhibit A; Letter from C. Nicati, Swiss Deputy Attorney General, to M. Bonnant, July 1, 2004, at 3 (When addressing Mr. Bonnant's concerns about the Aufhauser letter dated Nov. 29, 2001, Mr. Nicati states that "[Y]ou will not be unaware of the fact that, in American as well as in Swiss proceedings, simple assertions are not sufficient to win the court's conviction.").

In their effort to use OFAC's political designation of Mr. Kadi as a predicate for their claims here, plaintiffs argue that the designation was supported by ample evidence.  To the contrary, the baseless allegations and supposed evidence is not sufficient to demonstrate that Mr. Kadi knowingly and intentionally provided material support to al Qaeda.  For instance, plaintiffs' attempt to use an action taken by the Albanian authorities regarding a construction project as support for Mr. Kadi's designation is plainly wrong.  The article the plaintiffs cite to is dated January 27, 2002, which speaks to occurrences <u>after</u> the designation was issued in October 2001.  Also, plaintiffs choose to ignore the fact that more than three years ago, the Albanian authorities "found that all [of Mr. Kadi's] transactions were legitimate and above board" after a "thorough investigation" of Mr. Kadi's accounts with three Albanian banks and his companies operating in Albania.  Not only did the Albanian authorities find that Mr. Kadi did not violate any laws, but also that he was absolved of any financial wrongdoing.  These findings were reported to the Albanian Parliament in September 2002, some eight months after the article upon which Plaintiffs rely.[2]

Plaintiffs' reliance on Mr. Kadi's former connection to Muwafaq is similarly misplaced.  As this Court has previously stated, a non-resident defendant's position as an officer of an entity "would not be a basis for jurisdiction over him even if the Court had personal jurisdiction over these entities."[3]  It is common sense that officers and directors of an organization take an active role in the organization, which is precisely what Mr. Kadi did for Muwafaq.  Jurisdiction is not conferred by plaintiffs alleging that businesses or charities, like Muwafaq, with which Mr. Kadi may have been involved as an officer or investor had ties to alleged terrorism.  Further, plaintiffs

---

[2] *See* Exhibit B; Mohammed Alkherefji, *Investigators find Al-Kadi dealings in Albania were clean*, Arab News, Sept. 26, 2002.

[3] *In re Terrorist Attacks on* September *11, 2001*, 349 F. Supp. 2d 765, 815-16 (S.D.N.Y. 2005), "*Terrorist Attacks I.*"

2

have no evidence of Muwafaq transferring money to bin Laden and assisting al Qaeda fighters in

Bosnia, and more importantly, no basis to claim or evidence of Mr. Kadi having any knowledge

of any transfers of money.  Plaintiffs assert that Mr. Kadi ran Muwafaq until 1997, but this is far

too attenuated in time alone to have any causation on the attacks of 9/11.  Finally, as this Court is

aware, the Swiss Federal Criminal Tribunal, the highest federal court in Switzerland, has already

reviewed Mr. Kadi's charitable activities, including his connection to Muwafaq, and has

determined that there is <u>no</u> connection between Mr. Kadi's charitable activities being

investigated in Switzerland and 9/11.[4]  Notably, this decision is not appealable.

Additionally, plaintiffs place significance on a letter, allegedly found in 2002 and then

cited to in a 2004 OFAC report, which supposedly refers to Mr. Kadi.  According to plaintiffs,

the letter alludes to someone who supposedly managed money for bin Laden (in Sudan), and that

someone must be Mr. Kadi.  Mr. Kadi does not have a copy of this letter and the United

States/OFAC has refused his request to review a copy.  Moreover, the OFAC report does not

specify to which member of the huge and hugely wealthy bin Laden family the letter is referring.

Albeit, even if the letter is referring to Osama bin Laden and if this letter was written in the

Sudan period (1992-1996), this period was well before Osama bin Laden became known as the

evil figure he is known as today.  It is simply nonsense to suggest that everyone in the early

1990's knew that Osama bin Laden would become the evil figure he is today, because he did not

---

[4] *Alice Hoglan et al. v. Public Ministry of the Swiss Confederation and Yassin Abdullah Kadi* (BB [Swiss Federal Criminal Court] 12 December 2005), *"2005 Swiss Decision,"* Certified English Translation at 6-7 ("In this case, nothing in the file would lead one to conclude, with sufficient likelihood, that [Mr. Kadi] knew or could have known that the payments he made, and because of which he is implicated in the Swiss proceedings, would be specifically used to finance the September 11, 2001 attacks.").

emerge as such until after the U.S. government and the Saudi Arabian government put pressure

on the Sudan government to expel him and he departed from that country in 1996.[5]

