UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: TERRORIST ATTACKS OF SEPTEMBER 11, 2001 | ) 03 MDL 1570 (RCC)<br>) ECF CASE<br>)<br>)<br>)<br>) |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 CV 6977 (RCC) (S.D.N.Y.)
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03 CV 6978 (RCC) (S.D.N.Y.)
*Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al*, Case No. 03 CV 9839 (RCC) (S.D.N.Y.)
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04 CV 5970 (RCC) (S.D.N.Y.)
*New York Marine and General Insurance Co., et al. v. Al Qaida, et al.*, Case No. 04 CV 5970 (RCC) (S.D.N.Y.)
*Cantor Fitzgerald Associates, L.P., et al. v. Akida Investment Co., Ltd., et al.*, Case No. 04 CV 7065 (RCC) (S.D.N.Y.)
*Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04 CV 7279 (RCC) (S.D.N.Y.)
*World Trade Center Properties, L.L.C., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04 CV 7280 (RCC) (S.D.N.Y.)

*This document also relates to and supplements the motions to dismiss filed in:*

*Estate of O'Neill, et al. v. The Republic of Iraq, et al.*, Case No. 04 CV 1076 (RCC) (S.D.N.Y.)
*Estate of O'Neill, et al, v. Al Baraka, et al.*, Case No. 04 CV 1923 (RCC) (S.D.N.Y.)[1]

**REPLY MEMORANDUM IN SUPPORT OF MOTIONS
TO DISMISS FILED BY DEFENDANT ASAT TRUST REG.**

---

[1] This document also applies to any additional cases in which Asat Trust was named as a defendant and service was purportedly made by publication.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. iii

I.     ASAT TRUST HAS NOT BEEN PROPERLY SERVED. ........................................... 1

    A.     Asat Trust is Entitled to Challenge its Inclusion in the Publication Order. ............ 1

    B.     Plaintiffs Did Not Comply with the Publication Order. ............................................ 3

    C.     Notice Alone Is Not Enough. ....................................................................................... 3

    D.     Service by Publication on Asat Trust is Prohibited by Liechtenstein Law. ............. 5

II.     THERE IS NO PERSONAL JURISDICTION OVER ASAT TRUST HERE. ........... 7

    A.     Plaintiffs' Argument for Direct Jurisdiction over Asat Trust Depends on an Unwarranted Proposal for Weakening Due Process. ............................................ 8

    B.     Plaintiffs Have Not Sufficiently Alleged Conspiracy-Based Jurisdiction. ............. 10

# TABLE OF AUTHORITIES

**Cases**

*Biton v. Palestinian Interim Self-Government Authority*, 310 F. Supp.2d 172 (D.D.C. 2004) .................................................................................................................. 9

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ........................................................... 8, 9

*Ehrenfeld v. Mahfouz*, 2005 WL 696769 (S.D.N.Y. March 23, 2005) ............................... 5

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998) ................................... 9

*In re Ski Train Fire*, 2003 WL 21659368 (S.D.N.Y. July 15, 2003) ........................... 4, 5, 6

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp.2d 765 (S.D.N.Y. 2005) ............................................................................................................................. 9, 10

*Jung v. Neschis*, 2003 WL 1807202 (S.D.N.Y. April 7, 2003) ......................................... 6

*Morrissey v. Curran*, 482 F. Supp. 31 (S.D.N.Y. 1979), *aff'd in part, rev'd in part on other grounds*, 650 F.2d 1267 (2d Cir. 1981) ................................................. 4

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .............................. 1

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ................... 3

*Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97 (1987) ....................... 3

*Palestine Info. Office v. Shultz*, 853 F.2d 932 (D.C. Cir. 1988) ...................................... 8

*Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d 916 (11th Cir. 2003), *cert. denied*, 543 U.S. 814 (2004) ................................................................................................ 4, 5, 6, 7

*Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002) .......... 5

*SEC v. Tome*, 833 F.2d 1086 (2d Cir. 1987) .................................................................. 2

*Simon v. Philip Morris, Inc.*, 86 F. Supp.2d 95 (E.D.N.Y. 2000) .................................... 10

*Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211 (S.D.N.Y. Dec. 26, 2001) ............................................................................................................................ 2

*Ungar v. Palestinian Authority*, 153 F. Supp.2d 76 (D.R.I. 2001) .................................. 9

**Rules**

Fed.R.Civ.P. Rule 4(f)(2)(C)(ii) ......................................................................................... 7

Fed.R.Civ.P. Rule 44.1 .................................................................................................... 6

Fed.R.Civ.P. Rule 4(f)(3) ............................................................................................. 5, 7

Defendant Asat Trust Reg. ("Asat Trust"), appearing specially, respectfully submits this reply memorandum in support of its consolidated motions to dismiss.

