**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br><br> ECF Case |

This document relates to:

*Federal Insurance Co. v. al Qaida*, 03-cv-6978 (RCC);
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al., 01-cv-1923*

<u>**DEFENDANT TADAMON ISLAMIC BANK'S REPLY MEMORANDUM IN SUPPORT**</u>
<u>**OF ITS MOTION TO DISMISS**</u>

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:        202-862-4343
Facsimile:    202-828-4130

*Attorney for Defendant Tadamon Islamic*
*Bank*

## TABLE OF CONTENTS

Page:

I.      INTRODUCTION ............................................................................................................1

II.     PLAINTIFFS' COMPLAINT AND RICO STATEMENT FAIL TO ALLEGE A DIRECT
RELATIONSHIP BETWEEN THEIR INJURIES AND THE ALLEGED CONDUCT OF
TADAMON. ...................................................................................................................1

III.    FAIRNESS IN THIS CASE REQUIRES EXTRA-CAREFUL SCRUTINY OF THE
SENSATIONAL ALLEGATIONS UNDER REVIEW HEREIN ...............................................6

IV.     JURISDICTION DOES NOT EXTEND OVER TADAMON IN ANY CASE...............8

        A.   Minimum Contacts.....................................................................................9

        B.   Reasonableness.........................................................................................10

V.      PLAINTIFFS CONSPIRACY BASED JURISDICTION THEORY AS WELL AS THEIR
REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD NOT BE CONSIDERED
AND/OR DENIED BY THIS COURT ................................................................................12

VI.     CONCLUSION.............................................................................................................13

# I.     INTRODUCTION

Pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"), Defendant Tadamon Trans-Arabia Co., Ltd. (hereinafter "Tadamon"), by and through its undersigned attorney, hereby replies to the Plaintiffs Federal Insurance, Co. and Estate of John P. O'Neill, Sr., et al (hereinafter "Plaintiffs") opposition to Tadamon's motion to dismiss.

Notwithstanding the liberal requirements of Rule 8(a) which Plaintiffs have largely relied upon in their opposition, Plaintiffs ignore the importance of proximate causation – an element which must be "noticed" even at the pleading stage.  As such, this reply will (1) address the significance of the lack of proximate causation and that despite Plaintiffs' nine pages of alleged facts cited in their opposition, they fail to suggest how Tadamon's alleged banking relationship with al Qaida and/or Bin Laden, *led directly* to the 9/11 tragedy, (2) address Plaintiffs' overreaching application of Rule 8(a) and how they fail to address the crux of the rule – i.e., fairness, and (3) address Plaintiffs' personal jurisdiction analysis and how extending jurisdiction over Tadamon under the Plaintiffs' "general jurisdiction" argument is improper.

For any or all of the foregoing reasons, Tadamon should be dismissed from Plaintiffs' complaint for want of personal jurisdiction and/or Plaintiffs' inability to state a claim.

# II.    PLAINTIFFS' COMPLAINT AND RICO STATEMENT FAIL TO ALLEGE A DIRECT RELATIONSHIP BETWEEN THEIR INJURIES AND THE ALLEGED CONDUCT OF TADAMON.

Since Tadamon filed its motion to dismiss, the United States Supreme Court handed down an opinion, stating <u>inter alia</u>, that a "directness requirement" for proximate causation is part of the necessary standard that a Plaintiff must satisfy to withstand a 12(b)(6) motion.  <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. ___ (2006); 126 S. Ct. 1991, 1999 (2006) (citing <u>Holmes v.</u>

Securities Investor Protection Corporation, 503 U.S. 258, 268 (1992)).[1]  In Anza, the Court held

that the central question a district court must ask in evaluating the sufficiency of proximate

causation [when considering a RICO complaint in a 12(b)(6) motion] is "whether the alleged

violation led directly to the plaintiff's injuries." Id. at 1998.[2]  The Anza ruling is germane to the

instant case as it affirms Tadamon's contention that proximate causation is essential to withstand

a Rule 12(b)(6) motion.  Although the instant case does not concern an anti-trust matter as in

