IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *In Re* Terrorist Attacks on September 11, 2001 | 03 MDL No. 1570 (RCC) <br> ECF Case |

This document relates to:
   BURNETT, *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 03-CV-9849;
   EURO BROKERS, INC., *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 04-CV-7279;
   NEW YORK MARINE AND GEN. INS. CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105;
   WORLD TRADE CTR. PROPS. LLC, *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 04-CV-7280.

## REPLY IN SUPPORT OF
## ABDULLAH BIN KHALID AL-THANI'S MOTION TO DISMISS

**DLA PIPER RUDNICK GRAY CARY US LLP**

David E. Nachman (DN-6684)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500

Sheldon Krantz (Admitted Pro Hac Vice)
Rachel Tausend (Admitted Pro Hac Vice)
1200 Nineteenth Street, NW
Washington, DC 20036
Telephone: (202) 861-3900

Attorneys for Defendant Abdullah Bin Khalid Al-Thani

I.  **PLAINTIFFS' OPPOSITION DOES NOT REST ON THEIR PLEADINGS BUT RATHER ON A NEW AND MISLEADING NARRATIVE THAT THIS COURT SHOULD DISREGARD.**

In their Memorandum of Law in Opposition to Motion to Dismiss of Abdullah Bin Khalid Al-Thani ("Opposition" or "Opp."), plaintiffs essentially recognize that their complaints and – if the Court chooses to consider it despite plaintiffs' violation of the Court's Case Management Orders ("CMOs") – the More Definite Statement improperly filed in the Burnett, Euro Brokers and WTCP actions ("MDS") are insufficient to withstand dismissal.[1] Indeed, plaintiffs' Opposition does not genuinely defend, or even provide a fair summary of, the allegations against Sheikh Abdullah that are actually contained (or not contained) in their complaints or in the MDS.  Instead it creates a new narrative which relies heavily on factual allegations never set forth in any of plaintiffs' prior documents, takes statements from extra-judicial sources out of context or otherwise distorts their meaning, and transforms conclusory and admittedly speculative statements from the MDS into purported statements of fact.

Plaintiffs' approach should be rejected.  First, as plaintiffs themselves recently have argued, "[i]n considering a Rule 12(b)(6) Motion to Dismiss, the Court is limited to the materials

---

[1] Sheikh Abdullah is named as a defendant in three of the complaints filed in the Multi-District Litigation ("MDL"): Euro Brokers, Inc. v. Al Baraka Inv. and Dev. Corp., 04-CV-7279 ("Euro Brokers"), New York Marine and Gen. Ins. Co. v. Al Qaida, 04-CV-6105 ("NY Marine"), and World Trade Ctr. Props. LLC v. Al Baraka Inv. and Dev. Corp., 04-CV-7280 ("WTCP").  Plaintiffs in Burnett v. Al Baraka Inv. and Dev. Corp. ( 03-CV-7280) filed a notice purporting to add Sheikh Abdullah as a defendant in the D.C. action on December 30, 2003. (02-CV-1616, Docket #438.)  The Burnett plaintiffs, however, did not include Sheikh Abdullah's name in the title of that document, failed to add Sheikh Abdullah to the case caption or docket pursuant to CMO #1 in that action, and "failed to file an amended complaint that includes all amendments made prior to that date" as required by CMO #2 in this MDL.  As provided by the Stipulation and Order Vacating the Default Entered Against Abdullah Bin Khalid Al-Thani entered herein on July 7, 2006, the Motion to Dismiss filed by Sheikh Abdullah in the Euro Brokers, NY Marine and WTCP actions is deemed applicable to, and served and filed in, Burnett; as an additional grounds for dismissal of the Burnett plaintiffs' claims against him, Sheikh Abdullah asserts that plaintiffs violated the plain language requirements of two CMOs and failed to effectively add him as a defendant.

that are within the four corners of the complaint."[2] The NY Marine Second Amended Complaint contains a single, conclusory, boilerplate allegation regarding Sheikh Abdullah that this Court already has found inadequate and thus subject to dismissal with respect to other defendants.[3] The same result should follow here. The Burnett, Euro Brokers, and WTCP complaints contain no allegations directed towards Sheikh Abdullah and, accordingly, also must be dismissed. The Court should disregard the allegations made in the MDS filed by the Burnett, Euro Brokers, and WTCP plaintiffs because, notwithstanding the plain language requirements of paragraph 13 of this Court's CMO #2, plaintiffs never properly filed an amended complaint that included the allegations made in the MDS. Even if the Court were to take the MDS into account, however, the claims against Sheikh Abdullah still should be dismissed because the MDS contains only the most conclusory and admittedly speculative allegations. The Opposition misrepresents and expands upon these allegations, and now purports to rely on two published materials, when the Federal Rules of Civil Procedure require plaintiffs to state their case *in their pleadings*.

