UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IN RE:  TERRORIST ATTACKS ON                    Civil Action No.
SEPTEMBER 11, 2001                              03 MDL 1570 (GBD)

_____

*This document relates to:  All Actions*

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN RELATION TO ALL
<u>PENDING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

The Plaintiffs' Executive
Committees
July 14, 2009

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN RELATION TO ALL PENDING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Plaintiffs' Executive Committees submit this Notice to formally bring to the Court's attention the recent *amicus* brief of the United States to the Supreme Court in *Federal Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, a copy of which is included as Exhibit A hereto. The United States' *amicus* directly addresses, and provides considerable guidance concerning, the proper interpretation of the Due Process portion of the Second Circuit's decision in *In re: Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008). For the reasons stated in further detail below, plaintiffs respectfully submit that this Court should embrace the United States' insightful interpretation of the Second Circuit's decision in deciding those remaining motions to dismiss that raise the defense of lack of specific personal jurisdiction,[1] and any disputes relating to the scope of specific jurisdictional discovery.

In its *amicus* brief to the Supreme Court, the United States expressly rejected the notion that the Due Process portion of the Second Circuit's decision should be read to require a showing "that a defendant must specifically intend to cause injury to residents in the forum before a court there may exercise jurisdiction over him," as the remaining defendants have suggested in supplemental briefing to this Court. United States *Amicus* at p. 19. To the contrary, the United States made clear that pursuant to Supreme Court precedent "[i]t does not matter … that the individual defendant is not 'able to control' the means by which the tortious injury is caused in the foreign jurisdiction, as long as he acted with the 'kn[owledge] that the brunt of th[e] injury' from his tortious act 'would be felt' in the foreign forum." *Id*. at p. 18 (*quoting Calder v. Jones*, 465 U.S. 783, 789 (1984)).

---

[1] The parties identified all of the pending motions to dismiss which raise a personal jurisdiction defense in the charts submitted to the Court in August of 2007. This Notice applies to all of those Motions.

In light of those well established standards, the United States advocated that the Second Circuit's decision should be read narrowly, as merely reflecting perceived deficiencies in "the allegations to establish that the defendants' intentional acts of funding the charities where done with knowledge that they would support al Qaeda's jihad against the United States." *Id*. at 20. The United States further explained that this Court may properly exercise jurisdiction for the claims at issue in this litigation over defendants who sponsored al Qaeda indirectly, so long as plaintiffs have alleged facts "that could support the conclusion that the defendant acted with the requisite intention and knowledge." *Id.* at 19-20. Thus, under the United States' interpretation of the Second Circuit's decision, personal jurisdiction is satisfied where plaintiffs have presented allegations sufficient to make plausible the claim that a defendant's contributions of support, whether direct or indirect, were made with knowledge that those contributions would be used to support terrorism, or with reckless disregard for that potentiality. *Id*. at pp. 18-20.

As the United States properly recognized in its brief, this interpretation is the only reading of the Second Circuit's decision which reconciles that holding with Supreme Court precedent. For this reason, and because the Executive Branch's views in the area of national security are entitled to considerable deference, plaintiffs respectfully submit that this Court should adopt and follow the United States' interpretation of the Second Circuit's decision in deciding the remaining motions to dismiss for lack of personal jurisdiction, and in resolving disputes concerning the scope of personal jurisdiction discovery, such as the dispute between plaintiffs and defendant National Commercial Bank (NCB) now pending before Judge Maas.[2]

---

[2] Of course, in resolving the pending personal jurisdiction disputes, the Court must first determine whether the defendant at issue is entitled to invoke Due Process protections in the first place. As plaintiffs noted in their February 4, 2009 Notice of Supplemental Authority, several recent decision have rejected or called into question the notion that non-resident aliens who have established no ongoing contacts with the United States are entitled to claim Constitutional

It should be noted that the interpretation of the Second Circuit's decision advocated by the United States largely echoes the arguments offered by the United States in a separate *amicus* brief filed with the Seventh Circuit Court of Appeals, in conjunction with the *en banc* proceedings in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. December 3, 2008) (*en banc*) (*Boim V).* For the Court's convenience, a copy of that amicus brief (the *Boim Amicus*) is enclosed as Exhibit B hereto.[3]  In that brief, the United States advocated expansive standards of liability under the Anti-Terrorism Act, noting that 18 U.S.C. §2333(a) "was supported by the Executive Branch as an effective weapon in the battle against international terrorism; when correctly applied, it discourages those who would provide financing that is later used for terrorist attacks." *Boim Amicus* at p. 1.   In particularly strong language, the United States rejected the notion that application of the civil liability provisions of the Anti-Terrorism Act pursuant to the expansive standards advocated by the government would raise any Constitutional concerns, specifically noting that "[a]pplication of Section 2333(a) consistently with the principles set forth in this brief would be fully consonant with First and Fifth Amendment standards." *Id*. at pp. 28-29.

The harmony between the views expressed by the United States concerning the proper interpretation of the Second Circuit's earlier decision in this case and its arguments in *Boim* regarding the scope and reach of the Anti-Terrorism Act is by no means coincidental.  To the

---

protections.  *See Veiga v. World Meteorological Org.*, 568 F. Supp. 2d 367 (S.D. N.Y. July 15, 2008); *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005); *Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004); *United States of America  v. Baboolal*, 2006 U.S. Dist. LEXIS 40645 (E.D. Wis. 2006).  Consistent with these authorities, plaintiffs maintain that the Due Process arguments of non-resident defendants who do not have significant ongoing contacts with the United States should be rejected out of hand.

