# **EXHIBIT B**

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**BY HAND**

July 8, 2009

Hon. George B. Daniels
United States District Judge
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street - Room 630
New York, New York 10007

       Re:    *In re Terrorist Attacks on Sept. 11, 2001*, MDL 1570

Dear Judge Daniels:

       The Plaintiffs' Executive Committees submit this letter to outline the issues they believe warrant the Court's attention at the upcoming Status Conference on July 15, 2009. We look forward to discussing these matters, and any other issues of interest to the Court, on July 15.

**1.    There is an Acute Need for the Case Management Conference Scheduled for July 15, 2009**

       This complex Multi-District Litigation proceeding asserts claims on behalf of the families of the nearly 3,000 innocent people who were tragically murdered on September 11, 2001, several thousand people who survived but suffered severe injuries as a result of the terrorist attack on that date, and commercial entities which suffered billions of dollars in damages as a result of that terrorist attack. As this Court knows well, the earliest of these cases was filed in 2002, and it is now more than five years since the Judicial Panel for Multi-District Litigation consolidated these cases to facilitate the expeditious and efficient resolution of the claims at issue. Unfortunately, the claims against the majority of the defendants who have appeared in the litigation remain in the preliminary motion stage. Since 2007, there have been only two case management conferences held in this MDL proceeding.

Although plaintiffs are writing this introduction in advance of receiving the defendants' proposed submission, we have a regrettable suspicion that the defendants may advocate the absurd view that the conduct of a simple case management conference is unnecessary, and would impose an undue burden upon them, based on a facile and disingenuous assertion that the denial of plaintiffs' Petition for *Certiorari* pertaining to seven individual defendants is in some way dispositive of the complex and fact sensitive disputes pending before this Court.

Contrary to the view we anticipate the defendants will advocate, the Supreme Court's denial of plaintiffs' Petition for *Certiorari* does not provide this Court with any mechanical formulae to apply in the resolution of the remaining motions pending before this Court. Quite to the contrary, and as discussed in further detail below, the briefing relative to plaintiffs' Petition for *Certiorari* has served to confirm the very narrow scope and limited reach of the Second Circuit's fact-sensitive decision in this case. Moreover, the briefs submitted relative to the pending motions to dismiss, which in most cases were filed four or five years ago, may no longer accurately reflect the state of the law on key issues, or the factual record now available concerning the conduct in question.

For these and the other reasons discussed below, the September 11th plaintiffs deserve an opportunity to directly address the Court, relative to the procedural mechanisms and legal standards that should be employed in the management of this litigation going forward. It cannot reasonably be argued that these plaintiffs should not be afforded this most basic litigation right, which is provided to parties in routine disputes as a matter of course in the courts of the United States every day.

## 2. The Import of the Supreme Court's Recent Denial of *Certiorari* and Related Briefing on Remaining Claims in the Litigation

As Your Honor is aware, the Supreme Court denied plaintiffs' Petition for *Certiorari* from the Second Circuit's decision via an Order issued on June 29, 2009. The denial of plaintiffs' Petition leaves stand, for now, the Second Circuit's August 14, 2008 decision. This Court must now determine the impact, if any, of that decision on the pending motions to dismiss.

As plaintiffs acknowledged in their November 25, 2008 submissions to the Court, the Second Circuit's Foreign Sovereign Immunities Act (FSIA) ruling is dispositive at this level as to the immunity defense raised by the Saudi Joint Relief Committee (SJRC) and Saudi Red Crescent Society (SRC). Plaintiffs reserve their right to argue on appeal that the Second Circuit's FSIA ruling is wrong, and that jurisdiction is available under the FSIA for the claims advanced against the SJRC and SRC.

As to the remaining jurisdictional motions, application of the Second Circuit's decision will require a case by case analysis of the claims and allegations advanced in the pleadings and extrinsic evidence submitted of record. In relation to this process, the briefing submitted in relation to the Petition for *Certiorari*, and in particular the Solicitor General's *amicus* brief expressing the views of the United States, raises a number of issues that warrant the Court's consideration, and that may require supplemental issue briefing in discrete instances. For the Court's convenience, a copy of the United States' *amicus* brief is included as an enclosure to this letter.

