IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001

_____

)
)
)
)

No. 03 MDL 1570 (GBD/FM)
ECF Case

This document relates to:

> ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 02-CV-6977;
> BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
>     Case No. 03-CV-9849[1];
> CANTOR FITZGERALD ASSOCIATES, LP, *et al.* v. AKIDA INVESTMENT CO., LTD., *et al.*,
>     Case No. 04-CV-7065;
> CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 04-CV-5970;
> EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-7279;
> FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
>     Case No. 03-CV-6978;
> ESTATE OF O'NEILL, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-1923;
> WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND
>     DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-7280

## PLAINTIFFS' OPPOSITION TO DEFENDANT AL HARAMAIN ISLAMIC FOUNDATION, INC. (USA)'S RULE 72 OBJECTIONS TO OCTOBER 28, 2010 RULING

---

[1] Though the Rule 72 Objections of the U.S. branch office of the Al Haramain Islamic Foundation were filed as "related to" all of the cases listed here, the motion to compel that underlies these Rule 72 Objections is related to only the Burnett case (Case No. 03-CV-9849). Throughout the underlying history of this discovery dispute, only the Burnett plaintiffs were engaged in discovery with Al Haramain, because Al Haramain's motions to dismiss remained pending as to the remaining plaintiffs' cases until the Court's most recent ruling. The other cases are, however, included in this caption because they were so listed in the Rule 72 Objections.

# TABLE OF CONTENTS

*Page(s)*

TABLE OF AUTHORITIES…………………………………………………….......................ii

INTRODUCTION……………………………………………………………….......................1

STANDARD OF REVIEW……………………………………………………………….......................3

ARGUMENT

    I.    JUDGE ROBERTSON'S RULINGS IS NOT THE LAW OF THE CASE FOLLOWING TRANSFER TO THIS COURT,  AND THIS POINT HAS BEEN WAIVED BY AHIF'S FAILURE TO RAISE THIS ISSUE BEFORE THE MAGISTRATE JUDGE…………………….…………………………………..4

    II.    MAGISTRATE JUDGE MAAS' DISCOVERY DETERMINATION THAT THE AHIF ENTITIES WERE ALTER EGOS WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW, AND AHIF MADE NO ATTEMPT TO DISPUTE PLAINTIFFS' FACTUAL AVERMENTS………….7

    III.    THE STATEMENTS OF AHIF'S CURRENT OFFICERS WERE, IN FACT REBUTTED BY THE PLAINTIFFS AND ALSO BROUGHT INTO QUESTION BY MAGISTRATE JUDGE MAAS AT ORAL ARGUMENT ON THE MOTION TO COMPEL…………………………………..14

    IV.    PLAINTIFFS RELY ON THEIR PRIOR SUBMISSIONS REGARDING AHIF'S BOILERPLATE OVERBREADTH AND BURDENSOMENESS OBJECTIONS AND SUBMIT THAT MAGISTRATE JUDGE MAAS' DETERMINATIONS WERE NOT CLEARLY ERRONEOUS………………...16

CONCLUSION……………………………………………………………………….......................17

# TABLE OF AUTHORITIES

*Page(s)*

<u>**Cases**</u>

*Alcan Int'l Ltd. v. S.A. Day Manufacturing Co.,*

    176 F.R.D. 75 (W.D.N.Y. 1996) ...................................................................8

*Bank of New York v. Meridien Biao Bank Tanz.,*

    171 F.R.D. 135, 146 (S.D.N.Y. 1997) ............................................................8

*Bergesen d.y. v. Lindholm,*

    760 F. Supp. 976, 987 (D. Conn. 1991) .....................................................9, 10

*Burnett v. Al Baraka Inv. & Dev. Corp.,*

    274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003).................................................2

    349 F.Supp.2d 765, 782 n.2 (SDNY 2005).................................................2,5

*Cabral v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor),*

    2003 U.S. Dist. LEXIS 501, No. 02 Civ. 8411 (RWS),

    2003 WL 124677, at *3 (S.D.N.Y. Jan. 15, 2003) ........................................5

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,*

    105 F.R.D. 16, 43 (S.D.N.Y. 1984) ...........................................................16

*Cooper Industries, Inc. v. British Aerospace, Inc.,*

    102 F.R.D. 918 (S.D.N.Y. 1984) ...............................................................8

*Green v. McClendon,*

    2009 U.S. Dist. LEXIS 71860, (S.D.N.Y. Aug. 13, 2009) ...........................15

*Highland Capital Mgmt., L.P. v. Schneider,*

    551 F. Supp.2d 173, 177 (S.D.N.Y. 2008).................................................3

*IMO Holborn Oil Trading Ltd. Arbitration,*

    774 F. Supp. 840, 844 (S.D.N.Y. 1991)......................................................9

*In re Grand Jury Proceedings (Kluger),*

    827 F.2d 868, 871 n.3 (2d Cir. 1987) ...........................................................................5

*In re Multi-Piece Rim Products Liability Litig.,*

    653 F.2d 671, 678 (D.C. Cir. 1981) ...........................................................................6

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,*

    224 F.R.D. 543, 546 (S.D.N.Y. 2004) ...........................................................................5

*In Re Terrorist Attacks on September 11, 2001,*

    No. 03 MDL 1570 (GBD), 2010 WL 3783702 (S.D.N.Y. Sept. 13, 2010) ...............2, 6

