# EXHIBIT 60

LAW OFFICES
# BERNABEI & KATZ, PLLC
1773 T STREET, N.W.
WASHINGTON, D.C. 20009-7139

LYNNE BERNABEI
DEBRA S. KATZo
LISA J. BANKS
ARI M. WILKENFELD +
ALAN R. KABAT +
AVI L. KUMINo
RASHIDA A. ADAMSo
RENEE SERVANCE•
LEMA R. BASHIR *

(202) 745-1942
TELECOPIER (202) 745-2627
E-Mail: BERKATZLAW@AOL.COM
Website: www.bernabeiandkatz.com

OF COUNSEL:
DAVID J. MARSHALL

+ADMITTED IN MD ALSO
oADMITTED IN NY ALSO
oADMITTED IN CA ALSO
♦ADMITTED IN WI ONLY
* ADMITTED IN MD ONLY

By Hand Delivery
February 14, 2005

Mr. Robert W. Werner
Office of Foreign Assets Control
U.S. Department of Treasury
Licensing Division
1500 Pennsylvania Avenue, N.W., Annex
Washington, D.C. 20220

Re:   Al Haramain Islamic Foundation, Inc., License No. SDGT-343.

Dear Mr. Werner:

On behalf of the Al Haramain Islamic Foundation, Inc. (U.S.A.) ("AHIF"), I am writing pursuant to 31 C.F.R. § 501.807 to supplement the Administrative Record, and to request administrative reconsideration of the decisions by the Office of Foreign Assets Control ("OFAC") to block AHIF's assets, on or around February 18, 2004, and to designate AHIF as a SDGT on or around September 16, 2004.

### AHIF's Supplementation of the Administrative Record

AHIF requests the opportunity to supplement the Administrative Record by submitting the following documents, which are enclosed and incorporated herein by reference. These documents were previously submitted after the close of OFAC's arbitrary deadline, and are hereby re-submitted to supplement the Administrative Record, and to serve as part of the basis for the administrative reconsideration of OFAC's designation of AHIF:

(1)   Letter from L. Bernabei to R. Newcomb (Aug. 31, 2004), and attachment ("Supplemental Report of the 9/11 National Commission on Terror Attacks Upon the United States");

(2)   Letter from L. Bernabei to R. Newcomb (Aug. 31, 2004), and attachment (Declaration of Vladimir Matusevitch); and

PUBLIC-AR0795

Mr. Robert W. Werner
Office of Foreign Assets Control
U.S. Department of Treasury
February 14, 2005
Page 2

 (3) Letter from L. Bernabei to R. Newcomb (Sept. 7, 2004), and attachment (Declaration of Vladimir Matusevitch).

AHIF further requests that the Administrative Record be supplemented to include the following information relating to several transactions that were referenced in my prior correspondence to OFAC. See Letter from L. Bernabei to R. Newcomb (May 14, 2004); Letter from L. Bernabei to R. Newcomb (May 27, 2004). In my prior correspondence, I explained, as supported by documentary evidence, that in December 1999, the government of the Kingdom of Saudi Arabia entered into an agreement with the government of Russia to provide support to the refugees from the ongoing conflicts in Chechnya. This project was overseen by the Saudi Joint Relief Committee and the Saudi Arabian Red Crescent Society, an affiliate of the International Red Cross and Red Crescent, and was approved by the highest levels in the Saudi government.

As part of this humanitarian aid project, AHIF agreed to support the Chechenya relief efforts. In February 2000, a donor gave $150,000 to AHIF to support relief efforts in Chechnya, and several other donors gave smaller amounts. These funds were transferred to the al-Haramain Foundation (SA) ("al-Haramain (SA)"), to be transferred to the bank account of the Saudi Joint Relief Committee. AHIF had no further involvement with the expenditures of these donations, and no control over the downstream use of these funds, whether by the Saudi Joint Relief Committee, the Russian government, or any refugee. Nor did AHIF ever have any knowledge that the funds would be used for anything other than humanitarian relief efforts. Nor did AHIF or its two active directors, Soliman H.S. Al-Buthe or Perouz Sedaghaty, ever travel to Chechyna.

