# EXHIBIT

# E

Part 1

1

0287TERC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE:  TERRORIST ATTACKS ON
     SEPTEMBER 11, 2001                    03 MDL 1570
 4
     ------------------------------x
 5
                                           February 8, 2010
 6                                         10:30 a.m.

 7   Before:

 8                      HON. FRANK MAAS

 9                                    Magistrate Judge

10                      APPEARANCES

11   KREINDLER & KREINDLER
          Attorneys for Plaintiffs
12   BY:  JAMES KREINDLER
          ANDREW MALONEY
13
     ANDERSON KILL & OLICK, P.C.
14        Attorneys for Plaintiff O'Neill
     BY:  JERRY S. GOLDMAN
15
     COZEN O'CONNOR
16        Attorneys for Plaintiff Federal Insurance
     BY:  SEAN CARNER
17
     MOTLEY RICE
18        Attorneys for Burnett Plaintiffs
     BY:  ROBERT HAEFELE (via telephone)
19
     ROTTENBERG LIPMAN RICH
20        Attorneys for Defendants Sana Bell, Inc
          and Sanabel Al Kheer
21   BY:  CHRIS MANNING
          EURYDICE KELLEY
22
     BERNABEI & WACHTEL PLLC
23        Attorneys for Defendant Al Haramain
          Islamic Foundation (USA)
24   BY:  ALAN R. KABAT

25

               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

2

0287TERC

1                              APPEARANCE (Continued)

2

LAW OFFICE OF STEVEN BARENTZEN
3        Attorneys for Defendant Dr. Yagub Mirza
BY:   STEVEN BARENTZEN
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

0287TERC

1    be a substitute.

2        THE COURT:  It could be, but I'm not going to require

3    it.

4        MR. BARENTZEN:  One last point I'll make just for the

5    record here, so it's all on the record:  Whatever delay may

6    have occurred quite frankly is plaintiffs' own fault.

7        Had they in the beginning of this come to Dr. Mirza

8    and asked me do you have documents, where are they, I could

9    have told you five years ago we don't have them.

10        Whatever dispute happened between the plaintiffs and

11   Sanabel, I still can't really wrap my head around it, but we

12   got caught in the crossfire here.  I found out about it and

13   jumped into this case and voluntarily said we don't have

14   documents.  That somehow Dr. Mirza and I are somehow

15   responsible for the delay the plaintiffs are suffering here is

16   just not the case at all.

17        THE COURT:  OK.  Well, I have made my ruling.

18        Should we move on to Al Haramain?

19        MR. HAEFELE:  I imagine that's me, your Honor.

20        THE COURT:  OK.

21        MR. HAEFELE:  May it please the court, first of all,

22   thank you for accepting my appearance by telephone.  I promise

23   I had multiple flights to come up there to be with you but they

24   were all canceled.

25        THE COURT:  A likely story, but that's fine.

0287TERC

1      MR. HAEFELE:  You are probably better off anyway.
2  Really, you don't need me coughing in your courtroom.
3      THE COURT:  I can probably hear you better on the
4  phone than if you were in the courtroom.  Go on.
5      MR. HAEFELE:  Well, first, I think your Honor noted
6  one of the first things that I did want to call to your
7  attention, that we're in full blown merits discovery with Al
8  Haramain, so any notion that there's any limitation as to any
9  discovery, other than any limits that the federal rules put on
10  us, they don't apply here.
11      The other point that I wanted to make, your Honor, is
12  the need to avoid discover delay, and I just believe we have
13  emphasized that to your Honor on multiple occasions, the need
14  to avoid delay and obtaining discovery.  And in your Honor's
15  most recent decision regarding discovery, your Honor recognizes
16  the need to avoid discovery delay, and those principles apply
17  no less.  That rationale your Honor provided there regarding
18  avoiding prejudice to the other side doesn't apply here where
19  we are in merits discovery with Al Haramain.
20      THE COURT:  With respect to Al Haramain U.S.
21      MR. HAEFELE:  Well, yes, your Honor, that's correct.
22  I will get into the other aspect of that in a moment, but, yes,
23  with regard to how Al Haramain, what I would call the U.S.
24  branch office of Al Haramain.
25      This court has express policy against allowing

0287TERC

1    defendants to shield documents from discovery by moving

2    documents abroad, and that same principle applies concerning

3    what I will call shape shifting corporate entities to avoid

4    ·discovery and accountability.

5           Borrowing from the language from one of the cases I

6    cited in the brief, your Honor, Cooper Industries, 102 F.R.D.

7    918, if a defendant could so easily evade discovery, every U.S.

8    company would do the same thing.  Here in this case it would be

9    keeping documents out of the U.S. at a headquarters or

10   resisting collecting discovery until after dissolving or making

11   other branch offices disappear.

