# EXHIBIT

# E

Part 3

0287TERC

1          If they were separate entities, your Honor, then there

2    should have been loan documents that indicated that there were

3    separate entities that were involved, and I don't see any

4    indication of that.

5          THE COURT:  OK.

6          MR. HAEFELE:  So, running through the documents that

7    we submitted, your Honor, by my count there is one, two, three,

8    four, five, six, seven, eight, nine, ten of them, plus another

9    one of the overlapping identifications, 11 of 16.  And, you

10   know, I'm not going to say we need to weigh and if I get over

11   half of them we're good.  But, as a whole, if you look at it

12   not only do 11 of the 16 match, but out of the ones that are

13   left they just don't apply under the circumstances because they

14   can't apply.  For example, there is no stock here.  The parent

15   exists solely as a holding company of the subsidiary, that sort

16   of applies.  It's really just a holding entity for all the

17   others, but it's that plus more.

18         The parent and subsidiary file consolidated income tax

19   returns is another factor but that doesn't apply here because

20   they don't file income tax in this country.

21         So, I think if you weigh all of the factors, your

22   Honor, what we get is a very strong indication that Al Haramain

23   U.S.A. is the alter ego of the headquarters.  And that seems to

24   be exactly what the U.S. government has indicated when it has

25   identified the headquarters as being the branch office of the

0287TERC

1   headquarters.

2           THE COURT:  Go on.

3           MR. HAEFELE:  There are just some other problems that

4   we would ask the court to take into account as well, and some

5   of these I think were highlighted earlier in the argument that

6   we heard a few moments ago regarding Sana Bell, and it has also

7   been the subject of other discussion before your Honor, and

8   that's what I would call -- well, I think Mr. Kriendler earlier

9   referred to it as a shell game, but I would call it the

10  problems with the mystery of the disappearing corporations and

11  the mystery of corporate assets.

12          The one problem is the shell game with the corporate

13  entities being either dissolved or mysteriously disappearing,

14  and it's become a theme in the litigation.  And that's one of

15  the problems that I think Mr. Kabat has indicated in his

16  response and said, well, the headquarters doesn't exist

17  anymore, so what are we to do?  Well, the answer is that we are

18  to try and get -- first of all, they were supposed to get all

19  of the documents responsive to discovery from the get-go, and

20  if they didn't do that then that's a problem we need to face as

21  well.

22          The other problem is the problem of ignoring -- what I

23  will call the mystery of the corporate actions.  And the

24  defendants seem to keep pointing to these corporate entities as

25  though they act mysteriously on their own.  They don't.  They

0287TERC

1    act through the individuals that are the corporations.  And so

2    if there are individuals that are involved here, those

3    individuals are the individuals that we need to look to to get

4    the documents from.  Al Haramain acts through the individuals,

5    and yet they ask the court to ignore that fact.

6         Some of the people -- in this instance represented by

7    the very same counsel -- have filed what clearly contain Al

8    Haramain documents.  One of the affidavits that came back to us

9    in the reply indicates that Mr. Al Butay has a file that has at

10   least some Al Haramain documents in it.  We didn't get those.

11   They came to us.  We didn't get them from Al Haramain directly

12   as a result of the various requests; they came because they

13   happened to be in an OFAC file.  They were provided by Al

14   Haramain to OFAC when they wanted to make their own arguments.

15        THE COURT:  Mr. Al Butay submitted an affidavit

16   though, as did Mr. Nelson, both of which you say are

17   insufficiently specific, at least one of which seemed fairly

18   specific.  So, I'm not sure what your gripe was there.

19        MR. HAEFELE:  Well, I would have to look back, your

20   Honor, but there is a curious problem with the affidavits.  The

21   affidavits that were submitted with the motion or the

22   opposition regarding the efforts employed to get responsive

23   documents came from someone who at the time that's pertinent

24   here had little to do with Al Haramain until fairly recently.

25   He was not a director at the time.  He is not listed in the

0287TERC

1    document as being a director until fairly recently.

2              THE COURT:  That's Mr. Nelson.

3              MR. HAEFELE:  That's Mr. Nelson, yes, your Honor.  And

4    we get nothing about those efforts on the three or four primary

5    actors for Al Haramain at the time, at least two who are also

6    represented by the same counsel.  And those people, I think

7    Mr. Seda and Mr. Al Butay, are both I believe represented by

8    the same counsel as Al Haramain U.S.A. branch.  And I don't

9    recall as to Mr. Al Akil.  But it raises the issue of Al

10   Haramain's efforts to actively collect responsive documents in

11   a timely and complete manner, when none of the documents that

12   were submitted back to us -- including the one that came from

13   Mr. Al Butay himself -- indicates what efforts were actually

14   done to try and collect documents in a timely manner and in a

15   complete manner.  We don't know.  We know very little, if

16   anything, on the efforts that have been made by Al Haramain to

17   get documents from Mr. Al Akil, from Mr. Seragati or from

18   Mr. Al Butay.  You know, he could have said something in his

19   declaration, but he didn't.

