# EXHIBIT

# E

Part 5

0287TERC

1   in this discussion, although the papers speak to it, is the
2   Quran Foundation.
3       MR. HAEFELE: I can speak to that briefly, your Honor.
4   The Quran Foundation is basically Mr. Seda. Mr. Seda set it
5   up. Mr. Seda pretty much did the same thing.
6       The Al Haramain entity basically came on the scene to
7   supplement and to enlarge the size, enlarge the scope of, to
8   enlarge the financial capabilities of what the Quran Foundation
9   is doing. The Quran Foundation was Mr. Seda. Everything that
10  he did under the Quran Foundation he eventually did that and
11  more under Al Haramain's name. They had the same office, they
12  were run by the same guy, they had the same staff, they shared
13  offices, phone numbers, computer networks. Everything that was
14  the Quran Foundation was what Mr. Seda was doing with Al
15  Haramain. There is really no distinction.
16      THE COURT: But for purposes of the present motion,
17  what is the relief you want? Is it a ruling that the two Al
18  Haramain foundations should be viewed as a single entity?
19  Well, clearly it's that, that they should be viewed as a single
20  entity such that the Saudi Arabian entity should be producing
21  documents or should have preserved documents at an earlier
22  time. But beyond that what is it you are seeking presently?
23      MR. HAEFELE: You know, our position is since they are
24  alter egos, to the extent we have requested information from Al
25  Haramain the U.S. branch, that requires them to produce

0287TERC

1 anything that the U.S. branch or that can be gotten related to
2 the greater Al Haramain knowledge of what was going on in Al
3 Haramain worldwide.
4     As to the Quran Foundation, since it really is the
5 same, and since they shared information, and since a number of
6 the documents that have been produced indicate that there was
7 really little distinction between things going on at the Quran
8 Foundation, things going on at the Al Haramain foundation the
9 U.S. branch, there is a problem that there may be substantial
10 documents in Mr. Seda's possession that relate to work that was
11 done for either or. And since that distinction is dissolved
12 for the most part, we want to see the documents from the Quran
13 Foundation that relate to Al Haramain, and I think that's the
14 way the request was made.
15     THE COURT: Is Mr. Seda a defendant in the suit?
16     MR. HAEFELE: Yes, he is. I believe the discovery is
17 open to him as well. I think his motion to dismiss was also
18 denied.
19     THE COURT: OK. Well, I guess one question would be
20 has he been subpoenaed -- not subpoenaed -- has he been given a
21 request for production of documents?
22     MR. HAEFELE: He has not, because we understood that
23 the request to the Al Haramain Foundation was sufficient. And
24 he was the U.S. officer. I mean we could do it, but it would
25 be redundant.

0287TERC

1        THE COURT:  Well, it might be, but it might not be.
2   Who represents him, by the way, do you know?
3        MR. HAEFELE:  The same lawyers, your Honor, Mr.
4   Kabat's office.
5        MR. KABAT:  Yes.
6        THE COURT:  I'll ask him the question:  If he were
7   served with a request for production of documents individually,
8   would it yield any more documents?
9        MR. KABAT:  I don't think so, your Honor, because what
10  happened is that when Mr. Seda was overseas, the government,
11  you know, seized all the documents that were in the Ashland
12  office, and then they turned them over to his defense attorney
13  in Portland.  He is represented by the public defender.  They
14  in turn gave us a copy, and we produced those to the
15  plaintiffs.  So, that seems to be the totality of what was in
16  the Ashland office.
17       THE COURT:  There was also a discussion in the various
18  papers I received about the extent to which various requests
19  or, more particularly, interrogatories were overbroad or the
20  objections to those interrogatories were boilerplate.  Should
21  we discuss that today, or is it more appropriate for me to
22  first decide the issue we have been talking about thus far and
23  then see where that take us?
24       MR. HAEFELE:  Your Honor, I would go whichever way
25  your Honor would prefer.

0287TERC

1     MR. KABAT:  Your Honor, I would agree you should
2  decide the first issue.  And I would also note that the
3  plaintiffs' reply brief, the January 5 brief, did not address
4  any of our response on the overbroad and so forth issues, so
5  they're fully submitted on the papers.
6     THE COURT:  OK.  Well, then I will focus first on the
7  issue of whether the -- well, I guess it's one and a half
8  issues -- whether the Saudi entity and the U.S. entity should
9  be viewed as one in the same, and if the Saudi entity comes
10 into the loop, whether that implicates all of the worldwide
11 activities of the Foundation, since I gather there were what
12 Mr. Haefele would call and I guess at times what the Foundation
13 called branch offices in other countries.
14    MR. HAEFELE:  Your Honor?
15    THE COURT:  Yes.
16    MR. HAEFELE:  Two points that I would like to make to
17 your Honor, fairly simplistic I hope.
18    THE COURT:  Sure.
19    MR. HAEFELE:  We didn't respond to the additional
20 issue related to the scope or the burden or the breadth of the
21 discovery requests in our later letter because we thought we
22 did cover it substantially in our December 2 letter on pages 14
23 and 15.  But the other issue is if you look at our December 2
24 letter, on the bottom of page 15 there is a really important
25 typo that I would like to correct for your Honor.

0287TERC

1     THE COURT: Is that the one where you left out the
2 word "not"?
3     MR. HAEFELE: Yes, it is.
4     THE COURT: I caught that. I read it twice because it
5 did seem to be a change in your position.
6     MR. HAEFELE: I read it a lot over the weekend and
7 tried to figure out where that word "not" was.
8     THE COURT: I had already taken the liberty of
9 correcting that in my copy.
10     MR. HAEFELE: Thank you, your Honor.
11     THE COURT: OK. As to this issue I'm going to reserve
12 decision.
13     The next conference before Judge Daniels is scheduled
14 for April 15. I haven't a clue whether he will hold that
15 conference or not, but I wanted to alert everyone and let
16 whoever is not here who needs to know know that I have asked
17 him if it is held on April 15 to move it to the afternoon
18 because I have a conflict in the morning. So if it occurs, and
19 assuming it occurs on April 15, it's likely to be the
20 afternoon, not the morning.
21     Anything else anybody wants to bring up today?
22     MR. CARNER: A minor thing we mentioned earlier. As I
23 mentioned, we are in this difficult situation where discovery
24 is ongoing as to Al Haramain in one case but its motion remains
25 pending in the rest of the cases. And we very much would like

0287TERC

1    to try to harmonize the situation.  So, to the extent that
2    we're going to make an application, would you prefer that go to
3    you or to Judge Daniels?
4             THE COURT:  No, I think that one should -- basically
5    to say that everybody ought to be involved in whatever
6    discovery is permitted as to Al Haramain U.S. and/or Saudi
7    Arabia?
8             MR. CARNER:  That's correct, your Honor.
9             THE COURT:  No, I think that should come to me.
10            MR. CARNER:  OK.  Thank you, your Honor.
11            THE COURT:  OK.  Thank you, all.
12            MR. HAEFELE:  Thank you, your Honor.

                              - - -