## MDL 1570 PLAINTIFFS' Executive COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>Motley Rice LLC<br>James P. Kreindler, *Co-Chair*<br>Kreindler & Kreindler LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>Cozen O'Connor |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>Kreindler & Kreindler LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP | J. Scott Tarbutton, *Liaison Counsel*<br>Cozen O'Connor |

*Via Federal Express - Overnight*

January 9, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

　　　　Re:　　*In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

　　　　On behalf of all plaintiffs, the Plaintiffs' Executive Committees request that the Court enter an order, under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure and the Court's inherent powers, imposing sanctions against Al Haramain Islamic Foundation, Inc. ("Al Haramain") for its failure to comply with this Court's discovery orders of October 28, 2010, December 2, 2010, and December 10, 2010,[1] and for its continuing failure to produce documents responsive to plaintiffs' subsequent requests served July 31, 2012.[2] Al Haramain's abject failure to produce responsive documents warrants the severe sanction of entry of a default judgment under Rule 37(b)(2)(A)(vi). In addition, the Court should also order that the jury may find adverse inferences regarding Al Haramain's knowing and intentional support of terrorism that helped al Qaeda launch the September 11 attacks.

---

[1] Exhibits A-C to the Declaration of Robert T. Haefele, dated January 8, 2013 are Relevant Excerpts of Transcript of October 28, 2010 Hearing before Judge Frank Maas (Exhibit A), hereinafter "Tr. (Oct. 28, 2010) at ___."; Relevant Excerpts of Transcript of December 2, 2010 Hearing before Judge Frank Maas (Exhibit B), hereinafter "Tr. (Dec. 2, 2010) at ___."; and ECF No. 2393, Order dated December 10, 2010 (Exhibit C).  Each of the exhibits referenced throughout this letter, unless otherwise indicated, are attached to the Declaration of Robert T. Haefele, dated January 8, 2013 (hereinafter "Haefele Decl."), and are hereafter cited simply as "Exhibit ___."

[2] Exhibit D (Plaintiffs' Supplemental Requests for Production of Documents Directed to Defendants Al Haramain Islamic Foundation, Inc. and Pirouz Sedaghaty a/k/a Pete Seda).

The Honorable Frank Maas
January 9, 2013
Page 2

---

## 1. Preliminary Statement

Al Haramain is a Saudi Arabia-based international nonprofit organization established in the early 1990s nominally for the purpose of promoting Wahhabi Islam. Exhibit E (Relevant Excerpt from John Roth, Douglas Greenburg, & Serena Wille, Monograph on Terrorist Financing, National Commission on Terrorist Attacks Upon the United States (2004) [hereinafter "Terrorism Monograph"]) at 114; *see also Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 660 F.3d 1019, 1023 (9th Cir. 2011). However, as early as 1996, the U.S. intelligence community began to gather evidence that Al Haramain was involved in financing terrorism. *Id.* at 115. Over time, the U.S. intelligence community drew links between Al Haramain and numerous acts of terrorism and terrorist groups, including the 1998 East Africa bombings, jihad actions in the Balkans, Chechnya, and Azerbaijan, and support for al Qaeda generally. *Id.* As a result of this intelligence – and the aftermath of 9/11 – the United States and Saudi Arabia designated Al Haramain and its officers as financiers of terrorism. *See, e.g.,* Exhibit E (Terrorism Monograph) at 114-130 (outlining designations in context of United States-Saudi relations); *Al Haramain Islamic Found., Inc.*, 660 F.3d 1019 at 1026-29 (outlining the designations of Al Haramain, Aqeel Al-Aqeel, and Soliman Al-Buthe); and Exhibit F (State Department Cable, dated January 28, 2003 [BUR-PEC-049171 to -179]) (detailing myriad connections between Al Haramain and Al Qaeda and other terrorist organizations and attacks [*id.* at -049173-179]; "Reporting suggests that about 20 Al-Haramain field offices and representatives operating in 50 Countries in Africa, Asia, Europe, and North America, as well as its headquarters in Saudi Arabia, appear to be providing financial and logistical support to Al-Qa'ida." [*id.* at -049175]). These designations were made and re-made because of the identification of "direct links" among Al Haramain, al Qaeda, and Osama bin Laden. *Al Haramain Islamic Found., Inc.*, 660 F.3d at 1026, 1028 (noting specifically the presence of designated individuals controlling Al Haramain and the fact that Al Haramain was "an international charity that employed its branch offices to provide financial, material, and other services and support to al Qaida and other [designated persons].") (brackets in original).

In pursuit of this goal of financing terrorism, Al Haramain is centrally operated and controlled. In fact, the record is so clear on this that, in addition to this Court's finding that Al Haramain's offices in Saudi Arabia and Oregon are alter egos, both a Federal District Court and the United States Court of Appeals for the Ninth Circuit had "no trouble concluding that substantial evidence supports OFAC's determination that [Al Haramain's Oregon office] is a branch office of [Al Haramain's Saudi Arabian headquarters] and of the worldwide network of the Al Haramain Islamic Foundation." *Al Haramain Islamic Found., Inc.*, 660 F.3d at 1031; *see also Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 686 F.3d 965, 979 (9th Cir. 2012) ("In light of all the evidence in the record, we conclude confidently that substantial evidence supports OFAC's conclusion that AHIF-Oregon supported designated persons as a branch office of AHIF-Saudi Arabia."). Moreover, "three out of four founding members of [Al Haramain in Oregon] were senior officials of [Al Haramain in Saudi Arabia]," including two specially designated global terrorists, Aqeel Al-Aqeel and Soliman Al-Buthe. *Id.*

This terrorist designated entity, run by terrorist designated individuals, has intentionally undermined and obstructed discovery since the start of this civil action. Most egregiously, Al Haramain did not preserve relevant documents after filing, attempted to destroy documents, flouted

The Honorable Frank Maas
January 9, 2013
Page 3

obligations under the Federal Rules to investigate, locate, and identify responsive documents, and failed to produce documents as required under the Federal Rules. Al Haramain continued these malfeasances even after this Court ordered it to participate and produce – and even after being warned of possible sanctions. Courts in this circuit regularly respond to such willful and repetitive non-compliance harshly. Discovery rules and "discovery orders are meant to be followed," *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995), and "[a] party who flouts such orders does so at his peril." *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).

### 2. The Procedural Background

While covering a period of more than nine years, the procedural posture of this motion is straightforward.

- Plaintiffs filed the first complaint in this multidistrict litigation on August 15, 2002;

- Plaintiffs served discovery requests on Al Haramain on October 29, 2003;

- Al Haramain responded on April 26, 2004. Its responses consisted of boilerplate objections, primarily on grounds that Plaintiffs' requests were overbroad and unduly burdensome and that Al Haramain lacked the requisite "possession, custody, and control" to produce responsive documents because the Al Haramain branch offices in Oregon and Saudi Arabia and the Qur'an Foundation were each separate entities. Since April 26, 2004 Al Haramain has produced 5,695 pages of documents, and has claimed that those documents constitute <u>all</u> of the documents that it is obligated to produce;

- After counsel exchanged multiple letters and conferred on several occasions, Plaintiffs moved to compel the production of documents on December 2, 2009, "request[ing] that the Court enter an order directing [Al Haramain] to provide complete and non-evasive answers to plaintiffs' requests . . . or risk institution of sanctions." ECF No. 2206, Plaintiffs' Letter Motion to Compel Production of Documents and Responses to Interrogatories, at 1 (Dec. 2, 2009) (sent to Al Haramain Nov. 12, 2009) (hereinafter "Pls' Mot. to Compel at __"). Along with the letter motion, Plaintiffs provided the Court an attorney declaration attaching substantial documentary evidence challenging Al Haramain's assertion that it constituted anything other than a single worldwide entity and that, as such, the legal relationship between each of the Al Haramain branches (and the Qur'an Foundation) required Al Haramain to "furnish all available discoverable information that is responsive to the requests." *Id.* at 2; *see also id.* at 2-13 (detailed discussion of interconnected relationship between Al Haramain branches, officers, and directors, as well as the Qur'an Foundation).

- Al Haramain responded on December 10, 2009 arguing that it lacked the requisite custody or control of documents at the Al Haramain headquarters in Saudi Arabia and that plaintiffs' discovery requests were overbroad and unduly burdensome. ECF No. 2384-2, Defendant's Letter Opposition to Plaintiffs' Motion to Compel (Dec. 10, 2009).

