# Exhibit X

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

Al Haramain Islamic Foundation, Inc., *et al.*,

    Plaintiffs,

v.

United States Department of the Treasury, *et al.*,

    Defendants.

Case No. 07-CV-1155-KI

**DECLARATION OF SOLIMAN H. AL-BUTHI**

I, Soliman H. Al-Buthi, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I reside in Riyadh, Saudi Arabia, and am currently the Director of Environmental Health for the Capital City of Riyadh, Saudi Arabia. I have held this position since 2006. I submit this declaration in support of Al Haramain Islamic Foundation's (AHIF-Oregon) challenge to its designation as a specially designated global terrorist.

2. I attended the King Saud University in Riyadh from 1981 to 1985, and earned a Bachelor's degree in Agricultural Science in 1985. From 1985 to 2006, I was the Landscaping Engineer for the City of Riyadh, General Administration of Gardens and Beautification, and was subsequently promoted to Director of the Environmental Health Department.

3. From 1997 to the fall of 2002 I was active in the American and Internet Committee (AIC) of Al-Haramain Islamic Foundation – Saudi Arabia (AHF-SA), which was responsible for providing internet support for Islamic outreach activities and for development of Islamic outreach efforts in the United States. There were eight (8) members of the AIC, and two

Declaration of Soliman H. Al-Buthi

paid secretaries who provided clerical support to the AIC. I was a volunteer and was never paid for my work on behalf of this charitable organization. During the period I worked on the AIC, I held a responsible, full-time government position as Landscaping Engineer. I devoted approximately 6-8 hours per week to my volunteer work for the AIC. I stopped volunteering for AHF-SA in 2002, due to the death of my son.

4. I am aware that there were other committees under AHF-SA, but my activities on behalf of the charity were limited to outreach in America and internet matters only. My internet activities were carried out primarily in Saudi Arabia.

5. AHF-SA was governed by a Board of Directors, also known as the Management Council. See Al Haramain Foundation, Organizational Chart (original and translation attached hereto as Exhibit 1); Al Haramain Foundation, Constitution (1992) (attached hereto as Exhibit 2). I was not a member of the Board of Directors (Management Council) of AHF-SA As a volunteer, I had no authority over, involvement in, or input into, any activities of AHF-SA or its affiliated organizations in countries other than the United States. Even with respect to the America and Internet Committee, I only made recommendations, which the Management Council or the General Manager could either accept or reject.

6. I did occasionally attend Management Council meetings, but only by invitation when matters relating to the AIC were on the agenda. I attended only that portion of the meeting dealing with my committee's work and did not attend the portions of the meetings dealing with other branches or other activities of AHF-SA.

7. I was not familiar with AHF-SA's financial books and records, and as a part-time volunteer had no access to or responsibility for these records.

8. To the best of my knowledge my employer, the Saudi Arabia government, was

Page 2 of 5 B Declaration of Soliman H. Al-Buthi

AHIF 3261

aware of my volunteer activities with AHF-SA and did not object to them. The Saudi government officially recognized AHF-SA as a charitable organization, and it was one of the largest charities in Saudi Arabia.

9. Except as stated below, I had no involvement in, or knowledge of, the work of AHF-SA branches in countries other than the United States, except in general terms. I understood that AHF-SA carried on humanitarian efforts in many other areas of the world, but did not know anything about how these activities in other countries were funded or how they operated. As a volunteer, I did not have the time, nor would it have been appropriate given my limited involvement, to become engaged in the activities of the other branches.

10. The Al-Haramain Islamic Foundation in Oregon (AHIF-Oregon), of which I have been on the board, has never been involved with the operations of any of the other branches of AHF-SA. Furthermore, AHIF-Oregon has never been involved in any terrorist activities, or in funding any terrorist activities.

11. Had I known that my involvement in AHIF-Oregon was a potential basis for designating AHIF-Oregon, I would have resigned as a member of the board. Because I was not aware that my involvement was an issue until it was too late – until AHIF-Oregon had already been designated and redesignated, I was unable to take this action. I am willing to resign my position for the future if this Court orders OFAC to vacate its current designation of AHIF-Oregon, and OFAC seeks to designate AHIF-Oregon again.

12. During the entire tenure of my involvement in AHF-SA, through the fall of 2002, it was not a designated organization on any US or UN terrorism lists. Had I been informed that AHIF-Oregon's relationship to AHF-SA was an issue in the designation process for AHIF-Oregon, I would likely have been able to obtain substantial records from AHF-SA showing that

AHIF-Oregon acted independently of AHF-SA, and was not involved in any decision-making regarding AHF-SA's activities in other countries or with any of AHF-SA's affiliated organizations. However, in June 2004, Saudi Arabia shut down AHF-SA under pressure from the United States to do so. At that time, its offices were closed, and since then it has become extraordinary difficult to obtain any records relating to AHF-SA's activities. I have worked closely with attorney Tom Nelson, who has traveled to Riyadh on several occasions, to try to obtain such records, to little avail. Accordingly, OFAC's failure to notify AHIF-Oregon in early 2004 of the basis for its potential designation has irreparably undermined its ability to defend itself, by making it virtually impossible to obtain evidence regarding the activities of AHF-SA.

13. Had I known that OFAC sought to designate AHIF-Oregon based on a claim that it supported SDGTs through its activities with AHF-SA, I would have obtained records of all the financial transactions between AHF-SA and AHIF-Oregon, and showed that none of them funded any "specially designated terrorists." In fact, for the most part, AHF-SA funded AHIF-Oregon, not vice versa. On one occasion, I brought a $150,000 donation from AHIF-Oregon to Saudi Arabia, but that was solely intended for humanitarian support to those suffering from violence and poverty among the Chechen population in Russia, through the Saudi Joint Relief Commission, a government relief agency. In no instance did AHIF-Oregon transfer any money to AHF-SA in order to support a SDGT. In no instance did AHIF-Oregon ever approve any funding of an SDGT. And for the entire time that AHIF-Oregon was involved with the activities of AHF-SA, AHF-SA was not a SDGT, and thus as far as we knew, there was no bar on providing funds or engaging in transactions with AHF-SA. Moreover, while AHIF-Oregon was affiliated with AHF-SA, it had absolutely no say in or authority over any decisions regarding AHF-SA's activities in other parts of the world. Had we known that this was an issue, we would

have submitted records and evidence from AHF-SA supporting all of these claims. But because we did not even learn that this was a basis for designation until AHIF-Oregon was redesignated in February 2008, we never had an opportunity to develop the record. And now that AHF-SA has been closed down at the request of the U.S. government, it is exceedingly difficult to obtain such evidence.

_____
Soliman H. Al-Buthi

DATED: February 15, 2009