# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

## VIA HAND DELIVERY

March 12, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

     Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

     The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this reply in further support of their January 30, 2013 motion to compel ("Motion to Compel") defendant Wa'el Hamza Jelaidan to produce: (1) all documentation and information verifying efforts the defendant and his counsel have undertaken to request and secure documents responsive to plaintiffs' requests for production of documents, consistent with this Court's November 16, 2011 Order; and (2) all documents and materials in his possession, custody, or control responsive to Plaintiffs' Supplemental Requests for Production of Documents.  For the reasons set forth below, Jelaidan's March 1, 2013 opposition ("Opposition") confirms his failure to comply with this Court's plain orders and continuing refusal to comply with his discovery obligations.  Given the content of the Opposition, plaintiffs respectfully request that the Court impose appropriate sanctions, to include a monetary sanction for the fees and costs incurred by plaintiffs in relation to the present motion.

## I.    DEFENDANT JELAIDAN'S OPPOSITION CONFIRMS THAT HE HAS NO INTENTION OF COMPLYING WITH HIS DISCOVERY OBLIGATIONS OR THIS COURT'S NOVEMBER 16, 2011 DISCOVERY ORDER

     As the Court is aware, Jelaidan is an Executive Order 13224 designee, and has been described by the United States as a founding member of al Qaeda and is widely understood to

The Honorable Frank Maas
March 12, 2013
Page 2

have acted as al Qaeda's financial and logistics chief.  Jelaidan sits at the center of al Qaeda's global support network, having directed numerous of al Qaeda's most important charity fronts and held signatory authority over the bank accounts of those entities.

Rather than responding to plaintiffs' document requests in a meaningful manner as he is obliged to do under the Federal Rules,[1] Jelaidan has instead chosen to withhold production of responsive materials and further engage in a deliberate strategy to frustrate these proceedings in this civil action, including:

(i)     significant delays in responding to plaintiffs' document requests and/or failing to respond at all;

(ii)    failing to substantiate undue burden objections;

(iii)   disregarding Judge Daniels' December 21, 2007 Order directing Jelaidan to respond to plaintiffs' discovery requests in accordance with the Court's determination that "the appropriate temporal scope of discovery should reasonably begin in 1992;"

(iv)    failing to produce a single document in response to a majority of plaintiffs' document requests; and

(v)     failing to respond promptly (or at all), to plaintiffs' inquiries regarding various discovery issues and requests for meet and confers.

This pattern of unacceptable discovery abuses has required plaintiffs to expend significant time and resources in their efforts to obtain the most basic discovery from the defendant.

Even now, with a clear order from this Court directing the defendant to conduct a "full-court press" to secure all responsive records, including the threat of severe sanctions if he and his counsel are unable to sufficiently document those vigorous efforts to obtain the documents,[2] Jelaidan continues to engage in obstructionist practices that further prejudice plaintiffs' ability to obtain responsive and meaningful documentation critical to their claims against the defendant.

In his Opposition, Jelaidan represents to this Court that he "and his counsel have been actively engaged in the discovery process" and have made a number of good faith attempts to request and obtain responsive banking records.  But deflecting blame, Jelaidan states that "the banks have chosen not to be compliant with Mr. Jelaidan's requests."  The Court will recall that the defendant and his counsel have taken this position on a number of previous occasions:

•     "WJ is *currently endeavoring* to obtain statements prior to the freezing of his account (but not prior to 1996) and will produce such documents if and when they may be found."

---

[1] Plaintiffs served Jelaidan with their discovery requests on June 13, 2006.

[2] *See* November 16, 2011 Discovery Hearing Transcript, p. 33, attached hereto as <u>Exhibit A</u>.

The Honorable Frank Maas
March 12, 2013
Page 3

Wael Jelaidan's Responses to Plaintiffs' First Set of Requests for Production of Documents "Part A", dated August 15, 2006 (responding to plaintiffs' Request No. A8, seeking banking records for Jelaidan's accounts at Al Rajhi Bank).

- "Contrary to the Plaintiffs' assertions, Mr. Jelaidan *has made a good faith effort* to obtain the banking records.  On many occasions, Mr. Jelaidan has attempted to obtain documents responsive to the Plaintiffs' requests, but as outlined above, the banking entities in question are not willing to cooperate with him and therefore, be has not been able to obtain any additional documents not already provided to the Plaintiffs." *See* Defendant Wael Jelaidan's Memorandum in Opposition to Plaintiffs' Motion to Compel, pp. 2-3 (October 31, 2011).

