## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br> KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J. Hanly, Jr., *Co-Liaison Counsel* <br> HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

### VIA HAND DELIVERY

March 12, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this reply in further support of plaintiffs' January 30, 2013 motion to compel ("Motion to Compel") defendant Rabita Trust to: (1) promptly provide detailed information concerning Rabita Trust's current organizational status and leadership, given counsel's representation that it has been a "dormant" charity since 1994; (2) identify any individuals who presently hold, or who have held, the authority to direct the litigation on Rabita Trust's behalf and ensure the defendant's adherence to its discovery obligations; (3) identify all efforts undertaken to locate and produce documents and information responsive to plaintiffs' discovery requests, and produce documents verifying such efforts, as directed by the Court on November 16, 2011; and (4) immediately produce all documents and materials in its possession, custody, or control responsive to Plaintiffs' Supplemental Jurisdictional Requests for Production of Documents Directed to Defendant Rabita Trust.

For the reasons set forth below, Rabita Trust's March 1, 2013 opposition ("Opposition") merely underscores its continuing violations of its most basic discovery obligations and this Court's specific orders. Indeed, given the content of Rabita Trust's Opposition, plaintiffs respectfully submit that the imposition of default judgment and monetary sanctions against Rabita Trust is warranted at this time, based on Rabita Trust's utter failure to fulfill its most basic discovery obligations within the discovery deadlines and pursuant to the orders set by this Court,

The Honorable Frank Maas
March 12, 2013
Page 2

and the resulting excessive burden and expense placed upon plaintiffs by virtue of Rabita Trust's willful misconduct and years of non-compliance.

## I.     DEFENDANT RABITA TRUST'S OPPOSITION CONFIRMS THAT IT HAS NO INTENTION OF COMPLYING WITH ITS DISCOVERY OBLIGATIONS OR THIS COURT'S NOVEMBER 16, 2011 DISCOVERY ORDER

To this point in discovery, Rabita Trust, an Executive Order 13224 designee, has produced a mere 22 documents.[1]  Throughout the history of the discovery process, Rabita Trust has employed a variety of inappropriate tactics to frustrate plaintiffs' efforts to obtain meaningful discovery in support of their claims.   These have included:

(i)     significant delays in responding to plaintiffs' document requests and/or failing to respond at all;

(ii)     failing to substantiate undue burden objections;

(iii)     disregarding Judge Daniels' December 21, 2007 Order directing the defendant to respond to plaintiffs' discovery requests in accordance with the Court's determination that "the appropriate temporal scope of discovery should reasonably begin in 1992;"

(iv)     failing to produce a single document in response to a majority of plaintiffs' document requests; and

(v)     failing to respond promptly (or at all) to plaintiffs' inquiries regarding various discovery issues and requests for meet and confers.

This pattern of unacceptable discovery abuses has required plaintiffs to expend significant time and resources in their efforts to obtain the most basic discovery from the defendant.

Given the history of the defendant's years-long noncompliance with its discovery obligations and the excuses it has offered in an effort to justify its wholesale failure to produce relevant documents, plaintiffs' motion seeks to compel Rabita Trust to provide documentation and information regarding its organizational and operational status, and to identify the individuals with the authority to direct the litigation on Rabita Trust's behalf.  In addition, given this Court's prior order directing Rabita Trust to undertake a "full-court press" to secure all responsive records, and requiring that Rabita Trust document those vigorous efforts or face sanctions,[2] plaintiffs' motion also seeks to compel Rabita Trust to produce documentary evidence verifying its efforts to locate and produce relevant documents.  Although all of the information and documentation sought through the Motion to Compel should have been provided

---

[1] Plaintiffs served Rabita Trust with their discovery requests on June 15, 2006.

[2] *See* November 16, 2011 Discovery Hearing Transcript, p. 33, attached hereto as <u>Exhibit A</u>.

The Honorable Frank Maas
March 12, 2013
Page 3

long ago in due course, and certainly prior to the expiration of the deadline for document productions, Rabita Trust's Opposition verifies that it has made no meaningful effort to participate in discovery or fulfill its discovery obligations. Further, the Opposition is riddled with evasive and ambiguous statements that cast doubt on whether Rabita Trust is even actively participating in this litigation through any duly authorized representative. At base, its response is simply another attempt at delay and obfuscation, imposing additional undue burden and expense on plaintiffs and wasting this Court's time and resources.

