UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                       :
IN RE :                                :   Case No. 03 MDL 1570 (GBD) (FM)
                                       :
TERRORIST ATTACKS ON:                  :
SEPTEMBER 11, 2001                     :
_____:

**DECLARATION OF ROBERT T. HAEFELE IN SUPPORT OF
PLAINTIFFS' COUNSEL'S APPLICATION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, ROBERT T. HAEFELE, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am an attorney at the law firm of Motley Rice LLC, counsel for Plaintiffs in the *Burnett* and *Euro Brokers* cases, and a member of the Plaintiffs' Executive Committee for the Personal Injury and Death Claims operating for the Plaintiffs' General Steering Committee. I submit this declaration in support of Plaintiffs' Counsel's Application for Attorneys' Fees and Expenses on behalf of all Plaintiffs' counsel[1] as referenced herein and in the October 28, 2013 Report and Recommendation of this Court. I am familiar with the facts discussed herein and attach as exhibits true and correct copies of the documents referenced herein.

2. On October 28, 2013, the Court issued a Report and Recommendation awarding Plaintiffs' attorneys' fees and costs incurred as a result of Al Haramain's and Wa'el Jelaidan's production failures and the resulting sanctions litigation. Memorandum Decision and Report and Recommendation of October 28, 2013 (ECF No. 2789) ("October 28, 2013 Order"). A true copy of the order is attached hereto as Exhibit A.

_____

[1] Plaintiffs' counsel identified herein are lawyers at four law firms representing plaintiffs – namely, Motley Rice, LLC, Cozen O'Connor, P.C., Kreindler & Kreindler, LLP, and Anderson Kill P.C.

**Al Haramain**

3. In the October 28, 2013 Order, the Court specifically acknowledged that, as to Al Haramain, Plaintiffs "are entitled to recover the reasonable attorneys' fees and costs that they incurred in bringing this motion." Exhibit A, at 34.

4. Explaining its reason for granting the motion, the Court said that "[it was] particularly troubling that after [the Court] specifically ruled that [the protective order entered in the criminal trial of Al Haramain official Pirouz Sedaghaty] did not restrict the dissemination of any materials the Government had seized [from Al Haramain's Oregon office]. . . Al Haramain (USA) continued to claim that it would be precluded from obtaining any responsive records." The Court further explained that "it is clear that the Plaintiffs would not have had to file their motion, but for Al Haramain (USA)'s unreasonable refusal to make efforts to obtain the Oregon documents after [the Court] ruled that the protective order in [Al Haramain official Pirouz] Sedaghaty's criminal case did not preclude [Al Haramain from producing the documents] in this action." *See* Exhibit A, at 33-35.

5. Al Haramain's continued refusal to produce the Oregon documents necessitated Plaintiffs engaging in a substantial review of the record from the criminal trial to determine what information was available in that record.

6. Only after Plaintiffs moved for sanctions did Al Haramain counsel engage in eleventh-hour efforts to produce the documents.

7. Another example of Al Haramain's willful conduct necessitating Plaintiffs engaging in significant independent investigations merely to confirm that Al Haramain's objections to discovery were baseless, concerns Al Haramain's insistence that it was unrelated to its Saudi headquarters. That longstanding baseless objection resulted in Plaintiffs having to conduct exhaustive investigation and document reviews to develop facts

and evidence concerning the relationship between the branch and its headquarters to demonstrate that the two entities were mere alter egos.

### Jelaidan

8. The October 28, 2013 Order also acknowledged substantial willful wrongdoing on Jelaidan's part that necessitated Plaintiffs engaging in significant independent efforts to confirm Jelaidan's improprieties.

9. The Court recognized that it had previously ordered Jelaidan to undertake a vigorous "full-court press" to secure responsive records" and had "cautioned him that sanctions would be imposed if he failed to document sufficiently his good faith efforts to comply." Exhibit A, at 7.

10. The Court also explained that, despite the Court's clear direction for him to undertake "vigorous renewed efforts to obtain and produce documents responsive to the Plaintiffs' requests, or, at the very least, to document his good faith attempts to do so," Jelaidan did "essentially nothing to pursue any responsive records since then." Exhibit A, at 9.

11. The Court characterized Jelaidan's conduct throughout the case as "evidenc[ing] a continued unwillingness to participate fairly in discovery and can only be characterized as proceeding in bad faith." Exhibit A, at 9. In the end, the Court characterized the totality of Jelaidan's conduct stating that "Jelaidan has willfully disregarded his discovery obligations and acted in bad faith."

12. Because of Jelaidan's unwillingness to produce any information about the various accounts in his name, Plaintiffs were obliged to conduct difficult, exhaustive investigations to identify the universe of accounts over which Jelaidan had control to support a fact that he should have disclosed willingly in discovery. Similarly, rather than

3

producing any information about any account, Jelaidan's assertion that his designation as a terrorist prevented him from accessing any information about the financial accounts necessitated Plaintiffs researching the issue and employing an expert to dispute the position – incidentally, a position that Jelaidan continues to assert without any support.

