# Exhibit K

```
                                                              1
        16N4TERC
1       UNITED STATES DISTRICT COURT
1       SOUTHERN DISTRICT OF NEW YORK
2       ------------------------------x
2
3       IN RE:  TERRORIST ATTACKS
3       ON SEPTEMBER 11, 2001              03MDL1570(GBD)(FM)
4
4       ------------------------------x
5
5                                         June 23, 2011
6                                         11:35 a.m.
6
7       Before:
7
8                            HON. FRANK MAAS
8
9                                         Magistrate Judge
9
10                           APPEARANCES
10
11      ANDERSON KILL & OLICK
11           Attorneys for O'Neill Plaintiffs and PECs
12      JERRY S. GOLDMAN
12
13      COZEN O'CONNOR
13           Attorneys for Federal Insurance Plaintiffs and PECs
14      SEAN P. CARTER
14      J. SCOTT TARBUTTON
15
15      MOTLEY RICE
16           Attorneys for Burnett Plaintiffs and PECs
16      ROBERT T. HAEFELE
17
17      CLIFFORD CHANCE
18           Attorneys for Defendant Dubai Islamic Bank
18      BY:  RONI BERGOFFEN (via telephone)
19
19      McMAHON & ASSOCIATES
20           Attorneys for Defendants IIRO, MWL and Wa'el Jelaidan
20      BY:  MARTIN McMAHON (via telephone)
21
21      STEVEN BARENTZEN (via telephone)
22           Attorney for Defendant Jamal Barzinji
22
23
24
25
                       SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

16N4TERC

 1              THE COURT:  Let me just interrupt.  I understand part
 2  of the difficulty is that you have not been to the kingdom.  I
 3  am not suggesting that you need to invest your own money in the
 4  case.  Quite the opposite; I think that privately retained
 5  attorneys are entitled to be paid, and I have never kept in a
 6  case an attorney who was not getting paid who wished to exit a
 7  case.
 8              But whether it's because of Saudi regulations or
 9  whatever, documents were not produced on a schedule which is
10  consistent with my order which was that these 8 narrow
11  categories were to be produced within 30 days, I think 30 days
12  of April 12.  I am pretty sure it was as of April 12.  Even it
13  was April 26, we are still more than a month beyond the
14  deadline for the 8 narrow categories.
15              So it seems to me, and you are telling me that after
16  the conference rather than shortly before the conference, you
17  are going to be getting back to Mr. Carter, which basically
18  means there is no way to know what the outcome of that would be
19  today.  So I guess I somewhat share plaintiffs' frustration.
20  One thing that your clients ought to be concerned about is that
21  I can't worry about issues like Saudi approvals for attorney
22  fees.
23              What inevitably may happen in this case is that if
24  responsive documents are not produced, and Mr. Carter and his
25  colleagues are able to show that the documents exist and should

16N4TERC

1   be produced, some of the tenor of what they said in the prior
2   conferences suggests to me that they may have specimens of
3   documents from whatever sources that enable them to show that
4   there are categories of reports that exist, which at least as
5   of now have not been produced.  If they make a sufficiently
6   persuasive showing, your clients may be faced with the prospect
7   that I issue case-dispositive sanctions.
8         So, I will let you finish talking but I just wanted
9   you to understand my concerns and where we collectively may all
10  be headed.  Go on.
11        MR. McMAHON:  I appreciate that, your Honor.  You have
12  always being struck me as being a very level-headed guy and you
13  are trying to satisfy the plaintiffs' needs and you are
14  cognizant of the fact that we are dealing with a foreign
15  country.  What my point is that we have produced everything
16  that was called for in terms of the 8 categories for both MWL
17  and IIRO-SA and we now have that format.  I am going to send
18  that to Mr. Carter in about an hour or so.  I am waiting on our
19  translator to tell me some other things, but we can certainly
20  get that to him.
