UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                        :
IN RE                                   :    Case No. 03 MDL 1570 (GBD) (FM)
                                        :
TERRORIST ATTACKS ON                    :
SEPTEMBER 11, 2001                      :
_____:


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES
<u>PURSUANT TO REPORT AND RECOMMENDATION OF OCTOBER 28, 2013</u>**

## <u>TABLE OF CONTENTS</u>

I.      Defendants Improperly Reargue the Underlying Motions.............................................1

II.     Plaintiffs Provided Sufficient Evidentiary Support in the Attorney Declaration and Attached Exhibits to Support Plaintiffs' Fee Application (including the declaration with contemporaneous time records identifying the date, attorney, time expended, and a description of the work performed)............................................................................................................2

III.    Plaintiffs' Hourly Rates are in Line with Prevailing Rates in the Forum.................3

IV.    Plaintiffs' Rates Should not be Reduced for Purported Lack of Success.................7

V.     Plaintiffs' Request for Enhancement was Premised on the Court's Discretion Under Rule 37, Its Inherent Power, and the Need to Deter Defendants' Improper Conduct, a Key Purpose of Rule 37. ......................................8

VI.    Plaintiffs' Revised Hours are Reasonable in These Hotly-Contested Discovery Disputes Involving Multiple Defendants, Multiple Groups of Plaintiffs, Multiple Filings by Each Side, and Spanning More Than Five Years. ...................................................................................................................9

VII.    Plaintiffs are Entitled to Reasonable Expenses Incurred in Bringing the Motions. ............................................................................................................... 13

VIII.   Conclusion. ............................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65 (2d Cir. 2005) ................................................... 6

*Anthony v. Franklin First Fin. Ltd.*, 844 F. Supp 2d 504 (S.D.N.Y. 1994), .......................... 3

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91 (2d Cir. N.Y. 2004) ............................................................................................... 6

*Ceglia v. Zuckerberg*, No. 10-CV-00569, 2012 U.S. Dist. LEXIS 18438 (W.D.N.Y. Feb. 14, 2012) ................................................................................................... 8

*Colbert v. Furumoto Realty*, 144 F. Supp. 2d 251 (S.D.N.Y. 2001) ................................... 11

*Colozzi v. St. Joseph's Hosp. Ctr.*, No. 5:08-CV-1220 (DNH/DEP), 2010 U.S. Dist. LEXIS 88685 (D.N.Y. 2010). ....................................................................................... 8

*Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148 (2d Cir. 1994) ................................. 2

*House v. Wackenhut Services, Inc.*, No. 10 Civ. 9476 (CM)(FM),  2012 U.S. Dist. LEXIS 118416 (S.D.N.Y. Aug. 9, 2012) .................................................................... 4

*In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 173674 (S.D. Ill. Dec. 9, 2013) ...................................................................................... 8

*Moreno v. Empire City Subway Co.*, 2008 U.S. Dist. LEXIS 118432 (SD.N.Y. 2008) ...................................................................................................................... 13

*New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983) ...................................................................................................................... 9

*Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*, No. 11 Civ. 1237 (LGS)(JCF) 2013 WL 3871394 (S.D.N.Y. July 26, 2013) ................................ 2

*On Time Aviation v. Bombardier Cap. Inc.*, 354 Fed. App'x 448 (2d Cir.) .......................... 8

*Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23 (2d Cir. 1983) .................................... 6

*Puglisi v. Underhill Park Taxpayer Assocs.*, 964 F. Supp. 811 (S.D.N.Y. 1997) ............. 2, 6

*Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224 (2d Cir. 2006) .................................... 6

*Rozell v Ross-Holst*, 576 F. Supp 2d 527 (S.D.N.Y. 2008) ................................................. 11

*Seigal v. Merrick*, 619 F.2d 160 (2d Cir. 1980) ...................................................................... 7

*Shamir v Anchor-Int'l Foundation*, No. 10 Civ. 725 (PGG), 2013 WL 4008635
   (S.D.N.Y. July 30, 2013), ................................................................................................ 3

