# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)
*Kathleen Ashton  v. Al Qaeda Islamic Army*, Case No. 02-CV-6977 (RCC) (S.D.N.Y.)
*Thomas E. Burnett, Sr. v. Al Baraka Investment & Development Corp.*, Case No. 03-CV-9849 (RCC) (S.D.N.Y.)

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DEFENDANT WAEL HAMZA JELAIDEN**

**PARTS A and B**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Phone:  (215) 665-2000
June 13, 2006

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**
**DIRECTED TO DEFENDANT WAEL HAMZA JELAIDEN**

Plaintiffs in Federal Insurance Co. v. al Qaida, Case No. 03-CV-6978 (RCC), Kathleen

Ashton v. al Qaeda Islamic Army, Case No. 02-CV-6977 (RCC), and Thomas E. Burnett, Sr. v.

Al Baraka Inv. & Dev. Corp., Case No. 03-CV-9849 (RCC) (collectively "Plaintiffs"), propound

and serve on Wael Hamza Jelaiden, (hereinafter "Jelaiden" or "Defendant") the following

Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34

of the Federal Rules of Civil Procedure, within 30 days of their receipt.

**INSTRUCTIONS**

1.     In producing documents and other things, Defendant is requested to furnish all

documents or things in his possession, custody or control, regardless of whether such documents

or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys,

accountants, auditors, investigators, or other representatives.

2.     Documents are to be produced in full; redacted documents will not constitute

compliance with this request.  If any requested document or thing cannot be produced in full,

Defendant is requested to produce it to the extent possible, indicating which document or portion

of that document is being withheld and the reason that document is being withheld.

3.     In producing documents, Defendant is requested to produce the original of each

document requested together with all non-identical copies and drafts of that document.  If the

original of any document cannot be located, an identical copy shall be provided in lieu thereof,

and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business and the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify to which request(s) they are responsive.

9.      Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

  A.  The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

  B.  The date of the document or transaction involving the information;

  C.  The names of each author and any and all participants with respect to the information;

  D.  The names of any and all signatories of the document, if any;

  E.  The name of the document's current custodian;

  F.  The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

  G.  A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.     For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other

boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

## DEFINITIONS

1.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.     The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3.     The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

4.   The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv) identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

5.   The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6.   The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

7.   The term "Plaintiffs" shall refer to Plaintiffs in Federal Insurance Co. v. al Qaida, Civil Action No. 03-CV-6978 (RCC), Kathleen Ashton v. al Qaeda Islamic Army, Case No. 02-CV-6977 (RCC), and Thomas E. Burnett, Sr. v. Al Baraka Inv. & Dev. Corp., Case No. 03-CV-9849 (RCC).

8.   The terms "Defendant," "You," "Your," and "Jelaiden" shall refer to Wael Hamza Jelaiden and/or any officer, director, trustee, employee, attorney, consultant, accountant, agent, or representative acting on Wael Hamza Jelaiden's behalf.

9. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

10. The term "person" is defined as any natural person or any business, legal or government entity or association.

11. The term "party" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

12. The terms "concerning," "related to" and "relating to" are interchangeable and mean constituting, comprising, containing, describing, evidencing, setting forth, showing, disclosing, describing, explaining, summarizing, or referring to, directly or indirectly.

13. The terms "all" and "each" shall be construed as all and each.

14. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The use of the singular form of any word includes the plural and vice versa.

16. The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

17. The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging,

training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

18.    The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

19.    The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

20.    The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

21.    The term "Golden Chain-Related Individuals" means the following individuals: Suleiman al-Rashid, Abdel Qader Bakri, Bakr Bin Laden and the Saudi Bin Laden Group, Youssef Jameel, Ibrahim Muhammad Afandi, Saleh Abdullah Kamel, Suleiman Abdulaziz Al-Rajhi, Mohammed Bin Abdullah Al-Jomaih, Abdulrahman Hassan Al-Sharbatly, Ahmed Mohamed al-Naghi, Khalid Bin Mahfouz, Abdel Qader Faqeeh, Salah Al-Din Abdel Jawad (a/k/a Salahuddin Abduljawad), Ahmad Turki Yamani (a /k/a Ahmad Zaki Yamani), Abdel Hadi Taher, Mohammed Omar, Ahmad Al-Harbi, Mohammed Al-Issai, Hamad Al-Hussaini, Salem Taher, Adel Abdul Jalil Batterjee, Osama Bin Laden and Wael Hamza Jelaiden.

