## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

August 10, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:     *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

      The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter and accompanying exhibits in support of Plaintiffs' request that the Court enter an order, pursuant to Federal Rule of Civil Procedure 37(a), compelling criminally indicted and Specially Designated Global Terrorist (SDGT) defendant Soliman H.S. Al-Buthe ("Al-Buthe" or "Defendant") (1) to produce documents and information responsive to plaintiffs' document requests and (2) to produce documents verifying that Defendant and his counsel have undertaken vigorous efforts to request and secure the documents responsive to Plaintiffs' discovery requests. (*See, generally*, Exhibit A, Transcript of Nov. 16, 2011 Hearing at 33-35, requiring co-defendant Jelaidan to document vigorous, "full-court press" effort to obtain documents; ECF No. 2490[1]). To date, Al-Buthe has failed to produce a single document in response to Plaintiffs' discovery requests, choosing instead to interpose a myriad of invalid objections, and implausibly claim that no relevant documents are within his custody or control. Unfortunately, Al-Buthe's approach to discovery mirrors that of several other defendants in this complex litigation, who instead of undertaking good faith efforts to locate and produce responsive documents and information, have sought to impose upon Plaintiffs the burden to affirmatively prove their non-compliance as a predicate to obtaining any discovery.

---

[1] Citations to "ECF No." refer to the electronic docket in the multidistrict case pending in this Court.

The Honorable Frank Maas
August 10, 2015
Page 2
_____

Generally speaking, the documents at issue relate to the following topics and areas:

1. Al-Buthe's failure to produce banking and other transactional records, information to which he undoubtedly has access (essentially a similar circumstance prompted the determination to sanction Wa'el Jelaidan in October 2013, *see* ECF No. 2789)

2. Al-Buthe's failure to produce the substantial set of documents that undoubtedly exists regarding his efforts to oppose his indictment, sanctioning, listing (and his efforts to be de-listed) by U.S. authorities, the U.N., and other authorities.

3. Al-Buthe's failure to produce the substantial set of documents that undoubtedly exists regarding investigations he directed or in which he played some role regarding allegations of criminality, corruption, extremism, financial irregularities, suspicious activities, terrorism links, or support for violent jihad.

4. Al-Buthe's failure to produce various items undoubtedly within his control and particularly personal to him (e.g., his bio/resume; travel documents, including passports; documents regarding his affiliations with various organizations; filings with local, state, federal agencies)

5. Al-Buthe's failure to produce any documents regarding Al Haramain ("AH"), his affiliation or role with AH, or the sanctioning, closure, or disposition of any assets of AH offices.

6. Al-Buthe's failure to produce any documents regarding his affiliation or role with any alleged co-conspirator or regarding notice of the alleged terrorist propensity of other alleged co-conspirators.

7. Al-Buthe's failure to produce documents regarding his affiliation or role with other entities or property sufficient to assess interrelationships among Al-Buthe, AH entities, and other entities.

Al-Buthe's refusal to produce *any* of these relevant materials is unsupportable on both factual and legal grounds, and represents an improper attempt to avoid his discovery obligations on a wholesale basis. Accordingly, Plaintiffs request that this Court order Al-Buthe to search for and produce all such responsive documents.

## I.     AL-BUTHE PROCEDURAL HISTORY

In its April 16, 2013 opinion, the Second Circuit overturned a December 14, 2011 decision dismissing Al-Buthe and remanded the action against Al-Buthe to the District Court for

The Honorable Frank Maas
August 10, 2015
Page 3
_____

jurisdictional discovery.  *In re Terrorist Attacks on September 11, 2001 (Asat Trust Reg.)*, 714
F.3d 659, 666 (2d Cir. 2013).

The Second Circuit noted that Plaintiffs had alleged that Al-Buthe, (1) "served as [a]
senior official[] of one or more of al-Qaeda's front charities," (2) "used [his] authority over those
organizations to orchestrate their material support and sponsorship of al-Qaeda," and (3) "acted
with knowledge that the organizations under [his] control were channeling material support and
resources to al-Qaeda, and that [such support] would be used to support al-Qaeda's jihad against
the United States." *Id.* at 667, (quoting Plaintiffs' Personal Jurisdiction Br. 20-21 (citing Joint
App'x 3982-86, 4120-4214, 4166-68, 4451-54, 4478-82, 4496-4504, 6175-99[2])).  Particular to
Al-Buthe, the Second Circuit's summary characterization of Plaintiffs' allegations against Al-
Buthe noted that "Soliman H.S. Al-Buthe, through his involvement as a director of Al
Haramain's branch in the United States, 'direct[ed] support to al-Qaeda.'" *Id.* at 667, (citing
Plaintiffs' Personal Jurisdiction Reply Br. 102 (citing ECF No. 1039-5, at 2-4)).

