# MDL 1570 Plaintiffs' Executive Committees
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>Motley Rice LLC<br>James P. Kreindler, *Co-Chair*<br>Kreindler & Kreindler LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>Cozen O'Connor |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>Kreindler & Kreindler LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP | J. Scott Tarbutton, *Liaison Counsel*<br>Cozen O'Connor |

August 10, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

      The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter and accompanying exhibits in support of Plaintiffs' request that the Court enter an order, pursuant to Federal Rule of Civil Procedure 37(a) and (b), imposing sanctions on defendant Perouz Sedaghaty (a/k/a Pete Seda, a/k/a Pirouz Sedaghaty; hereinafter "Sedaghaty" or "Defendant") for his intentional failure to comply with this Court's previous discovery orders of November 22, 2011 (ECF No. 2491[1]) and December 15, 2011 (ECF No. 2501), as well as his refusal to comply with plaintiffs' discovery requests, and ordering him (1) to produce documents and information responsive to plaintiffs' document requests dated December 10, 2010, and (2) to produce documents and information responsive to plaintiffs' supplemental document requests dated July 31, 2012, and (3) to produce documents verifying that Defendant and his counsel have undertaken vigorous efforts to request and secure the documents responsive to both sets of Plaintiffs' discovery requests. (*See, generally*, Transcript of Nov. 16, 2011 Hearing at 33-35, requiring co-defendant Jelaidan to document vigorous, "full-court press" effort to obtain documents; ECF No. 2490).

---

[1] Citations to "ECF No." refer to the electronic docket in the multidistrict case pending in this Court. Citations to "DO ECF No." refer to the electronic docket in the Oregon federal court case, *United States v. Pirouz Sedaghaty*, No. 6:05-cr-60008-AA.

The Honorable Frank Maas
August 10, 2015
Page 2

_____

Following a lengthy series of efforts to avoid producing discovery responses, summarized below but during which Sedaghaty was specifically ordered to produce responsive documents despite asserting *Fifth Amendment* protection, Sedaghaty individually "decline[d] to respond" to each of plaintiffs' discovery requests "on the grounds that the answer may tend to incriminate him." No objections were asserted concerning each of the individual discovery requests.[2] *See* Exhibits A and B, which set out each of Plaintiffs' discovery requests, and each of Sedaghaty's individual statements that he "declines to respond." Accordingly, the sole issue here is whether Sedaghaty should be sanctioned for his willful refusal to respond to discovery requests, and if so, what that sanction should be.

**I.     SEDAGHATY'S PROCEDURAL HISTORY**

On September 13, 2010, the Court denied Sedaghaty's seven individually filed motions to dismiss under Rule 12(b)(2), for lack of personal jurisdiction, and his seven individually filed motions under Rule 12(b)(6), for failure to state a claim (ECF No. 2312). On October 15, 2010, Sedaghaty filed answers to plaintiffs' amended complaints and served Rule 26 disclosures (ECF No. 2351, 2352, 2355, 2357, 2359, 2361, and 2379).

On December 10, 2010, Plaintiffs served their first set of discovery requests on Sedaghaty. Exhibit C. Rather than responding to Plaintiffs' requests, Sedaghaty moved on January 21, 2011, to stay discovery against him (ECF No. 2403-2404), which Plaintiffs opposed (ECF No. 2405). Sedaghaty's arguments throughout these proceedings have been premised on his contention that "he is facing an appeal of a conviction, or a new trial, in a criminal case involving the same events and transactions underlying the civil proceeding before this Court, so that his *Fifth Amendment* privilege against self-incrimination would be violated by allowing civil discovery to go forward." (ECF No. 2404 at 2.) His request to stay proceedings sought a stay "pending resolution of the parallel criminal prosecution in the U.S. District Court for the District of Oregon." *Id*.

