

**MotleyRice** LLC
ATTORNEYS AT LAW

Robert T. Haefele
*Licensed in NJ, PA, SC*

South Carolina Office
Direct Dial 843.216.9184
Direct Fax 843.216.9450
rhaefele@motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000
f. 843.216.9450

321 South Main St.
Providence, RI 02903
o. 401.457.7700
f. 401.457.7708

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681
f. 860.882.1682

7 Dey St., 14th Floor
New York, NY 10007
o. 212.577.0040
f. 212.577.0044

320 Chestnut St.
Morgantown, WV 26505
o. 304.413.0456
f. 304.413.0458

www.motleyrice.com

January 5, 2010

<u>Via Facsimile and Federal Express</u>
Hon. Frank Maas, U.S.M.J.
United States District Court
 For the Southern District of New York
United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

Re:   *In re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (GBD)(FM);
       *Burnett, et al. v Al Baraka Investment & Development, et al.*, 03 CV 9849 (GBD)(FM)

Dear Judge Maas:

We are writing to respond to the December 10, 2009 letter from Alan Kabat, Esquire, counsel for Al Haramain Islamic Foundation (AHIF), and in further support of plaintiffs' December 1, 2009 request for the Court to enter an order compelling defendant to respond to discovery requests as set forth in our earlier correspondence.

AHIF's response is problematic in two respects. First, AHIF's argument ignores the consequences of the alter ego relationship that exists between AHIF's dominating headquarters and its various branch offices. Second, AHIF's argument that it should not be required to respond to discovery because of its participation in knowing spoliation of evidence, though factually inaccurate, not only demonstrates the need for AHIF to be accountable for discovery or face sanctions, but also demonstrates the ever increasing problem surrounding the plaintiffs' need for immediate discovery from all defendants in this litigation.

**A.   <u>AHIF Headquarters and the U.S. Branch Office are Indistinguishable Alter Egos</u>**

The U.S. Branch office of AHIF was merely that – a branch office – and has existed as an alter-ego of the Saudi headquarters, such that there is no basis to distinguish one from the other for any purpose. In deciding whether to treat one entity as the alter ego of another in a case like this case, the Court applies federal common law, importing into its decision those principles of state law that it finds persuasive and appropriate to subsume. *Bergesen d.y. v Lindholm*, 760 F. Supp. 976, 987 (D. Conn. 1991). Although the determinations are fact specific and differ with the circumstances in each case, the general rule is that entities lose their distinct corporate identities when their conduct demonstrates a virtual abandonment of separateness. *Thomson-CSF, S.A. v American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995).

Under federal common law in the Second Circuit, an alter ego relationship exists where one entity has so dominated and disregarded its alter ego's corporate form that the alter ego was actually carrying on the controlling party's business. *IMO Holborn Oil Trading Ltd Arbitration*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991); *see Sabine Towing & Transp. Co. v Merit Ventures, Inc.*, 575 F. Supp. 1442, 1446 (E.D. Tex. 1983) ("To find an alter ego relationship, the evidence must disclose a pattern of control or domination of a corporation by an individual or corporation, and this domination was used to support a corporate fiction."). New York law also provides for piercing the

veil when a corporate entity is completely controlled by another and has no separate will of its own. *Holborn Oil*, 774 F. Supp. at 844; *see Gartner v Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) ("New York courts disregard corporate form ... when the corporation has been so dominated by an individual or another corporation . . ., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."); *see also ITEL Containers Int'l Corp. v Atlanttrafik Express Service, Ltd.*, 908 F.2d 698, 703 (2d Cir. 1990) ("New York law allows the corporate veil to be pierced *either* when there is fraud or when the corporation has been used as an alter ego." (emphasis in original)).

