## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

April 21, 2017

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

***MOTION TO QUASH DUBAI ISLAMIC BANK'S NOTICE OF DEPOSITION OF DR. HUSSEIN HAMID HASSAN AND FOR PROTECTIVE ORDER***

Dear Judge Netburn:

The Plaintiffs' Executive Committees ("PECs") write to oppose the April 20, 2017 letter from Steven Cottreau, counsel for Dubai Islamic Bank ("DIB"). Plaintiffs oppose DIB's request to "permit[] the planned deposition on May 4 and 5 of Dr. Hussein Hamid Hassan. ('Dr. Hassan')." Further, **pursuant to Federal Rule of Civil Procedure 26(c), plaintiffs move to quash the Notice of Deposition of Dr. Hassan, served by DIB on April 19, 2017**. The deposition notice contemplates that Dr. Hassan's deposition would be conducted in London on May 3 and 4, 2017,[1] beginning at 9 a.m. each day continuing until approximately 1 p.m., at the London offices of DIB's counsel. DIB has advised that it intends to use the first day to preserve Dr. Hassan's testimony for trial, and that plaintiffs would be limited in their questioning to the four hours reserved for the second day, which under DIB's proposal would necessarily be consumed by cross examination. DIB has further indicated that it will not make Dr. Hassan available at any other time to allow plaintiffs an opportunity to discover information and evidence in Dr. Hassan's possession.

The deposition proposed in the notice served Wednesday at 8:30 pm, the night before DIB sent its letter request to the Court, would be the first party deposition in this MDL to be held outside of the United States, and the first *de bene esse* deposition in this MDL. No existing Case Management Order sets forth protocols for foreign depositions or *de bene esse* depositions.

---

[1] Although DIB's April 20, 2017 letter asks the court to permit the "planned deposition on May 4 and 5," the notice, included at DIB's Exhibit C, noticed the deposition for May 3 and 4.

_____

Plaintiffs do not object in principal to conducting depositions of Dr. Hassan at a mutually agreeable date in the near future, upon an adequate showing of necessity and after appropriate protocols have been negotiated and implemented to ensure due process, fairness, and the orderly conduct of this and any further *de bene esse* depositions in this MDL. However, because those issues remain unresolved, through no fault of plaintiffs, and neither DIB nor any other defendant has sought to confer about what procedures the parties might recommend, it would be highly prejudicial for the deposition to proceed on the limited notice provided and pursuant to DIB's unilaterally proscribed, one-sided protocols.

Accordingly, plaintiffs respectfully request that the Court quash the deposition notice and issue a protective order on the grounds that DIB failed to provide adequate notice of the foreign *de bene esse* deposition; failed to confer with plaintiffs regarding protocols and other material issues that must be resolved before this or any other proposed foreign or *de bene esse* deposition takes place in this MDL; proposes to use the deposition to preserve Dr. Hassan's trial testimony without affording plaintiffs any advanced opportunity to conduct a discovery deposition of Dr. Hassan, and under circumstances that would limit plaintiffs' questioning to a few hours after DIB completes direct questioning; and has failed to show why the deposition is necessary or cannot be deferred for a few weeks to allow time for the parties to confer on these and other issues and potentially complete document discovery.

In connection with his oversight of all discovery proceedings in this MDL, Judge Frank Maas previously directed that party depositions should, as a general matter, not go forward until the completion of document productions by all parties. *See, e.g.*, ECF Nos 2260 and 2381 (ordering deadline for concluding document production before depositions may begin). During the hearing on October 20, 2016, counsel for DIB indicated it may have interest in securing a departure from that general rule to preserve the testimony of one or more witnesses. The Court directed the parties to confer regarding the issue. About four months later, counsel for DIB sent an email to plaintiffs' counsel on February 27, 2017, stating a desire to "move forward with one or more depositions to preserve testimony. Towards that end, we propose to take the deposition of Dr. Hussein Hamid Hassan, Chairman of Dubai Islamic Banks's Fatwa and Sharia Supervisory Board. We propose taking his seven hour deposition in London over two half days on the mornings of May 3 and 4." Counsel for DIB's February 27, 2017 email concluded by stating "can you let me know if these dates work for you *and we will notice the deposition and make arrangements for it*?" (emphasis supplied). The email provided no details about how DIB contemplated that the deposition would proceed, the order of questioning contemplated, the purpose for taking Dr. Hassan's testimony, the alleged reason it was necessary to preserve Dr. Hassan's testimony at this time, or for that matter where in London it was expected that the deposition would take place.

