# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

August 31, 2017

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

> Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

In accordance with the Court's Order of July 28, 2017 (ECF No. 3662), the Plaintiffs' Executive Committees (PECs) write to advise the Court of the results of their preliminary review of the documents produced by the defendants who were subject to the June 16, 2017 document production deadline, and whether the Executive Committees' anticipate filing any motions to compel as to those defendants.

Initially, the PECs note that they have not had the opportunity to depose any of the individual defendants or representatives of any of the organizational defendants whose productions are addressed in this letter.  As in any case, the PECs anticipate that testimony provided by the defendants and their representatives during upcoming depositions is likely to identify the existence of additional relevant documents that have not been produced.

To the extent the parties are not able to reach agreement concerning the production of additional relevant documents identified during depositions, it may be necessary for plaintiffs to move to compel the production of such documents.  However, for obvious reasons, this letter focuses only on anticipated motion practice based on the content of the document productions made to date.

1. **Abdullah Omar Naseef, Abdullah bin Saleh al Obeid, Abdullah Mohsen al Turki and Adnan Basha**

_____

Through its decision of April 16, 2013, the Second Circuit Court of Appeals remanded defendants Abdullah Omar Naseef, Abdullah bin Saleh al Obeid, Abdullah Mohsen al Turki and Adnan Basha, for jurisdictional discovery. *O'Neill* v. *Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001),* 714 F.3d 659, 678-679 (2d Cir. 2013). Defendants Naseef, Obaid, and Turki all served as senior officials of defendant Muslim World League (MWL). Defendant Basha served as a senior official of defendant International Islamic Relief Organization (IIRO), a subsidiary of the MWL. The Second Circuit authorized jurisdictional discovery in regards to plaintiffs' allegations that they "controlled and managed some of [the purported charitable organizations that allegedly supported al Qaeda] and, through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States." *Id.*

Plaintiffs served jurisdictional discovery requests on August 22, 2013. In response, the four charity official defendants asserted numerous objections and argued that the documents plaintiffs sought were under the control of the charities themselves.

On September 2, 2015, plaintiffs filed a motion to compel directed to defendants Naseef, Obeid, Turki, and Basha (ECF Nos. 3024, 3129). That motion noted that the four defendants had collectively produced only 84 documents, and that the few documents that had been produced consisted principally of affidavits and other documents they previously filed with the Court in 2003 and 2005 in support of their initial motions to dismiss. As further detailed in that motion and the PECs' related reply brief, the PECs urged that the four defendants must be in possession of additional materials responsive to plaintiffs' document requests, and had the practical ability to compel the charities for which they worked to produce records relating to their activities and duties with those organizations. In response, the defendants principally argued that they were not personally in possession of any additional records relating to their roles as heads of the relevant charities, and were relying upon the productions of those charities to satisfy their separate discovery obligations.[1] The defendants also objected to the scope of plaintiffs' requests.

In response, the PECs argued that the defendants had the practical ability to facilitate production by the charities of relevant and responsive documentation, and an independent obligation to do so. In addition, plaintiffs expressed their view that the individual charity defendants' claim that they have no relevant and responsive records in their own possession concerning their activities with the charities did not seem plausible.

On this final point, plaintiffs noted at oral argument on March 22, 2016, that the positions they held with the MWL and IIRO were prominent roles in two of the world's largest Islamic institutions, in relation to which the individual officials traveled throughout the world, often in the company of senior Saudi government officials, and participated in and gave speeches at high profile international events and conferences. See Transcript of March 22, 2016 Hearing at pp. 71-72. The PECs expressed their skepticism that the individual officials had not retained a single document commemorating such prominent work. At a minimum, the PECs noted that the individual

_____

[1] Because of this approach, discovery as to these defendants is inextricably tied to the discovery directed to MWL and IIRO, and those defendants' document productions.

defendants' passports would reflect travel undertaken during their service with the organizations, and should have been produced in response to plaintiffs' requests.

At the hearing on March 22, 2016, Judge Maas recognized that the defendants' passports "would seem to be something the charities would not have produced" and were responsive to several of plaintiffs' requests. *See id* at p. 84. In addition, as interim steps to address the issues raised in plaintiffs' motion to compel, Judge Maas directed the individual officials to provide a "sworn or affirmed certification from each of the four charity defendants that except to the extent to which they have specified that a document is being withheld, they have produced all documents responsive to the requests unless those documents are part of the productions of the MWL or IIRO." Judge Maas further directed the charity officials to provide a privilege log of any documents being withheld on the basis of privilege.

