UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                              **03-MD-1570 (GBD)(SN)**

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**                                    <u>**OPINION AND ORDER**</u>

-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 8/29/2018
```

**SARAH NETBURN, United States Magistrate Judge**:

      On February 28, 2018, the Plaintiffs' Executive Committees ("PECs") filed a motion to
compel Defendants World Assembly of Muslim Youth Saudi Arabia and World Assembly of
Muslim Youth International (collectively "WAMY") to produce additional documents in
response to the PECs' discovery requests. ECF No. 3910. The motion to compel is GRANTED
in part and DENIED in part.

**BACKGROUND**

      Plaintiffs served their first set of document requests on WAMY on December 10, 2010,
and later served supplemental document requests in 2011, 2012, and 2013. ECF Nos. 3912-1–
3912-5. In December 2013, the PECs filed a motion to compel WAMY to produce additional
documents, including documents relating to World Assembly of Muslim Youth Canada
("WAMY Canada"). ECF Nos. 3912-6, 3912-7. A few months later, on February 19, 2014, the
Honorable Frank Maas held a conference with the parties to discuss the discovery disputes, but
deferred ruling on whether WAMY should be compelled to produce additional documents
regarding WAMY Canada. ECF No. 3912-21. Judge Maas also extended the deadline for all
document discovery to June 30, 2014. <u>Id.</u> at 6.

      In March 2014, the PECs filed a second motion to compel WAMY to produce a variety
of documents from 1992 to 2004. ECF Nos. 3912-8, 3912-9. During a conference on April 24,

2014, Judge Maas directed WAMY to search for and produce additional documents in response to the PECs' requests. ECF No. 3963-14 at 36. Judge Maas also said, "I'm going to reserve decision with respect to the cutoff date and try to move things along by ensuring that at least through 2002, presumably, the documents are produced in relatively short order." Id. at 37. The Court subsequently issued a written order stating, "The Court reserves decision as to whether the 2004 discovery cut-off date set during the hearing on April 12, 2011 shall apply to the WAMY defendants. In the interim, the WAMY defendants must produce all responsive documents from 1992 through the end of 2002." ECF No. 2852.

WAMY subsequently sought several extensions to the deadline for document discovery. In October 2017, the Court once again extended the deadline for WAMY's document production to November 30, 2017, but warned that no further extensions would be granted. ECF No. 3762. On February 28, 2018, the PECs filed yet another motion to compel WAMY "to immediately produce all documents responsive to plaintiffs' document requests pursuant to Federal Rule of Civil Procedure 37(a), including all categories identified herein." ECF No. 3910 at 1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "A party may serve on any other party a request" to produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "The responding party must produce documents sought in each request or 'state an objection to the request, including the reasons.'" Pegoraro v. Marrero, 281 F.R.D. 122, 132 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 34(b)(2)). "A party seeking discovery may move for an order compelling an answer,

designation, production, or inspection" if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

## DISCUSSION

### I.  Meet-and-Confer Process

Rule 37(a)(1) states that when a party files a motion to compel, "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Likewise, the Court's Individual Practices state that "[a]ny party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute." WAMY argues that the PECs' motion to compel is premature and fails to comply with the Federal Rules and the Court's Individual Practices because the PECs did not meet and confer with WAMY before filing it. ECF No. 3949 at 2–4. WAMY also explains that the parties met and conferred regarding the discovery disputes on March 19, 2018, after the PECs filed their motion to compel. Id. at 3–4. According to WAMY, the "parties were able to narrow the issues raised broadly in the motion." Id. at 4. But WAMY has identified few issues that were actually resolved at the meeting.[1]

The PECs should have met and conferred with the defendants before filing their motion to compel. But at this point, several months after document discovery has closed, it would be

---

[1] WAMY states that it "clarified" certain issues at the meet and confer, ECF No. 3949 at 3, 16, 19, but the PECs have given no indication that they were satisfied by those clarifications. WAMY also represents that after the meet and confer, it produced additional documents relating to Guantanamo Bay detainees and thereby resolved that issue. Id. at 20. The PECs have not contested WAMY's representation, so the Court will presume that this issue has been resolved to the PECs' satisfaction. Finally, the PECs complain that in many circumstances, "attachments and enclosures to WAMY communications were not found within the bates-range immediately following the document." ECF No. 3911 at 20. WAMY responds that although "documents were produced as stored in the regular course of business," the organization is nevertheless "re-searching for the alleged missing attachments to which Plaintiffs refer in order to ensure that same were produced or to supplement production if missing and existing." ECF No. 20–21. Because the PECs do not discuss this issue in their reply brief, the Court presumes that the parties have resolved it.

