**_HAVLISH_ PLAINTIFFS' RENEWED MOTION**
**FOR AN ORDER CREATING A COMMON BENEFIT FUND AND**
**AUTHORIZING CERTAIN DISBURSEMENTS THEREFROM**

# EXHIBIT 7



# REPORT FROM THE SPECIAL MASTER

# UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND

## JANUARY 2017

KENNETH R. FEINBERG

SPECIAL MASTER

# REPORT FROM THE SPECIAL MASTER

# UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND

# JANUARY 2017

## 1. INTRODUCTION

The Justice for United States Victims of State Sponsored Terrorism Act, codified at 42 U.S.C. § 10609 (2015) (the "Act"), established the U.S. Victims of State Sponsored Terrorism Fund (the "Fund"). On May 17, 2016, the Attorney General appointed Kenneth R. Feinberg, Esq., as the Special Master to administer the Fund with the assistance of the Money Laundering and Asset Recovery Section, Criminal Division, United States Department of Justice.

This report provides an overview of the Fund's establishment and operations. It includes all available information which the Act requires the Special Master to provide Congress within 30 days of authorizing initial payments, namely: (1) an explanation of the procedures for filing and processing of applications for compensation from the Fund, and (2) an analysis of the payments made to eligible claimants from the Fund and the amount of outstanding eligible claims. 42 U.S.C. § 10609(i). The Special Master will supplement this report after initial payments are distributed in the coming months.

## 2. OVERVIEW OF THE FUND

The Act established the Fund and established funding for it, including an appropriation of $1.025 billion for the Fund in FY 2017. 42 U.S.C. § 10609(e)(5). In addition, the Act mandates that certain forfeiture proceeds, penalties, and fines be deposited into the Fund if "forfeited or paid to the United States after the date of [the Act's] enactment." These funds are to come from civil and criminal matters involving prohibited transactions with state sponsors of terrorism. 42 U.S.C. § 10609(e)(2). The Act further provides that the Fund will cease operations on January 2, 2026. 42 U.S.C. § 10609(e)(6). Thus, the Fund may continue to accumulate funds over its ten-year life.

The Act also set forth specific requirements which must be met in order to receive compensation from the Fund. Under 42 U.S.C. § 10609(c), an eligible claimant is statutorily limited to:

(1) a U.S. person, as defined in in 42 U.S.C. § 10609(j)(8),[1] with a final judgment issued by a U.S. district court under state or federal law against a state sponsor of terrorism

[1] The statute does not limit eligibility to U.S. citizens, nor does the Foreign Sovereign Immunities Act (FSIA). Certain foreign nationals such as non-U.S. citizens who serve as U.S. government employees or contractors can bring causes of action under the FSIA. The referenced subsection of Act provides: "The term 'United States person' means a natural person who has suffered an injury arising from the actions of a foreign state for which the foreign

and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the Foreign Sovereign Immunities Act, codified at 28 U.S.C. § 1605A or § 1605(a)(7) (as such section was in effect on January 27, 2008);

(2) a U.S. person, as defined in in 42 U.S.C. § 10609(j)(8), who was taken and held hostage from the United States embassy in Tehran, Iran, from the period beginning November 4, 1979, and ending January 20, 1981, or the spouse and child of that U.S. person at that time, and who is also identified as a member of the proposed class in case number 1:00-CV-03110 (EGS) of the U.S. District Court for the District of Columbia; or

(3) the personal representative of a deceased individual in either of those two categories.

Under the Act, payments from the Fund are determined using compensatory judgment amounts for judgment holders, and statutorily determined amounts for Iran hostages and their families.[2] The payments will be pro rata distributions calculated in coordination with statutory limitations, including consideration of compensation claimants have already received from sources other than this Fund. 42 U.S.C. § 10609(d).

On May 17, 2016, the Attorney General appointed Kenneth R. Feinberg, Esq., as the Special Master to administer the Fund with the assistance of the Money Laundering and Asset Recovery Section, Criminal Division, United States Department of Justice.

The Act required the Special Master to publish a notice in the Federal Register of the eligibility requirements and application procedures within 60 days after his appointment, and exempted the Notice from the public notice and comment requirements of 5 U.S.C. § 553. *See* 42 U.S.C. § 10609(b). Although not required, in an effort to solicit public input and provide transparency, the Special Master posted draft procedures and frequently asked questions (FAQs) on a website, and invited input from the public from June 17, 2016 through June 29, 2016. Moreover, on June 24, 2016 and June 29, 2016, the Special Master hosted telephonic town hall meeting conference calls to provide potential claimants, their lawyers, and the public with the opportunity to ask questions of the Special Master concerning the Act. During the town hall conference calls, which were open to anyone to participate, the Special Master discussed the draft eligibility requirements, application procedures, and FAQs. In addition, the Special Master met personally with victims' advocates. After these efforts, and in accordance with the statutory deadline, the Notice and a required accompanying System of Records Notice (SORN) were published in the Federal Register on July 14, 2016. *See* Justice for United States Victims of

---

state has been determined not to be immune from the jurisdiction of the courts of the United States under section 1605A or section 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28 or is eligible to make a claim under subsection (c)(2)(B) or subsection (c)(2)(C)."