As for plaintiffs' allegation that Mr. Kadi's donation to the housing units of Al Iman

school demonstrates that Mr. Kadi purposefully and materially supported al Qaeda, the plaintiffs

should review Paragraph 47 of Kaplan's Declaration, Exhibit 4, "Summary of Pleadings

References to the Conspiracy and to Yassin Abdullah al Qadi a/k/a Yassin Al-Qadi a/k/a Yassin

al Kadi a/k/a Yasin al-Qadi" attached to the plaintiffs' own Consolidated Memorandum.  There,

the plaintiffs themselves verify that "[b]ank records confirm that Al-Qadi's claim [that his

donation to Maram was used **solely** to aid in the construction of Al Iman, a religious school in

Yemen] is true."  [Emphasis added].  It is inappropriate to suggest that a U.S. court claim

jurisdiction over and impose liability on someone who makes a donation to a school, an alleged

graduate of which subsequently goes on to commit a crime.  Mr. Kadi's donations to Al Iman are

indistinguishable from USAID's support of Yemeni education.

The plaintiffs also attempt to demonstrate an extensive relationship between Mr. Kadi

and Wael Julaidan.  To do so, plaintiffs cite to a January 20, 1999, fax from a manager of

Cavallo Limited with a "C.C" to Mr. Kadi and an "Att" to Mr. Julaidan concerning a lost

shipment of rice.[6]  Swiss Deputy Attorney General Nicati questioned Mr. Kadi at the Swiss

Embassy in Riyadh on July 1, 2003, on this issue, suggesting that the shipment was in reality a

front for diverting money to terrorist causes.  Upon investigation it was discovered that the

---

[5] According to the OFAC memo, the letter refers to Mr. Kadi "managing money for bin Laden in Sudan." This begs the question of whether this is a reference to Issam Quadi or the person identified as being a member of the Dosari tribe in the FBI report of June 2, 2004.

[6] *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendant Yassin Abdullah Kadi's Motion to Dismiss Plaintiffs' Complaints and Memorandum in Support, *"Plaintiffs' Consolidated Memorandum,"* Kaplan Dec., Exhibit 12.

shipment of rice referred to in the fax had, in fact, been lost off the coast of Crete.  Documentary evidence to that effect was provided to Mr. Nicati.

Similarly, while plaintiffs allege that in 2002 the FBI "raided" the offices of Ptech, a company in which plaintiffs allege Mr. Kadi was an investor, after three and a half years there is no indication that criminal charges have been brought against that company or those associated with it, nor is that company designated by OFAC, nor is there any allegation that the company has any ties to 9/11.  There is no proven connection between Ptech and terrorism, and more importantly, this Court held that being an investor in a company is not enough to sustain personal jurisdiction.[7]

Finally, plaintiffs mislead the Court by citing to the "Government's Evidentiary Proffer Supporting the Admissibility of Coconspirator Statements," prepared by the U.S. in *U.S. v. Arnaout*, as evidence that Mr. Kadi knowingly and intentionally supported al Qaeda by being involved with Ptech more than five years before 9/11.  The plaintiffs cite to this Evidentiary Proffer to support their specific assertion that Soliman Biheiri was accused of using BMI to funnel $3.7 million from the SAAR Foundation to Islamic terrorists.  This Evidentiary Proffer was denied by the U.S. District Court for the Northern District of Illinois on February 4, 2003: "Given the insufficiency of the *Santiago* proffer, the court cannot find by a preponderance of the evidence that the proffered statements are admissible under the co-conspirator exception to the hearsay rule before trial."[8]  This is just another instance of plaintiffs using misleading, vague references and grouping various Muslim charities together in hopes that the reader will get lost in the shuffle of names.

---

[7] *Terrorist Attacks I*, 349 F. Supp. 2d at 820-21 (dismissing A. bin Mahfouz for lack of personal jurisdiction).

[8] *See U.S. v. Arnaout*, No. 02 CR 892, 2003 U.S. Dist. LEXIS 1635 (N.D. Ill. Feb. 4, 2003) (vacated by, remanded by on other grounds, 431 F.3d 994 (7th Cir. 2005)).