In their consolidated opposition memorandum, Plaintiffs belittle Asat Trust's arguments, asserting that Asat Trust "cavils" about service, "carps" about being brought into court, and makes "tired" objections about personal jurisdiction. *See* Plaintiffs' Consolidated Memorandum, at 2. But with all due respect to Plaintiffs, Asat Trust has the same rights as any other litigant to raise issues that go to the fundamental question of whether it is properly before this Court. For the reasons set forth in Asat Trust's Memorandum in Support of its Motions to Dismiss (the "Initial Memorandum") and further below, Asat Trust has never been properly served and is not subject to personal jurisdiction in these actions in any event. Accordingly, Asat Trust respectfully submits that its motion to dismiss should be granted.

## I. ASAT TRUST HAS NOT BEEN PROPERLY SERVED.

### A. Asat Trust is Entitled to Challenge its Inclusion in the Publication Order.

The Publication Order states that it was entered to authorize service by publication

> on defendants specified in Attachment A *for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means* or *was attempted and rejected or otherwise not responded to at an address that was discovered* . . . .

Publication Order, attached as Exhibit 1 to Initial Memorandum (emphasis added). As discussed in detail in Asat Trust's Initial Memorandum, these requirements were designed to comply with the due process limitations on service by publication. Because of its inherent unreliability, service by publication is not constitutionally permissible unless "it is not reasonably possible or practicable to give more adequate warning." *Mullane v. Central Hanover Bank & Trust Co.*, 339

U.S. 306, 317 (1950). *See also SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987); *Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211, *4 (S.D.N.Y. Dec. 26, 2001).

Plaintiffs contend that Asat Trust's challenge to the sufficiency of service by publication turns on a misreading of the Publication Order. Plaintiffs claim that Asat Trust mistakenly believes that the Order contemplated a "waiting period" during which Plaintiffs were required to test whether service by other means was feasible before proceeding with publication. *See* Plaintiffs' Consolidated Memorandum, at 6. However, any misreading has been done by Plaintiffs. In fact, Asat Trust argued that under the terms of the Order itself, Asat Trust was not properly subject to service by publication – in other words, that Asat Trust should not have been on the list of defendants included in the Publication Order because Plaintiffs had not shown that its address was unknown or that it could not be served by other means. Asat Trust further argued that permitting service by publication on it under these circumstances would be unconstitutional.

In defense of the inclusion of Asat Trust in the Publication Order, Plaintiffs now assert that "many Plaintiffs" attempted service by mail on Asat Trust's address, but that the packages were returned unopened. *See* Plaintiffs' Consolidated Memorandum, at 6. However, the exhibit attached by Plaintiff in support of this claim provides no specificity as to attempts at service on Asat Trust (*see* Exhibit D to Plaintiffs' Consolidated Memorandum), nor have any of the Plaintiffs explained why they did not pursue the letters rogatory procedure for service available under Liechtenstein law. Given the Publication Order's own description of the defendants it was intended to reach, Asat Trust was not properly made subject to service under that Order. Given the constitutional limits on alternative service, Asat Trust could not be made subject to service by publication without violating the requirements of due process.

2

### B. Plaintiffs Did Not Comply with the Publication Order.

Even if service by publication pursuant to the Publication Order were deemed to be an appropriate method of service on Asat Trust, Plaintiffs would actually have to publish in accordance with the terms of the Order for service to be valid. The Publication Order requires publication in three newspapers, "as well as posting the complaint on the website www.sept11terrorlitigation.com." Publication Order, Exhibit 1 to Initial Memorandum.

Asat Trust's Initial Memorandum noted that Plaintiffs have not shown that they timely posted their complaints on the website identified in the Order, and requested the opportunity to take discovery on this issue. However, Plaintiffs' Consolidated Memorandum does not mention this issue at all, let alone offer any proof of timely posting. In the absence of any proof of posting or other response by Plaintiffs on this point, Asat Trust respectfully submits that the Court should find that Plaintiffs failed to comply with the terms of the Publication Order and, therefore, that Asat Trust has not been properly served.