Anza, Tadamon nevertheless submits that Plaintiffs' Amended Complaints, RICO, and More

Definite Statements (hereinafter referred to collectively as "Complaints") should nonetheless be

held to the Anza "directness requirement" or at least some modified version thereof.  An

application of the Anza test will easily support Tadamon's contention that the Plaintiffs have not

established proximate cause.  Alternatively, even if the Anza test is not applied herein, Tadamon

submits the Plaintiffs have not established proximate causation under this Court's analysis set

forth in Terrorist Attacks I, 349 F. Supp. 2d 765, 798-801 (S.D.N.Y. 2005).

     In their opposition, Plaintiffs submit that the requirement of specific allegations of

causation in their complaint is not "the law" and that even if specific allegations were required,

"that they have sufficiently explored the causal link" between Tadamon and plaintiffs injuries.

Pls.' Opp'n at 17-18.   However, it's not enough that the Plaintiffs have "explored" the alleged

causal link between Tadamon and Plaintiffs' injuries.  They must sufficiently *explain* the alleged

---

[1] In citing Holmes v. Securities Investor Protection Corporation, 503 U.S. 258 (1992), Anza holds that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged."  Anza, 126 S. Ct. at 2000.  In applying this principle, e.g., Anza held that even though the Holmes and Anza plaintiffs alleged entirely distinct RICO violations against their respective defendants, "the absence of proximate causation is equally clear in both cases" when the directness requirement of the proximate cause analysis is applied.  Id. at 1997.

[2] The Court further stated that the notion of explaining away the lack of a direct relation to Plaintiffs' injuries as Defendant's "indirect route to accomplish their goal" does not accord with the Holmes proximate cause test which Anza expounds upon.  Id. at 1998.

causal link.  Plaintiffs further argue that they have no obligation to furnish specific facts that

establish Tadamon's knowledge.  Pls.' Opp'n at 15.  Finally, Plaintiffs contend that any

information missing in their Complaints' allegations is "the sort of information that is

appropriately the subject of discovery."  Pls.' Opp'n at 18 (citing Pelman v. McDonald's Corp.,

396 F.3d 508 (2d Cir. 2005).

 First, with respect to the causal "links" Plaintiffs believe they have explored, at no point

do the Plaintiffs allege that Tadamon had some kind of a direct link to the 9/11 tragedy as the

Anza directness factor of proximate causation requires.  The Plaintiffs best attempt to link

Tadamon to the Plaintiffs' injuries is presented in their conclusory allegation, i.e., "The

September 11th Attack was a direct, intended and foreseeable product of Tadamon Islamic

Bank's participation in al Qaida's jihadist campaign." Pls.' Opp'n at 19.  In short, this allegation

is insufficient.  The court has to be provided with facts showing that Tadamon provided banking

services to al Qaida and that because Tadamon provided such services that it did so with an eye

toward contributing to 9/11 and that as a result of providing such services 9/11 was a direct and

foreseeable result.

 Moreover, merely alleging that a relationship between Tadamon and Al Baraka or

"shareholders" such as Sheikh Saleh Kamel existed, has already been ruled as insufficient factual

allegations to withstand a Rule 12(b)(6) motion by this Court.  See Terrorist Attacks I, 349 F.

Supp. 2d 765, 836 (S.D.N.Y. 2005).  As this Court is obviously aware, both Al Baraka and

Sheikh Saleh Kamel have already been dismissed by this Court as defendants in Terrorist

Attacks I.

 Because Anza ruled that Plaintiffs must present sufficient allegations that Defendants

conduct was the proximate cause of Plaintiffs' injuries, (Anza, 126 S. Ct. at 1998), Plaintiffs'

above-referenced arguments including their contention that the requirement of specific allegations of causation in their complaint is not "the law" (Pls.' Opp'n at 17) is flawed.