Here, in particular, it is especially appropriate to hold plaintiffs to their actually pled allegations, and not to venture into the unbounded domain of news reports on which the Opposition is based. The MDL plaintiffs control massive investigative resources and vast amounts of material relating to the September 11 attacks, they have invested thousands of hours and millions of dollars in reviewing those documents, and they have particularized their allegations with respect to many defendants in their pleadings even without the benefit of discovery. Tellingly, they have never done so with respect to Sheikh Abdullah. Instead, their

---

[2] Plaintiffs' Motion to Strike the DMI Defendants' Request for Judicial Notice of the "Swiss Record," 03 MDL 1570, Docket # 1838, at 2; see also Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998) (finding that plaintiff could not amend her complaint through statements made for the first time in her opposition to defendants' motion to dismiss).

[3] See In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 572 (S.D.N.Y. 2005) ("Terrorist Attacks II").

whole case against him relies on just two sources: a single speculative news article that was written two years after the September 11 attacks and discusses events that allegedly occurred, if at all, in Qatar five years prior to the attacks; and certain portions of the 9/11 Commission Report, the Final Report of the National Commission on Terrorist Attacks Upon the United States ("9/11 Commission Report").[4] Yet remarkably, while plaintiffs seek to rely on these unsubstantiated, double-hearsay public documents, they neglect to inform the Court of the most salient piece of information relating to Sheikh Abdullah that is contained in the public documents on which they now rely: as reported by the 9/11 Commission Report, Khalid Sheikh Mohammed ("KSM") – the leading terrorist figure plaintiffs accuse Sheikh Abdullah of assisting five years before the September 11 attack – was interrogated by the United States, and KSM has stated unequivocally that Sheikh Abdullah *"was not a member, financier or supporter of al Qaeda."*[5]

The unreliability of any exercise that goes beyond plaintiffs' court filings is further demonstrated by comparing how their public sources, which, as plaintiffs acknowledged in the MDS, permitted only "maybe" inferences, have now been transformed into hard (but unsupported) "facts," and have been otherwise mischaracterized. In the MDS, for example, plaintiffs alleged only that Sheikh Abdullah hosted KSM at his farm outside Doha in the mid-1990s and that "FBI officials have *speculated* that KSM *may have been* tipped off by al-Thani before agents were granted permission to enter Qatar and arrest him in 1996" (MDS at ¶¶ 3-4; emphasis added). In the Opposition, however, this double speculation is transformed, without

---

[4] J. Meyer and J. Goetz, *Qatar's Security Chief Suspected of Having Ties to Al Qaeda*, LOS ANGELES TIMES (Mar. 28, 2003); 9/11 Commission Report (July 22, 2004), available at <http://www.9-11commission.gov/report/index.htm>. While the MDS did not explicitly attribute its allegations to these two sources, it is now apparent that they are the sole foundation of plaintiffs' claims.

[5] 9/11 Commission Report at 488 n.5 (citing Intelligence report, interrogation of KSM, July 23, 2003; emphasis added).

3

any basis, into the following statement of alleged fact: "Not only did Al-Thani provide a safe-haven for *the future mastermind of the September 11 attacks while he plotted the [September 11] attacks*, but Al-Thani *is also reported to have* tipped off KSM in time to allow him to escape." (Opp. at 2, emphasis added.) Similarly, the 9/11 Commission Report states only that "*an official* in the government of Qatar *probably* warned" KSM about the U.S. indictment;[6] indeed, the New York Times article on which the 9/11 Commission Report relies for this "finding" stated that "exactly what happened inside the Qatari government is unclear."[7] The Opposition, however, cites this non-specific, speculative statement from the 9/11 Commission Report as the source of plaintiffs' new, definitive allegation that KSM's "miraculous escape" from Qatar was "engineered by Al-Thani." (Opp. at 3.)[8]

The insufficiency of plaintiffs' properly pled allegations is clear, and cannot be cured belatedly by new allegations in plaintiffs' brief.

## II.   EVEN IF THE NEW ALLEGATIONS IN PLAINTIFFS' OPPOSITION ARE TREATED AS PROPERLY PLED, PLAINTIFFS HAVE NOT ALLEGED THE PRIMARY OR DIRECT PARTICIPATION NECESSARY TO EXERCISE PERSONAL JURISDICTION OVER SHEIKH ABDULLAH.