[3] As the Court is aware, plaintiffs filed a Notice of Supplemental Authority concerning *Boim V* on February 4, 2009.

contrary, this symmetry reflects the fundamental recognition that the Anti-Terrorism Act itself embodies critical factual findings of Congress, arrived at only after thorough investigation and debate, concerning the primary and integral role extra-territorial sponsors of terrorism play in making terrorist attacks possible, and the degree to which such sponsorship activities uniquely target the United States and its citizens. *See Boim Amicus* at pp. 8-10, 23-26.  In presenting its position on these issues, the United States properly recognized that Congress' findings concerning the relationship between extra-territorial sponsorship of terrorism and resulting harm in the United States are entitled to great deference, a proposition which must also guide this Court's resolution of the remaining motions to dismiss.  *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 330 n. 12 (1985) ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference, inasmuch as Congress is an institution better equipped to amass and evaluate the vast amounts of data bearing on such an issue."); *Rostker* v. *Goldberg*, 453 U.S. 57, 72-73 (1981); *Vance* v. *Bradley*, 440 U.S. 93, 111-112 (1979); *Katzenbach* v. *McClung*, 379 U.S. 294 (1964).

In all of the foregoing respects, the stated views of the United States confirm that the framework for analyzing personal jurisdiction in this litigation is essentially synonymous with the standards to be applied in determining whether plaintiffs have stated a claim under the Anti-Terrorism Act, a proposition that plaintiffs have advocated from the outset of this litigation and advanced in the briefs filed in opposition to every motion to dismiss for lack of personal jurisdiction.  The United States' *amicus* briefs thus give credence to plaintiffs' initial briefs, and their prior assertion that the Seventh Circuit's *en banc* decision in *Boim* "provides considerable guidance concerning the personal jurisdiction questions pending before this Court, and compellingly counsels in favor of a restrained reading of the Second Circuit's Due Process

holding in this litigation." Plaintiffs' February 4, 2009 Notice of Supplemental Authority at p. 10.

As the Court is aware, the parties in this litigation submitted preliminary briefs and related filings in October and November of 2008, concerning the potential significance and impact of the Second Circuit's decision in *Terrorist Attacks III* on the remaining motions to dismiss in this litigation. Those filings preceded both the Seventh Circuit's decision in *Boim V*, and the United States' *amicus* before the Supreme Court in this litigation, and therefore did not reflect or benefit from the arguments raised in those supplemental authorities. Although plaintiffs suggested in their preliminary filings that the Second Circuit's decision could be interpreted as drawing a distinction for Due Process standards between direct and indirect support for terrorism, the United State's *amicus* and *Boim V* decision compellingly argue against such a reading of the Second Circuit's decision, as such an interpretation would bring the Second Circuit's ruling in conflict with Supreme Court precedent and run afoul of the considered findings of the United States Congress.[4]

In light of these subsequent authorities[5], plaintiffs acknowledge that the interpretation of the Second Circuit's Due Process ruling offered in their October and November filings was incorrect, and should not be followed by this Court. Instead, plaintiffs respectfully submit that the proper test to apply in resolving the remaining motions to dismiss implicating theories of

---

[4] Moreover, as a practical matter, a jurisdictional test which embraced a distinction between "direct" and "indirect" support would prove unworkable, given the degree to which al Qaeda and other terrorist organizations exercise control over many of the so-called charities which facilitate the financing and sponsorship of terrorism.

[5] Plaintiffs note that the defendants submitted an *amicus* brief of the United States to the Second Circuit as supplemental authority pursuant to FRAP 28(j) during the earlier appeals in this case. In doing so, the defendants plainly adopted the position that *amicus* briefs of the Untied States on issues of importance to this litigation constitute "authorities" that should be considered by the Court in resolving the issues in dispute.

specific jurisdiction is simply whether plaintiffs have presented allegations sufficient to make plausible the claim that a defendant's contributions of support, whether direct or indirect, were made with knowledge that those contributions would be used to support terrorism, or with reckless disregard for that potentiality.  Once again, this is the precise test plaintiffs advocated in their original oppositions to the defendants' motions to dismiss for lack of personal jurisdiction.  For the reasons stated in further detail in those briefs, plaintiffs submit that they have satisfied that burden with respect to all of the remaining defendants.

Dated:  July 14, 2009                                  Respectfully submitted,

　　/s/ Jodi W. Flowers
Ronald L. Motley, Esquire
Jodi W. Flowers, Esquire
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
(843) 216-9000
jflowers@motleyrice.com

*Co-Chair, Plaintiffs' Executive Committee for Personal Injury and Wrongful Death Claims*

Sean P. Carter, Esquire
Elliott R. Feldman, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000
SCarter1@cozen.com

*Co-Chairs, Plaintiffs' Executive Committee for Commercial Claims*

James P. Kreindler, Esquire
Kreindler & Kreindler, LLP

100 Park Avenue
New York, NY
(212) 687-8181
jkreindler@kreindler.com

*Co-Chair, Plaintiffs' Executive Committee for Personal Injury and Wrongful Death Claims*


Andrea Bierstein, Esquire
Hanley, Conroy, Bierstein, Sheridan, Fisher & Hayes, LLP
112 Madison Avenue
New York, NY  10016
(212) 784-6400
abierstein@hanlyconroy.com

Attorney for *Burnett*, *EuroBrokers* and *WTC Properties* Plaintiffs


Jerry S. Goldman, Esquire
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
42nd Floor
New York, NY  10020
(212) 278-1498
jgoldman@andersonkill.com

Attorney for *O'Neill* Plaintiffs

8