2

Of particular note, the United States expressly rejected in its brief to the Supreme Court the notion that the Second Circuit's Due Process decision should be read to require a showing "that a defendant must specifically intend to cause injury to residents in the forum before a court there may exercise jurisdiction over him," as the remaining defendants have suggested in supplemental briefing to this Court. United States *Amicus* at p. 19. To the contrary, the United States made clear that pursuant to Supreme Court precedent "[i]t does not matter ... that the individual defendant is not 'able to control' the means by which the tortious injury is caused in the foreign jurisdiction, as long as he acted with the 'kn[owledge] that the brunt of th[e] injury' from his tortious act 'would be felt' in the foreign forum." *Id.* at p. 18 (*quoting Calder v. Jones*, 465 U.S. 783, 789 (1984))

In light of those well established standards, the United States advocated that the Second Circuit's decision should be read narrowly, as merely reflecting perceived deficiencies in "the allegations to establish that the defendants' intentional acts of funding the charities where done with knowledge that they would support al Qaeda's jihad against the United States." *Id.* at 20. Thus, under the United States' interpretation of the Second Circuit's decision, personal jurisdiction is satisfied where plaintiffs have presented allegations sufficient to make plausible the claim that a defendant's contributions of support, whether direct or indirect, were made with knowledge that those contributions would be used to support terrorism, or with reckless disregard for that potentiality. *Id.* at pp. 18-20.

As the United States properly recognized in its brief, this interpretation is the only reading of the Second Circuit's decision which reconciles that holding with Supreme Court precedent. Accordingly, plaintiffs respectfully submit that this Court should adopt and follow the United States' interpretation of the Second Circuit's decision in deciding the remaining motions to dismiss for lack of personal jurisdiction, and in resolving disputes concerning the scope of personal jurisdiction discovery, such as the dispute between plaintiffs and defendant National Commercial Bank (NCB) now pending before Judge Maas [1]

Plaintiffs respectfully request the opportunity to update the supplemental briefing and charts submitted to the Court on October 17 and November 25, 2008, to formally incorporate the views of the United States on this issue.

In its amicus brief to the Supreme Court, the United States also agreed with plaintiffs that foreign officials may not claim immunity under the FSIA. Coupled with the Second Circuit's recent decision in *Matar v. Dichter*, 563 F.3d 9 (2nd Cir. 2009), we believe the United States' views on this issue require consideration of common law immunity principles relative to the

---

[1] Of course, in resolving the pending personal jurisdiction disputes, the Court must first determine whether the defendant at issue is entitled to invoke Due Process protections in the first place. As plaintiffs noted in their February 4, 2009 Notice of Supplemental Authority, several recent decision have rejected or called into question the notion that non-resident aliens who have established no ongoing contacts with the United States are entitled to claim Constitutional protections. *See Veiga v. World Meteorological Org.*, 568 F. Supp. 2d 367 (S.D.N.Y. July 15, 2008); *TMR Energy Ltd v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005); *Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004); *United States of America v. Baboolal*, 2006 U.S. Dist. LEXIS 40645 (E.D. Wis. 2006). Consistent with these authorities, plaintiffs maintain that the Due Process arguments of non-resident defendants who do not have significant ongoing contacts with the United States should be rejected out of hand.

3

claims against the four remaining individual defendants asserting sovereign immunity.[2] For purposes of that analysis, the Court should follow longstanding practice in this arena and invite the United States to file Statements of Interest regarding the entitlement of those individuals to claim common law immunity for the claims at issue, to which the parties should then be afforded an opportunity to respond. As a courtesy to the United States relative to this request, we are copying State and Justice Department lawyers on this correspondence.