*M.L.C., Inc. v. N. Am. Philips Corp.,*

    109 F.R.D. 134 (S.D.N.Y. 1986) ...........................................................................8

*Magnetic Eng'g and Mfg. Co. v. Dings Mfg. Co.,*

    178 F.2d 866, 868 (2d Cir. 1950) ...........................................................................6

*Marache v. Akzo Nobel Coatings, Inc.,*

    Case No. 08 Civ. 11049, 2010 U.S. Dist. LEXIS 92665,

    (S.D.N.Y. Sept. 7, 2010), ...........................................................................4

*McAllan v. Von Essen,*

    517 F. Supp.2d 672, 678 (S.D.N.Y. 2007) ...............................................................3

*Menowitz v. Brown,*

    991 F.2d 36, 40-41 (2d Cir. 1993) ...........................................................................5

*Mitchell v. Century 21 Rustic Realty,*

    233 F. Supp.2d 418, 439 (E.D.N.Y. 2002) ...............................................................3

*Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,*

    322 F.3d 147, 167 (2d Cir. 2003) ...........................................................................5

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,*

    840 F.2d 985, 990-91 (1st Cir. 1988) ...........................................................................4

*Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*,

    575 F. Supp. 1442, 1446-48 (E.D. Tex. 1983) ............................................................9, 11

*Searock v. Stripling*,

    736 F.2d 650, 653 (11th Cir. 1984)............................................................................8

*Thomson-CSF, S.A. v. American Arbitration Ass'n*,

    64 F.3d 773, 777 (2d Cir. 1995)...............................................................................9

## Federal Rules

Fed. R. Civ. P. 72 .....................................................................................................1

## Federal Statutes

28 U.S.C. § 636(b)(1) ...............................................................................................5

28 U.S.C. § 1404(a)....................................................................................................5

28 U.S.C. § 1407........................................................................................................5

## Other Authorities

*Moore's Federal Practice* § 72.11[1][a] (3d ed. 2000) .............................................4

Plaintiffs respectfully submit their opposition to the untimely[2] objections submitted by Defendant Al Haramain Islamic Foundation, Inc. ("AHIF") to the October 28, 2010 ruling of Magistrate Judge Maas directing AHIF "to produce the documents requested by the plaintiffs which are in its possession, custody, or control" and determining that the "U.S. and Saudi [Al Haramain] entities are alter egos of one another" for purposes of discovery.  *See* Exhibit F to November 29, 2010 Declaration of Robert T. Haefele ("Nov. 29 Haefele Decl."), Transcript of October 28, 2010 Hearing before Magistrate Judge Frank Maas, at 16-18 (hereinafter, "Tr. (Oct. 28, 2010) at __").

AHIF's objections are grounded in multiple omissions and mischaracterizations.  First, AHIF argues that Magistrate Judge Maas' determination that AHIF and the Al Haramain Islamic Foundation Saudi Headquarters ("AHIF-HQ") are alter egos for discovery purposes somehow converted Plaintiffs' motion to compel discovery into a dispositive motion for summary judgment permitting *de novo* review under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.  *See* AHIF's Objections at 1, 5-8.  Nevertheless, it is clear that the Magistrate Judge's determination of alter-ego status was made in the context of a discovery dispute to address Plaintiffs' concerns that Al Haramain would avoid its discovery obligations by erecting false distinctions between the indistinguishable entities.  As Magistrate Judge Maas' ruling dealt with non-dispositive discovery matters, the proper review is under the "clearly erroneous or contrary to law" standard.  In addition, AHIF has made no reasonable attempt to rebut the factual averments made by Plaintiffs that support Magistrate Judge Maas' determination of alter-ego status.

---

[2] Plaintiffs submit that, under Fed. R. Civ. P. 72(a) [or 72(b)], AHIF's objections are untimely.  Magistrate Judge Maas issued his Order that is the subject of AHIF's objections on October 28, 2010, in a ruling from the bench. Rule 72(a) [and also 72(b)] permit the filing of objections "within 14 days after being served with a copy" of the order.  The 14 day-period for objections expired on November 11, 2010 – 14 days after Magistrate Judge Maas delivered his ruling orally to the parties – including to counsel for Defendant AHIF.  By filing on November 15, 2010, AHIF's objections were filed out of time under Rule 72.