I am hereby providing you with additional documents and information that supplement my previous correspondence. Mr. Al-Buthe was responsible for transferring the Chechen donations from AHIF to Saudi Arabia in March 2000. He and Mr. Seda signed an agreement under which Mr. Al-Buthe accepted the responsibility for transferring these funds. See Agreement (Mar. 10, 2000) (attached hereto as Exhibit 1). Messrs. Seda and Al-Buthe went to the local branch of the Bank of America, where AHIF maintained its bank accounts, to obtain the requisite travelers' checks. Although the Bank of America recommended that they take a cashier's check, they opted to take travelers' checks, believing that travelers' checks could be cleared faster by overseas banks. As it happened, the bank did not have sufficient travelers' checks, so they took $130,000 in American Express travelers' checks, and $21,000 in a cashier's check. Upon Mr. Al-Buthe's arrival in Riyadh, Saudi Arabia, he deposited the cashier's check and travelers' checks in the Al Rajhi Banking and Investment Corporation, in order to have the funds converted into Saudi Rials. See Al Rajhi receipt for cashier's check (attached hereto as Exhibit 2); Al Rajhi receipt for travelers' checks (attached hereto as Exhibit 3). Then, after the checks had cleared, Mr. Al-Buthe made two payments to al-Haramain (SA): on March 12, 2000,

Mr. Robert W. Werner
Office of Foreign Assets Control
U.S. Department of Treasury
February 14, 2005
Page 3

for 224,000 Saudi Rials, and on March 28, 2000, for 479,514 Saudi Rials, for the balance, and covering several other miscellaneous donations. See Receipt (March 12, 2000) (attached hereto as Exhibit 4); Receipt (March 28, 2000) (attached hereto as Exhibit 5). These transactions are confirmed by a declaration from the Financial and Administrative Manager of al-Haramain (SA). See Declaration of Khalid bin Obaid Azzahri (May 5, 2004) (attached hereto as Exhibit 6).

Taken together, these documents show that AHIF's transfer of the Chechen donations to Riyadh, Saudi Arabia, was properly executed by the relevant financial institutions at each step, and the donations were recorded by the recipient in Saudi Arabia. Thereafter, AHIF had no further knowledge of, let alone control over, how the Saudi and Russian governments, through the Saudi Joint Relief Committee, used the money as part of the government-authorized humanitarian relief efforts in the Chechnya region.

### AHIF's Request for Administrative Reconsideration of OFAC's Designation

Reconsideration is warranted under 31 C.F.R. § 501.807(a) (2004) since an insufficient basis exists for the designation of AHIF. The Administrative Record that was provided to us consists almost entirely of information about al-Haramain (SA) and several of its overseas affiliates, and not AHIF. Even the relatively little information that OFAC produced about AHIF itself consists largely of newspaper articles and other inadmissible hearsay.[1]

However, this information does not show that AHIF (1) intentionally provided assistance to al-Haramain (SA) or to any al Qaeda entity, knowing that the recipient engaged in terrorist activities; or (2) had authority or control over the activities of al-Haramain (SA) or any al Qaeda entity, knowing it engaged in terrorist activities; or (3) knew that the recipients of AHIF assistance would engage in terrorism, as required to support a finding that AHIF supported terrorism or engaged in terrorist activities.

As the U.S. Court of Appeals for the Seventh Circuit recognized, making donations to an alleged terrorist group, without "knowledge of and intent to further the payee's violent criminal acts," would *not* sustain a tort claim under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002); accord Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (even though "plaintiffs have established that Iran provided extensive support to Hamas, ... their proof does not link that support to the

---

[1] In my letter of May 14, 2004, I cited legal authority for the proposition that OFAC's reliance on classified evidence violated AHIF's due process rights, and that OFAC improperly relied on newspaper articles which are inadmissible hearsay evidence.

Mr. Robert W. Werner
Office of Foreign Assets Control
U.S. Department of Treasury
February 14, 2005
Page 4

Ungar murders specifically"); see also Restatement (Second) of Torts, § 9 cmt. b (1965) ("In order that a particular act or omission may be the legal cause of an invasion of another's interest, the act or omission must be a substantial factor in bringing about the harm."). Here, OFAC is designating AHIF without having made the requisite showing that AHIF had the knowledge and intent to further any violent or terrorist acts on the part of any person or entity.