12          That principle of treating commonly controlled

13   entities as singular entities for discovery was also supported

14   in the Alcan International case that we cited, which was 176

15   F.R.D. 75.  Like in Alcan, here the Al Haramain entities are

16   unquestionably all members of a unified worldwide business

17   under common control, using the same corporate logo and with

18   regular contact, particularly given the overlap and leadership

19   of the two entities.

20          As in Alcan, the court -- in Alcan the court said it

21   was inconceivable -- and I would say that's true here -- that

22   the U.S. entity through its actors would not have access to the

23   headquarters' information, particularly through the very same

24   overlapping acts.

25          Your Honor, in both of our letters we set out a number

0287TERC

1   of factors to be considered to treat Al Haramain and the Al

2   Haramain headquarters as alter egos of each other.  And what I

3   would like to do, your Honor, if you have the letter, the

4   January 5 letter that we sent your Honor, I would refer you to

5   page 2 of that letter.  Do you have that?

6              THE COURT:  I'm sure I do.  Bear with me a second.

7              Yes.

8              MR. HAEFELE:  On page 2, I think it's in the second

9   paragraph, we went through and we referenced some case law that

10  sets out a number of factors to be recognized in considering

11  whether to disregard juridical separateness of companies or

12  entities.  And going through them, what I would like to do is

13  walk the court through some of the documents that we submitted

14  and show you evidence supporting treating the U.S. office as

15  the alter ego of the Riyad headquarters, if that's ripe, your

16  Honor.

17             THE COURT:  Sure.

18             MR. HAEFELE:  Well, if we go one through 15, through

19  the factors, the first factor that's referenced there just

20  doesn't apply here because they're talking about common or

21  overlapping stock ownership, and we are talking about entities

22  that don't have stock ownership here.  So, that one wouldn't

23  apply.

24             The second fact does apply, which is common or

25  overlapping directors or officers.  And we have three principal

0287TERC

1   officers or directors of the U.S. branch office.  And for those

2   there, Mr. Al Akil, who is in Saudi Arabia, who is the

3   president of the U.S. branch office; the U.S. branch director,

4   GM of the Riyad headquarters.  And those items are identified

5   in Exhibits 14, 15 and 16.

6          Actually 14, 15 and 16 are important for all three of

7   the directors.  Mr. Al Khati, who is also in Saudi Arabia is

8   vice president of the U.S. branch, as shown on Exhibits 15 and

9   16.  He is the U.S. branch director, as shown in Exhibit 14.

10  He is the deputy director of Al Haramain Riyad, as shown in

11  Exhibit 18.  Mr. Al Butay is also in Saudi Arabia.  He is the

12  treasure of the U.S. branch, as shown in Exhibits 15 and 16.

13  He is the U.S. branch director, as shown in Exhibit 14.  He

14  worked from the Riyad office, as shown in Exhibits 19 and 20.

15  He is the lawful representative in the U.S. of Al Haramain

16  headquarters, as shown in Exhibit 10.

17          If we skip down to the next factor, your Honor, the

18  use of the same corporate offices.  And what we see is that in

19  Exhibit 22 we see that the Al Haramain website, which is used

20  jointly by both the Al Haramains, identify the U.S. office as

21  the U.S. branch office of Al Haramain.  The website also

22  identified Riyad as the head office and the U.S. branch office

23  as the Al Haramain Educational Center.  That's in Exhibit 23.

24          Both the headquarters and U.S. branch regularly use

25  the same website, the same letterhead and the same logo without

0287TERC

1  any kind of distinction.  And that's in a variety of exhibits

2  from 24 through 35 and then 50 through 58.

3           I don't actually have the exhibits referenced here,

4  but I think certainly the anticapitalization of the

5  subsidiaries, which is the next factor, there are a variety of

6  documents that show that Al Haramain branch office in the U.S.

7  pretty much lived off of the money, the funding that was coming

8  in from Al Haramain headquarters, and that's through a number

9  of correspondence back and forth between the two where Al

10  Haramain U.S.A. is asking for money to do any kind of repairs

11  to the buildings, and it indicates that the salaries paid to

12  the Al Haramain people in the U.S. came from the funding that

13  came from the headquarters.

14           The next factor, which is an overlapping factor I

15  think, is the financing of the subsidiary by the parent.

16  Exhibit 10 shows that Al Akil appointed Al Butay the power of

17  attorney on headquarters letterhead to pay any property,

18  equipment, materials, people, for the express purpose of

19  support and maintenance of the goals and objectives of Al

20  Haramain activities in the U.S.  Now, that's the way that Al

21  Haramain in the U.S. branch office got open because of the

22  power of attorney given from the general manager in the Riyad

23  headquarters to the U.S. representative -- sorry, the U.S.

24  representative of the headquarters in Riyad.

25           THE COURT:  That was used to acquire the building,