20             And none of these players at Al Haramain ever say

21   anything about any efforts to obtain documents, despite the

22   fact that they have been in Saudi Arabia for years following

23   9/11.  And instead we get a single affidavit from a relative

24   outsider to Al Haramain, saying very little about any of the

25   efforts made to get the information.

0287TERC

1      And on that issue, your Honor, that is pretty much

2   what I had to say.  I think there is several other issues that

3   were raised, including the counting interrogatories or whether

4   we should use interrogatories more or less.  And in that

5   instance I think your Honor I would rely on what we wrote in

6   our letters.

7      And the other issue, your Honor, the problem is the

8   definition of material support for requests 15 and 16, and we

9   just have a problem where we were specific in terms of what we

10  were requesting, and they come back and they try to define it

11  as saying, well, because the word "material support" showed up

12  in the request we take the liberty of saying unilaterally our

13  stuff wasn't material support.  That not what the request was,

14  your Honor.

15      THE COURT:  Well, at so that one it seemed to me the

16  problem may be where the comma is or isn't placed.  But we will

17  get to that as we go forward.

18      Mr. Kabat?  Is that the way you pronounce it?

19      MR. KABAT:  Yes.

20      THE COURT:  OK.

21      MR. KABAT:  Good morning, your Honor.  Let me just say

22  we're here more than five years after producing more than

23  50,000 pages of documents and publications and the CD-ROMs with

24  all the financial records from the Oregon group.  Now, we

25  exchanged a lot correspondence with plaintiffs counsel way back

0287TERC

1    in '03, '04 and '05.  Plaintiffs did not then respond to most

2    of the issues we raised in our correspondence, and plaintiff

3    waited over five years to really raise the discovery issue with

4    the court.

5        Now, the fundamental problem that I have with their

6    motion to compel, is it's not a motion to compel about the

7    activities and operations of the Oregon Group.  Instead,

8    plaintiff, they are trying to use the Oregon Group as a method

9    for obtaining information about the activities and operations

10    of the Saudi Group, which is another defendant.

11        And I submit that you should deny the Burnett

12    plaintiff's motion to compel because essentially the plaintiffs

13    are seeking discovery from the Oregon defendant of documents

14    and information that's in the possession, custody and control

15    of other defendants, principally the Saudi defendants, Saudi Al

16    Haramain Group.

17        THE COURT:  I thought your position is -- maybe I

18    misunderstood it -- that the Saudi Foundation at least couldn't

19    produce documents because the Saudi government shut it down.

20    Are you talking about documents in the possession of the

21    individuals who were the officers, or in the possession of the

22    Saudi Foundation, or both?

23        MR. KABAT:  Well, plaintiff is trying to seek both

24    through --

25        THE COURT:  No, I understand plaintiffs want

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0287TERC

1   everything.  But what you were saying was, well, don't give

2   them the documents held by the -- I think you used the phrase

3   Saudi defendants, one of whom is the Foundation itself, and in

4   your papers there were representations that the Saudi

5   Foundation was shut down by the Saudi government, which sounded

6   like, you know, put a padlock on the front door.

7        Is that what you're saying?  Or does the Saudi

8   Foundation in fact have access to documents?

9        MR. KABAT:  It is my understanding they do not.  Since

10  the government closed it down both Mr. Albans and Mr. Nelson

11  have made repeated attempts while in Saudi Arabia to obtain any

12  documents, because, after all, they could be exculpatory

13  documents for us as well.  We would like to get that

14  information too, but we can't.

15       THE COURT:  Well, one of the things -- and I

16  understand the points you have made about delay, and certainly

17  I don't disagree with you there were long gaps between when you

18  write back to the plaintiffs and when they respond at times --

19  but one thing they want to focus on, which the affidavits that

20  you submitted don't seem to address, is what happened in the

21  period after either it was apparent that litigation was

22  imminent or certainly when the earliest of these lawsuits was

23  filed between then and when the Saudi government shut down the

24  Saudi Foundation, in terms of preserving documents?  I mean

25  that, it seems to me, is one of the issues that Mr. Haefele and