- On January 5, 2010, plaintiffs replied to Al Haramain's December 10 correspondence, providing the Court with additional documentary evidence and explaining further that Al Haramain's Saudi headquarters and its Oregon branch are indistinguishable alter egos.

The Honorable Frank Maas
January 9, 2013
Page 4

- This Court heard oral argument on Plaintiffs' motion to compel on February 8, 2010. The Court heard extensive discussion concerning whether Al Haramain's branches had the requisite legal relationship such that it should be treated as a single entity (alter egos). Exhibit G (Transcript of February 8, 2010 Hearing before Judge Frank Maas (hereinafter, "Tr. (Feb. 8, 2010) at __")) at 23-53. At that time, the Court reserved decision. *Id.* at 53.

- On October 28, 2010, the Court read its decision into the record, <u>finding that Al Haramain, including specifically the Oregon and Saudi Arabian branch offices, constituted a single entity with a duty to produce</u>. It stated:

  > *[T]o the extent that the argument is that the U.S. and Saudi entities are alter egos of one another – . . . that is correct based on each of the factors that was discussed during oral argument – . . . the two were indistinguishable from one another, which gives rise to a duty to produce.*

  *See* Exhibit A (Tr. (Oct. 28, 2010)) at 16-17 (emphasis added). As a consequence of the Court's determination that Al Haramain constituted a single indistinguishable entity, the Court directed Al Haramain to produce documents the plaintiffs had requested, regardless of whether the documents were in Al Haramain's offices in Oregon, Saudi Arabia, or elsewhere. *Id.* at 17-18. Moreover, the Court was clear that efforts to produce the requested documents as of October 28, 2010 were deficient.

  > *I agree with the plaintiffs that there has been no adequate showing that the Saudi entity has sought to obtain the documents but cannot.* There was an affidavit or declaration from Mr. Nelson and also from . . . Mr. al-But[h]i. But the two of them together . . . do[ ] not amount to an adequate showing that the Saudi foundation, even in the circumstance that persists today, necessarily cannot obtain documents.

  *Id.* at 18 (emphasis added). And lastly, the Court warned of the potential for sanctions for non-compliance, admonishing Al Haramain that, although the court was granting plaintiffs' motion, finding the Al Haramain offices to be alter egos, and ordering Al Haramain to produce documents from both offices, the Court "intend[ed] to leave for another day . . . the consequences of any nonproduction . . . ." *Id.* at 18.[3]

- On November 12, 2010, Al Haramain filed a Rule 72(a) Objection to Magistrate Judge Maas's October 28, 2010 decision (ECF No. 2384), which Plaintiffs opposed on November 29, 2010 (ECF 2389, 2390, 2391).

- During a teleconference on December 2, 2010, the Court repeated its decisions from October 28, 2010 setting a deadline and making clear that Al Haramain's Objection to the Court's October 28, 2010 Order did not obviate the defendant's obligation to comply with the order. In that teleconference the Court stated that Al Haramain's Rule 72 "objections don't stay an order [given by the Magistrate Judge]" and set a deadline of January 7, 2011

---

[3] The Court also considered and summarily overruled Al Haramain's boilerplate objections that Plaintiffs' discovery requests are overbroad and unduly burdensome. *See* Exhibit A (Tr. (Oct. 28, 2010)) at 17-18.

The Honorable Frank Maas
January 9, 2013
Page 5

for Al Haramain to comply with the Court's order to produce the requested documents. *See* Exhibit B (Tr. (Dec. 2, 2010)) at 16, 21-22.

- To give further clarity to its order, the Court issued a written order on December 10, 2010 re-confirming the January 7, 2011 deadline for Al Haramain to comply with the Court's order to produce documents responsive to Plaintiffs' requests. *See* Exhibit C (ECF No. 2393).

- In the absence of any post-order production from Al Haramain, on July 31, 2012, Plaintiffs attempted to re-proffer a sub-set of directed and narrowly-tailored requests for production to Al Haramain, affording Al Haramain another opportunity to produce at least a subset of the documents. *See* Exhibit D (Plaintiffs' Supplemental Requests for Production of Documents Directed to Defendants Al Haramain Islamic Foundation, Inc. and Pirouz Sedaghaty a/k/a Pete Seda).

- On September 4, 2012, Al Haramain objected and responded to Plaintiffs' Supplemental Requests. *See* Exhibit H (Defendant Al Haramain Islamic Foundation, Inc.'s Objections and Responses to Plaintiffs' Supplemental Requests for Production of Documents). Once again, Al Haramain ignored the October 28, 2010, December 2, 2010, and December 10, 2010 orders of this Court. Its responses are indicative of its persistent intransigence. Notwithstanding the Court's previously clear determination that the various offices of Al Haramain are indistinguishable alter egos of one another, Al Haramain nonetheless claims, that "the headquarters of Al Haramain in Saudi Arabia," "any other branch office of Al Haramain worldwide," and "the Qur'an Foundation" are separate entities whose records and documents are outside Al Haramain's possession, custody, or control. Exhibit H at 2.[4] Moreover, despite claiming that it made "a diligent and reasonable search and inquiry for the information requested," Al Haramain's responses give no indication of <u>any</u> effort to accord with this Court's directives. In fact, its responses indicate a failure to even <u>attempt</u> to locate even the most basic tax documents or to request its own documents seized by the United States government. *See, e.g.*, Exhibit H at Nos. 2, 4, 6, 8-11, and 13-14.

So, now, more than ten years since this litigation commenced, nearly nine years after discovery began, and nearly three years after this Court's unambiguous orders that Al Haramain was required to produce *all* documents (whether from the Oregon office or the Saudi headquarters), Al Haramain is <u>**still**</u> in violation of the Federal Rules of Civil Procedure and this Court's discovery orders. All of its objections relating to production of documents have been overruled. It has not produced all responsive documents or given any accounting for why it has defied this Court's directives. The question now is not whether Al Haramain should produce

---

[4] Should Al Haramain attempt to argue that the Court's alter ego determination does not extend to the Qur'an Foundation, even a simple review of Al Haramain's General Ledger illustrates the weak foundation that attempting to argue that the Qur'an Foundation falls outside the ambit of Al Haramain. For example, the Qur'an Foundation was operationally indistinct from Al Haramain. Al Haramain paid for its post office box, and internet and telephone service. Exhibit I (Al Haramain General Ledger indicating payment for such services used by both entities [BUR-PEC-047080 to -101]). Moreover, letterhead and correspondence from the Ashland branch show that Al Haramain and the Qur'an Foundation shared offices, email addresses, office managers, employees, and officers. *See, e.g.*, Exhibits J to M (AHIF-000804, AHIF-000805, AHIF-000157, and BUR-PEC-040894). *See also* discussion at pages 10-11.

The Honorable Frank Maas
January 9, 2013
Page 6

documents, but what sanctions are appropriate for its failure to participate in and produce documents during discovery.

### 3. Plaintiffs Have Met Their Burden to Impose Sanctions on Al Haramain

#### a. The Standard for Imposing Sanctions for Violation of Discovery Orders

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides in pertinent part:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further orders. They may include the following:
>
> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence;
>
> . . .
>
> (vi)    rendering a default judgment against the disobedient party.

Specifically, the sanction of default judgment is well within the discretion of the trial judge. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 640 (1976); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

The party seeking sanctions under Rule 37 bears the burden of showing that the opposing party failed to timely disclose information required by Rule 26. *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 20007) ("*September 11th Cases*"). To meet this burden, the moving party must show: (1) that the opposing party had an obligation to timely produce what was requested; (2) that the opposing party had 'a culpable state of mind'' and (3) that the missing evidence is 'relevant' to the party's claim or defense. *Id.* at 125 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). To satisfy the first element, the moving party must show that the respondent breached its obligations, either as set forth in Fed. R. Civ. P. 26, or as provided in court orders regulating discovery. *Id.* The "culpable state of mind" element is satisfied by a showing that "a party has breached a discovery obligation . . . through bad faith or gross negligence, [or] ordinary negligence." *Id.* (quoting *Residential Funding*, 306 F.3d at 113); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (Rule 37(c)(1) does not require a showing of bad faith). With respect to the third element, a finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced or destroyed evidence as a matter of law; a finding that a party breached its obligations through gross negligence is "frequently" sufficient. *Id.*

While strong sanctions are imposed only for serious or repetitive violations of discovery orders, "courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979); *see also United States Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954,

The Honorable Frank Maas
January 9, 2013
Page 7

954-55 (2d Cir. 1983) (per curiam) (upholding sanction of default judgment where defendant failed to comply with discovery order despite having had proper notice).