- "On several occasions, I have *initiated contact* with [Faisal Finance S.A. in Switzerland] but they have not been responsive.  *See* the October 29, 2011 Affidavit of Wael Hamzah Jelaidan at ¶ 7, filed in support of Defendant Wael Jelaidan's Memorandum in Opposition to Plaintiffs' Motion to Compel (October 31, 2011).

- "I *have contacted* [Al Rajhi Bank] on several occasions and *was informed* that all relevant information in regards to the account can only be disseminated by the Saudi authorities." *Id.* at ¶ 8.

- "I *have attempted* to acquire responsive documents from [Habib Bank], but they are not willing to cooperate with me." *Id.* at ¶ 9.

- "As stated previously, I *have tried on several occasions* to initiate contact with some of the Banks mentioned above; however to this date, my efforts have been fruitless…. When I attempt to contact them, they are not willing to cooperate because of my designation." *Id.* at ¶ 14.

- "Mr. Alim explains that Mr. Jelaidan and himself *have made a number of attempts* to request and obtain responsive documents from governmental and commercial entities but these entities have not cooperated with them." *See* Motion to Compel, Exhibit C (December 5, 2011 email from Martin McMahon to plaintiffs' counsel).

Of course, it was the inadequacy of these very excuses that prompted the Court to issue its November 16, 2011 Order directing Jelaidan to initiate a "full court press" to obtain and produce responsive materials and to document those efforts, or face sanctions.

Jelaidan's Opposition makes clear that he did *nothing* to pursue responsive documents during the period he was representing to the Court that he was actively pursuing the documents. And when faced with the Court's November 16, 2011 Order specifically ordering him to pursue the documents and further document his pursuit efforts, he did *nothing* in the year and half after the Court's order.  In fact, Jelaidan did nothing at all until after the initial due date for his opposition to plaintiffs' motion, at which point he sent ineffective, insufficient requests. Nonetheless, Jelaidan asks the Court to ignore his blatant disregard for this Court's orders on the

The Honorable Frank Maas
March 12, 2013
Page 4

---

grounds that he is now, many years into discovery and seven months after the deadline for making his productions has passed, allegedly undertaking some steps to request his banking records and other documents. The Opposition establishes that these "efforts" were initiated only after Jelaidan was confronted with the present Motion to Compel (indeed, after the initial due date of his response) and after he is threatened with the possibility of sanctions – a concerning and growing pattern of conduct amongst the defendants in this litigation. Moreover, the little documentation Jelaidan provides concerning his belated efforts to obtain documents – efforts that should have been undertaken and provided long ago – is unconvincing and incomplete, and serves only to underscore Jelaidan's disregard of his discovery obligations and willful violation of this Court's November 16, 2011 Order.

### A.   Jelaidan Did Not Undertake Efforts To Obtain Responsive Banking Records

In support of his halfhearted effort to argue that he undertook some efforts to obtain responsive materials before the expiration of his document production deadline, Jelaidan offers an affidavit authored by his Saudi Arabian legal team, purporting to outline Jelaidan's efforts to request responsive banking records. *See* Jelaidan Opposition, p. 2 and Exhibit 5 (February 26, 2013 Affidavit of Bassim A. Alim and Aftab H. Altaf, titled "Evidence of Attempt to Contact Banks for Statement"). Although Jelaidan has often represented that he and his legal team have made numerous inquiries for banking records, the affidavit provides only two examples from the past twelve years, and even those examples are misleading. The first example identified in the affidavit is reportedly an August 21, 2001 letter to the Governor of the State Bank of Pakistan "asking for removing the ban on the six accounts of Rabita Trust (attached)."[3] As that letter predates the filing of this litigation and does not request that any records be provided, it is of absolutely no relevance. The second letter, dated April 28, 2012, is merely a response authored by Jelaidan after receiving an electronically generated letter from a Turkish bank inquiring as to the defendant's interest in an insurance fund. Thus, neither the affidavit nor the two letters actually support the defendant's claim that he has been actively requesting banking records for purposes of this litigation.

Aside from those entirely irrelevant examples, Jelaidan submits for this Court's consideration several letters that were only recently transmitted to certain foreign banks requesting account records, after plaintiffs filed the present Motion to Compel (indeed, after defendant's response was initially due) and nearly 16 months after this Court issued its November 16, 2011 Order. *See* Jelaidan Opposition, Exhibit 1 (February 21, 2013 Letters from Martin McMahon to Bank Austria, Faisal Finance (Switzerland) S.A., Habib Bank,[4] State Bank

---

[3] Although the affidavit says the August 21, 2001 letter is attached, plaintiffs cannot find it within Exhibit 5 nor any of the exhibits submitted by the defendant.