### A.    Rabita Trust's Alleged "Dormant" Status Is Unsupported And False

As set forth in Section I of the Motion to Compel, plaintiffs initiated discussions with defendant's counsel on September 29, 2011, requesting information from the defendant on a number of issues relating to Rabita Trust's organizational status and leadership. This included asking for clarification regarding the defendant's characterization that it had been a "dormant" charity for a number of years. *See* Motion to Compel, pp. 4-5. The defendant's failure and/or inability to provide any response at all to those inquiries over the next sixteen months, despite several affirmative representations that the information would be forthcoming, compelled plaintiffs to file the present motion seeking basic information concerning Rabita Trust's status.

Having already delayed providing the relevant information for several years, Rabita Trust states in its response that it "is not opposed to providing the plaintiffs with responses to the various inquiries," including an explanation as to the dormancy issue. Nevertheless, again, it fails to do so. *See* Rabita Trust Opposition, p. 5. Rather, the defendant states that its counsel has sent two letters (dated July 31, 2012 and February 26, 2013) requesting the information from "legal counsel to the Secretary-General of Rabita Trust," and that "[a]s soon as answers are obtained ... undersigned counsel will relay such information to the Plaintiffs." *Id.* In short, one lawyer for the defendant has asked another lawyer, who may or may not be a lawyer for the defendant, to provide some of the most basic information about the defendant, but no answer has been provided to plaintiffs.

Rabita Trust's continuing inability to provide even the most basic details concerning its organizational and operations status is problematic for several reasons. Most importantly, were Rabita Trust truly participating in this litigation, the simple information sought concerning its present status would be readily available to Rabita Trust's counsel. Indeed, it is difficult to imagine how any good faith effort to locate and produce responsive documents could be undertaken without such information. Thus, Rabita Trust's continuing inability to provide any information concerning its structure and operations implicitly confirms that it has not made any good faith efforts to comply with its discovery obligations.

Second, even after plaintiffs made a specific request for details concerning Rabita Trust's status in September 2011, counsel waited a full ten months before sending a simple written request to his client for this information. Compounding delay, counsel then waited another seven

The Honorable Frank Maas
March 12, 2013
Page 4

months to send follow-up correspondence on the issue, and then only in the face of the present Motion to Compel.[3]

Significantly, although there is some ambiguity as to the identities of the "Secretary General of Rabita Trust" and his "legal counsel" as referenced in the defendant's Opposition, it appears that the defendant is using those terms to refer to Wa'el Jelaidan and his Saudi Arabian attorney, Bassim Alim. If that is the case, it is all the more difficult to comprehend how Mr. McMahon and Mr. Alim have not been able to resolve these issues and timely provide plaintiffs with detailed and informative responses. Although defense counsel "asks that the Court be mindful of the difficulties that sometimes accompany foreign legal representation," there has clearly been an open line of communication between Mr. McMahon and Mr. Alim. In recent months alone, the two men coordinated defendant Jelaidan's response to plaintiffs' motion to compel, including the submission of Mr. Alim's affidavit in support of said opposition. *See* Wael Jelaidan's Opposition to Plaintiffs' Motion to Compel, Exhibit 5 (February 26, 2013 Affidavit of Bassim A. Alim and Aftab H. Altaf, titled "Evidence of Attempt to Contact Banks for Statement").

Rabita Trust's continuing inability (or refusal) to explain its operational status at this late stage of the discovery proceedings runs counter to its most basic discovery obligations, as well as the discovery deadlines set by this Court and this Court's specific directive that Rabita Trust undertake a "full court press" to locate and produce relevant documents. As the Motion to Compel carefully details, the evidence strongly suggests that contrary to Rabita Trust's representations, the defendant and its officials were in fact engaged in various operational, administrative, and financial activities during the alleged period of dormancy. *See* Motion to Compel, pp. 2-3.