13. In addition to independent investigations exemplified in the statements above regarding Al Haramain, the list included below identifies legal and factual research, memoranda and other legal submissions, preparation, meetings, communications, and hearings for which Plaintiffs' counsel expended significant time and resources to litigate the discovery abuse issues and associated sanctions issues concerning Al Haramain.

**Summary of Tasks For Which Fees and Expenses Are Requested re Al Haramain**

1. Reviewing Al Haramain document productions to identify deficiencies; independently investigating Al Haramain, alter ego relationship with Headquarters, and documents seized and used in Sedaghaty prosecution; conferencing among the PECs to consider/plan motion; meeting and conferring with Al Haramain counsel.
2. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' motion to compel Al Haramain, sent to the Court on December 2, 2009.
3. Reviewing, summarizing, conferencing regarding Al Haramain's opposition to Plaintiffs' motion to compel Al Haramain, sent to the Court on December 10, 2009.
4. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' letter in further support of Plaintiffs' motion to compel Al Haramain, sent to the Court on January 5, 2010.
5. Coordinating, conducting legal and factual research, and conferencing attendant to the hearing before Magistrate Judge Maas concerning Plaintiffs' motion to compel Al Haramain, on February 8, 2010.
6. Coordinating, conducting legal and factual research, conferencing, attendant to the hearing before Magistrate Judge Maas concerning Plaintiffs' motion to compel Al Haramain, on October 28, 2010.
7. Coordinating, conducting legal and factual research, conferencing, attendant to the hearing before Magistrate Judge Maas concerning Plaintiffs' motion to compel Al Haramain, on December 2, 2010.
8. Reviewing, summarizing, conferencing regarding the Court's December 10, 2010 Order.

9. Reviewing, summarizing, conferencing re Al Haramain's Rule 72 Objection to the Court's October 28, 2010 Ruling, filed on November 12, 2010.

10. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' opposition to Al Haramain's Rule 72 Objection to the Court's October 28, 2010 Ruling, filed on November 29, 2010.

11. Reviewing, summarizing, conferencing regarding the Court's order entered on January 17, 2012, overruling Al Haramain's Rule 72 Objection to the Court's October 28, 2010 Ruling.

12. Reviewing past discovery and requests and drafting supplemental requests to Al Haramain to obtain withheld documents, served on July 31, 2012.

13. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' motion for sanctions against Al Haramain, with Declaration and Exhibits, sent to the Court on January 9, 2013.

14. Reviewing, summarizing, conferencing regarding Al Haramain's opposition to Plaintiffs' motion for sanctions against Al Haramain, sent to the Court on January 31, 2013

15. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' reply to Al Haramain's opposition to Plaintiffs' motion for sanctions against Al Haramain, sent to the Court on February 7, 2013.

16. Reviewing, summarizing, conferencing regarding Al Haramain's Notice of Filing, filed on February 14, 2013.

17. Reviewing, summarizing, conferencing regarding Al Haramain's Notice of Filing, filed on February 22, 2013.

18. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' reply to Al Haramain's Notices of Filing, filed on February 27, 2013.

19. Coordinating, conducting legal and factual research, conferencing attendant to the hearing before Magistrate Judge Maas concerning Plaintiffs' motion for sanctions against Al Haramain, on March 19, 2013.

20. Reviewing, summarizing, conferencing regarding the Court's October 28, 2013 Report and Recommendation.

21. Reviewing, summarizing, conferencing regarding Al Haramain's Rule 72 Objection to the Court's October 28, 2013 Report and Recommendation, filed on November 13, 2013.

22. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' opposition to Al Haramain's Rule 72 Objection to the Court's October 28, 2013 Report and Recommendation, filed on December 2, 2013.

14. In addition to independent investigations exemplified in the statements above regarding Jelaidan, the list included below identifies legal and factual research,

memoranda and other legal submissions, preparation, meetings, communications, and hearings for which Plaintiffs' counsel expended significant time and resources to litigate the discovery abuse issues and associated sanctions issues concerning Wa'el Jelaidan.

**Summary of Tasks For Which Fees and Expenses Are Requested re Wa'el Jelaidan**

1. Reviewing Jelaidan document productions to identify deficiencies; independently investigating Jelaidan and his financial account; conferencing among the PECs to consider/plan motion; meeting and conferring with Jelaidan counsel.

2. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' motion to compel Jelaidan, sent to the Court on October 17, 2011.

3. Reviewing, summarizing, conferencing regarding Jelaidan's opposition to Plaintiffs' motion to compel Jelaidan, sent to the Court on October 31, 2011.

4. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' letter in further support of Plaintiffs' motion to compel Jelaidan, sent to the Court on November 9, 2011.

5. Coordinating, conducting legal and factual research, and conferencing attendant to the hearing before Magistrate Judge Maas concerning Plaintiffs' motion to compel Jelaidan, on November 16, 2011.

6. Reviewing past discovery and requests and drafting supplemental requests to Jelaidan obtain withheld documents, served on July 31, 2012.

7. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' motion for sanctions against Jelaidan, with Declaration and Exhibits, sent to the Court on January 30, 2013.

8. Reviewing, summarizing, conferencing regarding Jelaidan's opposition to Plaintiffs' motion for sanctions against Jelaidan, sent to the Court on March 1, 2013.

9. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' reply to Jelaidan's opposition to Plaintiffs' motion for sanctions against Jelaidan, sent to the Court on March 12, 2013.

10. Coordinating, conducting legal and factual research, conferencing attendant to the hearing before Magistrate Judge Maas concerning Plaintiffs' motion for sanctions against Jelaidan, on March 19, 2013.

11. Reviewing, summarizing, conferencing regarding the Court's October 28, 2013 Report and Recommendation.

12. Reviewing, summarizing, conferencing regarding Jelaidan's Rule 72 Objection to the Court's October 28, 2013 Report and Recommendation, filed on November 13, 2013.

13. Coordinating, conducting legal and factual research, drafting, reviewing, and editing attendant with Plaintiffs' opposition to Jelaidan's Rule 72 Objection to the

6

Court's October 28, 2013 Report and Recommendation, filed on December 2, 2013.

15.     Attached hereto as Exhibits B and C are billing entries indicating the amount and value of time spent by each attorney and one investigative researcher for work performed related to the entries referenced in Paragraphs 13 and 14, the unenhanced presumptively reasonable fee calculation based on each firm's current billing rates, and each firm's expenses. The summaries were prepared based on contemporaneous data maintained by each firm and that include only time and expenses related to the sanctioned discovery disputes and fee applications versus Al Haramain and Wa'el Jelaidan. The time spent in preparing this application for fees and reimbursement of expenses has been separately identified.

16.     With respect to the standing of each firm, and qualifications and experience of the various attorneys and staff within each firm, and in support of the reasonableness of the billing rates for each of the attorneys and professional support staff, attached hereto as Exhibits E through H are biographies of the relevant firms, attorneys, and professional support staff who worked on the matters identified in Paragraphs 13 and 14. Each biography was prepared at the direction of and reviewed by the relevant attorneys of the firms who have worked on these Actions[2].

17.     The total number of hours spent on the efforts identified in Paragraph 13 (concerning Al Haramain) is 637.50. The total presumptively reasonable fee for those hours, before applying any enhancement, is $417,694.21. *See* Exhibit B.

---

[2] Because Mr. Bonin is no longer an attorney at Cozen O'Connor, the biography included for him represents his biography as it existed while he was at Cozen O'Connor and was reviewed by Mr. Tarbutton for that purpose.

7

18. The total number of hours spent on the efforts identified in Paragraph 14 (concerning Wa'el Jelaidan) is 437.65. The total presumptively reasonable fee for those hours, before applying any enhancement, is $273,192.97. *See* Exhibit C.

19. The total number of hours spent in preparing this application for fees and reimbursement of expenses for all four of the law firms representing the plaintiffs in all of the cases is 64.50. The total presumptively reasonable fee for those hours, before applying any enhancement, is $45,922.50. This time and value is indicated within the time entries in Exhibit D and is not included in the hours or values identified in paragraphs 17 and 18 of this declaration.

20. The law firms' presumptively reasonable fees are based upon the firms' billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the firms' billing rates.

21. As itemized chronologically in Exhibits B and C, the law firms' have incurred a total of $6,029.21 in unreimbursed expenses incurred in connection with the efforts identified in Paragraph 13 (concerning al Haramain) and a total of $2,710.47 in unreimbursed expenses incurred in connection with the efforts identified in Paragraph 14 (concerning Wa'el Jelaidan). *See* Exhibits B and C.

22. Attached hereto within Exhibit B and C are the supporting documentation for the expenses incurred in connection with the efforts identified in Paragraphs 13 and 14 and for which the firms seek reimbursement. These expenses are reflected on the books and records of each firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

23. Attached hereto are true and correct copies of the following additional exhibits referenced within Plaintiffs' Memorandum of Law:

(a) Exhibit I – relevant excerpts of the transcript of the October 28, 2010 hearing before Magistrate Judge Maas.

(b) Exhibit J - relevant excerpts of the transcript of the April 26, 2011 hearing before Magistrate Judge Maas.

(c) Exhibit K - relevant excerpts of the transcript of the June 23, 2011 hearing before Magistrate Judge Maas.

(d) Exhibit L - relevant excerpts of the transcript of the November 16, 2011 hearing before Magistrate Judge Maas.

(e) Exhibit M - relevant excerpts of the transcript of the February 15, 2012 hearing before Magistrate Judge Maas.

(f) Exhibit N - relevant excerpts of the transcript of the December 20, 2013 hearing before Magistrate Judge Maas.

(g) Exhibit O – Mike Mintz, "New Report Finds Law Firm Hourly Billing Rates Continuing to Rise," Martindale-Hubbell, May 9, 2012

(h) Exhibit P - Karen Sloan, The National Law Journal, NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202637587261?slreturn= 20140023124124#

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2014.

_____
Robert T. Haefele

9