21        That is our position that we have complied.  I
22  apologize.  It was not timely in terms of if you set this down
23  for 30 days.  Mr. al Rahdi is just super overworked.  He can't
24  get the resources he needs to do all sorts of stuff.  He's been
25  killing himself.  He has produced a ton of things.  I have sent

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

16N4TERC

1  court issued a subsequent order on April 27, directing the IIRO
2  to produce documents relating to other unrelated issues,
3  distinct from the 8 categories.  Those included records
4  relating to Mohammed Jamal Khalifa, another individual named
5  Wa'el Jelaidan, and the director named al Mujil.
6          Since the April 27 order was issued there has been
7  absolutely no production relative to any of those issues.  So
8  there has been a focus on a few discrete aspects of the 8
9  categories.  We don't think that that is complete.  There has
10  been nothing as to the other order.
11         Adding to the problems, Mr. McMahon suggested there
12  was a conciliatory tone.  What there wasn't was any outreach to
13  us in advance of any of the expirations of these deadlines at
14  all to let us know that there was going to be a problem, to let
15  us know that they were not going to be able to comply with the
16  court's order.  It's all after the fact and only after we
17  invest the time and effort to come before the court again on an
18  issue that really should have been put to bed.
19         THE COURT:  What I am inclined to do is to put this
20  over to the July 12 or 13 conference.  I think I have made my
21  position clear which is that if a persuasive showing can be
22  made that MWL and IIRO have not fully complied with the rulings
23  that I made on April 12 and April 26, those organizations may
24  be facing a more formal motion that I would entertain which if
25  my recommendation were to be accepted by Judge Daniels might

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16N4TERC

1  lead to the entry of default judgments against those
2  organizations.  By the same token, if you are not getting paid
3  and move to withdraw on another route, they could end up in the
4  same position.
5          So I am inclined to put this off because there is not
6  much point in my simply saying you really have to comply with
7  orders that I last time and the time before said you really
8  have to comply with.  But really the burden is it seems to me
9  on your clients, Mr. McMahon, to establish that they have
10  complied, putting aside questions of timeliness of the
11  compliance.
12          I don't think I said it before, but as far as I am
13  concerned anything that is produced by anybody needs to be
14  Bates-stamped because it's difficult enough that we are dealing
15  with documents in Arabic and there may be translations down the
16  road, if we have piles of documents that are not Bates-stamped,
17  this is rapidly going to spin even more out of control than it
18  may be now.
19          MR. CARTER:  Your Honor, we have a double problem with
20  regard to Bates-stamping as far as the IIRO is concerned.
21  There were documents produced without Bates stamps.  Then there
22  was another production which repeated Bates stamps that were
23  used in an earlier production with regard to different
24  documents.  So for instance, I directed Mr. Haefele to a
25  particular Bates stamp the other day and he was looking at a

16N4TERC
```
 1   period after 1992.
 2          MR. McMAHON:  How can it be?  He was in jail; he was
 3   under arrest.
 4          MR. CARTER:  He was briefly detained in the United
 5   States; he was not in jail throughout that period of time.
 6          THE COURT:  One thing that Mr. McMahon had suggested
 7   was that the person you are relying on to review the documents,
 8   or I guess the indices, have a discussion with the person who
 9   the defendants are using for the same purpose and I guess I
10   don't see much harm in that.  Why should that not occur?
11          MR. CARTER:  There's a whole group of people who need
12   to be used to analyze this information.  The analysis of
13   information in this case requires a rather unique set of
14   skills.  It's not really translating; it's having substantive
15   knowledge regarding particular activities, particular
16   individuals, networks.
17          THE COURT:  I am really focusing, maybe I didn't make
18   it clear, on the indices, the two indices, and how they were
19   generated, what you perceive as the shortcomings, why they
20   perceive them as adequate, and perhaps dealing with some of the
21   issues where you say just the file organization suggests that
22   there must be must be other indices.  I guess what I am
23   proposing is that whoever is generating that belief on your
24   side communicate with whoever thinks they have done an adequate
25   job on their side as part of an informal meet and confer to see
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300