*United States Football League v. National Football League*, 704 F. Supp. 474
   (S.D.N.Y. 1989). ...................................................................................................... 1, 10

## **<u>Rules and Regulations</u>**

Federal Rules of Civil Procedure Rule 37 .................................................................. 2, 8, 11

The litany of grounds defendants recite for denying or reducing fees is indicative of defendants' efforts either to re-litigate impermissibly the propriety of the Court's existing order assessing fees and expenses or to posture themselves for negotiating a lower value in the Court's assessment. Both defendants' oppositions simply check off the typically recited bases with little support for their assertions. But the burden of establishing that a reduction is proper is on the party moving for reduction. *United States Football League v. National Football League*, 704 F. Supp. 474, 484 (S.D.N.Y. 1989). In the process of checking off each of the standard objections, defendants identified a few appropriate grounds for plaintiffs to reduce fees, and plaintiffs will agree to do so in accordance with applicable case law.[1] Accordingly, plaintiffs are submitting with this brief an amended declaration with revised spreadsheet exhibits detailing the revisions.[2]

## I.      Defendants Improperly Reargue the Underlying Motions.

Before we address the defendants' laundry list of objections, we first address Jelaidan's first argument, that "Defendant Made Multiple Good-Faith Attempts to Obtain the Requested Documentation." Jelaidan Opp'n at 2. The Court made specific findings that Jelaidan's assertion that he made good faith attempts to obtain documents "is not supported by the record," Exh. A at 9, that Jelaidan's conduct "can only be characterized as proceeding in bad faith," *id*. at 9, and that "Jelaidan has willfully disregarded his discovery obligations and acted in bad faith," *id*. at 15. A submission concerning calculation of the monetary sanction to which Jelaidan is

---

[1] Al Haramain dramatizes a single obvious error made twice within plaintiffs' original supporting declaration, presumably to encourage a view that all of plaintiffs' efforts and the supporting figures plaintiffs provided should be considered suspect. But the error, found in only paragraphs 17 and 18 of the original declaration, was due simply to inadvertent use in those paragraphs of figures from the "Grand Total" columns of the first pages of Exhibits B and C (to the Original Declaration), rather than the numbers from the "Total Billing" columns. Those errors are corrected in plaintiffs' Amended Declaration.

[2] Rather than requiring the Court and defendants to look back and forth between the original and amended declarations, plaintiffs are filing an Amended Declaration representing plaintiffs' revised product, including the revised spreadsheets and two additional exhibits referenced herein. Except where specified otherwise, references herein to exhibits refer to exhibits to the Amended Declaration of Robert T. Haefele filed with this brief.

obligated is not the proper vehicle to reargue the merits of the underlying sanctions motion. *Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*, No. 11 Civ. 1237 (LGS)(JCF) 2013 WL 3871394, *1 (S.D.N.Y. July 26, 2013); *see* E. & S.D.N.Y Local Rule 6.3.

Al Haramain similarly tries to re-litigate the underlying motion by arguing in its "Legal Standard" argument that "the court must not order this payment if … other circumstances make an award of expenses unjust." AHIF Opp'n at 4.  The Court has already determined that an award of attorney fees and expenses under Rule 37 is appropriate.  The only issue for determination here is the appropriate amount of those fees and expenses.

**II.     Plaintiffs Provided Sufficient Evidentiary Support in the Attorney Declaration and Attached Exhibits to Support Plaintiffs' Fee Application (including the declaration with contemporaneous time records identifying the date, attorney, time expended, and a description of the work performed).**

The contemporaneous time records attached to plaintiffs' attorney declaration provide all of the information needed for the Court's consideration, including records reflecting the date, time expended, by whom, and a description of the tasks performed.  *Puglisi v. Underhill Park Taxpayer Assocs.*, 964 F. Supp. 811, 817 (S.D.N.Y. 1997) ("Central to the application for attorneys' fees is the submission of adequate time records reflecting the time expended, by whom, and for what.").  Defendants' insistence that plaintiffs produce the time entries in their original form is contrary to settled Second Circuit law.  *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160-1161 (2d Cir. 1994) (Attorney affidavits setting forth charges with specificity, reconstructed from contemporaneous records satisfy the standard); *Puglisi,* 964 F. Supp. at 817 ("[R]econstruction of [the associated] work and billing on a computer is adequate.").  Accordingly, the time records in plaintiffs' submission, presented in a uniform spreadsheet format to make the four firms' entries easier to review and ensure accurate math calculations, are sufficient for the Court's consideration.