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DEFENDANT WAEL HAMZA JELAIDEN**

## PART A

A1.    Please provide any and all documents governing, describing, detailing, or otherwise relating to Your employment history from 1985 to the present, including without limitation, any and all resumes, curriculum vitaes, biographies, abstracts, media reports, digests, summaries, employment contracts, and/or outlines.

**ANSWER:**


A2.    Please provide any and all documents relating to any financial accounts held by You in Habib Bank and/or any Habib Bank accounts over which You hold or have held signatory authority, including without limitation, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**


A3.    From the period beginning January 1984 through the present, please provide any and all documents relating to any accounts You hold or held jointly with, or on behalf of Osama Bin Laden (including any member of the Bin Laden family), including without limitation, any accounts over which You held or hold signatory authority.  Such documents shall include, but are not limited to, monthly or annual account statements, correspondence, deposits, withdrawals,

cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**


A4.    Please provide any and all documents relating to the Islamic Republic of Pakistan's investigation and post 9-11 determination to freeze any and all accounts in Your name and/or any accounts over which you hold or held signatory authority, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Islamic Republic of Pakistan, including the following: "Osama Bin-Laden and Wael Jelaiden FC-CD 50051-1 USS 342.04 Habib Bank Limited (HBL) Cantt Br. Peshawar."

**ANSWER:**


A5.    Please provide any and all documents relating to any audit, analysis, examination, or review of Your financial accounts, investments, assets, capital, and/or financial affairs, conducted either by employees of Habib Bank or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

**ANSWER:**


A.6    Please provide any and all documents relating to any financial accounts held by You in Faisal Finance and/or any Faisal Finance accounts over which You hold or have held signatory authority, including without limitation, monthly or annual account statements,

11

correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**


A7.    Please provide any and all documents relating to Switzerland's investigation and post 9-11 determination to freeze any and all accounts in Your name and/or any accounts over which you hold or held signatory authority, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Swiss government.

**ANSWER:**


A8.    Please provide any and all documents relating to any financial accounts held by You in the al Rajhi Banking & Investment Corporation ("al Rajhi") and/or any al Rajhi accounts over which You hold or have held signatory authority, including without limitation, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**


A9.    Please provide any and all documents relating to any financial accounts held by You in the Bank Austria and/or any Bank Austria accounts over which You hold or have held

signatory authority, including without limitation, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**

A10.   Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Taliban, including without limitation, the provision of material support and the facilitating of the movement of recruits for the Taliban from the refugee camps in Bangladesh.

**ANSWER:**

A11.   Please provide any and all documents relating to any joint activities undertaken among and between You, the Muslim World League and/or the International Islamic Relief Organization in Bangladesh, Pakistan and Afghanistan, including without limitation, any business, charitable, financial, and/or religious activities or otherwise.

**ANSWER:**

A12.   Please provide all documents relating to investigations or inquiries conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any

foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by You and/or any accounts over which you hold or held signatory authority.

**ANSWER:**

A13.   Please provide any and all documents relating to any sanctions imposed upon you by the United States, United Nations, or any other nation or international body.

**ANSWER:**

A14.   Please provide all copies of any and all documents and things that have been seized by, or produced by You to, any investigators, auditors, government officials or agencies, and/or international bodies concerning Your alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities.

**ANSWER:**

A15.   From the period beginning January 1988 through 2002, please provide any and all documents relating to communications between You and any person or entity listed as a Specially Designated Global Terrorist by the United States Department of the Treasury.