Plaintiffs' pleadings also alleged that Al-Buthe was, *himself*, designated as a terrorist by
the United States based on his role in directing support to al-Qaeda, including through al
Haramain's U.S. branch.  D.E.1039-5 at 2-4.   The press release relating to Al-Buthe's
designation stated that the U.S. government had determined that the U.S. branch maintained
"direct links" with Osama bin Laden under Al-Buthe's supervision and control, and that the
evidence amassed as to Al-Buthe also supported his inclusion on the U.N. 1267 Sanction List
"because of the support provided to UBL, al Qaida or the Taliban."  *Id.* at 3.  Plaintiffs also
submitted an affidavit filed by the Department of Justice in support of an application for a search
warrant for al Haramain's U.S. branch, detailing Al-Buthe's direct role in a money laundering
scheme that Plaintiffs allege was carried out as part of a broader program to channel funds to al-
Qaeda fighters in Chechnya.  ECF No. 1039-2; JA2444-46.

Thus, the discovery contemplated by the Second Circuit's decision concerns whether Al-
Buthe directed tortious conduct at the United States through his role as a primary financier and
supporter of al Qaeda and bin Laden, including through organizations and financial networks
under his control.

During the course of these proceedings, Al-Buthe has been engaged in ongoing efforts to
persuade U.S. and U.N. officials to remove him from the Executive Order 13224 and U.N. 1267
sanctions lists.  For obvious reasons, the investigations that prompted his inclusion on those lists,
and his responses and engagements relating to those and related investigations, go to the very
heart of the jurisdictional inquiry mandated by the Second Circuit's remand.[3]

_____

[2] Joint App'x (hereinafter "JA") refers to the Joint Appendix filed in the Second Circuit appeal at Docket
Nos. 11-3294-cv(L), 11-3407-cv, 11-3490-cv, 11-3494-cv, 11-3495-cv, 11-3496-cv, 11-3500-cv, 11-3501-
cv, 11-3502-cv, 11-3503-cv, 11-3505-cv, 11-3506-cv, 11-3507-cv, 11-3508-cv, 11-3509-cv, 11-3510-cv,
11-3511-cv, 12-949-cv, 12-1457-cv, 12-1458-cv, 12-1459-cv.

[3] Though Al-Buthe was successful in his efforts to be delisted by the U.N., he remained designated by U.S.
authorities and the fact that the U.N. has delisted him has no bearing on the discovery dispute presented for
the Court's consideration here.  First, Al-Buthe's delisting by the U.N. in February 2013, plays no bearing

The Honorable Frank Maas
August 10, 2015
Page 4
_____

II.     **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

       On August 22, 2013, Plaintiffs served on Al-Buthe Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to Defendant Soliman H.S. Al-Buthe, consisting of 78 requests targeting discovery pertinent to the Court's jurisdiction over the Plaintiffs' claims against Al-Buthe.   Exhibit B (Discovery Requests).   Although Al-Buthe's responses were initially due September 26, 2913, he requested and Plaintiffs consented to a four-week extension of the deadline, moving the deadline to October 21, 2013.  ECF No. 2780.  That deadline was later extended three weeks, to November 11, 2013.  ECF No. 2785.  On November 11, 2013, Al-Buthe served on Plaintiffs his "Objections and Responses to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents."   Exhibit C ("Objections and Responses").   Despite having an *additional* seven weeks to respond to the requests, Al-Buthe did not produce a single document at the time he served his "Objections and Responses," and has not produced a single document in the nearly two years since that time.[4]

       The discovery requests served on Al-Buthe can generally be delineated, for purposes of this motion, into the following nine categories:

       **Category 1.**   Banking or other financial/transactional documents of Al-Buthe or his family (particularly where used to transfer AH funds (RFP 17, 21, 48, 53, 59, 60), including investigations into any such accounts or transactions (by others or by Al-Buthe) (RFP 49, 50, 51);