On June 17, 2011, Plaintiffs moved, under Rule 37(a)(3)(VB)(iv) for an order sanctioning Sedaghaty for his refusal to engage in discovery (ECF No. 2486, 2489), which Sedaghaty opposed (ECF No. 2488). On November 11, 2011, the Court denied Sedaghaty's motion to stay and granted Plaintiff's motion to compel (ECF No. 2491). Sedaghaty filed a Rule 72 objection on December 6, 2011 (ECF No. 2495), which Plaintiffs opposed (ECF No. 2504), and which Judge Daniels denied on January 11, 2012 (ECF No. 2529).

On December 15, 2011, in an order following up on its order granting Plaintiffs' motion to compel, the Court clarified that "[i]nasmuch as no stay has been granted, by January 20, 2012, defendant Perouz Sedaghaty shall produce the documents responsive to the Plaintiffs' First Set of requests for Production of Documents" (ECF No. 2501), thus making clear that the Court anticipated that Sedaghaty was to produce documents in discovery.

_____

[2] Defendant asserts generic objections in the prefacing language but offers no support for any of those generally asserted objections in association with any request.

The Honorable Frank Maas
August 10, 2015
Page 3

_____

      On December 29, 2011, Sedaghaty also filed a Petition for Writ of Mandamus in the Second Circuit, asking the Second Circuit to vacate the two discovery orders directing Sedaghaty to produce documents in discovery – namely ECF No. 2491 and ECF No. 2501. Sedaghaty also sought an emergency stay of discovery in the district court pending determination of the Mandamus petition. (11-5371 ECF No. 7) The Second Circuit denied the stay on January 12, 2012 (ECF No. 2532) and ultimately denied the Mandamus petition on March 28, 2012 (11-5371 ECF No. 30), observing that "[t]he fact that a litigant may be forced to choose 'between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.'" *Id*. (citing *Williams v. Florida*, 399 U.S. 78, 84 (1970)).

      On January 20, 2012, despite the commands by Judge Maas that "Perouz Sedaghaty shall produce the [responsive] documents," and Judge Daniels' Order and the Second Circuit Orders upholding Judge Maas' orders, Sedaghaty instead served a document on Plaintiffs wherein he states separately for each request: "Sedaghaty respectfully declines to respond on the grounds that the answer may tend to incriminate him." (Exhibit A)

      On July 31, 2012, Plaintiffs served supplemental discovery demands on Sedaghaty. (Exhibit D). On September 4, 2012, identical to his approach in his earlier non-responsive statements, Sedaghaty served a document on Plaintiffs wherein he stated separately for each request: "Sedaghaty respectfully declines to respond on the grounds that the answer may tend to incriminate him." (Exhibit B)

      On February 28, 2013, Sedaghaty reasserted his refusal to engage in discovery by serving on Plaintiffs a letter advising that Sedaghaty was declining to serve a privilege log because of his assertion of his rights under the Fifth Amendment. (Exhibit E)

      Finally, any rationale that Sedaghaty had for refusing to respond to Plaintiffs' discovery demands premised on the ongoing criminal litigation pending against him in Oregon ceased on July 29, 2014, when Sedaghaty entered a plea agreement with the federal prosecutor and the Oregon federal court entered an order dismissing the criminal case against Sedaghaty. (DO ECF Nos. 654, 658, 660.)

      Four and a half months after Sedaghaty entered his plea agreement and the criminal case against his was dismissed, the December 15, 2014 deadline for the rolling production of documents in this litigation passed without Sedaghaty producing a single document in response to Plaintiffs' discovery requests. From June 2014, the period immediately preceding the dismissal of the criminal case, until the cut-off date for the rolling document productions, the production deadline was extended twice (ECF No. 2873 and ECF No. 2897) and Sedaghaty's counsel was acutely aware of the two extensions.

### II. Production Should be Compelled and Sanctions Imposed Because Sedaghaty Willfully Declined to Engage in *Any* Discovery, Based on an Improper Assertion of *Fifth Amendment* Privilege.