Although each case is *sui generis* and no set formula governs whether entities are alter egos, Courts have looked to fifteen factors whose presence, either alone or in combination, may militate in favor of disregarding juridical separateness. *Bergesen d.y. v Lindholm*, 760 F. Supp. at 987 (citing *Sabine*, 575 F. Supp. at 1446-48). Those fifteen factors are: (1) common or overlapping stock ownership between parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate office; (4) inadequate capitalization of subsidiary; (5) financing of subsidiary by parent; (6) parent exists solely as holding company of subsidiaries; (7) parent's use of subsidiaries' property and assets as its own; (8) informal intercorporate loan transactions; (9) incorporation of subsidiary caused by parent; (10) parent and subsidiary's filing of consolidated income tax returns; (11) decision-making for subsidiary by parent and principals; (12) subsidiary's directors do not act independently in interest of subsidiary but in interest of parent; (13) contracts between parent and subsidiary that are more favorable to parent; (14) non-observance of formal legal requirements; (15) existence of fraud, wrongdoing or injustice to third parties. *Id.*

Applying the fifteen factors to the facts here, nearly all of the relevant criteria are met to establish alter ego relationships among the AHIF entities, demonstrating Al Haramain headquarters' domination of the branches such that they were, in reality, merely carrying on the headquarters' business. Although there is no stock ownership in the case of these "charitable" entities, significant overlap exists of controlling officers and directors. In addition, the U.S. branch, despite having an office in the U.S., is not only held out universally as the U.S. office of all Al Haramain, but also identifies the Saudi headquarters as its main office on various correspondence and on the website that they both share without distinction. Evidence also demonstrates that the branch office was significantly under-capitalized *except for* periodic operating finances provided by the worldwide headquarters which financing was essential for the branch to exist; and that the Saudi headquarters incorporated the branch for the very purpose of doing the headquarters work, used the branch offices merely to achieve the headquarters' purposes, and made most or all decisions for the branches, which never acted independent of the headquarters.

Case 1:03-cv-05071-GBD-SN   Document 351-1   Filed 09/14/15   Page 3 of 4

Hon. Frank Maas, U.S.M.J.
January 5, 2010
Re: 03 MDL 1570
Page 3 of 4

B.  **AHIF Should Not Be Freed From Discovery Obligations Based On Admitted Spoliation**

Much of AHIF's response is dedicated to arguing that discovery in litigation filed against AHIF in August 2002, and specifically sought in discovery since early 2004, are no longer accessible because the Saudi government allegedly took action to close the organization in late 2004 – more than two years after AHIF and its attorneys knew that AHIF had been sued. One problem with AHIF's argument involves the timing of the various AHIF designations upon which AHIF relies. Although AHIF contends it was unable to access AHIF documents after the Saudi regime allegedly closed the Al Haramain Saudi office, the Treasury Department's June 2008 designation of the entirety of the Al Haramain organization, including specifically the Saudi headquarters, refutes that assertion, indicating that Al Haramain operations continued through at least its June 2008 designation. (*See* November 30, 2009 Declaration of Robert T. Haefele, Exhibit 11, at 8 (U.S. Dep't of Treasury, "Additional Background Information on Charities Designated Under Executive Order 13224," available at http://www.treasury.gov/ offices/Enforcement/key-issues/protecting/charities _execorder_13224-a.shtml # allOffices and January 5, 2010 Supplemental Declaration of Robert T. Haefele, Exhibit 61 (U.S. Dep't of Treasury Press Release HP-1043, "Treasury Designates Al Haramain Islamic Foundation," released June 19, 2008, available at http://www.ustreas.gov/press/releases/hp1043.htm)). In the Treasury Department's press release, the U.S. government states that despite Saudi efforts to close Al Haramain, Al Haramain leadership successfully subverted those efforts and continued the organization's operations. *Id.*