Plaintiffs responded the following day, advising that the dates "work for folks on our side." However, plaintiffs' counsel expressly noted that "we have not discussed any potential issues relating to location, duration or sequence of depositions that might be implicated by this proposal. For the time being, we think it makes sense to lock in the dates, and we can address any other issues presented by the proposed deposition, if there are any, in due course." Plaintiffs expected that the parties' conversations on those issues would be set in motion by the service of a deposition notice, as promised in DIB's counsel's email, and hopefully informed by details included in that notice. Or at least that counsel for DIB would, as directed by the Court, seek to confer regarding those issues to reach agreement on how the parties would pursue foreign and *de bene esse* depositions in the MDL.

Although plaintiffs' counsel's email indicated that plaintiffs anticipated process and logistical issues that would require attention before the deposition could proceed by agreement, plaintiffs heard nothing from counsel for DIB about the proposed deposition for almost two months.

In that two month interim, the landscape of the MDL changed significantly. At defendants' request, the Court extended the deadline for the parties to complete their document productions from March 30, 2017 (before the proposed deposition date) to June 16, 2017 (after the proposed deposition date). In addition, plaintiffs in several new actions had named DIB as a defendant, and the Court directed the parties to confer regarding how the claims against DIB and other non-sovereign defendants in the new cases would be coordinated with proceedings in the original cases.

Under the circumstances, plaintiffs reasonably interpreted DIB's silence to mean that DIB had deferred the deposition until document productions were complete (under an extension requested by the defendants), issues about coordination of the new claims against DIB had been resolved, and protocols for foreign and *de bene esse* depositions would be negotiated and implemented by the Court. The understanding was especially reasonable in light of DIB's silence – *i.e.*, since the hearing in October 2016, aside from the "save the date" email exchange four months later in February, plaintiffs had received no communication from DIB about any deposition. Even absent plaintiffs counsel's admonition in February, surely DIB's counsel knew that arranging an overseas *de bene esse* deposition (particularly one that, as proposed, would consume a week's time at substantial cost) in a large MDL would necessitate negotiated protocols and substantial advanced notice, if for no other reason than to plan reasonable travel and accommodations. But DIB sent no formal notice nor any other communication, either about the proposed deposition or about protocols that might be used for this and other similar depositions in the MDL.

On April 14, 2017, plaintiffs' counsel sent another email to counsel for DIB, noting that DIB had never served any notice for the proposed deposition. In response, counsel for DIB sent an email advising that it intended to proceed with the deposition on May 3 and 4, 2017. The email, prompted only by plaintiffs' inquiry, advised for the first time that DIB intended to proceed with its direct questioning of Dr. Hassan first, and that DIB expected plaintiffs' cross-examination to be limited to a four-hour window the following day. The email also identified, for the first time, the proposed location of the deposition in London, a basic piece of information necessary for plaintiffs to make reasonable travel arrangements that had not previously been provided (itself a reason plaintiffs reasonably understood that DIB had deferred the deposition). In a telephone discussion a few days later, DIB's counsel emphasized that Dr. Hassan's and DIB's counsels' travel plans were well established; prompting the question as to why no notice had been sent to plaintiffs' counsel to make similar accommodations.

For the following three principal reasons, Plaintiffs respectfully request that the Court quash the deposition notice of Dr. Hassan and direct the parties to confer concerning the rescheduling of Dr. Hassan's deposition after the parties have negotiated protocols for foreign *de bene esse* depositions and the parameters for questioning of the witness.

    1.    <u>As proposed by DIB, the deposition would be prejudicial and unfair to plaintiffs</u>.

DIB acknowledges its intent to use the deposition to perpetuate the trial testimony of Dr. Hassan, the head of DIB's Sharia Board and someone who presumably will profess to hold expertise concerning complicated issues of Sharia compliant finance. DIB's proposal, on less than 14 days'

notice, is to preserve Dr. Hassan's trial testimony in a manner that prevents plaintiffs from knowing in advance anything about that witness, the subject of the testimony, or the documents to be used with the witness.