On June 2, 2017, Alan Kabat, as counsel for the MWL and IIRO officials, sent a letter to plaintiffs' counsel enclosing indexes for defendants Turki, Obeid, Naseef, and Basha, identifying documents within the productions of the MWL and IIRO that the individual defendants had determined to be responsive to the discovery requests directed to those individual defendants. In that letter, those defendants acknowledged the MWL and IIRO had not yet completed their document productions, and that the indexes would have to be supplemented upon completion of those productions. Mr. Kabat expressed his expectation to complete the necessary review and supplementation of the index "within one week of the completion of the MWL and IIRO's final production."

In that same letter, Mr. Kabat advised that "we understand that the individual defendants do not themselves have documents relating to their work at the charities, as those documents remain with the charities after their retirement." On the basis of this representation, we understand that the individual charity official defendants are maintaining their position that they are not in possession of any documents responsive to plaintiffs' requests (presumably including their passports, which were a specific subject of discussion during the hearing), other than the 84 documents they have collectively produced to date.

Finally, as to Judge Maas' directive that the individual charity officials produce their passports, Mr. Kabat's letter represented that "since they traveled on official passports, which the government retained after each trip, they do not have personal possession of those passports." The PECs understand this statement to indicate that the individual charity officials traveled on government or diplomatic passports in their capacities as the heads of the MWL and IIRO, and that the Saudi government retained possession of those governmental or diplomatic passports.

There are several issues that need to be addressed with respect to the MWL and IIRO officials' responses to plaintiffs' document requests and the specific directives issued by the Court at the hearing on March 22, 2016.

First, because the MWL and IIRO officials are relying upon the productions of those purported charities to respond to plaintiffs' document requests directed to them individually, their compliance with their discovery obligations will depend on the sufficiency of the MWL's and IIRO's productions relating to their roles and work for those organizations. The MWL and IIRO received

The Honorable Sarah Netburn
August 31, 2017
Page 4

_____

an extension to August 15, 2017 to complete their productions, and plaintiffs have not completed their review of those productions.  However, based on the review conducted to date, the PECs do believe there are significant gaps and deficiencies in those productions, including as to the roles, duties and activities of the four charity officials with those organizations.  Plaintiffs anticipate that any motion to compel directed to the MWL and IIRO relating to documents responsive to the requests served on the individual charity defendants would be directed to those individual defendants as well.

Second, plaintiffs have not received the specific certification Judge Maas directed the charity officials to provide "that except to the extent to which they have specified that a document is being withheld, they have produced all documents responsive to the requests unless those documents are part of the productions of the MWL or IIRO."  Counsel's June 2, 2017 correspondence did include a statement that he "understands" that they do not have any documents in their personal files, and that all relevant materials are in the possession of the organizations for which they worked.  But that statement does not meet the form or substantive requirements of the Court's directive.  The defendants should supplement their responses to plaintiffs' document requests, to formally present those representations in those responses rather than in a letter from counsel, and include the specific certification required by the Court.  To the extent any documents are being withheld on the basis of a privilege, including any claim of sovereign immunity, they should also provide a privilege log.

Third, with respect to their passports, the MWL and IIRO officials have not explained what efforts, if any, they have undertaken to obtain copies of the relevant passports from the Saudi government.  The roles each held with the MWL and IIRO have been described as government positions, as evidenced by the fact that they traveled in those capacities on "official" passports, and several of them have held other high level posts within the Saudi government throughout their careers.  The nature of their roles for the Saudi government suggest that each may have the practical ability to obtain copies of their relevant passports from the government to assist in their defenses in this litigation, but there is no indication that they have undertaken any efforts to do so.  Plaintiffs anticipate moving to compel them to do so, and also submit that they should be required to supplement their discovery responses to formally state the representations presented in counsel's June 2, 2017 letter in those responses, and to also describe all efforts undertaken to obtain copies of the relevant passports.  Plaintiffs also intend to move to compel the individual charity officials to produce any personal passports, as those may reflect relevant travel and would also be responsive to plaintiffs' discovery requests and within the scope of the Court's prior production order.

Fourth, the charity officials' indexes identifying documents in the productions of the MWL and IIRO that are responsive to document requests directed to them individually need to be updated, given the further productions by the MWL and IIRO.