inefficient for the Court to deny the PECs' motion simply because of their failure to meet and confer in advance. Moreover, the parties met and conferred after the PECs filed their motion, and it appears that they were largely unsuccessful in narrowing the disputed discovery issues. Thus, the Court will consider the merits of the PECs' motion to compel.

## II.     Appropriate Dates

The parties dispute the appropriate cutoff date for WAMY's production. ECF No. 3949 at 5; ECF No. 3962 at 9–10. During the conference on April 24, 2014, Judge Maas stated that he would "reserve decision with respect to the cutoff date" applicable to WAMY and "try to move things along ensuring that at least through 2002, presumably, the documents are produced in relatively short order." ECF No. 3963-14 at 37. The Court subsequently issued an order "reserve[ing] decision as to whether the 2004 discovery cut-off date set during the hearing on April 12, 2011 shall apply to the WAMY defendants" and directing WAMY to "produce all responsive documents from 1992 through the end of 2002" in the interim. ECF No. 2852. Particularly in light of the fact that Judge Maas subsequently retired, the PECs should have renewed their request for a ruling on whether WAMY would be required to produce documents from 2003 and 2004, and they should have done so before document discovery closed. It appears that the PECs never asked the Court to revisit this issue and apply a more expansive date range. Thus, the Court will not require WAMY to reopen all of its files after the close of document discovery to search for additional documents from 2003 and 2004.

## III.    Timeliness of the Document Requests

WAMY states that it did not produce documents in response to the PECs' fourth set of document requests because those requests were served after the August 30, 2012 deadline for document production. ECF No. 3949 at 6; ECF No. 3951-6. But WAMY's contention that it was

not obligated to produce documents in response to requests served after August 30, 2012, is

disingenuous. WAMY has requested numerous extensions to the deadline for its document

production over the past several years. Indeed, WAMY requested an extension as recently as

September 28, 2017, and the Court granted WAMY until November 30, 2017, to complete its

document production. ECF Nos. 3727, 3762. WAMY cannot claim that it was relieved from

producing documents in response to the PECs' fourth set of document requests merely because

those requests were served after a discovery deadline that has repeatedly been extended, often at

WAMY's request. Within 60 days of this Opinion and Order, WAMY is ORDERED to search

for and produce all documents responsive to the PECs' fourth set of document requests.

## IV.     Branch Offices

The PECs contend that WAMY has not produced "full, complete, and organized sets of

documents for each of WAMY's branch offices." ECF No. 3911 at 5. In support, the PECs point

to a letter that WAMY's Assistant Secretary General of Offices and International Relations, Dr.

Al-Mazrou, sent to more than 30 branch offices in 2011 asking office staff to send "reports and

information about all projects, programs and activities implemented by your esteemed office

during the period from (1992 A.D.) to (2002 A.D.) as soon as possible." ECF No. 3963-1.

Several months later, on April 7, 2012, Dr. Al-Mazrou sent the branch offices another letter

asking them to complete forms detailing the offices' financial and administrative matters from

1992 to 2002 and asking them to provide account statements for that period. ECF No. 3963-2.

Finally, on May 5, 2012, Dr. Al-Mazrou asked each office to send copies of its bank account

statements and audited balance sheets from 1992 to 2002. ECF No. 3963-3.