[2] The Act prescribes the eligible claim amount as the sum total of $10,000 per day for each day that a U.S. person was taken and held hostage from the United States Embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981. Based on that 444-day period, the eligible award amount is $4,440,000. 42 U.S.C. § 10609(c)(2)(B). For each spouse and each child of a former hostage, the eligible claim amount is set as $600,000. 42 U.S.C. § 10609(c)(2)(C).

State Sponsored Terrorism Act, 81 Fed. Reg. 45535; and Privacy Act of 1974; Systems of Records, 81 Fed. Reg. 45539 (July 14, 2016).

The Fund began accepting applications on July 14, 2016, the Notice's publication date. Pursuant to the Act, existing judgment-holder applicants and Iran hostages and their spouses and children had 90 days after publication of the Notice, or until October 12, 2016, to file applications. 42 U.S.C. § 10609(c)(3)(A). Claimants who obtained judgments after July 14, 2016 have 90 days from the date they obtain the judgment to file. Detailed information regarding application procedures is provided in section 3(a) of this report.

The Act required that the Special Master authorize initial payments on eligible claims within one year of enactment, *i.e.*, by December 19, 2016.[3] 42 U.S.C. § 10609(d)(2). To meet this statutory deadline, yet also include as many claimants as possible among those who receive initial payments, the Special Master accepted applications through December 1, 2016, for inclusion in the initial group of payment recipients, if eligible. This extended beyond the October 12, 2016 deadline for existing judgment-holders and Iran hostages and their families. Applicants who filed after December 1, 2016 will not receive initial payments, but, if eligible, may receive payments in future distributions over the term of the Fund.

From July 14, 2016 to December 1, 2016, the Fund received a total of 2,883 applications. The Special Master determined that 2,332 of them (81 percent) were eligible claims. The Special Master denied the remaining 539 applications (19 percent). Details regarding the eligible and denied claims are provided in section 4, *infra*. The Special Master could not issue decisions on 12 applications because the applicants failed to respond timely to the Notices of Deficiencies that were issued.

Eligible claimants received notices that they were authorized to receive an initial payment, including the amount of compensatory damages, and, if applicable, the amount of receipts from sources other than the Fund, to be used in the calculation of initial payments. Claimants whose applications were denied received notice of the reason for the denial. Claimants whose applications were denied have 30 days from receipt of this initial decision to request a hearing. 42 U.S.C. § 10609(b)(4). The Special Master or his designee conducts the hearing, and issues a final decision thereafter. A relatively small number, approximately 30 of the 539 denied claimants, had requested hearings at the time of this report.

Payments from the Fund are generally pro rata, and thus are dependent on other claimants' awards. Moreover, payments are subject to significant additional limitations, as described more fully in section 3(d), *infra*, some of which also require calculations based on other applicants' information. Therefore, awards for all those eligible for initial payments must be calculated together. Some applicants whose claims were denied still have time to request a hearing, and several hearings are scheduled for January 2017. In addition, required reviews and processes before payments can be issued, as described in section 3(d), *infra*, must be completed. For these reasons, no payments have yet been made to eligible claimants. The Fund anticipates that initial payments to eligible claimants will be made in early 2017.

---

[3] One year from enactment was December 18, 2016, a Sunday, hence the adjusted deadline of December 19, 2016. In any event, the Special Master authorized all initial payments by December 12, 2016.

The following sections provide the specific information for required reporting to Congress as set forth in the Act. All currently available information is included. The Special Master will supplement this report after initial payments are distributed in early 2017.

## 3. PROCEDURES FOR FILING AND PROCESSING OF APPLICATIONS FOR COMPENSATION

### a. Application Process

The claimant has the burden of establishing eligibility for payment by the Fund under the Act. Each claimant must submit his or her own application, and, if the claimant is the estate of a deceased individual, provide the requisite information for the Personal Representative of the decedent.

The Personal Representative for a deceased claimant is normally the individual appointed by a court of competent jurisdiction as the Personal Representative of the deceased claimant's will or estate, executor of the deceased claimant's will, or the Administrator of the deceased claimant's estate. Accordingly, the Personal Representatives should provide copies of relevant legal documents, such as court orders, letters testamentary, letters of administration, or similar documentation. Sufficient documentation must be submitted for those Personal Representatives appointed under foreign law.