There is **no basis**, factually or legally, for the inference plaintiffs seek to have this Court

apply to Mr. Kadi due to OFAC's political designation of him, or for any of the other attenuated

connections cited to by the plaintiffs.  If they were to be candid with the Court, the plaintiffs

would have to concede that they are unable to refute the fact that, despite having been on

OFAC's list for nearly five years, and after all of the various governmental investigations of

Muslim entities, there have been no criminal charges brought against Mr. Kadi or any entity he

owned or controlled.  To date, OFAC has not designated Muwafaq as an SDGT.  Further, this

Court has properly recognized that being designated is "perhaps not dispositive on its own."[9]

None of the individuals or organizations with which plaintiffs allege Mr. Kadi was involved

were designated at the time Mr. Kadi is alleged to have given them support, and typically, if

designated, were not designated until some years afterwards.  In addition, Mr. Kadi has been

absolved by the only two forums, in Switzerland and Turkey, in which the false allegations being

made against him have been vetted.  As this Court held, "Plaintiffs must make a prima facie

showing of each Defendant's **personal or direct participation** in the conduct giving rise to

Plaintiffs' injuries."[10]  The Swiss Decision is instructive.  Charitable contributions do not equate

to direct participation.

## II.      THE COURT LACKS JURISDICTION OVER MR. KADI

Plaintiffs have not demonstrated that Mr. Kadi has the sufficient minimum contacts with

either New York or the United States to justify an exercise of general jurisdiction.[11]  Serving as

an officer or director of a company with ties to the United States, several years prior to 9/11 does

---

[9] *Terrorist Attacks I*, 349 F. Supp. 2d at 825.

[10] *Id.* at 809 (emphasis added).

[11] A defendant is only subject to a Court's general jurisdiction, when he has contacts with the forum that are substantial, continuous, and systematic, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-416 (1984).

not suffice.[12]  Again, plaintiffs try to confuse the issues by saying the Chicago FBI Terrorist Task

Force found probable cause to believe Mr. Kadi transferred money to "terrorists."  They are

referring to a forfeiture action in Chicago in 1998, where funds were alleged to have been

transferred by Mr. Kadi to a Muslim charity *in 1992*  (nine years before 9/11) which employed

someone who was later suspected to have been a member of Hamas.  Not only is this tenuous

connection too remote in time, but as this Court has held, plaintiffs still "have not alleged any

relationship between Hamas and al Qaeda or the terrorist attacks of September 11."[13]

The plaintiffs have not demonstrated that personal jurisdiction exists over Mr. Kadi under

a specific jurisdiction theory.  This Court has stated that "[d]onating money to established

humanitarian organizations that may or may not have been diverting funds to support al Qaeda

cannot be considered primary participation in intentional wrongdoing expressly aimed at the

United States."[14]  Muwafaq's objectives, to relieve famine and suffering caused by war, are

unquestionable.  There is no evidence that Mr. Kadi's donations to the group were anything other

than in furtherance of those objectives.

OFAC's political designation is not subject to any meaningful due process and therefore

cannot be sufficient to create personal jurisdiction.  The deference given to the executive branch

in these designations is insurmountable.  As the United States District Court for the District of

Columbia recently held:

> in reviewing agency decisions regarding foreign relations, the
> Court is mindful that matters related to the conduct of foreign
> relations are *so exclusively entrusted* to the political branches of
> government as to be *largely immune from judicial inquiry or*

---

[12] *See e.g.*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) (citing cases holding three, five, and seven years as being the time-frame for contacts analysis).

[13] *Terrorist Attacks I*, 349 F. Supp. 2d at 833, 835.

[14] *In re Terrorist Attacks on September 11,* 2001, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005), "*Terrorist Attacks II*" (citations omitted).

> *inference*.  Thus, as a general principal, this Court should avoid
> impairment of decisions made by the Congress or the President in
> matters involving foreign affairs or national security.[15]

Because of the "immune" nature of the designation, the political branch of government can

unilaterally take this action, which may devastate the reputation and financial status of the

designee, but is not bound by any obligation to satisfy any burden of proof.

Plaintiffs do not deny that Muwafaq has been declared void since 1994, as indicated by

the Secretary of State in Delaware.[16]

Plaintiffs do not even bother to respond to Mr. Kadi's assertion that a non-resident

defendant's position as an officer of an entity "would not be a basis for jurisdiction over him

even if the Court had personal jurisdiction over these entities,"[17] as this Court noted in reference

to Prince Mohamed.  Allegations pertaining to Kadi International, Karavan Construction

Company, Muwafaq, Abrar Group International, or any other entity with which Mr. Kadi may

have been associated are not enough to warrant an exercise of personal jurisdiction over him,

especially where there is no evidence those organizations were used to funnel money to the

perpetrators of the 9/11 attacks.

Plaintiffs assert that this Court can exercise conspiracy-based jurisdiction over Mr. Kadi.