### C. Notice Alone Is Not Enough.

Plaintiffs assert that regardless of any deficiencies in service by publication, due process has been satisfied because Asat Trust is now on actual notice of the complaints against it. While there is no doubt that notice is a fundamental consideration of due process in this regard, it is not enough. *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999) (recognizing the "bedrock" principle that "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process"); *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("before a court may exercise personal jurisdiction over a defendant, there must be *more than* notice to the defendant . . . [t]here also must be a basis for the defendant's

3

amenability to service of summons") (emphasis added); *see also Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d 916, 924-25 (11th Cir. 2003), *cert. denied*, 543 U.S. 814 (2004). Indeed, if actual notice were enough to overcome insufficient service of process, then every 12(b)(5) motion would be self-denying. *See Morrissey v. Curran*, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), *aff'd in part, rev'd in part on other grounds*, 650 F.2d 1267 (2d Cir. 1981) ("knowledge is not a substitute for service; . . . [i]f it were, no motion [to dismiss] . . . could ever be granted, and the rule would be a nullity").

The formal requirements of service of process are even more important where, as here, the defendant is a foreign entity and considerations of foreign sovereignty are implicated. Thus, in *Prewitt Enterprises, Inc. v. OPEC*, the court refused to find that actual notice enough where service on OPEC at its headquarters seat was prohibited by Austrian law. 353 F.3d at 924-25.[2] Here, allowing Plaintiffs' claims to proceed against Asat Trust on the basis of notice alone would ignore the formal requirements of service of process and infringe on the interests of Liechtenstein. As set forth below, not only does Liechtenstein law permit service of international process only by letters rogatory, it does not recognize service by "public announcement" alone of any document that affects the recipient's legal rights. Accordingly, Plaintiffs' claim that these actions should be allowed to proceed against Asat Trust simply because it is on notice of them must be rejected.

---

[2] Although the court in *In re Ski Train Fire*, 2003 WL 21659368, *3-4 (S.D.N.Y. July 15, 2003), declined to dismiss that case due to improper service, it found that in addition to actual notice, among other things, defendants could be presumed to have accepted the documents under Austrian law.

4

### D. Service by Publication on Asat Trust is Prohibited by Liechtenstein Law.

As Asat Trust established in its Initial Memorandum, compliance with foreign law is directly relevant to the validity of an alternative method of service of process under Rule 4(f)(3). The Advisory Committee notes to this rule expressly state as follows:

> Inasmuch as the Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*.

Fed.R.Civ.Pro. Rule 4, Notes to 1993 Amendments, Subdivision (f) (emphasis added).

Plaintiffs rely heavily on *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002), to support their position that a method of service that violates or offends foreign law is nevertheless perfectly permissible under Rule 4(f)(3). But *Rio Properties* does not discuss the Advisory Committee note; nor does *Ehrenfeld v. Mahfouz*, 2005 WL 696769 (S.D.N.Y. March 23, 2005), on which Plaintiffs also rely. Those cases that do deal with the note recognize that an attempt to authorize service under Rule 4(f)(3) by a method prohibited under the law of the foreign country involved may be an impermissible abuse of the district court's discretion. *See Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d at 927-28 and n.21 (finding that, under the facts and circumstances before it, directing service by a method prohibited by the law of Austria would be a clear abuse of discretion); *see also In re Ski Train Fire*, 2003 WL 21659368, *3-4 (S.D.N.Y. July 15, 2003) ("[w]hile Rule 4(f)(3) provides for substitute service 'as may be directed by the court,' any such service must comport with the laws of the foreign country"). Thus, Plaintiffs' claim that the law of Liechtenstein can be ignored must be rejected.

In support of its motion, Asat Trust attached the declarations of two experts on Liechtenstein law previously submitted in support of other pending motions to dismiss in this multi-district litigation. *See* Declaration of Dr. Friedrich Wohlmacher (Exhibit 2 to Initial

Memorandum; Docket No. 930/1041); Declaration of Guntram Wolf (Exhibit 3 to Initial Memorandum; Docket No. 1436). Plaintiffs attack these declarations because they were filed with other motions, but offer no cogent reasons as to why this means they should not be considered here. Indeed, Rule 44.1 of the Federal Rules provides that "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

Although the Wohlmacher and Wolf Declarations were initially prepared to respond to attempts at service by mail, the points for which they are cited here are relevant to the matter at issue in this motion. These declarations establish that the letters rogatory procedure is the *mandatory* method for obtaining proper service in a foreign proceeding on defendants in Liechtenstein, see Wolf Decl., ¶¶ 10, 12-13, and that sanctions may attach to attempts at service in violation of the mandatory procedures established under Liechtenstein law. *See* Wohlmacher Decl., ¶¶ 6-7. Because service of process by letters rogatory is the only permitted method of service of an international summons and complaint in Liechtenstein, then service by publication – or any other method – is impermissible. Under the Advisory Committee note and the analysis in *Prewitt Enterprises* and *In re Ski Train Fire*, such a method could not properly be chosen for defendants in Liechtenstein.