Second, with respect to Plaintiffs' argument that they need not plead knowledge, this argument is one Plaintiffs bring on themselves by repeatedly stating that Tadamon "knew" that by providing banking services to alleged terrorists that they knew they were supporting terrorism. Even assuming arguendo, that Tadamon knew it was providing banking services to alleged terrorists (a point not conceded), the threshold question still remains as to how this "knowledge" directly and specifically links Tadamon to the Plaintiffs' injuries.[3]

As for Plaintiffs 'hold everything until discovery' argument, this argument, much like their opposition herein, only serves to circumvent the proximate cause requirement in an effort to conduct a costly fishing expedition in the name of discovery. See id. at 1998 (holding that "a RICO plaintiff cannot circumvent the proximate-cause requirement" and discussing the rationale for applying the proximate-cause analysis).[4]

In sum, Plaintiffs fail to present sufficiently detailed allegations that Defendant's conduct (i.e., operating as a retail bank in the Sudan) was the proximate cause of Plaintiffs' injuries. Neither the Anza test nor the standard that this Court adopted in Terrorist Attacks I is satisfied by the bare allegations presented by the Plaintiffs. This Court needs more than attenuated and

---

[3] This Court has held "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)." *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (*quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

[4] This Court should know and can take judicial notice that counsel for Tadamon also represents the International Islamic Relief Organization (IIRO), which has been served with extremely burdensome discovery requests. In responding to said requests, counsel has already received preliminary estimates for simply scanning the documents requested by the Plaintiffs in IIRO's general warehouse in Jeddah that are in the $500,000-$1,000,000 range.

remote allegations concerning banking relationships.  For any or all of these reasons, Plaintiffs' complaints fail to state a claim for which relief can be granted.

## III.   FAIRNESS IN THIS CASE REQUIRES EXTRA-CAREFUL SCRUTINY OF THE SENSATIONAL ALLEGATIONS UNDER REVIEW HEREIN.

"While applying the liberal notice pleading requirements of Rule 8, the Court notes that in light of 'the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he-or it-does indeed have fair notice of [the claims].'"  See Terrorist Attacks I, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005).

While the Plaintiffs repeatedly note that the requirements of notice-pleading are "liberal", their complaint must provide enough information and detail to enable defendants to respond and defend.  Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986).  Fairness is the rationale behind these requirements (i.e. information and detail) such that defendants like Tadamon may have a *fair* understanding of what the plaintiffs are complaining about and whether there is even a legal basis for recovery.  Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (emphasis added).  As to the "short and plain statement" requirement of Rule 8(a), the principal purpose of the statement is to give *fair* notice to enable an adverse party to answer and prepare for trial.  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citing 2A MOORE'S FEDERAL PRACTICE para. 8.13, at 8-61 (2d ed. 1987)) (emphasis added).

To support their contention that conclusory allegations are sufficient under the "liberal" requirements of Rule 8(a), Plaintiffs cite Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005).  This case however, must be considered with another case which was previously cited and relied upon by the Plaintiffs in their Dallah Avco opposition.  See Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005).  Although the Plaintiffs submit that the Second Circuit supports a liberal application of Rule 8(a), as Twombly notes, the Second Circuit specifically

opined that, "*a barebones statement of conspiracy or of injury under antitrust laws without any supporting facts permits dismissal.*" Twombly, 428 F.3d at 109 (emphasis added). Twombly also articulated the common sense approach that this Court should adopt: "[m]inimal requirements are not tantamount to nonexistent requirements," (Id. at 109 (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)), and require that "some threshold of plausibility must be crossed at the outset before a [ ] case should be permitted to go into its inevitably costly and protracted discovery phase." Id. at 111 (quoting J. Posner in Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)). Since the Twombly court clearly stated that this "plausibility" requirement is no different for anti-trust claims than it is for other claims subject to Rule 8(a) notice pleading requirements, (Id. at 107), Tadamon submits that Plaintiffs should also meet this plausibility standard before both parties are forced into what will be an "inevitably costly and protracted discovery phase," based only on Plaintiffs' specious allegations. Id. at 111.[5]

When held to the "plausibility" standard, Plaintiffs' allegations fail due to the paucity of facts supporting their conspiracy claims, and because they fail to provide "a short and plain statement of the claim *showing that the pleader is entitled to relief*." Fed. R. Civ. P. 8(a) (emphasis added). Although the Plaintiffs argue that their factually unsupported allegations of conspiracy are sufficient to cast their net so wide as to include Tadamon as a defendant, this is in direct contravention to the purpose of the Rule – *fair* notice.