Plaintiffs have offered no substantive response to the jurisdictional arguments in Sheikh Abdullah's Motion to Dismiss. Plaintiffs' own Opposition makes clear that none of the allegations in the complaints or even in the MDS satisfies the test this Court has set forth. Plaintiffs have not alleged any specific facts from which the Court could infer that Sheikh Abdullah "directed, controlled or requested al Qaeda to undertake its terrorist activities," for

---

[6] 9/11 Commission Report at 73 (emphasis added).

[7] James Risen and David Johnson, *Qaeda Aide Slipped Away Long Before Sept. 11 Attacks*, NEW YORK TIMES (Mar. 8, 2003).

[8] Additional examples of the unwarranted embellishments added to the 9/11 Commission Report's "findings" by plaintiffs in their Opposition— *and nowhere found in the complaints or MDS* – include that KSM was appointed to a position within the Qatari government "*apparently at the behest of Sheikh Al-Thani*" and that he consulted with Ramzi Yousef "*while living in the safety of Defendant Al-Thani's estate.*" (Opp. at 3; emphasis added.)

4

purposes of exercising personal jurisdiction over him as a conspirator under New York's long-arm statute.[9] They also have not alleged specific facts from which the Court reasonably could infer that Sheikh Abdullah had "personal or direct participation in the conduct giving rise to Plaintiffs' injuries" such that the exercise of personal jurisdiction would comport with due process.[10]

To the extent plaintiffs now argue that the new narrative spun in their Opposition is sufficient, this argument is improper. First, for the reasons discussed in Section I above, the narrative contained in the Opposition is not properly before the Court and should be disregarded. Second, even if the Court was to consider the new narrative, in resolving a motion to dismiss for lack of personal jurisdiction, the Court will not "accept legally conclusory assertions" made by plaintiffs or "draw 'argumentative inferences.'"[11] Without these, the narrative cannot meet the Court's standard for personal jurisdiction.

### III. SHEIKH ABDULLAH IS ENTITLED TO SOVEREIGN IMMUNITY.

Consistent with the strategy used throughout the Opposition, plaintiffs now assert – for the first time – that Sheikh Abdullah "provided support to al Qaeda *personally, in contravention of the policies of his government.*" (Opp. at 6, emphasis added.) This argument, however, was not alleged in the complaints or the MDS, and in fact is inconsistent with what is actually set forth in those documents. In Euro Brokers, for example, plaintiffs divided defendants into four

---

[9] Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks), 349 F. Supp. 2d 765, 806 (S.D.N.Y. 2005) ("Terrorist Attacks I").

[10] Id. at 809. Plaintiffs assert that pursuant to In re Magnetic Audiotape Antitrust Litigation, their allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at the motion to dismiss stage. (Opp. at 15, n.17.) Plaintiffs' reliance on Magnetic Audiotape is inapt. In that case, the Second Circuit held that the district court should have considered notes that had been alleged in the complaint in determining whether the defendant had participated in price fixing directed at the United States and that the plaintiffs, accordingly, were entitled to limited jurisdictional discovery on this issue. Here, plaintiffs have not made any specific factual allegations in their pleadings, including the improperly-filed MDS, and there are no alleged documents, comparable to the notes in Magnetic Audiotape, that could possibly cure their pleading deficiencies.

[11] Terrorist Attacks I, 349 F. Supp. 2d at 813.

5

groups: the Al Qaeda Defendants, the Charity and Relief Organization Defendants, the Banking and Financial Defendants, and the Foreign Governmental Defendants.[12] This latter category is the only one into which Sheikh Abdullah could fall, and the general, conclusory allegation made about such defendants is that "Al Qaeda and OBL also benefited from the material support and substantial assistance lent by certain foreign governments and their officials." (Euro Brokers Complaint at ¶ 126.)

Indeed, in their MDS, plaintiffs allege that Sheikh Abdullah hosted KSM in the 1990s, "*when Sheikh al-Thani was the Qatari Minister of Religious Affairs*," indicating that this act was undertaken in his official capacity. (MDS at ¶ 3; emphasis added.) The MDS contains no allegation that Sheikh Abdullah provided support to al Qaeda in his personal capacity or in a manner inconsistent with the official policies of Qatar's government. Indeed, whatever the particular alleged motivation, providing passports and regulating the movement of people within a country are quintessential government functions. Under the burden-shifting scheme of the FSIA, once a defendant has presented a prima facie case that he is a foreign sovereign, plaintiffs must *produce evidence* that the acts at issue were not taken in the defendant's official capacity.[13] A mere conclusory allegation to that effect does not suffice.[14] It certainly should not suffice where, instead of any evidence, plaintiffs can produce only their spin on one hearsay news article and selective, inaccurate paraphrasing from the 9/11 Commission Report. Because, as a senior Qatari official, Sheikh Abdullah is immune under the FSIA, the claims against him must be dismissed.