As the Petition to the Supreme Court and related briefing addressed only jurisdictional defenses raised by the defendants at issue, it has absolutely no impact or relevance to any 12(b)(6) motion pending before the Court. As to such motions, the most comprehensive statement of the law is set forth in the 7th Circuit's *en banc* decision in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. December 3, 2008) *(en banc) (Boim V)*. As discussed in further detail in Plaintiffs' February 4, 2009 Notice of Supplemental Authority, *Boim V* confirms that liability for plaintiffs' injuries under the Anti-terrorism Act (ATA) extends to any person who knowingly or recklessly provided material support to al Qaeda, whether directly or indirectly. *Boim V* further establishes that plaintiffs need not allege any factual or temporal link between a defendant's contribution of support and the September 11th Attacks in support of their ATA claims, and that even de minimus donations of material support to al Qaeda give rise to ATA liability, where made with the requisite "knowledge." In these critical respects, *Boim V* directly repudiates the arguments the defendants in this litigation have repeatedly advanced in an effort to evade ATA liability, and confirms that plaintiffs have stated valid claims against all of the defendants under the ATA. Moreover, because the reasoning and holdings of the *Boim V* Court derive from an informed and enlightened analysis of the nature of terrorism and primary role terrorist sponsors play in bringing about attacks against

---

[2] In *Matar v. Dichter*, 563 F.3d 9 (2009), a unanimous panel of the Second Circuit maintained that issues of common law immunity should be considered unless the FSIA was deemed to "'speak directly' to the question addressed by the common law." *Id.* at 14, quoting *United States v. Texas*, 507 U.S. 529, 534 (1993). In the absence of clear statutory command under the FSIA, the court in *Matar* analyzed the immunity of former governmental officials under the common-law *Schooner Exchange* scheme, as informed by the Statement of Interest filed by the State and Justice Departments before the district court. *Id.*

As was the case in *Matar*, the immunity arguments presented by the remaining individual defendants (al Obaid, al Turki, al Hussayen and al Swailem) fall outside the explicit protections of the text of the FSIA or as interpreted by this Circuit. As previously addressed in the supplemental briefing to the Court, the Second Circuit's holding in this case limited individual FSIA protection to "senior members of a foreign state's government and secretariat." *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 83 (2d Cir. 2008). As to the remaining individual defendants claiming sovereign immunity, the claims do not fall within the scope of that ruling, either because those claims arise from acts undertaken outside the scope of any official governmental function, or because the defendants were officials of non-traditional governmental agencies. Thus, this Court should follow the Second Circuit's directive in *Matar* and review their claims of immunity both under the FSIA as well as common law immunity principles. Even if this Court believes each individual warrants statutory protection under the FSIA itself, the unsettled parameters of the Second Circuit's recent ruling and the deep circuit split on the issue (as acknowledged by the United States in its *amicus* brief to the Supreme Court), argue in favor of resolving both immunity arguments at present to avoid an unnecessary second cycle of remand and appeal on the immunity argument not resolved at first instance. *See Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 161 & n.7 (2d Cir. 2007) (remand to determine applicability of FSIA to individual state actors and availability of common law immunity defense); *Yousuf v. Samantar*, 552 F.3d 371, 383 (4th Cir. 2009) (district court decision granting FSIA immunity to individual official overturned, remand for consideration of common law immunity question not considered below).

4

Case 1:03-cv-05071-GBD-SN   Document 274-3   Filed 04/23/10   Page 6 of 10

Americans, the decision also provides considerable guidance concerning the specific jurisdictional theories pending before this Court.

It should be noted that the United States filed an *amicus* brief with the Seventh Circuit in *Boim*, a copy of which is enclosed herewith for the Court's convenience. In that brief, the United States advocated expansive standards of liability under the Anti-terrorism Act, noting that 18 U.S.C. §2333(a) "was supported by the Executive Branch as an effective weapon in the battle against international terrorism; when correctly applied, it discourages those who would provide financing that is later used for terrorist attacks." *Boim Amicus* at p. 1. In particularly strong language, the United States rejected the notion that application of the civil liability provisions of the Anti-terrorism Act pursuant to the expansive standards advocated by the government would raise any Constitutional concerns, specifically noting that "[a]pplication of Section 2333(a) consistently with the principles set forth in this brief would be fully consonant with First and Fifth Amendment standards." *Id.* at pp. 28-29.