Second, AHIF's objections wrongly accuse Magistrate Judge Maas of violating the "law of the case" doctrine by failing to abide by statements that District of Columbia District Court Judge James Robertson made before the *Burnett* case was transferred to this MDL and before AHIF had produced the evidence the Magistrate Judge considered in resolving this discovery dispute.  AHIF completely ignores Judge Casey's prior determination that "[w]hile this Court reviews and gives deference to Judge Robertson's thoughtful opinion, it must evaluate … motions [to dismiss that were previously decided by Judge Robertson] on the merits de novo."  *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp.2d 765, 782 n.2 (S.D.N.Y. 2005).  In other words, Judge Robertson's decisions in the District of Columbia are *not* subject to "law of the case" here.  Furthermore, AHIF intimates that this Court has adopted Judge Robertson's determination that whether AHIF and AHIF-HQ are "one and the same" is a factual dispute "to be sorted out in discovery, and with a motion for summary judgment, but not on a motion to dismiss under Rule 12(b)(6)."  *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp.2d 86, 104 n.11 (D.D.C. 2003).  In fact, this Court cited to Judge Robertson's decision and held that "[s]uch an argument is of no consequence [in the Rule 12(b)(6) context] because the allegations pertaining specifically to [AHIF] are themselves sufficient to state a § 2333 claim against it."  *In Re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD), 2010 WL 3783702, at *16 (S.D.N.Y. Sept. 13, 2010).

Third, AHIF simply misconstrues Magistrate Judge Maas' ruling which merely addresses plaintiffs' discovery concerns by recognizing that because the Al Haramain entities are indistinguishable alter egos they have an indistinguishable obligation to produce the documents plaintiffs have sought in discovery.  Nov. 29 Haefele Decl., Exh. F, Tr. (Oct. 28, 2010) at 17-18. Despite all of the smoke and mirrors in AHIF's objections, the fact remains that Magistrate Judge Maas utilized the alter-ego decision to affirm the duty of the entire Al Haramain entity to produce

responsive documents within its custody and control because, based on the factual record presented to him without meaningful rebuttal by AHIF, as Magistrate Judge Maas stated on the record, "the two [AHIF and AHIF-HQ] were indistinguishable from one another, which gives rise to a duty to produce." *Id.* at 17.

Finally, AHIF argues that Magistrate Judge Maas' ruling was "clearly erroneous or contrary to law" when he determined that "as to the document requests, it seems to me essentially what I was given was only boilerplate assertions of burdensomeness.  To the extent that the objections were on that ground, I'm going to overrule those objections."  *Id.* at 17.  At no point in the record or in AHIF's actual responses to the discovery requests, has anything other than boilerplate assertions of burdensomeness been made such that there is no clear error by Magistrate Judge Maas.

## STANDARD OF REVIEW

Plaintiffs assert, despite AHIF's contentions to the contrary, that Magistrate Judge Maas' ruling was a standard non-dispositive discovery decision.  Other courts in this District have held that "it is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *McAllan v. Von Essen*, 517 F. Supp.2d 672, 678 (S.D.N.Y. 2007) (citations omitted).  The moving party must "satisfy [its] heavy burden of showing" that the appealed-from decision "was clearly erroneous or contrary to law."  *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp.2d 418, 439 (E.D.N.Y. 2002), *aff'd*, 45 Fed. Appx. 59 (2d Cir. 2002).  AHIF is correct that a decision may be found "clearly erroneous" "where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp.2d 173, 177 (S.D.N.Y. 2008).

# ARGUMENT

## I.   JUDGE ROBERTSON'S RULING IS NOT THE LAW OF THE CASE FOLLOWING TRANSFER TO THIS COURT, AND THIS POINT HAS BEEN WAIVED BY AHIF'S FAILURE TO RAISE THIS ISSUE BEFORE THE MAGISTRATE JUDGE.

Much of AHIF's argument hinges on this Court taking *de novo* review of its objections because it claims that, by virtue of District of Columbia District Judge Robertson failing to find that AHIF and AHIF-HQ are alter egos at the Rule 12(b)(6) stage, no court may determine an alter-ego claim until summary judgment such that Magistrate Judge Maas' ruling constituted a dispositive ruling granting summary judgment on, as AHIF states, "a key issue that is dispositive of plaintiffs' claims against AHIF[ ] (and AHIF [ ]'s defenses), *i.e.*, whether AHIF [ ] and [AHIF-HQ] are alter egos." *See* AHIF's Objections at 6.

*At no point* was this argument *ever* raised by AHIF before the Magistrate Judge. Magistrate Judge Maas' decision regarding alter ego was specifically an issue that was broadly briefed by both parties and argued before the court; however, no "law of the case" argument was ever interposed by AHIF. As Judge Stein recently stated, "an unsuccessful party is not entitled as of right to a de novo review by the judge of an argument never seasonably raised before the magistrate." *Marache v. Akzo Nobel Coatings, Inc.*, Case No. 08 Civ. 11049, 2010 U.S. Dist. LEXIS 92665, at *7 (S.D.N.Y. Sept. 7, 2010), *quoting*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988). Moore's *Federal Practice* states the same premise, "A party's failure to present timely arguments, case law, or evidentiary materials to a magistrate judge prior to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors, waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order." 14 James Wm. Moore et al., *Moore's Federal Practice* §

72.11[1][a] (3d ed. 2000).  By failing to "seasonably raise" this issue before the Magistrate Judge, the argument has been waived.