In essence, OFAC's designation of AHIF seems to be based on the acts of al-Haramain (SA) and/or several of its affiliates. In order to do so, OFAC must satisfy the requirements of the "reverse" veil-piercing test, which allows the imposition of liability on a subsidiary for the acts of a parent corporation, or the subsidiary's sole shareholder. JSC Foreign Economic Ass'n v. Intl. Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). Aside from the fact that al-Haramain (SA) is not even the parent corporation of AHIF, given that AHIF was not incorporated as a subsidiary of the Saudi charity, see AHIF's Articles of Incorporation (Feb. 11, 1999) (attached hereto as Exhibit 7), a veil piercing analysis requires a showing that the parent corporation not only "exercised domination and control" over the subsidiary, but also that the "corporate domination caused" the alleged wrongful acts. Bedford Affiliates v. Sills, 156 F.3d 416, 431-32 (2d Cir. 1998). There is nothing in the Administrative Record that shows that al-Haramain (SA) exercised the requisite "domination and control" over AHIF, let alone that this domination caused violent or terrorist conduct.

Therefore, pursuant to 31 C.F.R. § 501.807(a) (2004), I respectfully request that OFAC supplement its Administrative Record with the information and documentation referenced in this letter, and that OFAC reconsider and revoke its designation of AHIF.

If you need any additional information, please contact me.

Sincerely,

Lynne Bernabei

Enc.

cc: Cari Stinebower, Esquire
    Mary M. Rowland, Esquire

PUBLIC-AR0798

## Exhibit List

1. Agreement (Mar. 10, 2000).
2. Al Rajhi Bank receipt for cashier's check.
3. Al Rajhi Bank receipt for travelers' checks.
4. Receipt (March 12, 2000).
5. Receipt (March 28, 2000).
6. Declaration of Khalid bin Obaid Azzahri (May 5, 2004).
7. Al Haramain Islamic Foundation, Inc. (U.S.A.), Articles of Incorporation (Feb. 11, 1999).

PUBLIC-AR0799

Bismillah
May prayers and peace be upon the Messenger Muhammad

This is an agreement bet Soliman and Abu Yunus. This agreement states that Abu Yunus is turning all monies and responsibilities that were collected for the Brothers and Sisters in Chechnya over to Brother Soliman. Soliman states that he has received monies in the amount of $ _____, and he also fully relieves Abu Yunus' full responsibilities to the money.

X _____

X _____

Date: 4th of Thul Hijjah, 1420

Witness #1: _____

Witness #2: _____

PUBLIC-AR0800

Exhibit 1
Page 1 of 1



PUBLIC-AR0801

Exhibit 2
Page 1 of 1

PUBLIC-AR0802

Exhibit 3
Page 1 of 2



PUBLIC-AR0803

Exhibit 3
Page 2 of 2



PUBLIC-AR0804

Exhibit 4
Page 1 of 1



PUBLIC-AR0805

Exhibit 5
Page 1 of 1




BASSIM A. ALIM, Esq.

Date: 27/05/2004 AD
Ref: 14274/01/01

**TRANSLATION**

This document was translated for official use.

This document consists of (3) pages as per the following sequence:

1- This cover.
2- The translation (English).
3- The translated page/s (Arabic).

This translation is deemed to be complete provided that all the above documents are attached and intact. We testify to the accuracy of the translation without any responsibility for the contents.

Bassim A. Alim, Esq.

27-5-2004

This translation consists of (3) pages including this first page bearing the office seal as per page numbering.

01A0171427406042513 270504AD/AM

Exhibit 6
Page 1 of 3

PUBLIC-AR0806

## AFFIDAVIT OF AL HARAMAIN ISLAMIC FOUNDATION

1. Al Haramain Foundation starts fundraising campaign for relief Muslim In Chechnya in 1999.

2. Normally the collection of the fundraise (Cash & Cheques) has the following steps:-

    a. To issue a receipt voucher to the donor.

    b. Deposited all fundraise (Cash & Cheques) in Al Haramain bank account at Al Rajhie banking & investment co.

    c. The cashier submit to the financial department a (cash/cheques) deposit receipts with copies of receipt vouchers for checking and ordination, then our department will give a notice to the committees to proceed and follow up the relief and humanitarian works accordingly.

3. In March 2000 our Cashier received an amount of (SR.703,514.00) in cash from Soliman Bin Hamad Al Buthi, which is the total fundraise collected by Al Haramain U.S. office for relief of Muslims in Chechnya.

4. Accordingly, we follow the steps mentioned above and issued a receipt voucher number (262740) and (263857). The money was spent in Humanitarian and relief work for Chechen refugees.

5. Executed on the 3rd of May, 2004, in the Kingdom of Saudi Arabia.

Khalid Bin Obaid Azzahri

In his official capacity as the Financial & Administrative Manager



Exhibit 6
Page 2 of 3

PUBLIC-AR0807



Exhibit 6
Page 3 of 3

PUBLIC-AR0808