### b. Al Haramain Had An Obligation to Produce Based on Multiple Court Orders and Failed to Meet That Obligation.

Before determining whether sanctions are warranted, the Court should determine which orders were violated. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991). The record here shows that Al Haramain has disobeyed at least three discovery orders from this Court obligating it to produce documents responsive to plaintiffs' document requests. The orders unambiguously obligated Al Haramain to produce documents regardless of from which Al Haramain office the documents may have been derived. *See* Exhibit A (Tr. (Oct. 28, 2010)) at 17-18 (ordering production from both the Oregon and Saudi Arabian offices of Al Haramain); *see* Exhibit B (Tr. (Dec. 2, 2010)) at 16, 22 (setting deadline for production and re-confirming that Al Haramain's obligation to produce from both the Oregon and Saudi Arabian offices was not stayed by Al Haramain's Objection to the October 28 Order); Exhibit C (ECF No. 2393) (re-confirming the deadline for Al Haramain's production from both the Oregon and Saudi Arabian branch offices). Under the circumstances, where Al Haramain was directed on at least three separate occasions to produce its documents, it has the duty to produce documents responsive to Plaintiffs' requests—and Al Haramain violated that duty.

If Al Haramain tries, it should not be allowed to re-litigate its now-rejected argument that it is not obligated to produce documents because the Oregon branch office of Al Haramain is a separate entity from its Saudi Arabian headquarters. This Court's finding that Al Haramain is a single, indistinguishable entity – alter egos – established the existence of Al Haramain's duty to produce, regardless of which Al Haramain office housed the documents. *See Cacace v. Meyer Mktg. (Macau Commer. Offshore) Co.*, No. 06 Civ. 2938 (KMK) (GAY), 2011 U.S. Dist. LEXIS 50753, at *10 (S.D.N.Y. May 12, 2011) ("a corporate party is not obligated to obtain discovery materials from employees of a non-party affiliate company *unless said affiliate is an alter-ego of the litigating entity . . . .*") (emphasis added); *cf. Perini America Inc. v. Paper Converting Machine Co.*, 559 F. Supp. 552 (E.D. Wis. 1983); *Alimenta (U.S.A.) v. Anheuser-Busch Co.*, 99 F.R.D. 309 (N.D. Ga. 1983).

Here, Al Haramain is a single, indistinguishable entity – specifically, the Oregon office and the Saudi Arabian headquarters are alter egos of one another. This Court recognized the necessary implication of establishing Al Haramain as a single entity and pointed out to Al Haramain that its separate-corporation-fiction would not shield it from the obligation to protect, search for, and produce responsive documents. In response to Al Haramain's position that "[i]t's not my responsibility to issue document preservation letters to codefendants," this Court observed:

> Well, but that really is the issue. [Plaintiffs' say] going through these 15 factors that 11 weigh in his favor and most of the others are simply inapplicable. If you use those factors or some other factors and [they are] right I guess both as a matter of law and fact the Saudi and U.S. entities should be viewed as a single organization, then what you just said in terms of it not being your obligation may be wrong. Right?

*See* Exhibit G (Tr. (Feb. 8, 2010)) at 42-43.

The Honorable Frank Maas
January 9, 2013
Page 8

In fact, even Al Haramain has acknowledged that the Court's October 28 Order obligated it to produce documents regardless of in which Al Haramain office the documents had been located. In its Objection to the October 28 Order, Al Haramain acknowledged that, pursuant to the Court's October 28 Order, it was obligated to produce documents from Al Haramain's Saudi headquarters. Defendant Al Haramain Islamic Foundation, Inc. (USA) Rule 72 Objections to October 28, 2010 Ruling, at 1 (November 12, 2010, ECF No. 2384) (hereinafter "Def's Rule 72 Objections at __") ("That ruling required [Al Haramain's Oregon office] to produce documents in the possession, custody, or control of . . . [Al Haramain's Saudi headquarters].). Importantly, the Court stated on the record *after* Al Haramain filed its Rule 72 objections that "[Al Haramain's Rule 72] objection [do not] stay an order [given by the Magistrate Judge] . . . ." *See* Exhibit B (Tr. (Dec. 2, 2010)) at 16.

Thus, notwithstanding Al Haramain's attempt to ignore this Court's order establishing that it is a single, indistinguishable alter ego entity, Al Haramain's obligation to produce is unambiguous. Al Haramain has a duty to collect, protect, and produce *all* responsive documents, including those documents from Al Haramain's other alter ego branch offices. And since the issuance of those orders overruling all of its objections, Al Haramain has not produced anything to comply with its obligation. It has not provided additional or supplemental responses, objections, or privilege logs pertaining to Plaintiffs' outstanding discovery requests. It has not provided any explanation for its continued defiance concerning this Court's directives. To the contrary, as recently as September 4, 2012, Al Haramain continues to use the separate-entity-fiction as grounds for not participating in discovery in defiance of this Court's alter ego determination. *See generally*, Exhibit H (Responses and Objections to Supplemental Requests for Production). As such, it is indisputable that it has violated the Court's multiple discovery orders and sanctions are warranted for its indefensible position.

### c.  Al Haramain's Culpable State of Mind

As discussed in greater detail in sections below, the evidence indicates that Al Haramain has acted intentionally and in bad faith. *See* Sections 4.b. ("Willfullness") and 4.d. ("History and Duration of Noncompliance"), below, summarizing the longstanding efforts of Al Haramain to avoid its preservation and production obligations, including specific examples of spoliation, unresponsiveness and flight from the jurisdiction of its officers, and failure to produce documents acknowledged elsewhere to exist.

### d.  The Relevance of Plaintiffs' Requested Documents Is Unchallenged

Under the circumstances here, where Al Haramain has consistently refused to produce documents from any other office, despite being ordered to do so, and has demonstrated a complete lack of any effort to obtain the documents of its Oregon office, Al Haramain has exhibited bad faith sufficient to establish the relevance of the unproduced evidence as a matter of law. *See September 11th Cases*, 243 F.R.D. at 125.

But even in the absence of bad faith, the requested information is nonetheless relevant and discoverable. First, throughout the decade-long proceedings, with only two very limited

The Honorable Frank Maas
January 9, 2013
Page 9

exceptions, Al Haramain has *never* challenged the relevance of Plaintiffs' requested documents.[5] Moreover, the categories of discovery sought directly from Al Haramain are essential to plaintiffs' case. Because those who provide material support for terrorism rarely make themselves available or admit the nature of their actions, documentary evidence is *critical* in this type of litigation. *See Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 203, n. 19 (E.D.N.Y. 2010) ("In the absence of records from other accounts . . . plaintiffs face tremendous obstacles in proving [their case].") ("*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009), demonstrates both the difficulties ATS (and ATA) plaintiffs face in proving intent, and the importance of full document production in allowing plaintiffs to make their case."). In pursuit of that aim, Plaintiffs' requests for production were highly specific to the alleged claims against Al Haramain. Lastly, as has become abundantly clear from the circumstances peculiar to Al Haramain, there are no reasonable alternative means for obtaining the discovery sought. As has been made clear to the Court by sundry sources, neither the individuals in the Saudi headquarters nor the individual officers of the Oregon branch are demonstrating any willingness to provide any documents responsive to Plaintiffs' requests. The Saudi Arabian office is alleged to have closed (albeit, **after** Al Haramain's obligations to preserve had attached); defendant Sedaghaty has refused to produce any documents in his possession; and defendants Al-Aqeel and Al-Buthe were dismissed and reside in Saudi Arabia.