[4] In the October 17, 2011 motion to compel, plaintiffs argued that the defendant should be compelled to produce banking records for an account Jelaidan held jointly with Osama bin Laden which had been frozen by Pakistan's government following the 9/11 attacks. *See* Exhibit A to plaintiffs' January 30, 2013 Motion to Compel, at p. 7 (identifying "Osama Bin-Laden and Wael Jelaidan FC-CD xx051-1 USS 342.04 Habib Bank Limited (HBL) Cantt Br. Peshawar"). Without any definitive proof, Jelaidan asserts in his Opposition that account no. FC-CD xx051-1 "may have been closed for many years now." *See* Jelaidan Opposition at p. 3, n. 1. The statement is nothing more

The Honorable Frank Maas
March 12, 2013
Page 5

of Pakistan, and Al Rajhi Banking & Investment Corporation (Malaysia)).  Clearly done in an eleventh hour attempt to avoid the imposition of sanctions, the letters themselves reflect Jelaidan's continuing disregard of his discovery obligations and this Court's orders.

First, the February 2013 letters raise a reasonable suspicion that Jelaidan and his legal team have in fact never previously communicated with these banks as he has frequently asserted. Each of the letters specifically state that "Mr. Jelaidan has on many occasions requested his banking documents from [the bank] but has either been met with no response or a rejection." However, if Jelaidan had in fact corresponded with these institutions on "many [prior] occasions," it would stand to reason that his most recent letters would include some details relating to the dates of the prior requests, the form of the requests (*e.g.*, letter, email, telephone or other communication), and/or the identity of bank personnel to whom those requests were transmitted.  Furthermore, if there had been a previous rejection, why do the letters not identify the date of the rejection, the method of delivery of the rejection (*e.g.*, letter, email, telephone or other communication), the basis for the rejection, the identity of the bank representative who communicated the rejection, and/or whether Jelaidan's legal team initiated any appeal to the bank after receiving said rejection?  The absence of this relevant information, which would certainly be helpful to the banks in assessing these recent requests, creates some doubt that the defendant has accurately represented the scope of his alleged efforts to obtain the records.  A better explanation is that the recent letters were crafted merely to be used as exhibits in Jelaidan's Opposition.

Additionally, each of the belated letters was merely sent to the foreign bank's general mailing address, rather than directed to a specific bank representative with the authority to manage such requests.  If there had been previous communications with bank personnel as Jelaidan claims, it would logically follow that any subsequent communications would be addressed to those same individuals who have personal knowledge of the requests emanating from Jelaidan and/or his legal team.  Again, the better explanation is that the letters were created merely as exhibits for defendant's Opposition and were never intended to yield effective results.

It is worth noting that banking and financial institutions across the globe are increasingly developing and implementing Anti-Money Laundering (AML), Customer Due Diligence (CDD) and Countering the Financing of Terrorism (CFT) policies to ensure that existing and/or prospective customers are not using the banks for criminal purposes.  Habib Bank has itself developed an AML/CDD/CFT program which deals with the issue of individuals and entities sanctioned by OFAC and/or the United Nations.[5]  A quick search of the bank's website reveals that the program has been approved by the President and CEO of Habib Bank, R. Zakir Mehmood, and is overseen by the bank's Chief Compliance Officer, Jamil Iqbal.[6]  Faisal Finance (Switzerland) S.A. has a similar program which is managed by the bank's Head of Compliance,

---

than conjecture and it should not relieve the defendant of his obligation to aggressively request and obtain the account records as this Court has already ordered him to do.

[5] *See* http://www.hbl.com/downloads/pdf/regulatory-compliance/aml-cdd-cft-policy.pdf.

[6] *Id.* at p. 2.

The Honorable Frank Maas
March 12, 2013
Page 6

Jacqueline Consoli Bernasconi.[7]  If the defendant was serious about undertaking diligent and exhaustive efforts to comply with this Court's discovery order, particularly in light of his concerns that the banks are hesitant to cooperate with him as a result of his designations, Jelaidan should have directed his requests to the banks' compliance officers who retain the authority to handle such sensitive matters, rather than just generally sending a letter to a bank without addressing it to anyone at all.  The failure to do so casts even more doubt on Jelaidan's willingness to invest the efforts necessary to comply with his discovery obligations and this Court's orders.[8]