### B.  Rabita Trust Has Failed To Identify Individuals With Authority To Direct The Litigation On Its Behalf

In light of counsel's representation that Rabita Trust was a dormant entity, coupled with its failure to produce any meaningful documentation, plaintiffs reasonably requested the identity of the individual who presently holds, or who has held, the authority to retain Mr. McMahon as counsel, direct the litigation on behalf of Rabita Trust, and further ensure the defendant's adherence to its discovery obligations. *See* Motion to Compel, pp. 5-6. Defendant's counsel conceded in 2011 that he did not know who that individual was, and despite having more than a year to acquire that information, Mr. McMahon still cannot affirmatively identify that person, as reflected in his affidavit:

- "At the time of our engagement for the 9/11 case, there was a gentleman by the name of Wael Jelaidan who was the Secretary General of the Rabita Trust. I saw various correspondence to that effect, and some of it was from the Pakistani government, so at all

---

[3] Noticeably, the defendant has not produced the January 2012 and February 2013 communications verifying those efforts to obtain the requested information.

The Honorable Frank Maas
March 12, 2013
Page 5

     times I *believed* I was coordinating legal strategy on the 9/11 case through Mr. Wael Jelaidan."

- "I *believe* they take the position that at no time was Mr. Wael Jelaidan terminated from his position as Secretary General of the Rabita Trust. Hence, I *believe* I can, in good faith, continue to represent the Rabita Trust in this case."

- "Even though the Rabita Trust has been 'dormant' or 'inactive' in terms of achieving the role it was mandated to perform, i.e., build housing accommodations for stranded Pakistani, I *believe* that my law firm can still represent the Rabita Trust both professionally and ethically."

- "I have at no time received instructions from Pakistani officials to the effect that I no longer legally represent the Rabita Trust. I *believe* that the Pakistani government would have the authority to terminate my representation if necessary."

*See* Rabita Trust Opposition, Exhibit 4, ¶¶ 3, 6, and 8 (emphasis added). Curiously, counsel initially proffers that Jelaidan is the responsible individual, but in the next breath suggests that the government of Pakistan currently has the authority to retain him as counsel, and ultimately terminate his representation if they so choose. Further, the limited documentation Rabita Trust has produced suggests that Mr. McMahon's other client, the Muslim World League, exercises ultimate control over Rabita Trust and its operations.[4] Counsel's inability to identify anyone within the organization's current leadership – more than a year since plaintiffs' inquiry – renders it impossible to accept the notion that Rabita Trust is actively participating in this case or making any effort to comply with its discovery obligations. Plaintiffs should not be compelled to expend time and resources chasing basic discovery from an entity that has effectively withdrawn from these proceedings.

### C.    Rabita Trust Has Not Undertaken Efforts To Locate And Secure Responsive Discovery Materials

    Rabita Trust's repeated failure to produce documentation in response to an overwhelming majority of plaintiffs' discovery requests has required plaintiffs to request, on multiple occasions, substantive updates from the defendant as to its efforts to search for and secure responsive discovery materials. *See* Motion to Compel, pp. 4-6 (further requesting the defendant provide documentary evidence verifying its attempts). Despite having numerous opportunities to do so, the defendant has yet to provide an adequate explanation as to the disposition of Rabita Trust documents following its alleged dormancy, produce verifiable evidence identifying known custodians of Rabita Trust records and their locations, or submit a credible accounting of its efforts to obtain those documents, as the Court has specifically required of the defendant. Even

---

[4] *See* December 16, 2002 and March 31, 2003 letters from representatives of the government of Pakistan to MWL Secretary-General Dr. Abdullah Mohsin al Turki requesting that Jelaidan be removed as Secretary-General of Rabita Trust, attached hereto as Exhibit B.

The Honorable Frank Maas
March 12, 2013
Page 6

_____

now, in the tenth year of this litigation, defense counsel cannot affirmatively tell this Court and plaintiffs where Rabita Trust's documents may be located.