Defendants' assertion that individualized sworn affidavits are necessary from each of the attorneys or each of the law firms, citing *Shamir v Anchor-Int'l Foundation*, No. 10 Civ. 725 (PGG), 2013 WL 4008635 *13-14 (S.D.N.Y. July 30, 2013), is not borne out by that case or any other case and places unnecessary form over substance. *Shamir* simply faults the submission in that case because the fee petitioner "submitted only an unsworn, unauthenticated document that does not substantiate the dates when work was performed, the hours expended, or the nature of the work completed by the various timekeepers" and noted that petitioner "had not put forth either a sworn or unsworn statement representing that his submission constituted a compilation of contemporaneous time records." *Id*. at 14. Here, plaintiffs submitted an attorney declaration that met all of those requirements.[3]

Similarly, defendants' contention that plaintiffs *must* provide copies of their fee retainers for the Court's consideration is also unsupported by the case defendants cite. That case, *Anthony v. Franklin First Fin. Ltd*., 844 F. Supp 2d 504 (S.D.N.Y. 1994), does not require (or even encourage) retainers to be submitted for a court's consideration. It merely stands for the proposition that, where the fee petitioner *does* submit a retainer to demonstrate the hourly rates clients have agreed to pay, courts afford significant weight to the hourly rate identified in the retainer as supportive of the hourly rate sought in the petition. *Id*. at 508. Moreover, to the extent that retainers are for contingency fees, with no reference to hourly rates, they are irrelevant to the hourly fee issue.

III.   **Plaintiffs' Hourly Rates are in Line with Prevailing Rates in the Forum.**

Ignoring all that plaintiffs submitted for the Court's consideration about the firms and the attorneys, and relying only on instances where courts considered and approved petitions by other

---

[3] To the extent the Court needs individual attorney declarations from each firm affirming what is already in the declaration before the Court, plaintiffs can comply.

attorneys, in other matters, and for lesser rates, defendants argue that the rates sought by plaintiffs here, as a logical extension, *must* be considered excessive.  But the mere fact that, in other cases, courts have approved lesser rates does not demand the conclusion that the rates for counsel here are excessive.  Indeed, as indicated by the authority cited in plaintiffs' moving brief, identifying standard rates in New York City as high as $1,000 (and more) per hour and a median rate of $756 per hour (Plaintiff's Br. at 14; Exh. O at 1), plaintiffs' counsel's rates, ranging from $450 to $800 per hour are not excessive.

Further indication of the reasonableness of plaintiffs' billing rates here is the fact that they are comparable to the unadjusted DC billing rates for each of the attorneys set out in the Laffey Matrix, with which this Court is familiar from its application in *House v. Wackenhut Services, Inc*., No. 10 Civ. 9476 (CM)(FM),  2012 U.S. Dist. LEXIS 118416, *4-5 (S.D.N.Y. Aug. 9, 2012)(Judge Maas).  As the Court noted there, although the Laffey matrix is not binding, *id*. at *6, when considered in conjunction with plaintiffs' other evidence it adds to the already ample bases indicating that plaintiffs' rates are reasonable.[4]

| Comparison of Current Rates to Laffey Matrix Rates[5] | | | | |
|---|---|---|---|---|
| **Attorney** | **Year** | **Rate** | **Adj. Laffey DC Rate** | **Adj. Laffey Rate w/ NY Adjustment** |
| Motley Rice | | | | |
| Jodi Westbrook Flowers | 1993 (20+) | $800 | $771 | $871 |
| Robert T. Haefele | 1989 (24+) | $750 | $771 | $871 |
| Elizabeth Smith | 2000 (13+) | $600 | $640 | $740 |
| John M. Eubanks | 2003 (10+) | $550 | $567 | $667 |
| Brian Frutig | 2008 (5+) | $400 | $393 | $493 |
| Cozen O'Connor | | | | |
| Sean P. Carter | 1996 (17+) | $750 | $640 | $740 |
| J. Scott Tarbutton | 2001 (12+) | $600 | $640 | $740 |