**ANSWER:**

A16.   Please provide any and all documents relating to any investigations or inquiries conducted by the People's Republic of Bangladesh relating to allegations of Your ties to terrorism, including without limitation, any and all documents relating to the closure of Rabita's office in Bangladesh.

**ANSWER:**

A17.   Please provide any and all documents relating to the Islamic Republic of Pakistan's investigation and subsequent determination to freeze any and all accounts in the name of Rabita Trust, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Islamic Republic of Pakistan, including the following: (a) Rabita Trust (A/C 9254.0) Rs 15,789.53 HBL-Super Market Br. Lahore; (b) Rabita Trust, (A/C 925.7) Rs 352.20 HBL-Super Market Br. Lahore; (c) Rabita Trust (for stranded Pakistanis) (A/C No. 9536-2 and 10206-4 TDR) Rs 807.921.46 HBL Sectt "A" Block Islamabad.

**ANSWER:**

A18.   Please provide any and all documents relating to the joint United States-Saudi Arabian investigation and September 6, 2002 designation of You as a Specially Designated Global Terrorist and "an associate of Usama bin Laden and a supporter of al-Qa'ida terror," including without limitation, any and all documents identifying all of Your accounts, assets, and monies that were frozen by the United States and Saudi Arabia per the September 6, 2002 designation.

**ANSWER:**

A19.   Please provide any and all documents relating to any sanctions imposed upon you by the Kingdom of Saudi Arabia.

**ANSWER:**

A20.   Please provide any and all documents relating to the United Nations' investigation and September 2002 determination to designate You as a terrorist financier.

**ANSWER:**

A21.   Please provide any and all documents relating to the United Nation Mission in Kosovo's ("UNMIK") investigation and April 2000 raid of the SJRC in Pristina.

**ANSWER:**

A22.   Please provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that You, or any person associated with You, was associated with or involved in any military or terrorist activity, plot or attack, indicating an intention to direct conduct against or target conduct toward the United States of America.

**ANSWER:**

A23.   Please provide all documents relating to any and all information or notification You received prior to September 11, 2001, that any persons or entities identified in Exhibits A, B, and C, may have been diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations.

**ANSWER:**


A24.   Please provide all documents relating to any understanding or agreement with any defendant named in the consolidated civil action, 03 MD 1570, whereby You have agreed to pay, indemnify, or reimburse any of their costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against such defendant.  Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**


A25.   Please provide all documents relating to any understanding or agreement between You and any other individual, entity, and/or government, whereby such party has agreed to pay, indemnify, or reimburse You for any costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against You.  Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**

## PART B

B1.     Please provide any and all documents relating to the struggle against the Soviet occupation of Afghanistan during the 1980s, including without limitation, Your involvement.

**ANSWER:**

B2.     Please provide any and all documents relating to Your role in providing material support or resources, directly or indirectly, to the mujihadeen forces in Afghanistan in their struggle against Soviet occupation during the 1980's.

**ANSWER:**

B3.     From the period beginning January 1984 through 2002, please provide any and all documents relating to Your role in providing material support or resources, directly or indirectly, to any camps, sites, or facilities in Afghanistan, Pakistan, the Sudan, Somalia, Kenya, or elsewhere, where any form of training was provided relative to combat, military tactics or operations, weapons, reconnaissance, explosives, self-defense, or related activities.

**ANSWER:**

B4.     From the period beginning January 1984 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious or other relationship between the Saudi Red Crescent ("SRC"), the Muslim World League ("MWL"), the

Saudi Joint Relief Committee ("SJRC"), and/or the Rabita Trust ("Rabita") (hereinafter collectively referred to as the "Charities") and Osama Bin Laden (including any member of the Bin Laden family).

**ANSWER:**


B5.     From the period beginning January 1984 through the present, please provide any and all documents the Charities sent to and/or received from Osama Bin Laden or any member of the Bin Laden family, including without limitation, all documents relating to the transfer of funds between the Charities and Osama Bin Laden, and/or any member of the Bin Laden family.

**ANSWER:**


B6.     From the period beginning January 1988 through the present, please provide any and all documents relating to al Qaida.