       **Category 2.**   Banking or other financial/transactional documents of AH (RFP 16, 21, 47, 48, 49, 53), including investigations into any such accounts or transactions (by others or by Al-Buthe) (RFP 49, 50, 51);

       **Category 3.**   Al-Buthe's   indictment   by   USDOJ;   investigations,   his listing/delisting (including efforts to be delisted) and sanctions by US, UN, and others:

_____

on Al-Buthe's discovery obligations.  Second, Al-Buthe's delisting by the U.N. may be for any number of reasons; the fact of delisting, alone, has no bearing on whether he has previously provided material support to terrorists.  Third, the fact remains that Al-Buthe continues to be designated by the U.S. authorities and, although the assets freeze, travel ban, and embargo set out in paragraph 1 of U.N. Securities Council resolution 2083 (2012) may no longer apply, all prohibitions imposed by his U.S. designation remain in place.

[4] Within his discovery responses, Al-Buthe identifies a single page by bates number, but even that page was never produced.  Shortly after his initial responses were served, Al-Buthe represented that he had additional documents to produce.  *See* Exhibit D, November 11, 2013 Correspondence from Mr. Kabat to Mr. Haefele ("We also anticipate producing one or more tranches of documents for Mr. Al-Buthe over the next week or two.").  But as of the final cut-off date for Al-Buthe to complete his rolling document production, December 15, 2014, no documents have been produced by Al-Buthe.

The Honorable Frank Maas
August 10, 2015
Page 5
_____

- RFP 20, 21, 22, 23, 25, 26, 27, 29, 31, 32 (US indictment, asset freezing, designation/sanctions (including delisting efforts));

- RFP 24, 26, 27, 29, 30 (UN designation/sanctions (including delisting efforts and delisting));

- RFP 29 (Other sanctions imposed on Al-Buthe);

- RFP 21-22 (Documents regarding the subject of his indictment and/or listings)

- RFP 49, 50, 51 (Investigations into any AH/Al-Buthe accounts or transactions (by others or by Al-Buthe));

**Category 4.** Internal inquiries into allegations of criminality, corruption, extremism, financial irregularities, suspicious activities, terrorism links, or support for violent jihad) (RFP 50, 51, 52);

**Category 5.** Items particularly personal to Al-Buthe – RFP 1 (bio/resume); RFP 18 (association with groups in designated locations); RFP 19 (travel docs, passports, etc.); RFP 61 (Al-Buthe's filings with local, state, federal agencies);

**Category 6.** Documents in Al-Buthe's possession regarding any AH entity (including the Quran Foundation in Oregon), including any AH property in the US (including property/mosque in Springfield, MO) – RFP 2-15, 28, 33, 34, 43, 44, 46;

**Category 7.** AH designations/sanctions/office closures/asset disposition by US, UN, KSA, etc. – 35, 36, 37, 38, 39, 40, 41, 45, 54;

**Category 8.** Interrelationships among, or familiarity with terrorist propensity of, other alleged co-conspirators – RFP 18, 56, 57, 58, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 78; and

**Category 9.** Interrelationships among AH and others companies or properties he had an interest – RFP 42, 62, 75, 76, 78.

### A. Al-Buthe should be compelled to produce banking and other transactional records. (Categories 1 and 2)

The requests in Categories 1 and 2, as to which Al-Buthe has produced nothing, seek financial documents, including banking documents, for accounts and transactions for which Al-Buthe has access to documents. For example, Al-Buthe cannot claim to have no control over access to account information for financial accounts in his own name or where he held signature authority. In fact, one or more of his own accounts is implicated in his effort to move Al

The Honorable Frank Maas
August 10, 2015
Page 6
_____

Haramain money out of the United States and ultimately into the hands of al Qaeda mujahedeen. See Exhibit E at 11 (Criminal Indictment). Inasmuch as Al-Buthe had substantial control over the financial dealings of the AH branch in the U.S., it is unlikely that he retained control over no documents, financial or otherwise, regarding the AH entity – including no data on a computer or in electronic mail. And yet, he produce nothing related to any account. When co-defendant Wa'el Jelaidan, another SDGT, engaged in the same efforts to avoid discovery, the conduct prompted a sanction against Jelaidan in October 2013. *See* ECF No. 2789.