Sedaghaty was obligated, beyond question, to respond to Plaintiffs' discovery requests by producing all responsive documents. In two orders by Magistrate Judge Maas the Court ordered him to respond and to produce documents. Judge Daniels upheld Judge Maas's determinations. The Second Circuit affirmed the determination first by denying a stay and then on the merits. But notwithstanding the multiple admonitions that the *Fifth Amendment* does not protect Sedaghaty from his discovery obligations and that he must respond and produce documents, Sedaghaty has specifically "declined" to do so.

Sedaghaty's singular rationale for declining to respond to *any* discovery request has been his across-the-board reliance on his alleged *Fifth Amendment* privilege against self-incrimination. However, the *Fifth Amendment* privilege does not protect Sedaghaty from his discovery obligations for at least three reasons: **First**, Sedaghaty's universal approach of declining to respond to *any* discovery cannot be supported; **Second**, Sedaghaty was obligated to produce all accessible documents because any realistic threat of prosecution was eliminated months before the end of the rolling discovery deadline; and **Third**, any *Fifth Amendment* privilege Sedaghaty would have enjoyed was waived when he identified documents that he would rely on in his Rule 26 disclosures.

#### A. Al-Buthe Has *Chosen* Not to Present a Defense

The rulings of this Court, Judge Daniels, and the Second Circuit Court of Appeals have firmly settled that the Fifth Amendment provided no basis for Sedaghaty to resist discovery in this litigation. Those rulings presented Sedaghaty with a clear choice "'between complete silence and presenting a defense.'" (11-5371 ECF No. 30, citing *Williams v. Florida*, 399 U.S. 78, 84 (1970)). In response to those rulings, Sedaghaty made a conscious decision not to present a defense, and his Answer, therefore, should be stricken.

#### B. Improper Assertion of Fifth Amendment Privilege

Even if the rulings of this Court and the Second Circuit had not already firmly resolved the issue (which they have), Sedaghaty's efforts to invoke the Fifth Amendment to avoid discovery are demonstrably improper, and undermined by his own actions. For instance, Sedaghaty's approach of objecting individually to each and every discovery request with blanket assertions of the *Fifth Amendment* privilege is an invalid and abusive exercise of the privilege. Invocation of the privilege has limits that required Sedaghaty to have produced at least some documents that were accessible to him. In the Court's initial decision to compel Sedaghaty to produce, the Court cautioned Sedaghaty on certain limitations to the Fifth Amendment invocation, explaining that the privilege "applies only when the accused is compelled to make a testimonial communication that is incriminating. Documents prepared wholly voluntarily cannot be said to contain compelled testimonial evidence. Therefore, self-incrimination analysis focuses on whether the creation of the

thing demanded was compelled and, if not, whether the act of producing it would constitute compelled testimonial communication." *In re Terrorist Attacks on September 11, 2001*, No 03 MDL 1570 (GBD)(FM), 2011 U.S. Dist. LEXIS 136581, at *82-83 (S.D.N.Y. Nov. 22, 2011) (citations and internal quotation marks omitted). The Court identified two situations where forced production of voluntarily prepared documents may be protected – namely, "(1) if the existence and location of the subpoenaed papers are unknown to the government; or (2) where production would implicitly authenticate the documents," *id.* at *83 (citations and internal quotation marks omitted), and one situation where compelled disclosure of non-testimonial documents may be protected – namely, "if those documents are the first step in a chain of evidence that leads to prosecution." *Id.* (citations and internal quotation marks omitted). But despite the Court's guidance, Sedaghaty has not even attempted to meet these restrictions as to any withheld document, let alone documents responsive to each and every discovery request. To the contrary, because Sedaghaty has refused to produce a privilege log, such a determination is not possible.