Even if AHIF is correct that access to documents from Al Haramain headquarters became difficult after the Saudi government allegedly closed the headquarters, AHIF has no excuse for its failure to use reasonable efforts to secure the documents in anticipation of litigation long before the Saudi regime allegedly closed Al Haramain – whether in October 2004, sometime in 2008, or any time thereafter. AHIF was on notice of this lawsuit no later than 2002 and served with discovery requests in October 2003. *Green v McClendon*, 2009 U.S. Dist. LEXIS 71860, 12-13 (S.D.N.Y. Aug. 13, 2009) ("The duty to preserve attaches at the time that litigation is reasonably anticipated.") Accordingly, long before any designation of AHIF or actions by the Saudi regime, AHIF and its counsel were on notice of litigation and legally required to secure, preserve, and protect responsive documentation. *Id.* at *13 ("Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold' . . . . Then, [c]ounsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched. Thereafter, the duty to preserve discoverable information persists throughout the discovery process; a litigant must ensure that all potentially relevant evidence is retained." (internal cites omitted)).

The veracity of any assertion by AHIF's that it made any effort to obtain the documents that are the subject of this motion become more doubtful in light of the fact that at least two of the primary actors on behalf of AHIF, namely defendant Pete Seda and Soliman al-Buthe, are both also represented by the same firm that represents AHIF, and yet neither of those individuals has offered any statement as to any effort made to obtain documents responsive to plaintiffs requests. Indeed, although al-Buthe

Hon. Frank Maas, U.S.M.J.
January 5, 2010
Re: 03 MDL 1570
Page 4 of 4

has offered a statement, lives in Saudi Arabia, and was part of the Al Haramain leadership at the Saudi headquarters, he has made no statements as to any effort to obtain responsive documents. On the contrary, the only statement offered in that regard comes from Thomas Nelson in an attorney declaration, dated December 9, 2009, stating that he is *presently* a member of the board of the U.S. branch of AHIF and in *that* capacity has had no dealings with the AHIF headquarters in Saudi Arabia. Moreover, Although Mr. Nelson's declaration avers that the Saudi regime closed the Al Haramain headquarters in June 2004, his declaration is particularly sparse on details and completely bare of any indication that his statement comes from any first-hand knowledge.

If AHIF failed to fulfill its legal obligation to secure, preserve, and protect responsive documentation, as it seems to admit, appropriate sanctions must be imposed for such failure. Plaintiffs request that those sanctions include striking the Answers of the al Haramain entities, as well as any pending Motions to Dismiss, and entering judgment in plaintiffs' favor.

Finally, in light of the repeated concerns about prejudice suffered by plaintiffs as a result of the long-delayed discovery in this litigation, plaintiffs renew their request for permission to conduct discovery as to all defendants. Thus far, plaintiffs have suffered severe prejudicial discovery losses, not only as a result of the Saudi regime's alleged, apparent confiscation of AHIF documentation, but also as a result of the deaths of multiple defendants, and perhaps in myriad other ways as yet to be discovered. One notable and more recent example of this prejudice is plaintiffs' inability to conduct discovery of now-deceased defendant Khalid Bin Mahfouz, whom plaintiffs maintain possessed unique knowledge critical to the claims advanced against a host of defendants, including Yassin al Kadi, National Commercial Bank, various Al-Rajhi defendants, IIRO, MWL, Al Haramain, and others. Bin Mahfouz's testimony has forever been lost, thus unduly prejudicing plaintiffs' rights relative to numerous parties. Likewise, plaintiffs suffered similar prejudice with the death of now-deceased defendant Mohammad Jamal Khalifa, a founding member of al Qaeda who had invaluable information about the al Qaeda organization and was a conduit for substantial al Qaeda funding in the Philippines. In light of these and other losses, plaintiffs ask the Court to permit discovery against all defendants.

For the reasons expressed herein, as well as in plaintiffs' December 1, 2009 submission, plaintiffs request that Your Honor direct that AHIF be required to respond fully to the indicated discovery. And to the extent that AHIF has failed to abide by its obligation to secure evidence, plaintiffs seek the imposition of appropriate sanctions.

Respectfully Submitted,

ROBERT T. HAEFELE

RTH/msh
cc:   Hon. George B. Daniels, U.S.D.J. – Via Federal Express Overnight Delivery
      All Counsel of Record – Via Electronic Mail