Although the Federal Rules of Civil Procedure do not distinguish between discovery depositions and depositions to perpetuate testimony to determine their trial admissibility, the two types are nonetheless treated differently in other respects. The purpose of a discovery deposition is to enable the party taking a deposition to position itself to gather evidence with which to meet the trial testimony of a witness. Accordingly, the party taking the deposition is entitled to obtain that kind of discovery testimony from a prospective witness *before* having to confront that witness in a trial-type setting, such as a deposition to perpetuate testimony.

Other federal courts that have addressed this very issue have ordered that, before a witness's trial preservation testimony is taken, discovery pertinent to affording counsel an opportunity to confront the witness's trial testimony must be completed. *19th Street Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 350 (E.D. Pa. 2000); *see Envir-O-Man, Inc. v. The Mountbatten Surety Co., Inc.*, Civ. No. 1998/143, 2000 U.S. Dist. LEXIS 17210 (D.VI, Nov. 13, 2000), at *7 (ordering plaintiffs discovery deposition before video trial deposition). In *19th Street Baptist Church*, the court required that, before the trial deposition could be taken, the party proffering the witness had to satisfy all self-executing disclosure requirements, including relevant Rule 26 disclosures, had to provide a detailed proffer of the witness's expected testimony and a copy of each document to be relied upon at the trial deposition, and had to afford an opportunity for the opposing party to take a discovery deposition of the witness before the trial deposition. 190 F.R.D. at 350.

In *Linde v. Arab Bank, PLC*, 04 Civ. 2799 (NG)(VVP) (and related cases), terror financing litigation in the Eastern District of New York, the court addressed a similar issue, when the defendant, Arab Bank, asked for discovery of third-party fact witnesses as to whom plaintiffs proposed to preserve their trial testimony in overseas depositions. The Court noted the distinct purposes of the two types of testimony, and reasoned that "it seems to me that a party is entitled to obtain [a discovery deposition] from a perspective witness before having to confront that witness . . . in a trial-type setting which is what the deposition to perpetuate testimony is." Exhibit A, Transcript of Conference, at 8, *Linde v. Arab Bank, PLC*, 04 Civ. 2799 (NG)(VVP)(and related cases). In that case, Magistrate Judge Pohorelsky issued a ruling that required the witnesses to be made available for discovery depositions in advance of their depositions to perpetuate testimony. Exhibit B, Discovery Conference Ruling, ECF No. 657, 1:04-cv-05564-NG-VVP.

Here, plaintiffs have never had an opportunity to conduct a discovery deposition of Dr. Hassan, and thus have no way of knowing before the proposed trial testimony what information he may possess. Further, as DIB has proscribed, plaintiffs' questioning will be relegated to the few hours reserved on the second day of the deposition. In addition, during discussions over the last two days, DIB has made clear that it would object to producing the witness for a separate discovery deposition before the proposed trial deposition, or for that matter at any other time.

Under such circumstances as proposed, the deposition would be grossly prejudicial to plaintiffs. As an initial matter, plaintiffs have not been afforded an opportunity to develop evidence and information essential to conducting an effective cross examination of Dr. Hassan, a circumstance that presents significant due process concerns. Further, under the time constraints and other limitations DIB seeks to impose, plaintiffs would almost certainly be relegated to focusing all

of their time attempting to cross examine Dr. Hassan relating to the areas of testimony elicited through DIB's direct examination, and would thus be deprived of any meaningful opportunity to conduct a discovery deposition of Dr. Hassan. Thus, DIB's approach would allow defendants in this MDL to unilaterally notice the depositions of their own witnesses, consume half of the allotted time perpetuating testimony favorable to the defendant, and relegate plaintiffs to a brief window following the direct examination to conduct both necessary cross-examination and discovery inquiries. That approach simply is not fair in this instance or in the MDL generally.

A protocol that deprives plaintiffs of an opportunity to conduct a discovery deposition is especially inappropriate here. First, Dr. Hassan is a witness who has worked in an esoteric area of Sharia Compliance Finance for more than 50 years, including 18 years serving on DIB's Sharia Board. The complexity of the subject matter, coupled with the breadth of his experience working for DIB in a senior position, uniquely demand that plaintiffs be afforded an opportunity to conduct a discovery deposition, with sufficient time to prepare to confront his trial testimony.