**Soliman al-Buthe**

Through its decision on April 16, 2013, the Second Circuit Court of Appeals vacated the district court's judgment insofar as it dismissed claims versus criminally indicted and Specially Designated Global Terrorist (SDGT) defendant Soliman al-Buthe for jurisdictional discovery and remanded the claims as to al-Buthe for jurisdictional discovery.  Al-Buthe served as a representative

The Honorable Sarah Netburn
August 31, 2017
Page 5

_____

of defaulted defendant Al Haramain, including as an officer of Al Haramain's United States branch
office in Ashland, Oregon.

Plaintiffs served jurisdictional discovery requests on August 22, 2013.  Instead of producing
documents responsive to plaintiffs' discovery requests, defendant al-Buthe interposed myriad
objections.  On August 10, 2015, plaintiffs filed a motion to compel (ECF Nos. 2990, 3111), which
was the subject of a hearing before the Court on March 22, 2016.  For the hearing, plaintiffs
described the discovery sought from al-Buthe as falling generally into nine categories, including

> Category 1. Banking or other financial/transactional documents of al-
> Buthe or his family (particularly where used to transfer AH funds
> (RFP 17, 21, 48, 53, 59, 60), including investigations into any such
> accounts or transactions (by others or by al-Buthe) (RFP 49, 50, 51);

> Category 2. Banking or other financial/transactional documents of
> AH (RFP 16, 21, 47, 48, 49, 53), including investigations into any
> such accounts or transactions (by others or by al-Buthe) (RFP 49, 50,
> 51);

> Category 3. Al-Buthe's indictment by USDOJ; investigations, his
> listing/delisting (including efforts to be delisted) and sanctions by
> US, UN, and others:

> • RFP 20, 21, 22, 23, 25, 26, 27, 29, 31, 32 (US indictment,
>   asset freezing, designation/sanctions (including delisting
>   efforts));

> • RFP 24, 26, 27, 29, 30 (UN designation/sanctions
>   (including delisting efforts and delisting));

> • RFP 29 (Other sanctions imposed on al-Buthe);

> • RFP 21-22 (Documents regarding the subject of his
>   indictment and/or listings)

> • RFP 49, 50, 51 (Investigations into any AH/al-Buthe
>   accounts or transactions (by others or by al-Buthe));

> Category 4. Internal inquiries into allegations of criminality,
> corruption, extremism, financial irregularities, suspicious activities,
> terrorism links, or support for violent jihad) (RFP 50, 51, 52);

> Category 5. Items particularly personal to al-Buthe – RFP 1
> (bio/resume); RFP 18 (association with groups in designated
> locations); RFP 19 (travel docs, passports, etc.); RFP 61 (al-Buthe's
> filings with local, state, federal agencies);

_____

Category 6. Documents in al-Buthe's possession regarding any AH entity (including the Quran Foundation in Oregon), including any AH property in the US (including property/mosque in Springfield, MO) ( RFP 2-15, 28, 33, 34, 43, 44, 46);

Category 7. Al Haramain designations/sanctions/office closures/asset disposition by US, UN, KSA, etc. (35, 36, 37, 38, 39, 40, 41, 45, 54);

Category 8. Interrelationships among, or familiarity with terrorist propensity of, other alleged co-conspirators (RFP 18, 56, 57, 58, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 78); and

Category 9. Interrelationships among Al Haramain and other companies or properties in which he had an interest (RFP 42, 62, 75, 76, 78).

At the conclusion of the portion of the hearing addressing plaintiffs' motion as to al-Buthe, the Court ruled from the bench, overruling al-Buthe's objections and ordering as follows: "I am going to require production of the documents that the plaintiffs seek as well as a certification that Mr. Al-Buthe has produced all the responsive documents in his possession, custody or control." Transcript of Mar. 22, 2016 hearing at 113:19-22.

In a letter with accompanying attachments, dated June 14, 2017, well over a year after the Court's unambiguous direction to produce all of the documents plaintiffs had sought and to certify that he had done so with regard to all documents to which he had access, al-Buthe produced a set of 2,918 pages of documents. However, the responses that accompanied the letter interposed a slate of objections that had long been overruled or waived, asserted throughout many of his responses that "Defendant will produce responsive documents, if any are in his possession," failed to provide the referenced court-ordered certification, and failed to include a log identifying documents that he withheld premised on the asserted (though overruled or belatedly raised) objections.