It appears that WAMY did not conduct an adequate search for documents located in its

branch offices. Although "counsel need not supervise every step of the document production

process and may rely on their clients in some respects," counsel are responsible for coordinating their clients' discovery efforts and must oversee their clients as they "locate relevant information and . . . preserve and timely produce that information." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) (footnote and internal quotation marks omitted) (quoting Metro. Opera Ass'n v. Local 100, Hotel Employees & Rest. Employees Int'l Union, 212 F.R.D. 178, 222 (S.D.N.Y. 2003)). Instead of leaving it to Dr. Mazrou to request that branch offices send in reports and information at will, defense counsel should have communicated directly with staff in WAMY's branch offices and carefully coordinated and supervised their efforts to collect and produce all relevant and responsive documents.

In addition to debating the sufficiency of WAMY's search, the parties dispute whether certain WAMY offices even exist. For example, WAMY states that Argentina, one of the countries listed as deficient in the PECs' opening brief, "is not an office but rather one of the countries serviced by WAMY South America, whose office is located in Brazil." ECF No. 3949 at 12. The PECs do not contest this assertion in their reply brief. See ECF No. 3962. WAMY also contends that it does not have an office in Austria. ECF No. 3949 at 6 n.21. In this case, however, WAMY's own documents suggest that an office in Austria does exist. A WAMY report references the "Eastern Europe Office – Austria" and a chart that WAMY produced identifies Mr. Fateh Ali Hussein as the "Director of the Office of WAMY office in Austria and Eastern Europe." ECF Nos. 3912-36, 3963-9.

Based solely on the documents that the parties have produced, the Court is unable to assess which offices actually exist and which countries are merely served by offices in other locations. In addition, the Court is skeptical that all of the listed locations—if they exist at all— are likely to contain documents relevant to Plaintiffs' claims in this multidistrict litigation

("MDL"). The PECs have not explained why documents from the numerous countries listed in their brief are all relevant to the terrorist attacks on September 11, 2001. WAMY's search for documents is likely to be far more focused and productive if the parties concentrate on the most relevant locations.

Accordingly, within 7 days of this Opinion and Order, WAMY is ORDERED to provide the PECs with a complete list of all of its branch offices from 1992 until 2002. Within 14 days of this Opinion and Order, the PECs are directed to provide WAMY with a list of no more than 20 branch offices (including offices in Saudi Arabia) that the PECs believe are most relevant to their claims. Within 60 days of this Opinion and Order, defense counsel is ORDERED to conduct a more thorough search for documents located in those 20 branch offices and produce any additional relevant documents. In conducting this search, defense counsel is directed to communicate directly with staff in the 20 branch offices (preferably in person), issue litigation holds that prevent staff from destroying relevant documents, explain in specific terms all of the document requests to which office staff need to respond, and closely coordinate and supervise the branch offices' efforts to collect and produce all relevant documents. In addition, within 60 days of this Opinion and Order, WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate documents in its branch offices.

## V.    Specific Discovery Requests

In their motion to compel, the PECs identify "several categories of documents of particular significance" and "offer facts and evidence [purportedly] demonstrating that WAMY has not produced responsive documents in those categories." ECF No. 3911 at 3. In response, WAMY asserts that "[a]ll documents Plaintiffs seek have been provided or appropriately objected to." ECF No. 3949 at 4. But WAMY does not describe in any meaningful way the steps

it took to search for relevant documents falling into the categories the PECs have identified. As discussed above, the Court is not convinced that WAMY has searched all of its files for all documents responsive to the PECs' requests. The Court presumes WAMY's endeavors to locate responsive documents falling within the categories that the PECs have identified were much like its inadequate efforts to collect documents from its branch offices.

### A.    Governing Bodies, Boards, and Committees

The PECs contend that WAMY has not produced all reports, meeting minutes, and other documents relating to WAMY's governing bodies, boards, and committees, including the General Assembly. ECF No. 3911 at 4–5, 11–12. In support, the PECs provide a list of reports that are referenced in meeting minutes of the General Secretariat and the Board of Trustees but that WAMY has not produced. ECF No. 3912-10. Similarly, the PECs have identified illustrative examples of committee meeting minutes that have not been produced but are referenced in other documents. ECF No. 3962 at 8. This evidence suggests that WAMY has not adequately searched for and produced all reports and records from its governing bodies, boards, and committees.