Application forms are made available on the Fund's website at www.usvsst.com, and may be requested in writing or by phone. Similarly, applications to the Fund may be submitted online, by email, by mail, or via toll-free facsimile. If claimants are represented by counsel, counsel may submit their applications.

Claimants with final judgments obtained before July 14, 2016, and Iran hostages and their spouses and children, must have filed their applications by October 12, 2016. Claimants with final judgments obtained on or after July 14, 2016 must file no later than 90 days after the date of obtaining a final judgment.

### b. Application Requirements

i. <u>Iran Hostages and Their Spouses and Children</u>

A claimant who sought to establish eligibility for payment because he or she was taken and held hostage from the United States Embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981, must have submitted: (1) verification of the date on which he or she was taken hostage from the United States Embassy in Iran, (2) verification of the date on which he or she was released, and (3) verification that he or she is a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia.

If a claimant sought to establish eligibility for payment as the spouse of an individual who was held hostage in Tehran, Iran, during the relevant period, the application must have included a copy of a marriage certificate showing the date of marriage and an affirmation that the marriage continued through January 20, 1981, as well as verification that the claimant is a

member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia. Likewise, if a claimant sought to establish eligibility for payment as the child of an individual who was held hostage in Tehran, Iran, during the relevant period, the application must have included a copy of a birth certificate or adoption decree showing a date of birth or adoption prior to January 20, 1981, as well as verification that the claimant is a member of the proposed class in case number 1:00-CV-03110 (EGS) of the United States District Court for the District of Columbia.

ii. Judgment Holders

A claimant seeking to establish eligibility for payment on the basis of a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the FSIA, must submit, among other documents, a copy of the final judgment, as well as a list identifying any immediate family member(s) of the claimant who is/are also identified in the final judgment. Claimants with a final judgment against an instrumentality of a state sponsor of terrorism are eligible for compensation from the Fund; however, claimants with a final judgment solely against a terrorist group or organization, and not against a state sponsor of terrorism, are not.

The Act requires that all claimants identify compensation from any source other than the Fund that the claimant, or the claimant's beneficiaries, has/have received or is/are entitled or scheduled to receive as a result of the act of international terrorism that gave rise to his or her final judgment. The claimant must provide all relevant information and documentation in his or her application and update the Fund about any additional amounts received after filing the application.

iii. Parties in Specified Litigation

The Act includes special provisions for judgment creditors in *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (S.D.N.Y.), and Settling Judgment Creditors as identified in the order dated May 27, 2014, in the proceedings captioned *In re 650 Fifth Avenue & Related Properties*, No. 08 Civ. 10934 (S.D.N.Y.). These claimants had three options with respect to filing a claim with the Fund:

> First, they could choose *not* to participate in the Fund, which would mean they do not receive compensation from the Fund.
>
> Second, they could elect to participate in the Fund. Like other judgment-holder claimants, they filed applications and if found eligible, will receive compensation from the Fund on the same terms as other eligible claimants. To elect to participate, however, these particular claimants had additional requirements. They had to provide written notice in accordance with the Act to the Attorney General, the Special Master, and the Chief Judge of the United States District Court for the Southern District of New York. Moreover, electing to participate in the fund assigned their interests in the above-referenced proceedings to the Fund.

Third, these claimants could file applications for conditional payment – meaning the Special Master will allocate but withhold payments to these eligible claimants pending rulings in the above-referenced proceedings. 42 U.S.C. § 10609(e)(2)(B)(iv)(I). These amounts will be held in the Fund until those rulings.

**c. Review and Adjudication**

All applications to the Fund are reviewed by the Fund's claims administrator as well as attorneys employed by the United States Department of Justice. If an application is deficient, Fund attorneys notify the applicant and offer an opportunity to resolve the deficiency. Department of Justice attorneys make recommendations; however, all applications are reviewed and either determined eligible or denied by the Special Master.

Pursuant to 42 U.S.C. § 10609(b)(3), all decisions by the Special Master with regard to compensation from the Fund are final and not subject to administrative or judicial review. However, not later than 30 days after receipt of a written decision by the Special Master, a claimant whose application was denied in whole or in part may request a hearing before the Special Master or his designee. Not later than 90 days after a hearing, the Special Master must issue a written decision affirming or amending the original decision; the written decision is final and non-reviewable. A relatively small number, approximately 30 of the 539 denied claimants, had requested hearings at the time of this report.