However, plaintiffs have plead no facts sufficient to sustain a conspiracy allegation.  Conclusory

allegations of conspiracy or agency are insufficient to establish jurisdiction; plaintiffs must allege

specific facts to warrant an inference that defendant was part of a conspiracy.[18]  There is no

---

[15] *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 45 (D.D.C. 2005), citing *Regan v. Wald,* 468 U.S. 222, 242 (1984) (quoting *Harisiades v. Shaughnessy,* 342 U.S. 580, 589 (1952)) and citing *Global Relief Found. v. O'Neil,* 207 F. Supp. 2d 779, 788 (N.D. Ill. 2002) (citing *Haig v. Agee,* 453 U.S. 280, 292 (1981)) (quotations and internal ellipses omitted, emphasis added).

[16] *See* Exhibit C.

[17] *Terrorist Attacks I*, 349 F. Supp. 2d at 815-16.

[18] *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991).

allegation that Mr. Kadi entered into an agreement or participated in any agreement that resulted in the injury at issue here.  Plaintiffs' assertions rely on cultural biases and religious prejudices.

## III.    PLAINTIFFS FAILED TO STATE A COGNIZABLE CLAIM AGAINST MR. KADI UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs have not established proximate causation between charitable donations from the early 1990's, construction projects in the mid-1990's, and plaintiffs' injuries.  This Court previously rejected plaintiffs' requests for a less stringent causation standard.[19]  Plaintiffs have not alleged any facts showing that Mr. Kadi knew, participated in, or approved of any conduct that facilitated the alleged funneling of money from those charities and businesses to al Qaeda and therefore, the plaintiffs have not stated a viable claim under the ATA.

## IV.    PLAINTIFFS DID NOT PROPERLY SERVE MR. KADI

Contrary to plaintiffs' assertion, whether Mr. Kadi has actual notice of the lawsuit is not dispositive of the question of sufficiency of process.[20]  If the plaintiffs' theory had merit, no party could ever move to dismiss based on insufficiency of process because doing so would amount to conceding actual notice, an absurd result expressly precluded by Fed. R. Civ. P. 12(b)(5).  Moreover, plaintiffs do not dispute that Mr. Kadi's address has been readily and easily accessible since at least June 2003, if not much sooner.  Nor do the plaintiffs deny they did not even mail a complaint to Mr. Kadi until years after this lawsuit was filed or that this Court's CMO2 required them to serve Mr. Kadi by October 15, 2004.

At best, the complaints against Mr. Kadi are an attempt to confuse the fact-finder with the use of religious and cultural prejudices.  Links to other Muslim business and charity leaders are

---

[19] *Terrorist Attacks I*, 349 F. Supp. 2d at 797, n. 26 (rejecting plaintiffs' request for less stringent causation standard and concluding "the proper inquiry at this stage of the litigation is the presence of proximate causation.")

[20] *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("[w]e reject the notion that 'actual notice' suffices to cure a void service").

not enough to sustain a cause of action in a foreign land.  As the Swiss court recently held in

vindicating Mr. Kadi:

> Even if the accused had links with people, such as S., or
> organizations which were suspected of having ties with Al Qaeda –
> such as the U. – none of the elements provided by the plaintiffs
> provide the grounds for considering it likely that the accused gave
> money to the above-mentioned people and organizations for the
> express purpose of training terrorists to hijack aircraft in order to
> crash them on civilian or military targets in September 2001.[21]

The complaints should be dismissed with prejudice in their entirety.  Leave to clarify,

supplement, or otherwise amend the complaints would be futile.  Additionally, plaintiffs have not

demonstrated a need for jurisdictional discovery.

Dated:  May 18, 2006                                    Respectfully submitted,

                                                        HUNTON & WILLIAMS LLP


                                            By: /s/ Bonnie K. Arthur
                                                David F. Geneson (*Admitted pro hac vice*)
                                                Bonnie K. Arthur (*Admitted pro hac vice*)
                                                Hunton & Williams LLP
                                                1900 K Street, N.W.
                                                Suite 1200
                                                Washington, D.C. 20006-1109

                                                Attorneys for Defendant
                                                Yassin Abdullah Kadi

---

[21] *See* 2005 Swiss Decision at 7.

## CERTIFICATE OF SERVICE

I certify that, on the 18th day of May 2006 I caused copies of **REPLY IN SUPPORT**

**OF DEFENDANT YASSIN ABDULLAH KADI'S MEMORANDUM IN SUPPORT OF**

**MOTION TO DISMISS** to be served via the Court's ECF System to all counsel of record listed

within the Court's ECF System.

By: /s/ Bonnie K. Arthur
    Bonnie K. Arthur
    Hunton & Williams LLP
    1900 K Street, NW
    Washington, DC 20006