Plaintiffs also attempt to dismiss this court's decision in *Jung v. Neschis*, 2003 WL 1807202 (S.D.N.Y. April 7, 2003), as dealing with service by international registered mail. However, the court in *Jung,* relying on a declaration from Dr. Guntram Wolf, found that "to properly serve an international summons and complaint in Liechtenstein, a party must proceed through Liechtenstein courts" – that is, by letters rogatory.[3] 2003 WL 1807202, at *3. The *Jung*

---

[3]   Plaintiffs do not point to any authority to the contrary from the treatise they cite.

6

court further held that service by a method other than letters rogatory did not comport with Rule 4(f)(2)(C)(ii), which precludes service by methods "prohibited by the law of the foreign country." Here, the considerations applicable to Rule 4 (f)(3) also preclude service by a method which offends or violates the laws of the foreign country involved.[4]

Further, in response to Plaintiffs' arguments, Asat Trust submits the attached supplementary declaration from Dr. Friedrich Wohlmacher (*see* Exhibit 1 hereto). As explained by Dr. Wohlmacher, Liechtenstein law does not permit service by means of "public announcement," or posting, of a document with legal consequences (*see* ¶¶ 2-5), nor does it permit invalid service to be cured by the defendant's knowledge of the complaint (*see* ¶¶ 6-7). These principles of Liechtenstein law confirm Asat Trust's argument that publication is not a valid means of serving Asat Trust, and also demonstrate that Plaintiffs' argument that notice alone is sufficient to accomplish service should be rejected as offensive to the laws of Liechtenstein. Accordingly, Asat Trust respectfully submits that its motion to dismiss for insufficient service should be granted.

## II. THERE IS NO PERSONAL JURISDICTION OVER ASAT TRUST HERE.

Plaintiffs do not challenge the argument that they cannot meet their burden to establish general jurisdiction in New York or the United States over Asat Trust. Instead, they argue that specific jurisdiction exists over Asat Trust both directly – i.e., because Asat Trust purposefully directed activities against the United States – and based on the activities of its alleged co-conspirators in the United States. Both arguments should be rejected.

---

[4] Under *Prewitt*, it is at least an abuse of discretion to permit service by publication on defendants in Liechtenstein without considering whether the laws of Liechtenstein would permit such a method of service.

### A. Plaintiffs' Argument for Direct Jurisdiction over Asat Trust Depends on an Unwarranted Proposal for Weakening Due Process.

Plaintiffs' argument for direct jurisdiction over Asat Trust is based on the claim that because Osama bin Laden and Al Qaida had publicly announced their intention to attack the United States, and because Asat Trust allegedly provided financial support to bin Laden and Al Qaida, it can be inferred that Asat Trust knowingly furthered acts of terrorism aimed at the United States. *See* Plaintiffs' Consolidated Memorandum, at 17. Asat Trust vigorously denies any connection with bin Laden, Al Qaida or any acts of terrorism whatsoever. But even accepting Plaintiffs' allegations for purposes of this motion, they fall far short of the requirement for minimum contacts established in *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985), that the defendant "purposefully directed his activities at residents of the forum."

Indeed, it is evident from Plaintiffs' argument that even they recognize that their allegations – which are wholly conclusory with regard to defendants' alleged intent to direct any activities toward the United States – are insufficient to establish minimum contacts. Instead, Plaintiffs rely heavily on the "reasonableness" prong of the due process test, under which litigation burdens and interests are analyzed to determine whether the exercise of jurisdiction in a particular instance comports with "fair play and substantial justice." Seizing on the statement in *Burger King* that reasonableness considerations may "sometimes serve to establish jurisdiction upon a lesser showing of minimum contacts than would otherwise be required," 471 U.S. at 487, Plaintiffs essentially propose a new jurisdictional standard for terrorism cases. Plaintiffs ask this Court to hold that any connection with an act of terrorism is enough to establish minimum contacts, regardless of the defendant's actual contacts with the United States.