In sum, the few facts presented are so tenuously related to the counts charged as to suggest a fishing expedition and this makes it impossible for the defendant to properly respond. Merely alleging that Tadamon is an Islamic bank in the Sudan that provided routine banking

---

[5] See supra n. 4 for approximate preliminary estimate on the cost of discovery.

services to alleged terrorists, and that it was a shareholder and subsidiary of other Islamic banks

the Plaintiffs similarly accuse – can hardly be considered sufficient "information and detail" to

give Tadamon sufficient notice of the basis upon which Plaintiffs have founded their claims.  For

any or all of the foregoing reasons, this court should dismiss Tadamon from Plaintiffs' complaint

pursuant to Rule 12(b)(6) as the Plaintiffs have failed to state a claim upon which recovery can

be granted and their Rule 8(a) argument does not salvage any of their claims.

IV.     **JURISDICTION DOES NOT EXTEND OVER TADAMON IN ANY CASE.**

At this stage, Plaintiffs' entire jurisdiction argument rests on this Court applying a broad

due process inquiry pursuant to Rule 4(k)(2) (which permits the establishment of minimum

contacts with the United States as opposed to the forum state) and the case law cited in their

opposition.

Tadamon presumes that with this Court's previous rulings in mind, Plaintiffs now submit

that this court has jurisdiction over Tadamon under a general jurisdiction standard.  However, as

both this Court and well-established case law has noted, general jurisdiction has a higher

standard and requires a "considerably higher level of contacts" than does specific jurisdiction.

Terrorist Attacks II, 392 F. Supp. 2d 539, 558 (D.N.Y. 2005) (citing Helicopteros Nacionales de

Colombia, S. A. v. Hall, 466 U.S. 408, 414-16 (1984).

Merely stating that "[f]or participating in a conspiracy directed towards the United States

as a whole, Tadamon is properly within the jurisdiction of the Court" (Pls.' Opp'n at 19) cannot

be enough to establish a prima facie showing of personal jurisdiction as it is nothing more than a

"conclusory allegation" which this Court has previously held is not acceptable.  Terrorist Attacks

II, 392 F. Supp. 2d at 556.  Moreover, the Plaintiffs' "purposeful direction theory" provides only

additional conclusory allegations as well as "argumentative inferences" that this Court has also held are not acceptable.  Terrorist Attacks II, 392 F. Supp. 2d at 556.

     A.     Minimum Contacts.

     As for establishing sufficient minimum contacts with the United States such that due process under the Fifth Amendment is not violated, Plaintiffs have created a new theory under international banking law.  Plaintiffs inexplicably suggest that because Tadamon is a shareholder in another bank, ie Al Shamal, that by virtue of that shareholder status, it then has correspondent relationships with banks in the United States, such as Citibank, Arab American Bank and American Express Bank.  Pls.' Opp'n at 3, 4, 21. This flawed international banking theory, along with their vast conspiracy theory, is simply not enough to establish minimum contacts under the general jurisdiction standard.  This could be why Plaintiffs focus their opposition primarily on their "reasonableness" argument.[6]  However, before analyzing whether it is reasonable to haul Tadamon into this Court, it is necessary to analyze whether the maintenance of correspondent relationships and shareholder status with other banks in the industry satisfies the "considerably higher level of contacts" requirement as noted above.  Tadamon submits it does not.  Plaintiffs