---

[12] Euro Brokers Complaint (04-CV-7279, Docket #1) at ¶ 3.

[13] The burden also shifts to plaintiffs to "present evidence that, under the exceptions to the FSIA, immunity should not be granted." Terrorist Attacks II, 392 F. Supp. 2d at 547.

[14] See Kline v. Kaneko, 685 F. Supp. 386, 390 (S.D.N.Y. 1988) (finding that plaintiffs had not produced evidence sufficient to rebut defendant's' prima facie showing that defendant was acting in his official capacity).

IV.   **SERVICE ON SHEIKH ABDULLAH WAS IMPROPER.**

Plaintiffs' Opposition concedes that Sheikh Abdullah was not personally served and that, as the Qatari Minister of the Interior, his address and location were reasonably ascertainable. Instead, plaintiffs argue that service by publication was permissible because Sheikh Abdullah was included in the Court's Order as a defendant "for whom an address or location to serve the Summons or Complaint is unknown and cannot be ascertained through reasonable means or it was attempted or otherwise not responded to at an address that was discovered." (Opp. at 10.) This argument is thoroughly disingenuous: it was *plaintiffs* who prepared the Order for this Court to sign, and it was *plaintiffs* who represented to the Court – falsely – that the Interior Minister of Qatar was among the defendants for whom an address could not reasonably be ascertained.[15] To accept this argument now would only reward plaintiffs for their prior lack of candor.

Plaintiffs next argue that service must have been adequate because Sheikh Abdullah has retained counsel, appeared and filed a motion to dismiss. This Court, say plaintiffs, should not be concerned about due process because Sheikh Abdullah has had "actual notice." This too is a cynical argument, and cannot be right; if plaintiffs were correct, no defendant could ever move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) as his appearance to make that argument would defeat it.

V.   **PLAINTIFFS HAVE FAILED TO STATE A RICO, ATA OR OTHER CLAIM.**

On a Rule 12(b)(6) motion, the Court must accept as true the *facts* alleged in the Complaint and draw all *reasonable* inferences in favor of them. (See Opp. at 17.)   What

---

[15] In evaluating the parties' argument regarding service by publication, the Court also should note that all individuals and entities covered by the FSIA must be served in accordance with the exclusive procedures for service outlined in 28 U.S.C. § 1608. See Lewis & Kennedy, Inc. v. Perm. Mission of the Rep. of Botswana to the United Nations, 05 Civ. 2591 (HB), 2005 U.S. Dist. LEXIS 13756, at *8 (S.D.N.Y. July 12, 2005). These procedures do not include service by publication.

plaintiffs ignore, however, is this Court's holding that "[l]egal conclusions done up as factual allegations are not facts and cannot substitute for facts."[16]  A pleading cannot survive when it contains "only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."[17]  For the reasons set forth in Section I above, this Court should find as a matter of law that plaintiffs have failed to state any claims either in their complaints or in the MDS.

Plaintiffs further argue that their complaints "and RICO Statements" assert RICO claims against Sheikh Abdullah under 18 U.S.C. §§ 1962(c) and (d).  (Opp. at 18.)  This is hard to understand, however, because plaintiffs also argue – by incorporation of arguments made in their opposition to two other defendants' motion to dismiss – that their claims should not be dismissed for *failure* to have filed RICO Statements applicable to Sheikh Abdullah.  (Opp. at 18, n.19.) Plaintiffs seem not to know whether they have filed a RICO Statement as to Sheikh Abdullah or not.  For his part, Sheikh Abdullah can find no evidence in the dockets that any of the plaintiffs have filed a RICO Statement relating to him.

The complaints and MDS, it is now clear, do not include the elements necessary to state a RICO claim.  First, the Opposition does not rebut (or even acknowledge) Sheikh Abdullah's argument that plaintiffs fail to allege injury from Sheikh Abdullah's investment of racketeering income and thus fail to state a claim pursuant to 18 U.S.C. §1962(a).[18]  Second, as plaintiffs themselves cite in their Opposition, "parties who do not control the organization cannot be liable

---

[16] Terrorist Attacks I, 349 F. Supp. 2d at 813.

[17] Terrorist Attacks II, 392 F. Supp. 2d at 564.  Plaintiffs also rely on the Second Circuit's articulation of the "notice pleading" standard set forth in Fed. R. Civ. P. 8 in Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005).  But Twombly concerns only the adequacy of a Section 1 Sherman Act claim, and even, as to that issue, the Supreme Court recently granted certiorari with respect to the pleading standard applied in that case, suggesting it may not be upheld.  --- S.Ct. ---, 2006 WL 1725627 (June 26, 2006).