In light of the views expressed in its *Boim amicus*, it is hardly surprising that the United States' interpretation of the Second Circuit's Due Process ruling is in all respects synonymous with the Seventh Circuit's substantive decision in *Boim V*, thus confirming that the exercise of personal jurisdiction is appropriate where a plausible claim has been alleged under the Anti-terrorism Act. Because the Executive Branch's views in the area of national security are entitled to considerable deference, its interpretation of the Second Circuit's Due Process decision should be followed. *See Boim Amicus* at p. 30.

## 3. Procedure for Amending Pleadings in the Event of the Dismissal of a Defendant to Reflect Information and Evidence Gathered Over the Last Several Years

Many of the pending motions to dismiss date to 2004, and the underlying pleadings pertaining to the defendants at issue are at least as old. As a result, the pleadings do not reflect certain information and evidence gathered over the last several years, to include information and evidence released by the government as a result of ongoing investigations and prosecutions.[3] In fact, many of the pleadings in this case pre-date the release of initial governmental investigations into the September 11th Attack, such as the Final Report of the National Commission on Terrorist Attacks Upon the United States.

Once again, plaintiffs maintain that the pleadings at issue satisfy any potentially applicable pleading standard. Indeed, as the Second Circuit went out of its way to observe, the pleadings in this case contain "a wealth of detail (conscientiously cited to published and unpublished sources) that, if true, reflect close working arrangements between ostensible charities and terrorist networks including al Qaeda." *In Re: Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 76 (2d Cir. 2008). Consistent with the clear views of the Second Circuit on this point, plaintiffs respectfully submit that all motions to dismiss alleging deficiencies in the pleadings should be denied.

---

[3] Plaintiffs served FOIA requests upon various governmental agencies during the early stages of this litigation. Unfortunately, due to a massive backlog of such requests at virtually all of the agencies in question, many of those requests only recently reached the processing stage. In addition, the National Archives in January began a rolling release of the records of the 9/11 Commission, including documents on many issues not addressed in its Final Report.

5

However, should the Court deem plaintiffs' pleadings as to any particular defendant to be insufficient, whether as to jurisdiction or governing substantive standards, Second Circuit precedent requires that plaintiffs be afforded an opportunity to amend their pleadings, to cure the deficiencies identified by the Court, a right explicitly preserved in the earlier briefing. *See Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 402 (2d Cir. 2001); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) (abuse of discretion not to allow leave to replead with greater particularity). This is especially true in cases applying the standards of *Twombly* and *Iqbal* to complaints filed prior to those decisions being rendered. *See Perez v. Time Moving & Storage, Inc.*, 2009 U.S. Dist. LEXIS 17065, *2 (S.D.N.Y. Jan. 15, 2009); *Mastafa v. Australian Wheat Bd. Ltd.*, 2008 U.S. Dist. LEXIS 73305, *35 (S.D.N.Y. Sept. 25, 2008); *S.W.B. New Eng., Inc. v. R.A.B. Food Group, LLC*, 2008 U.S. Dist. LEXIS 14892, *23 (S.D.N.Y. Feb. 27, 2008).

Plaintiffs wish to discuss with the Court a procedure for affecting their procedural right to replead in a streamlined and efficient manner. Of course, this procedure would be invoked only in the event the Court were to grant a motion to dismiss on the basis of an alleged defect in the pleadings, and even then only where plaintiffs believe in good faith that amendment of the pleadings would cure the identified defect in the allegations.

### 4. Oral Argument

Given the dated nature of many of the briefs pertaining to the pending motions to dismiss, and inherent complexities introduced by the numerous Notices of Supplemental Authority filed by the parties and United States' *amicus* brief, plaintiffs submit that limited oral argument on the key issues pending before the Court would promote efficiency in the resolution of the remaining motions to dismiss. A single hearing may well be sufficient for this purpose.