If this Court decides to address the "law of the case" argument, it is clear this argument overlooks what is truly the law of the case *in this MDL*.  Judge Casey, who presided over this MDL until his death, held specifically that Judge Robertson's prior decisions in the *Burnett* action filed in the District of Columbia were not law of the case following the transfer to the MDL:

> The Burnett Plaintiffs filed a motion for reconsideration in conjunction with Prince Sultan's and Prince Turki's motions to dismiss certain consolidated complaints. While the Court reviews and gives deference to Judge Robertson's thoughtful opinion, it must evaluate Prince Sultan's and Prince Turki's motions on the merits *de novo*.  *See In re Grand Jury Proceedings (Kluger)*, 827 F.2d 868, 871 n.3 (2d Cir. 1987) ("A transfer under 28 U.S.C. § 1407 'transfers the action lock, stock, and barrel.  The transferee district court has the power and the obligation to modify or rescind any orders in effect in the transferred case which it concludes are incorrect.'") (internal citations omitted).  The Court bears in mind that it is bound by Second Circuit precedent while Judge Robertson applied D.C. Circuit law.  *Menowitz v. Brown*, 991 F.2d 36, 40-41 (2d Cir. 1993) (explaining transferee court is to apply its interpretation of federal law, not that of the transferor circuit); *Cabral v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor)*, 2003 U.S. Dist. LEXIS 501, No. 02 Civ. 8411 (RWS), 2003 WL 124677, at *3 (S.D.N.Y. Jan. 15, 2003) (applying Second Circuit law after 28 U.S.C. § 1407 transfer from a district court in the Fifth Circuit).

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp.2d 765, 782 n.2 (S.D.N.Y. 2005) (J. Casey).  The cases cited by the Defendant address law of the case in two circumstances not at issue here: 1) where reconsideration of a non-final decision is being sought prior to the entry of final judgment;[3] or 2) under 28 U.S.C. § 1404(a) regarding change of venue for the convenience of the parties or in the interests of justice rather than 28 U.S.C. § 1407 regarding

---

[3] *See Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003) (addressing Fed. R. Civ. P. 54(b) that "prior to entry of a final judgment, an interlocutory 'order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties'" and treating such interlocutory decisions as "law of the case"); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (discussing law of the case in the context of seeking *reconsideration* of the MDL court's own prior decisions).

Multidistrict Litigation such as the instant case.[4]   In addition, one of the cases cited by the Defendant support Judge Casey's reasoning that "[p]roper coordination of complex litigation may be frustrated if other courts do not follow the lead of the *transferee* court."   *In re Multi-Piece Rim Products Liability Litig.*, 653 F.2d 671, 678 (D.C. Cir. 1981) (emphasis added).   The law of the case discussed in *Rim Products* addressed the preclusive effect of decisions issued by the *transferee* court in multidistrict litigation rather than the *transferor* court.   AHIF relies on *Rim Products* to say exactly the opposite of what the case actually says.

Likely recognizing that case law does not support its position that Judge Robertson's 2003 decision constitutes the law of the case, AHIF further argues that this Court, in its September 13, 2010 opinion granting in part and denying in part AHIF and AHIF-HQ's motions to dismiss in the remaining cases, somehow adopted Judge Robertson's 2003 decision by citing to it.   This ignores the context in which this Court addressed Judge Robertson's comments regarding discovery on the issue of whether the AHIF entities were "one and the same", *e.g.*, that "[s]uch an argument is of no consequence [at the Rule 12(b)(6) stage] because the allegations pertaining specifically to AHIF [ ] are themselves sufficient to state a § 2333 claim against it."   *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD), 2010 WL 3783702, at *16 (S.D.N.Y. Sept. 13, 2010).   Clearly, Magistrate Judge Maas did not violate the law of the case by determining that the two AHIF entities were alter egos for the purpose of imposing discovery obligations on the indistinguishably joint Al Haramain entity.

Assuming *arguendo* that Judge Robertson's opinion constituted "law of the case," it merely stood for the proposition that the alter ego determination could not be made until the parties had engaged in discovery.   This view is even supported by the Defendant.   *See* AHIF's Objections at 7

---

[4] *See Magnetic Eng'g and Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 868 (2d Cir. 1950) (specifically addressing law of the case in the context of "Sec. 1404(a) of the Judicial Code").

and 8 (stating that Judge Robertson's ruling "recognized that the parties would have to engage in discovery in order to determine whether the two defendants are 'one and the same'" and recognizing that the availability of new evidence interfere with application of the law of the case).  In 2003, no discovery had yet been conducted between Plaintiffs and AHIF.  But as the Defendant readily admits, by the time that Magistrate Judge issued his determination AHIF had produced documents in its custody and control through the course of discovery conducted between 2004 and 2009.  It was on the basis of this discovery that Plaintiffs asserted in their motion to compel before Magistrate Judge Maas that AHIF and AHIF-HQ are alter egos and that the nature of the relationship between the AHIF and AHIF-HQ dictates "control" over the other corporation's documents.