### 4. Entry of Default Judgment Against Al Haramain Is Warranted Given Its Refusal to Participate In Discovery, Spoliation of Evidence, and Continued Refusal to Obey This Court's Discovery Orders

#### a. The Standard to Enter Default Judgment for Discovery Abuse

"Severe sanctions are justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel*, 951 F.2d at 1367. In considering whether to impose the sanction of a default judgment for discovery abuse, the Second Circuit has recognized the following factors as useful in evaluating a district court's exercise of discretion to dismiss an action under Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-303 (2d Cir. 2009) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)). In addition, the Second Circuit has recognized that "dismissal pursuant to Rule 37 is appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction.'" *Agiwal*, 555 F.3d at 303 (quoting *Nat'l Hockey League*, 427 U.S. at 643).

---

[5] *See, e.g.,* Defendant Al Haramain Islamic Foundation, Inc.'s Responses to Plaintiffs' Request For Production of Documents, dated April 26, 2004; Defendant Al Haramain Islamic Foundation, Inc.'s Second Supplemental Responses to Plaintiffs' Requests For Production of Documents, dated June 3, 2004; Defendant Al Haramain Islamic Foundation, Inc.'s Supplemental Responses to Burnett Plaintiffs' Requests for Production of Documents, dated October 28, 2004; and Exhibit H, Defendant Al Haramain Islamic Foundation, Inc.'s Objections and Responses to Plaintiffs' Supplemental Requests for Production of Documents, dated September 4, 2012. The two limited exceptions are Al Haramain's "relevance" objections to Requests 19 and 31, which Plaintiffs dispute.

The Honorable Frank Maas
January 9, 2013
Page 10

### b.  Willfulness

Context is important.  As has already been determined, the Al Haramain branches are alter egos.  The individuals responsible for Al Haramain's incorporation, establishment, organization, management, and execution, certainly in Saudi Arabia and Oregon, and perhaps in other locations around the world, are the same people.  For example,

> [Al Haramain's Oregon branch] was directly controlled by the Saudi headquarters of Al Haramain and its Saudi Director, [Al-Aqeel], who maintained tight control over the affiliated offices from Riyadh.   [Al-Aqeel] described the directors of Al Haramain's branches as employees who follow the direction of the main office with regards to hiring workers at the offices and making any decisions on cooperation with any party.

*Al Haramain Islamic Foundation, Inc. v. United States Dep't of the Treasury*, Case. No. 10-35032, Ninth Circuit Court of Appeals, Redacted Unclassified Brief for Appellees, Sept. 29, 2010, [ECF 24] at 14 (internal citations and quotations omitted); *see also* Les Zaitz, *Saudi Charity in Ashland On Terrorism 'Watch List'*, The Oregonian, Nov. 9, 2003, A01, *available at* 2003 WL 3836027 (Al-Aqeel described the directors of Al Haramain's branches as "employees who follow the direction of the main office with regards to hiring workers at their offices and making any decisions on cooperation with any party." ).

Compounding the influence of these individuals – and by extension Al Haramain – is the fact that the coterie of people constituting Al Haramain is also indistinguishable from other entities, for example, The Qur'an Foundation.   The overlap between Al Haramain and the Qur'an Foundation was extensive.  At the very least, Pirouz Sedaghaty and Bilal Abdul-Kareem directed and managed the operations of both entities.[6]  And because of and in support of that overlap, Al Haramain and the Qur'an Foundation operated out of the same offices,[7] shared telephone numbers,[8] used the same computers, email accounts and letterhead (see examples of using Qur'an Foundation email account for Al Haramain business and on Al Haramain letterhead[9]), undertook the same projects, and Al Haramain routinely wrote checks to pay for basic communications and

---

[6] *See, e.g.,* Exhibit L (AHIF000157) (Communication from Abdul-Kareem as representative of the Qur'an Foundation); Exhibit K (AHIF000805) (Communication from Abdul-Kareem as Al Haramain office manager); Exhibit M (BUR-PEC-040894) (statement of Purpose, showing Sedaghaty and Abdul-Kareem both signing for the Qur'an Foundation).

[7] Declaration of Robert T. Haefele, dated November 30, 2010, in support of plaintiffs' motion to compel Al Haramain to produce documents (hereinafter, "Haefele Nov. 2010 Decl.") at Ex. 13 (Oregon Secretary of State Business Entity Data for Al Haramain Foundation, Registry No. 600623-88) and Haefele Nov. 2010 Decl. at Ex. 45 (Oregon Secretary of State Business Entity Data for Qur'an Foundation, Registry No. 170551-87, both available from http://egov.sos.state.or.us/br/pkg_web_name_ srch_inq.login).

[8] *See, e.g., id.*

[9] *See, e.g.,* Haefele Nov. 2010 Decl. at Ex. 47 (AHIF000038) (E-mail from Al Haramain using addresses "haramain@alharamain.org" and "alharamain@qf.org"); Haefele Nov. 2010 Decl. at Ex. 48 (AHIF000824) (Al Haramain business card using e-mail addresses "a@qf.org" and "haramain@alharamain.org"); Haefele Nov. 2010 Decl. at Ex. 49 (AHIF000851) (e-mail from Al Haramain using e-mail addresses "alharamain@qf.org," a@qf.org, and haramain@alharamain.org").

The Honorable Frank Maas
January 9, 2013
Page 11

---

mail operations.[10]  As a result, it is inconceivable that Al Haramain, a singular entity, and its contingent entities and individuals did not have access to all relevant information for Al Haramain and the Qur'an Foundation during the period of time when they were responsible for protecting and producing that information, which began in August 2002.

In light of that context, the conduct of Al Haramain and its constituent entities and individuals can be explained only by intentional, willful, and culpable behavior.  First, the obvious, brazen determination of Al Haramain to produce *nothing* from its Saudi headquarters, despite the entity's longstanding obligation to preserve responsive documents and the Court's multiple orders directing the entity to produce, lacks any explanation other than willfulness.  Three additional illustrations, focusing principally on the Oregon branch, are also particularly damning:  (1) the spoliation of evidence present at Al Haramain's Oregon branch while Al Haramain was obligated to preserve that evidence for use in this litigation, (2) the departure from the United States to Saudi Arabia of individuals primarily responsible for the operation of Al Haramain and its projects along with information, documents, and evidence in their individual control, and (3) the failure to provide the Plaintiffs with documents made available to Al Haramain in Saudi Arabia.

i.   **Spoliation**

While the scarcity of production by Al Haramain has made it difficult to assess the full picture of the treatment of evidence during the period commencing August 12, 2002, the record in *United States v. Pirouz Sedaghaty*, Case No. 05-60008-02 (MRH) (D. Or.), evidences spoliation of a substantial amount of relevant information from Al Haramain's Oregon branch office, including entire Microsoft Outlook mailboxes containing around 25,000 emails and many thousands of other records.

On February 18, 2004, the United States government executed a search warrant on Al Haramain's Oregon branch office, located at 3800 South Highway 99, Ashland, Oregon.  Exhibit N (Relevant Excerpts of Transcript of Trial Proceedings Before the Honorable Michael R. Hogan, United States District Court Judge, and a Jury (Aug. 31, 2010) (hereinafter "Sedaghaty Trial. Tr., at __.") at 6:2-10 (testimony of Linda Czemerys).  During the execution of the search warrant, the government seized documents, financial records, books, videotapes, and computers as authorized by the search warrant.  *Id.* at 5:13-33:10 (full testimony of Linda Czemerys discussing the execution of the search warrant, the layout of the premises, and the items investigated and seized).  As part of the execution of the search warrant, "the United States government obtained eight computer hard drives from the premises of Al Haramain Ashland in Ashland, Oregon."  *Id.* at 37:23-38:1 (stipulation of the parties during the testimony of the forensic examiner, Jeremy William Christianson, regarding the number of computer hard drives seized).  Of those eight hard drives, Mr. Christianson was asked to analyze five of them, *id.* at 39:8-9, and "conduct a recovery for documents, financial data files QuickBooks and email."  *Id.* at 39:20-22.  He was asked to do that because the field agents were having difficulty identifying any email on the hard drives.  *Id.* at 40:4-10 ("They were having trouble locating − I believe it was any e-mail at all.").  The field agents were having difficulty with good reason.   All email on the hard drives had been intentionally deleted and was recoverable only through the government's intensive remediation of

---

[10] *See, e.g.*, Exhibit I (Al Haramain General Ledger) (specifically entries for United States Post Office, CDS Internet, AT&T Wireless, and Qwest).