    Jelaidan's letter request for records addressed to Al Rajhi Bank further underscores this point.  *See* Jelaidan Opposition, Exhibit 1 (February 21, 2013 Letter from Martin McMahon to Al Rajhi Banking & Investment Corporation (Malaysia)).  Significantly, Jelaidan, who is a citizen of Saudi Arabia and longtime resident of the Kingdom, sent a letter request solely to the Al Rajhi Bank branch office in Malaysia, and did not address any request to the bank's headquarters in the Kingdom.  However, in prior filings, Jelaidan represented that the release of banking records by Al Rajhi Bank could be achieved only with the approval of the Saudi Arabian Monetary Authority (SAMA), indicating that responsive documents were located in the Kingdom and within SAMA's jurisdiction.  Furthermore, despite acknowledging the existence of a frozen account at Al Rajhi Bank in his 2006 discovery responses, the letter request to the Malaysian branch makes no specific reference to that account, information that would be of obvious value to Al Rajhi Bank personnel in locating responsive records.  Particularly given Jelaidan's longtime residence in the Kingdom, the fact that he wrote solely to a Malaysian branch of Al Rajhi Bank suggests that he may have deliberately structured his letters to reduce the potential of actually receiving responsive documents.

    Indeed, despite being a long-time resident and businessman in Saudi Arabia, there is no evidence that Jelaidan has sent a request to *any* bank in the Kingdom.  Moreover, as the Court will recall, plaintiffs identified a number of bank accounts linked to Jelaidan, including personal accounts, business accounts, and accounts over which he had signatory authority and control as a high-ranking charity official.  *See* Plaintiffs' October 17, 2011 Motion to Compel at p. 9, attached as Exhibit A to Plaintiffs' January 30, 2013 Motion to Compel (identifying six Rabita Trust bank accounts over which Jelaidan has signatory authority and control); p. 11 (SJRC, MWL, IIRO, and SRC accounts Jelaidan controlled as an official of those charities); *id.* (identifying three bank accounts Jelaidan opened on behalf of the designated Al Haramain & Al Masjed Al Aqsa Charity Foundation between 1997 and 2001 and retained signatory authority); and p. 13 (identifying a Turkish account Jelaidan used to receive large transfers of money linked to al Qaeda).  *See also* Plaintiffs' Supplemental Requests for Production of Documents to Wael Jelaidan, attached as Exhibit D to Plaintiffs' January 30, 2013 Motion to Compel (plaintiffs' Request No. 24 identifies Jelaidan's account at Privredna Banka Zagreb – Account No. 24116815430-71961).  To date, plaintiffs have seen no evidence indicating Jelaidan is

---

[7] *See* http://www.faisalfinance.com/la_banque/keypeople_en.aspx.

[8] Critically, it does not appear that any of the letters to the banks were translated from English into the receiving entities' national languages.

The Honorable Frank Maas
March 12, 2013
Page 7

communicating with any of those banks or has made any attempt to communicate with those banks.

Defendant's February 2013 letters requesting unclassified administrative files and other documents in the possession of OFAC and the United Nations relating to Jelaidan and Rabita Trust are further examples of the defendant's dismissive approach to discovery. *See* Jelaidan Opposition, Exhibits 2 and 3. Those documents, which may ultimately prove responsive, should have been requested years ago after receiving Plaintiffs' First Set of Requests for Production of Documents.[9]

As the foregoing demonstrates, the defendant has failed to present this Court and plaintiffs with any credible documentary evidence verifying that he and his legal team have made vigorous and exhaustive "good faith" attempts to request and secure documentation responsive to plaintiffs' discovery. Declining to take advantage of the present opportunity to do so, Jelaidan has instead filed a response that raises even more suspicions and concerns that he is unwilling to responsibly engage in the discovery process, continues to misrepresent the extent of his efforts to obtain discovery materials, has deliberately failed to proactively seek out and obtain banking records as ordered by this Court, and as a consequence, is only now undertaking nominal, ineffective efforts to request less than all of the responsive documents at this late stage of the proceedings in order to avoid the imposition of sanctions. Given the content of Jelaidan's Opposition, plaintiffs respectfully request that the Court impose appropriate sanctions, to include a monetary sanction for the fees and costs incurred by plaintiffs in relation to the present motion.

## II.   PLAINTIFFS' SUPPLEMENTAL DOCUMENT REQUESTS ARE NEITHER UNTIMELY, DUPLICATIVE, NOR IRRELEVANT

Jelaidan argues that plaintiffs' Supplemental Requests for Production of Documents are untimely because the due date for the defendant's responses was just a few days after the August 30, 2012 rolling document production deadline set by this Court for the parties' initial document productions. But that objection is without merit and misapprehends the current discovery schedule implemented by the Court which specifically recognizes the need for service of both follow-up discovery and motion practice. Plaintiffs' supplemental discovery was timely served and the defendant should be compelled to promptly produce responsive documentation.