Remarkably, Rabita Trust devotes a mere single sentence to this important issue. The Opposition references a November 4, 2011 email suggesting that Rabita Trust documents *may* have been destroyed or sent to a storage facility. *See* Rabita Trust Opposition, p. 3 ("… we have in the past discerned that when the Trust entered into dormancy, any documents in the office would likely have been destroyed or transferred to storage, probably by Pakistan's Office of the Cabinet Secretary."). At no time since that communication was received however, has the defendant produced any evidence confirming the destruction or storage of said records. Nor has the defendant presented affidavit testimony from a former or current Rabita Trust official, employee, or representative who can corroborate that assertion. Indeed, despite the Court's direction for a "full court press," there is no indication whatsoever that any good faith endeavor was ever taken in the years that this litigation has been pending to determine the location of the defendant's documents.

Defendant's counsel further advances this notion that Rabita Trust "records have been sent to storage," stating that "one must go through the Pakistani government" in order to procure the documents. *See* Rabita Trust Opposition, Exhibit 4, ¶ 7. Counsel contends that he personally met with officials at the Pakistani Embassy in an effort to obtain documentation, and that he personally communicated with persons in Pakistan who may have had Rabita Trust documents, *id.* at ¶¶ 5 and 7, but Rabita Trust offers no documentary evidence verifying any such attempts to secure documents from a storage facility or otherwise. It is noteworthy that after all of this time, the defendant still cannot provide information that: (i) identifies the Pakistani storage facility and its location; (ii) identifies the custodian of records responsible for overseeing the facility; (iii) provides an indexing of Rabita Trust documents stored at the facility; or (iv) identifies the Pakistan government agency and/or official to whom formal requests for the documents should be directed. In any case, its inability to provide this information confirms an utter failure by Rabita Trust to comply with this Court's November 16, 2011 Order directing it to undertake vigorous efforts to locate responsive materials and to document its attempts to obtain those materials. In fact, it is apparent that the defendant and its legal team did nothing prior to the deadline for production of documents to locate Rabita Trust's documents and/or make official requests through the Pakistani government.[5]

Furthermore, plaintiffs do not see any evidence that the defendant has undertaken diligent efforts to obtain documents from other logical sources. Although Mr. McMahon states that "I have exhausted my efforts to obtain documents," *id.* at ¶ 9, there is no evidence that Rabita Trust and/or its representatives have requested documents from counsel's other client, the Muslim World League ("MWL"). As Jelaidan himself confirms, the MWL jointly formed Rabita Trust with the government of Pakistan in 1992. *See* Exhibit C attached hereto. Moreover, it was the MWL that was responsible for appointing him as Secretary General in

_____

[5] Nor has any information been provided in response to plaintiffs' inquiry regarding the efforts of a Pakistani lawyer who was allegedly hired by Rabita Trust in or about 2006 to assist in the search and collection of responsive documents. The defendant fails to even address this issue in the Opposition.

The Honorable Frank Maas
March 12, 2013
Page 7

_____

1998.  *Id.*  In addition, members of the Rabita Trust Board of Directors included the former Secretary General of the MWL, Dr. Abdullah bin Saleh al Obaid.  *See* Motion to Compel, p. 3, n. 5.  Given the MWL's intimate involvement in the formation, operations, and oversight of the defendant since 1992, it is more than reasonable to believe that the MWL is in possession of documents responsive to plaintiffs' discovery.[6]

Unfortunately, the only other evidence of the defendant's "exhaustive" attempts to secure responsive documents are various letter requests that were sent well after the deadline for producing documents and only after plaintiffs filed the instant motion to compel (presumably in an effort to create the appearance of at least some effort to obtain documents in the hopes of avoiding potential sanctions).  Rabita Trust submits for this Court's consideration three letters that were sent to certain foreign banks requesting account records.  *See* Rabita Trust Opposition, Exhibit 1 (February 19, 2013 Letter from Martin McMahon to Habib Bank-Karachi; February 22, 2013 Letter from Martin McMahon to the State Bank of Pakistan; and February 22, 2013 Letter from Martin McMahon to Habib Bank-Islamabad).

Importantly, each of the belated letter requests was merely sent to the foreign bank's general mailing address, rather than directed to a specific bank representative with the authority to manage such requests.  *See* Rabita Trust Opposition, Exhibit 1 ("Dear Sir or Madame").  The fact that Rabita Trust does not even have a contact person at these institutions simply confirms that no efforts were undertaken within the deadline set by the Court to obtain responsive materials from those institutions and within Rabita Trust's custody and control.