---

[4] In addition to plaintiffs' rates being comparable to the Laffey Matrix rates, the rates are in step with rates identified in a 2012 study by legal consulting group Major, Lindsey & Africa and the research unit of ALM Media, which found that, in 2012, the average lawyer billing rate in NY was about $100 higher per hour than in DC (NY, $760 per hour; DC, $662 per hour, regardless of tenure). *See* Exhibit Q (a full copy of the report is located at http://www.mlaglobal.com (search "2012 compensation survey," select "2012 Survey") (last visited Mar. 7, 2014).

[5] *See* Exhibit R, www.laffeymatrix.com/see.html (last visited Mar. 7, 2014).

| Adam Bonin | 1997 (16+) | $500 | $640 | $740 |
|---|---|---|---|---|
| **Kreindler** | | | | |
| James P. Kreindler | 1980 (33+) | $800 | $771 | $871 |
| Andrew J. Maloney III | 1988 (25+) | $750 | $771 | $871 |
| **Anderson Kill** | | | | |
| Jerry S. Goldman | 1976 (37+) | $800 | $771 | $871 |
| Rene F. Hertzog | 2007 (6+) | $475 | $393 | $493 |

Defendants' are misleading in their contention that plaintiffs should not be permitted to apply "Wall Street" firm rates because plaintiffs have not argued to apply "Wall Street" firm rates, a presumably pejorative "spin" introduced by defendants in their opposition. First, the cases cited and at least one of the two reported surveys identify median *New York City* billing rates – *i.e.,* rates in New York City, not rates at "Wall Street" firms. For example, one survey (Exhibit O) reported that the *median* billing rate in *all of New York City* in 2011 was $756 per hour, reporting on rates in all of New York City, not just so-called "Wall Street" firms. Second, the one survey that *could* be interpreted as analyzing so-called "Wall Street" firms (Exhibit P), indicated that those firms regularly bill well *over* $1,000 per hour and in some instances close in on $2,000 per hour. Interestingly, that list includes a number of firms that, at one point or another, appeared in this litigation, either for plaintiffs (*e.g*., Dickstein Shapiro) or for defendants (*e.g*., Wilmer Cutler).[6] Finally, the various other sources that plaintiffs offered all report rates in New York City overall, not specific to so-called "Wall Street" firms. To the extent that New York location is considered significant, it is worth noting that each of the four law firms at issue has at least one Manhattan office – all with Midtown offices near Park Avenue, and one with a second office in the Financial District near Wall Street.

---

[6] To the extent that plaintiffs' rates are argued to be out of line with prevailing rates, the Court should consider the rates of the counsel representing the various defendants who have appeared in the litigation, including the rates of the lawyers presently opposing this application, as well as the rates for lawyers at Clifford Chance, Wilmer Cutler, Kellogg Huber, Jones Day, Patton Boggs, DLA Piper, Baker Botts, Arnold & Porter, and other firms appearing on behalf of defendants in the litigation.

Defendants' proposal to use rates based on each lawyer's home office conflicts with the Second Circuit's approach to determining presumptively reasonable fees.  The Second Circuit has made clear that, except in the exceptional circumstance (not present here), "the relevant community for calculation of the lodestar with respect to an attorney's services in this district court is normally the forum district." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 96 (2d Cir. N.Y. 2004); *see Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (the court is to consider the current rate in the forum court); *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005) (the "community" is typically measured by the geographic area where the action was commenced and litigated) (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *Puglisi*, 964 F. Supp. at 816 ("The community to which the district court should look is the district in which the court sits, … in this case the Southern District of New York").