**ANSWER:**


B7.     From the period beginning January 1988 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious or other relationship between the Charities and al Qaida, or any members of al Qaida.

**ANSWER:**

B8.    Please provide all documents illustrating, describing or otherwise relating to al Qaida's formation and organizational structure, the duration of al Qaida's existence, any documents relating to al Qaida's initial capitalization and subsequent funding, any documents relating to the duties and powers of any al Qaida boards and/or committees, and/or any other writing relating to the creation or purpose of al Qaida.

**ANSWER:**

B9.    Please provide any and all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards and/or internal bodies of al Qaida, including without limitation, al Qaida's Majlis al Shura ("consultation council"), military committee, and fatwah committee.

**ANSWER:**

B10.    Please provide any and all documents identifying each member, officer, board member, and/or committee member of al Qaida, including without limitation, any and all documents relating to their appointment, resignation, and/or termination.

**ANSWER:**

B11.    Please provide any and all documents relating to any meetings of members, officers, boards, committees, and/or internal bodies of al Qaida, including without limitation, any agendas or meeting minutes.

**ANSWER:**

B12.   From the period beginning January 1988 to the present, please provide any and all documents relating to any meeting, conference, or gathering that You attended at which any of the persons identified in Exhibit A were present.

**ANSWER:**

B13.   From the period beginning January 1988 through the present, please provide any and all documents governing, describing, detailing or otherwise relating to any relationship between the Charities and the persons and/or entities identified in Exhibit A.

**ANSWER:**

B14.   From the period beginning January 1988 through the present, please provide any and all documents sent to, and/or received from the persons and/or entities identified in Exhibit A, including without limitation, all documents relating to the transfer of funds between the Charities and those persons and/or entities.

**ANSWER:**

B15.   Please provide any and all documents relating to your Summer 2000 trip with Abu Zubaydah from Pakistan to Kandahar, Afghanistan, including without limitation, Your subsequent meeting with Osama Bin Laden and Mohammed Atef in Kandahar.

**ANSWER:**

B16.   From the period beginning January 1984 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious or other relationship between You and the Saudi Red Crescent ("SRC"), the Muslim World League ("MWL"), the Saudi Joint Relief Committee ("SJRC"), and the Rabita Trust ("Rabita") (hereinafter collectively referred to the as the "Charities"), including without limitation, any and all documents relating to any positions You held or hold within the Charities.

**ANSWER:**

B17.   From the period beginning January 1984 through the present, please provide any and all documents relating to Your role in the organization, funding, oversight, supervision, management, and/or control over the Charities' operations, including without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

B18.   From the period beginning January 1984 through the present, please provide any and all documents relating to Your supervision, management, control of, or distribution of the Charities' funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from the Charities and the purpose for such disbursements.

**ANSWER:**


B19.   From the period beginning January 1984 through the present, please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of the Charities, and/or any Charity accounts over which You hold or have held signatory authority.

**ANSWER:**


B20.   From the period beginning January 1984 through the present, please provide any and all documents sent to, and/or received from the Charities, including without limitation, all documents relating to the transfer of funds.

**ANSWER:**


B21.   Please provide any and all documents relating to the Charities' role in providing material support or resources to the mujihadeen forces or other Islamic fighters in Afghanistan, Albania, Algeria, Bosnia, Chechnya, Egypt, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Somalia, Sudan, Tanzania, Turkey, Yemen, or elsewhere, including without limitation, the support of camps in and/or around those areas, recruitment, training, transportation, lodging, the acquisition, trafficking, and/or smuggling of weapons and arms such as rockets, mortars, rifles, dynamite and other bombs, and the provision of boots, tents, and uniforms.

**ANSWER:**

B22.   Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between the Charities and the Kingdom of Saudi Arabia, including without limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs, the Ministry for Islamic Affairs, Endowments, Dawa and Guidance, the Ministry of Foreign Affairs, Endowments, Dawa and Guidance, the Ministry of Defense and Aviation, Endowments, Dawa and Guidance, the Majlis al Shura (a/k/a the Shura Council), the Ministry of Education, and any embassy or consulate of the KSA.