Throughout Al-Buthe's responses to the requests in Categories 1 and 2 (in fact throughout the entirety of his responses), Al-Buthe rotely recites objections to requests being overly broad, but never carries his burden of demonstrating how the requests are overly broad in light of the broad and liberal construction afforded the federal discovery rules. *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y. 1984); *Sullivan v. Stratmar Sys*., 276 F.R.D. 17, 19 (D. Conn. 2011). Given his obligation to produce documents within the scope he concedes is proper and his failure to produce any responsive documents, the implication is that Al-Buthe does not concede that these requests are proper regardless of the breadth applied. Particularly for the accounts used to move Al Haramain finances or other accounts specifically identified in the document requests, Al-Buthe's claim of over breadth is especially unsustainable.

Another rote objection throughout the responses is to Plaintiffs' request for business records of Al Haramain or other entities within Al-Buthe's possession or control. Plaintiffs allege Al-Buthe used front entities to channel material support and resources to al-Qaeda and that the Kingdom was complicit in the charity fronts' support for al Qaeda. Al-Buthe had substantial ties with at least one of those al Qaeda fronts, Al Haramain, and with the Kingdom, as well. His refusal to produce responsive documents within his control ignores the entirety of Plaintiffs' allegations. That is especially so where the other entities whose documents may be at issue are defendants or other alleged co-conspirators, particularly Al Haramain or the Kingdom.

Another objection repeated in response to the Category 1 and 2 requests, and throughout the responses generally, concerns Al-Buthe's assertion that no documents post-dating the filing of the actions can be relevant to the jurisdictional question. Though Plaintiffs recognize the general reference to the date of the action for setting a time limitation on jurisdictional discovery, the limitation must be applied with reason. For example, documents otherwise post-dating the filing date but that contain information about an earlier period should not be protected. For example, investigative reports about Al-Buthe's financial dealings before 9/11, even if the investigation was conducted after the litigation was filed, should not be shielded arbitrarily from discovery. The problematic nature of Al-Buthe's objection to time frame is particularly evidence in the next section, concerning governmental and quasi-governmental investigations into Al-Buthe's activities.

The Honorable Frank Maas
August 10, 2015
Page 7
_____

**B.**     **Al-Buthe should be compelled to produce the substantial set of documents that undoubtedly exists regarding his indictment, sanctioning, and listing (including his efforts to be de-listed) by U.S. authorities, the U.N., or other authorities. (Category 3)**

The requests in Category 3, as to which Al-Buthe has produced nothing, seek documents concerning actions by various authorities to indict, sanction, list, and delist Al-Buthe.  Given Al-Buthe's active involvement in the processes of each of these activities, it is dubious to suggest that he does not have access to such documents.  Indeed, records produced by another defendant, Al Haramain, show correspondence between Al-Buthe's counsel and U.S. Treasury and U.N. authorities regarding his U.S. and U.N. listing and delisting efforts.  *See, e.g*., Exhibit F (AHIF 4429-37, -4447-50, -4451-54, -4455-60, -4461-71, -4472-78, -4484-94, -4518, -4652-57, -4659-60, -4730).  *See also Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, Civil Case No. 3:07-CV-01155-KI, 2012 U.S. Dist. LEXIS 175759 at \*5 (D. Or. Dec. 12, 2012) (indicating that the U.S. Department of Treasury's Office of Foreign Asset Control provided Al-Buthe with the unclassified administrative record regarding his U.S. designation).  Despite the clear existence of these examples of responsive records in Al-Buthe's control, he has produced nothing.

Al-Buthe actively opposed his listing by the U.N. and U.S. authorities, and was eventually successful in having his name removed from the U.N. list.  His activity only underscores the impossibility that no documents exist in his control regarding any of the authorities' actions or Al-Buthe's response to those actions.  His lack of production suggests, incredibly so, that he has no access to any documents concerning his criminal indictment in the U.S., his listing and sanctioning by the U.N. and U.S. authorities, or any of his aggressive efforts to be removed from the U.N. and U.S. lists (which is clearly disproved by the documents Al Haramain produced).  Presumably, he would have us understand that he was never apprised of the sanctions against him and never communicated about *any* reasons for being sanctioned.

Al-Buthe's objection to producing any Category 3 documents as being beyond the scope of jurisdictional discovery completely ignores that Plaintiffs' allegations that Al-Buthe conspired to use fronts to channel material support and resources to al-Qaeda toward the goal of jihad against the U.S., is a substantial part of the circumstances underlying his indictment, as well as his listing and sanctioning.