Moreover, many of the documents responsive to Plaintiffs' discovery requests included documents of Al Haramain or the Qur'an Foundation to which Sedaghaty would have had access as an officer and representative of the two entities. Collective entities like Al Haramain and the Qur'an Foundation enjoy no *Fifth Amendment* privilege. *Braswell v. United States*, 487 U.S. 99, 105 (1988); *Bellis v. United States*, 417 U.S. 85, 88 (1974). So, as to any responsive documents of any collective entity, Sedaghaty was not entitled to refuse to produce those records on the ground that their content may incriminate him personally. *See Bellis*, 417 U.S. 85, 85 (1974). Because the entities' records are not Sedaghaty's personal records, any incrimination would not be self-incrimination. *Bellis*, 417 U.S. at 85, 89-92 ("an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Id.* at 85.). That same limitation would likewise apply to any other documents accessible to Sedaghaty that were not Sedaghaty's personal documents.

C.     No Realistic Threat Of Incrimination or Prosecution

Sedaghaty's reliance on his invocation of the *Fifth Amendment* privilege is invalid because he cannot demonstrate realistic threats that the production will incriminate and result in prosecution – *especially not after July 2014, when he reached a plea deal with the U.S. government and the Oregon federal court dismissed the criminal prosecution against him*. Reliance on the privilege requires the invoking party to demonstrate that he is "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968); *Madanes v. Madanes*, 186 F.R.D. 279, 285 (S.D.N.Y. 1999). The privilege operates only where the information sought presents a "realistic threat of incrimination" as distinguished from "a mere imaginary possibility" and assertions where there is "but a fanciful possibility of prosecution" are "not well-taken." *United States v. Certain Real Property and Premises Known as 1344 Ridge Road, Laurel Hollow, Syosset, New York*, 751 F. Supp. 1060, 1063 (E.D.N.Y. 1989).

Here, where Sedaghaty has asserted the privilege as to each individual discovery request and produced no responsive documents, he cannot possibly demonstrate that every document

withheld in discovery presented a "substantial," "real" hazard of incrimination. This court has already assessed the unlikelihood that discovery in this case would be incriminating in the criminal case. *In re Terrorist Attacks on September 11, 2001*, No 03 MDL 1570 (GBD)(FM), 2011 U.S. Dist. LEXIS 136581, at *88-90 (S.D.N.Y. Nov. 22, 2011). Sedaghaty's inability to meet that requirement is underscored even more so by his refusal to produce a privilege log identifying the documents he has withheld. (*See* Exhibit E)

Perhaps most damning to Sedaghaty's position is that, even if production of documents had at one time presented a realistic risk that he might be prosecuted, no realistic threat existed after July 29, 2014. Notwithstanding his prominent reliance here on the pending criminal proceedings in Oregon federal court, Sedaghaty has been suspiciously silent in these proceedings about the fact that, on July 29, 2014, Sedaghaty entered a plea agreement in the criminal case and the Oregon federal court entered an order dismissing the criminal proceedings against Sedaghaty. (DO ECF Nos. 654, 658, 660). As part of a plea arrangement, co-defendant Al Haramain plead guilty and a dismissal was entered in Sedaghaty's favor. (DO ECF No. 654).

Although any *arguably* reasonable likelihood of criminal prosecution against Sedaghaty dissipated no later than July 2014, Sedaghaty produced no discovery in the remaining four and a half months of rolling document discovery. The eventual deadline for completing rolling document production was December 14, 2014. That deadline had been the subject of substantial dialogue among the parties' counsel, including Sedaghaty's counsel who, in addition to representing several other defendants, also serves as liaison counsel for all defendants. The rolling production deadline had been extended on five separate occasions (*See* ECF Nos. 2733, 2815, 2837, 287, and 2897), including twice since June 2014 (the month before Sedaghaty's criminal case was dismissed). In short, in the four and a half months between July 29, 2014 and December 15, 2014, Sedaghaty was keenly aware of the approaching deadline and his obligation to complete his rolling production. Nonetheless, without any reasonable likelihood of criminal prosecution, Sedaghaty not only allowed the discovery deadline to pass, but has made no effort to update his discovery responses since then.