Second, and relatedly, DIB has produced very little information concerning Dr. Hassan's tenure at DIB, or the activities of the Sharia Board on which he served for 18 years. In this regard, DIB has broadly objected to plaintiffs' document requests relating to the activities of the Sharia Board, and provided only a handful of relevant documents. Those materials include a single document identifying Dr. Hassan as a member of the Sharia Board in December 1998, and a March 12, 1975 document labeled "DIB's Articles of Incorporation Outlining Sharia Board Legal Responsibilities." Within Bates ranges DIB002364-2456 and DIB002457-2699, DIB has produced some additional information referencing the Sharia Board and describing in general terms the nature of the Sharia Board's functions and activities, but again these documents are not particularly detailed. In addition, many of these documents are in Arabic, and DIB has not identified which, if any, of those documents it intends to use during the course of the deposition.

In this circumstance and in this complex MDL proceeding generally, plaintiffs believe it appropriate and necessary that a party seeking to preserve trial testimony afford opposing parties an opportunity to first conduct a discovery deposition, and then proceed on a mutually agreeable date thereafter with the proposed *de ben esse* deposition.[2]

2. <u>The absence of appropriate protocols to ensure fairness and due process is the product of DIB's failure to confer with plaintiffs about the proposed deposition</u>.

As discussed above, aside from cursory emails exchanged on February 27 and 28, 2017, in which plaintiffs' counsel specifically noted that they would likely have process issues in need of resolution before the proposed deposition could proceed, DIB made no effort to contact plaintiffs' counsel between February 28, 2017 and April 14, 2017. As the party seeking an accommodation to perpetuate the trial testimony of its own witness in a foreign country by agreement in a massive MDL proceeding, it was incumbent upon DIB to take appropriate steps sufficiently in advance of the proposed deposition to resolve any potential disagreements relating to the process and protocols for the deposition, most especially where plaintiffs' original email noted those issues.

---

[2] As referenced previously, plaintiffs did in fact inquire during the recent discussions with counsel for DIB whether DIB would agree to produce Dr. Hassan for a separate discovery deposition. DIB advised that it would object to producing Dr. Hassan at any other time.

The need to do so should have been especially apparent to DIB given the complexity of this MDL proceeding. In most any MDL proceeding, it is customary to set forth protocols and rules for depositions in detail through a Case Management Order, given the unique realities of large scale MDL litigation. In fact, the Manual on Complex Litigation includes sample orders relating to depositions, which include specific rules and procedures for conducting video depositions and similar matters. *See, e.g.,* Exhibit C. Because discovery proceedings in the present MDL have focused almost exclusively on document discovery, no such protocols are yet in place, a fact well known to DIB. Further, the nature of the deposition DIB was seeking to conduct singularly called out for development of such protocols in advance, given that it would be the first ever foreign deposition of a party witness and the first ever *de bene esse* deposition in this MDL, and given that DIB intended to assert that it should be conducted without first allowing a discovery deposition.

DIB has provided absolutely no explanation for its failure to reach out to plaintiffs at any point between February 28, 2017 and April 14, 2017, to confer about the process and other issues raised in plaintiffs' February 28, 2017 email. DIB's failure to do so, along with other circumstances, left plaintiffs with the entirely reasonable impression that DIB had decided to defer the deposition by a few months, given further developments in the MDL proceedings.[3]

Ironically, DIB asks the Court to direct that the deposition proceed on the grounds that DIB's witness and counsel have longstanding arrangements in place to travel to London. If that is the case, it is difficult to understand why DIB's counsel did not notice the deposition at any point before April 19, 2017, only thirteen days before the date of the deposition scheduled in London..

3. <u>DIB has explained no need for Dr. Hassan's testimony or why the deposition cannot be rescheduled to a date in the near future, to allow the parties time to confer about MDL protocols to preserve testimony.</u>

Although DIB has expressed its desire to preserve Dr. Hassan's testimony, aside from advising plaintiffs' counsel that Dr. Hassan is an octogenarian, DIB has provided no reason why the deposition is essential or why it could not be rescheduled to a date a few weeks from now, to afford the parties an opportunity to work through appropriate protocols for the conduct of a deposition of this nature.