Plaintiffs anticipate filing an additional, follow-up motion, asserting that al-Buthe has not met his discovery obligations under the rules and as ordered by the Court following the hearings on March 22, 2016. Review of documents produced to date indicate that al-Buthe has not produced documents responsive to each category for which he was ordered to respond; he has not identified documents withheld; and he has not provided the court-ordered certification.

### Dallah Avco

The PECs previously filed a motion to compel as to Dallah Avco on February 8, 2016 (ECF No. 3211, 3314), and Your Honor heard oral argument on that motion on January 18, 2017. At the conclusion of argument, Your Honor directed Dallah Avco (1) to produce the Ercan documents it had previously identified; (2) to search for and produce certain calendar entries for relevant Dallah Avco employees for periods surrounding the 1995 decision to second Omar al Bayoumi to the ANSS project, and the 1999 decisions to deny and then grant an extension of Bayoumi's

The Honorable Sarah Netburn
August 31, 2017
Page 7

_____

secondment; and (3) to search for and produce any Dallah Avco Board minutes concerning the 9/11 investigations in early 2002.

Robert Kry, counsel for Dallah Avco, sent plaintiffs a letter on June 16, 2017, outlining the steps Dallah Avco had undertaken in response to the Court's directives. In that letter, Mr. Kry advised that Dallah Avco had searched for, but not located any calendar entries for the three Dallah Avco representatives who were the subject of the Court's Order. As to the Court's directive that Dallah Avco produce Board minutes relating to discussions of the 9/11 investigations, Mr. Kry advised that "[u]pon investigation, we determined that, due to its corporate structure, Dallah Avco does not have a Board of Directors. Accordingly, we instead searched for minutes of any other Dallah Avco meetings in which Mr. Kamel [referring to Alawi Kamel] participated on behalf of Dallah Avco concerning the 9/11 investigations in early 2002. That search did not identify any responsive documents, so we have nothing to produce."

Given the wording of Mr. Kry's letter concerning the search for Board minutes, plaintiffs have some question as to whether there may be relevant Dallah Avco meeting minutes pertaining to the 9/11 investigations in early 2002, relating to meetings in which Mr. Kamel did not personally participate. Plaintiffs are seeking clarification from counsel for Dallah Avco on that issue, and to the extent such records do exist, plaintiffs believe that they should be produced.

Aside from that issue, and recognizing that plaintiffs already moved to compel as to Dallah Avco, plaintiffs do not anticipate any further motions to compel directed to Dallah Avco at this time.

**Wa'el Jelaidan**

Plaintiffs filed their first set of request for production of documents directed to defendant Jelaidan on June 13, 2006, and have subsequently filed numerous motions seeking to compel defendant Jelaidan to comply with his most basic discovery obligations. Those motions resulted in numerous court orders directing defendant Jelaidan to undertake meaningful efforts to collect and produce documents responsive to plaintiffs' requests, including several specific directives that Jelaidan undertake diligent efforts to obtain banking and financial documents for accounts held in his name or in which he held a beneficial interest, including any accounts that were frozen as a result of his terrorist designations by the United States and United Nations.

Defendant Jelaidan failed to do so, resulting in the imposition of a monetary sanction against him. In his October 28, 2013 Memorandum Decision and Report and Recommendation relating to that monetary sanction, Judge Maas found that Jelaidan exhibited a "continued unwillingness to participate fairly in discovery" over seven years, and that Jelaidan had "willfully disregarded his discovery obligations and acted in bad faith." *See Memorandum Decision and Report and Recommendation,* ECF No. 2789, at pp. 9, 14. After the Court imposed that monetary sanction, plaintiffs came into possession of information, contained in documents produced by co-defendants Yassin al Kadi, indicating that defendant Jelaidan had successfully obtained records relating to certain of his bank accounts, including accounts held at Faisal Finance in Switzerland, that he had never produced to plaintiffs, despite the Court's numerous orders directing him to produce those specific documents. By letter motion dated August 10, 2015, the PECs bought this additional information to the Court's

The Honorable Sarah Netburn
August 31, 2017
Page 8

---

attention, and requested leave from Judge Maas to file further motions seeking additional monetary sanctions against Jelaidan, based on his apparent misrepresentations to the Court and failure to produce documents that were in fact in his possession.