In addition, WAMY seems to suggest that the General Assembly is the same as the General Secretariat and the Board of Trustees. ECF No. 3949 at 18. Thus, WAMY contends that it produced the meeting minutes for the General Assembly by producing meeting minutes for the General Secretariat and the Board of Trustees. Id. But minutes from a 1993 meeting of the General Assembly refer to the "General Secretariat" and the "Board of the World Assembly's General Secretariat," suggesting that the General Assembly is separate from the General Secretariat and the Board. ECF No. 3963-10. Moreover, WAMY's constitution states that its organizational structure "shall consist of the General Assembly, the President and the Vice President, the General Council, the Secretary General and the Assistant Secretary General(s)."

ECF No. 3912-19. It is not entirely clear how these bodies correspond with the General Assembly, the General Secretariat, and the Board of Trustees, but the organizational structure at least suggests that WAMY has governing bodies that are separate from the General Assembly.[2] Therefore, the Court is not convinced that WAMY has already produced all of the meeting minutes from its General Assembly.

Within 60 days of this Opinion and Order, WAMY is ORDERED to search for and produce all reports, meeting minutes, and other documents from WAMY's governing bodies, boards, and committees that have not previously been produced. If WAMY has previously produced a document that the PECs have specifically identified in connection with their motion to compel, WAMY must inform the PECs of the document's Bates number. In addition, within 60 days of this Opinion and Order, WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate all reports, meeting minutes, and other documents from its governing bodies, boards, and committees.

### B.    Annual Reports

The PECs contend that WAMY has "failed to produce all annual or periodic reports concerning the objectives and activities of WAMY." ECF No. 3911 at 6. Specifically, the PECs note that WAMY has not produced its Arabic annual reports for 1992, 1993, and 1995. Id.[3] In response, WAMY only discusses annual reports from its branch offices and does not state whether it has produced all annual reports for the organization as a whole. ECF No. 3949 at 11–

---

[2] The constitution also indicates that the General Assembly consists of "the representatives of the active member organisations, associations and institutions of WAMY" and that the General Assembly holds "its general meeting once every four years." ECF No. 3912-19. By contrast, the General Secretariat and the Board of Trustees appear to meet much more frequently than every four years. See ECF No. 3912-10.

[3] The PECs also indicate that WAMY has not produced English annual reports for 1992–1997, 1999, and 2001–2002. ECF No. 3911 at 6. But WAMY responds that most of its documents, including annual reports, are in Arabic. ECF No. 3949 at 12.

12. Therefore, within 60 days of this Opinion and Order, WAMY is ORDERED to produce its annual reports for 1992, 1993, and 1995.

### C. The Saudi Government

The PECs argue that WAMY has failed to produce "a trove of responsive documents that directly implicate high-ranking Saudi government officials and relevant Saudi government ministries in the supervision, management, funding, and decision-making of WAMY." ECF No. 3911 at 8. In response, WAMY suggests that it does not receive "funds for its budget from the Kingdom" of Saudi Arabia and is not controlled by the Saudi government. ECF No. 3949 at 17. But WAMY's own constitution states that WAMY is financed in part through "assistance offered by the Government of Saudi Arabia." ECF No. 3912-19, art. 20. Moreover, in 2003, WAMY's financial director signed a sworn declaration stating, "The Government of Saudi Arabia Funds a large portion of WAMY's budget." ECF No. 3912-16 ¶ 2. The PECs have also pointed to substantial additional evidence regarding the Saudi government's involvement in WAMY's operations, including documents suggesting that WAMY's accounts and fundraising activities are monitored by the Saudi government, senior WAMY officials regularly report to Saudi government ministers regarding the organization's activities, Saudi government officials have served in key WAMY leadership roles, and Saudi embassies have been involved in purchases of property for certain WAMY branch offices. ECF No. 3963-6.