**d. Payment**

The Act authorizes the Special Master to order payment from the Fund "for each eligible claim of a United States person to that person or, if that person is deceased, to the personal representative of the estate of that person." 42 U.S.C. § 10609(d). With certain limitations, eligible funds will be paid on a pro rata basis out of available funds, based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full or the Fund terminates in 2026. In 42 U.S.C. § 10609(d)(3)(A)(ii), the Act places limitations on claim amounts for certain eligible claims:

(1) in the event that a United States person has an eligible claim for compensation from the Fund that exceeds $20,000,000, the Special Master shall treat that claim as if it were for $20,000,000;

(2) in the event that a United States person and the immediate family members of such person have claims that, if aggregated, would exceed $35,000,000, the Special Master shall reduce such claims on a pro rata basis so that in the aggregate such claims do not exceed $35,000,000; and

(3) in the event that a United States person, or his or her immediate family member, has an eligible claim for compensation from the Fund and has received an award or an award determination [from the 9/11 VCF], the amount of compensation to which such person or their immediate family member was determined to be entitled [from the 9/11 VCF] shall be considered controlling, notwithstanding any compensatory damage amounts such person or immediate family member is deemed eligible for or entitled to pursuant to a final judgment issued by a United States district court under

state or federal law against a state sponsor of terrorism and arising from an act of international terrorism.[4]

Moreover, the Act also includes provisions for accounting for claimants' receipts of payments from sources other than the Fund (if any). Claimants who have received thirty percent or more of their compensatory damages from sources other than the Fund may not receive payments from the Fund until other claimants have received thirty percent of their compensatory damages from the Fund. Claimants who have received some, but less than thirty percent, of their compensatory damages from sources other than the Fund will have their awards adjusted to account for the percentage other claimants will receive from the Fund. 42 U.S.C. § 10609(d)(3)(B).

The Act also contains a special exclusion provision, which provides that no individual "who is criminally culpable for an act of international terrorism" may "receive any compensation . . . either directly or on behalf of a victim." 42 U.S.C. § 10609(h). The Special Master is consulting with appropriate law enforcement to ensure that the eligible claimants and beneficiaries are not precluded from receiving compensation from the Fund on this basis. The Fund must also conform to additional requirements and restrictions before making payments. For example, as stated in the SORN, Fund records may be disseminated to the "Department of Treasury to ensure that any recipients of federal payments who also owe delinquent federal debts have their payment offset or withheld or reduced to satisfy the debt." SORN, 81 Fed. Reg. at 45540.

## 4. ANALYSIS OF PAYMENTS MADE TO ELIGIBLE CLAIMANTS FROM THE FUND

### a. Number of Applications for Compensation Submitted

From July 14, 2016, to December 1, 2016, the Fund received **2,883** applications for compensation. These applications were considered for authorization for an initial payment. The Fund continues to accept applications, which will be considered for future payments if eligible.

### b. Number of Applications Approved and Amount of Each Award

The Special Master determined **2,332** applications to be eligible claims and authorized them to receive initial payments. The amount of each individual award has not yet been calculated.

Of the 2,332 eligible claims, 209 involved the special provisions for parties in certain litigation. Of these 209 claims, 29 were submitted by Settling Judgment Creditors as identified in the order dated May 27, 2014, in the proceedings captioned *In re 650 Fifth Avenue & Related Properties*, No. 08 Civ. 10934 (S.D.N.Y.), who elected to participate in the Fund. The Fund received 180 applications for conditional payment as described in section 3(b), *supra*.

[4] Because the 9/11 VCF awards are paid in full, there are no amounts outstanding and unpaid, thus these claimants do not receive additional compensation from the Fund.

**c. Number of Applications Denied and Reasons for Denial**

The Special Master denied **539** applications. Of these, nearly all — 532, or 99 percent — were denied because the claimants did not meet the statutory eligibility requirements. They did not hold a qualifying final judgment, or they were not qualifying hostages held in Iran or did not demonstrate that they were qualifying spouses or children of such a hostage. Six (6) applications were denied as duplicates. Finally, one (1) application was denied as untimely.

**d. Number of Applications Pending for Which Compensatory Damages Have Not Been Paid in Full**

The Special Master authorized initial payments for the 2,332 eligible claimants by the December 19, 2016 statutory deadline. All eligible claimants or their authorized representatives have been notified of the Special Master's decision via an initial eligibility letter. At this time, however, no payments have yet been made. Additional time is required for the Special Master to determine payment amounts and ensure compliance with other requirements as described in section 3(d), *supra*.

**e. Total Amount of Compensatory Damages From Eligible Claims That Have Been Paid and Remain Unpaid**

The Special Master approved 2,332 applications, corresponding to **$11,391,368,149.31** in total compensatory damages awarded by United States district courts against state sponsors of terrorism and arising from acts of international terrorism, as well as the statutory amounts provided for the Iran hostages, their spouses, and children. As stated above, the Fund has not distributed any payments and the total compensatory damages remain unpaid.