However, the cases that Plaintiffs cite in support of this argument deal with specific statutory frameworks not at issue here. *See Palestine Info. Office v. Shultz*, 853 F.2d 932, 942

(D.C. Cir. 1988) (concerning the State Department's power to close a foreign mission of the PLO under the Foreign Missions Act); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 22 (D.D.C. 1998) (considering claims against state sponsors of terrorism under the Foreign Sovereign Immunities Act ("FSIA")). The analysis under the language of these statutes is not necessarily applicable outside of their contexts. *See, e.g., Biton v. Palestinian Interim Self-Government Authority*, 310 F. Supp.2d 172, 178-79 (D.D.C. 2004) (refusing to extend FSIA personal jurisdiction standard to claims against non-state defendants under the Antiterrorism Act ); *Ungar v. Palestinian Authority*, 153 F. Supp.2d 76, 95 (D.R.I. 2001)(same). Although Plaintiffs also cite this Court's opinion, *In re Terrorist Attacks on September 11, 2001,* 349 F. Supp.2d 765, 807-12 (S.D.N.Y. 2005), the pages referenced by Plaintiffs survey the FSIA cases and then apply the traditional minimum contacts standard to personal jurisdiction, concluding that "plaintiffs must allege some personal or direct involvement by the defendants in the conduct giving rise to their claims." 349 F. Supp.2d at 809.

Plaintiffs have not established any legal basis for their assertion that this Court should find that conclusory allegations that a defendant should have known that its activities were aiding terrorists, in the absence of any other contacts with the forum state or the United States, are enough to satisfy the minimum contacts requirement of *Burger King*, nor have they alleged in a non-conclusory manner that Asat Trust had any personal or direct involvement in the September 11 attacks.[5] Accordingly, Plaintiffs' argument that this Court has personal jurisdiction over Asat Trust based on Asat Trust's activities alone should be rejected.

---

[5] For the reasons set forth in Asat Trust's Initial Memorandum, the government's designation of Asat Trust as a Specially Designated Global Terrorist ("SDGT") does not mandate a finding of personal jurisdiction here, nor does it cure Plaintiffs' failure to sufficiently allege that Asat Trust purposefully directed any activities toward the United States.

9

### B.   Plaintiffs Have Not Sufficiently Alleged Conspiracy-Based Jurisdiction.

In its Initial Memorandum, Asat Trust addressed the argument that the acts of the September 11 terrorists could be attributed to Asat Trust for jurisdictional purposes. Since the filing of Asat Trust's Initial Memorandum, the *Federal Insurance* plaintiffs have filed an Amended RICO Statement Applicable to Asat Trust. To the extent that the RICO Statement amends plaintiffs' pleadings, it relates only to the claims in the *Federal Insurance* case. Asat Trust relies on its arguments in its Initial Memorandum with regard to the other complaints.

With regard to the *Federal Insurance* plaintiffs, their pleadings still fail to present anything more than conclusory allegations on critical elements of conspiracy-based jurisdiction, including the requirement that the defendant must have intentionally participated in furtherance of a plan to attack the United States, *see Simon v. Philip Morris, Inc.*, 86 F. Supp.2d 95, 120 (E.D.N.Y. 2000);[6] and the requirements that the defendant be aware that its activity had effects in New York and that the activity of the alleged co-conspirators in New York benefited the defendant. *See In re Terrorist Attacks,* 349 F. Supp.2d at 805.[7] Thus, Plaintiffs have failed to establish that the terrorists' actions in the United States may be attributed to Asat Trust.

Accordingly, for the reasons set forth above and in its Initial Memorandum, Defendant Asat Trust Reg. respectfully submits that its motions to dismiss should be granted.

---

[6]   Asat Trust further notes that *Simon v. Philip Morris, Inc.*, on which Plaintiffs rely, indicates that while the acts of co-conspirators may be attributed to a defendant for the purpose of establishing jurisdiction under New York's long arm statute, whether such acts may be attributed for purposes of the constitutional minimum contacts analysis is still an open question. 86 F. Supp.2d at 127.

[7]   Plaintiffs' further argument that Asat Trust is subject to jurisdiction due to its involvement with money laundering is raised only in a footnote, *see* Plaintiffs' Consolidated Memorandum at 20 n.10, and is therefore not properly before the court. Moreover, the portions of Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Dubai Islamic Bank referenced in the footnote deal with jurisdiction over financial institutions that maintain bank accounts in the United States – which Asat Trust does not.

        Respectfully submitted,

        Barry Coburn
        E-mail: bcoburn@troutcacheris.com
        Amy Berman Jackson
        E-mail: ajackson@troutcacheris.com
        TROUT CACHERIS PLLC
        1350 Connecticut Avenue N.W.
        Suite 300
        Washington, D.C. 20035
        Tel: (202) 464–3000
        Fax: (202) 464–3319


        _____/s/_____
        David U. Gourevitch (SDNY #DG8795)
        LAW OFFICE OF DAVID GOUREVITCH, P.C.
        Tower 56, Second Floor
        126 East 56th Street
        New York, NY 10022
        Tel:   (212) 355-1300
        Fax:  (212) 355-1531
        Email: david@gourevitchlaw.com


        Attorneys for ASAT TRUST REG.