_____

     [6] On page four of their opposition, where the Plaintiffs cite to the testimony of Jamal Ahmed Mohamed al-Fadi, Plaintiffs state that based upon al-Fadi's testimony, Tadamon knowingly maintained accounts for al Qaida operatives. Pls.' Opp'n at 3-4.  However, a closer reading of Plaintiffs' alleged facts serve only to corroborate Tadamon's causation arguments and question Plaintiffs' "knowledge" contentions.  For example, al Fadi's testimony states that a Yemeni named Abdouh al Mukhlafi would accompany Bin Laden as a bodyguard and travel partner in Sudan.  The testimony further states that should Bin Laden need any banking services; he would use al Mukhlafi's account.  If Tadamon were knowingly supplying banking services to al Qaida and its operatives, why would Osama Bin Laden, whom Plaintiffs denote on page 3 was a "shareholder" of the bank, require the use of his bodyguard's bank account?  Moreover, even if Bin Laden through Mukhafi, have a held a bank account at Tadamon, how does this establish *minimum contacts* with the United States?  Moreover, how does it support the Plaintiffs' contentions that Tadamon had knowledge?  In sum, these specious allegations amount to no more than conspiracy theories, and are not the type of factual allegations which warrant the denial of a Rule 12(b)(6) motion.

"purposeful direction theory" does not establish the "considerably higher level of contacts" either. Terrorist Attacks II, 392 F. Supp. 2d at 558.

Simply stating that because Tadamon allegedly provided banking services to Osama bin Laden and al Qaida that it "purposefully directed its conduct [toward the United States], cannot be sufficient enough to establish the higher level of contacts standard, as well as presenting "systematic and continuous" contacts with the forum. See Terrorist Attacks II, 392 F. Supp. 2d at 559; see also Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408 (1984).

Thus, because Plaintiffs have repeatedly failed to present sufficient contacts between Tadamon and the United States, the Court should not exercise personal jurisdiction over Tadamon.  However, should the Court find that Plaintiffs have presented sufficient contacts even under the higher general jurisdiction standard; Tadamon submits it is not "reasonable" to haul it into this Court.

     B.     Reasonableness.

First, it is important for this Court to put these wild accusations in a real world perspective, starting with the observation that Tadamon has not been designated as a "terrorist" entity by the Treasury Department.[7]  Thus, Plaintiffs' argument that the "case law makes clear that where terrorists target Americans, they should reasonably foresee being haled into court in the United States" is irrelevant. Pls.' Opp'n at 22.  Moreover, and as this Court knows, the U.S. Treasury Department closely monitors international banks for alleged terrorist activities, for example money laundering.[8]  In light of the sensational allegations presented by the Plaintiffs, Tadamon's international banking activities would at the very least have been the subject of an

---

[7] See Office of Foreign Assets Control Specially Designated Nationals and Blocked Persons (http://www.treasury.gov/offices/enforcement/ofac/sdn/t11sdn.pdf) last updated 6/17/06.

[8] See Gelman, Blustein, Linzer, Bank Records Secretly Tapped, Washington Post, June 23, 2006, for extensive discussion of this topic.

investigation in some manner by either United States or European law enforcement authorities. In addition, Tadamon has not been indicted by the United States in any judicial district and has not been targeted for criminal charges by European-based banking regulatory bodies.  Certainly by now, 5 years after 9/11, the U.S. Government or European-based law enforcement authorities would have gathered enough information to support an indictment if one was warranted simply based on the allegations made herein.[9]  And, to the extent that this Court embraces the Plaintiffs' novel and creative international banking law principle, it must conclude that Tadamon currently has world-wide correspondent banking relationships, including relationships with various United States based banks. Pls.' Opp'n at 21.  Query: In light of the sensational allegations presented by the Plaintiffs, how would it be possible for either American or European based banks to continue to do business with a bank that according to the Plaintiff, notoriously supports the financing of international terrorism?

Second, simply stating that "Tadamon knew that its support would further acts of international terrorism directed at the United States" (Pls.' Opp'n at 23) is a "conclusory allegation" and draws "argumentative inferences" that this Court has held (Terrorist Attacks II, 392 F. Supp. 2d at 556) are not acceptable for establishing a prima facie case for jurisdiction and likewise does not establish "reasonableness" under the due process clause of the Fifth Amendment.