[18] See Terrorist Attacks I, 349 F. Supp. 2d at 827.

under § 1962(c)." (Opp. at 19-20; quoting Morin v. Trupin, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).) Even if plaintiffs had alleged in their pleadings that Sheikh Abdullah provided material support to al Qaeda operatives "with the knowledge that their intention was to attack the United States" five years later (Opp. at 20) – and as set forth above, they have not – this assertion is insufficient to allege that he had "some part in directing the enterprise's affairs" and thus participated in the operation or management of the enterprise itself.[19]

Moreover, the Supreme Court recently held that to state a claim under § 1962(c) for an injury to business or property, a plaintiff must establish proximate causation through specific allegations revealing a "relation between the injury asserted and the injurious conduct alleged."[20] In Anza, the Court found that the plaintiff's conclusory allegation that it had been injured by the defendants' fraud against New York was insufficient to establish proximate causation.[21] In particular, it noted: "the attenuation between the plaintiff's harms and the claimed RICO violation"; "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action"; the fact that the alleged harm "could have resulted from factors other than [the defendants'] alleged acts"; and the "speculative nature of the proceedings that would follow if [the plaintiff] were permitted to maintain its claim."[22] Even if the Court were to consider them, the events liberally recounted in plaintiffs' Opposition are simply too remote in time and connection to satisfy RICO causation under Anza.

---

[19] Terrorist Attacks I, 349 F. Supp. 2d at 872-28 (emphasis added) (noting that the allegation that a defendant "may have assisted al Qaeda" is not sufficient to state a claim).

[20] Anza v. Ideal Steel Supply Corp., 126 S.Ct. 1991, 1993 (2006).

[21] Id. at 1998.

[22] Id. at 1997-98.

Third, to state a claim under § 1962(d), plaintiffs "must plead facts sufficient to show that each defendant knowingly agreed to participate in the [RICO] conspiracy" or was a "central figure[] in the underlying schemes."[23] Plaintiffs' bare, conclusory and speculative assertions against Sheikh Abdullah do not satisfy this standard.[24]

## VI.  CONCLUSION

The complaints against Sheikh Abdullah should be dismissed with prejudice.

Respectfully submitted,

**DLA PIPER RUDNICK GRAY CARY US LLP**

_____
David E. Nachman (DN-6684)
1251 Avenue of the Americas
29th Floor
New York, NY  10020-1104
Telephone:  (212) 335-4500

Sheldon Krantz (Admitted pro hac vice)
Rachel Tausend (Admitted pro hac vice)
1200 Nineteenth Street, NW
Washington, DC  20036
Telephone: (202) 861-3900

July 12, 2006                              Attorneys for Defendant Abdullah Bin Khalid Al-Thani

---

[23] Terrorist Attacks I, 349 F. Supp. 2d at 827; see also Salinas v. United States, 522 U.S. 52, 66 (1997) (finding that in a civil context, a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme").

[24] Plaintiffs also fail to state a claim under the ATA as the conclusory allegations and speculation in the MDS are not sufficient to show that Sheikh Abdullah knowingly and intentionally provided material support to al Qaeda. See Terrorist Attacks I, 349 F. Supp. 2d at 627. Plaintiffs' reliance in this context on Boim v. Quranic Literacy Institute, 291 F.3d 1000 (7th Cir. 2002), is wholly misplaced. In Boim, the Seventh Circuit found that the plaintiffs had adequately alleged that the defendants knew about Hamas' illegal operations and provided aid to Hamas with the intent to facilitate those illegal activities by pleading, among other facts, that the defendants functioned as fronts for Hamas in the United States and raised and channeled funds to Hamas to finance terrorist activities in Israel, that the defendants' core mission was to raise and funnel money and other resources to Hamas in support of its terrorist campaigns, that they commingled money destined for terrorist causes with funds from legitimate charitable and business dealings to avoid laws against providing financial support to terrorists, and that money gathered in this way was sent by the defendants to Hamas to buy vehicles and weapons, train killers and carry out terrorist attacks, including the attack that killed the plaintiffs' son. Id. at 1024. The allegations against Sheikh Abdullah in this case are not remotely comparable.

## CERTIFICATE OF SERVICE

    I hereby certify that on this 12th day of July, 2006, I caused an electronic copy of the foregoing Reply in Support of Abdullah Bin Khalid Al-Thani's Motion to Dismiss to be served by the Court's electronic filing system.

 

_____
David E. Nachman