### 5. Pending Letters Rogatory to the International Criminal Tribunal for the Former Yugoslavia

On April 20, 2009, plaintiffs submitted to the Court proposed Letters Rogatory to the International Criminal Tribunal for the Former Yugoslavia (ICTY), pursuant to paragraph 16 of Case Management Order No. 2 and paragraph 2 of Case Management Order No. 4. As submitted to the Court, those Letters Rogatory were unopposed. Plaintiffs believe that this simple administrative matter can be disposed of at the time of the Conference, if not before.

### 6. The Plaintiffs' Request for In-Camera Review of Documents Deemed to Contain Classified Information

On February 23, 2009, plaintiffs submitted to the Court a motion seeking the in-camera review of certain documents that the government has determined contain classified information. The documents were originally submitted to the Court on August 15, 2008, as part of plaintiffs' larger explanation as to why additional jurisdictional discovery is warranted from NCB. Because the Court's analyses should be based on a complete factual record, the Court should review the documents, at the very least in connection with any determination concerning the need for additional jurisdictional discovery from NCB.

At present, the documents remain in the Court's custody in a secured manner. Plaintiffs no longer have access to these documents or the evidence they contain. NCB and the Justice

Department have opposed the Court's consideration of the documents, and have filed briefs accordingly.

Plaintiffs reiterate their request for the Court to review the documents in-camera.

### 7. The Efficient Management of the Litigation Going Forward

In making the suggestions set forth in this letter, plaintiffs in no way seek to delay these proceedings further. Quite to the contrary, plaintiffs believe it is imperative that this litigation proceed on an expedited track going forward. Unfortunately, during the nearly seven years since the earliest of these cases was filed, and more than five years since MDL consolidation, defendants and witnesses have died, relevant documentary evidence has almost certainly been destroyed, and assets have likely been moved.

Plaintiffs believe the proposals included in this letter will serve to mute, to the extent possible, the prejudice arising from the delays encountered to date, by creating a competent record for the resolution of the pending motions to dismiss in the first instance by this Court, ensuring that the legal predicates for this Court's decisions are clear and informed by accurate briefing and argument, and minimizing the potential for cyclical appeals as to single defendants. In these and other respects, adoption of these proposals will ultimately serve to promote the efficient and expeditious management of this litigation, while at the same time protecting the procedural rights of the parties.

Finally, plaintiffs note that the governing Case Management Orders will likely require amendment following the discussions with the Court on July 15 concerning the management of this litigation going forward, and reiterate their firm belief that regular case management conferences will be essential in directing and controlling this complex litigation in the future.

### 8. Response to Defendants' Executive Committee's Letter

The Plaintiffs' Executive Committees offer this response to the original portion of the Defendants' Executive Committee's letter.

Plaintiffs qualify the DEC's comment that the Second Circuit's decision is the law of the case and of the circuit by recognizing first, that that decision has already been modified by the Second Circuit, itself (see, e.g., discussion supra at fn 4, discussing Matar v. Dichter, 563 F.3d 9 (2nd Cir. 2009), and second, that considerable disagreement exists concerning the interpretation of the Second Circuit's decision (see, e.g., discussion supra, at 3-4, discussing the United States' interpretation of the Second Circuit's decision).[4]

Because of the varied interpretations of the Second Circuit decision since the parties' November 25, 2008 submissions, plaintiffs disagree with the DEC's suggestions that the Court proceed to dismiss the thirteen defendants referenced in the third paragraph of the DEC's letter and that the court proceed with addressing the pending motions to dismiss based, in all

---

4 Although the government's position was explained supra at 3-4, and in its amicus brief which accompanies this letter, the plaintiffs will formalize the explanation imminently by filing a Notice of Supplemental Authority

circumstances, on solely the parties' prior submissions. As a consequence, plaintiffs specifically object to the use of the proposed form of order offered by the DEC.[5] As explained *supra*, at 2, plaintiffs agree that the Second Circuit's FSIA ruling is dispositive at this level as to the immunity defenses raised by the SJRC and SRC (with the reservations noted there). Similarly, plaintiffs agree that application of the Second Circuit's decision will be dispositive at this level as to Prince Naif, Prince Salman, and the Saudi High Commission in the remaining cases. But plaintiffs disagree with the DEC's recommendation regarding the remaining jurisdictional motions. As explained *supra*, at 2-3, the remaining motions require a case by case analysis and, in certain instances, supplemental issue briefing.[6]