## II.    MAGISTRATE JUDGE MAAS' DISCOVERY DETERMINATION THAT THE AHIF ENTITIES WERE ALTER EGOS WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW, AND AHIF MADE NO ATTEMPT TO DISPUTE PLAINTIFFS' FACTUAL AVERMENTS.

Likely recognizing its inability to meet the applicable "clearly erroneous or contrary to law" standard, AHIF tries to shift the applicable standard by arguing that Magistrate Judge Maas' discovery determination is in fact a substantive determination on liability and the Court must therefore apply a *de novo* review. But notwithstanding AHIF's attempts to make plaintiffs' discovery dispute something it is not, the fact remains that the entire background that led to the dispute and the rationale and purpose for the Magistrate Judge's decision all arise from and address discovery issues.[5]

---

[5] Each of the cases cited by the Defendant address dispositive liability, rather than non-dispositive discovery, issues. For example, in Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131 (2d Cir. 1991), the Second Circuit reviewed a directed verdict that dismissed certain defendants who were alleged to have "disregarded the corporate form" in an attempt to pierce the corporate veil.  The key issue in the case was to "determine whether the district court correctly applied [the requirements for disregarding the corporate form under New York law] to the facts of this case."  933 F.2d at 137.  The same is true in United States v. Funds Held in the Name or for the Benefit of John Hugh Wetterer, 210 F.3d 96 (2d Cir. 2000), where the Second Circuit addressed the propriety of forfeiting funds of a foreign corporation based on the criminal conduct of a U.S.-citizen corporate director and whether such criminal conduct necessitated piercing the corporate veil.  The other cases cited by the Defendant use this same "piercing the corporate veil" analysis for asserting liability.

The discovery issue that Magistrate Judge Maas addressed concerned the control over corporate documents. As Plaintiffs argued in their motion to compel regarding "control" of documents whose production Plaintiffs sought to compel, the term "control" includes the legal right, authority, or practical ability to obtain the documents. *Bank of New York v. Meridien Biao Bank Tanz.,* 171 F.R.D. 135, 146 (S.D.N.Y. 1997); s*ee also M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134 (S.D.N.Y. 1986), *citing*, *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). In *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984), the court ordered a litigating subsidiary to produce documents of its British parent corporation even though the parent was not a party to the litigation. The court stated:

> Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad. If defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents.

102 F.R.D. at 920.

In *Alcan Int'l Ltd. v. S.A. Day Manufacturing Co.*, 176 F.R.D. 75 (W.D.N.Y. 1996), the defendant moved to compel the plaintiff to produce documents in the possession of a non-party foreign corporate affiliate. The court noted that both entities were "corporate members of a unified worldwide business entity" under the common control of another company which used the same corporate logo in promotional materials and the executives of one corporation had regular contact with the other corporation. The court held that, due to the intertwined relationship between the two entities, it was "inconceivable" that the party plaintiff would not have access to the non-party's documents and the ability to obtain them. This goes specifically to the control over documents that Plaintiffs asserted against AHIF and AHIF-HQ.

In deciding whether to treat one entity as the alter ego of another in this case, the Court applies federal common law, importing into its decision those principles of state law that it finds persuasive and appropriate to subsume. *Bergesen d.y. v. Lindholm*, 760 F. Supp. 976, 987 (D. Conn 1991). The general rule is that entities lose their distinct corporate identities when their conduct demonstrates a virtual abandonment of separateness. *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). An alter ego relationship exists where one entity has so dominated and disregarded its alter ego's corporate form that the alter ego was actually carrying on the controlling party's business. *IMO Holborn Oil Trading Ltd. Arbitration*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991). As Plaintiffs argued before the Magistrate Judge on February 28, 2010, although each case is *sui generis* and no set formula governs whether entities are alter egos, Courts have looked to fifteen factors whose presence, either alone or in combination, may militate in favor of disregarding juridical separateness. Burnett Plaintiffs' January 5, 2010 Letter Brief to Magistrate Judge Maas, at 2 (citing *Bergesen d.y. v. Lindholm*, 760 F. Supp. 976, 987 (D. Conn. 1991)(citing *Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*, 575 F. Supp. 1442, 1446-48 (E.D. Tex. 1983)).

Here, the fifteen non-exclusive factors referenced in the case law were addressed to Court's attention, evidence was presented, and at no point during the presentation before the Magistrate Judge did AHIF present *any* argument to the contrary. Exhibit E to Nov. 29 Haefele Decl., Transcript of February 8, 2010 Hearing before Magistrate Judge Frank Maas, at 25-36 (hereinafter, "Tr. (Feb. 8, 2010) at __").. The fifteen factors, unrebutted before the Magistrate Judge, include: (1) common or overlapping stock ownership between parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate office; (4) inadequate capitalization of subsidiary; (5) financing of subsidiary by parent; (6) parent exists solely as holding company of subsidiaries; (7) parent's use of subsidiaries' property and assets as its own; (8) informal intercorporate loan

transactions; (9) incorporation of subsidiary caused by parent; (10) parent and subsidiary's filing of consolidated income tax returns; (11) decision-making for subsidiary by parent and principals; (12) subsidiary's directors do not act independently in interest of subsidiary but in interest of parent; (13) contracts between parent and subsidiary that are more favorable to parent; (14) non-observance of formal legal requirements; (15) existence of fraud, wrongdoing or injustice to third parties. *Bergesen d.y. v. Lindholm*, 760 F. Supp. at 987 (citing *Sabine*, 575 F. Supp. at 1446-48).