The Honorable Frank Maas
January 9, 2013
Page 12

the "residual areas of the hard drive." *Id.* at 41:16-19; *see generally id.* at 41:12-95:16.  In what Mr. Christianson described as "one of the largest [projects] he's worked on," *id.* at 43:12; *see also id.* at 70:10-16 (stating that the total number of emails recovered was in the ballpark of 25,000), he recovered entire Microsoft Outlook e-mail mailboxes – as differentiated from individual emails – from the deleted hard drives. *See, e.g., id.* at 44:4-16; *see also id.* at 93:21-25 (finding it significant that the whole system of email was gone and not just individual emails).  However, he did note that he was unable to recover all of the information that was deleted from the hard drive.  He stated that it was likely that some of the information was permanently deleted because it had been overwritten.  *Id.* at 47:6-12 ("likely scenario is that they were partially overwritten" and the information was "gone forever.").

So, in sum, the testimony of the forensic examiner strongly indicates that massive amounts of relevant documents and potential evidence on computers at Al Haramain's Oregon branch during the period of time when it was obligated to preserve that information for litigation was intentionally deleted or destroyed.  Such conduct meets the requirements for sanctions for spoliation, which on its own warrants entry of default judgment.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Afr. v. Odeh*, 552 F.3d 93, 148 (2d Cir. 2008). The elements a movant must show for spoliation sanctions are the same as those outlined above to establish a discovery violation warranting sanctions -- namely (1) that the opposing party had an obligation to preserve the evidence at the time it was destroyed; (2) that the records were destroyed "with the culpable state of mind;" and (3) that the destroyed evidence was relevant to the party's claim or defense. *Pirrello v. Gateway Marina*, No. CV 2008-1798 (KAM)(MDG), 2011 U.S. Dist. LEXIS 113632, at *14-15 (E.D.N.Y. Sept. 30, 2011) (quoting *Residential Funding*, 306 F.3d at 107).  "Destruction of potentially relevant evidence obviously occurs along a continuum of fault ranging from innocence through the degrees of negligence to intentionality.  The resulting penalties vary correspondingly." *Id.* (citing *Townes v. Cove Haven, Inc.*, No. 00 CV 5603 (RCC), 2003 U.S. Dist. LEXIS 21640, at *3 (S.D.N.Y. Dec. 2, 2003) and *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988).

As discussed above, Al Haramain had an obligation to preserve all relevant documents within its care, custody, or control. *See also Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 341 (D. Conn. 2009) (stating that the party bore the responsibility for the failure to preserve evidence given the close ties between it and related entities).

The testimony of the forensic examiner indicates that the destruction of the evidence was conducted with a state of mind at least approaching intentional.  But the requisite state of mind for sanctions for spoliation does not require intent.  "Although culpability may be found where a party intentionally destroyed evidence or acted in bad faith, the requisite state of mind may sometimes be satisfied by a showing of ordinary negligence." *Pirrello*, 2011 U.S. Dist. LEXIS 113632, at *27 (citing *Residential Funding*, 306 F.3d at 101).  Furthermore, "[s]ince the failure to produce evidence occurs 'along a continuum of fault,' the determination of the degree of culpability required to support a finding of spoliation must be made on a case-by-case basis. Such an approach affords trial judges the 'leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing – a remedial purpose that is best adjusted according to the

The Honorable Frank Maas
January 9, 2013
Page 13

_____

facts and evidentiary posture of each case." *Id.* (citing *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). Here, among other factors, the sheer scale of the deletion particularly in the absence of any other proposed plausible explanation, indicates intentionality or recklessness far more than ordinary negligence or innocence.

Lastly, for spoliation sanctions to be warranted, the destroyed evidence must be relevant. But as indicated previously, where, as is evidenced here, a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence to conclude that the missing evidence was unfavorable to that party. Similarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party. *Pirrello,* 2011 U.S. Dist. LEXIS 113632, at *30-31 (citing *Residential Funding,* 306 F.3d at 109) (quotations omitted).

    **ii.   Flight and Failure of Individuals Primarily Responsible for the Operation of Al Haramain**

Additionally, the facts indicate that notice of obligation to protect and preserve relevant information was matched by the opportunity to do so. And failure in light of opportunity to meet the obligation indicates bad faith. From the meager information produced and Plaintiffs' own independent investigation, it is evident that senior members of Al Haramain, notably Al-Aqeel, Sedaghaty, and Al-Buthe, had notice of their obligation to protect relevant information, but did not take necessary or reasonable steps to protect and preserve relevant information after Plaintiffs filed their complaint on August 15, 2002:

- Aqeel Al-Aqeel, who was the General Director of Al Haramain and based in Riyadh, had the opportunity, power, and obligation to protect and preserve relevant documents on behalf of Al Haramain and on his own behalf; but he did not do so. Although Al-Aqeel allegedly ceased to be formally associated with Al Haramain as of January 2004, as a current and then former officer of Al Haramain, and as a defendant in the litigation, he was nonetheless obligated to preserve all relevant evidence on his own behalf and on behalf of the entity both before and since that date.

- Pirouz Sedaghaty, who had daily responsibilities for Al Haramain's Oregon branch and who fled Oregon in February 2003 and operated out of Riyadh until at least August 2003, had access to relevant information until at least February 18, 2004 (the date of the FBI seizure of property at the Ashland, Oregon branch) and then again after the FBI returned the seized documents to him. Like Al-Aqeel, Sedaghaty had the opportunity, power, and obligation to protect and preserve relevant documents on behalf of Al Haramain and on his own behalf. He did not do so. Instead, without ensuring the preservation of any of the requested discovery, Mr. Sedaghaty fled the United States for Saudi Arabia. Moreover, while in Saudi Arabia, he took no timely actions to secure any of the requested discovery.

- Soliman Al-Buthe, who was based in Riyadh and was on both Al Haramain's IT committee and Americas committee, had access to relevant information from both the Oregon branch and the Saudi headquarters until, at least, September 2003. Again, he had

The Honorable Frank Maas
January 9, 2013
Page 14

the opportunity, power, and obligation to protect and preserve relevant documents on behalf of Al Haramain and on his own behalf.  He did not do so.

### iii.    The Failure to Provide Documents Made Available to Al-Haramain in Saudi Arabia.

Statements by Thomas Nelson, a board member of Al Haramain's Oregon branch and attorney for the entity, further indicate Al Haramain's lack of candor in producing relevant documents made available in Saudi Arabia.  In declarations filed both in this action and in an Oregon Federal Court, Mr. Nelson has stated that he has made numerous trips to Saudi Arabia to obtain documents from Al Haramain's Saudi headquarters, but that he had been unsuccessful in obtaining any such documents.  Furthermore, Mr. Nelson stated that had he known that Al-Buthe and the Oregon office were under threat of designation on claims that they supported specially designated global terrorists, he "would have attempted to obtain" and "would likely have been able to obtain substantial records . . . ."[11]  Exhibit O (Declaration of Thomas H. Nelson, Feb. 13, 2009, *Al Haramain Islamic Foundation, Inc. v. U.S. Dep't of Treasury*, Case No. 3:07-CV-1155-KI (D. Or.)) at paras. 6, 7; *see also* Exhibit P (Declaration of Thomas H. Nelson, Dec. 9, 2009, *In re: Terrorist Attacks on September 11, 2001*, Case No. 1:03-md-01570-GBD-FM (S.D.N.Y.)) [hereinafter "Nelson Declarations"]).  But, in a letter he sent on April 25, 2011, to Commissioners of the City of Portland, wherein Mr. Nelson urges the Portland City Police Bureau not to cooperate with the U.S. Department of Justice Joint Terrorism Task Force, Mr. Nelson indicates that he had obtained Al Haramain documents during his trips to Saudi Arabia. He states: "During a recent trip to Saudi Arabia I was able to obtain and inspect some of the unused [Al Haramain] travel vouchers [dated March 1999] that were the source of the purported payment to the mujahedeen."  Exhibit Q (Letter from Thomas H. Nelson to Commissioners of the City of Portland, dated April 25, 2011) at 4.  Neither those documents, nor any other documents reviewed by Mr. Nelson during his trips to Saudi Arabia, have been produced to plaintiffs despite being the subject of outstanding discovery requests and multiple court orders.