Jelaidan further objects to plaintiffs' supplemental discovery, arguing that the requests are duplicative and irrelevant. But the defendant fails to provide even a single example to support those statements. As set forth in plaintiffs' Motion to Compel at Section II, plaintiffs are seeking *inter alia* relevant information relating to newly identified bank accounts linked to the defendant, documents relating to Jelaidan's relationship with certain of the 9/11 hijackers, as

---

[9] Although Jelaidan makes reference in his opposition brief to a response from the United Nations (Jelaidan Opposition at 2), he omits that his request was addressed to the Office of the Ombudsperson (of the U.N.'s Al Qaeda Sanctions Committee) and the response from the Ombudsperson advised Jelaidan's counsel that the Office of the Ombudsperson is the wrong entity to whom to address such requests. *See* Jelaidan Opposition, Exhibit 2.

The Honorable Frank Maas
March 12, 2013
Page 8

well as documents relating to Jelaidan's relationship with the Muwafaq Foundation, a charitable organization that merged with al Qaeda in 2001.  *See also* Motion to Compel, Exhibit D.

Notwithstanding these objections, the defendant failed to timely respond and object to plaintiffs' supplemental discovery, has waived any and all objections to those discovery requests, and should be compelled to immediately produce all responsive materials.

Respectfully submitted,

*J. Gollan*

THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:    The Honorable George B. Daniels, U.S.D.J. (Via Hand Delivery)
        Members of Plaintiffs' Executive Committees (Via Email)
        Martin F. McMahon, Esq. (Via Email)
        Alan R. Kabat, Esq. (Via Email)

# EXHIBIT A

1

```
1bgr911c
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   In Re:  TERRORIST ATTACKS ON
 3           SEPTEMBER 11, 2001              03 MDL 1570 (GBD)
 4
 4   ------------------------------x
 5                                           New York, N.Y.
 5                                           November 16, 2011
 6                                           2:30 p.m.
 6
 7   Before:
 7
 8               HON. FRANK MAAS
 8
 9                                           Magistrate Judge
 9
10
10
11            APPEARANCES
11
12
12   KREINDLER & KREINDLER LLP
13        Attorneys for Ashton Plaintiffs
13   BY:  JAMES KREINDLER
14        ANDREW J. MALONEY, III
14
15
15   COZEN O'CONNOR
16        Attorneys for Plaintiff Federal Insurance
16   BY:  SEAN CARTER
17        J. SCOTT TARBUTTON
17
18
18   MOTLEY RICE LLC
19        Attorneys for Burnett Plaintiffs
19   BY:  ROBERT T. HAEFELE
20
20
21   ANDERSON KILL & OLICK, P.C.
21        Attorneys for O'Neill Plaintiffs
22   BY:  JERRY S. GOLDMAN
22
23
23   BERNABEI & WACHTEL PLLC
24        Attorneys for Defendants Al Haramain Islamic Foundation
24        and Perouz Seda Ghaty
25   BY:  ALAN R. KABAT
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

lbgr911c

```
 1   prohibit the banks from sharing this information.  And the
 2   record seems to establish that in that one of the banks Mr.
 3   Jalaidan says he can't get records from is Faisal Finance,
 4   which gave him records three years after his designation.
 5           What we are really looking for is some record to
 6   establish that he has undertaken those efforts.
 7           THE COURT:  He's produced records.  Does that
 8   necessarily mean that he obtained them from the bank rather
 9   than from his own files?
10           MR. CARTER:  He is producing a 2005 account statement
11   from a bank that froze his account in 2002.
12           THE COURT:  If he had that in his back pocket, then he
13   didn't need to go to the bank.
14           MR. CARTER:  What I'm saying is he is taking the
15   position that from the date of the freezing of his accounts,
16   all of his banks have uniformly refused to deal with him and to
17   provide him bank statements, yet he has a bank statement from
18   three years after that point in time.
19           THE COURT:  I see your point.  I guess, Mr. McMahon,
20   it comes down to the same thing I said with respect to your
21   other two clients, namely, that there has to be a full-court
22   press.  And, as Mr. Carter indicated and I've said before, it
23   has to be documented.  If you're not sufficiently able to
24   document a vigorous effort to obtain those documents, it may be
25   that sanctions are imposed.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300