Further, even the belated correspondence Rabita Trust sent to those institutions falls far short of a good faith effort to obtain responsive materials.  Simply put, sending a letter to a general mailing address hardly represents a conscientious effort to pursue relevant documentation.[7]  In this regard, it is worth noting that banking and financial institutions across the globe are increasingly developing and implementing Anti-Money Laundering (AML), Customer Due Diligence (CDD) and Countering the Financing of Terrorism (CFT) policies to ensure that existing and/or prospective customers are not using the banks for criminal purposes.  Habib Bank has itself implemented an AML/CDD/CFT program which deals with the issue of individuals and entities sanctioned by OFAC and/or the United Nations.[8]  A quick search of the bank's website reveals that the program has been approved by the President and CEO of Habib Bank, R. Zakir Mehmood, and is overseen by the bank's Chief Compliance Officer, Jamil Iqbal.[9]  If the defendant was serious about undertaking diligent and exhaustive efforts to comply with this Court's discovery order, Rabita Trust should have directed its requests to the banks' compliance officers who retain the authority to handle such sensitive matters (particularly in

_____

[6] Plaintiffs separately requested information concerning Rabita Trust from the MWL, but the MWL has not produced any responsive documents, despite the indisputable fact that it is in possession of such documents.  Indeed, the handful of documents produced by Rabita Trust include correspondence sent to or emanating from the MWL.

[7] Critically, it does not appear that any of the letters to the banks were translated from English into the receiving entities' national languages.

[8] *See* http://www.hbl.com/downloads/pdf/regulatory-compliance/aml-cdd-cft-policy.pdf.

[9] *Id.* at p. 2.

The Honorable Frank Maas
March 12, 2013
Page 8

light of its designations by the United States and United Nations), rather than just generally sending a letter to a bank without addressing it to anyone at all. The failure to do so casts even more suspicion on the defendant's representations to this Court.

The defendant's additional submission of two letters (dated February 19 and 21, 2013) requesting unclassified administrative files and other documents in the possession of OFAC and the United Nations relating to Rabita Trust and Jelaidan are further examples of the defendant's dismissive approach to discovery. *See* Rabita Trust Opposition, Exhibits 2 and 3. Those documents, which may ultimately prove responsive, should have been requested years ago upon receipt of Plaintiffs' First Set of Jurisdictional Requests for Production of Documents.[10]

## II.    DEFAULT JUDGMENT IS WARRANTED

In direct violation of this Court's November 16, 2011 Order, Rabita Trust has failed to present this Court and plaintiffs with any credible documentary evidence verifying that the defendant and its legal team have made vigorous and exhaustive good faith attempts to request and secure documentation responsive to plaintiffs' discovery. Moreover, despite having a year and a half to seek out and provide plaintiffs with detailed answers and documentation in response to several important discovery inquiries, defense counsel can only offer ambiguous and evasive statements on behalf of his client that raise additional questions as to whether Rabita Trust is even actively participating in this litigation through any duly authorized representative.

Pursuant to deadlines set by this Court, as extended, Rabita Trust was required to complete efforts to locate and produce all responsive documentation by August 30, 2012. Its complete failure to do so, even in the face of an explicit directive and warning from this Court, absolutely warrants the imposition of default judgment pursuant to Fed. R. Civ. P. 37(b), including monetary sanctions. Lesser sanctions will not have any effect on this defendant. *See American Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521 (S.D.N.Y. 1999) (granting sanctions and entering default judgment for repeated failures to comply with discovery orders); *Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010) (granting motion for default judgment where defendants willfully refused to participate in the litigation); *Owen v. No Parking Today, Inc.*, 280 F.R.D. 106 (S.D.N.Y. 2011) (imposing sanctions of attorney's fees in response to the defendant's failure to fully respond to discovery requests and multiple orders and directives of the court).