Here, resort to using rates tied to the multiple offices of the various firms representing parties in litigation transferred to the Southern District of New York in the MDL process, ***largely at the defendants' insistence***, would lead to unnecessarily clumsy analyses and illogical results. For example, where work was performed on an MDL matter in New York by counsel admitted either directly or *pro hac vice* in the Southern District of New York, the venue for cases that comprise a substantial amount of their practice over the past decade, resorting to billing rates for each of the various attorneys based on where their firms' "home" offices are is arbitrary.  For example, based on defendants' proposal, attorney Haefele's rates should be premised on prevailing rates for the South Carolina federal court, although he is not admitted to practice before that court and is admitted to practice before the Southern District of New York. Moreover, defendants would ask the Court to bill attorney Smith at the South Carolina federal

court's prevailing rates, too, despite the fact that her home office has been either in New York or in Washington, D.C. And if the forum where a plaintiff filed the case is to be considered, in at least one of the MDL cases, the *Burnett* matter, it was filed in the federal court in the District of Columbia before being transferred to New York.  Finally, each of the firms, contrary to defendants' implications, are far from the small, locally-based firms presumed in defendants' arguments.  All of the plaintiffs' firms are highly reputable firms within their various practice areas, involved in some of the leading litigation pending in U.S. courts (including this matter), as outlined in the submissions provided to the Court at Exhibits E-H, with multiple offices either nationally or internationally.  In short, defendants' proposal, at least here, invites substantial, needless analysis of each of the attorney's individual circumstances unwarranted under the Second Circuit's presumptive approach.

**IV.     Plaintiffs' Rates Should not be Reduced for Purported Lack of Success.**

The Court should not reduce plaintiffs' presumptively reasonable fee for lack of success. Plaintiffs' central assertion was that defendants acted wrongly in discovery and that a remedy was essential to address defendants' contumacy and deter these and other defendants from similar wrongdoing.  By deciding in plaintiffs' favor in each of plaintiffs' four discovery motions – including motions against Jelaidan, Al Haramain, and two others – imposing fees against the two defendants presently before the Court, this Court has confirmed the accuracy of plaintiffs' central assertion.  The fact that the remedy imposed did not include alternative remedies suggested does not mean plaintiffs were unsuccessful.  *See also Seigal v. Merrick*, 619 F.2d 160, 164-165 (2d Cir. 1980) ("[W]e do not approve the deduction for work on legal theories that proved 'unfruitful' but were not found to have been frivolous. Lawyers . . . must . . . prosecute suits on the basis of the entire spectrum of theories that show early promise of vindicating their clients' rights. . . . To reward only the pursuit of a successful theory in cases . . .

undercompensates the inevitable exploratory phases of litigation, and may also invite overly

conservative tactics or even prohibit some high-risk but deserving actions entirely.")

## V.    Plaintiffs' Request for Enhancement was Premised on the Court's Discretion Under Rule 37, Its Inherent Power, and the Need to Deter Defendants' Improper Conduct, a Key Purpose of Rule 37.

Defendants oppose plaintiffs' request for a lodestar enhancement on the mistaken notion

that the request was premised on the "complexity" or "novelty of the issues."  Although plaintiffs

do not dispute that this MDL litigation is complex, one-of-a-kind litigation, the complexity and

novelty are not the bases for the enhancement sought.  As plainly articulated in plaintiffs'

moving brief, the enhancement is necessary to curb defendant's abuses, Plaintiffs' Br. at 17

(citing *On Time Aviation v. Bombardier Cap. Inc*., 354 Fed. App'x 448, 452 (2d Cir.)) and " to

assure [the Rule 37 sanction's] deterrent objective is achieved."  Plaintiffs' Br. at 17 (quoting

*Ceglia v. Zuckerberg*, No. 10-CV-00569, 2012 U.S. Dist. LEXIS 18438 (W.D.N.Y. Feb. 14,

2012)).