**ANSWER:**

B23.   Please provide any and all documents relating to any meeting You attended in your capacity as an official and/or representative of the Charities with any official, representative, or agency of the KSA.

**ANSWER:**

B24.   Please provide all documents relating to any and all information or notification You and/or the Charities received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Charities was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal or corrupt activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

B25.   Please provide all documents relating to any and all information or notification You and/or the Charities received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Charities may have been or was engaging in conduct unrelated to the Charities' ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**


B26.   Please provide all documents relating to investigations or inquiries conducted by the United States Government or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by the Charities.

**ANSWER:**


B27.   Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any individual or entity employed by and/or affiliated

with the Charities as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad, including without limitation, any such individuals or entities identified in response to Requests # B24-B26.

**ANSWER:**

B28.   From the period beginning January 1990 through the present, please provide all documents relating to any business, employment, financial, charitable, religious or other relationship between You and any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

B29.   From the period beginning January 1990 through the present, please provide all documents relating to any business, employment, financial, charitable, religious or other relationship between the Charities and any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

B30.   From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from any of the Golden Chain-Related-Individuals, including without limitation, all documents relating to the transfer of funds between You and the

any of the Golden Chain-Related-Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

B31.   From the period beginning January 1990 through the present, please provide any and all documents the Charities sent to, and/or received from any of the Golden Chain-Related-Individuals, including without limitation, all documents relating to the transfer of funds between the Charities and the any of the Golden Chain-Related-Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

B32.   From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of any of the Golden Chain-Related-Individuals, and/or any individual or entity associated therewith, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

B33.   Please provide all documents relating to investigations or inquiries conducted by the United States Government or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or

any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by any of the Golden Chain-Related-Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

B34.    Please provide all documents relating to any decision to terminate any relationship with any of the Golden Chain-Related-Individuals, and/or any individual or entity associated therewith, as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

B35.    From the period beginning January 1988 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious or other relationship between You and the Benevolence International Foundation and its predecessor entity Lajnatt al Birr al Islamiah (hereinafter collectively referred to as "BIF"), including without limitation, any and all documents relating to any positions You held or hold within BIF.

**ANSWER:**

B36.    From the period beginning January 1988 through the present, please provide any and all documents sent to, and/or received from BIF, including without limitation, all documents relating to the transfer of funds.

**ANSWER:**

B37.    Please provide any and all documents relating to BIF's role in providing material support to the mujihadeen forces or other Islamic fighters in Afghanistan, Chechnya or elsewhere, including without limitation, the support of camps in and/or around those areas, recruitment, training, transportation, lodging, the acquisition, trafficking, and/or smuggling of weapons and arms such as rockets, mortars, rifles, dynamite and other bombs, and the provision of boots, tents, and uniforms.  For purposes of this request, the term "support" includes any form of financial, logistical, administrative or other assistance, whether provided directly or indirectly.

**ANSWER:**

B38.    Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the persons identified in Exhibit B.

**ANSWER:**

B39.    Please provide any and all documents sent to, and/or received from the persons identified in Exhibit B, including without limitation, all documents relating to the transfer of funds between You and those persons.

**ANSWER:**

B40.   Please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of the persons identified in Exhibit B, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

B41.   Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the entities identified in Exhibit C, including without limitation, any and all documents relating to any positions You held or hold within those entities.

**ANSWER:**

B42.   Please provide any and all documents sent to, and/or received from the entities identified in Exhibit C, including without limitation, all documents relating to the transfer of funds between You and those entities.

**ANSWER:**

B43.   Please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of the entities identified in Exhibit C, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

B44.   Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Kingdom of Saudi Arabia, including without limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs, the Ministry for Islamic Affairs, Endowments, Dawa and Guidance, the Ministry of Foreign Affairs, Endowments, Dawa and Guidance, the Ministry of Defense and Aviation, Endowments, Dawa and Guidance, the Majlis al Shura (a/k/a the Shura Council), the Ministry of Education, and any embassy or consulate of the KSA.