Al-Buthe's objection to the time period for these requests about his indictment, sanctioning, and listing/delisting, which necessarily include documents that post-date the start of the litigation, offers a key example as to why documents that post-date the start of litigation are nonetheless highly probative of issues that happened before the litigation.  All of the various investigations into Al-Buthe's conduct before 9/11 are highly probative on Al-Buthe's conduct and knowledge before 9/11 even though the actual creation of the documents may have post-dated the litigation.

The Honorable Frank Maas
August 10, 2015
Page 8
_____

   C.   **Al-Buthe should be compelled to produce the substantial set of documents that undoubtedly exists regarding inquiries he directed or in which he played some role regarding allegations of criminality, corruption, extremism, financial irregularities, suspicious activities, terrorism links, or support for violent jihad.  (Category 4)**

   The requests in Category 4, as to which Al-Buthe has produced nothing, seek documents concerning internal inquiries Al-Buthe directed or in which he played some role into allegations of wrongdoing on his part or on the part of an organization under his watch.  Given the substantial allegations against Al-Buthe in a criminal indictment, listing and sanctions imposed by U.S. and U.N. and other authorities, and other similar allegations, it is unlikely that a businessman of Al-Buthe's stature and resources would not have engaged in some form of inquiry to verify or discredit allegations of criminality, corruption, extremism, financial irregularities, suspicious activities, terrorism links, or support for violent jihad.  (Indeed, perhaps it is telling if he did not investigate the allegation.)  To the extent he engaged in any manner in such inquiry, it is also unlikely that he does not have possession or access to the documents concerning such inquiries.

   His own investigations would be no less pertinent on the questions than others' investigations referenced in Category 3, and the objection that the documents post-date the state of litigation are likewise misplaced as they were for Category 3 documents.

   D.   **Al-Buthe should be compelled to produce various items undoubtedly within his control and particularly personal to him (*e.g.*, his bio/resume; travel documents, including passports; documents regarding his affiliations with various organizations; filings with local, state, federal agencies) (Category 5)**

   The requests in Category 5, as to which Al-Buthe has produced nothing, seek documents that are particularly personal to Al-Buthe and the implication that he does not have access to them is not credible.  For example, travel documents, including passports delineated in the requests, which would evidence Al-Buthe's travels entering and exiting the U.S. and multiple other areas of the globe, are documents of the type that Al-Buthe has actually admitted that he has in his possession – though he has not produced them.  (In a declaration to the U.N. Al-Buthe stated "I today have in my possession [all of] the Saudi Arabian passports I have ever had…." Exhibit F, AHIF 4655-56.)  Similarly, to the extent that Al-Buthe, or any agent of Al-Buthe, has communicated with any local, state, or federal authorities, it would be unlikely that he would not have access to those documents.  Nonetheless, no such documents have been produced.

   Al-Buthe objects to Plaintiffs' relatively standard request for information about his employment history (RFP 1), contending the request is overly broad and seeks information about employment with the Kingdom of Saudi Arabia.  In addition to being a senior official of Al-Haramain in Saudi Arabia, *see Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 686 F.3d 965, 971 (9th Cir. 2012) ("Al-Buthe was a senior official of AHIF-Saudi

The Honorable Frank Maas
August 10, 2015
Page 9
_____

Arabia"), Al-Buthe has been an employee of the Saudi government reporting directly to the mayor of Riyadh, *see* Exhibit F (AHIF 4431). Because King Salman was previously the governor of Riyadh, only one step above the mayor, he likely knew Al-Buthe. Given Plaintiffs' allegations that Al-Buthe, as a senior official of a charity front for al Qaeda, controlled that front to channel material support and resources to al-Qaeda in support of al-Qaeda's jihad against the United States, coupled with Plaintiffs' allegations that the Kingdom conspired with those very same fronts toward that same goal, the discovery to which Al-Buthe objects is central to Plaintiffs' allegations that Al-Buthe was part of a conspiracy to target the U.S.

Just as documents about his affiliation with alleged co-conspirators Al Haramain and the Kingdom pertain to Al-Buthe's role in al-Qaeda's actions to target the U.S. in violent jihad, so too would documents about his other activities for Al Haramain worldwide and interrelationships and roles with other alleged co-conspirators (RFP 18). Documents evidencing Al-Buthe's activities with Al Haramain beyond his role as an officer of the U.S. branch evidence the depth and breadth of his role within the worldwide Al Haramain organization. Additionally, documents about his activity with entities in other worldwide hotspots, particularly where Al Haramain has been active, also pertain to his interactivity with other alleged co-conspirators.