      **D.**    **Sedaghaty Waived Any Fifth Amendment Privilege He May Have Validly Asserted By Identifying Himself as a Witness and Documents He Would Rely on In His Rule 26 Disclosure**

Sedaghaty's entire approach to discovery has demonstrated his intent to abuse and frustrate the discovery process. While on the one hand, Sedaghaty left the jurisdiction and fled overseas for several years and has refused to produce discovery despite court orders compelling him to do so, on the other hand he has asserted that he may rely on his own testimony and certain identified documents produced by other defendants in support of his defense. In contrast to his Fifth Amendment invocation, in his Rule 26 disclosures, Sedaghaty affirmatively stated that he may support his defenses with "discoverable information" from himself as well as documents produced by Al Haramain. (ECF No. 2379 at 2-3.) In short, he endeavors to use the *Fifth Amendment* to shield himself from having to identify documents in discovery, then as a sword to nonetheless identify himself as a witness and documents that he may want to use in the litigation. In the one

context he asserts his right to remain silent, and in the other context he speaks to his own benefit. Such exploitation of the privilege to gain an advantage in discovery must be avoided. *See United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 84 ("Since assertion of the *Fifth Amendment* is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over the opposing parties."); *SEC v. Graystone Nash., Inc.*, 25 F.3d 187 (3d Cir. 1994) (discussing "the potential for exploitation" through abusive assertions of the *Fifth Amendment* in civil actions).

### III.   Sanctions Imposed Should Include Conditional Default, An Order of Preclusion and Imposing Adverse Inferences, and Costs and Expenses.

Without *Fifth Amendment* protection, Sedaghaty's situation is nothing more than a standard case of non-compliance with discovery orders and the full panoply of remedies afforded under Rule 37 of the Federal Rules of Civil Procedure are available. Rule 37, which addresses consequences of a party's failure to comply with discovery orders, "provides a spectrum of sanctions. The mildest is an order to reimburse the opposing party or expenses caused by the failure to cooperate. More stringent are orders striking out portions of the pleadings, prohibiting introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party. Harshest of all are orders of dismissal and default judgment." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). "The sanctions specified under Rule 37 are not exhaustive, and the Court may impose such sanctions as are just." *JSC Foreign Econ. Assoc. Technostroyexport v. International Devel. & Trade Services*, No. 03 Civ. 5562 (JGK)(AJP), 2005 U.S. Dist. LEXIS 16772, at *29 (S.D.N.Y. Aug. 16, 2005).

Rule 37 sanctions "serve a threefold purpose. Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. Finally, although the most drastic sanctions may not be imposed as 'mere penalties,' courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault." *Cine Forty-Second Street Theatre*, 602 F.2d at 1066 (citations omitted).

In the context of Fifth Amendment invocations in civil actions sanctions have the additional utility of leveling the playing field. "[G]iven the extreme difficulty in successfully challenging an individual's reliance on the [*Fifth Amendment*] privilege, it would seem proper to afford a civil litigant stymied by his adversary's silence some means of moderating the potentially overwhelming disadvantage he faces in establishing his case." *SEC v. Musella*, 578 F. Supp. 425, 429 (S.D.N.Y. 1984) (internal citations omitted).

This Court has identified the factors a party moving for sanctions must show – namely, that: (a) the opposing party had an obligation to make timely disclosure of the requested materials;

(b) the opposing party acted with a "culpable state of mind;" and (c) the missing evidence is "relevant" to the moving party's claim or defense. ECF No. 2789 at 2. Here, Sedaghaty's obligation existed because Plaintiffs have made proper discovery demands, the Court issued two orders directing Sedaghaty to respond and produce documents, which orders were affirmed by Judge Daniels, and by the Second Circuit. Sedaghaty's culpability is evidenced by his continued insistence to thwart the Court's directions to produce and to ignore his obligations to produce even after he no longer faced any arguably credible threat of prosecution. The relevance of the evidence sought here was at least implicitly recognized in the initial order compelling production, *see* ECF 2491, and is no less relevant than the evidence at issue that resulted in this Court imposing sanctions against defendant Jelaidan. *See* ECF No. 2789 at 15-16.