Before a district court will order the perpetuation of testimony, the court must be satisfied that the perpetuation may prevent a failure or delay of justice. To meet that burden, DIB must show "a need for [the testimony] that cannot easily be accommodated by other potential witnesses." *Deiulemar Compagnia di Navigazione S.P.A. v. M/V Allegra*, 198 F.3d 473, 486 (4th Cir. 1999) (quoting *Penn Mut. Life Ins. v. United States*, 68 F.3d 1371, 1375 (D.C. Cir. 1995). DIB has indicated that the subject of Dr. Hassan's testimony will be the functions, role, and activities of DIB's Sharia Board. If so, then DIB has not met its burden of showing a need to preserve this particular Sharia Board member's testimony. Because the Sharia Board is a continuing body at DIB comprised of five members, any one of who could testify about those same subjects, DIB has not shown a need to perpetuate his trial testimony.

---

[3] Due to DIB's silence following the cursory email exchanges in late February, and the fact that DIB did not serve formal notice of deposition during the two months following that cursory exchange, plaintiffs made no arrangements to travel to London during the first week of May. At this late date, plaintiffs would face exorbitant and unnecessary travel costs to travel to London on extremely late notice.

The Honorable Sarah Netburn
April 21, 2017
Page 7

_____

      Further, to the extent there may be any need for the deposition, DIB's conduct in arranging the deposition confirms the lack of urgency to conduct it during the first week of May. DIB raised its potential interest in scheduling depositions to preserve testimony during the hearing in October, but then took no further action for four months thereafter. When it did communicate about potential dates for the deposition in late February, it proposed the deposition would be held more than two months later, again signaling no immediate urgency. Then it dropped the matter until plaintiffs prompted a discussion to determine whether the deposition would be rescheduled.

      DIB's desire to preserve the testimony of a single witness for a limited purpose, with no explanation for why it needs that witness's testimony, or why it needs it on the date asserted in early May, should be balanced against the enormous inefficiency suggested by the manner in which DIB has proposed the deposition. Although DIB has previously suggested it has several witnesses whose testimony it seeks to preserve, it has proposed only one. In short, though multiple DIB witnesses may ultimately be at issue, DIB has proposed that plaintiffs' counsel fly to London on thirteen days' notice, at exorbitant cost, and stay for a week, to conduct a single deposition. Plaintiffs suggest that the proposal defies the admonition of Rule 1 to administer the rules to secure the inexpensive determination of proceedings and the principles of conducting an MDL to produce efficiency.

      Given that this issue is likely to arise repeatedly in the MDL, these conversations should be conducted between the Plaintiffs' Executive Committee and Defendants' Executive Committees, with input from the new plaintiffs who have joined the action recently and may have an interest in how particular depositions will proceed.

      Once again, plaintiffs do not object in principle to conducting depositions of Dr. Hassan in the near future, under circumstances that assures fairness and due process. Accordingly, plaintiffs request that the court quash the existing notice for Dr. Hassan's deposition in London on May 3 and 4, 2017, and order the parties (with the PECs and DEC) to confer and propose for the Court's consideration and approval appropriate protocols for foreign and *de bene esse* depositions in this MDL and regarding a mutually agreeable date to proceed with Dr. Hassan's deposition. In the alternative, plaintiffs request that before Dr. Hassan's trial deposition may take place, that DIB be required (1) to satisfy all self-executing disclosure requirements, including relevant Rule 26 disclosures as to Dr. Hassan, (2) to provide a detailed proffer of the expected testimony of the witness and a copy of each document anticipated to be relied upon at the trial deposition, and (3) to afford plaintiffs an opportunity to take a discovery deposition of the witness a reasonable time before the trial deposition to allow preparation to confront the witness's trial-type testimony. *19th Street Baptist Church*, 190 F.R.D. at 350.

Dated this 21st day of April 2017.

                                                     Respectfully submitted,

| /s/ Sean Carter | /s/ Robert T. Haefele |
|---|---|
| SEAN CARTER | ROBERT T. HAEFELE |
| *PLAINTIFFS' EXECUTIVE COMMITTEES* | *PLAINTIFFS' EXECUTIVE COMMITTEES* |

cc:     All counsel of record via ECF