At the discovery conference on March 22, 2016, Judge Maas authorized plaintiffs to do so. Tr. of Mar. 22, 2016, at 164. However, Your Honor has since directed plaintiffs to refrain from filing that motion, while the issues surrounding the issuance of the license by OFAC for payment of the prior sanction had been resolved. This Court has directed Jelaidan's counsel, Martin McMahon, to file monthly status reports concerning his efforts to obtain a license from the Office of Foreign Assets Control (OFAC) to authorize payment of the monetary sanction imposed on Jelaidan for violation of his discovery obligations.

One of those recent status reports concerning Mr. McMahon's efforts to obtain the OFAC license, included as an exhibit a June 19, 2017 email to the licensing division of the Office of Foreign Asset Control (ECF No. 3635). The email indicates that Mr. McMahon had "attached below documents from Faisal Finance in Switzerland (noting my client's bank account numbers with the institution's last known amount with the bank) and a translated copy (with the original) of a letter from the Attorney General of Switzerland that lists his Citi Bank account number and information." The records included as attachments to the correspondence were not included in Mr. McMahon's filings with the Court.

Plaintiffs were unsure whether the documents included as attachments to the June 19, 2017 correspondence with OFAC have been produced by Jelaidan to plaintiffs. Accordingly, plaintiffs wrote to Mr. McMahon on June 26, 2017 to request that he provide copies of the attachments that were sent to OFAC relating to defendant Jelaidan's accounts at Faisal Finance and Citi Bank. Mr. McMahon did not respond to that email request. Plaintiffs are reiterating that request here.

The PECs do not want to waste the Court's time by filing additional motions to compel the production of documents that the Court has already directed defendant Jelaidan to produce, and also are mindful of the Court's directive that the PECs refrain from filing any additional motions for sanctions as to Jelaidan until the issue surrounding the current request for an OFAC license have been resolved. At the same time, the PECs do not want to relinquish any rights to obtain appropriate relief for Jelaidan's continuing defiance of the Court's rulings. The PECs propose to defer discussions concerning the appropriate next steps as to defendant Jelaidan until after the issues relating to the OFAC license have been resolved.

## Yassin al Kadi

Plaintiffs served document demands on counsel for Yasin Abdullah Kadi ("Kadi") on August 15, 2013 and after receiving multiple objections, began receiving documents over the next year until December 2014 when Kadi's counsel stated that they were finished with their production. On May 6, 2015 the PECs served Kadi with a good faith letter to identify production deficiencies and served a supplement document request. Counsel agreed to make another production and informed it would take time. Kadi next began making periodic productions over the next two years claiming once again, that he had finished on March 30, 2017. While thousands of pages were received, many of them were not responsive or irrelevant, and many did not indicate to which

The Honorable Sarah Netburn
August 31, 2017
Page 9

---

demand they purported to be responsive. Nonetheless, once Kadi's counsel indicated they were finished with their production on March 30, 2017 the PECs attempted to narrow the gaps in the production to identify areas where documents appeared to be missing. In a July 20, 2017 letter the PECs identified the following areas of deficiencies: documents relating to the KSA's investigation of Kadi and the freezing of his assets in the KSA and several countries around the world; Kadi's relationship with specific charities Muwafaq, Al Haramain Islamic Foundation ("AHIF"), the IIRO, SHC and the SJRC; Kadi's relationship with Osama bin Laden and Wadi al Aqiq and al Qaeda companies in the Sudan such as Solano, Adiyat Trading, East African Grains, and Rowad Development and many more; certain Shamal Bank accounts and information regarding Kadi's beneficial interest in the bank and investment arm; documents reflecting Kadi's relationships with Wael Jelaidan, Adel Batterjee, and others; and all FOIA correspondence and FOIA responses.

    Counsel for Kadi responded to the good faith meet & confer request and addressed only the gaps from the Muwafaq activities by claiming that Kadi was under no obligation to preserve documents relating to the claims in the litigation until he became aware of them and many of the requests ask for documents that pre-date the September 11 attacks by many years. Counsel did *not* state that any documents were destroyed and in fact *did* produce some documents from as early as 1990, largely from Bosnia but very little with respect to activities in the al Qaeda centric areas of operation in Sudan, Pakistan, and Afghanistan. Counsel also notes that the Albanian government seized Muwafaq records in Albania and Kosovo.