In light of the seemingly close ties between WAMY and the Saudi government—and WAMY's denials that any such relationship exists—the Court is not convinced that WAMY has adequately searched for and produced all relevant documents relating to WAMY's connections to the Saudi government. Accordingly, within 60 days of this Opinion and Order, WAMY is ORDERED to search for and produce all documents relating to WAMY's relationship with the

Saudi government, including but not limited to all records concerning the Saudi government's contributions to WAMY and its budget; communications between WAMY and Saudi ministries regarding WAMY's budget; documents relating to the Saudi government's oversight of WAMY's finances, operations, and global activities; and records regarding Saudi embassies' involvement in WAMY's funding, operations, and global activities. In addition, within 60 days of this Opinion and Order, WAMY is ORDERED to produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate all documents relating to WAMY's relationship with the Saudi government.

     **D.**     **The Benevolence International Foundation**

The PECs contend that WAMY has failed to produce certain documents relating to WAMY's relationship with the Benevolence International Foundation, an organization that has been classified as a Specially Designated Global Terrorist. ECF No. 3911 at 12. In 2012, the Canada Revenue Agency concluded that WAMY Canada "shared a common director, contact information, and a bank account with the Benevolence International Fund in Canada (BIF-Canada), and provided $50,246 to the Benevolence International Foundation in the United States (BIF-USA) in 2001." ECF No. 3912-24. In addition, in 2018, the U.S. Treasury Department's Office of Foreign Assets Control listed three mailing addresses for the Benevolence International Foundation that are the same as mailing addresses that WAMY has used in Saudi Arabia, Pakistan, and Sudan. ECF No. 3912-25. Thus, the PECs argue that "WAMY conducted joint operations with [the Benevolence International Foundation] around the globe in the years preceding and after the attacks of September 11, 2001." ECF No. 3911 at 12.

WAMY responds that the Benevolence International Foundation "was an organization created by Adel Batterjee" that "never has been a WAMY entity or had any relationship with

WAMY whatsoever." ECF No. 3949 at 9. Batterjee was originally the executive director of the Islamic Benevolence Committee, which was a WAMY entity for several years. Id. at 9–10; ECF No. 3951-28. According to WAMY, however, Batterjee eventually founded a separate organization with a similar name: the Benevolence International Foundation. ECF No. 3949 at 10. Documents show that in 1993, after learning of Batterjee's new organization, WAMY removed Batterjee from his position with the Islamic Benevolence Committee and requested that he inform supporters of the Benevolence International Foundation that the organization was not associated with WAMY (due to the organization's similar name and logo). ECF Nos. 3951-27, 3951-28, 3951-29. WAMY later liquidated the Islamic Benevolence Committee. ECF No. 3951-29. WAMY contends that "[t]he three addresses to which Plaintiffs refer in their motion all have one person in common, Adel Batterjee, who had represented WAMY in all those locations." ECF No. 3949 at 11. In addition, WAMY states that it does not have custody or control over any of the Benevolence International Foundation's documents or materials. Id.

Although the Court finds the parties' conflicting evidence perplexing, the Court will not engage in a fact inquiry and attempt to determine whether the Benevolence International Foundation was at all times completely separate from WAMY. The PECs have presented evidence suggesting that the Benevolence International Foundation had at least some connection with WAMY, even if that connection was solely through the organizations' association with Batterjee. Moreover, regardless of whether WAMY has custody or control of the Benevolence International Foundation's records, it is not apparent that WAMY has even conducted a search for documents *relating to* the Benevolence International Foundation. Accordingly, within 60 days of this Opinion and Order, WAMY is ORDERED to search for and produce any documents in its possession, custody, or control relating to the Benevolence International Foundation and

produce those documents to the PECs. In addition, within 60 days of this Opinion and Order,

WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in

detail its efforts to locate any documents relating to the Benevolence International Foundation.