---

[9] Regarding the "threshold of plausibility" principle articulated in Twombley, (see pg 7 herein), it is incredible that no indictment has been handed down against the Bank of New York, nor has the Bank been named as a defendant herein.  The reason being that if the Plaintiffs' allegations are true, the Bank of New York wired $250,000 to an Al-Queda operative to be delivered to Osama Bin Laden for the purchase of an aircraft (P's Op'n at 9) – plainly terrorist activity.  This is simply one more reckless accusation that permeates the Amended Complaint herein, and can be considered by the Court in terms of the Twombley analysis.

Third, with respect to Plaintiffs' statement, "if plaintiffs have stated valid claims under [ATA or RICO] statutes, this Court may assert personal jurisdiction over [Tadamon]…", (Pls.' Opp'n at 20), the operative word in their statement is "If" as it indicates circular reasoning.  As noted in Part II of this reply, Tadamon submits that Plaintiffs cannot assert a "valid claim" because they cannot establish proximate cause.  Accordingly, without a valid RICO claim Plaintiffs cannot argue that this Court has jurisdiction over Tadamon, especially when Tadamon has never availed itself of the jurisdiction of the United States in any manner and since Tadamon has never had direct contacts with the United States either in the past or present.  See Ex. A (filed with initial motion).

For any or all of the foregoing reasons it is clear that the traditional notions of fair play and substantial justice would clearly be violated if jurisdiction were extended over Tadamon as there are neither sufficient contacts with the United States nor is it "reasonable" to haul Tadamon into this Court.

## V.   PLAINTIFFS CONSPIRACY BASED JURISDICTION THEORY AS WELL AS THEIR REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD NOT BE CONSIDERED AND/OR DENIED BY THIS COURT.

Plaintiffs' conspiracy-based jurisdiction theory has no bearing here because at no point do the Plaintiffs submit that Tadamon had a "corrupt agreement" with anyone or that Tadamon engaged in an "overt act" to further its "corrupt agreement" or that Tadamon did anything with "intentional participation" to further an alleged plan or "corrupt agreement".  Merely reciting the bare prima facie conspiracy requirements and then stating "Plaintiffs have met this burden" (Pls.' Opp'n at 24) without supporting factual allegations is nothing more than a classic example of Tadamon's repeated contention that Plaintiffs present this Court with only "conclusory

allegations" and under both a Rule 12(b)(6) and/or Rule 12(b)(2) motion, Tadamon should be dismissed from their complaints.

Moreover, Plaintiffs' request for this Court to "at a minimum" allow for jurisdictional discovery over Tadamon should not be entertained.  First, it is important that in allowing for jurisdictional discovery over other defendants in this case, the Court noted the fact that said Defendants were designated by the Treasury Department as "terrorists" and as such, some "deference" was noted in those cases.  This is not the case here.  As noted above, Tadamon has not been designated as a terrorist entity (nor any of its banking officials) by the United States and permitting jurisdictional discovery will only lead to incredible cost and further litigation as Plaintiffs use their last ditch effort to attack Tadamon.

## VI.    CONCLUSION

Given the foregoing reasons, it is clear that Defendant Tadamon's motion to dismiss can and should be granted.  Attenuated and remote allegations, alleged banking relationships and alleged shareholder status can hardly serve as the underpinnings for denial of a 12(b)(6) motion.

Respectfully Submitted,


_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Tadamon Islamic Bank*

Dated: June 25, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Support of

Motion to Dismiss was served via electronic case filing on this 25th day of June, 2006, upon the

following:

>    Mr. Sean P. Carter, Esq.
>    Cozen O'Connor
>    1900 Market St.
>    Philadelphia, Pa. 19103-3508
>
>    Goldman Lawyers

                          _____/s/_____
                          Lisa D. Angelo, Esq.

14