Plaintiffs also disagree with the DEC's generic and sweeping assertion that every remaining claim against every remaining defendant must be dismissed because, the DEC contends, all of plaintiffs' claims fail to meet the current, applicable pleading requirements. Although the DEC cites to the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009), the absurdity of the DEC's interpretation of *Iqbal* is self evident from the result they argue their interpretation commands – *i.e.*, the complete dismissal of all remaining claims in this litigation, where the relevant pleadings span literally hundreds of pages. To interpret *Iqbal* in such a manner in this context would result in the functional equivalent of a judicial repeal of the Anti-terrorism Act, a statute Congress passed after much deliberation and with the support of the Executive Branch as an important component of America's counter-terrorism regime.

In purporting to explain the pleading standards that the Supreme Court set forth in *Iqbal*, the DEC gives lip service to the standard before suggesting wholesale dismissal, completely ignoring the need for any individualized analysis of the pleadings against each defendant. The DEC's suggestion, and many of the pending motion papers, focus exclusively on selected, outdated portions of the plaintiffs' complaints to the exclusion of other portions of the complaints, and completely ignores the various RICO statements and other pleadings that have throughout the course of this litigation amended the plaintiffs' pleadings as to many of the defendants that have motions pending.

Indeed, in many respects, the defendants' opposition to the plaintiffs' pleadings is not that plaintiffs failed to allege sufficient facts, but that the Court should not credit the facts alleged as true. For example, in some instances, defendants have argued that the plaintiffs' allegations should not be credited because they are "fanciful" or "discredited," merely asserting that, notwithstanding plaintiffs' allegations of facts, they should not be accepted by the trial court at the motion to dismiss stage because of the defendants' belief that they are not true. This interpretation runs afoul of the Supreme Court's decisions in both *Iqbal* and *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007), which both reaffirmed that a plaintiff's factual offerings must be

---

5 Plaintiffs also object to the proposed order to the extent that its purports to include concessions by the plaintiffs without preserving and/or reserving the plaintiffs' appellate rights.

6 The need for and practicality of select supplemental briefing is further underscored by the multiple Notices of Supplemental Authority filed in the various cases. Supplemental briefing in select circumstances would serve not only to update the Court on the status of the law in relevant respects, but assist the Court in tracking the various notices of Supplemental Authority since the original briefing of the many various motions.

accepted as true. As Justice Souter, who authored the Court's decision in *Twombly*, explained in his dissent in *Iqbal*:

> *Twombly* does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be.... The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it; claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.

*Iqbal*, No. 07-1075, slip. Op. at 9 (Souter, J. dissenting).

Notwithstanding the DEC's selective reading and wholesale approach to the plaintiffs' pleadings, the pleadings – taken as a whole and in context – contain the level of detail necessary and sufficient to meet the applicable pleading standard. Again we note that even the Second Circuit observed that the pleadings contain "a wealth of detail (conscientiously cited to published and unpublished sources) that, if true, reflect close working arrangements between ostensible charities and terrorist networks including al Qaeda." *In Re. Terrorist Attacks on September 11, 2001*, 538 F 3d at 76. And to the extent that the Court determines otherwise, plaintiffs are prepared to amend the pleadings to cure the deficiencies identified by the Court. *See supra*, at 5-6

Finally, in addition to the items previously identified, the Havlish plaintiffs anticipate addressing to the Court's attention certain default motions pending before the court since August 2008.

We look forward to discussing these issues with the Court at the Conference on July 15, 2009.

Respectfully submitted,

*Plaintiffs' Executive Committees*

THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:   The Honorable Frank Maas (w/enc. via hand delivery)
All counsel of record (via email)
James H. Thessin, Acting Legal Advisor, Department of State
Robert K. Harris, Deputy Legal Advisor, Department of State
Douglas Letter, Civil Division, Department of Justice