Accordingly, the following evidence considered, *without any contrary presentation*, demonstrates that the factors suffice to meet the standard necessary for a finding of an alter ego relationship between the AHIF, AHIF-HQ, as well as the other branch offices of Al Haramain:

(1) *Common or overlapping stock ownership between parent and subsidiary*. Because neither the U.S. Branch office, the Headquarters in Riyadh, nor any of the branch offices is an entity with stock ownership for the purposes of determining control, this does not factor into the consideration.

(2) *Common or overlapping directors and officers*. Instead of control being determined by non-existent stock, control here comes from the substantial overlap of officers and directors of AHIF and AHIF-HQ in Riyadh, and AHIF-HQ's ability to control the decision-making affecting AHIF, as a branch office, and the flow of money to and from AHIF. Here, as evidenced in at least seven exhibits considered by the Magistrate Judge (Exhibits[6] 10, 14, 15, 16, 18, 19, 20), the three principal officers or directors active in controlling the U.S. branch office (AHIF) also played significant control roles in the Riyadh Headquarters (AHIF-HQ). Most significantly, Aqeel al Aqeel was both the president and director of the U.S. branch office and the General Manager of the Riyadh Headquarters. (Exhibit 14 at AHIF 001540, -1541, and -1543; Exhibit 15 at AHIF 000009; Exhibit 16 at 001506.) Similarly, Mansour Al-Kadi was both the vice-president and director of the U.S.

---

[6] The exhibits referenced in the analysis of the factors supporting the Magistrate Judge's alter ego determination are to the Exhibits accompanying the November 30, 2009 Declaration of Robert T. Haefele, which is included at Exhibit B to the Nov. 29, 2010 Haefele Decl..

branch office and Deputy Director of the Riyadh Headquarters (Exhibit 14 at AHIF 001542, Exhibit 15 at AHIF 000009; Exhibit 16 at 001506, and Exhibit 18.)  Soliman Al-Buthe was both treasurer and director of the U.S. branch office, the lawful representative in the U.S. for the Al Haramain Riyadh headquarters, and the Riyadh Headquarters Chairman of the U.S. Committee.  (Exhibit 14 at AHIF 001542, Exhibit 15 at AHIF 000009; Exhibit 16 at 001506, and Exhibit 10 at AHIF 000914; *see also* Exhibits 19, 20 showing that al-Buthe worked from the Saudi headquarters.)

(3) *Use of same corporate office*.  This factor, present here, is important not only because it evidences a great deal of interrelationship between the two entities, but because it also means that third parties could reasonably recognize the two entities as one entity.  *Sabine*, 575 F. Supp. at 1446-7.  Indeed, even the U.S. government, in designating AHIF under E.O. 13224 for its support of terrorism, recognized it as the "U.S. branch of the Saudi Arabia-based Al Haramain Islamic Foundation."  Exhibit 6.  Here, the Al Haramain website, which was also jointly used, identifies the U.S. office as the U.S. branch office of Al Haramain (Exhibit 22 at 4-5) and as the Alharamain Educational Center, a part of the greater Al Haramain entity (Exhibit 23), and identifies the Riyadh Headquarters as the "Head Office" and the U.S. branch office  (Exhibit 23).  Indeed, the Riyadh headquarters and the U.S. branch office regularly used the *same* website (Exhibits 24, 25, 26, and 27), the *same* letterhead (Exhibits 28, 29, 30, 31, 32, 33, 34, 35), and the *identical* logo (Exhibits 28, 29, 30, 31, 32, 33, 34, 35, and 50-58).

(4) *Inadequate capitalization of subsidiary*. The evidence presented to the Magistrate Judge evidenced that the only operating money available to the U.S. branch was approved by and came from the Riyadh headquarters.  In short, financially, the U.S. branch was entirely dependent on the Riyadh headquarters.  *See, e.g.*, Exhibits 19, 20, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, and 44.

11

(5) *Financing of subsidiary by parent*. The evidence demonstrating the minimal capitalization also evidences the degree of reliance that the U.S. branch had on the Riyadh Headquarters.  In addition, Exhibit 10 demonstrates that Aqeel al Aqeel, who was both the head of the Riyadh Headquarters and president and director of the U.S. Branch, appointed Soliman Al-Buthe power of attorney, using letterhead from the Riyadh Headquarters, to pay for any property, equipment, materials, and people, for the express purpose of support and maintenance of the goals and objectives of Al Haramain activities in the USA."  Exhibit 10.  Al-Buthe used that power of attorney to allow the Riyadh office to purchase property and all other aspects appurtenant to opening the U.S. branch.  In addition, in the memo of the Director of the Office of Foreign Assets Control, supporting OFAC's designation of AHIF, OFAC Director Newcomb stated that "the AHF headquarters, under al-Aqeel's leadership, provided funding and instructions that governed the activities throughout the world," including the US and elsewhere."  Exhibit 7 at AHIF 0006473.