These examples make clear that Al Haramain and its respective officers, directors, employees, attorneys, and agents have acted in bad faith or with gross negligence in respect to discovery obligations generally and the orders of this Court.  As such, a finding of relevance is justified on that ground alone.  Notwithstanding such a finding, the breadth of the evidence destroyed and the frequency with which recovered documents from the hard drives were relevant to Pirouz Sedaghaty's criminal trial strongly indicates that the missing documents would have been unfavorable to Al Haramain.

### c.    Inefficacy of Lesser Sanctions

Lesser sanctions will allow Al Haramain to benefit from its intransigence, exacerbate the prejudice to plaintiffs, and encourage other defendants similarly to avoid their discovery obligations.  Rule 37(b)(2)(A) contemplates seven non-exclusive sanctions for failure to comply

---

[11] Again, at the very least, Mr. Nelson, a lawyer and board member of Al Haramain's Oregon branch, should have known that this civil action had been filed and that Al Haramain was already obligated to search for, gather, and inspect relevant documents.  His comments candidly acknowledge that no efforts were previously made, but had such timely efforts been made, documents likely would have been obtained.

The Honorable Frank Maas
January 9, 2013
Page 15

with a court order. Only two are relevant here and represent lesser sanctions than default. First, Rule 37(b)(2)(A)(i) states that a court may "direct[] that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Courts also resort to adverse inference instructions to juries where it determines that a deemed finding is not warranted in spite of deleterious conduct by the party to be sanctioned. Second, Rule 37(b)(2)(A)(ii) states that a court may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence."

Here, a preclusion order, adverse inferences, and even deemed findings are each insufficient to place Plaintiffs in a position they would have been in had Al Haramain preserved, protected, and produced relevant responsive documents. The fact is that, in this type of litigation, involving material support and assistance to terrorist organizations, documentary evidence is essential to proving the case. Defendants have greater access to their documents and information than plaintiffs do. The general obligation to preserve, protect, and produce is only exacerbated by the imbalance of access. In that light, Al Haramain's persistent non-participation and obstruction renders any available lesser sanction unable to remedy their malfeasances. The circumstances particular to Al Haramain are even further affected by the fact that Mr. Sedaghaty, the person responsible for the day-to-day activities of Al-Haramain's Oregon branch and a defendant in this litigation in his own right, has likewise staunchly refused to abide by this Court's orders directing him to produce documents. And, once again, as this Court has been repeatedly advised, the likelihood of documents forthcoming directly from the Saudi headquarters is minimal, given the insistence that that office is, allegedly, closed. *See, e.g.*, Exhibits O and P (Nelson Declarations). In short, the prejudicial effect of Al Haramain's discovery abuses renders default judgment the *only* appropriate sanction in this action.

### d. History and Duration of Noncompliance

Al Haramain's history of non-compliance began at the filing of this action and has continued to-date. After filing motions to dismiss, which were denied, Al Haramain has failed to defend itself. Most notably Al Haramain has not participated in discovery at all beyond incomplete, perfunctory document production by its Oregon branch office. This has included disobeying multiple orders of this court, failing to preserve evidence, and misrepresenting *di minimus* production as complete production of all documents that are in its custody or control.

### i. Failure to Participate and Continued Intransigence Despite Court Orders

When properly considered as a single, indistinguishable, worldwide entity, Al Haramain has, with limited and ultimately hollow exception, failed to defend itself since the Court denied its motions to dismiss.[12] Despite appearances having been made by separate counsel,[13] Al Haramain

---

[12] Attempting to hide behind a now-overruled separate-corporation-fiction, in those cases where Al Haramain has appeared, the Saudi and Oregon branches have appeared separately through separate counsel. In some cases, the Saudi branch has failed to appear entirely and remains in default. In *Burnett*, for example, the two branches filed separate motions to dismiss through separate counsel. Since the motions were denied, counsel who appeared for the Saudi branch have essentially disappeared from the litigation, leaving Al Haramain in default in all of the cases. Formal defaults have been entered against Al Haramain in several of the actions for its Saudi headquarters' failure to defend.

The Honorable Frank Maas
January 9, 2013
Page 16

has never coherently defended itself, creating inefficiency for these proceedings and prejudice to the Plaintiffs. Under the circumstances, the facts contradict any proposed argument that Al Haramain, as a whole, including Al Haramain's headquarters, directors, officers, and managers, has participated in this litigation since its motions to dismiss were denied. Additionally, as has been a recurrent theme in this case, to the extent that it can be said that Al Haramain's Oregon branch has participated, it has done so only within the narrow confines of asserting a separate-corporation-fiction that has been rejected by this Court. Hiding behind that separate-corporation-fiction, Al Haramain has avoided discovery through disingenuous, boilerplate objections, pleas of "I'm not responsible" for Al Haramain as a single entity, and, as will be discussed below, representation that its minimal, selective production constituted complete and good faith participation in discovery. Yet, even within that fiction, Al Haramain has not produced all documents from its Oregon branch. Furthermore, as noted above, this non-defense has not wavered in the face of multiple court orders requiring complete participation and production and continues to-date.

### ii.  Failure to Preserve Evidence

Beyond failing to actively participate in discovery and ignoring multiple court orders, the record indicates that neither Al Haramain nor any of its lawyers have met their respective obligations to protect relevant information and prevent the disappearance, destruction, or disappearance overseas of potential evidence.

The obligation to preserve all relevant evidence is clear, broad, and begins the moment a party *anticipates* being a party to a legal proceeding. "[T]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary.").

In this action, Al Haramain's obligation to preserve all relevant evidence began *at the latest* on August 15, 2002 when the initial complaint was filed in *Burnett, et al. v. Al-Baraka Invest. & Dev. Co., et al.*, which specifically named Al Haramain – and by extension its officers, directors, employees, and agents – as a defendant. Complaint, *Burnett, et al. v. Al-Baraka Invest. & Dev. Co., et al.* (02-cv-01616, D.C.D.C.), *Burnett* DC ECF No. 1. This obligation extended to all relevant evidence – documentary or otherwise – that *might* be useful in the litigation – and certainly would have applied unambiguously to any documents sought thereafter by Plaintiffs' discovery requests. Nothing in the record indicates that Al Haramain observed this obligation or affirmatively took **any** necessary steps pursuant to its responsibilities. Indeed, the spoliation at the Oregon branch office makes its failure clear.

Contrary to its obligation to preserve, Al Haramain has sought to sidestep its obligations and evade them entirely. Notwithstanding substantial evidence, and this Court's finding, that Al

---

[13] *See* Appearances of Michael Hadeed and Ashraf Wajih Nubani for the Al Haramain headquarters in Saudi Arabia, Nov. 27, 2002 and Apr. 22, 2004 [*Burnett* Docket, ECF No. 30 and MDL 1570 Docket, ECF No. 119]; Appearance by Lynne Bernabei for Al Haramain's Oregon branch office, Jan. 3, 2003 [*Burnett* Docket, ECF No. 42, MDL Docket, ECF No. 21, Mar. 11, 2004].

The Honorable Frank Maas
January 9, 2013
Page 17

Haramain is a single, worldwide entity dominated by its headquarters in Saudi Arabia, centrally funded, and managed by a coterie of individuals who overlap amongst the various branch offices, Al Haramain has consistently contended that, because its Oregon branch is technically a separate legal entity from other Al Haramain offices, its obligation to preserve and produce is entirely separate from the other branch offices. *See* Exhibit G (Tr. (Feb. 8, 2010)) at 42. But that argument ignores that this Court has already ruled that Al Haramain is one indistinguishable entity – a determination that Al Haramain should not be free to re-litigate.

But *even if* the Oregon branch were to be considered as a distinct corporate entity from its Saudi headquarters, Al Haramain nonetheless misunderstands and misstates its obligations, and has fallen short of them. "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, ***he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.***" *Pirrello*, 2011 U.S. Dist. LEXIS 113632, at *15-16 (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Either way Al Haramain had a responsibility to provide plaintiffs with notice of the location of relevant or responsive documents or evidence and participate in the prevention of possible destruction. In this light, Al Haramain's actions have been deficient, non-compliant with the Federal Rules of Civil Procedure, and prejudicial to the plaintiffs.