---

[10] Although Rabita Trust makes reference to a response from the United Nations (Rabita Trust Opposition at p. 2), the defendant omits that its request was addressed to the Office of the Ombudsperson (of the U.N.'s Al Qaeda Sanctions Committee) and the response from the Ombudsperson advises counsel for Rabita Trust that the Office of the Ombudsperson is the wrong entity to whom to address such requests. *See* Rabita Trust Opposition, Exhibit 2.

The Honorable Frank Maas
March 12, 2013
Page 9

---

### III.   PLAINTIFFS' SUPPLEMENTAL JURISDICTIONAL DOCUMENT REQUESTS ARE NEITHER UNTIMELY NOR DUPLICATIVE

The imposition of a default judgment against Rabita Trust would of course render the following argument moot.  However, in the event the Court declines to do so at this time, plaintiffs offer the following response to defendant's Opposition.

Rabita Trust argues that plaintiffs' Supplemental Jurisdictional Requests for Production of Documents are untimely because the due date for the defendant's responses was just a few days after the August 30, 2012 rolling document production deadline set by this Court for the parties' initial document productions.  That objection is without merit and misapprehends the current discovery schedule implemented by the Court which specifically recognizes the need for service of both follow-up discovery and motion practice.  Plaintiffs' supplemental discovery was timely served and the defendant should be compelled to promptly produce responsive documentation.

Rabita Trust further objects to plaintiffs' supplemental discovery, arguing that the requests are duplicative.  But the defendant fails to provide even a single example to support that statement.  As set forth in the Motion to Compel at Section II, plaintiffs are seeking *inter alia* relevant information relating to bank accounts linked to the defendant, documents relating to a post 9/11 audit of the defendant, as well as documents relating to the appointment and proposed removal of Wa'el Jelaidan as Rabita Trust's Secretary General.  *See also* Motion to Compel, Exhibit N.

Notwithstanding these objections, the defendant failed to timely respond and object to plaintiffs' supplemental discovery, has waived any and all objections to those discovery requests, and should be compelled to immediately produce all responsive materials.

Respectfully submitted,

*J. goldma*

THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:   The Honorable George B. Daniels, U.S.D.J. (Via Hand Delivery)
        Members of Plaintiffs' Executive Committees (Via Email)
        Martin F. McMahon, Esq. (Via Email)
        Alan R. Kabat, Esq. (Via Email)