Under both Rule 37 and the Court's inherent authority, it has discretion to enter orders to

achieve the orderly management of the cases before it and to assure that the litigants and their

attorneys comply with those orders.  *See Colozzi v. St. Joseph's Hosp. Ctr*., No. 5:08-CV-1220

(DNH/DEP), 2010 U.S. Dist. LEXIS 88685, 4-7 (N.D.N.Y. July 20, 2010).  Here, where a

pattern of noncompliance is evident, not only by these two defendants specifically but also by

other defendants in the MDL, a financial sanction sufficient to seize the defendants' attention,

punish the defendants, and compensate the plaintiffs is essential to meet the Court's need to

manage the litigation.  Plaintiffs have urged the enhancement based on the view that the separate

amounts attributable to each defendant without the enhancement would be insufficient to meet

the deterrence or punitive purposes of Rule 37.  *See In re Pradaxa (Dabigatran Etexilate) Prods.*

*Liab. Litig*., No. 3:12-md-02385-DRH-SCW, 2013 U.S. Dist. LEXIS 173674, *71-72 (S.D. Ill.

- 8 -

Dec. 9, 2013) (Under Rule 37 and the court's inherent powers, imposing $931,500 ($500 per case) financial sanction on defendant "to encourage defendants to respect this Court and comply with its orders").

**VI.   Plaintiffs' Revised Hours are Reasonable in These Hotly-Contested Discovery Disputes Involving Multiple Defendants, Multiple Groups of Plaintiffs, Multiple Filings by Each Side, and Spanning More Than Five Years.**

In massive, complex litigation where various groups of plaintiffs are represented by distinct counsel, two separate executive committees with various attorneys representing the interests of distinct groups of plaintiffs and where defendants have vehemently contested nearly every discovery effort and every application by plaintiffs, the Court should resist defendants' invitation to second-guess plaintiffs' efforts to make necessary preparations for the anticipated opposition by defendants.

Defendants two objections alleging excessive hours are: (1) that the plaintiffs had too many lawyers in attendance at conferences and (2) that plaintiffs' counsel spent excessive time over the course of the multiple years engaged in these discovery disputes conferring among the plaintiffs' counsel.  First, as a matter of Second Circuit law, plaintiffs are not barred from receiving fees for sending a second attorney to the various court proceedings.  *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).  Indeed, given the size and complexity of the litigation, the intensity of defendants' opposition, and the differing interests of the various plaintiffs, it is more than appropriate to have each camp of plaintiffs have representatives present and providing their input (whether it is directly to the court or passed through the lawyer who is speaking) at each of the proceedings and conferring at other times.  In fact, the composition of the multi-part, multi-representative Plaintiff Executive Committees reflects this fact.  *See* Case Management Order 3, ECF No. 248.  Although plaintiffs have coordinated their efforts to preserve efficiency in dealing with the Court and defendants (*see id*),

- 9 -

each attorney is nonetheless representing his or her own individual clients with the respective

obligations attendant thereto.  Indeed, precisely *because* of the efforts to coordinate among all

plaintiffs, substantial amount of behind-the-scenes conferring is all the more essential.[7]

Nonetheless, when considered in context, the time spent conferring among the PECs (roughly

estimated at 35 conference hours devoted to efforts concerning both defendants during the more

than three year period comprising plaintiffs' efforts to compel the two defendants) is in no way

excessive.[8]

        Given that defendants consistently have hotly contested nearly every aspect of discovery,

they should not be heard to question the substantial nature of plaintiffs' efforts to prepare.  *See*

*United States Football League*, 704 F. Supp. at 486-487 (Where fee applicant "reasonably

believed that its application would be hotly contested and spent considerable time making the

necessary preparations . . . [the opposing party] will not be heard to complain now of

inefficiencies for which it was in significant part responsible.").

        Defendants' assertion that time for reviewing defendants' document productions should

not be recoverable ignores the real life context of the billing entries.  Defendants contend the

time is unrecoverable because plaintiffs would have reviewed the documents anyway.  But that

assertion ignores that each of the instances of billing for reviewing documents in the time records

is reflective of a review specifically geared toward locating and analyzing documents particular

---

[7] Relevant to the question these defendants present is whether defendants generally have had multiple lawyers present at proceedings (they have), whether defendants have billed their clients for the additional lawyers' time, and whether they have billed for time when the various lawyers have met to discuss the litigation.  To the extent that plaintiffs' individual billing is analyzed, production of the comparable practices of the defendants should also be required for comparable analysis and comparison.