**ANSWER:**

B45.   Please provide any and all documents You sent to and/or received from the Kingdom of Saudi Arabia, including without limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs, the Ministry for Islamic Affairs, Endowments, Dawa and Guidance, the Ministry of Foreign Affairs, Endowments, Dawa and Guidance, the Ministry of Defense and Aviation, Endowments, Dawa and Guidance, the Majlis al Shura (a/k/a the Shura Council), the Ministry of Education, and any embassy or consulate of the KSA.

**ANSWER:**

B46.   From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing or otherwise relating Your role in spreading, propagating, or proselytizing Islam outside of the Kingdom of Saudi Arabia, including without limitation any long term strategy, studies or papers.

31

**ANSWER:**


B47.    From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing or otherwise relating to Your role in advancing the foreign policy objectives of the KSA.

**ANSWER:**


B48.    Please provide all documents relating to all accounts in any United States or foreign banking institution You hold or have held jointly with the KSA, any members of the Saudi royal family, and/or any Saudi official acting on behalf of the KSA ("KSA Joint Bank Accounts"), and/or any KSA Joint Bank Accounts over which You hold or have held signatory authority.

**ANSWER:**


B49.    Please provide all documents relating to any and all information or notification You received prior to September 11, 2001, that al Qaida aspired to conduct terrorist attacks: (i) against the United States and its interests abroad, (ii) against the United States within its borders, and/or (iii) against New York City and the World Trade Center complex, Washington D.C. or other U.S. landmarks.

**ANSWER:**

## EXHIBIT A

Abdullah Ahmed Abdullah (a/k/a Abu Mohmaed al Masry)
Abu Ubaidah al Banshiri
Abu Zubaydah
Al Gama'a al Islamiyya (a/k/a "The Islamic Group")
Al Masadah (a/k/a the "Lion's Den")
Ali Mohamed
Bait-ul-Ansar (a/k/a the "Mujahadeen Services Bureau" or "House of Helpers")
Dr. Ayman Al Zawahiri
Egyptian Islamic Jihad
Maktab al Khidmat (a/k/a the "Office of Services")
Mamdouth Mahmud Salim (a/k/a Abu Hajer)
Mohammed Jamal Khalifa
Mohammed Atef
Mohammed Suleiman al Nalfi
Muhsin Musa Matwalli Atwah (a/k/a Abdel Rahman al Muhajer)
Osama Bin Laden
Saif al Adel
Sheikh Abdullah Azzam

**EXHIBIT B**

Abdel Hadi Taher
Abdel Qadir Bakri
Abdullah Omar Naseef
Abdul Rahman Abdul Aziz Al Suwailim
Abi K-Bara
Abu Hudhaifa
Abu Hajer al Iraqi (a/k/a Mandouh Salim)
Abu Mohamed al Maqdisi (a/k/a/ Mohamed Taher al Barqawi)
Abu Rida al Suri (a/k/a Mohammed Loay Bayazid)
Adel Abdul Jalil Batterjee
Amin Aqeel Attas
Chafiq Ayadi
Enaam Aranout
Hasan Cengic
Mohamed al Zawahiri
Salehuddin Abdel Jawad
Seik Ajadi
Sheikh Abdel Majid Zindani
Suleiman al Rashid
Syed Abu Nasr
Wadih el Hage
Yassin Abdullah al Qadi

## EXHIBIT C

Abrar of Saudi Arabia
Al Haramain & Al Masjed Al Aqsa Charity Foundation
Al Haramain Islamic Foundation
Al Kifah Refugee Center
Dar el Hekma
Euroinvest
International Islamic Relief Organization
Islamic Center of Tucson, Arizona
KA Stan
Karavan Construction and Development
Lajnat al Dawa al Islamiyah Kuwait
Moslem Student Association
Muslim Student Association
Third World Relief Agency
University of Arizona
World Assembly of Muslim Youth