Al-Buthe's travel documents (RFP 19) will show not only his travel to the U.S., but may also exhibit evidence of his travels to other locations referenced in RFP 18.

Finally, particularly in the case of Al-Buthe, who was indicted for I.R.S. violations associated with smuggling Al Haramain moneys from the U.S. destined for Chechen mujahideen, and has engaged various U.S. agency's directly – including the U.S. Department of Treasury, the U.S. Department of State, the U.S. Congress, and others – Plaintiffs' request for documents evidencing his interactions with local, state, and federal authorities (RFP 61) fairly seeks evidence pertinent to his activities within and targeting the U.S.

**E.     Al-Buthe should be compelled to produce any documents regarding AH, his affiliation or role with AH, or the sanctioning, closure, or disposition of any assets of AH offices. (Categories 6 and 7)**

The requests in Categories 6 and 7, as to which Al-Buthe has produced nothing, seek documents regarding Al Haramain, his affiliation or role with Al Haramain, or the sanctioning, closure, or disposition of any assets of Al Haramain offices. Given the length of time he worked with Al Haramain, the role he had with Al Haramain, the fact that much of his work involved long distance communications, it is not credible that he has access to no documents from his time working with Al Haramain, or that he has access to no documents informing him of the various designations, sanctions, closures of Al Haramain offices, or the disposition of any Al Haramain assets. Yet, Al-Buthe produced no documents at all regarding Al Haramain.

Documents in Al-Buthe's control about Al Haramain or his role at Al Haramain, or Al Haramain's sanctions for its conduct while Al-Buthe exercised authority over Al Haramain are so intertwined with Plaintiffs' allegations of Al-Buthe to warrant jurisdictional discovery.

The Honorable Frank Maas
August 10, 2015
Page 10
_____

      **F.**    **Al-Buthe should be compelled to produce documents about his affiliation or role with any alleged co-conspirator or notice of the <u>alleged terrorist propensity of alleged co-conspirators. (Category 8)</u>**

           - and -

           **Al-Buthe should be compelled to produce documents about his affiliation or role with other entities or property sufficient to assess interrelationships among Al-Buthe, AH entities, and other entities. <u>(Category 9)</u>**

        The requests in Categories 8 and 9, as to which Al-Buthe has produced nothing, seek documents regarding Al-Buthe's affiliation or role with alleged co-conspirators or regarding his awareness of terrorist propensities of alleged co-conspirators or documents about entities that demonstrate the breadth of his activity with Al Haramain,[5] underscoring both his control and knowledge of the charity front's work.  Documents concerning those issues are pertinent to issues concerning the jurisdictional question.  For example, documents evidencing Al-Buthe's dealings with other alleged co-conspirators, may underscore Plaintiffs' allegations of knowledge.

        Without question, Al-Buthe continues to withhold a wealth of documentation and information responsive to Plaintiffs' requests.  Plaintiffs respectfully ask the Court to order Al-Buthe to produce all responsive documents and to document his vigorous efforts to search for responsive documents.

                        Respectfully submitted,

                        Robert T. Haefele
                        THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:    The Honorable George B. Daniels (via overnight UPS mail)
       MDL-1570 Counsel of Record (via email)

_____

[5] Al Buthe and co-defendant Sedaghaty, who knew each other initially only through their affiliations with Al-Haramain, co-owned two companies, Data Pact and Midway Networks, registered in Oregon with an office in Riyadh.  Sedaghaty, who opened Al Haramain's U.S. office at Al-Buthe's direction in 1997, first registered these companies in Oregon in 1998.  In 1999 the corporate lawyer valued Data Pact at $10 thousand dollars.  Al-Buthe bought Data Pact from Sedaghaty for $100 hundred thousand.  Al-Haramain purchased services from the companies worth $100,000 in 2001.  This is more than the Al-Haramain U.S. branch's yearly expenses.  *See* Exhibit G (AHIF 1256).  Sedaghaty continues to act for Data Pact even after selling it to Al-Buthe, for example, signing checks and negotiating, etc. *See, e.g.,* Exhibit H (FPDUS 15645-15655).