The remaining issue, then, is what sanctions the Court should impose. As this Court previously recognized, it has "broad discretion in fashioning an appropriate sanction" for the non-production of evidence. ECF 2789 at 4 (citation omitted). The Court explained:

> In determining the proper sanction to impose, a court may consider (a) the willfulness of the non-compliant party or the reason for noncompliance; (b) the efficacy of lesser sanctions; (c) the duration of the period of noncompliance; and (d) whether the non-compliant party had been warned of the consequences of noncompliance. These factors are not exclusive, and they need not each be resolved against the party challenging sanctions. Indeed, Rule 37 merely requires that a sanction be "just." The overriding consideration therefore is whether the severity of the sanction is commensurate with the non-compliance.

*Id.* at 4-5 (citations, quotation marks and ellipses omitted). In the present circumstances concerning Sedaghaty, Plaintiffs urge that the following sanctions are warranted.

### A. Conditional Default

Here, an order entering a conditional default against Sedaghaty is warranted and within the stable of sanctions permitted under Rule 37. *See, e.g., Fisch v. Fidelcor Bus. Credit Corp.*, No. 91 Civ. 5047, 1993 U.S. Dist. LEXIS 10882, at *2-3 (S.D.N.Y. Aug. 6, 1993) (where party asserts *Fifth Amendment* privilege to impede opponent, court may impose dispositive sanctions after allowing reasonable opportunity for compliance); *Ferrin v. Sweeny*, No. 74 Civ. 4168, 1978 U.S. Dist. LEXIS 7030, at *7 (S.D.N.Y. Dec. 26, 1978) (court granted movant's motion to dismiss unless non-complaint party complied with discovery obligations within 30 days); *Dixon v. R.J. Photomania, Inc.*, No. 10 CV 1454 (RJD)(CLP), 2011 U.S. Dist. LEXIS 29938, at *2 (E.D.N.Y. Mar. 23, 2011) (conditioning dismissal on defendant's failure to bring discovery obligations in compliance within approximately 30 days). Though default as a sanction purely for a party's valid invocation of the privilege may be improper, that is not the scenario here. First, Sedaghaty's application of the privilege – neither at the outset nor especially since July 2014 – is invalid.

Second, sanctions are warranted given his refusal to participate despite multiple admonitions to respond and to produce documents, as well as his longstanding efforts to evade discovery.

**B.     Order of Preclusion**

In the event the Court does not enter default against Sedaghaty, the Court should enter a preclusion order.  Fed. R. Civ. P. 37(b)(2)(A)(ii); *see, e.g.*, *Rehabilitation Inst. of Chicago v. Hicks*, No. 89 C 387, 1990 WL 16298, at *2 (N.D. Ill. Jan. 26, 1990) (preclusion order granted where defendant refused to produce documents after the court ordered production); *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 549–50 (S.D.N.Y. 1985) (preclusion order appropriate where defendant refused to answer interrogatories based on *Fifth Amendment*); *In re Anthracite Coal Antitrust Litigation,* 82 F.R.D. 364, 369–70 (M.D. Pa. 1979) (sanction of preclusion for not supplying information to plaintiff based on *Fifth Amendment*); and *SEC v. American Beryllium & Oil Corp.*, 303 F. Supp. 912, 921 (S.D.N.Y. 1969) (*Fifth Amendment* asserted as reason for defendants' failure to produce documents).  The preclusion order sanction prohibits the defendant asserting the *Fifth Amendment* from wielding that privilege "as a shield against discovery and then [as] a sword by testifying at trial."  *C & W Construction Co. v. Brotherhood of Carpenters*, 108 F.R.D. 389, 393 (D. Haw. 1985).