    Kadi's counsel also indicated that the Saudi Arabian Ministry of Foreign Affairs refused to respond to Kadi's request to unfreeze his assets as a matter of national security. Kadi produced thousands of documents regarding his frozen assets and his attempt to have them unfrozen in the United States, United Kingdom, the European Union, Switzerland, Turkey, Albania and the United Nations; but strangely, nothing about his attempts to unfreeze his assets in Saudi Arabia nor anything regarding Saudi Arabia's investigation of Kadi.

    Another topic addressed by counsel in the meet & confer was the FOIA demands, which Kadi argued the plaintiffs' discovery demands did not specifically request, despite Judge Maas' directive that "Defendants are directed to produce any responsive FOIA communications that they previously have withheld on the basis that they are protected by the work product doctrine." (ECF No. 2730 filed 6/12/13) and that all parties "update their written responses to their adversaries' FOIA requests.…" (ECF No. 2837 filed 2/19/14). Plaintiffs produced all relevant FOIA applications and responses and understood that all defendants were obligated to do the same.

    Plaintiffs takes issue with the over broad privilege log objections Kadi has served.

    Likewise, Plaintiffs have produced to Kadi all non-privileged documents in our possession responsive to Kadi's requests and where feasible, identified which documents were specific to a Kadi request, and also provided documents of a more general nature that may arguably be responsive subject to connection, in prosecuting our claims against Kadi.[2] The contention interrogatories

---

[2] The PECs have made two supplemental productions in the last few months, on June 16, 2017 and August 15, 2017, of documents received more recently, including in response to long pending FOIA requests. The PECs have not completed indexing those productions, but are doing so. However, in response to an inquiry from counsel for defendant Kadi, the PECs identified documents in the June 16, 2017 production that related

The Honorable Sarah Netburn
August 31, 2017
Page 10

_____

served by Kadi on plaintiffs are pre-mature and Judge Maas agreed that those should wait for a later time.

Plaintiffs anticipate a motion to compel will be necessary to address the production gaps that were addressed in counsel's letter response and those that were not addressed at all in that response, as well as several documents listed on the privilege log.

Pirouz Sedaghaty (a/k/a Pete Seda)

As the Court is aware, proceedings as to defendant Pirouz Sedaghaty have been stayed, for the moment, by virtue of his bankruptcy proceeding in Oregon. At the time the stay was imposed, the Court had found Mr. Sedaghaty was non-compliant with his discovery obligations and imposed financial sanctions for that non-compliance (which remained unsatisfied in light of the stay). So long as the MDL proceedings remain stayed as to Mr. Sedaghaty, plaintiffs intend to comply with the stay and will refrain from filing any motions against him in the MDL.

Respectfully submitted,

COZEN O'CONNOR                          MOTLEY RICE LLC


By: /s/ Sean P. Carter                  By: /s/ Robert T. Haefele
    SEAN P. CARTER                           ROBERT T. HAEFELE
    For the Plaintiffs Exec. Committees      For the Plaintiffs Exec. Committees



cc:    The Honorable George B. Daniels, via ECF
       All Counsel of Record via ECF

_____

to defendant Kadi and related individuals and associates. The PECs also advised that the August 15, 2017 production consisted overwhelmingly of records obtained from the physical records of the National Archives relating to the work of two of the 9/11 Commission's investigative teams. As plaintiffs advised defense counsel, the National Archives does not maintain a comprehensive online database of all 9/11 Commission records that have been released to date, and certain of the records are available only in physical form at the National Archives. Several years ago, plaintiffs conducted a review of the then-available records at the National Archives, and retrieved those relevant to the litigation, which were produced previously. Plaintiffs recently received indications that additional records may have been released in the physical files at the National Archives, and therefore hired a third party vendor to visit the National Archives and collect and scan in their entireties all records relating to two of the relevant 9/11 Commission investigative teams. The vendor completed that work on August 15, 2017, and the PECs arranged for the vendor to produce them to the defendants that same day. Given the previous efforts undertaken to collect records from the National Archives and production of those records, plaintiffs anticipate that the vast majority of the records received from the third party vendor on August 15, 2017 were produced previously, and to the extent responsive to a defendant's document requests would have been so identified. However, the PECs are reviewing the August 15, 2017 production and will identify any additional documents responsive to defendants' discovery requests.