      **E.**      **Hamas and Its Affiliates**

The PECs ask the Court to compel WAMY to produce documents relating to WAMY's

supposed relationship with and financial support for Hamas, Fatah, and the Palestinian Islamic

Jihad. ECF No. 3911 at 16–17. WAMY objects to producing any such documents, arguing that

because "Plaintiffs have not alleged any relationship between Hamas and Al Qaeda or the

terrorist attacks of September 11," documents relating to WAMY's alleged relationship with

Hamas are entirely irrelevant to the MDL. ECF No. 2949 at 7–8 (quoting In re Terrorist Attacks

on Sept. 11, 2001, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005)).

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense and proportional to the needs of the case."

"Information within this scope of discovery need not be admissible in evidence to be

discoverable." Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of

discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y.

2004). "Thus, the Rule 26(b)(1) standard presents a 'relatively low threshold' for a party to show

that the material sought is relevant to any claim or defense in the litigation." John Wiley & Sons,

Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting In re Zyprexa

Injunction, 474 F. Supp. 2d 385, 421 (E.D.N.Y. 2007)). When a party objects to discovery

requests, "the objecting party bears the burden of demonstrating specifically how, despite the

broad and liberal construction afforded the federal discovery rules, each [request] is not

relevant." McKissick v. Three Deer Ass'n, 265 F.R.D. 55, 56–57 (D. Conn. 2010) (quoting

Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984)). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." Melendez v. Greiner, No. 01-CV-07888 (SAS)(DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

The PECs contend that evidence regarding WAMY's relationship with and financial support for Hamas is "relevant not only to plaintiffs' claims that WAMY knew and intended to support radical terrorist groups like al Qaeda, but also equally relevant to WAMY's defenses in this litigation." ECF No. 3962 at 8–9. The PECs note that "WAMY has represented to the Court and the plaintiffs that it is a reputable and peaceful benevolent organization that would never be involved with supporting terrorism." Id. at 9. Indeed, in 2005, WAMY submitted a declaration from its Secretary General stating that the organization is a "peaceful" and "well respected charitable and humanitarian organization" that "has never supported any person or organization known to participate in terrorist activities." ECF No. 3912-20. Thus, evidence of any support WAMY has provided to designated terrorist organizations such as Hamas appears to be relevant to WAMY's defense that it is a peaceful organization that has never supported terrorist activity. WAMY has failed to meet its burden of showing that the evidence is irrelevant to the parties' claims and defenses in this matter. Accordingly, within 60 days of this Opinion and Order, WAMY is ORDERED to search for and produce all documents regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad. In addition, within 60 days of this Opinion and Order, WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate documents regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad.

F.      **Other Document Requests**

The PECs also contend that WAMY has failed to produce responsive documents that fall within various other categories of requests, including audits and records underlying audits; records concerning senior WAMY officials; records concerning the Third World Relief Agency and El Fatih Hassanein; records concerning Abdullah Bin Laden and Anwar al Aulaqi; and records concerning WAMY's supposed support for various terrorist organizations. ECF No. 3911 at 3–19. But for each of these categories, the PECs summarily conclude that WAMY's production must have been incomplete, and the PECs speculate that there must be more documents that WAMY has not yet produced. The PECs have not offered any concrete evidence showing that there are actually more documents in WAMY's possession, custody, or control that the organization has failed to produce. See Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A., No. 99-CV-1330 (AGS), 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) (noting that "the Court cannot compel production of what does not exist"). Therefore, the Court will not compel WAMY to conduct another wholesale search of all of its files for all of the categories of documents that the PECs claim are deficient.

On the other hand, the PECs have pointed to specific deficiencies in WAMY's collection efforts with respect to its branch offices (as discussed above). Thus, while conducting another search of the 20 branch offices that the PECs select, WAMY must search for documents falling into the various categories that the PECs claim are deficient (in addition to searching for documents that are responsive to the PECs' document requests more broadly). WAMY must also produce any additional documents falling into these categories that happen to be uncovered as WAMY searches for records regarding its governing bodies and committees and regarding its

relationships with the Saudi government, the Benevolence International Foundation, and Hamas and its affiliates.