(7) *Parent's use of subsidiaries' property and assets as its own*.  This factor was shown to be present in Exhibits 10, 14, 43, and 44.

(8) *Informal inter-corporate loan transactions*. This factor was shown to be present in Exhibits 10 and 14, which show that, rather than entering into formal loan transactions between the entities, the Riyadh Headquarters would instead merely bring cash bundles into the U.S. for use in real estate and other transactions for the U.S. branch.

(9) *Incorporation of subsidiary caused by parent*. This factor was shown to be present in Exhibit 10 (Al-Buthe power of attorney from Riyadh Headquarters giving authority to pay for various expenses necessary to start the U.S. branch) and Exhibit 44, at AHIF 001837-38 (Report of site visit of U.S. branch by Riyadh Headquarters, stating "Al-Haramain took on a great responsibility when deciding to open an office in the U.S.").

12

(10) *Parent and subsidiary's filing of consolidated income tax returns*.  This does not factor into the consideration because, in this scenario, one of the two entities is a foreign entity that does not file a U.S. tax return.  Notably, though, in the U.S. tax filing of the U.S. Branch, AHIF advises the U.S. IRS that the U.S. branch "is a part of the world wide foundation." Exhibit 21, AHIF 001424.

(11) *Decision-making for subsidiary by parent and principals*. This factor was shown to be present through myriad documents, including Exhibits 7, 8, 9, 26, 27, 28, 29, 34, 36, 37, 38, 39, and 40.  These exhibits show that al-Aqeel treated the entirety of Al Haramain as a single entity absolutely centralized under autocratic, centralist control.  Exhibits 7-9.  In the remaining exhibits, the U.S. office asks Riyadh for funds to permit it to make basic maintenance repairs (Exhibit 26 at AHIF 000825) for approval and funds to perform various projects, and recognizing that Riyadh had the authority to reject projects (Exhibit 27, 28, 29, 34, 36, 37, 38).  Indeed, the U.S. branch submitted its accounting records to the Riyadh headquarters for approval of its budgets and expenses.  Exhibits 39, 40.

(12) *Subsidiary's directors do not act independently in interest of subsidiary but in interest of parent*.  This factor was shown present in Exhibits 7-9 (showing al-Aqeel's autocratic, centralist control of the entirety of the Al Haramain entity) and Exhibit 43 (recognizing that the entirety of donations donated through the U.S. branch being sent to the Riyadh Headquarters).

(14) *Non-observance of formal legal requirements*. This factor was shown to be present by Exhibit 14, which evidences at least two instances where, rather than recognizing the formal distinction between the two entities, Al-Buthe brought substantial sums of cash into the U.S. to buy property for the U.S. Branch – without any formal recognition of the distinction between the two entities.

In addition to these factors, both entities have been variously recognized as overlapping related entities.  See, for example, Exhibit 5 where OFAC lists the following as an alternate name for the U.S. Branch office, "Al Haramain: United States Branch;" and Exhibit 6 where the U.S. Department of Treasury identified the U.S. Branch office as "the US Branch of the Saudi Arabia-based Al Haramain Islamic Foundation;" and Exhibit 21, where the U.S. Branch tells the U.S. Internal Revenue Service that "The United States foundation is a part of the world wide foundation;" and Exhibit 28, where in a letter from the U.S. Branch office to the Riyadh Headquarters, the U.S. Branch identifies itself as "your Ashland office" and "the Ashland office of AlHaramain Islamic Foundation."

With all of this evidence considered by the Magistrate Judge *and unrebutted by AHIF*, Defendant is hardly in a position to assert that the Magistrate Judge's ruling was "clearly erroneous or contrary to law" in determining that Plaintiffs had made a proper showing that the relevant factors were met to find that AHIF and AHIF-HQ are indeed alter egos and both should be equally obligated to produce all of the documentation sought by the Plaintiffs in discovery.  More to the specific point addressed by the Magistrate Judge's discovery decision, **under the circumstances evidenced by the documents considered – in particular the fact that the top two men in control of the Saudi Headquarters were also the top two men in control of the U.S. branch office – it is inconceivable that the two indistinguishable joint entities did not have the practical ability to access essentially the same documents to respond to discovery obligations.**

III.   **THE STATEMENTS OF AHIF'S CURRENT OFFICERS WERE, IN FACT, REBUTTED BY THE PLAINTIFFS AND ALSO BROUGHT INTO QUESTION BY MAGISTRATE JUDGE MAAS AT ORAL ARGUMENT ON THE MOTION TO COMPEL.**