Sanctions for spoliation are appropriate where the party denied discovery by spoliation produces some evidence suggesting that a document or documents relevant to its claim should have been included among the withheld or destroyed files. *See Linde*, 269 F.R.D. at 195-196 (citing *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998); 2 Wigmore, Evidence in Trials at Common Law § 291, at 228). Here, in addition to all of the data sought to be deleted from the hard drives of computers at the Al Haramain Oregon office, plaintiffs are aware of the existence of numerous additional documents that exist and that should have been produced, including notably, but not limited to:  (1) general ledgers (Quickbooks) prepared by one of Al Haramain's accountants, Tom Wilcox, for the years 1998 to 2000, *see, e.g.*, Exhibits R and S (Al Haramain's filed tax returns [BUR-PEC-072894 to -908] (indicating that Mr. Wilcox prepared tax returns presumably relying on additional supporting documentation) and AHIF-000282 to -293 (Al-Haramain produced  draft of the 1999 general ledger that is incomplete and missing important notations; they have not produced any complete ledgers or backup accounting detail, including bank statements, checks, invoices, etc.)); (2) audits undertaken by the government of the Kingdom of Saudi Arabia of all Al Haramain branches worldwide and some Al Haramain officers after Al Haramain headquarters in Riyadh was shut down, *see, e.g.*, Exhibit T (Adel Al-Jubeir, *Adel Al-Jubeir Hold a News Conference on a Major Development in the War on Terrorism* (June 2, 2004)) at 2-3; (3) documentation of account transactions, including copies of checks written on all Al Haramain accounts or cash disbursements from Al Haramain accounts; (4) employee records and time sheets, specifically for Al Haramain headquarters in Riyadh and the branch office in Oregon, Al Haramain has produced only a very small sub-set of records relating to one month in 1999, *see, e.g.*, Exhibits I (Al Haramain General Ledger) and U (AHIF-000040 to -042); and (5) meeting minutes of the Al Haramain Board of Directors and / or committee meetings.

The Honorable Frank Maas
January 9, 2013
Page 18

### iii.   Misrepresentation of Partial Production as Complete Production

Any argument that Al Haramain's Oregon branch participated in and complied fully with discovery is not supported by the facts.  The actions – or lack thereof – of Al Haramain during discovery show Al Haramain's pattern of minimal participation in discovery.

As an initial matter, it is facially improbable that Al Haramain's productions represent the entirety of material responsive to Plaintiffs' requests.  To-date Al Haramain has produced 5,694 pages of documents and Al Haramain has consistently represented that these productions represent all responsive documents that are in its possession, custody, or control. [14]  See Exhibit H (Responses and Objections to Supplemental Requests for Production) at 2.  Most all of the production accompanying the responses at Exhibit H are little more than duplication of pleadings off of public dockets in cases to which Al Haramain is a party.  So the number of documents produced to Plaintiffs resulting from a genuine investigation, search, and identification of relevant and responsive documents is far smaller still.  The paucity of this production is rendered clear by comparison to the number of pages of bank and corporate records produced from the Oregon office alone in *United States v. Pirouz Sedaghaty*.  In that one criminal case over 43,000 pages of records were produced.  And that number of pages does not include the huge volume of emails eventually recovered from the hard drives that were at the Al Haramain office in Oregon – or those destroyed records whose existence was identified by the forensic examiner in that case.  The only reasonable conclusion is that the claim that 5,694 documents represent all responsive documents is preposterous in comparison to the thousands of pages of documents that should have been produced from the Oregon office alone.

This improbability is given further clarity by plaintiffs' due diligence comparison of the exhibits offered by both longtime Al Haramain officer Pirouz Sedaghaty and the United States in *United States v. Sedaghaty* with documents received in production from Al Haramain in this civil action.  That comparison illustrates that documents clearly in Al Haramain's care, custody, and control at least for some period after August 15, 2002 were not preserved or produced as required under the federal rules.  For example, these documents include a Signed Statement of Purpose and Declaration of Cooperation between Qur'an Foundation and Al Haramain Islamic Foundation, Inc. (Exhibit M at BUR-PEC-040894), and extensive numbers of emails and photographs between directors and employees of Al Haramain and between directors and employees of Al Haramain and other relevant entities.  *See, e.g.,* Exhibit V (*United States v. Pirouz Sedaghaty*, Case No. 6:05-cr-60008-HO, Clerk's List of Witnesses and Experts) (listing those exhibits pre-admitted by defendant Pirouz Sedaghaty in *United States v. Sedaghaty*) and Exhibit W (*United States v. Pirouz Sedaghaty*, Case No. 6:05-cr-60008-HO, Defendant's Fourth Amended Potential Exhibit List) (notably this list illustrates that documents in the possession of Al Haramain – not just the government – were not produced to plaintiffs in this action).

In response to Plaintiffs' Supplemental Requests for Production specifically addressing these materials, Al Haramain responded that "AHIF has no responsive documents, as the government did not 'produce' these documents to AHIF."  Exhibit H at 4 (Response to Request No. 2).  This response is misleading for multiple reasons.  First, the documents exist and were indisputably in Al Haramain's Oregon office at the time the plaintiffs' discovery was served (at

---

[14] Haefele Decl., paragraph 23.

The Honorable Frank Maas
January 9, 2013
Page 19

least to the extent they pre-date the requests) and should have been preserved at that time for production.  Second, the documents were returned by the government to Pirouz Sedaghaty, who this Court has accurately recognized as a principal officer of Al Haramain's Oregon branch, and are thereby encompassed within the document requests directed to Al Haramain.  ECF No. 2491. Third, Al Haramain's obligations under Rule 26 require Al Haramain to – at least – attempt to gather its own responsive documents and materials, before they were seized, and afterward, to attempt to retrieve its own documents seized by the United States government – including documents in the custody, possession, or control of its officers, directors, employees, or agents.  Al Haramain has not done so.  And fourth, and perhaps most telling of its lack of due diligence to respond to Plaintiffs' discovery requests, Al Haramain claims not to have access to basic tax documentation prepared by its own long-time accountant, Tom Wilcox.  *See* Exhibit H (Responses and Objections to Supplemental Requests for Production) (Requests Nos. 9-10).  Basic corporate documents like tax records should either be kept by an organization or produced with some ease upon a simple request by the tax professional who prepared them.  Al Haramain's indication that they have no access to documents in the possession of their own tax preparer is, at best, disingenuous and further evidences the obvious attempt to evade discovery obligations.  This Court has already made this point abundantly clear even before Al Haramain asserted it as a rationale for not producing documents in its accountant's possession.  *See* Exhibit B, Tr. (Dec. 2, 2010) at 21 ("[T]he documents that are to be produced are those within the defendant[s'] possession, custody, or control, and documents in the hands of lawyers and accountants and other agents are in the custody or control of a party that was . . . requested to produce the documents.  So that I think is clear with respect to all entities.")

### e.  Warned of Possible Consequences

Plaintiffs and this Court have given Al Haramain multiple warnings of possible sanctions for failure to comply with the Federal Rules of Civil Procedure and orders of this Court.  Plaintiffs indicated early on that they would seek sanctions if Al Haramain did not produce documents in a timely and complete manner.  Pls' Mot. to Compel at 1-3.  And this Court has methodically proceeded from reiterating to Al Haramain its obligations under the rules, Exhibit A (Tr. (Oct. 28, 2010)) at 17-18, to denying Al Haramain's objections to performance under those rules, *id.* at 18, and ultimately indicating that non-compliance would result in sanctions.  *Id*; *see also* Exhibit G (Tr. (Feb. 8, 2010)).  In the end, a party that does not participate in or produce discovery does so at its own peril.  This Court and the Plaintiffs have given Al Haramain ample opportunity to comply with its obligations and after nine long years of litigation it can be no surprise that failure to do so should result in sanctions.

### 5.  Prejudice to Plaintiffs

The prejudice to plaintiffs is manifest.  Al Haramain is, without question, the party with greater access to relevant information concerning its actions.  That information is directly relevant to most if not all of the elements that plaintiffs have to prove at trial.  From the beginning of this action Al Haramain has tried to prevent transparency into its actions through obfuscation and deceit.  Only appropriate and substantial penalties will put the parties in the position they would have been in if Al Haramain had produced relevant documentation.  And, based on the persistent and complete failure to participate or produce to-date, default judgment is the most appropriate remedial course of action.