LEGAL\15032681\3

# EXHIBIT A

```
                                                          1
     1bgr911c
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    In Re:  TERRORIST ATTACKS ON
3            SEPTEMBER 11, 2001          03 MDL 1570 (GBD)
4
4    ------------------------------x
5                                        New York, N.Y.
5                                        November 16, 2011
6                                        2:30 p.m.
6
7    Before:
7
8            HON. FRANK MAAS
8
9                                        Magistrate Judge
9
10
10
11           APPEARANCES
11
12
12   KREINDLER & KREINDLER LLP
13        Attorneys for Ashton Plaintiffs
13   BY:  JAMES KREINDLER
14        ANDREW J. MALONEY, III
14
15
15   COZEN O'CONNOR
16        Attorneys for Plaintiff Federal Insurance
16   BY:  SEAN CARTER
17        J. SCOTT TARBUTTON
17
18
18   MOTLEY RICE LLC
19        Attorneys for Burnett Plaintiffs
19   BY:  ROBERT T. HAEFELE
20
20
21   ANDERSON KILL & OLICK, P.C.
21        Attorneys for O'Neill Plaintiffs
22   BY:  JERRY S. GOLDMAN
22
23
23   BERNABEI & WACHTEL PLLC
24        Attorneys for Defendants Al Haramain Islamic Foundation
24        and Perouz Seda Ghaty
25   BY:  ALAN R. KABAT
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

33

lbgr911c

1   prohibit the banks from sharing this information.  And the
2   record seems to establish that in that one of the banks Mr.
3   Jalaidan says he can't get records from is Faisal Finance,
4   which gave him records three years after his designation.
5          What we are really looking for is some record to
6   establish that he has undertaken those efforts.
7          THE COURT:  He's produced records.  Does that
8   necessarily mean that he obtained them from the bank rather
9   than from his own files?
10         MR. CARTER:  He is producing a 2005 account statement
11  from a bank that froze his account in 2002.
12         THE COURT:  If he had that in his back pocket, then he
13  didn't need to go to the bank.
14         MR. CARTER:  What I'm saying is he is taking the
15  position that from the date of the freezing of his accounts,
16  all of his banks have uniformly refused to deal with him and to
17  provide him bank statements, yet he has a bank statement from
18  three years after that point in time.
19         THE COURT:  I see your point.  I guess, Mr. McMahon,
20  it comes down to the same thing I said with respect to your
21  other two clients, namely, that there has to be a full-court
22  press.  And, as Mr. Carter indicated and I've said before, it
23  has to be documented.  If you're not sufficiently able to
24  document a vigorous effort to obtain those documents, it may be
25  that sanctions are imposed.

# EXHIBIT B

Government of Pakistan
**CABINET DIVISION**

No. 10/1/2000-R&R (ERC)

Islamabad, the 16th December, 2002

Cabinet Secretary
Tele : 9213562

Subject:- **RABITA TRUST BOARD FOR REPATRIATION OF STRANDED PAKISTANIS**

Excellency,

The decision regarding reconstitution of the composition of the Rabita Trust Board for the Rehabilitation of Stranded Pakistanis was conveyed to you vide Cabinet Division's d.o. letter No. 10/1/2000-R&R (ERC), dated 18th October, 2001(Copy enclosed). A revised list of equal number of Rabita al Alam al Islami members for representation on the Rabita Board in the light of Clause 3 of the Rabita Trust Deed may please be provided at the earliest, as already requested.

2. It will be appreciated, if the matter of replacement of Mr. Wael Hamzah Jelaidan, the present Director General cum Secretary General of the Rabita Trust Board, by an other suitable choice is reconsidered. The continuation of Mr. Wael Hamzah Jelaidan on the Board of the Rabita Trust is acting as an impediment in defreezing the accounts of the Rabita Trust.

With regards,

Yours sincerely,

(Javed Masud)

H.E. Dr. Abdullah bin Abdul Mohsin Al-Turki,
Secretary General, Rabita al Alam al Islami,
Makkah, Kingdom of Saudi Arabia.

008



بسم الله الرحمن الرحيم

سفارة باكستان - الرياض
**EMBASSY OF PAKISTAN**
P.O. BOX 94007
RIYADH 11693

No.POL-3/45/03

31 March 2003

Excellency,

You would be aware that the Government of Pakistan had revised the membership of the Trust representing the Government of Pakistan on the Board of the Rabita Trust for Rehabilitation of Stranded Pakistanis. As a result Secretary, Cabinet Division, was appointed as Chairman of the Rabita Trust Board. The revised composition of the Board was provided to Mr. Rahmat Ullah Nazir Khan, Project Director of the Rabita Trust in Islamabad, vide Cabinet Division's letter No.2/1/2000-P&R(ERC), dated 13 October, 2001, for onward transmission to the Rabita Al-Alam Al-Islami for information and provision of revised list, if so desired, of an equal number of Rabita Al-Alam Al-Islami members for representation on the Rabita Board in the light of Clause 3 of the Rabita Trust Deed.

The Government of Pakistan feels that, in view of information of a sensitive nature made available, it would be prudent in the prevailing situation if you consider replacing Mr. Wael Hamzah Jelaidan, the present Director General-cum-Secretary General of the Rabita Trust with another suitable choice. Continuation of Mr. Jelaidan on the Board could be a source of embarrassment to the Trust as well as to the Government of Pakistan.

We would greatly appreciate an early reply.

Please accept, Excellency, the assurances of my highest consideration.