[8] Defendants' assertion that plaintiffs double-billed is wrong.  For example, Al Haramain asserts that plaintiffs billed separately to Jelaidan and Al Haramain the same two hours for two PEC meeting on March 19, 2013 concerning Jelaidan's and Al Haramain's motions.  Kabat Decl.. at ¶7.  But, as indicated by the asterisk next to those references on the spreadsheets, by the notations in the description, and by the time and value attributed to those entries, the time and value for those meetings were divided equally between the two defendants.

to advancing plaintiffs' motions.  In that context, the time and resulting fees were "incurred in making the motion," as referenced in Rule 37(a)(5)(A).

Defendants' argument that so-called "inconsistencies" in entries among the four law firms' billing entries should lead to reduction of the fees lacks factual support and logic.  The examples they offer (an attorney at one firm from South Carolina and two others from Philadelphia billing different amount of time for the same meetings on a given day) may be alternatively explained based on one attorney arriving and departing earlier or later than another attorney, and billing accordingly.  In a context where an attorney at one firm billed for a meeting and another did not, it may simply be that the non-billing attorney missed the billing event and defendants have actually received a windfall in that context.  But nothing in defendants' submission offers anything more than conjecture as to why the entries should not be accepted as entered.[9]

Plaintiffs agree that time entries for travel will be reduced by 50% except in those limited circumstances where the time entries reflect that work was being performed during travel.  *See Colbert v. Furumoto Realty*, 144 F. Supp. 2d 251, 261 (S.D.N.Y. 2001) (50% reduction is not necessary where fee applicant worked during travel).  Plaintiffs note that in most instances work was being performed during travel, particularly during travel leading into a court proceeding when the attorneys were preparing for the proceeding.  However, plaintiffs have agreed that where the time entries do not reflect that work, those entries are being reduced by 50%.  The reduction is reflected on plaintiffs' revised spreadsheets. *Rozell v Ross-Holst*, 576 F. Supp 2d 527, 540 (S.D.N.Y. 2008) (Travel time is appropriately compensated at 50% reduction from

---

[9] A similar response is warranted as to defendants' objection about various billings for various tasks being entered for the same amount of time.  Defendants insist on suspicion while offering nothing more than conjecture about the attorney's billing and time management practices.  For example, it is equally plausible that certain time was allotted to do the various tasks and when the time entries were entered they were entered consistent with the time budgeted.  Defendants' conjecture should be rejected.

normal billing rate and where adjustment is made in reply papers no further reduction is warranted).

Another area where plaintiffs have agreed to reduce either the time or the rate is for certain of the entries identified in Mr. Kabat's paragraphs 5, 6 and 8, requesting reductions for block billing, vague entries, and paralegal tasks. While plaintiffs do not concede that block billing equates with time being prohibited, plaintiffs recognize that, to the extent that the billing makes it difficult to determine whether the time contained in the entry is reasonably billable, a reduction may be appropriate at the Court's discretion. Plaintiffs also agree to reduce the hourly rate for various entries reflecting traditionally non-attorney work to reflect rates for paralegal work. Accordingly, plaintiffs' revised spreadsheets reflect reductions in various entries identified in Mr. Kabat's declaration at paragraphs 5, 6, and 8.

Finally, defendants insist that *additional* substantial percentage reductions are necessary for the various hearings central to these motions. Despite plaintiffs' general view that, in most instances, significant percentage reductions for the proceedings are unwarranted because the practice has been that the proceedings happen only when motions are ready for the Court's consideration (*i.e.*, the other portions of the hearing would not have happened in the absence of the fully-briefed motions), plaintiffs are willing to accede to up to the following percentage reductions for a number of the hearings. For the February 8, 2010 hearing, where both Al Haramain and Sana-Bell motions were argued, plaintiffs will accede to a 50% reduction of the hearing time. For the October 28, 2010 hearing, where Al Haramain was the only motion addressed, no reduction is appropriate. For the December 2, 2010 hearing, where Al Haramain comprised approximately one-third of the dialogue, plaintiffs will accede to a 66% reduction of the hearing time. For the November 16, 2011 hearing, where Jelaidan comprised roughly 20% of

the dialogue and WML/IIRO comprised the remaining 80%, plaintiffs accede to an 80% reduction of the hearing time for Jelaidan. For the March 19, 2013 hearing, where both Al Haramain and Jelaidan (argued jointly with Rabita) were argued, plaintiffs have already split the time between the two defendants.