In *Anthracite Coal* the plaintiffs sought a default judgment against the defendants as to liability.  *Anthracite Coal* at 369.  The court, declining to enter default absent a finding that the defendant's discovery noncompliance resulted from bad faith, nonetheless  offered three sanction options: (1) entry of an order that "certain designated facts alleged by the Plaintiffs in their complaints be taken to be established," (2) "[the court] could direct the Defendants not to oppose those claims," or (3) "[the court] could simply prohibit the Defendants from introducing into evidence any testimony relating to those assertions."  *Id*. at 370.  The *Anthracite Coal* court believed the latter option – precluding the defendants from introducing into evidence any information in opposition to the plaintiff's claims – to be the appropriate sanction.  *Id*.

**C.     Adverse Inference Instructions**

As a general rule, a party's *Fifth Amendment* refusal to testify may form the underlying basis for an adverse factual inference in civil proceedings.  *Baxter v. Palmigiano*, 425 U.S. 308 (1976); *Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir.1983).  In *Baxter*, the Supreme Court found it permissible to draw "adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter*, 425 U.S. at 318.  The Court explained that a defendant's silence by itself was insufficient to support an adverse decision, but that such silence in conjunction with other evidence against the defendant could support that result.  *Id*. at 317-18.

Courts have endorsed drawing adverse inferences against civil defendants who defy court ordered discovery under the guise of the *Fifth Amendment*.  *See, e.g., United States v. Ianniello*, 646 F. Supp. 1289 (S.D.N.Y. 1986) (holding that adverse inference may be properly drawn from defendant's invocation of the *Fifth Amendment* privilege in pre-trial discovery proceedings of a

civil case), aff 'd, 824 F.2d 203 (2d Cir. 1987); *SEC v. Tome*, 638 F. Supp. 629 (S.D.N.Y. 1986) (holding that a court is justified in drawing an adverse inference from a party's invocation of his *Fifth Amendment* privilege in a civil action).  In *Musella*, *supra*, an adverse inference was drawn in securities litigation from the defendant's *Fifth Amendment* refusal to produce trading records and answer questions at a deposition.  *Musella*, 578 F. Supp. at 429.

### D. Costs and Expenses

Finally, regardless of whether the court determines other sanctions are warranted, a compensatory award is still appropriate, because the purpose of the award – namely, to compensate for the costs incurred in attempting to enforce the Court's previous orders – is not satisfied even if the defendant were to come into compliance at some later date.  *See, e.g., Universitas Education, LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS)(HBP), 11 Civ. 8726 (LTS)(HBP), 2013 U.S. Dist. LEXIS 99957, at 36-38 (S.D.N.Y. July 11, 2013) (declining to impose coercive sanctions where previously noncompliant party ultimately complies, but imposing fees and costs).

### III. Conclusion

For the reasons expressed herein, the Court should enter a conditional order of default under Rule 37(b)(2)(A)(vi) – specifically, providing that default will issue unless Defendant shall come into full compliance with the Court's previous orders of November 22, 2011 (ECF No. 2491) and December 15, 2011 (ECF No. 2501) by responding to Plaintiff's discovery requests of December 10, 2010 and July 31, 2012 and producing all responsive documents in his care, custody, or control within 30 days of the Court's order.  In addition, Plaintiffs request that the Court order Defendant to produce documents verifying that Defendant and his counsel have undertaken vigorous efforts to request and secure the documents responsive to both sets of Plaintiffs' discovery requests.  (*See generally* Transcript of Nov. 16, 2011 Hearing at 33-35, requiring co-defendant Jelaidan to document vigorous, "full-court press" effort to obtain documents; ECF No. 2490).  In the event that the Court declines to enter an order of default, the Court should enter orders of preclusion and directing adverse inference instructions.  Regardless of what other sanctions are imposed, the Court should impose fees and costs against Sedaghaty.

                                                      Respectfully submitted,

                                                      Robert T. Haefele
                                                      THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:    The Honorable George B. Daniels (via overnight UPS mail)
       MDL-1570 Counsel of Record (via email)