## VI.     Redactions

Finally, the PECs note that WAMY has redacted "donor lists, banking records, financial data, invoices, and other relevant information from *tens of thousands of documents* produced in discovery." ECF No. 3911 at 19. WAMY acknowledges that it "has redacted donor names and any identifying information such as address, phone number, ID number, and social security number . . . . on checks, bank deposit slips, payment orders, correspondence, and WAMY internal reports." ECF No. 3949 at 8 n.29. WAMY contends that this information "is *not relevant* to Plaintiffs' claims, nor is it important to the issues at stake in this litigation, which [are] *where money went* and whether any funds were diverted to al Qaeda in support of the 9/11 attacks." Id. at 8. As discussed above, however, "relevance, for purposes of discovery, is an extremely broad concept." Condit, 225 F.R.D. at 105. During a conference on November 16, 2011, the Court stated, "This whole case is about money being diverted toward terrorist goals. As I understand it, the lion's share of the effort is to see where money went." ECF No. 3963-4 at 148. But that does not mean that the source of the money is irrelevant. On the contrary, where the money came from is exceedingly relevant to Plaintiffs' claims that WAMY and other Defendants were funneling money from various sources to al Qaeda and other terrorist networks.

WAMY also states that its donors' Islamic religious beliefs encourage them to engage in acts of charity discretely and without drawing attention to themselves. Id. at 8–9. Thus, WAMY contends that disclosing the identities of its donors would "violate their religious beliefs" and "expose WAMY to potential liability." Id. If WAMY truly believes that the identities of its donors are sensitive and should be kept confidential, the appropriate approach is not to redact the

information entirely. Instead, WAMY should produce the documents and mark them as confidential in accordance with the Court's umbrella protective order. ECF No. 1900; see Durling v. Papa John's Int'l, Inc., No. 16-CV-3592 (CS)(JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) (noting that "redactions on grounds of non-responsiveness or irrelevance are generally impermissible, especially where, as here, a confidentiality stipulation and order is in place" (citation omitted)). Thus, within 60 days of this Opinion and Order, WAMY is ORDERED to re-produce in unredacted form all documents that it has previously redacted. To the extent WAMY has redacted any documents on the basis of privilege, those documents need not be produced again, but they must be included on a privilege log.

## CONCLUSION

For the foregoing reasons, the PECs' motion to compel is GRANTED in part and DENIED in part. Within 7 days of the date of this Opinion and Order, WAMY is ORDERED to provide the PECs with a complete list of all of its branch offices from 1992 until 2002. Within 14 days of this Opinion and Order, the PECs are directed to provide WAMY with a list of no more than 20 branch offices that the PECs believe are most relevant to their claims. Within 60 days of the date of this Opinion and Order, WAMY is ORDERED to conduct a more thorough search for documents located in the 20 branch offices that the PECs identify and to produce any additional relevant documents.

In addition, within 60 days of the date of this Opinion and Order, WAMY is ORDERED to search for and produce the following: all documents responsive to the PECs' fourth set of document requests; all reports, meeting minutes, and other documents from WAMY's governing bodies, boards, and committees; WAMY's annual reports for 1992, 1993, and 1995; all documents relating to WAMY's relationship with the Saudi government, Saudi ministries, and

Saudi embassies; all documents relating to the Benevolence International Foundation; all records regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad; and unredacted versions of all documents that WAMY has previously produced in redacted form (with the exception of any documents listed on a privilege log).

Finally, within 60 days of the date of this Opinion and Order, WAMY is ORDERED to produce a sworn declaration describing in detail its efforts to locate: additional documents in its branch offices; all reports, meeting minutes, and other documents from WAMY's governing bodies, boards, and committees; documents relating to WAMY's relationship with the Saudi government; documents relating to the Benevolence International Foundation; and documents regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 3910.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:      August 29, 2018
            New York, New York