AHIF contends, albeit incorrectly, that it "made an unrebutted showing that its board members had made several requests for" documents in the possession of AHIF-HQ and that any

obligation on AHIF to produce documents in Saudi Arabia constituted clear error.  *See* AHIF's Objections at 12-13.  In their reply letter on the motion to compel, Plaintiffs submitted that none of the primary actors in AHIF, including Pete Seda and Soliman Al-Buthe, "has offered any statement as to any effort made to obtain documents responsive to plaintiffs' requests."  Haefele Ltr., Jan. 5, 2010, at 3.  Further, Plaintiffs argued that "AHIF has no excuse for its failure to use reasonable efforts to secure the documents [from Saudi Arabia] in anticipation of litigation long before the Saudi regime allegedly closed [AHIF-HQ] – whether in October 2004, sometime in 2008, or any time thereafter…. [L]ong before any designation of AHIF or actions by the Saudi regime, AHIF and its counsel were on notice of litigation and legally required to secure, preserve, and protect responsive documentation."  *Id.*, *citing Green v. McClendon*, 2009 U.S. Dist. LEXIS 71860, at *13 (S.D.N.Y. Aug. 13, 2009).  The apparently absence of any effort to collect relevant documents is perhaps even more egregious given that the same men held the top two posts in both of the indistinguishably joint entities.  No evidence, other than thin and less-than-expansive declarations, was provided by AHIF to address this failure other than the argument that "[i]t's not my responsibility to issue document preservation letters to codefendants."  *See* Nov. 29 Haefele Decl., Exh. E, Tr. (Feb. 8, 2010), A. Kabat speaking at 42:20-42:21.  That retort rings particularly hollow in the face of the recognition that the admonishment to preserve would necessarily have been communicated to the same group of people.

　　　To say that Magistrate Judge Maas did not address this issue and made a clearly erroneous determination because AHIF allegedly could not obtain documents from AHIF-HQ is a fallacy.  In the hearing on the motion to compel, Magistrate Judge Maas posed very pointed questions to Mr. Kabat, AHIF's counsel, regarding the sufficiency of the two declarations proffered by the Defendant.  Stating that the declarations did not address this question, Magistrate Judge Maas questioned "what

happened in the period after either it was apparent that litigation was imminent or certainly when the earliest of these lawsuits was filed between then and when the Saudi government shut down the Saudi Foundation, in terms of preserving documents?"  Id., Tr. (Feb. 8, 2010) at 41:20-41:24. Addressing Mr. Kabat's argument that he is not responsible for issuing document preservation letters to codefendants, Magistrate Judge Maas stated that, if the two entities, as a matter of law and fact, "should be viewed as a single organization," then this discussion of AHIF's responsibility might be incorrect.  Id. at 42:25-43:4.   On the same point, Magistrate Judge Maas stated, "[i]f the interrelationship between the two is so great that they should be viewed as one," then the time period between when the first lawsuit was filed and the closure occurred may need to be more closely scrutinized.  Id. at 45:23-46:9.

Furthermore, to the extent that AHIF's objections speak of "sanctions", it must be clarified that Magistrate Judge Maas did not sanction AHIF in any way in his October 28, 2010, ruling.  He specifically held, "I intend to leave for another day what the consequences of any nonproduction by either of those two defendants [AHIF or AHIF-HQ] will be."  Nov. 29 Haefele Decl., Exh. F, Tr. (Oct. 28, 2010) at 18:13-18:15.

## IV.  PLAINTIFFS RELY ON THEIR PRIOR SUBMISSIONS REGARDING AHIF'S BOILERPLATE OVERBREADTH AND BURDENSOMENESS OBJECTIONS AND SUBMIT THAT MAGISTRATE JUDGE MAAS' DETERMINATIONS WERE NOT CLEARLY ERRONEOUS.

The only point in the record where AHIF has attempted to adequately address the boilerplate objections included in its discovery responses was in its opposition to the motion to compel.  *See* Kabat, Ex. A at 11.  This argument extended one page in its entirety and did not meet Defendant's burden to show specifically how its boilerplate objections apply to each of the requests.  *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105

F.R.D. 16, 43 (S.D.N.Y. 1984).  By failing to meet this burden, Magistrate Judge Maas' overruling of these boilerplate objections was not clearly erroneous.

## CONCLUSION

For the foregoing reasons and for the reasons Plaintiffs set forth in the letters, arguments, declarations and exhibits considered by the Magistrate Judge,[7] Plaintiffs respectfully request that Your Honor enter an Order affirming Magistrate Judge Maas' October 28, 2010 oral ruling on Plaintiffs' motion to compel.


Dated:  November 29, 2010                         Respectfully submitted,


                                                  /s/_____
                                                  Ronald L. Motley, Esq.
                                                  Jodi Westbrook Flowers, Esq.
                                                  Michael Elsner, Esq.
                                                  Robert T. Haefele, Esq.
                                                    (rhaefele@motleyrice.com)
                                                  Vincent I. Parrett, Esq.
                                                  MOTLEY RICE LLC
                                                  28 Bridgeside Blvd.
                                                  Mount Pleasant, SC  29464
                                                  (843) 216-9000

                                                  Attorneys for Plaintiffs

---

[7] Plaintiffs letters, declarations and accompanying exhibits considered by the Magistrate Judge in support of Plaintiffs' motion to compel discovery are included at Exhibits A through D of the Nov. 29, 2010 Haefele Declaration.