The Honorable Frank Maas
January 9, 2013
Page 20

**6. Deemed Findings, Adverse Inferences, and Preclusion Orders, While Inadequate, Are Clearly Justified on This Record**

Similar to the standard outlined above for default judgment, "a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding*, 306 F.3d at 107 (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-112 (2d Cir. 2001).

Determination that Al Haramain had an obligation to preserve evidence at the time it was destroyed is uncomplicated. Al Haramain should have reasonably anticipated litigation, which attaches the obligation to preserve evidence, as early as January 2002. At the very latest, Al Haramain's obligation to preserve attached when Plaintiffs filed this action on August 15, 2002. And it is clear from December 9, February 13, and February 15, 2009 declarations of Thomas Nelson and Soliman Al-Buthe, (Exhibits O, P, X, and Y) and from the testimony of the FBI in *United States v. Sedaghaty* (Exhibit N) that evidence was destroyed both in the Saudi Headquarters and at Al Haramain's Oregon branch office at times after its obligation had attached. Both Nelson and Al-Buthe contend that, after the Saudi Arabian government reportedly closed down Al Haramain's Saudi headquarters in 2004, they made unspecified and unsuccessful efforts to obtain documents from that office. Exhibits O, P, X, and Y. Although, as this Court has observed, each of the declarations is unduly sparse in details about the effort to obtain documents, each contends that by the time any effort was made, documents that would have been available had earlier efforts been made, were no longer available. And the FBI testimony in the Sedaghaty trial makes quite clear that substantial quantities of documents were deleted from computer hard drives before the government confiscated them. Exhibit N (Sedaghaty Trial. Tr.) at 39:8, 39:20-22, 40:4-10, 41:12-95:16, 43:12; 44:4-16, 47:6-12, 70:10-16, 93:21-25. Al-Haramain does not, and cannot, dispute the attachment of the obligation or its destruction of evidence.

Should the court determine that the available evidence does not support sufficient misconduct to justify default judgment, the evidence clearly warrants a determination, at least, of negligence by Al Haramain regarding the preservation of evidence. And negligence is sufficient for adverse inference instructions. The Second Circuit has been clear that spoliation and appropriate sanction for spoliation occur "along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality." *Reilly*, 181 F.3d at 267 (internal quotation omitted). As such, courts in this circuit engage in a case-by-case approach to the failure to produce relevant evidence. *Id.* And the majority of cases "support the contention that sanctions can be imposed even if the destruction was unintentional and the party responsible was merely negligent." *Augstein v. Leslie*, No. 11 Civ. 7512 (HB), 2012 U.S. Dist. LEXIS 149517, at *11-14 (S.D.N.Y. Oct. 17, 2012); *see also, e.g., GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, No. 11 CV 1299 (HB), 2012 U.S. Dist. LEXIS 70750, at *5 (S.D.N.Y. May 21, 2012) ("A party must act with a culpable state or mind, negligently at a minimum."); *Great N. Ins. Co. v. Power Cooling, Inc.*, 2007 U.S. Dist. LEXIS 66798, at *8 (E.D.N.Y. Sept. 10, 2007) ("To warrant the imposition of a lesser sanction [than dismissal], such as an adverse inference instruction, a party need only act "knowingly, even if without intent to [breach a duty to preserve the evidence], or negligently.");

The Honorable Frank Maas
January 9, 2013
Page 21

_____

*Zubulake*, 220 F.R.D. at 220 ("In this circuit, a culpable state of mind for purposes of a spoliation inference includes ordinary negligence.").

Here, it is clear that Al Haramain did not have an appropriate system to preserve relevant information. Al Haramain made no attempt to put in place a system to preserve relevant information or designate a person or persons to be responsible for safeguarding relevant information. Moreover, it is unclear whether Al Haramain's attorneys even attempted to inform appropriate Al Haramain personnel that they had an obligation to preserve relevant evidence. Al Haramain's conduct fails even the most rudimentary of tests for determining appropriate conduct; a conclusion of negligence is the very least that should be drawn from these circumstances.

Lastly, evidence in the record in this case provides adequate "extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to [Al Haramain] or would have been relevant to the issues in this lawsuit." *Kronisch*, 150 F.3d. at 128; *see also id.* at 127-128 (citing 2 Wigmore, *Evidence in Trials at Common Law* § 291, at 228). While "just how much evidence is enough to support an inference about the content of destroyed evidence cannot be precisely defined," a specific level of proof is not required. *Id.* at 128. In fact, "holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction." *Id.* Moreover, it is beyond doubt that circumstantial evidence is sufficient to support the inference that destroyed evidence may have contained documents supporting – or potentially proving – the claim. *Id.*

Here, the record is replete with circumstantial evidence that adequately supports the finding that the destroyed or lost evidence would have been unfavorable to Al Haramain. Circumstantial evidence begins with the fact that Al Haramain was designated by both the United States and Saudi Arabia based on information presented by the United States intelligence community. *See generally* Exhibit E (Terrorism Monograph) at 114-130 (Al Haramain Case Study); Exhibit F (State Department Cable) at BUR-PEC-049173 to -179 (outlining Al Haramain's involvement with Al Qaeda and various other terrorist groups and attacks). Specifically, "[a]fter the 9/11 attacks, a more focused U.S. government sought to work with the Saudis to stem the flow of funds from al Haramain to al Qaeda and related terrorist groups." Exhibit E (Terrorism Monograph) at 114; "By no later than 1996, the U.S. intelligence community began to gather evidence that certain branches of [Al Haramain] were involved in financing terrorism." *Id.* at 115; "On March 11, 2002, the U.S. and Saudi governments designated the Somali and Bosnian offices of al Haramain, freezing their assets, and prohibiting transactions with them." *Id.* at 119; and "On February 19, 2004, federal law enforcement took action against both the al Haramain branch in Ashland, Oregon, and the imam of the [Al Haramain] mosque in Springfield, Missouri. . . . Treasury took the additional step of freezing . . . the accounts of the branch in Oregon and the mosque in Missouri." *Id.* at 127. "Recent reporting revealed that [Al-Haramain's Oregon branch] received $500,000 from Bin Ladin . . . reportedly used to purchase mosques . . . for recruiting efforts. Additionally, Al Haramain has provided funds to individuals in the United States that have reportedly been involved in Jihadist paramilitary training." Exhibit F (State Department Cable) at BUR-PEC-049179. This

The Honorable Frank Maas
January 9, 2013
Page 22

circumstantial evidence more than adequately surpasses the threshold showing requiring that record evidence shows that the lost or destroyed evidence would have been unfavorable to Al Haramain.

As such, this court should make the following instruction to the jury:

Al Haramain has failed to prevent the destruction of relevant evidence for Plaintiffs' use in this litigation. This is known as "spoliation of evidence."

I instruct you, as a matter of law, that Al Haramain failed to preserve evidence after its duty to preserve arose. This failure resulted from its failure to perform its discovery obligations.

I also instruct you to find that Plaintiffs have met their burden of proving the following two elements by a preponderance of the evidence: *first*, that *relevant* evidence was destroyed after the duty to preserve arose. This includes evidence showing that Al Haramain provided material support to designated terrorist entities *and* evidence that Al Haramain provided that material support with the intent and knowledge that its material support would assist the commission of terrorist acts. Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence; and *second*, the lost evidence was favorable to Plaintiffs.

In light of the fact that Al Haramain failed to preserve evidence, I further instruct that you may find that Al Haramain provided material support to designated terrorist entities.

In light of the fact that Al Haramain failed to preserve evidence, I further instruct that you may find that Al Haramain provided that material support with the intent and knowledge that its material support would assist the commission of terrorist acts.

These sanctions are appropriate as a result of its case-by-case analysis and are within this court's inherent powers to manage its own affairs. *Reilly*, 181 F.3d at 267-68; *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 191 (S.D.N.Y. 2007); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33-34 (1812).

**7. Conclusion**

For the reasons set forth above, Plaintiffs' motion for sanctions should be granted, default judgment ordered, and expenses and attorneys fees directed.

Dated:  January 9, 2013

Respectfully submitted,

THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

cc:    Alan Kabat, Esq. (Via Federal Express - Overnight)
       The Honorable George B. Daniels, U.S.D.J. (Via Federal Express - Overnight)