Admiral Abdul Aziz Mirza (Retd)
Ambassador

H.E. Dr. Abdullah Al-Turky,
Secretary-General,
Rabita Al-Alam Al-Islami,
Mukkah Al-Mokarramah (Fax No.5601237)

007

# EXHIBIT C

# Wael Jelaidan

## Life in America:

I graduated from the high school in summer 1976 and got scholarship for my B.Sc in Soil Science.  In fall 1976, I joined the English language program in Belmont, North Carolina.  In fall 1977, I joined the two years Diploma program in St. Petersburg College, Florida.  I got my Bachelors degree in Soil Science in fall 1981 from Eastern Kentucky University.

In spring 1982, I was appointed as a Tutor in the King Abdul Aziz University, Jeddah, Saudi Arabia at the College of Meteorology, Environment and Agriculture in the Arid Zone.

Thereafter, in fall 1983, I got a scholarship for my higher education in the Range Management (Agriculture) and joined the Masters Program at the University of Arizona, Tucson.

I left the United States in spring 1985 to join the relief work in Pakistan. Since then, I have visited the United States once in December 1990 for two weeks to attend a conference arranged by MAYA (Muslim Arab Youth Association).

I would like to take this opportunity to express my deep appreciation for the American people and the American way of life and the educational system.  I spent my good seven years in the United States without any violations of the law.  I am greatly thankful to my teachers in all the institutions in which I have received my education in the United States of America.

In 1984, I was elected as the president of the Islamic Center, Tucson, Arizona.

Since my last visit in 1990, I have not visited the United States.

## History of Humanitarian Relief Efforts:

I
_____

**Wael Jelaidan**

The Soviet Union invaded Afghanistan in 1979. I left the United States in 1985 and joined the relief activities rendered for the Afghan nation who faced atrocities and hard time due to the invasion of Afghanistan. I felt that it was my human and religious obligation to offer whatever I could for my brothers in faith. This is the reason, why my focal point has always been relief work for the Afghan refugees. During my assignment in Pakistan, my job was to ensure that all relief goods and humanitarian supplies arriving in Pakistan reached the needy and displaced people.

From 1986 to the end of 1988, I was appointed as the Director of the Saudi Red Crescent Society in Pakistan which is a member of International Red Cross and Red Crescent societies. The relief efforts, for which I was responsible, consisted of a tuberculosis hospital, a surgical hospital, some dispensaries and pharmaceutical supplies, scattered around the refugee camps. The following is the brief history of my assignments:

1989:       Joined MWL Muslim World League as a Director and worked until 1994, looking after education and relief work for the refugees.

1992:       Became Project Director of the Rabita Trust, a joint TRUST formed by the Government of Pakistan and Muslim World League jointly for the repatriation and rehabilitation of the Stranded Pakistanis in Bangladesh, commonly known as Biharis, who were left behind after the 1971 Indo-Pakistan war. Under the Rabita Trust arrangements for the repatriation of the Stranded Pakistanis, a housing project was planned and executed which was a single project operation. As a Project Director, I supervised the construction of 1000 residential units in the province of the Punjab, as a pilot project. The Government of Pakistan had been a partner in this project and all funds and resources used to be released by the Government of the Punjab at that time.

2

**Wael Jelaidan**

1994            I worked in Pakistan until 1994 and then returned to Saudi Arabia for good.

1998 to date: In 1998, I was appointed as the Secretary General of the Rabita Trust by the Muslim World League. The project could not continue due to internal problems in Pakistan as well as between the Pakistani Government and the Bangladeshi Government over the issue of repatriation. In October 2001, the Rabita Trust was designated by the OFAC. I was personally designated after 1 year, in September 2002. At present, I am defending myself in the civil case while Muslim World League is defending Rabita Trust in the same case. The reality is that there had never been any transfer of funds from Rabita Trust to anywhere except to the housing project. Following the designation of Rabita Trust, the Government of Pakistan instructed a foreign based audit company to conduct a thorough audit on all the receivables and expenditures but after carrying out the audit for a complete year, they never found any activity or transfer of funds beyond the objectives of the Rabita Trust Deed. The audit report is available both with the audit company (Messrs Ferguson), and with the Government of Pakistan, but unfortunately, there is no mechanism laid down by the OFAC as well as by the treasury department of the United States to de-list an organization from the Terrorist List once it is proved to be wrongly designated.

1999:           I was appointed as the Executive Director of the SJRC (Saudi Joint Relief Organization), established by the Government of Saudi Arabia to help the people of Kosovo during their stay in Albania and Macedonia, until they were repatriated back to Kosovo. I held this position for one year.

3

**Wael Jelaidan**