## VII.   Plaintiffs are Entitled to Reasonable Expenses Incurred in Bringing the Motions.[10]

Defendants argue that travel expenses incurred in prosecuting the motions against them are not reimbursable because the location of the litigation and their counsel was plaintiffs' choice. But that argument ignores several important facts. First, the choice of the multidistrict forum, to a large extent, is a choice of the defendants, who argued to have the MDL centralized in the Southern District of New York. Second, at the time that defendants were refusing to comply with plaintiffs' discovery demands, which prompted plaintiffs to file their motions, defendants were aware of the location of the litigation as well as each of plaintiffs' counsel and took on the risk that any expenses associated with the motions would be borne by the non-compliant defendants.

Lastly, denying the full expenses demonstrated to be on plaintiffs' books is inherently inconsistent with the cases that grant travel time, even at half the rate, particularly where the travel time permitted indicates several hours for longer distance travel. *See, e.g., Moreno v. Empire City Subway Co.*, 2008 U.S. Dist. LEXIS 118432, 15-16 (SD.N.Y. 2008) (Reducing travel time by 50% but leaving in 3.2 hours, representing 6.4 hours of travel time). And while travel time is reduced 50% for alleged non-productivity, the same logic does not apply to expenses actually incurred, which should be fully reimbursed.

---

[10] Plaintiffs do not address defendants' contention concerning whether meals are reimbursable (*see* Kabat Decl. at ¶ 10) because plaintiffs did not included meal charges in the expenses requested. Although internal expense reports and hotel bills were included in the supporting documents, comparison to the corresponding disbursements on those dates on the spreadsheets evidences that meals were excluded. Additionally, notwithstanding defendants conjecture, plaintiffs have been unable to identify any transcripts ordered in an expedited manner, accordingly, that issue is not addressed further.

## VIII.   Conclusion.

For the reasons expressed herein, in plaintiffs' initial brief, and in the amended declaration and attached exhibits, plaintiffs request the following fees and expenses: $259,882.50 for Jelaidan fees; $381,445.00 for Al Haramain fees; $3,710.47 for Jelaidan expenses; $6,029.21 for Al Haramain expenses; and $45,922.50 for the fees to prepare the fee application regarding both defendants and $19,512.50 for the reply regarding both defendants. In addition, to reinforce the deterrence aspect for these and other defendants, plaintiffs request application of a lodestar enhancement and suggest that an appropriate enhancement is 1.5.

Dated:  March 10, 2014

By:

  _s/ Robert T. Haefele_____
Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel:  (843) 216-9000
Fax:  (843) 216-9450

On Behalf of the *Burnett* and *Euro Broker* Plaintiffs and Plaintiffs' Executive Committees

  _s/ Sean P. Carter_____
*with consent by Robert T. Haefele*
Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel:  (215) 665-2000
Fax:  (215) 665-2013

On Behalf of the *Federal Insurance* Plaintiffs and Plaintiffs' Executive Committees

  _s/ James P. Kreindler_____
*with consent by Robert T. Haefele___*
James P. Kreindler, Esq.
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, NY 10017
Tel:  (212) 687-8181
Fax:  (212) 972-9432

On Behalf of the *Ashton* Plaintiffs and Plaintiffs' Executive Committees

  _s/ Jerry Goldman_____
*with consent by Robert T. Haefele   *
Jerry Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000
Fax:  (212) 278-1733

On Behalf of the *O'Neill* Plaintiffs and Plaintiffs' Executive Committees